FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2003 OCT 17  A 9: 36

| | | |
|---|---|---|
| Lou Haddock, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, et. al., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 01-CV-1552 |
| Nationwide Financial Services Incorporated, and Nationwide Life Insurance Company, | § § § § | |
| Defendants. | § | October 17, 2003 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR INTERIM EXTENSION OF TIME TO OPPOSE
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Defendants have filed Defendants' Motion (1) for Leave to Conduct Additional

Class Certification Discovery, (2) to Address Outstanding Discovery Disputes, and

(3) to Revise the Schedule in This Action and Supporting Memorandum ("Motion for

Leave").  Simultaneously, Defendants filed their Motion for Interim Extension of

Time to Oppose Plaintiffs' Motion for Class Certification and Request for Expedited

Consideration ("Motion for Extension"), in which they ask for an extension of time

to file their opposition to Plaintiffs' First Amended Motion for Class Certification

pending the Court's ruling on the Motion for Leave.  Herein, Plaintiffs respond to

Defendants' request made in both the Motion for Extension and the Motion for

Leave for additional time to file their class certification brief, leaving Plaintiffs' full

rebuttal of the Motion for Leave for a later date.

-1-

## DeLAY AIN'T JUST A CONGRESSMAN FROM TEXAS

The Court must see the Motion for Leave and the Motion for Extension for what they really are--desperate attempts by Defendants to delay the inevitable certification of this case as a class action under the pretext of needing additional discovery as a result of either Plaintiffs allegedly not providing adequate discovery responses or Plaintiffs allegedly recently introducing new theories into the case. As Plaintiffs demonstrate in detail below, careful examination of Defendants' claims reveals that they rest on a foundation of conclusory statements and misleading assertions.

One and only one reason would justify the Court granting Defendants an extension of time to file their class certification brief--that the discovery or other proceedings in this case had, through no fault of their own, left Defendants unable to adequately prepare their opposition. Crucially, Defendants have failed to demonstrate that the record established by two years of class certification discovery does not allow them to draft a brief making their best arguments against class certification and timely file it under the current schedule.

## DEFENDANTS HAVE NOT DEMONSTRATED THAT THEY NEED ANY ADDITIONAL DISCOVERY IN ORDER TO DRAFT THEIR CLASS CERTIFICATION BRIEF

At page 15 of the Motion for Leave, Defendants list three reasons why they allegedly need additional discovery: (1) because they allegedly still lack substantive responses to much of their previously-filed discovery, allegedly including answers to fundamental questions regarding Plaintiffs' claims and the facts on which Plaintiffs

rely, (2) because Plaintiffs allegedly revised their theories on September 8, 2003, in Plaintiffs' First Amended Supplemental Responses and Objections to Defendants' Third Set of Interrogatories ("the Amended Responses"), and (3) because Plaintiffs' class certification memorandum allegedly raises a number of issues as to which Defendants are entitled to additional discovery. None of the three reasons is remotely valid.

A.   *DEFENDANTS FAIL TO DEMONSTRATE THAT THEY NEED FURTHER RESPONSES TO THEIR PREVIOUSLY-FILED DISCOVERY.*

While Defendants list this as the first of their three reasons for needing more time to file their class certification brief, they do not ever bother to explain why they allegedly need further responses to their previously-filed discovery in order to oppose class certification (Motion for Leave at 15-18). Defendants do not attempt to do so, because they cannot possibly support that claim. Plaintiffs have more than adequately responded to all of Defendants' previously-filed discovery so as to allow Defendants to brief class certification.

Indeed, in its September 18, 2003 Rulings Re: Discovery and Scheduling ("Rulings"), the Court denied without prejudice Defendants' motion to compel as to their first and second interrogatories, saying it would reconsider *"if the matter truly needs to be addressed for the class certification determination."* Similarly, in a telephone conference hearing on September 30, 2003, regarding Plaintiffs' motion for extension of time to comply with the paragraph of the Rulings ordering Plaintiffs to supplement their responses to certain of Defendants' third interrogatories, the

Court said that it would not compel Plaintiffs to further answer those interrogatories in the factual detail requested, but that Defendants could in their response attempt to explain any aspects of Plaintiffs' theory of the case that allegedly require further explanation by Plaintiffs in order for Defendants to prepare their class certification brief.

In short, this Court has ruled that Plaintiffs' previous discovery responses are adequate unless Defendants can demonstrate Plaintiffs' responses to specific discovery requests relevant to class certification leave them unable to oppose class certification. Defendants have failed to even attempt to meet the burden placed upon them by the Court, demonstrating that the first reason they give as to why they allegedly need an extension of time to file their class certification opposition lacks any merit whatsoever.

B.    *DEFENDANTS FAIL TO DEMONSTRATE THAT THEY NEED ADDITIONAL DISCOVERY AS A RESULT OF PLAINTIFFS' AMENDMENT OF THEIR SUPPLEMENTAL RESPONSES TO DEFENDANTS' THIRD INTERROGATORIES.*

Defendants base this argument on the half-truth that Plaintiffs allege for the first time in their September 8, 2003 Amended Responses that the accumulation units constitute plan assets. While that is the first time that Plaintiffs referenced accumulation units by name, Plaintiffs' Third Amended Class Action Complaint filed February 27, 2003, states in ¶ 22 that "*...all amounts invested by the Plans and their participants in the mutual funds through Nationwide's variable annuity contracts constituted plan assets, such that any person or entity (including*

*Nationwide) exercising authority or control over any part of them would constitute a fiduciary as to the Plans in regard to those plan assets over which they exercised authority or control.*"    (Docket 64 at 8).  Since Defendants knew very well that the amounts invested by the Plans *"through Nationwide's variable annuity contracts"* purchased accumulation units (shares) of the separate accounts in which Defendants held the mutual fund shares, Defendants had fair notice that Plaintiffs claimed that the accumulation units constituted plan assets.

Furthermore, in their original supplemental answers to the third interrogatories served on July 3, 2003 ("the Original Responses"), Plaintiffs responded that mutual fund shares are held by Defendants for the Plans and that they constitute plan assets.  Defendants knew that this is technically incorrect because the mutual fund shares are held in separate accounts, with the Plans actually owning shares (accumulation units) of those separate accounts.  Indeed, Plaintiffs served the Amended Responses to correct this error, as Defendants well understand. [1]

---

[1] During the deposition of Defendants' expert, Frederick M. Werblow, on August 20, 2003, Plaintiffs first realized that they might have made this technical mistake.  After receiving the deposition transcript and researching the issue, Plaintiffs promptly amended their interrogatory responses on September 8, 2003, as the Federal Rules of Civil Procedure obligated them to do.

Crucially, however, Defendants could clearly see in July, if not February, where Plaintiffs were going and that they would eventually discover their technical mistake and argue that the accumulation units of the separate accounts constitute plan assets, rather than the mutual funds shares held in the separate accounts. Thus, any claim by Defendants that as of September 8, 2003, they were surprised by the reference to accumulation units rings entirely hollow.

Regardless of whether Defendants were "surprised" by the discussion of accumulation units in the Amended Responses, they have totally failed to explain why they need more discovery or otherwise need a delay in order to brief class certification as a result of that discussion. They have failed to offer such an explanation because three simple facts render their argument undeniably false. First, they have already conceded that the accumulation units constitute plan assets (Docket 118 at 4, ¶ 13), and no discovery can change that critical fact.

Second, the variable annuity contracts between Defendants and the Plans exclusively control the authority that Defendants can exercise over those plan assets, such that no further discovery regarding that authority is needed by Defendants, and the issue of whether such authority is sufficient to make Defendants fiduciaries as to those assets constitutes a question of law common to all the Plans. Third, knowledge of the authority and control actually exercised over those plan assets by Defendants resides exclusively within Defendants' control, making it unnecessary for Defendants to conduct any discovery of the named Plaintiffs or any third parties regarding that issue.

-6-

Reflecting the futility of their position, Defendants merely list four topics of discovery regarding the accumulation units that they wish to take and then assert, in purely conclusory fashion, that each of the topics might require a plan-by-plan and participant-by-participant inquiry "at odds" with class certification and that they are "entitled" to take "reasonable discovery" of the class representatives to demonstrate the need for such inquiry (Motion for Leave at 15-16). The Court should find this conclusory statement by Defendants not only insufficient, but completely contrary to the facts.

Initially, Defendants do not even attempt to explain how the incredibly vague topic of "the factors that affect accumulation unit value" has any possible relevance to Plaintiffs' cause of action, much less to class certification. Certainly, Defendants do not articulate how "the factors that affect accumulation unit value" could possibly require a plan-by-plan and participant-by-participant inquiry. The truth, of course, is that Defendants throw out this topic as a complete red herring, as it has no conceivable relevance to class certification.

Indeed, the variable annuity contracts, drafted by Defendants, specifically provide that the value of the accumulation units (shares of a separate account) shall vary based upon the value of the mutual fund shares held in the separate account. The mutual fund prospectuses, well known to Defendants, describe in detail the factors upon which the value of the mutual fund shares will vary. Thus, all "the factors that affect accumulation unit value" are already well known to Defendants. Certainly, the individual Plaintiffs, who are admittedly not well versed in the

technicalities of mutual fund share and accumulation unit valuation, could provide no useful information whatsoever regarding this topic to Defendants if their depositions were re-opened as Defendants request.

Defendants similarly fail in regard to the second topic of "the plans' or participants' accounting or financial treatment of the accumulation units and their understanding of those units." Defendants do not even attempt to articulate how such accounting/financial treatment or understanding could possibly be relevant to Plaintiffs' cause of action, much less to class certification. Certainly, Defendants do not explain how that topic could require a plan-by-plan and participant-by-participant inquiry. Defendants have not done so, because they cannot. That topic, too, is simply a red herring.

Significantly, Plaintiffs and their third party administrators have already produced to Defendants documents showing the accounting or financial treatment of the accumulation units by their Plans (which documents show that they were treated as plan assets), and Defendants have already deposed the Plaintiffs regarding that financial/accounting treatment and their understanding of the units. In fact, Defendants cited to such documents and such testimony in their Rule 56 Statement of Facts (Docket 118 at 4-5, ¶ 13). In truth, therefore, Defendants have already conducted any necessary discovery regarding this topic.

The third topic listed by Defendants--"any agreements plans or participants might have entered into regarding those units"--is particularly disingenuous. The only "agreements plans or participants might have entered into regarding those

-8-

units" are the standard form variable annuity contracts between Defendants and the Plans. Those contracts are, of course, well known to Defendants (they drafted the contracts), and the relevant provisions are uniform.

Defendants feebly further claim that they need discovery as to the specific provisions of the variable annuity contracts that give them the authority to take action regarding the accumulation units (Motion for Leave at 16). Defendants' authority derives entirely from those standard form variable annuity contracts, and the relevant provisions are plain on their face. Certainly, Defendants (who drafted the contracts) can identify the relevant provisions far better than Plaintiffs, and allowing Defendants to re-open Plaintiffs' deposition to ask questions the answers to which they know far better than Plaintiffs would be nothing short of a travesty.

As to the fourth topic, Defendants fail to explain the relevance of "any disclosures or information (accurate or allegedly inaccurate) the plans or participants received about the units" to any aspect of Plaintiffs' cause of action, much less to class certification, or how such "issue" could require a plan-by-plan and participant-by-participant inquiry at odds with class certification. Once again, Defendants have not attempted an explanation because there is none.

The variable annuity contracts control the nature and valuation of the accumulation units. Any disclosures or information outside the contracts would constitute inadmissable parol evidence, in addition to being irrelevant. Further, Defendants had ample opportunity to and did inquire of all Plaintiffs regarding their understanding of the variable annuity contracts and what had been disclosed

about those contracts, which necessarily included the accumulation units provided for in the contracts.

Finally, Defendants claim they need discovery regarding Plaintiffs' assertion that the revenue sharing payments decrease the value of the accumulation units on a one-to-one basis (Motion for Leave at 16). That is a merits issue, and Defendants do not even attempt to explain how it could possibly affect class certification if Plaintiffs are wrong. In the absence of such explanation, the Court should regard Defendants' claim as without merit.

Furthermore, there is no possible discovery that Defendants need from Plaintiffs at this point to argue against this assertion. The effect of the payments on the value of the accumulation units is an issue that will be addressed by expert accountants or economists, and Plaintiffs have not hired one that Defendants could depose. Certainly, depositions of the named Plaintiffs will not illuminate this highly technical issue.

In short, Defendants have failed to even attempt to explain why they need further discovery as a result of Plaintiffs asserting that the accumulation units constitute plan assets (something Defendants freely admit is true). Accordingly, the second reason given by Defendants for delaying their opposition to class certification lacks any merit whatsoever.

C.    *DEFENDANTS HAVE NOT DEMONSTRATED THAT THEY NEED ADDITIONAL DISCOVERY REGARDING ISSUES ALLEGEDLY RAISED BY PLAINTIFFS' CLASS CERTIFICATION BRIEF IN ORDER TO OPPOSE CLASS CERTIFICATION.*

In remarkably disingenuous fashion, Defendants claim that they need discovery regarding the following issues allegedly raised by Plaintiffs' class certification brief: (1) Pension Plan Administrators ("PPA's"), (2) the financial impact of mutual fund payments, (3) the calculation of the amounts of "skimmed plan assets," (4) the market data and "economic expert testimony" that will allow Plaintiffs to prove on a classwide basis the "reasonable fair market value" (if any) of services Defendants make available to mutual funds, (5) Plaintiffs' testimony that they will not let the outcome of any counterclaim proceedings influence their representation of the Class, and (6) the legal argument by Plaintiffs that money damages are merely incidental to their injunctive claims (Motion for Leave at 16-17). Upon examination, the Court will find that Defendants actually have no need to conduct any additional discovery regarding any of these supposed issues.

1. <u>Defendants Have Not Demonstrated They Need Discovery Regarding PPA's, the Financial Impact of Revenue Sharing Payments, Market Data or Expert Economic Testimony</u>

In  two short paragraphs in the statement of facts section of their class certification memorandum (Docket 129 at 2-3), Plaintiffs described the relationship between PPA's and the Plans and Defendants as useful background for the Court to understand the issues in this case. Plaintiffs did not, contrary to Defendants' absurd allegation, thereby elevate PPA's "to a central role in the case" (Motion for Leave at 16). Nothing about these allegations is directly relevant to Plaintiffs' cause of action or raises any class certification issues.

At page 35 of their class certification memorandum (Docket 129 at 35), Plaintiffs state that, "*Nationwide undisputedly provides unlimited access to its services to Plans and their participants, PPA's and mutual funds in return for annual charges, such that the actual quantum of services used is not relevant to the services' reasonable price.*" (Docket 129 at 35). Plaintiffs then go on to explain that:

> Plaintiffs will, accordingly, if necessary, prove the reasonable price of Nationwide's services on a per participant per annum basis by putting on evidence of: (i) Nationwide's uniform pre-revenue sharing practice of charging $6.00 per participant per year to a few mutual funds and $12.00 per participant per year to PPA's; (ii) Nationwide's current per participant per year charges to PPA's; and (iii) market data regarding the per participant per year charges for provision of similar unlimited access services by independent third party providers.

(Docket 129 at 35).

Based upon this, Defendants claim they need discovery regarding "PPA's" and regarding market data showing the per participant per year charges for provision of similar unlimited access services by independent third party providers (Motion for Leave at 16 & 17). Defendants' claim is, quite simply, ridiculous.

Defendants already know their current per participant per year charges for PPA's, and nothing else regarding PPA's is relevant to this argument. Furthermore, for class certification purposes, it is only relevant that Plaintiffs can and will use such evidence to prove the value of the services Defendants offer on an unlimited access basis to the Plans and PPA's. The actual amounts of those charges is irrelevant for class certification purposes.

As for the market data, it is similarly irrelevant to class certification what exact market data Plaintiffs will present at the trial of this matter. At this point in time, Plaintiffs do not even know what data they will present at trial. All that is relevant for class certification is that Plaintiffs can and will use market data to prove the fair market value of unlimited access to Defendants' services. Defendants certainly will not falsely assert to the Court that no such market data exists.

The key to Plaintiffs' argument is not how they will prove the fair market value of the set of services offered by Defendants on an unlimited access basis, but rather that the proper way to measure the value of those services is on that unlimited access basis. Because of that, the quantum of services actually used by any particular Plan becomes irrelevant, which means that it is not necessary to look at the specific services utilized by any particular Plan, eliminating individual issues. No additional discovery by Defendants is even arguably necessary as to the real class certification issue.

In the very last paragraph of the statement of facts section of their class certification memorandum (Docket 129 at 11), Plaintiffs give an illustration of the effect on a completely hypothetical plan participant of Defendants' revenue sharing practices in order to give the Court a feel for the financial significance of this case to the participants in the Plans which are the members of the Class. Amazingly, and extremely disingenuously, Defendants claim they need discovery regarding this example (Motion for Leave at 17).

Defendants do not need discovery regarding this example for two reasons. First, they don't need discovery because it merely constitutes an illustration of the seriousness of the problem. Second, they don't need it because such calculations will never be necessary in this litigation, as the members of the Class are the Plans, not their individual participants, and recovery of such losses is not sought by Plaintiffs.

Defendants misleadingly allege that Plaintiffs stated they intend to use "economic expert testimony" to prove the reasonable fair market value of services allegedly provided by them to mutual funds (Motion for Leave at 17). In fact, Plaintiffs stated they intend to use expert economic testimony to demonstrate that the prices actually charged by Defendants to the Plans pursuant to the variable annuity contracts constitute the real prices of their services, such that those prices did not constitute any sort of "discount" and, thus, did not constitute a credit back to the Plans on account of the revenue sharing payments (Docket 129 at 36).

As set forth in Plaintiffs' brief (Docket 129 at 36), that expert economic testimony will be based on the fundamental economic principle that, in a competitive marketplace, the price actually charged is the real price, such that calling the real price a discount from a supposedly higher standard price does not make it an actual discount, which proves that Defendants do not actually give a credit to the Plans on account of their receipt of revenue sharing payments from the mutual funds. Plaintiffs have not yet hired an expert to offer such testimony, so

there is no one for Defendants to depose regarding this basic economic principle. Certainly, the named Plaintiffs can give no useful testimony on this topic.

Further, while discovery could probe the bases for such an opinion (every economic textbook ever written), it could not conceivably lead to any testimony that the principle applies to some Plans, but not to others, such as to create individual issues. This economic principle either applies to all of the Plans or to none, making it an element of classwide proof.

2.  <u>Defendants Have Failed to Demonstrate That They Need Discovery
Regarding Calculations of the Amounts of the Skimmed Plan Assets</u>

Defendants absurdly claim that they need discovery regarding Plaintiffs'
allegation that mechanical calculations can be made of the amounts of skimmed
plan assets attributable to each Plan (Motion for Leave at 17).  The truth is that
Defendants know very well that such calculations can be made, and they
understand far better than Plaintiffs how they can be made.

The Court must keep in mind that the skimmed plan assets are payments
made by mutual funds to Defendants.  Defendants quite obviously have computer
records of all those payments and of how the payments were calculated.[2]  They also
quite obviously keep records of which mutual funds each Plan invested in.  Knowing
this information allows first the calculation of how much of each payment was
attributable to each Plan and then the addition of all amounts attributable to each
Plan.

All of Plaintiffs' limited knowledge about Defendants' recordkeeping comes
from the 30(b)(6) deposition of Defendants and the very few relevant records
produced by Defendants.  The deposition and the records leave Plaintiffs confident
that these calculations can be performed, but Plaintiffs have not obtained the

---

[2] Defendants' general accounting supervisor, Jean A. Cotting, testified on February 26, 2003, as part
of the 30(b)(6) deposition of Defendants, that the majority of revenue sharing agreements are self
billing where the mutual fund house pulls the average daily balances at the fund and separate
account levels, applies the applicable percentage, calculates the revenue sharing for the period
(either monthly or quarterly), totals it up and then sends Defendants the payment along with the
backup showing the calculations (36:3-22).  She thus testified that it is possible to look back and
calculate for a given period of time how much revenue sharing was received from each mutual fund
(45:8-20).

information necessary to figure out exactly how the calculations will be performed, because those details are not relevant to class certification.

Accordingly, no discovery that Defendants could possibly take from Plaintiffs would serve to disprove Plaintiffs' assertion. If Plaintiffs are wrong (which they are not), Defendants already have in their possession all the necessary information regarding their computer and recordkeeping systems to explain to the Court why Plaintiffs are allegedly wrong. Indeed, any such information resides exclusively in Defendants' possession.

3.    Defendants Fail to Demonstrate They Need Discovery Regarding Plaintiffs' Testimony That Counterclaims Against Them Will Not Adversely Affect Their Representation of the Class.

Defendants claim they need to re-open the depositions of Plaintiffs to inquire about their affidavit testimony that they will not allow the pendency of any counterclaims against them to influence their representation of the Class. Defendants already had more than adequate opportunity to inquire about this topic, however, and they should not be granted more time for discovery to remedy their lack of diligence.

In considering this issue, the Court should keep in mind that Defendants filed the counterclaims against Plaintiffs for the very purpose of creating the argument that Plaintiffs will allegedly be unable to adequately represent the Class out of fear of liability on the counterclaims brought against them in their individual capacities. Given this, Defendants certainly should have anticipated Plaintiffs testifying that Defendants cannot intimidate them in this manner and that they

will represent Class members in their best interest without regard to any potential individual liability they might face.  Given that they should have anticipated this testimony, Defendants had every opportunity to explicitly ask Plaintiffs about it during their depositions.

Specifically, Defendants first filed counterclaims on March 7, 2003 (Docket 67 at 12-20), claiming that Plaintiffs should have known that Defendants were stealing from their Plans and should have stopped Defendants from doing so (a fine example of chutzpah).  Immediately prior to this, Defendants had taken the depositions of Plaintiffs Alan Gouse, Lou Haddock and Peter Wiberg on February 13 and 24 and March 4, 2003, respectively.   Defendants clearly took those depositions in anticipation of filing the counterclaims, as they spent significant time during them asking those Plaintiffs regarding: (i) what was disclosed to them by Defendants regarding revenue sharing, (ii) what information was available to them regarding Defendants' revenue sharing, (iii) when they first learned of or could have learned of Defendants' revenue sharing, and (iv) what they did after learning of the revenue sharing.

Defendants have only themselves to blame for not taking the next step and asking Plaintiffs what effect, if any, Defendants' filing of counterclaims against them would have on their representation of the Class.  Plaintiffs should not be subjected to further deposition, and the class certification briefing process delayed, because Defendants did not exercise due diligence.

Well after Defendants had first filed their counterclaims on March 7, 2003, Defendants took the depositions of former Plaintiffs Carl D. Anderson and Ronald Simon on April 16 and 21, 2003, respectively, and of current Plaintiffs Edward Kaplan and Dennis A. Ferdon on March 11 and July 16, 2003, respectively. Defendants certainly could have and should have asked these Plaintiffs about whether then-pending or anticipated counterclaims would affect their representation of the Class. Again, Defendants' lack of diligence in that regard in no way justifies re-opening those depositions or delaying the class certification briefing.

4.    Defendants Have Not Demonstrated That They Need Discovery Regarding Plaintiffs' Argument That Rule 23(b)(2) Certification Is Appropriate Given That Their Money Damages Are Merely Incidental to Their Claims for Injunctive Relief.

Finally, Defendants claim that they should be able to re-open Plaintiffs' depositions to ask about the argument that Plaintiffs' money damages are merely incidental to their injunctive claims. Defendants well know that this is a question of law relevant to class certification under Rule 23(b)(2) as to which the individual Plaintiffs will certainly have no knowledge. Thus, this argument represents still another misleading and disingenuous attempt to create the impression that further discovery is needed when, in fact, nothing could be further from the truth.

## CONCLUSION

Wherefore, Plaintiffs respectfully request the Court to deny the Motion for Extension and to further deny the Motion for Leave for the same reasons and to grant them all such other and further relief, general or special, legal or equitable, to which they may be justly entitled.

Respectfully submitted,

_____
Richard A. Bieder
Federal Bar No. ct04208
Antonio Ponvert, III
Federal Bar No. ct17516

KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgeport, Connecticut 06604
203-336-4421
203-368-3244 (Fax)

Marc R. Stanley
Federal Bar No. ct18179
Roger L. Mandel
Federal Bar No. ct18180

STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, Texas 75205
214-443-4300
214-443-0358 (Fax)
Gregory G. Jones
Federal Bar No. ct23443

LAW FIRM OF GREGORY G. JONES PC
603 S. Main Street, Suite 200
Grapevine, Texas 76051
817-424-9001
817-424-1665 (Fax)

**PLAINTIFFS' COUNSEL**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing were served this _17th_ day of October, 2003, upon the following counsel via the methods indicated:

| | |
|---|---|
| Dennis F. Kerrigan, Jr.<br>LeBoeuf, Lamb, Greene & MacRae<br>Goodwin Square<br>225 Asylum Street<br>Hartford, CT 06103 | via certified mail, return<br>via fax 860/293-3555<br>via first-class, U.S. mail<br>via overnight delivery<br>via hand delivery |
| Charles C. Platt<br>Wilmer Cutler & Pickering<br>399 Park Avenue<br>New York, NY 10022 | via certified mail, return<br>via fax 212/230-8888<br>via first-class, U.S. mail<br>via overnight delivery<br>via hand delivery |
| Eric J. Mogilnicki<br>Wilmer, Cutler & Pickering<br>2445 M. Street, N.W.<br>Washington, DC 20037 | via certified mail, return<br>via fax 202/663-6363<br>via first-class, U.S. mail<br>via overnight delivery<br>via hand delivery |

_____
Richard A. Bieder
Antonio Ponvert, III