FILED

2003 OCT 29 A 11: 11

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Lou Haddock, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, et. al., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 01-CV-1552 (CFD) |
| Nationwide Financial Services Incorporated, and Nationwide Life Insurance Company, | § § § § | |
| Defendants. | § § | October 28, 2003 |

**PLAINTIFFS' OPPOSITION TO, AND MEMORANDUM IN SUPPORT, TO DEFENDANTS' MOTION(1) FOR LEAVE TO CONDUCT ADDITIONAL CLASS CERTIFICATION DISCOVERY, (2) TO ADDRESS OUTSTANDING DISCOVERY DISPUTES, (3) TO REVISE THE SCHEDULE IN THIS ACTION AND SUPPORTING MEMORANDUM**

*I.    INTRODUCTION*

With Defendants' Motion (1) For Leave Conduct Additional Class Discovery (2) to Address Outstanding Discovery Disputes, (3) to Revise the Schedule in this Action and Supporting Memorandum (Document No. 143) ("Motion for Leave"), Defendants ask the Court to decide a summary judgment motion based upon a theory that Plaintiffs do not even assert and to delay consideration of class certification while it does so and while Defendants take extensive additional discovery which they do not need. Defendants thus ask the Court to engage in a gross miscarriage of justice.

-1-

In July of 2003, Plaintiffs served an interrogatory response that contained a technical error. Seizing upon this technical error, Defendants filed a summary judgment motion in August in violation of the existing scheduling order. In early September, Plaintiffs served amended discovery responses to correct their technical error.

Now, Defendants ask the Court to strike the amended interrogatory response and decide their summary judgment motion, which motion relies on Plaintiffs' quickly corrected technical error and a theory of the case not even asserted by Plaintiffs, before the Court decides class certification. To plainly state Defendants' request is to demonstrate its absurdity.

Plaintiffs not only had the right, but the duty, to amend an incorrect interrogatory response, which they did seasonably. Defendants suffered no prejudice thereby, because the parties have not even begun taking merits discovery in this case, much less reached an appropriate time for the filing of summary judgment motions. Defendants' opportunistic quest to benefit from Plaintiffs' erroneous interrogatory answer by filing a summary judgment motion in violation of Court order simply cannot manufacture prejudice to Defendants or justify the Court hearing a summary judgment motion based upon facts and theories which both sides agree are incorrect and which Plaintiffs do not assert.

Defendants' additional request to the Court to delay class certification briefing while they conduct additional discovery similarly lacks merit. In support, Defendants recite a list of discovery they wish to take and then claim, in purely

conclusory fashion, that they need such discovery in order to oppose class certification, allegedly making compliance with the current schedule impossible.

After two years of class certification discovery, as the Court has repeatedly held, Defendants must do more than claim in purely conclusory fashion that they need more discovery in order to oppose class certification--they must explain why they need it and why they could not have obtained it in the exercise of due diligence during two years of class certification discovery. Defendants have not even attempted to meet this burden imposed on them by the Court, and careful examination of the discovery they wish to take conclusively demonstrates that they do not need it in order to timely oppose class certification.

## II. FACTUAL BACKGROUND

Plaintiffs filed Plaintiffs' First Amended Class Action Complaint on September 5, 2001 (Docket No. 4). In it, Plaintiffs pled two causes of action: (1) breach of fiduciary duty by Defendants through their acceptance and retention of certain payments by mutual funds (referred to therein as 'undisclosed kick-backs"), and (2) breach of fiduciary duty by Defendants through their selection of investment options (Docket No. 4 at 14-21).

On March 28, 2002, the Court entered the Scheduling Order (Docket No. 44). The Scheduling Order provided that:

> *This case shall be managed in phases-the first being class certification by plaintiffs and Rule 12 motion by the defendants. Once class certification and the Rule 12 motion have been ruled upon, a further Rule 26(f) Report and scheduling order shall address all deadlines and case management issues necessary for trial.*

(Docket No. 44 at 1). This language in the Scheduling Order clearly provided for resolution of class certification prior to the filing of summary judgement motions, as further demonstrated by the fact that the Order limited discovery to *"class certification-related discovery...reasonable and tailored for preparation on the issue of class certification"* (Docket No. 44 at 2)

Pursuant to the Scheduling Order, the parties proceeded with resolving the Rule 12 motion filed by Defendants. On September 11, 2002, the Court entered its endorsement denying Defendants' motion to dismiss in its entirety. The Court obviously thought that, if proven, Plaintiffs' allegations have substantial merit.

On February 27, 2003, Plaintiffs filed Plaintiffs' Second Amended Class Action Complaint (Docket No. 64). In it, Plaintiffs dropped their second cause of action regarding Defendants' selection of investment options, leaving only the cause of action for breach of fiduciary duty by Defendants through their acceptance and retention of payments from mutual funds (now referred to as "skimmed plan assets") (Docket No. 64 at 16-18). This served to significantly simplify the case.

In ¶ 22, Plaintiffs pled that, *"Crucially, all amounts invested by the Plaintiffs and their participants in the mutual funds through Nationwide's variable annuity contracts constituted plan assets, such that any person or entity (including Nationwide) exercising authority or control over any part of them would constitute a fiduciary in regard to those plan assets over which they exercised authority or control"* (Docket No. 64 at 8).

This language is significant, because Defendants knew very well that the amounts invested by the Plans *"through Nationwide's variable annuity contracts"* purchased accumulation units (shares) of the separate accounts in which Defendants held mutual fund shares. Thus, the Second Amended Complaint gave Defendants fair notice that Plaintiffs claimed that the accumulation units constituted plan assets.

On March 5, 2003, the Court entered the First Amended Scheduling Order (Docket No. 66). In it, the Court once again provided that the case would be managed in two phases, the first being class certification by Plaintiffs and a Rule 12 motion by Defendants, with a further scheduling order to be entered to address all deadlines and case management issues necessary for trial only after class certification and the Rule 12 motion had been ruled upon. This, again, excluded the filing of a Rule 56 motion prior to the ruling on class certification, as further demonstrated by the reiteration that discovery was limited to *"class certification-related discovery... reasonable and tailored for preparation on the issue of class certification"* (Docket No. 66 at 1 & 2).

By endorsement on May 18, 2003, the Court granted the parties' Motion and Stipulation Re: Scheduling (Docket No. 88). The Stipulation extended or otherwise adjusted certain deadlines contained in the First Amended Scheduling Order, but otherwise left it intact. Accordingly, the Court continued to order class certification decided before the filing of motions for summary judgment.

On May 23, 2003, Plaintiffs filed Plaintiffs' Third Amended Class Action Compliant (Docket No. 95). In it, Plaintiffs retained the same single cause of action, but eliminated all references to misrepresentations and breach of contract by Defendants, further simplifying the case. Significantly, in ¶ 22, Plaintiffs retained the exact same language, once again giving Defendants fair notice of their claim that the accumulation units constituted plan assets (Docket No. 95 at 8).

In Plaintiffs' Supplemental Responses and Objections to Defendants' Third Set of Interrogatories ("the Original Responses"), in response to Interrogatory No. 2, Plaintiffs discussed in detail the basis for their above-referenced allegations pled in Paragraph 22 of the Second Amended Complaint and Paragraph 22 of the Third Amended Complaint (Original Responses at 1-6, a true and correct copy of which is attached hereto as Exhibit "A"). In that answer, Plaintiffs stated that mutual fund shares are held by Defendants for the Plans, such that those mutual fund shares constitute plan assets (Original Responses at 2-3).

Defendants knew that this is technically incorrect because the mutual fund shares are held in separate accounts with the Plans actually owning shares (accumulation units) of those separate accounts, such that the accumulation units, not the mutual fund shares, constitute plan assets. Defendants could, however, clearly see in July, if not February, where Plaintiffs were going and that they would eventually discover their technical mistake and argue that the accumulation units of the separate accounts constitute plan assets, rather than the mutual fund shares held in the separate accounts.

In Response No. 2 of the Original Responses, Plaintiffs also explained why the payments made by mutual funds to Defendants ("the skimmed plan assets") constitute plan assets in Defendants' hands, using an answer subdivided into eight "steps" for clarity's sake (Original Responses at 2-4, Exhibit "A" hereto). Contrary to Defendants' assertion, Plaintiffs never stated that those steps constituted the tracing of specific dollars or assets from the hands of a Plan into the hands of a mutual fund and then into the hands of a mutual fund advisor and then into the hands of Defendants. Plaintiffs certainly never intended to state or imply that their theory was dependent upon such tracing.

During the deposition of Defendants' expert, Frederick M. Werblow, on August 20, 2003, Plaintiffs first realized that they might have made a technical mistake by stating in the Original Responses that Defendants held the mutual fund shares for the Plans, making them plan assets, rather than stating that the accumulation units of the separate accounts in which Defendants held the mutual fund shares constitute plan assets. Plaintiffs decided that after receiving the transcript of the deposition of Mr. Werblow, they would research this issue and, if Mr. Werblow was correct, that they would amend their interrogatory answers to correct their technical mistake.

After receiving Mr. Werblow's deposition transcript, approximately ten days to two weeks later, Plaintiffs researched the issue and concluded that Mr. Werblow was correct that the mutual fund shares held in the separate accounts did not constitute plan assets, but that the shares (accumulation units) of the separate

-7-

accounts did constitute plan assets. Accordingly, on September 8, 2003, Plaintiffs served Plaintiffs' First Amended Supplemental Responses and Objections to Defendants' Third Set of Interrogatories ("the Amended Responses") on Defendants. In Response No. 2, Plaintiffs corrected their error by stating that accumulation units constitute plan assets (Amended Responses at 1-7, a true and correct copy of which is attached hereto as Exhibit "B"). In addition, Plaintiffs simplified the explanation of why the skimmed plan assets also constitute plan assets, including eliminating references to "steps."

Prior to that, on August 28, 2003, Defendants filed their motion for summary judgment, supporting memorandum, statement of material facts and supporting appendices and affidavits (Docket Nos. 116 - 122). By doing so, Defendants directly violated the First Amended Scheduling Order and the Court's consistent rulings throughout the litigation that class certification should be resolved prior to any attempted resolution of the merits beyond a Rule 12 motion, including motions for summary judgment. Defendants presumably hoped to: (i) take advantage of the technical error Plaintiffs had made in the Original Responses before Plaintiffs could receive the transcript of the Werblow deposition and correct the error, (ii) take advantage of the fact that discovery had been limited to class certification issues, and (iii) delay the Court ruling on class certification.

Plaintiffs immediately brought to the Court's attention that Defendants' filing of the motion for summary judgment violated the First Amended Scheduling Order and that the briefing schedules for class certification and summary judgment

conflicted with each other. The Court resolved these scheduling issues in its Rulings Re: Discovery and Scheduling ("Rulings") filed September 18, 2003 (Docket No. 126).

Specifically, in paragraph 6 thereof, the Court ruled that, *"Class certification should be addressed as soon as is practicable, and briefing related to that issue is therefore the priority"* (Docket No. 126 at 2). The Court held, accordingly, that the time for Plaintiffs to respond to the motion for summary judgment would be extended until thirty days after the completion of all class certification briefing (Docket No. 126 at 2). By so ruling, the Court rejected the request by Defendants to stay class certification briefing pending the Court's ruling on their summary judgment motion.

In the Rulings, the Court also decided all outstanding discovery issues. Initially, the Court ordered Plaintiffs to supplement their responses to six of the interrogatories from Defendants' Third Interrogatories (Docket No. 126 at 1). The Court further denied without prejudice Defendants' motion to compel as to Defendants' Second Request for Production stating that if, after reviewing the class certification papers, Defendants believed that issues addressed by the document requests would be significant to the Court's ruling on class certification, they could advise Plaintiffs and the Court (Docket No. 126 at 1). Defendants have not claimed that they need any further production of documents pursuant to these requests in order to brief class certification.

The Court also held that *"defendants' recent motion for sanctions (Docket No. 113), dealing with the first and second interrogatories, is DENIED WITHOUT PREJUDICE to reconsideration if the matter truly needs to be addressed before the class certification determination"* (Docket No. 126 at 1). As to voluminous Requests for Admissions served by Defendants, the Court ruled as follows:

> 5. *For similar reasons, the recently served defendants' Request For Admissions are stayed. If a fair opportunity to respond to plaintiffs' class certification arguments requires additional information and if compliance with the order stated in paragraph 1 fails to provide that information, the Court would entertain an argument that the request, if trimmed down to a reasonable number, needed to be addressed.*

(Docket No. 126 at 1-2). Thus, except for six of Defendants' Third Interrogatories, the Court held that Plaintiffs need not supplement their discovery responses unless Defendants could meet the burden of demonstrating that they need specific further discovery from Plaintiffs in order to have a fair opportunity to oppose class certification.

On September 25, 2003, Plaintiffs moved for an extension of time to supplement the six responses to Defendants' Third Interrogatories as ordered in paragraph three of the Rulings (Docket No. 133). In their Motion, Plaintiffs explained that they cannot answer these interrogatories in the requested detail without obtaining the necessary information to do so from Defendants, and they requested an extension of time until after Defendants have answered interrogatories which Plaintiffs simultaneously served on Defendants.

The Court held a preliminary telephone hearing on the Motion for Extension on September 30, 2003. The Court ruled that it would not require Plaintiffs to answer these interrogatories in the requested detail and that Defendants need not respond to the new interrogatories served on them by Plaintiffs. The Court told Defendants that they could attempt to specify in their response to the Motion for Extension what aspects, if any, of Plaintiffs' theory of the case they allegedly need clarification of in order to oppose class certification and that the Court would be open to considering whether Plaintiffs should so supplement their interrogatory responses to better explain their theory.

Thus, as of September 30, 2003, the Court has effectively held that Plaintiffs have satisfied all outstanding discovery requests, subject to Defendants demonstrating that specific responses of Plaintiffs regarding their theory of the case (not factual matters) need to be supplemented in order for Defendants to have a fair opportunity to oppose class certification. As of this date, Defendants have not demonstrated such need. Thus, the Court has essentially already held that Defendants need no further discovery in order to timely file their class certification opposition.

III. DEFENDANTS HAVE FAILED TO DEMONSTRATE THAT THEY NEED TO TAKE ADDITIONAL CLASS CERTIFICATION DISCOVERY AND/OR THAT THEY REQUIRE AN EXTENSION OF TIME TO RESPOND TO PLAINTIFFS' CLASS CERTIFICATION MOTION

The Court is referred to Plaintiffs' Opposition to Defendants' Motion for Interim Extension of Time to Oppose Plaintiffs' Motion for Certification ("the

Opposition") filed October 17, 2003. In it, Plaintiffs demonstrated that Defendants not only have completely failed to meet the burden placed upon them by the Court to demonstrate the need for additional discovery in order to respond to class certification and, consequently, the need for more time to file their class certification brief, but also that the reasons given by Defendants for allegedly needing more discovery and time ranged from demonstrably false (at best) to simply ridiculous (at worse).

Amazingly, in Defendants' Reply Memorandum in Support of Defendants' Motion for Interim Extension of ("Reply) Time filed October 23, 2003, a ten page document, Defendants do no better, making only two weak arguments. First, Defendants claim that it would be unfair to require them to brief class certification when discovery issues remain outstanding. This ignores the fact that this Court, as of September 30, 2003, has ruled that Plaintiffs need not supplement any of their discovery responses unless Defendants can demonstrate that they require further explanation regarding Plaintiffs' theory of the case in order to timely file their class certification opposition. Defendants' refusal to recognize this Court's rulings, including what the Court plainly said during the telephone hearing on September 30, defies reality.

Second, Defendants attempt to rebut the reasons given by Plaintiffs as to why Defendants do not require any further class certification discovery. Defendants ignore, however, that in the Motion for Leave, they never even attempted to meet

their burden of explaining why they need any additional discovery in order to timely file their class certification opposition. And, they failed to do so again in the Reply.

Never once in the Motion for Leave or the Reply do Defendants articulate a specific aspect of Plaintiffs' theory of the case, explain why it is relevant to class certification, explain why they need further discovery regarding it in order to have a fair opportunity to oppose class certification, and explain why they have not already obtained such discovery in the exercise of due diligence during two years of class certification discovery. Rather, Defendants have merely listed topics as to which they wish to take further discovery and claimed in purely conclusory fashion that they need further discovery regarding them.

This was not sufficient before in the Motion for Leave. It is not sufficient now in the Reply. This Court should, accordingly, hold that two years of class certification is enough and reiterate its decision to resolve class certification based on the current briefing schedule.

## IV. THE COURT SHOULD DENY DEFENDANTS' REQUEST FOR IT TO STRIKE THE AMENDED RESPONSES AS WITHOUT MERIT.

A. <u>The Amended Responses Were Neither Untimely Nor Prejudicial</u>.

As set forth above, Plaintiffs served the Amended Responses on September 8, 2003, to correct a technical error in the Original Responses served July 3, 2003. Since the Second Amended Complaint filed February 27, 2003, and the Original Responses filed in July gave Defendants fair notice of the claim that the accumulation units constitute plan assets, Defendants' claim of prejudice rings entirely hollow. Even more significantly, as set forth in the Opposition at 6-11, Defendants have not articulated any reason why they need any further discovery regarding the fact that the accumulation units constitute plan assets (which they concede) in order to oppose class certification. Thus, the Amended Responses have in no way prejudiced Defendants.

Defendants' claim that Plaintiffs did not timely serve the Amended Responses is also clearly false. As set forth above, the Plaintiffs first realized that they might potentially have made a technical mistake in the Original Responses during the deposition of Frederick M. Werblow on August 20, 2003, which deposition took place as part of the class certification discovery in this case. After receiving the deposition transcript of Mr. Werblow (ten days to two weeks later), Plaintiffs very promptly researched the issue, concluded that Mr. Werblow was correct, and served the Amended Responses on September 8, 2003, two weeks before they filed their amended class certification motion and memorandum in support on

September 22, 2003 (Docket Nos. 128 & 129). Accordingly, Defendants undeniably had full knowledge of Plaintiffs' reliance on the undisputed fact that the accumulation units constitute plan assets at least two weeks (if not months) before their sixty day period to respond to class certification began to run.

Finally, Plaintiffs note the absurdity of Defendants' request for the Court to strike the Amended Responses. This would leave Plaintiffs: (i) responding that the mutual fund shares held in the separate accounts constitute plan assets (which everyone agrees is not correct), and (ii) failing to respond that the accumulation units constitute plan assets (which everyone agrees is correct). Nothing in the Federal Rules of Civil Procedure requires this.

Quite the contrary, FRCP 26(e)(2) requires a party to *"seasonably amend"* a discovery response if it learns that its original response is incorrect or incomplete. FED. R. CIV. P. 26(e)(2). That is exactly what Plaintiffs did--they corrected an incorrect discovery response within two weeks of confirming that it was incorrect.

B.  <u>The Amended Responses Should Not Be Stricken Because They Are Unsworn</u>.

Defendants have previously complained that the Amended Responses were not sworn to by Plaintiffs. The Court did not require Plaintiffs to go back and verify the entire Amended Responses. Rather, in the Rulings, it merely required verification of the supplemental responses to the six interrogatories which it ordered Plaintiffs to provide (Docket No. 126 at 1). On September 30, 2003, the Court effectively reversed its ruling compelling additional interrogatory responses

subject to Defendants demonstrating that they require any further responses in order to oppose class certification, a burden which Defendants have not met.

If the Court eventually requires Plaintiffs to supplement any responses relevant to class certification, Plaintiffs will verify those supplemental responses. Alternatively, if the Court so desires, the Amended Responses can be verified, either by Plaintiffs verifying them upon information and belief or by Plaintiffs' counsel verifying them. Significantly, nothing about the lack of verification of the Amended Responses prevents Defendants from timely filing their class certification opposition under the current schedule.

C.   Plaintiffs Had the Right to Amend Incorrect Interrogatory Answers.

As noted above, FRCP 26(e)(2) provides, in pertinent part, that, "*A party is under a duty to seasonably amend a prior response to an interrogatory...if the party learns that the response is in some material respect incomplete or incorrect....*" FED. R. CIV. P. 26(e)(2). The advisory committee notes to the 1993 amendments further state, "*The obligation to supplement disclosures and discovery responses applies **whenever** a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect.*" FED. R. CIV. P. 26, Advisory Committee Notes to 1993 amendments (emphasis added).

In the face of this amazingly plain language establishing that a party has not just the right, but the **duty**, to amend an interrogatory response **whenever** it learns that its prior answer was incorrect in any material respect, Defendants make the categorical claim that a party may never unilaterally amend its discovery

-16-

responses (Docket No. 143 at 12). While FRCP 26(e)(2) by itself requires the Court to disregard this wild claim, the very cases cited by Defendants do likewise.

For example, in *Point Productions A.G. v. Sony Music Entertainment, Inc.*, 2002 WL 31856951 (S.D.N.Y. December 19, 2002), the district court did not automatically hold that a party could not amend an interrogatory answer to assert a new damages theory. Rather, it applied the standard for granting leave to amend a pleading set by FRCP 15(a) and held that allowing the plaintiff to adopt a new damages theory it first brought up during oral argument on a motion in limine shortly before the scheduled trial prejudiced the defendant. *Id.* at 3-4. That is, obviously, in no way comparable to this case, because the amendment in that case did not serve to correct a previous erroneous interrogatory answer as here, and because Plaintiffs in this case amended at an early date in the litigation before merits discovery has even begun, not right before trial.

Similarly, in *Aero Group Int'l, Inc. v. Marlboro Footworks, Ltd.*, the plaintiff first brought up a new theory in a motion for reconsideration after the district court had already granted summary judgment to the defendant based upon both an interrogatory response and an affidavit filed by the plaintiff. 1997 WL 22316 at 2 (S.D.N.Y. May 7, 1997). Under those circumstances, so different from the facts in this case, the district court held it was too late for the plaintiff to change its position.

In this case, no prejudice has resulted or will result to Defendant from Plaintiffs filing the Amended Responses to correctly state that the accumulation

-17-

units (shares) of the separate accounts, rather than the mutual fund shares held in the separate accounts, constitute plan assets. Not only have the parties not yet embarked on resolving this case on the merits, merits discovery has not even taken place, as the First Amended Scheduling Order provided for resolution of class certification prior to merits discovery and the filing of summary judgment motions.

Defendants had no business filing a motion for summary judgment on August 28, 2003, when the First Amended Scheduling Order expressly prohibited them from doing so. Defendants violated the First Amended Scheduling Order for the very purpose of trying to take advantage of Plaintiffs' technical error, which they undoubtedly realized Plaintiffs would soon correct as a result of being informed of their error by Mr. Werblow during his deposition eight days earlier on August 20, 2003. Failing that, Defendants simply desired to delay the Court's consideration of class certification.

In short, Defendants have suffered no prejudice as to the merits of the case or by relying on an obvious error in the Original Responses in a summary judgment motion they had no right to file. Equally significant, for the reasons set forth in the Opposition, the filing of the Amended Responses in no way prevents Defendants from fully and fairly opposing class certification under the current schedule.

Finally, *Artes v. Academy Collections Service*, does state in dicta that, "*On the other hand, an interrogatory answer binds a party just as its pleadings do unless the Court grants a motion to amend.*" 1998 WL 314026 at 1 (D. Conn. June 5, 1998). Defendants interpret this as a statement by the district court that an interrogatory

-18-

answer binds a party unless the court grants a motion to amend the interrogatory. That, of course, cannot possibly be what the court meant.

The Federal Rules of Civil Procedure do not contemplate a party having to seek leave to amend an interrogatory answer. Rather, Rule 26(e)(2) places a duty upon a party to unilaterally amend interrogatory responses under certain circumstances. Certainly, the court did not intend to invent a contrary rule out of thin air.

Rather, that court must have meant that an interrogatory answer is just as binding as a pleading as to which pleading the court has not granted leave to amend pursuant to FRCP 15(a). If that court did not mean this, it simply erred in its dicta, and this Court should disregard it for that reason.

V. **THE COURT SHOULD NOT RECONSIDER ITS RULINGS ON PLAINTIFFS' INTERROGATORIES TO DEFENDANTS AND PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO RESPOND TO INTERROGATORIES**

As noted above, on September 30, 2003, the Court preliminarily ruled on Plaintiffs' motion for extension of time to supplement its interrogatory responses (Docket No. 133). The Court essentially reconsidered the portion of the Rulings requiring Plaintiffs to supplement their interrogatory responses to six of Defendants' Third Interrogatories (Docket No. 126 at 1), saying it would not make Plaintiffs answer these interrogatories in the requested detail. Rather, the Court said that if Defendants could articulate specific aspects of Plaintiffs' theory of the case which Defendants need clarified in order for them to brief class certification, it would consider requiring Plaintiffs to serve supplemental answers offering such clarification.

The October 16, 2003 deadline for Defendants to file a response to the Motion for Extension has now passed without Defendants filing a separate response. Apparently, Defendants regard Section III of the Memorandum in Support of the Motion for Leave (Docket No. 144 at 3-14) as constituting that response. Defendants did not, however, comply with the Court's direction and articulate any aspects of Plaintiffs' theory of the case that it needs clarified in order to respond to class certification. Accordingly, the issue is now closed, and based upon the Court's rulings, Plaintiffs need not respond any further to Defendants' Third Interrogatories.