In light of this, and as stated by the Court on September 30, 2003, Defendants need not respond to Plaintiffs' latest interrogatories prior to the Court ruling on class certification. Plaintiffs served them only in order to obtain the ability to comply with the Rulings regarding Defendants' Third Interrogatories. Since the Court has relieved Plaintiffs from that burden, Plaintiffs concede that Defendants need not respond to those interrogatories prior to the Court ruling on class certification.

VI. *THE COURT SHOULD NOT STRIKE PLAINTIFFS' CLARIFIED REQUEST FOR PRODUCTION BECAUSE IT MERELY REPRESENTS A GOOD FAITH ATTEMPT BY PLAINTIFFS TO NEGOTIATE DEFENDANTS' COMPLIANCE WITH REQUESTS FOR PRODUCTION SERVED WELL BEFORE THE END OF CLASS CERTIFICATION DISCOVERY*

During the 30(b)(6) deposition of Defendants on February 25-27, 2003, three deponents proffered by Defendants identified documents which had not been produced by Defendants despite them being responsive to document requests served on Defendants in 2002. Counsel for Plaintiffs requested production of the documents on the record during the depositions. Counsel for Defendants requested a written list of the documents.

On March 3, 2003, counsel for Plaintiffs provided counsel for Defendants with such written list of documents. On April 2, 2003, Defendants served a formal written response and objections to those document requests despite them not having been served on Defendants in a formal request for production. On that same

-21-

date, Defendants produced documents containing an additional 48 pages (N 014877 - N 014923).

After review of the responses and objections and of the additional documents, Plaintiffs were not satisfied. In an attempt to resolve the issue without involving the Court, Plaintiffs' counsel first contacted Defendants' counsel on May 1, 2003, to attempt to set up a meeting to discuss the issues. Despite frequent requests by Plaintiffs, they were not able to obtain a meeting with Defendants' counsel until a telephone conference on July 25, 2003, between Gregory G. Jones for Plaintiffs and Charles C. Platt for Defendants.

During that conversation, Mr. Platt asked for Plaintiffs to provide written clarification of several of the requests for production in order to clarify what Plaintiffs were requesting from Defendants. Follow up correspondence took place between Plaintiffs' counsel and Defendants' counsel in August and September of 2003. Finally, in response to Defendants' counsel's request for clarification, Plaintiffs served Defendants with their "Clarified Request for Production Arising Out of the Depositions of Defendants 30(b)(6) Witnesses Cotting, Bath, Scranton and Goslee," a true and correct copy of which is attached hereto as Exhibit C.

As stated in the opening paragraph of that document, the Clarified Request was not served as a new request for production, but rather as part of an attempt to negotiate Defendants' compliance with requests for production served in 2002, long before the end of class certification discovery. Except for Request Nos. 28-31, the Clarified Requests asked for the exact same documents discussed during

Defendants' 30(b)(6) deposition in February of 2003, which documents had previously been requested by document requests dating back to 2002.

Clarified Request Nos. 28-31 had not previously been discussed between Plaintiffs' counsel and Defendants' counsel. However, they request documents identified during the 30(b)(6) deposition of Defendants on March 10, 2003, which documents should have been produced based upon requests for production served in 2002.

Accordingly, the Clarified Request merely represents an attempt by Plaintiffs to obtain Defendants' compliance with its obligations to produce documents based on requests dating to long before the end of class certification discovery. It does not constitute a brand new set of document requests served on an untimely basis. Even after the close of class certification discovery, Plaintiffs have the right to obtain compliance by Defendants with discovery obligations arising prior to that deadline.

VII. *THE COURT SHOULD NOT RECONSIDER ITS RULING ON THE SCHEDULING OF CLASS CERTIFICATION AND SUMMARY JUDGMENT BRIEFING*

Just a month ago, the Court ruled on the scheduling of class certification briefing and summary judgment briefing (Rulings, Docket No. 126 at 2). Defendants, without complying with the Local Rule governing motions for reconsideration, now ask the Court to reconsider on the sole basis that everything has allegedly changed because Plaintiffs cited to Defendants' statement of material facts (Docket No. 144 at 19) in their class certification brief. Defendants do not

-23-

bother to ever explain why this should change the Court's ruling, however. Accordingly, the Court has no basis to reconsider.

Furthermore, Defendants' argument makes no sense whatsoever. The fact that Plaintiffs and Defendants do not dispute certain facts relevant to class certification in no way justifies the Court hearing Defendants' summary judgment motion prior to ruling on class certification, even if those agreed facts are set forth in Defendants' statement of material facts. This is particularly true given that Defendants' motion for summary judgment asks for judgment based on theories which Plaintiffs do not even assert in this case.

Specifically, Defendants argue that the mutual fund shares held in the separate accounts do not constitute plan assets and that the skimmed plan assets do not constitute plan assets based upon the tracing of specific plan assets from the Plans to Defendants (Docket No. 117). Plaintiffs, however, contend that the accumulation units (shares) of the separate accounts, rather than the mutual fund shares held in the separate accounts, constitute plan assets (Amended Responses at 1-7, Exhibit "B" hereto), making Defendants' motion moot in this regard.

Further, Plaintiffs do not rely on tracing plan assets from the hands of the Plans into the hands of Defendants to demonstrate that the skimmed plan assets constitute plan assets. Rather, they argue that the skimmed plan assets constitute plan assets in the hands of Defendants even though they did not constitute plan assets in the hands of the mutual funds prior to their payment to Defendants (Amended Responses at 1-7, Exhibit "B" hereto). Thus, the Court could not

-24-

Case 3:01-cv-01552-SRU    Document 155-2    Filed 10/29/2003    Page 6 of 16

conceivably grant summary judgment based upon the current motion, making its briefing and resolution prior to class certification a complete waste of time.

Defendants realize this. For that reason, they coupled their request for the Court to hear the summary judgment motion prior to deciding class certification with the request to strike the Amended Responses. Defendants essentially ask the Court to consider granting summary judgment to them based upon a theory which is not advocated by Plaintiffs and which both sides agree is incorrect. In other words, Plaintiffs ask the Court to engage in a gross miscarriage of justice, an invitation the Court will surely want to decline.

## IX. CONCLUSION

Wherefore, Plaintiffs respectfully request the Court to deny the Motion for Leave (Docket No. 143) in its entirety and to grant them all such other and further relief, general or special, legal or equitable, to which they may be justly entitled.

Respectfully submitted,

/s/ Richard A. Bieder
Richard A. Bieder
Federal Bar No. ct04208
Antonio Ponvert, III
Federal Bar No. ct17516

KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgeport, Connecticut 06604
203-336-4421
203-368-3244 (Fax)


Marc R. Stanley
Federal Bar No. ct18179
Roger L. Mandel
Federal Bar No. ct18180

STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, Texas 75205
214-443-4300
214-443-0358 (Fax)
Gregory G. Jones
Federal Bar No. ct23443


LAW FIRM OF GREGORY G. JONES PC
603 S. Main Street, Suite 200
Grapevine, Texas 76051
817-424-9001
817-424-1665 (Fax)

**PLAINTIFFS' COUNSEL**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing were served this 28th day of October, 2003, upon the following counsel via the methods indicated:

| | |
|---|---|
| Dennis F. Kerrigan, Jr.<br>LeBoeuf, Lamb, Greene & MacRae<br>Goodwin Square<br>225 Asylum Street<br>Hartford, CT 06103 | ☐ via certified mail, return<br>☒ via fax 860/293-3555<br>☒ via first-class, U.S. mail<br>☐ via overnight delivery<br>☐ via hand delivery |
| Charles C. Platt<br>Wilmer Cutler & Pickering<br>399 Park Avenue<br>New York, NY 10022 | ☐ via certified mail, return<br>☒ via fax 212/230-8888<br>☒ via first-class, U.S. mail<br>☐ via overnight delivery<br>☐ via hand delivery |
| Eric J. Mogilnicki<br>Wilmer, Cutler & Pickering<br>2445 M. Street, N.W.<br>Washington, DC 20037 | ☐ via certified mail, return<br>☒ via fax 202/663-6363<br>☒ via first-class, U.S. mail<br>☐ via overnight delivery<br>☐ via hand delivery |

_____
Richard A. Bieder

-27-

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Lou Haddock, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, et. al., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 01-CV-1552 |
| Nationwide Financial Services Incorporated, and Nationwide Life Insurance Company, | § § § § § | |
| Defendants. | § | October 28, 2003 |

### PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANTS' THIRD SET OF INTERROGATORIES

Pursuant to FRCP 33, Plaintiffs hereby serve Plaintiffs' Supplemental Responses to Defendants' Third Set of Interrogatories upon Defendants.

### OBJECTIONS

All of the objections set forth in Plaintiffs' Response to Defendants' Third Set of Interrogatories are incorporated herein as if fully set forth here verbatim.

### ANSWERS

**INTERROGATORY NO. 2** - With respect to each Plan, identify each and every specific instance in which defendants exercised authority or control over plan assets, as alleged in paragraphs 2, 22, 25, and 43 of the Second Amended Complaint and paragraphs 2, 22, 24, and 42 of the proposed Third Amended Complaint, and for each such instance (i) identify the specific plan asset or plan assets over which defendants exercised authority or control, and the specific owner of the plan asset;

(ii) identify which defendant(s) exercised authority or control over the plan asset; and when the defendant(s) exercised authority or control; (iii) state whether the defendants exercised authority or control over the plan asset by entering into or performing under a contract and, if so, identify any specific contractual provisions you are aware of that describe or provide for that exercise of authority and control; and (iv) state whether the defendants exercised authority or control over the plan asset by some act, communication, or omission separate from any contract and, if so, describe each specific act, communication, or omission that amounted to the exercise of authority and control, the date that it occurred, and any other person or entity who participated in that act, communication, or omission.

**Response No. 2:**

Plaintiffs contend that the "skimmed plan assets" constitute plan assets for the following reasons:

Step 1. Pursuant to a contract with a mutual fund and/or mutual fund advisor, as exemplified by the documents listed in the chart attached hereto as Exhibit "A," Nationwide receives from the mutual fund and/or mutual fund advisor a percentage of all monies invested by the Plan in the mutual fund through Nationwide;

Step 2. Monies invested in a mutual fund by a Plan through Nationwide constitute plan assets;

Step 3. When those assets of the Plan are delivered to the mutual fund by Nationwide, they are used to purchase shares of the mutual fund, and those

mutual fund shares constitute assets of the Plan;

Step 4. Those mutual fund shares represent the Plan's partial ownership of all the assets of the mutual fund (in the percentage that the Plan's shares represents of all of the mutual fund shares), including the monies paid by the Plan to purchase the shares and any stocks or other investments purchased by the mutual fund using that money;

Step 5. The mutual fund pays out of its assets to the mutual fund advisor a percentage of those assets as "fees";

Step 6. That portion of the monies paid by the mutual fund to the mutual fund advisor which will be paid by the mutual fund advisor to Nationwide pursuant to a contract with Nationwide does not become property of the mutual fund advisor when received by it or of Nationwide when received by it, because it does not actually represent a fee paid by the Plan and/or the mutual fund to the mutual fund advisor for services rendered, and it does not represent a contracted-for fee paid by the Plan to Nationwide for any services rendered by Nationwide;

Step 7. Rather, because those monies were derived from the Plan's investments and serve to reduce the value of the Plan's shares (undisputedly plan assets) on a one-to-one-basis, and because the mutual fund advisor and Nationwide are not legitimately entitled to retain them, those monies constitute assets of the Plan, whether in the hands of the mutual fund advisor or in Nationwide's hands; and

Step 8. Alternatively, even if the monies of the mutual fund which are

paid to the mutual fund advisor and then to Nationwide do not constitute assets of the Plan in the hands of the mutual fund advisor and Nationwide, the value of the Plan's mutual fund shares, which undoubtedly constitute assets of the Plan, are decreased in value by exactly the amount that is paid to the mutual fund advisor for forwarding to Nationwide (i.e., if a mutual fund pays to a mutual fund advisor for forwarding to Nationwide .5% of all monies invested in the mutual fund through Nationwide, then a Plan which has invested in that mutual fund will find the value of its shares in that mutual fund decreased by .5%).

Based upon the 30(b)(6) deposition of Nationwide and documents produced by Nationwide, Plaintiffs believe that a mutual fund family and/or mutual fund advisor for a family of mutual funds makes periodic payments to Nationwide of plan assets skimmed from all the Plans invested in all the funds in that mutual fund family. Such payments are apparently not broken down by Plan, although Nationwide has the capability of going back and calculating how much of each payment was attributable to each Plan. Since Nationwide has not provided this information, Plaintiffs cannot provide it here.

The documents identified in Exhibit "A" are all of the documents produced by Defendants to Plaintiffs as constituting or evidencing agreements between mutual funds and Defendants for the payment of skimmed plan assets. According to Defendants, they constitute a "representative sample" of such documents. Defendants refuse to produce all such documents on the ground that to do so would be unduly burdensome and that the "representative sample" will be sufficient for

purposes of class certification for illustrating any variances in the arrangements between Defendants and the various mutual funds.

Each of these documents represents a specific instance in which Defendants exercised authority or control over plan assets. The contracts clearly set forth the mutual funds' obligations to pay the skimmed plan assets and the amounts. The burden upon Defendants to identify the specific provisions in each contract providing for payment of skimmed plan assets is not only no greater than the burden that will be placed upon Plaintiffs to do so, but is actually less than the burden that will be placed upon Plaintiffs, because these are Defendants' documents, and Defendants have familiarity with them, while Plaintiffs do not. Accordingly, Plaintiffs object to identifying specific contractual provisions as unduly burdensome and harassing under the circumstances.

In addition to their entry into to the contracts and agreements evidenced by the documents in Exhibit "A" and the contracts not yet produced by them, Defendants exercised authority or control over plan assets each and every time they received payments from mutual funds pursuant to the documents identified in Exhibit "A" and the contracts not yet produced by them. At this time, Plaintiffs are not aware of any specific acts, communications or omissions other than Nationwide's arranging for the payment of skimmed plan assets, as described above, and Nationwide's acceptance and retention of the payments of skimmed plan assets, as described above.

Plaintiffs cannot provide the details of all particular instances when mutual

**PLAINTIFFS' SUPPLEMENTAL RESPONSES TO
DEFENDANTS' THIRD SET OF INTERROGATORIES**                                  **PAGE 5**

funds made payments to mutual fund advisors and when mutual fund advisors made payments to Nationwide, because Plaintiffs are not in possession of that information. That information is solely in the possession of Nationwide and the mutual funds. Plaintiffs have requested discovery from Nationwide that would have revealed some or all of these details, but Nationwide objected to producing same on the grounds that it would not be relevant to class certification (to which discovery is now limited) and that providing such discovery would be unduly burdensome. Plaintiffs ultimately agreed that discovery at this level of detail is not necessary for the Court to decide class certification. In addition, as noted above, the actual payments of skimmed plan assets to Nationwide were apparently not broken down by Plan.

However, based upon the limited information available to Plaintiffs, Plaintiffs have compiled a chart of the funds actually invested in by the participants in the Plans, which chart is attached hereto as Exhibit "B." Nationwide finally produced on June 28, 2003, their Rate Book showing all the funds they offer and the amount of skimmed plan assets paid by each (N 014877 to N 014893). A comparison of that document and Exhibit "B" shows the percentages of plan assets that would have been paid out of those participants' accounts on an annual basis by the mutual fund and/or mutual fund advisor to Nationwide.

**INTERROGATORY NO. 3** - With respect to each Plan, identify each and every specific instance in which defendants arranged for, accepted, retained, and kept plan assets as alleged in paragraphs 22, 25, 43 and 44 of the Second Amended

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Lou Haddock, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, et. al., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 01-CV-1552 |
| Nationwide Financial Services Incorporated and Nationwide Life Insurance Company, | § § § § § | |
| Defendants. | § | October 28, 2003 |

**PLAINTIFFS' FIRST AMENDED
SUPPLEMENTAL RESPONSES AND OBJECTIONS
TO DEFENDANTS' THIRD SET OF INTERROGATORIES**

Pursuant to FRCP 33, Plaintiffs hereby serve Plaintiffs' First Amended Supplemental Responses and Objections to Defendants' Third Set of Interrogatories. This document supersedes and replaces Plaintiffs' Supplemental Responses and Objections to Defendants' Third Set of Interrogatories served on July 3, 2003 in their entirety.

**OBJECTIONS**

All of the objections set forth in Plaintiffs' Response to Defendants' Third Set of Interrogatories are incorporated herein as if fully set forth here verbatim.

**ANSWERS**

**INTERROGATORY NO. 2** - With respect to each Plan, identify each and every specific instance in which defendants exercised authority or control over plan