assets, as alleged in paragraphs 2, 22, 25, and 43 of the Second Amended Complaint and paragraphs 2, 22, 24, and 42 of the proposed Third Amended Complaint, and for each such instance (i) identify the specific plan asset or plan assets over which defendants exercised authority or control, and the specific owner of the plan asset; (ii) identify which defendant(s) exercised authority or control over the plan asset; and when the defendant(s) exercised authority or control; (iii) state whether the defendants exercised authority or control over the plan asset by entering into or performing under a contract and, if so, identify any specific contractual provisions you are aware of that describe or provide for that exercise of authority and control; and (iv) state whether the defendants exercised authority or control over the plan asset by some act, communication, or omission separate from any contract and, if so, describe each specific act, communication, or omission that amounted to the exercise of authority and control, the date that it occurred, and any other person or entity who participated in that act, communication, or omission.

**Response No. 2**:

Nationwide exercised authority or control over two types of plan assets: (1) the Variable Account Accumulation Units (the shares of the Nationwide variable account) held by Nationwide for each Plan participant, and (2) the revenue sharing payments received by Nationwide from mutual funds and/or mutual fund advisors.

The Nationwide Variable Account Accumulation Units ("Units") constitute plan assets under ERISA and the case law interpreting it, which Nationwide

concedes. Nationwide exercises authority or control over them in two respects.

First, it does so generally by virtue of all of the actions it can and does take as to their management and disposition pursuant to its annuity contracts with the Plans and/or their participants, including canceling them to pay expenses, transferring them to use as collateral for loans, canceling them to pay loans, canceling them to purchase annuities and canceling them to make cash payments. Second, it does so specifically by contractually arranging to receive and by accepting payments from mutual funds and/or mutual fund advisors equal to a percentage of the daily accrued value of a Plan's Units, which causes the Units to decline in value on a one-to-one basis.

By arranging for, accepting and retaining payments from mutual funds and/or mutual fund advisors based upon a percentage of the daily accrued value of a Plan's Units, Nationwide exercised control over the disposition of those payments that it received. Those payments, which constitute a percentage of the daily accrued value of a Plan's Units, constitute Plan assets in the hands of Nationwide because they are the fruits of the Plan's assets and Nationwide did not have the right under its annuity contracts with the Plans or their participants to retain such fruits.

Plaintiffs' contentions do not depend upon it tracing specific dollars from the hands of the Plan into the hands of Nationwide. The decrease in the value of the Units constitutes the injury caused by Nationwide's breach of fiduciary duty as to those plan assets, and that does not depend upon identifying specific dollars

flowing from a Plan to Nationwide. Furthermore, because the mutual fund payments constitute plan assets in the hands of Nationwide regardless of whether they constitute plan assets in the hands of the mutual fund and/or mutual fund advisor, it is not necessary to trace specific dollars. The dollars paid to the mutual funds as discussed herein constitute the "skimmed plan assets" referred to in the Third Amended Complaint.

Based upon the 30(b)(6) deposition of Nationwide and documents produced by Nationwide, it is undisputed that a mutual fund family and/or mutual fund advisor for a family of mutual funds makes periodic payments to Nationwide of plan assets skimmed from all the Plans invested in all the funds in that mutual fund family. Testimony confirms that such payments are not broken down by Plan, although Nationwide has the capability of going back and calculating how much of each payment was attributable to each Plan. Since Nationwide has not provided this information, Plaintiffs cannot provide it here.

The documents identified in Exhibit "A" are all of the documents produced by Nationwide to Plaintiffs as constituting or evidencing agreements between mutual funds and Nationwide for the payment of skimmed plan assets. According to Nationwide, these produced documents constitute a "representative sample" of such documents. Nationwide refuses to produce all such documents on the ground that to do so would be unduly burdensome and that the "representative sample" will be sufficient for purposes of class certification for illustrating any variances in the arrangements between Nationwide and the various mutual funds.

Each of these documents represents a specific instance in which Nationwide exercised authority or control over plan assets. The contracts clearly set forth the mutual funds' obligations to pay the skimmed plan assets to Nationwide and the amounts of those payments. The burden upon Nationwide to identify the specific provisions in each contract providing for payment of skimmed plan assets is not only no greater than the burden that will be placed upon Plaintiffs to do so, but is actually less than the burden that will be placed upon Plaintiffs, because these are Nationwide's documents, and Nationwide has familiarity with them, while Plaintiffs do not. Accordingly, Plaintiffs object to identifying specific contractual provisions as unduly burdensome and harassing under the circumstances.

In addition to their entry into the contracts and agreements evidenced by the documents in Exhibit "A" and the contracts not yet produced by them, Nationwide exercised authority or control over plan assets each and every time it received payments from mutual funds pursuant to the documents identified in Exhibit "A" and the contracts not yet produced by them. Plaintiffs do not claim that any specific acts, communications or omissions other than Nationwide's arranging for the payment of skimmed plan assets, as described above, and Nationwide's acceptance and retention of the payments of skimmed plan assets, as described above, constitute the exercise by Nationwide of control or authority over plan assets or a breach of fiduciary duty by Nationwide.

In particular, Plaintiffs do not seek recovery for harm caused to them by any misrepresentations or omissions to disclose by Nationwide. Furthermore,

Plaintiffs specifically disclaim that their cause of action rests upon any representations or omissions having been made to them, their understanding of any representations or omissions, their reliance upon any representations or omissions or them having taken any action or failed to take any action as a result of any representations or omissions by Nationwide.

While Plaintiffs have set forth the limited details provided to them, Plaintiffs cannot provide the details of *all* particular instances when mutual fund advisors made payments to Nationwide, because Plaintiffs are not in possession of that information. That information is solely in the possession of Nationwide and the mutual funds. Plaintiffs have requested discovery from Nationwide that would have revealed some or all of these details, but Nationwide objected to producing same on the grounds that it would not be relevant to class certification (to which discovery is now limited) and that providing such discovery would be unduly burdensome. Plaintiffs ultimately agreed that discovery at this level of detail is not necessary for the Court to decide class certification. In addition, as noted above, the actual payments of skimmed plan assets to Nationwide were apparently not broken down by Plan.

However, based upon the limited information available to Plaintiffs, Plaintiffs have compiled a chart of the funds actually invested in by the participants in the Plans, which chart is attached hereto as Exhibit "B." Nationwide finally produced on June 28, 2003, their Rate Book showing all the funds they offer and the amount of skimmed plan assets paid by each (N 014877 to

N 014893). A comparison of that document and Exhibit "B" shows the percentages of plan assets that would have been paid out of those participants' accounts on an annual basis by the mutual fund and/or mutual fund advisor to Nationwide.

**INTERROGATORY NO. 3** - With respect to each Plan, identify each and every specific instance in which defendants arranged for, accepted, retained, and kept plan assets as alleged in paragraphs 22, 25, 43 and 44 of the Second Amended Complaint and paragraphs 2, 22, 24, 42, and 43 of the proposed Third Amended Complaint, and for each such instance, (i) identify the specific plan asset or plan assets that defendants arranged for, accepted, retained or kept, and the specific owner of the plan asset; (ii) identify which defendant(s) arranged for, accepted, retained or kept the plan asset; and when the defendant(s) did so; (iii) state exactly how the defendants arranged for, accepted, retained or kept the plan asset, including every act, communication, or omission related thereto; and (iv) state whether any of the Plan's trustees, sponsors, administrators, participants, investment advisors, or authorized representatives knew at any time before July 2001 that any plan assets that were invested in Funds were being deducted by those Funds and transferred to Nationwide as alleged in paragraph 20 of the Second Amended Complaint and paragraph 20 of the proposed Third Amended Complaint and, if so, identify who had that knowledge, and state what they knew, when they had that knowledge, how they knew of these deductions and transfers, and any acts and communications they had regarding their knowledge, if any.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LOU HADDOCK, as trustee of <br> The Flyte Tool & Die, Incorporated <br> Deferred Compensation Plan, et al <br><br> PLAINTIFFS <br><br> v. <br><br> NATIONWIDE FINANCIAL SERVICES, <br> INC. and NATIONWIDE LIFE <br> INSURANCE COMPANY, <br><br> DEFENDANTS | § § § § § § § § § § § § § § § | CIVIL ACTION NO. <br> 3:01CV1552 (CFD) <br><br><br><br><br><br><br><br><br><br><br> September 24, 2003 |

## CLARIFIED REQUEST FOR PRODUCTION ARISING OUT OF THE DEPOSITIONS OF DEFENDANTS 30(B)(6) WITNESSES COTTING, BATH, SCRANTON AND GOSLEE

The depositions of Defendants' 30(b)(6) witnesses Cotting, Bath, Goslee and Scranton took place in Columbus, Ohio in February and March of 2003 by agreement of the parties. During the depositions, numerous documents were identified in the depositions that may be critical to this case. Request was made at the time of the depositions for the various documents. Defense counsel, attorney Dennis Kerrigan, requested that a list be sent to him identifying the documents that the Plaintiff's counsel requested as a result of the testimony of the witnesses. Defendants responded to the Plaintiff's informal requests with a formal response. Plaintiffs, after conference with attorney for Defendant, Charles Platt, now submit the below requests in formal fashion to assist in responding to the Defendants' objections and failures to produce. Plaintiffs re-urge these same requests originally made in February and March of 2003, then in writing shortly thereafter.

## DEFINITIONS

For purposes of these document requests, the following definitions shall apply:

A. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the paragraphs and subparagraphs contained under the heading below entitled "REQUEST FOR DUCMENTS TO BE PRODUCED" all responses that might otherwise be construed to be outside their scope.
B. "Complaint" means the Plaintiffs' most recent Amended Complaint filed in this action.
C. "Concerning" means relating to, referring to, describing, evidencing or constituting.
D. "Defendants" or "Nationwide" means Defendants Nationwide Financial Services, Inc. and Nationwide Life Insurance Company.
E. "Document" for purposes of these document requests if defined to be synonymous in meaning and equal in scope to the usage of the term "document" in Federal Rule of Civil Procedure 34(a), and shall include, without limitation, each and every

permanent or semi-permanent, physical or tangible embodiment of information, data, or communication, however produced or reproduced, now or at any time in each Plaintiff's possession, custody, or control, including without limitation notes, correspondence, papers, communications of any nature, telegrams, telexes, memoranda, facsimiles, materials stored electronically but not printed, electronic mail messages, notebooks of any character, summaries or records of personal conversations, diaries and calendars, routing slips, reports, publications, books, photographs, films, videotapes, sketches, drawings, minutes or records of meetings, transcripts of oral testimony or statements, reports and/or summaries of interviews, reports and/or summaries of investigations, agreements and contracts, including all modifications or revisions thereof, and reports or summaries of negotiations, court papers, brochures, promotional literature, pamphlets, press releases, instructions, financial statements (audited or unaudited), confirmations of purchases or sales, bills, checks, statements or security transactions, revisions and drafts of any documents, any tape recording, records, any computer databases, including but not limited to word processing and images stored on disks, tapes or other storage medium, and any other data compilations.

F. "Expense Reimbursement Fee" refers to any fee received by an entity for any administrative, recordkeeping or distribution services conducted on behalf of mutual funds or investment management firms, or sub-advisors, or underwriters, or other advisors, of mutual funds.

G. "Nationwide Annuity contract" refers to each annuity contract issued by Nationwide that was purchased by the Plan, or any of the Plans' participants and is referred to in the Complaint.

H. "Person" means any natural person or any business, legal or governmental entity or association, including, without limitation, any retirement plan.

I. "Plan Document" refers to any document establishing the Plans and any amendments or corporate resolutions relating thereto, including the Nationwide Annuity contracts and any and all documents required under ERISA to be maintained by the Plans or Plan Administrators and/or distributed to the Plan participants, such as the Summary Plan Description.

J. The use herein of the singular form of any word includes the plural and vice versa, and the use of any tense of a verb shall be considered to include within its meaning all other tenses of the verb used.

## INSTRUCTIONS

A. Unless otherwise indicated, the time period covered by these document requests is January 1, 1990 to the present, and shall encompass all documents and information relating in whole or in part to such period, or to events or circumstances during such period, even if dated, prepared, generated, or received prior to that period.

B. In producing documents, each Defendant is to furnish all responsive documents in its possession, custody, or control, or known to be available to such Defendant regardless of whether such documents are possessed directly by the Defendant.

C. References to an individual or person include any and all agents, advisors, employees, representatives, attorneys, successors-in-interest, and all other persons or entities acting in his, her or its behalf or under his, her, or its control.

D. Each Defendant is requested to produce the original and all non-identical copies, including all drafts, of each document requested. If a Defendant is not able to

|   |   |
|---|---|
| | produce the original of any document, the best available copy and all non-identical copies, including drafts, must be produced by the Defendant. |
| E. | All documents are to be produced in the same order as they are kept or maintained in the ordinary course of business. |
| F. | All documents are to be produced in the file, folder, envelope, or other container in which the documents are kept or maintained by each Defendant. If for any reason the container cannot be produced, copies of all labels or other identifying markings must be produced. Each Defendant must indicate for each document or set of documents being produced the name of the person in whose files the document(s) were found. |
| G. | Documents attached to each other shall not be separated. |
| H. | Documents not otherwise responsive to a Request shall be produced if such documents refer to, concerns, or explain the documents called for by the Request and constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar documents. |
| I. | Each request for documents and subparagraphs or subdivisions thereof shall be construed independently, and no other request or subparagraph or subdivision thereof shall be referred to or relied on for the purpose of limiting its scope except insofar as the request or subparagraph or subdivision construed expressly refers to another request or subparagraph or subdivision thereof. |
| J. | If any documents requested herein was at one time in existence, but has been lost, discarded, or destroyed, identify each such document including its date, author, recipients, subject matter, length, attachments, locations in which it was maintained, and circumstances of its loss, discarding, or destruction. |
| K. | If any requested document is not or cannot be produced in full, produce it to the extent possible, indicating what document or portion of any such document is not or cannot be produced and the reason therefor. |
| L. | If any Defendant claims any privilege as a basis for not answering any request or any portion thereof or for withholding any otherwise responsive document, the Defendant should provide Plaintiffs with a log containing the following information with respect to each such document or portion thereof: |

   i. The type of document (e.g., letter, memorandum, report, etc.)
   ii. The date of the document
   iii. The general subject matter of the document;
   iv. The author(s) of the document; and
   v. Each recipient of the document

| | |
|---|---|
| M. | If a Defendant contends that it would be unreasonable burdensome to obtain and provide all of the documents called for in response to any of these requests, or any portion thereof, then in response to the appropriate request the Defendant should set forth and/or product the following: |

   i. All documents and information available to the Defendant without undertaking what the Plan contends to be an unreasonable burden; and
   ii. The particular grounds on which the Defendant contends that additional efforts to obtain such documents and information would be unreasonably burdensome.

| | |
|---|---|
| N. | These documents requests are continuing in nature. The answers and responses to these requests are to be supplemented or amended by each Defendat as soon as practicable after new or additional information or documents are obtained which are responsive to these requests. |

O.  Production of documents by each Defendant must be made separately (in segregated groups) from the production of each other Defendant.

**REQUEST FOR DOCUMENTS TO BE PRODUCED**

REQUEST NO. 1.    REFERENCED IN EXHIBIT 519, N 014417

THE "OPPORTUNITY DESCRIBING FINANCIAL SUPPORT FROM MUTUAL FUND GROUPS," AS DESCRIBED IN THE REFERENCED EXHIBIT.

REQUEST NO. 2.    REFERENCED IN EXHIBIT 521, N 014446.

THE MISSING PAGES FOR THIS EXHIBIT WHICH CURRENTLY APPEARS TO END AT PAGE 12 BUT GOES TO PAGE 20. PRODUCE PAGES 12 THOUGH 20 WHICH WERE MISSING FROM THE EXHIBIT.

REQUEST NO. 3.    REFERENCED IN EXHIBIT 521, N 014446.

ALL BUSINESS PLANS 1994 TO PRESENT.

ALL BUSINESS PLANS FOR THOSE OTHER TEAMS, IF THEY EXIST, FROM THE TIME PERIOD 1993 TO PRESENT. THIS INCLUDES, BUT IS NOT LIMITED TO, THE TEAM FOR PUBLIC SECTOR, TEAM FOR INDIVIDUAL ANNUITY PRODUCTS, TEAM FOR LIFE INSURANCE AND VARIABLE LIFE INSURANCE.

TO THE EXTENT THAT THERE WERE PRODUCT MANAGERS THAT CREATED BUSINESS PLANS FOR THE VARIOUS PRODUCTS THAT ARE AT ISSUE THAT WERE DISCUSSED IN THE DEPOSITIONS OF COTTING, BATH AND GOSLEE, PRODUCE THOSE BUSINESS PLANS ALSO.

REQUEST NO. 4.    REFERENCED IN EXHIBIT 526, N 014427.

ALL MINUTES PREPARED BY RON EPPLEY SINCE 1995. ALSO, THERE ARE NO MEETING MINUTES FOR THE 4/5/95 MEETING REFERENCED IN THE EXHIBIT, PRODUCE THOSE AS WELL.

REQUEST NO. 5.    REFERENCED IN EXHIBIT 526, N 014427.

MEETING MINUTES FOR 4/5/95 REFERENCED IN EXHIBIT 526

REQUEST NO. 6.    REFERENCED IN EXHIBIT 526, N 014427.

FINAL 1994 BUSINESS PLANS REFERENCED IN N 014445. (INCLUDES KEY INDICATORS OF SUCCESS)

REQUEST NO. 7.    REFERENCED IN EXHIBIT 530, N 014413.

A MEMO FROM MARCH 29, 1995, TO MANAGEMENT TEAMS THAT IS REFERENCED IN THE FIRST PARAGRAPH OF EXHIBIT 530, N 014413.

REQUEST NO. 8.   REFERENCED IN EXHIBIT 530, N 01441.

THE PRO FORMA REFERENCED IN EXHIBIT 530, N 014413, TOGETHER WITH ALL PRO FORMAS PREPARED BY BATH OR ANYONE UNDER HIS DIRECTION THAT REFLECT AND/OR REFERENCE MUTUAL FUND REVENUE.

REQUEST NO. 9.   ANY MEETING MINUTES FROM ANY BOARD OF DIRECTORS OF ANY NATIONWIDE AFFILIATED COMPANY REFLECTING AND/OR REFERENCING "MUTUAL FUND REVENUE" AND/OR "MUTUAL FUND REVENUE SHARING" AND/OR "MUTUAL FUND REIMBURSEMENT."

REQUEST NO. 10.   REFERENCED IN EXHIBIT 533, N 03553.

THE TASK LIST THAT RELATES TO THIS EXHIBIT TOGETHER WITH ANY TASK LIST THAT REFLECTS AND/OR REFERENCES "MUTUAL FUND REVENUE," AND/OR "MUTUAL FUND REVENUE SHARING" AND/OR "MUTUAL FUND REIMBURSEMENT."

REQUEST NO. 11.   REFERENCED IN EXHIBIT 535, N 013548.

ALL WRITTEN COMMUNICATIONS BY WHICH YOU (DEFENDANTS) CLAIM THAT ANY ENTITY ASSOCIATED WITH NATIONWIDE FINANCIAL SERVICES COMPANY (NFS) OR NATIONWIDE LIFE INSURANCE COMPANY INFORMED CONTRACT HOLDERS AND/OR PPA'S THAT IT WAS RECEIVING PAYMENTS FROM THE MUTUAL FUND HOUSES.

REQUEST NO. 12.   REFERENCED GENERALLY IN EXHIBIT 537. N 14405.

ALL "PROJECT CHARTERS" RELATING TO MUTUAL FUND REVENUE AND/OR MUTUAL FUND REVENUE SHARING.

REQUEST NO. 13.   THE RATE BOOKS IDENTIFIED IN THE DEPOSITION OF COTTING, BATH and/or GOSLEE.

REQUEST NO. 14.   THE ACCOUNTING DATA PROCEDURES REFERENCED IN THE DEPOSITIONS OF COTTING, BATH and/or GOSLEE.

REQUEST NO. 15.   ALL "VIDS" ENTRIES FOR THE LAST 6 YEARS REFLECTING AND/OR REFERENCING "MFR." AS REFERENCED IN THE DEPOSITION OF COTTING.

REQUEST NO. 16.   PERSONAL FILE FOLDERS OF COTTING, BATH and/or GOSLEE THAT REFLECT AND/OR REFERENCE "MFR," "REVENUE SHARING," "MUTUAL FUND REVENUE," and/or "MUTUAL FUND REIMBURSEMENT."

REQUEST NO. 17.   THE AUDIT REPORT AND RESPONSES TO THAT REPORT FROM SECOND QUARTER OF 2002.

REQUEST NO. 18.   A LISTING OF ALL DESCRIPTOR CODES FOR SUBACCCOUNTS FOR "MFR."

REQUEST NO. 19.   DOCUMENT CALLED "PROCEDURES" SHOWING A LISTING OF ACCOUNTING PROCEDURES FOR "MFR" AS DESCRIBED IN THE DEPOSITIONS OF COTTING, BATH and/or GOSLEE.

REQUEST NO. 20.   OLD DOCUMENTATION FROM THE PERSON WHO WAS PREVIOUSLY IN MS. COTTING'S POSITION WHEN MS. COTTING BEGAN HER CURRENT JOB RELATING TO "REVENUE SHARING,' "MFR" AND/OR "MUTUAL FUND REVENUE," AND/OR "MUTUAL FUND REIMBURSEMENT."

REQUEST NO 21.   ALL VERSIONS OF THE "RATE BOOK" IN EXCEL FORMAT.

REQUEST NO. 22.   MEMO ON EXCEL SHEET REFERENCED BY MS. COTTING. (WE REQUEST A DIGITAL COPY AS WELL AS HARD COPY.)

REQUEST NO. 23.   THE ASSIGNMENT AGREEMENT RELATING TO "MFR" BETWEEN NATIONWIDE FINANCIAL SERVICES AND NATIONWIDE LIFE INSURANCE.

REQUEST NO. 24.   A LISTING OF ALL CODES UNDER CODES 2800 AND 2900 AND ALL OF THE ASSOCIATED LEDGER SUBCODES AS REFERENCED IN THE DEPOSITIONS OF COTTING, BATH and/or GOSLEE.

REQUEST NO. 25.   MONTHLY "MFR" REPORTS AND/OR COMPARABLE REPORTS SINCE INCEPTION. (MS. COTTING SAID THAT THIS IS NOT BROKEN DOWN BY MUTUAL FUND HOUSES BUT SHE SAID THAT SHE COULD DO THAT. [Cotting deposition transcript p. 55]ACCORDINGLY, WE REQUEST SUCH A BREAKDOWN).

REQUEST NO. 26.   THE DISTRIBUTION LIST FOR "MFR" REPORT.

REQUEST NO. 27.   THE QUARTERLY EQUITIES FORECASTS PREPARED BY MS. COTTING SINCE INCEPTION.

REQUEST NO. 28.   THE RATE BOOKS REFERRED IN THE DEPOSITION OF JOHN SCRANTON IN PAGE 9, LINE 19 THROUGH PAGE 11, LINE 8 WHICH MR. SCRANTON GAVE TO DEFENSE COUNSEL OVER 6 MONTHS AGO.

REQUEST NO. 29.   THE ONE DOCUMENT COMPILED, AND GIVEN TO DEFENSE COUNSEL OVER 6 MONTHS AGO, SHOWING THE AMOUNTS OF MONIES NATIONWIDE RECEIVED FROM THE MUTUAL FUNDS AND REFERRED TO IN THE DEPOSITION OF JOHN SCRANTON AT PAGE 9 LINE 14 THROUGH PAGE 11 LINE 8. AS A "STATUS REPORT" AND AN "HISTORICAL VIEW OF THE

MONIES..." RECEIVED BY NATIONWIDE, AND UPDATES OR MORE RECENT VERSIONS OF SAME.

REQUEST NO. 30.   ALL MONTHLY AND ANNUAL REPORTS AND STATUS REPORTS THAT MS. COTTING AND OTHER NATIONWIDE EMPLOYEES HAD PREPARED SHOWING MONIES RECEIVED BY NATIONWIDE FROM MUTUAL FUNDS AND PROVIDED TO DEFENSE COUNSEL "EARLY ON WHEN..." MR. SCRANTON "...WAS NOTIFIED THAT A LAWSUIT WAS ONGOING...," AND REFERRED TO IN THE DEPOSITION OF JOHN SCRANTON AT PAGE 9 LINE 14 THROUGH PAGE 11 LINE 8, AND UPDATES OR MORE RECENT VERSIONS OF SAME.

REQUEST NO. 31.   THE ESTIMATION PREPARED AND PROVIDED TO DEFENSE COUNSEL OVER A YEAR AGO CORRELATING THE AMOUNT OF MFR RECEIVED TO EXPENSES REFERRED TO IN THE DEPOSITION OF JOHN SCRANTON PAGE 18 LINE 7 THROUGH PAGE 19 LINE 2, AND ANY UPDATES OF SAME.

Dated: September 24, 2003

By: _____

Gregory G. Jones
State Bar Card No. 10889370

Law Firm of Gregory G. Jones, P.C.
603 S. Main Street, Suite 200
Grapevine, Texas 76051
Metro: (817) 424-9001
Metro Fax: (817) 424-1665

Richard A. Bieder, Esq.
Michael A. Stratton, Esq.
Antonio Ponvert III, Esq.
Koskoff, Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

Marc Stanley, Esq.
Roger Mandel, Esq.
Stanley, Mandel & Iola
3100 Monticello Ave, Ste 750
Dallas, TX 75205

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served via facsimile on this ____ day of _____, 2003, on the following counsel of record:

Dennis F. Kerrigan, Jr.
Brian O'Donnell, Esq. (CT 16041)
LeBoeuf, Lamb, Greene & MacRae, LLP
Goodwin Square
225 Asylum Street
Hartford, CT 06103

Charles C. Platt (CT 23036)
Wilmer, Cutler & Pickering
399 Park Avenue
New York, NY 10022

_____
Gregory G. Jones