Slip Copy
(Cite as: 2003 WL 22471945 (S.D.N.Y.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

Ashwani GOEL, Plaintiff,
v.
UNITED STATES DEPARTMENT OF JUSTICE,
Immigration and Naturalization Service and
Indotronix International Corp., Defendants.

No. 03 Civ. 0579(HB).

Oct. 30, 2003.

Whistleblower sued his former employer for retaliatory discharge, and government for failure to protect him from such retaliation. Government's motion to dismiss was granted in part, and denied with respect to breach of fiduciary duty claim under the Federal Tort Claims Act (FTCA), 2003 WL 22047877. On reconsideration, the District Court, Baer, J., held that government's alleged breach of assurance of confidentiality given to employee was not cognizable under the FTCA.

Motion granted.

United States ☞78(5.1)

393k78(5.1) Most Cited Cases

Government's alleged breach of assurance of confidentiality given to employee who assisted agency's investigation of employer's fraud was not cognizable under the Federal Tort Claims Act (FTCA), where claim was properly cast as claim for breach of an implied contract, and, under New York law, communication of confidential information was not sufficient to create fiduciary relationship between employee and agency. 28 U.S.C.A. § 1346(b).

*OPINION & ORDER*

BAER, J.

*1 Defendants United States Department of Justice (hereinafter "USDOJ") and the Immigration and Naturalization Service (hereinafter "INS") (collectively "the Government"), move for reconsideration of my Opinion and Order dated August 29, 2003 that recognized plaintiff Ashwani Goel's (hereinafter "Goel" or "plaintiff") claim against the Government for breach of confidentiality. Subsequently, Goel filed an additional motion, alleging continuing breaches of fiduciary duty by the INS ("motion to amend"). For the foregoing reasons, defendants' motion is granted and plaintiff's remaining claims against the Government, raised in both his original filing and his subsequent motion, are dismissed.

I. BACKGROUND
A. Relevant Facts

Indotronix International Corporation (hereinafter "IIC") hired Goel for the position of preparing and filing visa petitions for its foreign workers. Goel alleges that IIC provided him false information to submit in these petitions. Goel claims that he refused to work on false visa petitions and subsequently reported to INS that IIC knowingly hired aliens unauthorized to work in the United States. Several years after Goel first submitted his allegations, in or around April 2000, INS initiated an investigation. After completing their investigation, INS evidently determined that it had insufficient grounds to take action against IIC. Goel alleges that on November 20, 2000, IIC retaliated against him for his participation in the INS investigation, by terminating his employment.

Goel further contends that INS breached its duty of confidentiality--that had arisen when INS Executive Associate Commissioner Michael Pearson (hereinafter "Pearson") assured him "full confidentiality and agency responsibility against employer retaliation for any kind of loss for [his] participation in [the] INS federal investigation against IIC. Amended Complaint (hereinafter "Am. Compl.") at 5. Goel claims that despite these assurances, INS agents both contacted him and left repeated messages for him at his workplace, in order to attain information and documents substantiating his claim. These assurances, coupled with Pearson's allegedly unjust conduct, led this Court to conclude that there was sufficient pleading to establish a claim of breach of fiduciary duty by the INS.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

B. Procedural History

On August 29, 2003, this Court dismissed all of Goel's claims against the Government, except for his claim under the Federal Tort Claims Act (hereinafter "FTCA") for breach of fiduciary duty. The Government filed its motion for reconsideration on September 15, 2003, requesting that this Court reconsider the portion of its August 29, 2003 decision, maintaining Goel's FTCA claim against the INS for breach of fiduciary duty, and ultimately dismiss this claim for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. On September 29, 2003, Goel filed his motion to amend. By letter dated October 22, 2003, Michael H. Sussman, Goel's attorney (hired subsequent to the submission of the government's fully-briefed motion for reconsideration and Goel's motion to amend), withdrew Goel's motion to amend and, as permitted by this Court's memo-endorsement of October 15, 2003, submitted an additional opposition to the government's motion for reconsideration.

II. DISCUSSION
A. Standard of Review

*2 Local Rule 6.3 of the Southern District of New York, governing motions for reconsideration, states in relevant part that "there shall be served with the notice of motion [for reconsideration] a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." *See also Shamis v. Ambassador Factors Corp.,* 187 F.R.D. 148, 151 (S.D.N.Y.1999). Motions for reconsideration are not vehicles for repetitive arguments or invitations to advance new facts or concepts. *Id.* Rather, when confronted with a motion for reconsideration, the district court has discretion to re-evaluate a prior decision, that upon further reflection, appears to be incorrect. *Id.*

B. Governmental Tort Liability Under the FTCA

The INS' alleged breach of confidence is a serious offense, not surprisingly, a view shared by plaintiff's attorney is his well-reasoned response. Unfortunately, his response misses the mark. Upon reconsideration, I conclude that the breach is more properly cast as a breach of an implied contract, and therefore, is not cognizable under the FTCA. The FTCA waives sovereign immunity and provides for district court jurisdiction in suits against the United States alleging "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Succinctly, the FTCA provides a vehicle through which to bring suit against the government for its commission of a tort.

It is black-letter law that in the absence of a duty, there can be no liability in tort. Goel alleges that the Government inherited a duty to maintain his confidentiality when Pearson made assurances regarding the protection of Goel's privacy. In my August 29, 2003 Opinion, I explained that under New York law, "a fiduciary relationship exists when confidence is reposed on one side and there is resulting superiority and influence on the other." 8/29/03 Op. at 8, citing *Northeast Gen. Corp. v. Wellington Adver., Inc.,* 82 N.Y.2d 158, 173, 604 N.Y.S.2d 1, 624 N.E.2d 129 (1993). Under this theory, I concluded that after drawing all reasonable inferences in Goel's favor, "the alleged breach of fiduciary duty arising from the breach of confidentiality may stand as a cognizable basis for recovery under the FTCA." 8/29/03 Op. at 8. However, under New York law, "the mere communication of confidential information [is not] sufficient in and of itself to create a fiduciary relationship" between individuals who are not already associated in such a manner. *Wiener v. Lazard Freres & Co.,* 241 A.D.2d 114, 672 N.Y.S.2d 8, 14 (1st Dep't 1998). Consequently, Goel's FTCA claim against the INS is not sustainable. While Goel's action under the FTCA is improper, he may raise this claim under the Tucker Act, 28 U.S.C. § 1346(a)(2), 1491(a)(1), in the United States Court of Federal Claims--the court with exclusive jurisdiction over contract actions against the United States for damages in excess of $10,000.

C. Policy Considerations Favoring Duty to Informants

*3 While I come out this way, and assuming some truth to plaintiff's assertions, the actions of the INS agents are at, least disheartening, and at worst

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

reprehensible. It is important to underscore that despite the Government's arguments to the contrary, New York, while not yet recognizing a *fiduciary* relationship in the fact pattern here at issue, has acknowledged the importance of "encourag[ing] the reporting of possible violations of the law by protecting the anonymity of informants," and has even created a public interest privilege that protects such disclosures from discovery in the course of litigation. *Klein v. Lake George Park Comm'n*, 261 A.D.2d 774, 783, 689 N.Y.S.2d 782 (3d Dep't 1999) (public interest privilege protects the disclosure of the identity of an informant who notified the Commission that individuals were discharging raw sewage into the lake in a case where the Commission found insufficient evidence to support the charge). The public interest privilege allows public officials to protect from disclosure, information presented to them "where the public interest requires that such confidential communications or the sources should not be divulged." *See World Trade Ctr. Bombing Litig. v. Port Auth. of New York and New Jersey*, 93 N.Y.2d 1, 8, 686 N.Y.S.2d 743, 709 N.E.2d 452 (1999). "It is just about universally true that an investigator is able to encourage such free communication only if he can give assurance that the communication and the identity of its maker will be kept confidential." *City of New York v. Bustop Shelters, Inc.*, 104 Misc.2d 702, 428 N.Y.S.2d 784, 791 (N.Y.Co.Sup.Ct.1980). Although this protection only exists in the context of discovery, the policy rationale behind the privilege speaks directly to Goel's claims, and forecasts that protections at other stages may ensue in the near future.

### III. CONCLUSION

For the foregoing reasons, the Government's motion for reconsideration is granted and Goel's remaining claim against the INS for breach of confidentiality under the FTCA is dismissed for lack of subject matter jurisdiction and failure to state a claim. The Clerk of the Court is requested to close this motion and any remaining motions, and remove this case from my docket.

IT IS SO ORDERED.

2003 WL 22471945 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

H
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

SOFTVIEW COMPUTER PRODUCTS CORP.
and Ergo View Technologies Corp., Plaintiffs,
v.
HAWORTH, INC., Defendant.

No. 97Civ.8815(KMW)(HBP).

July 10, 2000.

*OPINION AND ORDER*

PITMAN, Magistrate J.

I. *Introduction*

*1 By Opinion and Order dated March 31, 2000, I granted in part and denied in part a motion by plaintiffs Softview Computer Products Corp. and Ergo View Technologies Corp. (collectively, "Softview") to compel the production of documents withheld by defendant Haworth, Inc. ("Haworth") on the basis of the attorney-client and work-product privileges. *Softview v. Haworth,* 97 Civ. 8815(KMW) (HBP), 2000 WL 351411 (S.D.N.Y. March 31, 2000) (the "March 31 Opinion"). Haworth now moves for partial reconsideration with regard to ten of the documents which I ordered produced.

II. *Facts*

Familiarity with the facts contained in my March 31 Opinion is assumed. I restate them here only to the extent necessary to an understanding of the issues raised by the present motion.

Both Softview and Haworth manufacture and sell adjustable computer keyboard support mechanisms. In 1986, Haworth obtained U.S. Patent No. 4,616,798 ("the '798 patent") for its mechanism. Softview introduced its accused mechanism in 1997.

Softview commenced this action seeking a declaratory judgment that (1) its mechanism does not infringe the '798 patent; (2) the '798 patent is invalid; (3) Haworth engaged in inequitable conduct in obtaining the '798 patent; (4) Haworth misused the '798 patent, and (5) Haworth has violated antitrust laws. In addition to denying the material allegations in Softview's complaint, Haworth has asserted a counterclaim alleging that Softview has willfully infringed the '798 patent.

In response to Softview's discovery requests, Haworth initially produced a privilege log which listed five hundred and twenty documents that Haworth maintained were protected by the attorney-client privilege and/or the work-product doctrine. Haworth later withdrew its claims of privilege as to a number of those documents, leaving four hundred and twelve (412) in dispute.

Softview challenged Haworth's assertions of privilege as to the withheld documents on a number of grounds. After conducting an *in camera* review of the disputed documents, I issued an Opinion and Order which directed the production of one hundred and thirty-one (131) of those documents. *Softview v. Haworth, supra,* 2000 WL 351411 at *20. Haworth now moves for partial reconsideration with respect to ten of the documents I ordered produced.

III. *Analysis*

To be entitled to reargument pursuant to Local Civil Rule 6.3, a movant "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion[,]" *Monaghan v. SZS 33 Assoc.,* 153 F.R.D. 60, 65 (S.D.N.Y.1994), and which "might materially have influenced its earlier decision." *Morser v. AT & T Info. Sys.,* 715 F.Supp. 516, 517 (S.D.N.Y.1989). *See Horsehead Resource Dev. Co. v. B.U.S. Envtl. Services, Inc.,* 928 F.Supp. 287, 289 (S.D.N.Y.1996); *Anglo American Ins. Co. v. Calfed Inc.,* 940 F.Supp. 554, 557 (S.D.N.Y.1996); *Morse/Diesel Inc. v. Fidelity & Deposit Co.,* 768 F.Supp. 115, 116 (S.D.N.Y.1991); *Schonberger v. Serchuk,* 742 F.Supp. 108, 119 (S.D.N.Y.1990).

*2 "Reargument is not a forum for new theories[,]" *CMNY Capital v. Deloitte & Touche,* 821 F.Supp. 152, 162 (S.D.N.Y.1993), and the Local Rule permitting reargument should be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court." *Bonnie & Co. Fashions,*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2000 WL 943415
(Cite as: 2000 WL 943415 (S.D.N.Y.))

Page 2

Inc. v. Bankers Trust Co., 170 F.R.D. 111, 113 (S.D.N.Y.1997) (citations omitted). A party making a motion for reargument may not advance new facts, issues, or arguments not previously presented to the Court. *Weissman v. Fruchtman*, 124 F.R.D. 559, 560 (S.D.N.Y.1989). Finally, the decision to grant or deny a motion to reargue is "within the sound discretion of the district court." *In re Payroll Express Corp.*, 216 B.R. 713, 716 (S.D.N.Y.1997).

Haworth argues here that the Court overlooked certain factual matters regarding the ten documents in issue that would have led to a finding that these documents are privileged. Softview has submitted a memorandum of law in opposition in which it argues that Haworth has not met its burden of showing that the documents in issue are entitled to protection (Plaintiff and Counterclaim Defendant's Memorandum of Law in Opposition, dated April 28, 2000 ("Softview Mem.")). I have considered the parties' submissions and re-examined each of the ten disputed documents, and I address each of them in turn.

A. *Document 42*

I concluded in my March 31 Opinion that neither the work product doctrine nor the attorney-client privilege protected this document, a letter from patent counsel to Haworth dated December 1, 1983, because I found that it contained only a communication regarding the anticipated cost of translating Haworth's patent and filing a European patent application. Haworth argues that, in addition to this information, document 42 also contains confidential legal advice concerning potential infringement in Europe, and therefore qualifies for protection by the attorney-client privilege (Memorandum of Law in Support of Haworth's Motion, dated April 14, 2000, ("Haworth Mem.") at 4).

Upon re-examination, I adhere to my original decision concerning document 42. The material that Haworth claims is privileged relates solely to prosecuting the European patent application in a manner that will minimize expense. The advice given is business advice and not legal advice. Moreover, even if the content of the letter can be considered legal advice, it is not legal advice that reflects a client confidence, and, therefore, is not privileged. *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 441-42 (S.D.N.Y.1995) (attorney-client privilege reaches communications from attorney to client "at least to the extent that such advice may reflect confidential information conveyed by the client."). In addition, document 42 contains no indication that it was prepared in contemplation of litigation.

B. *Document 57*

Document 57 is a letter dated January 7, 1985, from Haworth's patent counsel requesting that the European Patent Office (EPO) conduct a patentability search. Haworth argues that this document reflects patent counsel's work product in connection with the prosecution of its patent before the United States Patent and Trademark Office (PTO), which he carried out while anticipating the possibility of litigation involving Haworth's competitors.

*3 Upon re-examination, document 57 contains counsel's thought processes and evaluation of the significance of certain features of Haworth's invention. Accordingly, reconsideration is granted, and upon reconsideration I find that this document was properly withheld on the basis of the work-product doctrine. *See In re Minebea Corp.*, 143 F.R.D. 494, 499 (S.D.N.Y.1992).

C. *Document 58*

Document 58 is patent counsel's notes of a prior art search he conducted at the PTO in connection with Haworth's prosecution of the '798 patent. Haworth argues that these handwritten notes reveal counsel's thought processes because they disclose the classes and sub-classes of patents searched by counsel with a view to the possibility of litigation with competitors. (Haworth Mem. at 7).

Upon re-examination, I find that this document does reflect counsel's thought processes regarding the significance of certain prior art, and therefore grant reconsideration. Upon reconsideration, document 58 was properly withheld on the basis of work-product immunity.

D. *Document 64*

Haworth next argues that document 64, a letter dated February 26, 1985, from counsel to Haworth, is not only a status report, as described in my March 31 Opinion, but also contains confidential legal

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

advice concerning the filing of a continuation application. (Haworth Mem. at 8).

Upon re-examination, I find that document 64 contains only one sentence which qualifies for protection, while the rest of the document is merely a status report. Accordingly, reconsideration is granted, and, upon reconsideration I modify my March 31 Order only to the extent that Haworth is directed to produce document 64 with the second sentence of the first para-graph redacted.

E. *Document 77*

Document 77 is a letter dated July 3, 1985, from patent counsel to a Haworth official discussing a set of claims submitted to the EPO. Haworth argues that this letter contains protected attorney-client communications. (Haworth Mem. at 8).

Upon re-examination, this document contains the opinions and advice of counsel regarding the drafting of claims in connection with Haworth's European patent application. My March 31 Opinion incorrectly referred to it as "a set of claims ... submitted to the EPO." Accordingly, reconsideration is granted, and upon reconsideration I find that this document was properly withheld on the basis of the attorney-client privilege.

F. *Document 79*

Document 79 is a letter dated September 10, 1985, from counsel to Haworth, which advises Haworth of the status of its United States patent application. My March 31 Opinion denied protection to this document on the ground that it was a status report. Haworth argues that I overlooked that portion of the letter which contains counsel's analysis, advice and recommendations regarding the prosecution of Haworth's patent application.

Upon re-examination, document 79 does, in part, contain counsel's legal advice and opinion regarding the prosecution of the '798 patent and that a portion of the document is, therefore, protected by the attorney-client privilege. Accordingly, reconsideration is granted and, upon reconsideration, I find that document 79 should be produced with the second sentence of the second paragraph on page one and the last two paragraphs on page one should be redacted. *See In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 806 (Fed.Cir.2000). Although Haworth asserts that the third paragraph on page one contains legal analysis, I conclude that it does not; its contents are intuitive.

G. *Document 95*

*4 Document 95 is a letter dated May 14, 1986, from Haworth's German patent counsel to Haworth's United States counsel, advising of the status of Haworth's EPO application. Haworth argues that the Court overlooked the fact that this letter also contains confidential legal analysis by Haworth's German counsel regarding possible amendments to Haworth's EPO application.

Upon re-examination, I find that this letter does, in part, contain such confidential legal advice. Accordingly, I grant reconsideration and, upon reconsideration, modify my March 31 Opinion to extend attorney-client protection to the last three sentences on page one of document 95. Document 95 should be produced with these sentences redacted.

H. *Document 97*

Document 97, a letter dated May 29, 1986, from counsel to Haworth, is a status report in which counsel advised Haworth that the EPO examiner had rejected certain of the claims in Haworth's EPO application. Haworth argues that reconsideration is appropriate on the ground that the Court overlooked a portion of the letter which contains counsel's analysis and opinion regarding the significance of the examiner's actions.

Upon re-examination, I find that this letter does, in part, contain counsel's confidential legal opinion regarding regarding the prosecution of Haworth's European patent application. Accordingly, reconsideration is granted and, upon reconsideration, I find that the third paragraph on page one of document 97 was properly withheld by Haworth on the basis of the attorney-client privilege. Document 97 should be produced with this paragraph redacted.

I. *Document 183*

This document consists of a cover sheet and a list of prior art references, sent from patent counsel to litigation counsel. Haworth argues that the Court

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

overlooked that fact that this document was prepared by patent counsel to assist litigation counsel in a lawsuit involving one of Haworth's competitors and, therefore, is protected by the work-product doctrine.

Upon re-examination, I find that this document was prepared to assist in litigation. Accordingly, reconsideration is granted as to this document, and, upon reconsideration, I find that work-product immunity is properly asserted as to this document.

J. *Document 233*

This document is a facsimile dated October 11, 1990, from patent counsel to litigation counsel. My March 31 Opinion withheld protection from this document on the ground that it was merely a transmittal letter. Haworth argues that this document also contains a request from Haworth, through its counsel, for legal advice regarding a settlement proposal.

Upon re-examination, I find that this document contains a request for legal advice and that portion of the letter was properly withheld. Accordingly, reconsideration is granted and, upon reconsideration, I find that the last two sentences of the second paragraph of this document are protected by the attorney-client privilege. Document 233 should be produced with those sentences redacted.

IV. *Conclusion*

*5 Accordingly, my March 31 Opinion and order is hereby modified on reconsideration only to the extent that: (1) Softview's motion to compel is denied as to documents 57, 58, 77 and 183; (2) Haworth is directed to produce document 42 in its entirety; (3) Haworth is directed to produce document 64 with the redaction of the second sentence of the initial paragraph; (4) Haworth is directed to produce document 79 with the redaction of the second sentence of the second paragraph on page one and the last two paragraphs on page one; (5) Haworth is directed to produce document 95 with the last three sentences on page one redacted; (6) Haworth is directed to produce document 97 with the redaction of the third paragraph on page one, and (7) Haworth is directed to produce document 233 with the redaction of the last two sentences of the second paragraph.

2000 WL 943415, 2000 WL 943415 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

In re CURRENCY CONVERSION FEE Antitrust Litigation

No. MDL 1409, M 21-95.

Oct. 21, 2003.

Class action was brought, alleging price fixing conspiracy between credit card issuers and member banks, with respect to currency conversion fees. Claimants moved for disclosure of specified documents. The District Court, Pauley III, J., held that: (1) issuer waived right to assert attorney-client privilege as to documents given to outside company providing computer services; (2) description of legal issues, prepared by employee after discussion with house attorney, was subject to attorney-client privilege; (3) self critical analysis privilege did not cover paragraph outlining problems with currency conversion rates; (4) incident report was covered by privilege; and (5) communications with attorney regarding another litigation was privileged.

Motion granted in part, denied in part.

See, also, 2003 WL 22097502.

**[1] Witnesses ☞219(3)**

410k219(3) Most Cited Cases

Credit card issuer, sued for violating Sherman Act and Truth in Lending Act (TILA), waived attorney-client privilege as to documents provided to outside company providing computer services, despite claim that outside company was functional equivalent of issuer's own employees, and no outside disclosure had occurred. 15 U.S.C.A. §§ 1 et seq., 1601 et seq.

**[2] Witnesses ☞201(1)**
410k201(1) Most Cited Cases

Attorney-client privilege protected from discovery, in suit alleging violation of Sherman Act and Truth in Lending Act (TILA), one-paragraph description of potential legal issue relating to credit card issuer's foreign currency conversion rate, drafted by employee after consultation with in-house attorney.

**[3] Witnesses ☞184(1)**
410k184(1) Most Cited Cases

Self-critical analysis privilege did not shield from discovery, in suit claiming violations of Sherman Act and Truth in Lending Act (TILA), paragraph outlining certain problems being experienced with currency conversion rates; document was not produced pursuant to any type of review serving cognizable public interest, as required for disclosure exception to apply.

**[4] Witnesses ☞201(1)**
410k201(1) Most Cited Cases

**[4] Witnesses ☞219(3)**
410k219(3) Most Cited Cases

Attorney client privilege shielded from disclosure, in suit alleging violations of Sherman Act and Truth in Lending Act (TILA), incident report summarizing in-house legal advice on and resolution of particular issue, even though subject matter of report had been publicly disclosed.

**[5] Witnesses ☞201(2)**
410k201(2) Most Cited Cases

Attorney client privilege shielded from disclosure, in suit alleging violation of Sherman Act and Truth in Lending Act (TILA) involving credit card currency conversion rates, incident report summarizing in-house legal advice on and resolution of particular issue, despite claim that communications perpetuated crime or fraud, in furtherance of credit card issuer's deliberate policy of frustrating disclosure requirements of TILA; conclusory allegations of fraudulent intent did not provide sufficient information to allow prudent person to suspect perpetration or attempted perpetration of crime or fraud, as required for exception to privilege. 15 U.S.C.A. § 1601 et seq.

**[6] Witnesses ☞201(1)**
410k201(1) Most Cited Cases

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Communications between credit card issuer and its in-house counsel, regarding another litigation, was shielded by attorney-client privilege in suit against issuer claiming violations of Sherman Act and Truth in Lending Act (TILA); communications involved seeking and giving of legal advice. 15 U.S.C.A. §§ 1 et seq., 1601 et seq.

Merrill G. Davidoff, Berger & Montague, P.C., Philadelphia, Pennsylvania, for Plaintiffs.

Charles E. Buffon, Covington & Burling, Washington, D.C., for Defendants Bank One Corporation and First USA Bank, N.A.

### MEMORANDUM AND ORDER

PAULEY, J.

*1 This consolidated class action alleges violations of the Sherman Act, 15 U.S.C. § 1 et seq., and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., arising out of an alleged price-fixing conspiracy by and among Visa and Mastercard and their member banks with respect to currency conversion fees. [FN1] Presently before this Court is plaintiffs' motion to compel defendants Bank One Corporation and First USA Bank, N.A. (collectively, "First USA") to produce documents that defendants claim are shielded by various privileges including the attorney-client privilege, attorney work product privilege and self-critical analysis privilege. For the reasons set forth below, plaintiffs' motion is granted in part and denied in part.

> FN1. For a comprehensive overview of the facts and legal issues at the heart of this action, this Court refers to its prior decision, familiarity with which is presumed. See In re Currency Conversion Fee Antitrust Litig., 265 F.Supp.2d 385 (S.D.N.Y.2003).

### DISCUSSION

I. *Legal Standards*

The burden of establishing the existence of the attorney-client privilege rests on the proponent of the privilege. *von Bulow v. von Bulow,* 811 F.2d 136, 144 (2d Cir.1987); *Nat'l Educ. Training Group, Inc. v. Skillsoft Corp.,* No. M8-85 (WHP), 1999 WL 378337, at *3 (S.D.N.Y. June 10, 1999). "To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Constr. Prod. Research, Inc.,* 73 F.3d 464, 473 (2d Cir.1996); *accord Liberty Envtl. Sys., Inc. v. County of Westchester,* No. 94 Civ. 7431(WK) (MHD), 1997 WL 471053, at *1 (S.D.N.Y. Aug. 18, 1997). A party waives privilege, however, "by a voluntary disclosure of an otherwise privileged communication to a third party." *Skillsoft,* 1999 WL 378337, at *3; *see also In re Horowitz,* 482 F.2d 72, 81 (2d Cir.1973) ( "subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed"); *Nelson v. Greenspoon,* 103 F.R.D. 118, 123-24 (S.D.N.Y.1984) ("[D]ocumentary communications to or from third parties are not confidential.")

II. *The First Data Documents*

[1] The first category of documents that plaintiffs allege are discoverable (the "First Data Documents") are documents that First USA disclosed to employees of First Data Resources, Inc. ("First Data"), a "company that provides computing services, consulting services, and other support services to credit card issuers," including First USA. (First USA Opp. at 1.) Plaintiffs do not, for the purposes of this motion, contest First USA's claim that the First Data Documents are shielded by the attorney-client privilege in the first instance. Rather, plaintiffs allege that because First Data is a third party, i.e., is a distinct corporate entity, "[t]he disclosure of confidential information to [First Data] constitutes a waiver of the attorney- client privilege." (Pl. Br. at 8.) First USA, however, claims that the First Data Documents remain privileged because the First Data employees to whom they were disclosed were the "functional equivalent" of First USA employees.

*2 To buttress its position, First USA relies on the "limited number of cases" holding that the corporate attorney-client privilege extends to communications between a corporation's attorney and outside agents or consultants to the corporation who act as the functional equivalent of a corporate employee. *SR*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*, No. 01 Civ. 9291(JSM), 2002 WL 1334821, at *2 (S.D.N.Y. June 19, 2002). Chief among these cases are *In re Beiter Co.*, 16 F.3d 929, 937 (8th Cir.1994), and *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 218 (S.D.N.Y.2001). In *Beiter*, the Eighth Circuit extended the attorney-client privilege to an independent consultant who acted as the *de facto* principal of a limited purpose corporation in its quest to develop real property, and in the litigation stemming from that project's failure. 16 F.3d at 939-40. In doing so, the court recognized that the consultant often acted as the "sole representative" of the client corporation in its attempt to develop the property, "the development of which appear[ed] to be the *sine qua non* of the client's existence." *Beiter*, 16 F.3d at 934. Further, in the ensuing litigation, the consultant's "involvement with counsel was rather extensive ... [and h]e often attended meetings with counsel, either alone or with [the client]." *Beiter*, 16 F.3d at 934. Considering the consultant's central role in the transaction and ensuing litigation, the court found that "[t]here [was] no principled basis to distinguish [the consultant's] role from that of an employee...." *Beiter*, 16 F.3d at 938.

Relying on an expansive interpretation of *Beiter*, [FN2] the court in *Copper Market* extended the attorney-client privilege to a "crisis management" public relations firm hired by a corporation to deal with "issues relating to publicity arising from high profile litigation." 200 F.3d at 215. The *Copper Market* court based its decision on a number of factors, including that: (1) the public relations firm "was, essentially, incorporated into [the corporation's] staff to perform a corporate function that was necessary in the context of" various litigations; (2) the public relations firm "possessed authority to make decisions on behalf of [the corporation] concerning its public relations strategy;" (3) the public relations firm often consulted the corporation's attorneys in formulating this strategy; and (4) the communications at issue "were for the purpose of obtaining legal advice." 200 F.R.D. at 219. [FN3]

FN2. "[A]lthough the immediate context of the *Bieter* court's decision was factual communications with a consultant who had in effect functioned as a principal with respect to the events underlying the litigation, the principles to be gleaned from the decision are not so limited." *Copper Market*, 200 F.R.D. at 219.

FN3. *See also Federal Trade Commission v. GlaxoSmithKline*, 294 F.3d 141, 147-48 (D.C.Cir.2002) (extending attorney-client privilege to public relations and government affairs consultants); *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, No. 01 Civ. 3016(AGS)(HBP), 2002 WL 31556383, at *2 (S.D.N.Y. Nov. 15, 2002) (holding that certain independent contractors were "functional equivalent of employees" where "the use of independent contractors is the result of the sporadic nature of employment in the motion picture industry").

This Court need not pass upon the validity of the so-called "functional employee" exception to the doctrine of third-party waiver in the privilege context because the facts of this case are materially different from *Beiter* and similar cases. The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). In contrast to the "functional principal" relationship of the consultant in *Beiter*, or even the expansive interpretation of *Beiter* in *Copper Market*, First Data was merely a transaction processing and computer services corporation that provided standard trade services to First USA and a vast number of other credit card companies. [FN4] (First USA Opp. at 3 ("Once First USA made the decision to adopt a 2% rate increase, [First Data], working in conjunction with First USA, supplied the computer functionality and expertise....").) In this manner, First Data's role is akin to that of an accountant or other ordinary third party specialist, disclosure to whom destroys the attorney-client privilege. *See, e.g., Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y.2000) (holding that extension of attorney-client privilege to public relations firm hired by company would "broaden the privilege well beyond prevailing parameters" where the firm did "not appear to have been performing functions materially different from

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

those that any ordinary public relations firm would have performed if they had been hired directly by [the company]").

> FN4. In fact, First USA concedes that it outsourced its processing functions to First Data solely because it "has found it more efficient," and that "[m]any credit card issuers perform these functions in-house." (First USA Opp. at 2.)

*3 Since the attorney-client privilege "stands in derogation of the public's 'right to every man's evidence, ... it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." ' *In re Horowitz*, 482 F.3d at 81; *accord United States v. Weissman*, 195 F.3d 96, 100 (2d Cir.1999) (attorney-client privilege "should be narrowly construed and expansions cautiously extended"); *Skillsoft*, 1999 WL 378337, at *3 ("The attorney-client privilege must be narrowly construed to provide no broader protection than is necessary to accomplish its purpose given that its invocation 'constitutes an 'obstacle' to the truth-finding process." ') (quotation omitted). Applying such a narrow construction of the putative exception, this Court finds that employees of First Data were not "functional employees" of First USA, and therefore disclosure of the First Data Documents to First Data employees destroyed any privilege that may have existed. Accordingly, plaintiffs' motion to compel the production of documents disclosed to First Data is granted. [FN5] *See SR Int'l*, 2002 WL 1334821, at *2-3 (refusing to apply the "functional employee" exception to communications between insurance broker and attorneys for insured).

> FN5. This includes the documents separately identified as Control No. 268 (First USA Ex. D, entry 268) and Control No. 271 (First USA Ex. D, entry 271), which were disclosed to First Data employees. However, to the extent that the redacted portions of any First Data Documents identified by plaintiffs consist solely of handwritten notes of First USA employees not circulated to First Data, or documents that were not in fact shared with First Data, *see infra* Section III.B, these documents remain privileged. (See

First USA Opp. at 3 n. 2.)

### III. *Inadvertently Produced Documents*

Aside from the First Data Documents, plaintiffs argue that certain individual documents that First USA claims were inadvertently produced to plaintiffs are, in fact, discoverable. This Court addresses each in turn.

#### A. *Control Nos. 269A, 269C and 269D*

[2] Plaintiffs claim that Control No. 269A (First USA Ex. D, 269A), described by First USA as an "issues matrix" drafted during a pricing review undertaken in response to a different lawsuit (First USA Opp. at 16), is discoverable because: (1) it conveys business rather than legal advice, and thus is not protected by the attorney-client privilege; and (2) First USA's claim of self-critical analysis privilege is unavailing. Two individual sections of Control No. 269A, "Item 2.1" and "Item 2.2," are the subject of this motion. [FN6]

> FN6. First USA claims that the balance of Control No. 269A was not produced because "it does not pertain to foreign currency conversion rates," and is thus irrelevant. (First USA Ex. D, 269A Cover Page.) This Court makes no determination concerning this representation.

Item 2.1 of Control No. 269A is a one-paragraph description of a potential legal issue relating to First USA's foreign currency conversion rate. It was drafted by a First USA employee after consultation with First USA's in-house counsel, and reflects that employee's discussions with counsel concerning certain aspects of First USA's foreign currency conversion rate. (First USA Ex. H ¶ 5 .) While "[t]he attorney-client privilege ... protects communications seeking legal advice, not business advice," *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, M 21-95(WHP), 2002 WL 31458230, at *2 (S.D.N.Y. Nov. 4, 2002), this Court finds plaintiffs' argument concerning Item 2.1 to be without merit after conducting an *in camera* review. Item 2.1 characterizes legal advice sought and obtained by a First USA employee; therefore, it is within the scope of the attorney-client privilege.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*Currency Conversion Fee,* 2002 WL 31458230, at *2; *see also United States v. Davis,* 132 F.R.D. 12, 16 (S.D.N.Y.1990) ("[a]lthough the solicitation or giving of business advice is not privileged, ... '[t]he mere fact that business advice is given or solicited does not, however, automatically render the privilege lost: where the advice given is predominantly legal, as opposed to business, in nature the privilege will still attach." ') (quotation omitted).

*4 [3] First USA does not, however, claim attorney-client privilege for Item 2.2 of Control No. 269A, a paragraph outlining certain problems with currency conversion rates. (First USA Ex. D, Control No. 269A.) Instead, First USA relies solely on the self-critical analysis privilege, claiming that Item 2.2 is the product of "a voluntary, self-critical analysis of First USA's pricing practices." (First USA Opp. at 17.) The self-critical analysis privilege recognizes that in very limited circumstances, "an intrusion into the self-evaluative analyses of an institution would have an adverse effect on the [evaluative] process, with a net detriment to a cognizable public interest." *Trezza v. The Hartford, Inc.,* No. 98 Civ. 2205(MBM)(KNF), 1999 WL 511673, at *1 (S.D.N.Y. July 20, 1999) (quotation omitted). First USA's argument, however, is unavailing.

In the first instance, this Court notes that the availability of the self-critical analysis privilege is an open question in this Circuit. *Tortorici v. Goord,* 216 F.R.D. 256, 258-59 (S.D.N.Y.2003); *see also Wimer v. Sealand Serv., Inc.,* No. 96 Civ. 8730(KMW)(MHD), 1997 WL 375661, at *1 (S.D.N.Y. July 3, 1997) (the self-critical analysis privilege "has led a checkered existence in the federal courts") (collecting cases). This Court need not reach this issue, however, because even assuming the availability of the privilege, it would not apply to Item 2.2 of Control No. 269A. Item 2.2 was not produced pursuant to any type of review that serves a "cognizable public interest" sufficient for the application of this privilege. *See, e.g., In re: Salomon Inc. Sec. Litig.,* Nos. 91 Civ. 5442, 5471(RPP), 1992 WL 350762, at *4 (S.D.N.Y. Nov.13, 1992) ("[M]anagement control studies and internal audit reports are not the type of studies or reports whose flow would be curtailed if discovery is allowed."). Therefore, the self-critical analysis privilege is not applicable to Item 2.2 of Control No. 269A. Since First USA did not claim attorney-client or work product privilege for Item 2.2 on its privilege log (First USA Ex. K, Control No. 269A Item 2.2), plaintiffs are entitled to its production. Accordingly, plaintiffs' motion to compel production of Control No. 269A Item 2.1 is denied, while plaintiffs' motion to compel production of Control No. 269A Item 2.2 is granted.

Control No. 269C is a document memorializing the legal department's discussion and resolution of the issues dealt with in Control No. 269A Item 2.1. (First USA Ex. F, Control No. 269C.) Therefore, like Control No. 269A Item 2.1, it is protected by the attorney-client privilege. Accordingly, plaintiffs' motion to compel production of Control No. 269C is denied.

In contrast, Control No. 269D is, according to First USA's privilege log, a "[d]ocument describing findings regarding [I]tem 2 .2 and closeout of [that] item." (First USA Ex. K, Control No. 269D.) Accordingly, it is not covered by the self-critical analysis privilege for the same reasons that applied to Control No. 269A Item 2.2. As First USA asserts no other privilege with respect to Control No. 269D in its privilege log (First USA Ex. K, Control No. 269D), plaintiffs' motion to compel production of Control No. 269D is granted.

B. *Control No. 269B*

*5 [4] Plaintiffs claim that First USA waived its privilege with respect to Control No. 269B (First USA Ex. D, 269B), an incident report summarizing in-house legal advice on and resolution of a particular issue, because the subject matter of Control No. 269B was disclosed to First Data. (Pl. Br. at 14.) The disclosure of certain documents to First Data, *see supra* Section II, does not, however, automatically trigger the broad subject-matter waiver sought by plaintiffs. *See, e.g., Currency Conversion Fee,* 2002 WL 31458230, at *3 ("[T]he extrajudicial disclosure of attorney-client communications concerning the legality of the 2% fee/adjustment does not waive the privilege as to the entire subject-matter of the legality of the 2% fee/adjustment."). The Second Circuit has cautioned that:
> [W]here as here, disclosures of privileged information are made extrajudicially and without prejudice to the opposing party, there exists no reason in logic or equity to broaden the waiver beyond those matters actually revealed. Matters

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

actually disclosed in public lose their privileged status because they obviously are no longer confidential. The cat is out of the bag, so to speak. But related matters not so disclosed remain confidential. Although it is true that disclosures in the public arena may be "one-sided" or "misleading," so long as such disclosures are and remain extrajudicial, there is no *legal* prejudice that warrants a broad court-imposed subject matter waiver. The reason is that disclosures made in public rather than in court-- even if selective--create no risk of legal prejudice until put at issue in the litigation by the privilege holder.

von Bulow, 828 F.2d at 103 (emphasis in original). Thus, First USA's disclosure of the First Data Documents, and the resultant waiver of the attorney-client privilege as to those documents, does not extend to the contents of Control No. 269B since plaintiffs concede that Control No. 269B was never disclosed to First Data. (Pl. Br. at 14.) Further, Control No. 269B is shielded by the attorney-client privilege for the same reasons as Control No. 269A Item 2.1. *See supra* Section III.A.

[5] Plaintiffs argue that even if Control No. 269B is found to be privileged, the crime/fraud exception applies and therefore opens it to disclosure. "The crime-fraud exception removes the privilege from those attorney-client communications that are 'relate[d] to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." ' *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir.1997) (quoting *In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir.1994)). To establish the crime-fraud exception, a district court must make "(i) a determination that 'the client communication or attorney work product in question was itself in furtherance of the crime or fraud' and (ii) [find] 'probable cause to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity." ' *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir.1999) (quoting *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir.1995)); *see also Jacobs*, 117 F.3d at 87 ("A party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime.").

*6 Procedurally, a district court should apply a two-step process in determining whether the crime/fraud exception applies: (1) "the proposed factual basis must strike 'a prudent person' as constituting 'a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof;" ' (2) after that showing is made, the Court has discretion whether to review the subject document *in camera*, and if it does, then the Court must in its discretion, determine whether the exception applies. *Jacobs*, 117 F.3d at 87 (quoting *In re John Doe Inc.*, 13 F.3d 633, 637 (2d Cir.1994)); *accord United States v. Zolin*, 491 U.S. 554, 572-74, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).

Plaintiffs argue that the crime/fraud exception applies because of "First USA's deliberate policy to frustrate the disclosure requirements set forth in TILA." (Pl. Br. at 21.) They buttress that assertion by pointing out that First USA "knew that its 2% mark-up was a fee," and that First USA "through its Legal Department ... orchestrated a series of steps to keep the fees under wraps and to suppress cardholder inquiries on the subject." (Pl. Br. at 21-23.) As this Court noted in its prior Memorandum and Order resolving another motion to compel by plaintiffs, conclusory allegations of criminal or fraudulent intent such as these would not strike a prudent person as constituting "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud," or that the communications at issue were "in furtherance thereof." *See Currency Conversion Fee*, 2002 WL 31458230, at *3-4. Further, after an *in camera* review of Control No. 269B, this Court concludes that the document does not support the application of the crime/fraud exception. Accordingly, plaintiffs' motion to compel production of Control No. 269B is denied.

C. *Control No. 270*

[6] Finally, plaintiffs claim that the redacted portions of Control No. 270 (First USA Ex. D, 270), which contain communications between First USA's in-house attorneys and employees concerning another litigation, are not covered by the attorney-client privilege because "the information is factual in nature." (Pl. Br. at 17.) To support their position, plaintiffs rely on *Upjohn*, 449 U.S. at 395. However, plaintiffs overlook the pronouncement in

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*Upjohn* that "the privilege exists to protect not only the giving of professional advice ... but also the giving of information to the lawyer to enable him to give sound and informed advice." 449 U.S. at 390. After reviewing Control No. 270 *in camera,* it is clear that the attorney-client privilege applies to that document. [FN7] Accordingly, plaintiffs' motion to compel production of Control No. 270 is denied.

>   FN7. Further, even if the attorney-client privilege did not apply, Control No. 270 would not be discoverable because it is protected by the attorney work product doctrine, which shields from discovery all materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative...." Fed.R.Civ.P. 26(b)(3); *see also Bank of New York v. Meridien BIAO Bank Tanzania,* No. 95 Civ. 4856(SS)(JCF), 1996 WL 490710, at *2 (S.D.N.Y. Aug. 27, 1996) ("[A] document prepared in anticipation of litigation, need not have been created at the behest of counsel."). While the protection for work product is not absolute and may be overcome if the party seeking discovery shows that it has a "substantial need" for the materials and is unable without "undue hardship" to obtain the substantial equivalent of the materials by other means, *see* Fed.R.Civ.P. 26(b)(3), plaintiffs have made no such showing here.

*CONCLUSION*

For the reasons set forth above, plaintiffs' motion to compel is: (1) granted with respect to any documents actually disclosed to First Data, including those documents identified as Control No. 268 and Control No. 271; (2) denied with respect to Control No. 269A Item 2.1; (3) granted with respect to Control No. 269A Item 2.2; (4) denied with respect to Control No. 269B; (5) denied with respect to Control No. 269C; (6) granted with respect to Control No. 269D; and (7) denied with respect to Control No. 270.

2003 WL 22389169 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing Reply in Support of Defendants' Motion for Reconsideration of Certain Portions of Magistrate's Ruling was served via facsimile and first-class mail, postage prepaid, on this 10th day of November, 2003, on the following counsel of record:

    Richard A. Bieder, Esq.
    Antonio Ponvert III, Esq.
    Koskoff, Koskoff & Bieder
    350 Fairfield Avenue
    Bridgeport, CT 06604

    Gregory G. Jones, Esq.
    Law Firm of Gregory G. Jones, P.C.
    603 South Main Street, Suite 200
    Grapevine, TX 76051

    Marc R. Stanley, Esq.
    Roger L. Mandel, Esq.
    Stanley, Mandel & Iola
    3100 Monticello Avenue
    Suite 750
    Dallas, TX 75205

_____
Brian O'Donnell, Esq. (CT 16041)