## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LOU HADDOCK, as trustee of the Flyte Tool & Die,
Incorporated Deferred Compensation Plan, PETER
WIBERG, as trustee of the Crown Tool & Die
Deferred Compensation Plan, ALAN GOUSE, as
trustee of the Greater Hartford Easter Seal
Rehabilitation Center Deferred Compensation Plan,
RONALD SIMON as trustee of the Hartford Roofing,
Inc. Deferred Compensation Plan, CARL
ANDERSON as trustee of the Anderson & Ferdon
Deferred Compensation Plan,

      PLAINTIFFS,

          v.

NATIONWIDE FINANCIAL SERVICES INC., and
NATIONWIDE LIFE INSURANCE CO.,

      DEFENDANTS.

CIVIL ACTION NO.:

3:01CV1552(CFD)

November 13, 2003

## DEFENDANTS' MEMORANDUM IN RESPONSE
## TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

In their Motion to Amend Order Granting Stay and to Compel Production of Documents (Docket 157) ("Pl. Motion"), Plaintiffs ask the Court to Order Defendants to: (1) produce the *in camera* documents that are not subject to Defendants' Motion for Reconsideration; and (2) produce additional documents that were withheld on substantially similar privilege grounds. Defendants do not oppose the entry of such an Order -- subject to two very important modifications. First, any Order should provide that the Defendants identify the documents that qualify under (2) above. Second, any Order should provide that the production of documents by

Defendants will not constitute a waiver of any privilege with regard to any other document or information.

Both of these proposed modifications make sense. First, Plaintiffs' claim that *they* know which documents qualify for production under (2) above is frivolous, as Plaintiffs are comparing two sets of documents, neither of which they have ever seen. *See infra* at 5-7. In contrast, Defendants are familiar with the documents and the grounds on which privilege was claimed, and so can and should make these judgments. Plaintiffs alternatively ask the Court to review most of Defendants' privileged documents. Such a process would require additional briefing, and substantial work for the Court, without a corresponding benefit to the parties. *See infra* at 7-10.

Second, Defendants seek an explicit statement by the Court that any production of the *in camera* documents or additional documents that were withheld on substantially similar privilege grounds does not constitute a waiver of any privilege claim as to any other documents or information. Such a holding would comport with the law and the Court's rulings and, most importantly, prevent another round of protracted litigation on privilege issues. *See infra* at 11-12.

## STATEMENT OF FACTS

The Magistrate on June 1, 2003 directed Plaintiffs to designate ten documents listed on Defendants' privilege log for *in camera* review. *See* Discovery Rulings (Docket 96) (Pl. Motion Exhibit A). The Ruling stated that "[if] the Court has concerns after reviewing material, it may order either disclosure or review of additional documents." *Id.*

On September 18, the Magistrate Judge ruled that Defendants must disclose five of the submitted documents and portions of two others. *See* Rulings Re: Discovery and Scheduling (Docket 126) (Pl. Motion Exhibit B) ("September 18 Ruling") ¶ 7. The September 18 Ruling did not order "disclosure or review of additional documents." *See id.*

On September 29, 2003, Defendants moved for a stay of paragraph 7 of the September 18 Ruling. *See* Defendants' Motion to Stay Certain Portions of Magistrate's Ruling (Docket 134). The Magistrate granted that motion the following day, ordering that "paragraph 7 of the Court's [September 18 Ruling be] temporarily stayed pending final resolution of Defendants' challenge to the Court's rulings reflected in that paragraph [7] by motion for reconsideration or objection or appeal." Order (Docket 136) (Pl. Motion Exhibit D).

On October 6, Defendants filed their Motion for Reconsideration, requesting that the Magistrate review portions of four documents that were ordered to be disclosed in the September 18 Ruling. *See* Motion for Reconsideration of Certain Portions of the Magistrate's Ruling (Docket 138) and accompanying Memorandum (Docket 139) ("Reconsideration Memorandum"). Defendants limited their request for reconsideration in order to focus review on those portions of the Ruling that were most invasive of the attorney-client privilege. *See* Reconsideration Memorandum at 2. Briefing on the issue concluded earlier this week, when Defendants filed a Reply Memorandum in support of their Motion for Reconsideration.

Plaintiffs filed their present Motion on November 4 (Docket 157). Plaintiffs requested that the Magistrate limit the Stay to those portions of paragraph 7 of the Ruling not subject to the Motion for Reconsideration. *See* Pl. Motion at 6. Plaintiffs further requested that Defendants be ordered to produce all documents that are "sufficiently similar" to the *in camera* documents for which the Magistrate ordered disclosure and Defendants did not seek reconsideration. *Id.* at 7.

Plaintiffs identified 42 documents -- out of a total of 80 documents that were not subject to *in camera* review -- that they claim fit in this category.   Plaintiffs make this claim despite the fact that they have never seen these 42 documents, nor the *in camera* documents to which Plaintiffs are comparing these 42 documents.

## DISCUSSION

I.    **Defendants Do Not Oppose an Order Requiring Production of the *In Camera* Documents that are Not Subject to the Motion for Reconsideration, and Any Documents that are Similar for Privilege Purposes.**

As noted above, Defendants sought to focus their Motion for Reconsideration on those documents (and portions thereof) where it appeared most likely that the "mountain range" of pleadings had obscured a particularly well-founded and important privilege claim.  *See* September 18 Ruling at 1.  That Motion tolled -- rather than waived -- Defendants' right to seek review of all of the Magistrate Judge's privilege rulings.  (Indeed, a contrary rule would require piecemeal appeals to the District Court.)  However, at the November 6, 2003 status conference, the Court expressed some concern with this position, and Defendants agreed to re-evaluate their approach.

Defendants have considered the Court's concerns, and do not object to the lifting of the Stay with regard to the *in camera* documents (and portions thereof) that the Magistrate Judge ordered produced and that are not the subject of the Motion for Reconsideration.[1/]  This production will consist of the entirety of *in camera* Documents 4, 7, and 10, and portions of *in camera* Documents 1, 6, 8, and 9 (hereinafter the "Disclosed *In Camera* Documents").  Furthermore, Defendants do not object to an Order requiring that they review the remaining

---

[1/]     Defendants' lack of objection to such an approach is subject to the proposed modifications described herein.

4

documents in the privilege logs and produce any that are similar, in ways that are relevant to the application of the attorney-client privilege, to the Disclosed *In Camera* Documents. Defendants are in a position to undertake this review efficiently because Defendants know the documents, the relevant parties, and the basis on which the original privilege claim was made. Defendants would make this second production prior to the filing of their Opposition to Plaintiffs' Motion for Class Certification, so that Plaintiffs' Reply could make use of any relevant documents.

In short, Defendants do not object to an Order that addresses the Court's concerns. Defendants do not object to modification of the Stay so that it applies solely to the documents for which reconsideration is sought. *See* Plaintiffs' Proposed Order ¶¶ 1-7. Defendants would promptly produce the Disclosed *In Camera* Documents. Defendants also do not object to the concept expressed in paragraph 8 of the Proposed Order, which would require Defendants to produce all other documents for which the basis for Defendants' privilege claim is the same as the basis rejected by the Court in its rulings on the Disclosed *In Camera* Documents. *See* Proposed Order ¶ 8.

However, Defendants' lack of opposition to such an Order is based on two critical modifications to the approach set forth by Plaintiffs. First, the Court should not adopt Plaintiffs' list of "sufficiently similar" documents in identifying the additional documents to be produced. As is described below, that review is most appropriately and efficiently handled by Defendants. Second, such an Order should explicitly state that the production of documents pursuant to the Order is not a waiver of the attorney-client privilege as to additional documents or information.

## II.    Plaintiffs' List of Particular Documents to be Produced is Without Merit.

By proposing a list of documents that the Court should order disclosed, *see* Pl. Motion at 7-8, Plaintiffs suggest that they are somehow able to determine which documents on the

5

privilege log are similar to the *in camera* documents which Defendants will produce. This is foolish on its face. Plaintiffs are proposing that they can guide the Court by comparing one set of documents *that Plaintiffs have not seen* to another set of documents *that Plaintiffs have not seen*. Of course, the privilege log does offer some information about these documents, but Plaintiffs have ignored or contradicted the information in the privilege log in their pursuit of additional disclosures.

The unreliability of Plaintiffs' list is easily demonstrated. For example, none of the Disclosed *In Camera* Documents were authored by in-house counsel. Yet Plaintiffs claim that the Court's September 18 Ruling requires the production of 12 different memoranda and e-mails authored by in-house counsel.[2] Plaintiffs make this claim even though Defendants have already identified each of these authors as an in-house lawyer.[3] Similarly, none of the Disclosed *In Camera* Documents involved correspondence between in-house counsel and outside counsel, and yet Plaintiffs now claim that such a letter (identified as such on the privilege logs) is not privileged under the September 18 Ruling.[4] Similarly, a host of documents that Plaintiffs claim

---

[2]     The following documents were authored by in-house counsel and appear on Plaintiffs' list of documents to be disclosed: Documents 16, 17, 19, 21, 23, 24, 28, 32, 49, 50, and 51 as identified on Defendants' April 23, 2003 privilege log (Pl. Motion Exhibit G) at 6, 7, 8, 9, 14, 15; Document 36 as identified on Defendants' August 12, 2003 privilege log (Pl. Motion Exhibit H) at 15.

[3]     *See* Affidavit of Thomas E. Barnes, Esq. (April 30, 2003) (Docket 91) ¶ 4 (listing eleven practicing attorneys appearing as authors or recipients of documents on the privilege logs).

[4]     Document 18 is described on the April 23 privilege log as a letter from Thomas Barnes (an in-house lawyer) to "outside counsel." Pl. Motion Exhibit G at 6. Yet Plaintiffs identify Document 18 as "within the scope" of the Magistrate's Ruling on *in camera* Document 4. Pl. Motion at 7-8. The description of Document 18 bears no resemblance to that of *in camera* Document 4.

Of course, any such resemblance would still not resolve the privilege issue. After all, the Court ordered disclosure of *in camera* Document 4, but upheld the privilege claim as to *in camera* Documents 2 and 3, notwithstanding the similar descriptions for all three documents on

are not privileged involve subject matters that are wholly distinct from those covered in the

Disclosed *In Camera* Documents.[5/]  More generally, even though the September 18 Ruling

required full disclosure of only three of the ten *in camera* documents, Plaintiffs claim that the

ruling entitles them to full disclosure of more than half of the remaining privileged documents.

In short, Plaintiffs are seeking to exploit the September 18 Ruling to obtain disclosure of

dozens of privileged documents.  Plaintiffs' claim that these documents are "sufficiently similar"

to the Disclosed *In Camera* Documents is utterly without merit.  Plaintiffs do not assist the Court

when they propose that the Court adopt their shoddy analysis as its own.

## III.    Plaintiffs' Request for The Magistrate's Review of Particular Documents is Also Meritless.

Perhaps realizing that the Court will be unwilling to order the disclosure of 42 privileged

documents, sight unseen, Plaintiffs have an alternate suggestion -- that the Court review the

documents identified by Plaintiffs.  This request is as flawed as the list on which it is based.  As

is explained above, there is no reasonable basis for the Court to believe that the documents

identified by Plaintiffs have *any* relationship to the Disclosed *In Camera* Documents.

Accordingly, Plaintiffs' list is not a reasonable starting point for any further review.  A far more

---

the privilege log.  (*Compare* description of *in camera* document 4 (listed on the April 23 privilege log as Document 13) *with* the description of *in camera* Documents 2 and 3 (listed on the April 23 privilege log as Documents 30 and 26, respectively).)  All of these descriptions are on Pl. Motion Exhibit G at 5, 8, and 9.

[5/]      Six of the requested documents contain completely different subject matter descriptions from Disclosed *In Camera* Documents:  Documents 39, 46, and 47 as identified on the April 23 privilege log, *see* Pl. Motion Exhibit G at 12, 13, 14; and Documents 23, 27, and 35 as identified on the August 12 privilege log, *see* Pl. Motion Exhibit H at 11, 12, 14.  In addition, certain redacted portions of four other documents have different subject matter descriptions from those given for the Disclosed *In Camera* Documents:  Document 38 from the April 23 privilege log, *see* Pl. Motion Exhibit G at 12; and Documents 2, 4, and 5 from the August 12 privilege log, *see* Pl. Motion Exhibit H at 1, 2.

sensible approach would be for the Court to order Defendants to conduct a review and produce the documents that are similar, for privilege purposes, to the Disclosed *In Camera* Documents. Plaintiffs could challenge Defendants' execution of this responsibility for good cause shown.

In contrast to Defendants' proposal, Plaintiffs seek to involve the Court in a review that is neither effective nor appropriate. *First*, Plaintiffs' proposal creates a great deal of work. Although Plaintiffs claim that they are merely pursuing the handful of rulings that are not subject to the Motion for Reconsideration, their proposed approach would require the Court to review well over half of Defendants' remaining privileged documents to see if they were similar to the Disclosed *In Camera* Documents. This review would require not only the review of the documents but detailed briefing by Defendants. As the Motion for Reconsideration demonstrates, evaluation of privilege claims can require line-by-line analysis of the documents, and comparisons among documents to ensure consistency. Completing this process for 42 documents will distract the parties and the Court from the issues of Class Certification and Summary Judgment that the Court has determined should be given the highest priority.

In this, as in so many other issues, Plaintiffs seek to impose burdens on Defendants that they have avoided themselves. As the Court will recall, Plaintiffs objected to responding to Defendants' Requests for Admission because they would require Plaintiffs to review documents during the time set aside for briefing class certification. *See* August 8, 2003 Letter form Richard A. Bieder to Magistrate Judge Garfinkel (Exhibit A to Defendants' Discovery Motion (Docket 143)). Plaintiffs likewise complained that they should not be required to respond to Defendants' Motion for Summary Judgment during the time set aside for briefing class certification. *See* September 8, 2003 Letter form Richard A. Bieder to Magistrate Judge Garfinkel (Exhibit N to Defendants' Discovery Motion (Docket 143)). The Court responded by freeing Plaintiffs from

8

any obligation to respond to Defendants' Requests for Admission (or any other discovery) *and* from any obligation to oppose Defendants' Motion for Summary Judgment while class certification briefing was ongoing. In light of those rulings, it would be grossly unfair to require Defendants to defend their privilege claims during the time period set aside for Defendants' Opposition to Class Certification.

*Second*, this work is very unlikely to speed the production of documents to Plaintiffs. Defendants do not object to producing -- without further judicial involvement -- all documents that Defendants believe are comparable, for privilege purposes, to the Disclosed *In Camera* Documents. Thus, any review by the Magistrate Judge of the remaining privileged documents is unlikely to uncover additional documents that should be produced. However, in the unlikely event that the Magistrate Judge did order Defendants to produce additional documents, Defendants would almost certainly seek a stay and an appeal of that ruling. This response is likely simply because the affected documents would be, by definition, documents that Defendants had twice evaluated and determined to be privileged. Moreover, Defendants would have an excellent claim to a stay, as the Court will be "cognizant ... of the possibility that the movant may be irreparably harmed by the disclosure of information which may prove to be privileged." *Brooks v. Montgomery*, No. 95-CV-542 1996 WL 663972 at *1 (N.D.N.Y. Nov. 7, 1996). In short, then, Plaintiffs' proposal is likely to create work for Defendants and the Court, but not result in the disclosure of any additional documents in the near future.

*Third*, any further review of documents will be wasteful or premature. The review will make poor use of the Court's time if it is confined to the issue of similarity with the Disclosed *In Camera* Documents. The review will be premature, however, if it seeks to generally evaluate Defendants' privilege claims before the Motion for Reconsideration, or an appeal, settles the law

of the case on privilege issues. Here too, further review of Defendants' privilege claims would create additional work for Defendants and the Court, but would be unlikely to lead to the production of any additional documents until after the final resolution of the privilege issues raised by the September 18 Ruling. Thus, there is no reason for the review to precede that resolution.[6]

***Fourth***, there is ample reason why such a review should not take place now. A court should proceed cautiously in reviewing privileged documents *in camera,* for such review trammels on the protections offered by the privilege. *See United States v. Zolin*, 491 U.S. 554, 570-571 (1989) (quoting *United States v. Reynolds*, 345 U.S. 1, 8 (1953)) ("Too much judicial inquiry into the claim of privilege would force disclosure of the thing the privilege was meant to protect ...."); *see also id.* at 572 ("There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents."). Indeed, the Court here has already seen several documents that -- in light of the Court's upholding the privilege -- Defendants should have been allowed to keep wholly confidential. Plaintiffs seek to quadruple that harm by asking the Court to review 42 privileged documents, including many that are not sensibly considered to be similar to the Disclosed *In Camera* Documents (as is demonstrated above). So long as there is a possibility that the Court will not have to review these documents -- and that possibility will exist until a final ruling on the privilege claims that are subject to the Motion for Reconsideration -- there is no benefit to Plaintiffs -- and substantial harm to Defendants -- from the Court engaging in such a review.

---

[6]     Indeed, in the unlikely event that the Magistrate Judge made a second order regarding privilege, any appeal of that order would likely find its way to the District Court well after any appeal of the documents now subject to the Motion for Reconsideration. Accordingly, the District Court could reasonably send the second appeal back to the parties with instructions to review those privilege claims in light of the District Court's ruling on the first privilege appeal. In other words, all of the review and briefing anticipated by Plaintiffs would be for naught.

**IV.    The Court Should Explicitly Hold that the Production of Such Documents Does Not
Constitute a Waiver of Any Applicable Privilege.**

Defendants have proposed a reasonable course for the Court to take, which would yield

the disclosure of additional documents with a minimum of disruption. However, Defendants

seek to ensure that their reasonableness will not haunt them in the form of a later claim by

Plaintiffs that Defendants have somehow waived the attorney-client privilege with regard to

documents or information beyond the documents to be produced. Accordingly, Defendants

request that any Order include the language:

> No production of documents pursuant to this Order shall be deemed a waiver of any
> applicable privilege or protection as to any other documents or information.

This request should be noncontroversial.

There is no legitimate reason why Plaintiffs could oppose such a ruling. It is Plaintiffs'

position that the documents to be produced are not privileged. The disclosure of non-privileged

documents cannot waive any privilege. For the same reason, the requested language is wholly

consistent with the Court's ruling on the Disclosed *In Camera* Documents, and any order

regarding similar documents.

Furthermore, such a ruling would be consistent with existing law, which makes plain that

disclosure compelled by a Court Order does not constitute a waiver. *See Bank Brussels Lambert
v. Credit Lyonnais*, 160 F.R.D. 437, 443 (S.D.N.Y. 1995) ("[T]he privilege is not considered lost

when the production of an attorney-client communication has been compelled in a prior

action."); *Rattner v. Netburn*, No. 88 CV 2080 (GLG) 1989 WL 223059 at *9 (S.D.N.Y. June 20,

1989) ("If a party withholds a document from disclosure on the basis of privileged and, on

motion of its adversary, the Court holds that the document is not privileged, the resulting

disclosure of the documents will not be deemed a waiver of the privilege for purposes of other

lawsuits."); *Durham Indus,. Inc. v. North River Ins. Co.*, 79 Civ. 1705 (RWS) 1980 WL 112700 at *2 (S.D.N.Y. May 1, 1980) ("A party does not waive attorney-client privilege for documents he is compelled to produce."); *see also In re Steinhardt Ptrs.*, 9 F.3d 230, 234 (2d Cir. 1993) ("This case is therefore distinguishable from situations in which disclosure to an adversary is only obtained through compulsory legal process.") (upholding district court's finding that voluntary disclosure led to a waiver).

However noncontroversial, the requested non-waiver language is absolutely essential to Defendants. If there is any risk of waiver, Defendants will be forced to appeal the entirety of the Magistrate Judge's September 18 Ruling to the District Court, both in defense of its claims, and to avoid any later claim by Plaintiffs that the production of these documents waived an otherwise applicable privilege as to other documents or information. Furthermore, even though Defendants are reasonably certain to prevail on the waiver issue if it is later litigated, Defendants seek to avoid the risk and expense of such litigation. Finally, if Plaintiffs oppose this reasonable request, it will only demonstrate that Defendants' concerns are not misplaced. Such opposition will require additional briefing by Defendants on the Motion to Compel and additional attention by the Court to Plaintiffs' Motion, which will be revealed as the beginning -- not the end -- of Plaintiffs' efforts to discover communications subject to a claim of privilege.

12

## **CONCLUSION**

For all of the reasons set forth herein, Defendants urge the Court to deny Plaintiffs'

Motion to Compel Production of Documents.


Date:  November 13, 2003

Defendants, Nationwide Financial Services
Inc. and Nationwide Life Insurance Co.

By: _____

Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone:     (860) 293-3500
Facsimile:      (860) 293-3555

Eric Mogilnicki, Esq.
Samuel Broderick-Sokol, Esq.
Mark Bieter, Esq.
Wilmer, Cutler & Pickering
2445 M Street, N.W.
Washington, D.C. 20037
Telephone:     (202) 663-6000
Facsimile:      (202) 663-6363

Charles C. Platt, Esq. (CT 23036)
Wilmer, Cutler & Pickering
399 Park Avenue
New York, NY  10022
Telephone:     (212) 230-8800
Facsimile:      (212) 230-8888

13

## CERTIFICATION

This is to certify that true and correct copies of the foregoing Defendants' Memorandum in Response to Plaintiffs' Motion to Compel Production of Documents was served via first class mail on this 13th day of November, 2003, on the following counsel of record:

Richard A. Bieder, Esq.
Antonio Ponvert III, Esq.
Koskoff, Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

Gregory G. Jones, Esq.
Law Firm of Gregory G. Jones, P.C.
603 South Main Street, Suite 200
Grapevine, TX 76051

Marc R. Stanley, Esq.
Roger L. Mandel, Esq.
Stanley, Mandel & Iola
3100 Monticello Avenue
Suite 750
Dallas, TX 75205

Dennis F. Kerrigan, Jr., Esq.