

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FILED

2003 NOV 14  A 10: 46

US DISTRICT COURT
HARTFORD CT

LOU HADDOCK, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, PETER WIBERG, as trustee of the Crown Tool & Die Deferred Compensation Plan, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan, RONALD SIMON as trustee of the Hartford Roofing, Inc. Deferred Compensation Plan, CARL ANDERSON as trustee of the Anderson & Ferdon Deferred Compensation Plan,

:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.:

3:01CV1552(CFD)

PLAINTIFFS,

v.

NATIONWIDE FINANCIAL SERVICES INC., and
NATIONWIDE LIFE INSURANCE CO.,

DEFENDANTS.

November 14, 2003

## APPENDIX OF UNPUBLISHED CASES IN SUPPORT OF DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Herewith are the unpublished cases cited in Defendants' Memorandum in Response to Plaintiffs' Motion to Compel Production of Documents filed with this Court on November 13, 2003.

Date: November 14, 2003

Defendants, Nationwide Financial Services Inc. and Nationwide Life Insurance Co.

By: _____
Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone:   (860) 293-3500
Facsimile:   (860) 293-3555

Eric Mogilnicki, Esq.
Samuel Broderick-Sokol, Esq.
Mark Bieter, Esq.
Wilmer, Cutler & Pickering
2445 M Street, N.W.
Washington, D.C. 20037
Telephone:   (202) 663-6000
Facsimile:    (202) 663-6363

Charles C. Platt, Esq. (CT 23036)
Wilmer, Cutler & Pickering
399 Park Avenue
New York, NY 10022
Telephone:   (212) 230-8800
Facsimile:    (212) 230-8888

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Lorenzo BROOKS, Plaintiff,
v.
Kirk MONTGOMERY, Robert Wolf and Louis Mann, Defendants.

No. 95-CV-542 (RSP/542).

Nov. 7, 1996.

Prisoners' Legal Services, Poughkeepsie, N.Y. (Geri Pomerantz, of counsel), for plaintiff.

Jerold S. SLate, Poughkeepsie, NY, for defendant, Kirk Montgomery.

Burke, McGlinn Law Firm, Suffern, N.Y. (Patrick T. Burke, of counsel), for defendant Wolf.

Dennis C. Vacco, New York State Attorney General, Department of Law, Albany, N.Y. (Richard J. Freshour, Assistant Attorney General, of counsel).

ORDER

POOLER, District Judge.

*1 Presently before the court is defendant Montgomery's motion for a stay pending appeal of Magistrate Judge Smith's November 6, 1996, order. The general standards for granting a stay pending appeal mandate that the court consider (1) whether the moving party may suffer irreparable harm absent a stay, (2) the substantiality of harm to the opposing party if a stay is granted, (3) whether the movant demonstrates a substantial possibility of success on appeal, and (4) any public interests that might be affected. *In re Seizure of All Funds in Accounts in the Names Registry Publishing,* 58 F.3d 855, 856 (2d Cir.1995). In the present motion, the court is unable to examine these factors because the movant has not yet filed his notice of appeal or designated a record on appeal. Consequently, the court cannot grant a stay under these circumstances.

The court is cognizant, however, of the possibility that the movant may be irreparably harmed by the disclosure of information which may prove to be privileged. Therefore, as an interim measure to protect the movant against disclosure of potentially privileged information, I will order that those portions of deposition transcripts pertaining to the disputed document, which has previously been marked Plaintiff's exhibit 77, be sealed.

It is therefore

ORDERED that defendant Montgomery's motion for a stay pending appeal of Magistrate Judge Smith's November 6, 1996, order is denied; and is further

ORDERED that all those portions of deposition transcripts pertaining to the document previously marked Plaintiff's Exhibit 77 be sealed pending resolution of defendant Montgomery's appeal of Magistrate Judge Smith's November 6, 1996, order or until further order of this Court.

1996 WL 663972, 1996 WL 663972 (N.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

Marshall RATTNER, Marshall Rattner, Inc., and National Limousine Service, Inc.,
Plaintiffs,
v.
Malcolm NETBURN, John B. Farrington and The Incorporated Village of
Pleasantville, Defendants.

No. 88 CIV.2080(GLG).

June 20, 1989.

David R. Kittay, Liddell, Sapp, Zivley, Hill & LaBoon, John Walsh, Cadwalader, Wichersham, & Taft, New York City, for plaintiffs.

Herbert Teitelbaum, Richard J. Hiller, Teitelbaum & Hiller, P.C., Arthur N. Handler, Robert S. Goodman, Goldenbock and Barell, New York City, for defendants.

MEMORANDUM AND ORDER

MICHAEL H. DOLINGER, United States Magistrate.

*1 The parties are currently in dispute concerning the propriety of numerous invocations of privilege by or on behalf of the Village of Pleasantville in the course of depositions of various witnesses, including defendants Frank Farrington and Malcolm Netburn. Plaintiffs also seek disclosure of a limited number of documents withheld on the grounds of attorney-client privilege and work-product. I address these disputes more or less in the order in which they have been presented to the Court.

*Background*

Plaintiff Marshall Rattner commenced this action in early 1988. He originally sued only Malcolm Netburn, a member of the Board of Trustees of the Village of Pleasantville, based upon actions allegedly taken by Netburn in February 1988, following the publication by Rattner of an advertisement in a local newspaper. The advertisement was highly critical of the Mayor and trustees for having pursued extensive litigation with Rattner principally concerning his use of certain property in the Village as parking space for his limousine business. According to Rattner, in response to this advertisement Netburn acted on behalf of his fellow Village officials in sending the local Chamber of Commerce a threatening letter that sought to discourage the Chamber, local businessmen and others from having business dealings with Rattner. Plaintiff claimed that this was done in retaliation for his published criticism of the Village government, and was a continuation of the local officials' vendetta against him, which allegedly had been pursued through the courts of New York for the last seven years. Plaintiff alleges resulting injury, both economic and personal, and asserts claims under 42 U.S.C. § 1983.

In late 1988, Rattner amended his complaint to add as plaintiffs two of his businesses and as defendants the Village of Pleasantville and its Mayor, Frank Farrington. He has also conducted an aggressive campaign of discovery that has led to the deposition of numerous Village trustees and other present or former Village officials. Defendants have reciprocated, and the result has been a gargantuan discovery schedule that was pressed at a feverish pace for many months.

Not surprisingly, the parties' discovery efforts have spawned numerous disputes, and those have been addressed in a series of decisions issued since December 1988. of principal pertinence to the current series of imbroglios was a Memorandum and Order dated December 29, 1988 which overruled a variety of objections invoked by counsel for the Village to block questions posed to the Village trustees and other officials at their depositions. In so ruling, the Court rejected a repeated claim of privilege asserted by the Village under section 105(1)(d) of the New York Public officers Law--the so-called "executive session privilege"--and it directed that the witnesses be recalled to answer questions previously objected to and to respond to follow-up inquiry.

Following the affirmance of this decision by the District Court, the witnesses were redeposed, but declined to answer certain questions on grounds of either the attorney-client privilege or the work-product rule or the same legislative "executive session" privilege. In addition, although the plaintiffs obtained court approval to depose two attorneys from the firm that was representing the Village in connection with some of the events at issue in this case, those attorneys invoked similar claims of privilege to avoid answering certain questions about their communications with the Village fathers and furthermore declined to produce various documents,

the most sought-after of which is a memorandum that was said to contain advice offered by counsel to their client concerning how to deal with Rattner.

*2 Plaintiffs have also conducted depositions of the Building Inspector of the Village and an attorney who formerly represented the Village in the state court litigation. The inspector declined to answer questions on grounds of attorney-client privilege and work-product. The attorney declined to produce certain documents on similar grounds.

At the instruction of the Court, the parties have embodied these many disputes in formal motions, complete with evidentiary presentations designed to demonstrate the applicability or inapplicability of the privilege claims. In seeking to override those claims, plaintiffs argue that defendants' evidentiary showings are inadequate, that the attorney-client privilege was waived in substantial part in the related state court litigation, that the "executive session" privilege was rejected *in toto* in the December 29, 1988 decision, that both the attorney-client privilege and the work-product rule should be disregarded in any event based on the so-called "crime-fraud-tort" exception, and that, with respect to the work-product rule, even if it is applicable it should not bar discovery in view of plaintiffs' pressing need for the information in dispute.

*Analysis*

Before discussing the deposition issues, I address the dispute concerning the February 1988 memorandum prepared by Golenbock and Barell and entitled "An Update on the Rattner Litigation." I then consider the disputes raised in connection with the resumed depositions of Stanislaus Mroczkowski, defendant Frank Farrington, Thomas McConnell, Richard H. Kersten and defendant Malcolm Netburn, as well as the depositions of Arthur Handler, Esq., Robert Goodman, Esq., Lawrence Dittelman, Esq. and Michael Testa.

A. *Burden of Proof*

Resolution of many of the parties' disputes turns upon an assessment of the adequacy of defendants' proof of facts. Accordingly, it bears noting at the outset that "[i]t is axiomatic that the burden is on the party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir.), *cert. denied*, 481 U.S. 1015 (1987)(quoting *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224 (2d Cir.1984)). *Accord, e.g., United States v. Stern*, 511 F.2d 1364, 1367 (2d Cir.), *cert. denied*, 423 U.S. 829 (1975); *In re Horowitz*, 482 F. 2d 72, 82 (2d Cir. ), *cert. denied*, 414 U.S. 867 (1973); *United States v. Kovel*, 296 F.2d 918, 923 (2d Cir.1961). This burden requires an evidentiary showing by competent evidence, *see, e.g., von Bulow v. von Bulow, supra*, 811 F.2d at 144, and cannot be " 'discharged by mere conclusory or ipse dixit assertions.' " *In re Grand Jury Subpoena Dated Jan. 4, 1984, supra*, 750 F.2d at 225 (quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir.1965)). *Accord, von Bulow v. von Bulow, supra*, 811 F.2d at 146.

B. *The Golenbock and Barell Memorandum*

The Village has been in litigation with Rattner and his companies in state court for the last seven years. These actions have included a series of Article 78 proceedings by Rattner challenging various adverse administrative determinations by the Village, a declaratory judgment suit by the Village to preclude Rattner's use of his property for limousine parking, and counterclaims asserted by Rattner against the Village and some of its officials for alleged bad-faith harassment of him. These proceedings were the subject of Rattner's critical advertisement, which proved the catalyst for the events immediately at issue in this lawsuit.

*3 In early February 1988, the village Administrator, John St. Leger, learned that Rattner had reserved space in the Pleasantville Gazette for an advertisement to be run on February 11, 1988. This prospect was apparently so alarming to St. Leger that it became the subject of an executive session of the Board of Trustees on February 8, 1988, at which time the board members agreed that St. Leger should contact the law firm of Golenbock and Barell, which was representing the Village in the state court lawsuits, and seek advice from it on how to respond to the advertisement. St. Leger thereafter discussed the matter with the two Golenbock attorneys who were handling the state court litigation, Messrs. Arthur Handler and Robert Goodman, and he received certain oral advice from them. In addition, they provided him a document entitled "An Update on the Rattner Litigation," which had been prepared by one or both of them.

The Board of Trustees met again on February 16, 1988 in executive session and heard from Mr. St. Leger concerning his discussion with the lawyers. At the same time he gave the trustees copies of the document.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Plaintiffs seek production of the "Update." In support of their request, they emphasize that the central issue in this case concerns whether the challenged actions of Netburn, undertaken after the appearance of Rattner's advertisement, and in apparent response to it, were the work of the Village itself and thus tantamount to unconstitutional action under color of state law. Accordingly, they argue, the request for advice made by the Village Board concerning how to respond to the Rattner advertisement and the advice that the Board received could be crucial in determining whether the Village was responsible for the Netburn letter.

In opposing disclosure of the "Update," the Village argues that the document is protected by both the attorney-client privilege and the work-product rule. According to defendants, it either contains or is "part and parcel" of legal advice rendered by the Golenbock firm to the Village and that the legal advice pertains to the ongoing state court litigation with Rattner. (Affidavit of Arthur Handler, Esq., sworn to April 4, 1989, at ¶ 19.)

Over the vigorous objection of the Village, I have reviewed the document in camera. Based upon that review and an assessment of the evidence presented by the Village in support of its claims, I conclude that defendants have not carried their burden of demonstrating that the document in question is protected either by the attorney-client privilege or by the work-product rule.

1. *Attorney-Client Privilege*

The most commonly cited formulation of the attorney-client privilege in this Circuit originates with Charles Wigmore:
(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*4 8 C. Wigmore, *Evidence* § 2292 at 554 (McNaughton rev.1961), *quoted in In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1036 (2d Cir.1984); *United States v. Bein,* 728 F.2d 107, 112 (2d Cir.), *cert. denied,* 469 U.S. 837 (1984). on its face, this standard applies only to communications by the client to the attorney "in his capacity as [legal advisor]" seeking legal advice, but the courts appear generally to concur that the protection should extend as well to the legal advice rendered by the attorney, at least if it might reflect or reveal the client's confidential communications. *See, e.g., Schlefer v. United States,* 702 F.2d 233, 245 (D.C.Cir.1983); *United States v. Amerada Hess Corp.,* 619 F. 2d 980, 986 (3d Cir.1980) (citing cases); *O'Brien v. Board of Education,* 86 F.R.D. 548, 549 (S.D.N.Y.1980). *See generally* 2 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 503(b)[03] at 503-39 n.5 (1988). I adopt that standard here as well. [FN1]

The document in question is in the form of a public announcement and, on its face, it does not contain legal advice or reflect any confidential communications by the client to the lawyers. Given these facts, defendants must satisfactorily dispose of four obvious questions--(1) Since the document consists of a proposed public announcement, can it be considered "confidential" for purposes of the privilege? (2) Would disclosure tend to reveal advice rendered to the client? (3) Would this advice be considered "legal advice" as distinguished from non-legal advice akin to that dispensed by a public relations expert? (4) Would disclosure of the advice tend to reveal confidential communications made by the client to the attorney?

In defending the privilege claim for the document, defendants' counsel asserts that it was intended to be confidential, and that it was provided to St. Leger "as part and parcel of both oral and written legal advice rendered to defendants at defendants' request concerning the state court litigation between the parties in which Golenbock and Barell was serving as litigation counsel." The Village also asserts that "the content of the Memorandum is inextricably intertwined with the substance of the communication of legal advice...." (Letter dated April 17, 1989 from Arthur M. Handler, Esq. to the Court, at p. 2; *see* Handler April 4, 1989 Affidavit at ¶ 19.)

This showing and the deposition testimony of St. Leger and Robert Goodman, Esq. suffice to establish that the document was transmitted to the client with the expectation of confidentiality. Specifically, it can fairly be said that both counsel and the client expected confidentiality for the fact that the attorneys had drafted a proposed public announcement and for the actual wording of the proposed release. Such an expectation of confidentiality is not undercut by the fact that the document was designed to be released to the public if the client so chose. As a proposed draft, it constituted confidential advice, and thus the fact that its substance or even its exact wording might later be publicly communicated as the words of the Village does not deprive the communication between counsel and client of its confidential nature. *See,*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

e.g., *Radio Today v. Westwood one, supra,* opinion at 2 ("If a lawyer advises his client to say something to a third party, what the client says to that third party must be disclosed; what the lawyer said must not.").

*5 The more serious problem for defendants' argument is that, on its face, there is no reason to conclude that the document itself--as distinguished from whatever oral advice may have been given by the attorneys to the client-- constitutes legal advice. it bears emphasis in this regard that the privilege governs the performance of duties by the attorney as legal counselor, and if he chooses to undertake additional duties on behalf of his client that cannot be so characterized, those activities and communications in furtherance of them are not privileged. *See, e.g., Weinstein's Evidence, supra,* ¶ 503(a)(1) [01] at 503-19 to -22 (citing cases); *In re Grand Jury Subpoenas Dated Dec. 18, 1981 and Jan. 4, 1982,* 561 F.Supp. 1247, 1258 (E.D.N.Y.1982); *United States v. Loften,* 518 F.Supp. 839, 846 (S.D.N.Y.1981), aff'd mem., Dkt. Nos. 81-1386 et al. (2d Cir. Mar. 8, 1982); *SEC v. Gulf & Western Industries,* 518 F.Supp. 675, 682-83 (D.D.C.1981).

In this case, the document itself reflects work ordinarily performed by a press agent, and it is clear that such services do not constitute legal work and are thus not protected by an attorney-client privilege. *See, e.g., Rattner v. Netburn,* Memorandum and Order at 9-11 (S.D.N.Y. Dec. 28, 1988); Rattner v. Netburn, Memorandum and Order at 3 (S.D.N.Y. March 22, 1989). Defendants' evidentiary showing does not avoid the problem. Defendants' attorney merely iterates and reiterates, in conclusory fashion, that the content of the document was "part and parcel of" legal advice or was "inextricably intertwined with the substance of the communication of legal advice." (Handler April 4, 1989 Affidavit at ¶ 19; April 17, 1989 letter from Arthur Handler, Esq. to the Court, at p. 2.) These conclusory assertions do not satisfy the defendants' burden of proof since they offer no facts from which it can be inferred that the content of the document actually amounted to legal advice. *See generally von Bulow v. von Bulow, supra,* 811 F.2d at 146-47 (conclusory assertions in support of attorney-client privilege do not satisfy evidentiary burden).

In the absence of such evidence, the strongest inference to be drawn from the record--including the nature of the document--is that, faced with the Netburn advertisement, the Village officials sought advice from counsel as to whether and how they could respond without prejudicing their position in the ongoing state litigation and that counsel gave them oral advice. It is also fair to infer that, in order to assist the process, counsel authored a draft press release and provided it to the Village. Under this scenario the oral advice about what the Village could or could not do would be privileged, but the draft press release would not. It is not ordinarily a part of the attorney's legal advice function to prepare public announcements for the client, although he may well be called upon to review proposed announcements for legal implications. Thus the preparation of a press release in this context does not meet the applicable test.

*6 As one commentator has observed,
> Difficult problems are posed because the average lawyer--whether [in) house or outside counsel-- often mixes his legal advice with business, economic and political counsel. A good attorney is respected by his clients for judgment, objectivity and general acumen. Unless the communication is designed to meet problems which can fairly be characterized as predominantly legal, the privilege does not apply.

2 *Weinstein's Evidence, supra,* ¶ 503(a)(1)(01), at 503-22 (footnote omitted). The written communication in question here was principally designed to enable the Village to fight its public relations battle with Rattner. This is not tantamount to a communication of "predominantly legal" advice and should therefore not be protected. *Cf. United States v. Davis,* 636 F.2d 1028, 1044 (5th Cir.1981), cert. denied, 454 U.S. 862 (1981); *In re Grand Jury Subpoenas Dated Dec. 18, 1981 and Jan. 4, 1982, supra,* 561 F.Supp. at 1258. [FN2]

Finally, I note that disclosure of the document would not reveal any confidential communications made bY the Village to counsel to elicit legal advice. The document reflects no such advice and although it is fair to infer from the document that the client sought advice as to how to respond, that fact has been disclosed by the Village. (*See* Netburn Dep. at 324; St. Leger Dep. at 68-70.)

B. *The Work-Product Rule*

Defendants alternatively seek the protection of the work-product rule for this document. As defined by Rule 26(b)(3), the work-product rule protects documents "prepared in anticipation of litigation or for trial...." Accordingly, "[i]f the primary motivating purpose behind the creation of the document is not to assist in pending or impending litigation, then a finding that the document enjoys work product immunity is not mandated." *United States v. Gulf Oil Corp.,* 760 F.2d 292, 296 (T.E.C.A.1985).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Defendants argue that the memorandum was prepared in connection with the ongoing state court litigation and is therefore protected. This argument cannot be sustained. [FN3]

Defendants have not shown that the proposed press release was primarily designed "to assist in pending or impending litigation. ." *Id.,* It can fairly be inferred that it was designed to shore up the Village officials' political position with their constituents in the face of Rattner's vigorous attack, and although this is surely an understandable goal, and indeed one that might make it easier for the Village to continue to spend large sums on its lawsuits, it cannot be said that the document was for use in litigation. *Cf. Hardy v. New York News, Inc.,* 114 F.R.D. 633, 646 (S. D. N. Y.1987) ( "the f act that documents prepared f or a business purpose were also determined to be of potential use in pending litigation does not turn these documents into work product or confidential communications between client and attorney.")

The fact that the draft was authored by an attorney does not change this result. The work-product rule "does not extend to every written document generated by an attorney; it does not shield from disclosure everything that a lawyer does." *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 864 (D.C.Cir.1980) (quoting *Jordan v. United States Department of Justice,* 591 F. 2d 753, 775 (D. C. Cir.1978) (*en banc* )). If counsel chose in this case to perform a publicist's function, the documents prepared in that connection cannot be shielded by the work-product rule. *See, e.g., Rattner v. Netburn,* Memorandum and Order at 12-13 (S.D.N.Y. Dec. 28, 1988) ("If the notations [by counsel] on the draft press releases were added in order to guide [the publicist] in wording those releases, then they were not made to assist any litigation and thus cannot be said to have been made in contemplation of litigation.' "). [FN4]

C. *The Deposition of Stanislaus Mroczkowski*

*7 During his resumed deposition, Village trustee Stanislaus Mroczkowski was directed to refuse answers to a number of questions on the grounds of either the attorney-client privilege of the Village, the work-product rule or the so-called "executive session" privilege. In disputing the validity of those claims, the parties raise a variety of global issues. These include whether the Court's December 29, 1988 Memorandum and order precluded any assertion by the Village of an executive session privilege, whether positions taken by the Village in the state court litigation have waived any privilege for communications with counsel about prior dealings between Rattner and the Village, and whether discussions about the withheld Golenbock and Barell memorandum may be privileged. Rather than address these issues in the abstract, I will discuss them as they become applicable to specific questions concerning which the parties are litigating.

I turn to the questions in dispute and address them in the order in which they have been briefed. I also use the same question numbers utilized by the parties.

1. Q. What about meetings where counsel was present; did anyone mention that Mr. Rattner shared in the risk of the lawsuit brought by him against the Village through holding some of the reinsurance on that litigation?
MR. GOODMAN: I object to the question, instruct the witness not to answer on the ground of attorney-client privilege.

(Mroczkowski Dep. at 5, 1. 2-10.)

The only factual explanation for this claim of privilege by defendants is found in the affidavit of Mr. Mroczkowski, who asserts, with respect to a list of questions that he declined to answer on this ground:
With respect to each question enumerated in Schedule A, I participated in a meeting with counsel in which legal advice was being requested and/or received regarding the state court litigation between Marshall Rattner and the Village of Pleasantville or the instant action. An answer to the question would thus have breached the privilege.

(Mroczkowski Aff. sworn to March 16, 1989 at ¶ 5.) The witness offers no specifics concerning the circumstances of the particular communication sought by plaintiff in this instance.

This showing is inadequate. The privilege protects confidential communications from the client to the attorney for the purpose of eliciting legal advice and it may, in some circumstances, protect the legal advice that is rendered. In this case, however, Mroczkowski makes no effort to demonstrate that the particular communication fits into either category. The fact that he and other Village officials were at a meeting with counsel "in which legal advice was being requested and/or received" does not mean that everything said at the meeting is privileged.

Defendants simply do not demonstrate that the particular communication was part of a request for

advice or part of the advice. [FN5] Indeed, the assertion that "[a]n answer to the question would thus have breached the privilege, appears simply to reflect the mistaken assumption that everything said at such a meeting is automatically privileged. *See, e.g., Folcrer Adam Co. v. PMI Industries,* 87 Civ. 9272(WK), Memorandum & Order at 2-3, 16/89 Star. Dec. 324, 325-26 (S.D.N.Y. April 10, 1989). Defendants also do not even attempt to demonstrate that the communication was intended to be and was kept confidential. [FN6]

*8 Defendants argue alternatively that the witness ultimately answered the question. He appears to have done so for the period prior to February 1988 (*see* Mroczkowski Dep. p. 5, 1. 11-15), but plaintiffs are entitled to an answer that is not so limited, particularly in view of the fact that the central events at issue in this lawsuit took place in mid-February 1988.

2. Q. Did you learn from counsel that part of Mr. Rattner's insurance business involved the insuring of pension funds?
  MR. GOODMAN: I object and instruct the witness not to answer on the ground of attorney-client privilege.

(Mroczkowski Dep. p. 9, 1. 2-7.)

Defendants' showing on this question is deficient in two respects. First, the only evidence offered is that the communication, if one occurred, took place during a meeting at which the Village was seeking the advice of counsel. As noted, this does not suffice to establish the elements of the attorney-client privilege.

Second, the question is limited to a possible communication of fact by the attorney to the client. Communications by an attorney to a client of facts learned elsewhere are not privileged. *See, e.g., In re Sealed Case,* 737 F.2d 94, 99 (D.C.Cir.1984)(quoting *Brinton v. Dep't of State,* 636 F.2d 600, 604 (D.C.Cir.1980), cert. denied, 452 U.S. 905 (1981)); *Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.), Inc.,* 111 F.R.D. 76, 80 (S.D.N.Y.1986); *J.P. Foley & Co. v. Vanderbilt,* 65 F.R.D. 523, 526 (S.D.N.Y.1974).
  3. Q. Was this meeting held in connection with the consideration of the Village taking appeals to the Zoning Board of Appeals regarding Mr. Rattner's uses?
  MR. GOODMAN: I object to that because I think that that question is so detailed that it goes--the answer would violate the attorney-client privilege. I object and instruct the witness not to answer.

(Mroczkowski Dep. p. 21, 1. 6-15.)

Defendants' invocation of the privilege on this question poses the issue of whether and to what extent the Village waived any applicable privileges in the state court litigation. During the course of its declaratory judgment suit against Rattner, and specifically in response to his counterclaims, which alleged ongoing bad-faith harassment of him, the Village and its officials in effect invoked an "advice of counsel" defense with respect to the challenged actions of the Village. Recognizing that such a defense necessarily waived their attorney-client privilege under state law with respect to communications in which the challenged activities were discussed, defendants freely testified about these matters in deposition and produced relevant documents that would otherwise have been privileged.

During the course of that discovery, the parties could not resolve one dispute, concerning the question of whether certain additional documents were covered by the waiver. Accordingly, the presiding judge, the Hon. Louis C. Palella, reviewed the documents in camera and found that they came within the scope of the waiver. (see Affidavit of David R. Kittay, Esq., sworn to March 24, 1989, at Exh. 2.) The Village appealed and the Appellate Division, First Department, affirmed. (*Id.,* at Exh. 3.) In the wake of this decision, defendants produced the additional documents to Rattner. (*Id.,* at ¶ 8 & Exh. 4.)

*9 One of the actions under review in the state court case was the decision of the Village, after entry of an adverse decision in an Article 78 proceeding in state court concerning Rattner's use of his property, to refuse to concede the propriety of the use and instead to pursue an administrative appeal to the Zoning Board of Appeals. The invocation of the "advice of attorney" defense encompassed this issue and accordingly the defendants in the state court case offered generally unimpeded discovery concerning communications between the Village and its attorney about this question. (*See, e.g.,* Kittay March 24, 1989 Aff. at Exhs. C, E, I, M, N, P, R, U, V, W, Z & AA.) On this basis, Rattner urges in this case that any privilege respecting the same matter has been waived.

In resisting this conclusion, defendants do not dispute that the privilege was waived in state court on this issue. Instead they argue that the waiver cannot be invoked in this case. According to defendants, a

waiver in one case does not carry over to another case if the original waiver was "compelled,11 and they argue that 11[a]ny testimony regarding this meeting in the state court action was under compulsion of state law requiring such testimony upon assertion of an advice of counsel defense, which is not asserted at bar." (Defendants' Mroczkowski Memorandum at 4.)

Defendants' argument is wholly meritless and the cases they cite do not remotely support their position. The accepted legal proposition that they seek to invoke is that an involuntary disclosure of a document in a lawsuit does not constitute a waiver of the privilege since waiver must be premised upon a deliberate or knowing action by the holder of the privilege. Specifically, coerced or accidental disclosure will not lead to a finding of waiver. If a party withholds a document from disclosure on the basis of privilege and, on motion of its adversary, the Court holds that the document is not privileged, the resulting disclosure of the document will not be deemed a waiver of the privilege for purposes of other lawsuits. *See, e.g., Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir.1989) (work-product rule); *Cf. Transamerica Computer Co. v. IBM Corp.*, 573 F.2d 646, 651 (9th Cir.1978). Similarly, an inadvertent disclosure of a document will ordinarily not be deemed a waiver unless the party was so careless in its document procedures as to suggest that it was indifferent to whether privileged documents were disclosed. *See, e.g., Standard Chartered Bank v. Avala Int'l Holdings, supra*, 111 F.R.D. at 85-86; *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105-06 (S.D.N.Y.1985); *In re Grand Jury Proceedings Involving Berkley & Co.*, 466 F.Supp. 863, 869 (D.Minn.1979). *Compare Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 331 (N.D.Cal.1985), *with Mendenhall v. Barber-Greene Co.*, 531 F.Supp. 951, 954-55 (N.D.Ill.1982).

In contrast, the privilege is waived if the "holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication." Sup.Ct. St. 511. *See generally* 2 *Weinstein's Evidence, supra*, ¶ 511[02]. Waiver does not, however, require that the privilege holder "intentionally relinquish[ ] a known right." *Id.*, at 511-6 to 7 & nn.14-16 (citing *In re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672, 675 (D.C.Cir.), *cert. denied*, 444 U.S. 915 (1979); *Permian v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 460-61 (N.D.Cal.1978)). *Accord, e.g., In re Sealed Case*, 676 F.2d 793, 823 (D.C.Cir.1982); *In re John Doe Corp.*, 675 F.2d 482, 489 (2d Cir.1982); *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C.Cir.1981); *Teachers Ins. & Annuity Ass'n of America v. Shamrock Broadcasting Co.*, 521 F.Supp. 638, 645 (S.D.N.Y.1981); *Church of Scientology v. Cooper*, 90 F.R.D. 442, 443 (S.D.N.Y.1981). If he voluntarily undertakes actions that will predictably lead to the disclosure of the document, then waiver will follow. *See, e.g., In re von Bulow*, 828 F.2d 94, 100-01 (2d Cir.1987). Moreover, waiver will be found even if the disclosure took place in a forum other than the lawsuit in which the waiver issue is raised. *See, e.g., id.* (publication of book by former attorney of party); *In re John Doe Corp., supra*, 675 F.2d at 489 (disclosure to public offering underwriter); *Permian Corp v. United States, supra*, 665 F.2d at 1221 (disclosure to SEC); *In re Grand Jury Subpoenas Dated Dec. 18, 1981 and Jan. 4 982, supra*, 561 F.Supp. at 1259 (letter to Congressman). [FN7]

*10 In this case it cannot be said that the disclosure by the Village of privileged communications in the state court proceeding was involuntary in any relevant sense. The Village chose, as a matter of litigative strategy, to assert an "advice of counsel" defense and it did so with the knowledge that assertion of that defense necessitated the disclosure of otherwise privileged attorney-client communications. Indeed, the Village proceeded to disclose those communications by deposition and document production, without even the necessity of a court order. Resort to the Court was ultimately required only with respect to a limited number of documents, and the only issue before the Court was whether the waiver by the Village had been so broad that production of those additional documents was required under New York law. Ultimately the Court so held and the Appellate Division confirmed the correctness of its holding.

This scenario simply does not involve any of the circumstances that might suggest that disclosure in the state courts was involuntary. Defendants chose to waive the privilege in order to gain a strategic advantage and cannot now be heard to argue that this choice on their part was not one freely and knowingly made. As one court has noted in a similar context:
> The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit.... The attorney-client privilege is not designed for such tactical employment.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1370 (D.C.Cir.1984) (quoting *Permian Corp. v. United States, supra,* 665 F.2d at 1221. Accordingly, the "coercion" cases do not justify the conclusion that this Court should disregard the waiver by the Village in state court. [FN8]

Indeed, if anything, the circumstances here are even more compelling than those ordinarily encountered. The state court case involved essentially the same parties and attorneys as in this case, and the issues involved in this case are closely related to those litigated in state court. Moreover, the Village was fully aware of the consequences of its decision to invoke the "advice of counsel" defense and plainly manifested its awareness by disclosing most of the relevant communications without dispute.

In sum, defendants chose to waive the attorney-client privilege with respect to specified subject matters. As a consequence they are not entitled to withhold discovery in this case addressed to those subject matters on the basis of that privilege. since the appeal by the Village to the Zoning Board of Appeals is such a subject matter, the invocation of privilege by the Village must be rejected. *See, e.g., In re Subpeona Duces Tecum, supra,* 738 F.2d at 1370; *Drimmer v. Appleton,* 628 F.Supp. 1249, 1252 (S.D.N.Y.1986); *Liggett Group v. Brown & Williamson Tobacco Corp.,* 116 F.R.D. 205, 207 (M.D.N.C.1986); *Chubb Integrated Systems v. National Bank of Washington,* 103 F.R.D. 52, 67 (D.D.C.1984); *Teachers Ins. & Annuity Ass'n v. Shamrock Broadcasting Co., supra,* 521 F.Supp. at 644-45.

> *11 4. Q. At this joint meeting, did anyone suggest that the Village should drop the effort to prevent Mr. Rattner from parking limousines?
> MR. GOODMAN: I object on the ground of attorney-client privilege and instruct the witness not to answer.

(Mroczkowski Dep. p. 22, 1. 6-11.)

Defendants' objection is based on same theory that the waiver in the state court proceedings should be disregarded here. Plainly the privilege has been waived with regard to this subject matter.

> 5. Q. Over the course of time when you were involved as a Planning Commission member and as a member of the Board of Trustees, was there anyone who ever suggested that the Village should stop its efforts to prohibit Mr. Rattner from parking limousines on his Pleasantville properties?
> MR. GOODMAN: I object to that question on the grounds that it invades the attorney-client privilege, and more than that, it may implicate the executive session privilege separate and apart from that. Unless you establish that such conversations took place outside of both of those kinds of procedures, I will object and instruct the witness not to answer.

(Mroczkowski Dep. p. 22, 1-19 tO P. 23, 1. 9.)

The same argument is made by defendants based upon their theory that disclosure in the state court litigation was involuntary. Again, that argument is meritless.

> 6. Q. Was there a discussion among the Board of Trustees after that order came out as to whether the Village should appeal?
> MR. GOODMAN: I object to that unless you limit it to outside of executive session and outside of the presence of counsel.
> MR. KITTAY: No.
> MR. GOODMAN: Can you answer that question without implicating the privileges?
> THE WITNESS: No.
> MR. GOODMAN: Then I instruct the witness not to answer the question.

(Mroczkowski Dep. at 49, 1. 11-24.)

In resisting this inquiry, the Village argues that "to the extent [discussion] involves communications with counsel," the question is barred by the attorney- client privilege. (Defendants' Mroczkowski Memorandum at p. 6.) Alternatively it asserts that 11(t]o the extent that such order was discussed in executive session without counsel present," the executive session privilege bars an answer that would reveal "litigation strategy discussions." (*Id.,*)

There are several problems with these arguments. First, with respect to the attorney-client privilege claim, defendants fail to establish that the answer would disclose confidential communications to an attorney. As noted, the affidavit of the witness simply asserts that questions listed in his Schedule A involved communications at a meeting with counsel at which legal advice was sought "and/or" received. This is not equivalent to evidence that a specific question would reveal either a confidential communication made to an attorney for the purpose of eliciting legal advice or the substance of the advice.

Second, the question simply asks whether a specific topic was discussed. As such it does not seek the disclosure of the substance of the communications and thus is not barred by the privilege. *See, e.g., Church of Scientology v. Cooper, supra,* 90 F.R.D. at

443.

*12 Third, defendants' invocation of the executive session privilege is not well taken. This Court has previously held that whatever protection may be afforded by N.Y. Public Officers Law § 105(1)(d) is not applicable to this federal question case and that accordingly, if any discussions relevant to the issues in this case took place between members of the Board of Trustees and were not otherwise privileged, they are discoverable even if they occurred during an executive session of the Board. *Rattner v. Netburn,* Memorandum and Order at 11-2.3 (Dec. 29, 1988). [FN9] Moreover, I note that defendants offer no evidence that an answer would reveal discussions from an executive session of the Board.

Defendants seek to sustain their position on this point by arguing that an oral ruling made on March 9, 1989 during a telephone conference in effect modified the December 29, 1988 Memorandum with respect to the "executive session" privilege claim. This is not correct. The oral ruling cited by defendants in fact was based on the concern that discussions of litigation strategy and tactics by defendants--whether with or without counsel--should not be inquired into unless necessary to plaintiffs' trial preparation. Thus the appropriate analysis concerns the applicability of the work-product rule. The problem with such a claim in the present context is that the question does not inquire into litigation strategy as such; it simply asks whether a particular topic was discussed by the Board of Trustees. An answer would not intrude on any area of legitimate confidentiality and in any event is justified by plaintiffs' need to discover the degree of involvement, if any, of defendants Farrington and Netburn in actions allegedly taken with respect to Rattner.
  7. Q. Did Mayor Farrington ever swear about Rattner or the Rattner litigation, at a meeting at which counsel was present?
  MR. GOODMAN: Same objection, same instruction.

(Mroczkowski Dep. p. 66, 1. 16-20.)

This question does not seek disclosure of the substance of privileged communications. Indeed, the objection trivializes whatever privilege the Village is seeking to invoke.
  8. Q. Do you recall, based on what you remember, that Justice Stolarik ruled against the Village?
  MR. GOODMAN: Are you asking now about questions outside of the conversations with counsel?
  MR. KITTAY: I am asking whether he recalls that Justice Stolarik ruled against the Village, yes or no.
  MR. GOODMAN: If you obtained information about that decision from counsel, then I think you have an attorney-client privilege to raise here, and the Village is not waiving its attorney-client privilege here, and I ask you to advise me of that.
  THE WITNESS: It is my belief, particularly at this time, that this was prior to when I went on the board. If I were to have received a copy of this decision or had anyone described it to me, it would have been given to me--the decision would have been sent to me and the description of the holding would have been made to me in my capability as a defendant in the action by counsel.
  *13 MR. GOODMAN: Then I will object to the question and instruct the witness not to answer the question.

(Mroczkowski Dep. p. 72, 1. 7 to p. 73, 1. 11.)

The Village waived in state court its privilege with respect to its analysis of and response to Justice Stolarik's decision. For the reasons already noted, that waiver precludes assertion of the privilege here. In any event, whether or not the witness learned of the court decision from counsel, he cannot decline to answer the questions. Factual information provided by an attorney to his client is not privileged, nor is the communication itself insofar as it merely conveys the fact. *See, e.g., Standard Chartered Bank v. Avala Int'l Holdings, supra,* 111 F.R.D. at 80. Furthermore, the question does not ask the witness to disclose a communication from his attorney, merely his current awareness of a publicly known fact. As such, it does not invade the privilege.
  9. Q. Did you ever tell St. Leger that you thought he was wrong about what he wrote about Stolarik's opinion, at a meeting at which counsel was present?
  MR. GOODMAN: Now I object and instruct the witness not to answer.
  You are asking a question that is so detailed that it can only implicate the privilege.
  MR. KITTAY: This privilege has been waived. It was waived by the Village and found by Justice Palella to have been waived.
  The document is a document that was produced to us by the Village after those court determinations which found that the Village had waived the privilege. So I don't see how in God's green earth you can sit here now and claim that there is a privilege with respect to these matters which documents have been produced about. I just don't understand it.
  MR. GOODMAN: It hasn't been waived in this litigation. Attorney-client privilege has not been

waived in this litigation.
MR. KITTAY: Then I will make my record and I am sure we will ask people with much more authority than you and I to decide the issue.
MR. GOODMAN: Also, there is a complete lack of relevance to these questions.

(Mroczkowski Dep. p. 84, 1. 10 to P. 85, 1. 18.)

Again, this subject area was opened to inquiry by the Village in the state court litigation, and that waiver cannot be disregarded here. In any event, defendants have not established, or even attempted to establish, that the communication in question from the witness to Mr. St. Leger amounted to a confidential communication to an attorney for the purpose of eliciting legal advice; as noted, the only fact that defendants have established through the affidavit of the witness is that such a communication, if it occurred, was made in the presence of an attorney at a meeting during which legal advice was either sought or given, and this does not establish the factual predicate for invocation of the privilege.

> 10. Q. Was there any discussion, following Justice Stolarik's decision, that Justice Stolarik had given the Village a decision on the legalities of parking and that the Village should accept that decision and stop litigating against Mr. Rattner on the zoning issue?
> *14 MR. GOODMAN: Would you please advise me if YOu can't answer that question without implicating the attorney-client privilege.
> A. Whatever discussions were conducted regarding that particular aspect of this decision were done, I believe, in the presence of counsel.
> MR. GOODMAN: I object, and instruct the witness not to answer.

(Mroczkowski Dep. p. 88, 1. 7-21.)

For reasons already noted, the privilege was waived with respect to this matter, and in any event defendants have failed to establish that the communications in question were privileged.

> 11. Q. Did Mayor Farrington ever swear, regarding the Rattner litigation, at executive sessions of the board at which counsel was not present?
> MR. GOODMAN: I object and instruct the witness not to answer.

(Mroczkowski Dep. p. 66, 1. 10-15.)

This is the first of a series of questions posed to Mr. Mroczkowski to which the Village now objects solely on the ground of the so-called "executive session" privilege. The only "evidence" adduced in support of this claim of privilege is the assertion in the affidavit of Mr. Mroczkowski that

> With respect to each question enumerated in Schedule B, I participated in a meeting of the Board of Trustees in executive session for the purpose of discussing the Rattner litigation and litigation strategy with respect thereto. An answer to the question would have breached such privilege under the Magistrate's order of March 9, 1989.

(Mroczkowski Aff. at 2 6.)

As noted, this Court has previously determined that this theory, as well as the related "deliberative privilege," are not a bar to discovery of relevant information in this case. The only protection potentially available for Village Board discussions is the work-product rule, but it has been limited to discussions of litigation strategy, and the question of whether the Mayor used profanity can scarcely be said to fit within that category. Cf. In re Grand Jury Subpoena Duces Tecum, supra, 731 F.2d at 1038 & n.5 (expressing skepticism about equally bizarre invocation of work-product rule). Moreover, even if the "litigation strategy" rule invoked here were so broadly interpreted as to encompass this matter, plaintiffs' showing of need--the information is highly relevant to motive or intent--would easily outweigh any arguable interest of defendant Village in the confidentiality of the Mayor's use of profanity.

> 12. Q. Do you recall that--first of all, yes or no, do you recall any discussion about whether the board of trustees should accept the assessor's recommendation on the reassessment?
> MR. MALDONADO: objection. Form. Lack of foundation.
> MR. GOODMAN: Are you talking about Outside of executive session and outside of counsel?
> MR. KITTAY: No, I mean, he testified that all these discussions were in executive session, I believe, with the exception of certain discussions about lifting of liens, so I am talking about in executive session but outside the presence of counsel.
> MR. GOODMAN: Then I have to object and assert the executive session privilege because your question is so specific that it is not just a question of subject matter, but you are -asking a question of strategy, so I object and instruct the witness not to answer on the ground of executive session privilege.

*15 (Mroczkowski Dep. p. 107, 1. 4 to p. 108, 1. 3.)

The fact that discussions concerning the assessment of Rattner's property may have taken place in

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

executive session does not bar their disclosure in this case. In any event, the Village waived any confidentiality as to these matters in state court by disclosing the substance of their analysis. I also note that defendants do not attempt either to invoke the work-product rule or to demonstrate that an answer to the question would disclose litigation strategy. In any event, it is plain that an answer would not disclose such strategy.

> 13. Q. Did your anticipation that such a case might be brought arise after Mr. Rattner's properties in Pleasantville had been reassessed?
> MR. GOODMAN: I object because I think that you are trying to get into discussions about the executive session, and this is clearly, I think, within the executive session privilege.

(Mroczkowski Dep. p. 108, l. 21 to p. 109, l. 4.)

This question is also not barred by any demonstrated privilege. It appears, however, in effect to have been responded to in the next question and answer. (*See* Mroczkowski Dep. at 109, l. 24 to 110, l. 8.) Accordingly, it need not be answered again.

> 14. Q. What do you mean by a limited form of analysis and observation?
> MR. GOODMAN: I object and instruct the witness not to testify any further since it is clear that we are talking about executive session.
> MR. KITTAY: I want to know what he meant by his last answer.
> MR. GOODMAN: My instruction stands.

(Mroczkowski Dep. p. 117, l. 3-11.)

Defendants' invocation of an "executive session" or litigation strategy privilege is indefensible since the question simply asks the witness to explain certain words that he used in a prior answer. In any case, the "executive session" theory has no place in this case.

> 15. Q. You don't remember. Was this concern with the parking of limousines which would take up space that the employees would then not be able to use and would burden the surrounding area, was this a concern of the Village Board from time to time from 1985 through 1988?
> MR. MALDONADO: objection to the form.
> MR. GOODMAN: I am going to consult with the witness on a question of privilege.
> (Discussion off the record between witness and his counsel)
> MR. GOODMAN: I object to the question on the ground of executive session privilege and instruct the witness not to answer.

(Mroczkowski Dep. p. 119, l. 9-25.)

Again, the fact that a relevant topic was discussed at an executive session of the Board of Trustees does not preclude inquiry. Defendants have also not even attempted to show that an answer to the question would reveal litigation strategy.

> 16. Q. Was there mention from time to time at executive sessions outside the presence of counsel regarding the concern that if the limousines were using the spaces, then the spaces would not be available to the employees which would cause a parking burden on the surrounding area?
> MR. GOODMAN: I object to the question and instruct the witness not to answer. The question is so detailed that it can't be answered without revealing communications.
> *16 MR. KITTAY: I think it is in accord with Magistrate Dolinger's ruling to ask if a certain subject was mentioned.
> MR. GOODMAN: You are not asking if a certain subject was mentioned. You are asking if something so detailed was considered that obviously it has to reveal what was being spoken.

(Mroczkowski Dep. p. 120, l. 2-21.) Since the "executive session" theory is inapplicable here, the only relevant concern is whether the answer would disclose litigation strategy. Defendants do not attempt to demonstrate that it would, and in fact the question is so phrased that it plainly would not.

> 17. Q. Was the concern about Rattner's employees parking on the street mentioned from time to time during the course of your trusteeship?
> MR. GOODMAN: I object. Same objection I had before. If you want to limit the question to were they talking about his property, did they talk about parking, when you talk about a concern, you are talking of something that gets imparted by means of communication and therefore you are talking of the communications themselves.
> MR. KITTAY: Do you instruct him not to answer that?
> MR. GOODMAN: To the extent it took place within executive session, I instruct you not to answer, yes.
> A. These discussions did take place within executive session, yes.
> MR. KITTAY: I think it is an improper direction, but you will, I am sure, justify your position.
> MR. GOODMAN: And you will have to justify yours as well, Mr. Kittay.
> MR. KITTAY: Yes. That's right.
> MR. GOODMAN: That's right.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works