(Mroczkowski Dep. p. 120, l. 22 to p. 121, l. 24.)

Again, the purported executive session privilege does not apply and defendants have not proffered any evidence to support an argument for application of the work-product rule.

 18. Q. What was said on that subject [surveillance of Rattner's property] at executive session?
 MR. GOODMAN: Executive session, I instruct the witness not to answer on the ground of executive session privilege.

(Mroczkowski Dep. p. 124, l. 15-19.)

As with the preceding questions, the "executive session" argument does not preclude inquiry into discussions among the Village trustees that are relevant to the issues in this case. The alleged surveillance of plaintiffs' property by the Village is relevant and thus a proper subject of discovery in this instance. Finally, I again note that defendants do not attempt to demonstrate that an answer would disclose litigation strategy and, even if it did, plaintiffs' need for the information appears substantially to outweigh any interest in confidentiality on the matter by the Village.

 19. Q. Was there any mention during the executive session that there should be increased attention paid by the parking enforcement officer to the parking of Rattner employees on the street?
 MR. GOODMAN: I object on the ground of executive session privilege and instruct the witness not to answer.

(Mroczkowski Dep. p. 124, l. 20 to P. 125, l. 2)

This question is proper for the same reasons as question 18.

 20. Q. Then why was she doing it? Did you have an understanding of that?
 *17 MR. GOODMAN: If you gained that understanding from executive session, please say so.
 A. I don't know whether it was in executive session or not.
 MR. GOODMAN: I think you ought to not to testify about it. I think I am going to assert the privilege and tell you not to testify about it until you are certain it was outside of executive session.

(Mroczkowski Dep. p. 134, l. 9-20.)

This question is also proper for the reasons specified with respect to question 18.

 21. Q. Was there ever any discussion that you were aware of among Pleasantville officials as to how to conduct themselves toward Mr. Rattner in order to avoid any further entanglement in litigation with him?

     * * *

 Q. What about inside executive session but outside the presence of counsel?
 MR. GOODMAN: I object and instruct the witness not to answer.

(Mroczkowski Dep. p. 138, l. 25 to p. 139, l. 4.)

For the reasons previously noted, this question also is not barred by defendants' "executive session" theory, nor is it invasive of any work-product protection.

 22. Q. Did you know, prior to February 1988, that part of Mr. Rattner's insurance business involved insuring of pension funds?
 MR. GOODMAN: I will instruct the witness that he may answer the question to the extent it does not implicate communications with counsel.

(Mroczkowski Dep. p. 8, l. 14-20.)

This and the remaining questions at issue in connection with the Mroczkowski deposition were responded to by the witness subject to a limiting instruction by counsel that--although it varied in wording from question to question-- amounted to a direction not to disclose anything said either in the presence of an attorney or during an executive session of the Board of Trustees. The evidence offered in support of these claims of privilege is limited to the following conclusory assertion in the affidavit of the witness:

 With respect to each instance on Schedule C, any further expansion of my answer would have breached either the attorney-client or executive session privilege because it would have implicated meetings with attorneys at which advice was sought or given or executive sessions of the Board of Trustees at which litigation strategy was being discussed.

(Mroczkowski Aff. at ¶ 7.)

The question numbered 22 does not seek the substance of protected communications, but rather asks for the witness's knowledge of the facts. As such it does not invade the attorney-client privilege even if the information was conveyed to the witness by an attorney. *See, e.g., Hardy v. New York News, Inc., supra,* 114 F.R.D. at 644 (citing *Upjohn Co. v. United States,* 449 U.S. 383, 395 (1981) *Standard Chartered Bank v. Ayala Int'l Holdings, supra,* 111

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

F.R.D. at 80. In any event, the conclusory allegations found in the Mroczkowski affidavit plainly do not demonstrate that an answer to the question would disclose a confidential communication from a client to an attorney seeking legal advice or the rendition of such advice.

23. Q. Did Toba Weiss ever suggest or state that the case against Mr. Rattner on the zoning issues should be dropped?
*18 MR. GOODMAN: I object. I instruct the witness that he may answer that question if any such suggestion took place outside the confines of the meeting with counsel and outside the confines of the executive session.

(Mroczkowski Dep. p. 23, 1. 17-25.)

Any privilege with respect to this matter was waived in the state court case. That waiver governs here, for the reasons previously stated.
24. Q. Let me start again. I am not asking a technical question. I am getting at the substance of the matter.
Did Toba Weiss ever say that she thought that the case against Rattner on the zoning issues should be dropped by the Village, or discontinued?
MR. GOODMAN: Same instruction. To the extent that occurred outside the presence of the meeting with counsel, outside executive session, you may answer.

(Mroczkowski Dep. p. 24, 1. 13-23.)

The privilege claim fails here as well based on the waiver by the Village in the state court case.
25. MR. KITTAY: I am asking the witness questions. I am asking if there was ever any discussion about Toba Weiss' view that there should be a settlement of this [litigation].
MR. GOODMAN: I object to the characterization of the witness' testimony. You haven't fixed a time frame here. I think I have an objection to relevance.
You are asking,him about things that were done in furtherance of a settlement agreement which violates the evidentiary privilege against settlement statements as well as the specific language of the settlement agreement.
MR. KITTAY: I disagree.
MR. GOODMAN: I know. You have never had any respect for that agreement.
MR. KITTAY: I don't think this implicates any agreement.
MR. GOODMAN: Sure it does.
MR. KITTAY: I am asking whether there was any discussion at any time about Ms. Weiss, view that the Village should enter into a settlement with Rattner.
MR. GOODMAN: I will permit him to answer to the extent such discussions took place outside of the presence of counsel and outside executive session. otherwise, you are violating two other privileges.

(Mroczkowski Dep. p. 27, 1. 4 to p. 28, 1. 9.)

Although during the colloquy defendants' attorney referred to an "evidentiary privilege against settlement statements," the only bases asserted now for resisting the questions are the attorney-client privilege and the "executive session" theory. [FN10] The latter purported privilege is not applicable here, and in any event any privilege on this subject was waived in state court (see Kittay March 24, 1989 Affidavit at Exh. I), and that waiver binds the Village in this case.
26. Q. Did she mention that to you from time to time during 1983 and 1984?
MR. GOODMAN: Other than in executive session.

(Mroczkowski Dep. p. 29, 1. 8-11.)

Again, any privilege on this matter was waived in the state court litigation, and the executive session argument has been rejected here.
27. Q. Did anyone else who was a Village official express that view?
MR. GOODMAN: I object to the relevance of this entire line of questioning.
You can answer subject to the objection, subject to an instruction not to reveal any communications that took place in the presence of counsel or the presence--or in executive session.

*19 (Mroczkowski Dep. p. 29, 1. 17 to p. 30, 1. 2.)

The same reasoning and ruling apply to this question.
28. Q. Who were the Village officials who expressed that view?
A. I--
MR. GOODMAN: Again, outside the presence of counsel and outside executive session.

(Mroczkowski Dep. p. 30, 1. 9-14.)

Again, the Village waived any privilege with respect to this matter in state court, and accordingly cannot prevent disclosure here. (Kittay Aff. at Exh. I.) Although defendant argues that the state court waiver

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

was limited to issues involving the Village's claim in state court and not the defense of the counterclaims, this does not change the result. The waiver did not cover information relevant solely to defending against Rattner's counterclaims, but it plainly encompassed communications relevant to both the claims and the counterclaims. Since the discussion at issue involved the entire suit, and particularly the Village's continued efforts to prevent Rattner from using his property for limousine parking, it is plainly within the scope of the waiver.

> 29. Q. Do you recall Mayor Farrington expressing that view?
> MR. GOODMAN: Again, outside executive session and outside the presence of counsel.

(Mroczkowski Dep. p. 30, 1. 17-21.)

The same reasoning and ruling apply to this question.

> 30. Q. Prior to that time, the 1988 League of Women Voters debate, had Mayor Farrington expressed a view that it was a pity that the Village should be forced to spend so much money on burdensome litigation?
> MR. GOODMAN: I object to form. You may answer subject to the objection, with respect to conversation outside of executive session and outside of the presence of counsel.

(Mroczkowski Dep. p. 31, 1. 22 to p. 32, 1. 7.)

The type of communication sought by this question could conceivably be part of a privileged communication to an attorney for the purpose of eliciting legal advice. The problem with defendants' position, however, is that they offer no specific evidence to support such a claim.

> 31. Q. Was there ever any discussion among Village officials as to who was responsible for the continuation of the litigation?
> MR. GOODMAN: I object to the form. Also instruct the witness that he can answer the question to the extent it does not implicate conversations with counsel or conversations held in executive session.

(Mroczkowski Dep. p. 32, 1. 12-20.)

The question seeks disclosure of a "discussion among Village officials." This does not appear to call for disclosure of attorney-client privileged communications even if an attorney was present. In any event, the conclusory assertion that a full answer "would have implicated meetings with attorneys" (Mroczkowski Aff. at ¶ 7) is not an evidentiary showing that establishes the facts necessary for assertion of this privilege.

The fact that such a discussion may have taken place at an executive session of the Board an assumption unsupported by any evidence offered by defendants also does not justify prohibiting the inquiry, for the reasons noted. The question also does not appear to impinge on the work-product rule, and defendants in any event make no effort to establish its applicability here.

*20 > 32. Q. Did some Village officials say that they believed Mr. Rattner was responsible for the continuation of the litigation, in words or substance?
> MR. GOODMAN: You may answer the question to the extent it does not implicate executive sessions or invade consultations with counsel.

(Mroczkowski Dep. p. 33, 1. 8-15.)

The same reasoning applies to this question, with the same result.

> 33. Q. Do you remember that there was a consensus among the Board of Trustees while you served on the board that Mr. Rattner was responsible for the continuation of this litigation?
> MR. GOODMAN: Objection to the form. objection to the extent it implicates executive session privilege and attorney-client privilege.

(Mroczkowski Dep. p. 33, 1. 20 to p. 34, 1. 4.)

This question plainly does not call for disclosure of a communication covered by the attorney-client privilege. It equally does not call for disclosure of litigation strategy of any type. Accordingly it is not objectionable.

> 34. Q. Prior February 1988, did any member of the Board of Trustees indicate that he or she was upset that Mr. Rattner had caused this litigation to continue?
> MR. GOODMAN: You may answer that question only to the extent any such communications took place outside of executive session or outside communications with counsel.

(Mroczkowski Dep. p. 34, 1. 14-22.)

An answer to this question could conceivably disclose a portion of a confidential communication made to an attorney to elicit legal advice. Since, however, defendants have not sought to establish by competent evidence that this is the case, their claim of attorney-client privilege must be rejected. The

question also does not call for disclosure of litigation strategy by the Village.

D. *The Deposition of Defendant Frank Farrington*

In support of its privilege claims asserted at the Farrington deposition, the Village proffers an affidavit by the witness which is virtually identical to that executed by Mr. Mroczkowski. As will be seen, it is inadequate to sustain the privilege claims of the Village.
> 1. Q. And was the legal advice regarding the Rattner ad set forth in a document that you saw?
> MR. HANDLER: objection.
> Direct him not to answer the question. Attorney-client privilege.

(Farrington Dep. p. 207, l. 7 to p. 207, l. 12.)

The Village has permitted discovery of the fact that Administrator St. Leger sought legal advice concerning the Rattner advertisement. This question does not seek the substance of the advice but rather is addressed to whether certain withheld documents may be privileged. Such an inquiry as to the factual predicate for a claim of privilege is proper. *See, e.g., United States v. Kovel, 296 F.2d 918, 923-24 (2d Cir.1961)*.
> 2. Q. And at the (February 16] executive session, did Mr. St. Leger indicate that he had met with counsel to discuss the Ratter ad?
> MR. HANDLER: I'm going to object. We now know what the subject of the conversation was. It was legal advice. The witness has so testified. I'm not going to permit the witness to testify about anything that St. Leger said in delivering his legal report.

*21 (Farrington Dep. p. 207, l. 23 to p. 208, l. 8.)

This question does not seek the substance of any privileged communication.
> 3. Q. Did you ever see any draft of a proposed response to the Rattner ad?
> MR. MALDONADO: objection as to form.
> MR. HANDLER: And I would like you to exclude from your answer any memoranda or legal advice furnished by counsel.
> A. No.
> MR. KITTAY: I take issue with your exclusion, Mr. Handler, because I think if a proposed response was in a legal memorandum, the proposed response is not something that has the requisite confidentiality but so the record is clear, because I think you made your position well known on this--
> Q. Was there any language in the Golenbock memorandum setting forth a proposed response or proposed responses to the Rattner ad?
> MR. HANDLER: I direct the witness not to answer. Privilege.

(Farrington Dep. p. 247, l. 14 to p. 248, l. 10.)

For reasons already noted, the so-called "Golenbock memorandum" is not privileged. Accordingly a question about its content does not intrude on the attorney-client privilege.
> 4. Q. You recall that during the February 16 meeting, there was a discussion of legal advice?
> A. Yes.
> Q. And was that discussion of legal advice which had been received from Golenbock and Barell?
> A. Yes, it was.
> Q. And was that discussion regarding the memorandum from Golenbock and Barell that Mr. St. Leger had picked up on the 16th for purposes of transmitting it to the Board of Trustees?
> MR. HANDLER: Direct the witness not to answer. He is not going to testify with respect to the discussion they had concerning the legal advice that was being communicated to them at that meeting.

(Farrington Dep. p. 250, l. 8 to p. 250, l. 24.)

This question does not seek the substance of any legal advice, but rather one of the subject matters of discussion by the Village Board of Trustees, and this is plainly not privileged.
> 5. Q. Did the Village ever ask for a Dun & Bradstreet report on Mr. Rattner?
> MR. HANDLER: I object on the ground of attorney-client privilege and work product.
> MR. KITTAY: You are instructing him not to answer?
> MR. HANDLER: Yes.

(Farrington Dep. p. 285, l. 3-10.)

The attorney-client privilege is obviously inapplicable since the question merely asks whether the Village made a request for information to an outside institution. Even if done on the advice of counsel, this action is not a privileged communication. *See, e.g., Radio Today v. Westwood One, supra*, Opinion at 2.

The invocation of the work-product rule is also inappropriate. First, I note that defendants have offered no evidence to suggest the applicability of that rule. Thus, the affidavit of Farrington never even mentions work-product, much less alleges that

an answer to the question would disclose actions taken in contemplation of litigation rather than for other purposes. *See, e.g., Binks Mfg. Co. v. National Presto Industries, 709 F.2d 1109, 1118-19 (7th Cir.1983)* (preparation for litigation must be primary motive in order to invoke work-product rule). Second, a request to an outside source for information lacks the requisite expectation of confidentiality. Third, in any event the taking of such a step is of sufficient relevance to plaintiffs' claims here that their need for the information will outweigh any asserted interest of defendants in concealing the fact that they took this step.

> *22 6. Q. Did the Village--and I am excluding whether counsel for the Village may have done it-- but did the Village ever request a Dun & Bradstreet report for Mr. Rattner?
> MR. HANDLER: Objection to the form.
> Direct him not to answer.
> You haven't cured the problem. To the extent that we are defending an action and the client is asked to do things in pursuance of defense of the action at counsel's request, you are not curing the problem.
> It is privileged. Legal strategy, work product, attorney-client privilege.
> MR. KITTAY: Let me make a record, so that there is some indication in the record of what we are talking about, other than a blanket statement that everything is privileged.

(Farrington Dep. p. 285, 1. 12 to p. 286, 1. 1.)

This question is proper, for the reasons stated with respect to the preceding question.

> 7. Q. Did the Village ever undertake any kind of investigation of Mr. Rattner's background?
> MR. HANDLER: Same objection.
> Direct him not to answer.

(Farrington Dep. p. 286, 1. 7-10.)

This question is also proper, for the reasons noted with respect to question 5.

> 8. Q. Apart from what counsel may have done, did any Village official or employee, as far as you know, ever attempt to investigate Mr. Rattner's background?
> MR. HANDLER: Same objection.
> Direct him not to answer.

(Farrington Dep. p. 286, 1. 11-16.)

The same reasoning applies and the same ruling follows.

> 9. Q. Did the Village, to your knowledge, ever take any steps to see if the parking of limousines at 409 or 423 Manville Road was causing congestion on Manville Road or Grant Street in the vicinity of 409 and 423 Manville Road?
> MR. HANDLER: I'm going to object to the question.
> It seems to me that you are probing this witness now as to what the legal strategies were and what the work product was of the Village and its counsel in defending the pending state court litigation, and I'm going to direct the witness not to answer on grounds of privilege.
> I don't see any relevance to anything that was done by the Village and its counsel in preparing for trial in the state court litigation which has any relevance to the issues in this case.

(Farrington Dep. p. 290, 1. 4-23.)

By affidavit of Mr. Farrington, the Village invokes only the attorney-client privilege to avoid an answer. Since the question seeks solely a description of actions taken by the Village, this privilege is plainly inapplicable.

In the quoted colloquy, defendants' counsel referred to the work-product rule, but defendants offer no evidence to support the invocation of the rule. [FN11] Moreover, since defendants permitted disclosure in state court concerning this general area (Kittay Aff. at Exhs. J, N), they waived any confidentiality on this matter.

> 10. Q. To your knowledge, did John St. Leger ever engage in surveillance of the Rattner parties' properties in Pleasantville?
> MR. MALDONADO: Object as to form.
> MR. HANDLER: Go ahead.
> A. That is the same--
> MR. HANDLER: Same direction. I direct him not to answer.

(Farrington Dep. p. 290, 1. 24 to p. 291, 1. 7.)

*23 The question does not call for disclosure of confidential communications with counsel. The work-product rule, which defendants do not invoke on this motion although it is obliquely referred to in the colloquy, is equally inapplicable, since the Village offers no evidence to support such a work-product claim and since plaintiffs' need for the information would presumably outweigh any interest of the Village in confidentiality.

> 11. Q. Did Kathy Gale ever engage in surveillance of the Rattner parties' properties?
> MR. MALDONADO: objection as to for'm-
> MR. HANDLER: Same direction, unless YOU can be more specific.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

If you want to inquire with respect to other areas which don't implicate work product in the state court litigation, fine.
There is a way to rephrase your question to get what you want, without breaching the privilege, if you would like to do so.
MR. KITTAY: You've given your instructions, Mr. Handler?
MR. HANDLER: That's right.

(Farrington Dep. p. 291, l. 8-24.)

The same reasoning applies to this question, and the same ruling follows.
> 12. Q. Was there any divergence of views among the trustees, at any time, about whether to continue to prosecute the case that the Village had brought against Mr. Rattner and his companies?
> MR. HANDLER: Objection. Privileged.
> MR. KITTAY: You are directing him not to answer?
> MR. HANDLER: Yes.

(Farrington Dep. p. 322, l. 12-20.)

The village waived any privilege in state court. Moreover, the question does not intrude on the attorney-client privilege since it does not seek confidential communications to an attorney for the purpose of eliciting legal advice, and defendants do not attempt to prove otherwise. Finally, the fact that an attorney may have been present when a trustee expressed an opinion does not establish the applicability of the privilege.
> 13. Q. Was there ever any member of the Board of Trustees who disagreed with any action taken by the Board with respect to Mr. Rattner?
> MR. MALDONADO: Objection as to form.
> MR. HANDLER: I mean, are you talking about-- when you say action, you don't mean action in terms of litigation?
> MR. KITTAY: I mean more generally, act.
> MR. HANDLER: Are you including motions in litigations?
> MR. KITTAY: Yes.

(Farringtn Dep. p. 322, l. 21 to p. 323, l. 9.)

This question also does not seek to invade the attorney-client privilege. As noted, the assumption of the Village that the presence of an attorney, even for the general purpose of rendering advice, exempts from disclosure any statements made in a meeting is untenable.
> 14. Q. I want to know if there was ever anything that the village did, vis-a-vis Mr. Rattner, as to which one or more trustees disagreed.
> MR. HANDLER: Mr. Kittay, the record shows that the Rattner litigation was discussed in executive session with counsel present. Those discussions are privileged and confidential.
> I'm not going to permit this witness to testify to those conversations, nor to the deliberations with counsel with respect to any action taken or not taken.
> *24 If you want to ask about something that falls outside of that parameter, then go ahead.
> But you've got to be specific as to what it is you are asking for, and then the witness will answer.
> MR. KITTAY: To be perfectly clear, I'm not asking about the substance of any discussion.

(Farrington Dep. p. 323, l. 10 to p. 324, l. 7.)

The question plainly does not intrude on the attorney-client privilege.
> 15. Q. I'm just asking whether there was, at any time, less than unanimity among the Board of Trustees about what to do about Mr. Rattner?
> MR. HANDLER: I'm directing the witness not to answer.
> I think you are calling for confidential deliberations and discussions.

(Farrington Dep. p. 324, l. 8-14.)

The same reasoning applies to this question.
> 16. Q. Did the Board of Trustees ever discuss, in executive session, how the board might avoid future lawsuits by Mr. Rattner?
> MR. HANDLER: Objection. Privileged. Direct you not to answer. Legal strategy Work product. Attorney-client privilege.

(Farrington Dep. P. 334, l. 25 to p. 335, l. 7.)

For the reasons already noted with respect to the immediately preceding questions, this question does not invade the attorney-client privilege. The work-product rule appears inapplicable since the question concerned avoidance of litigation, not defendants' strategy for conducting it, and in any event the Village does not attempt to prove that an answer would impinge upon that rule.
> 17. Q. Did the Board of Trustees ever discuss in executive session how Village employees and officials should conduct themselves toward Mr. Rattner?
> MR. HANDLER: objection. same direction. Also executive session privilege as well.

(Farrington Dep. p. 335, l. 8-14.)

The Village invokes both the attorney-client privilege and the so-called "executive session" privilege. The latter is inapplicable for the reasons previously stated. The defendants have also failed to demonstrate that answering this question--which calls for a "yes" or "no" answer--would disclose a confidential communication to an attorney for the purpose of eliciting legal advice.

> 18. Q. Apart from advice of counsel, I'm not asking about that. As mayor in formulating what the Village's position would be on the limousine use, did you take the Grant Street residents' views into account?
> MR. HANDLER: Read the last two questions back, please.
> (Record read)
> MR. HANDLER: The matter in litigation. You are asking about strategy and legal proceedings. Direct you not to answer. Privileged and work product.
> Q. Prior--
> MR. HANDLER: I don't want to be redundant and say it also is completely irrelevant to the lawsuit--
> MR. KITTAY: Then don't.
> MR. HANDLER:--objections to relevance are reserved.
> MR. KITTAY: I'm glad you didn't make that point.
> Q. Prior to the commencement of any civil rights suit against the Village by Mr. Rattner, did you take the views of the Grant Street residents into account in formulating your view about what the Village's position should be vis-a-vis Mr. Rattner's limousines?
> *25 MR. HANDLER: Same direction. Direct him not to answer.
> Q. Prior to the commencement of any litigation between Mr. Rattner and the Village, did you take the Grant Street residents' views into account in formulating your own views about what the Village should permit as far as the limousine service parking?
> MR. HANDLER: Same direction. Everything done in preparation for litigation comes within the scope of the privilege.

(Farrington Dep. p. 337, 1. 9 to p. 338, 1. 23.)

Plaintiffs seek in effect to learn whether political considerations affected a zoning decision by the Village. Defendants now invoke the work-product rule, but fail to demonstrate its applicability. The question addresses the decision of the Mayor as to the basis for a position taken in the course of administrative policy formulation concerning zoning, rather than a determination concerning litigation strategy. Not surprisingly, defendants offer no evidence to prove otherwise. Finally, even if covered by the work-product rule, this information must be disclosed to plaintiffs since their need for it in the context of this litigation plainly outweighs any arguable need for confidentiality by the Village concerning the political considerations that went into its zoning decisions.

> 19. Q. Why did the Village persist in the prosecution of the case against Mr. Rattner after Justice Stolarik's decision?
> MR. HANDLER: Direct the witness not to answer. Privilege.

(Farrington Dep. p. 345, 1. 18 to 1. 22.)

Although this question could well be viewed as seeking information that might otherwise be privileged, the Village waived any applicable privilege with respect to the matter in state court. (*E.g.,* Kittay March 24, 1989 Aff. at Exhs. C, I, R, U, V, W, X, Y, Z, AA.) Accordingly, they cannot bar its discovery now.

> 20. Q. Did you, prior to March 9, 1988, rely on the advice of counsel regarding the Netburn letter?
> MR. MALDONADO: Objection as to form. No foundation.
> MR. HANDLER: Could you read the question back.
> (Record read)
> MR. HANDLER: Direct him not to answer. Privilege. It also--the question is also improper because it assumes a state of facts which is not in the record. It is also objectionable as to form.

(Farrington Dep. p. 363, 1. 7-20.)

When asked by the Court at a pre-trial conference whether defendants were waiving any "advice of counsel" defense, their attorney declined to bind the clients. Unless such a binding waiver is made, the question is proper and must be answered. [FN12]

> 21. Q. Did you have any discussions with the Village's insurance carriers in February 1988?
> MR. HANDLER: Objection. Privileged.
> MR. KITTAY: It calls for a yes or no.
> MR. HANDLER: Privileged.
> MR. KITTAY: Are you going to let him answer?
> MR. HANDLER: No. Anything done with respect to that was on advice of counsel and at counsel's direction.
> Q. Did you have any discussion with the Village insurance carriers in February 1988 regarding the rumor that Mr. Rattner was going to place an ad?
> MR. HANDLER: I'm going to direct him not to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

answer.
*26 Q. And did you have any such discussions regarding Mr. Rattner's ad in February 1988?
MR. MALDONADO: Objection to form.
MR. HANDLER: With whom?
MR. KITTAY: With the insurance carriers.
MR. HANDLER: Direction not to answer. Any discussions with the insurance carriers were at the direction of counsel and come under the privilege.
Q. Did you ever discuss the Netburn letter with any of the Village's insurance carriers prior to the end of February 1988?
MR. MALDONADO: Same objection.
MR. HANDLER: Direction not to answer.
Q. Prior to March 9, 1988?
MR. HANDLER: Same objection.

(Farrington Dep. p. 365, l. 13 to p. 366, l. 24.)

It is conceivable, under some circumstances, that this question might be deemed to be seeking work-product. Defendants, however, offer no evidence that an answer would disclose such work-product. Moreover, the attorney-client privilege is entirely inapplicable since the question does not seek disclosure of attorney-client communications. As Judge Mukasey noted in a recent decision that is repeatedly cited by defendants on this motion:

> If a lawyer advises his client to say something to a third party, what the client says to that third party must be disclosed; what the lawyer said must not.

*Radio Today v. Westwood One, supra,* Opinion at 2. At most, the question calls only for what the client said to the insurance carrier and is therefore not privileged.
22. Q. Did the Board of Trustees take a vote regarding the Village's appeal from the November 1987 order in the state court litigation dismissing certain of the Village parties' defenses based on notice of claim statute?
A. It is quite possible that we did.
Q. Do you recall--
A. Do you have the minutes of the meeting?
Q. You don't have any independent recollection?
A. No, because, you know--
MR. HANDLER: I'm going to direct the witness not to answer the question. Confidential. Privileged.

(Farrington Dep. p. 368, l. 10-24.)

The question seeks to discover whether the Board of Trustees voted on an issue. This is plainly not privileged.
23. Q. Do you ever recall the Board of Trustees authorizing the Village's attorneys to take an appeal in the Rattner-Pleasantville litigation?
MR. HANDLER: Direct him not to answer. Privileged. As framed.

(Farrington Dep. p. 369, l. 17-22.)

A client's instruction to an attorney to take an action is not privileged. *See, e.g., United States v. Elkin,* 731 F. 2d 1005, 1008 n. 2 (2d Cir.), cert. denied, 469 U.S. 822 (1984). Accordingly, the objection is groundless.
24. Q. Let me ask, during these meetings with Mr. Campriello and Mr. Nonna, did the board try to--
A. Mr. Campriello, Mr. Curley--
Q. They were all in there together?
A. No. But at various points in time--I can't tell you who was present, but I can't tell you who wasn't either.
Q. Well, during these meetings, did the board make an effort to avoid disclosure of privileged information?
MR. MALDONADO: Objection to form.
MR. HANDLER: I'm going to object to--
MR. KITTAY: No speaking--I caution you not to prompt the witness.
*27 MR. HANDLER:--with respect to any matters that were discussed in those meetings on the grounds of privilege. I direct you not to answer those questions. Preretention conferences between an attorney and client involve privileged Communications even if the retention is not consummated.
MR. KITTAY: What I'm trying to do, obviously, is to see if this was such a conference. If indeed your view of the law is correct, you are preventing me from probing as to whether the privilege would apply.
MR. HANDLER: I'm saying to you that you have sufficient testimony on the record now to understand the purpose of the meeting, who the participants are and the nature of the discussion.
MR. KITTAY: O.K. We will have it up for a ruling.
MR. HANDLER: That's right. You've got enough to have your record and to move if you are so inclined.

(Farrington Dep. p. 375, l. 21 to p. 377, l. 12.)

The questioning plainly is proper. It seeks to determine whether a privilege applies or has been waived and it does not seek confidential communications by the client to elicit legal advice. *See, e.g., United States v. Kovel, surra,* 296 F.2d at 923-24.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

25. Q. I'll show you Mr. Rattner's ad, which is the second page of Exhibit 1, and I ask you whether any of the statements in the ad are inaccurate?
A. I have not read each and every one of those statements and I don't feel I have to.
Q. There it is.
(Handing)
Q. I request that you take a look at this one-page advertisement.
MR. HANDLER: No. It is extremely fine print. It makes many, many statements concerning issues which are in dispute in the state court litigation and I don't think it is an appropriate question. it calls, in answering the question, the witness will by necessity have to divulge communications that he had with counsel in which legal advice was sought and rendered with respect to the substance of this ad, as well as to divulge legal strategies and legal thinking which goes into the ongoing defense of the state court litigations, and on that ground, that it calls for privileged communications in answering this, I direct him not to answer the question.
I also object on the ground that to answer that question would require this wit ness to analyze that lengthy document, that would be both unfair, inappropriat e and not be calculated to yield any sort of discoverable information.
MR. KITTAY: For the record, the document in question is one page.
MR. HANDLER: I might add that the record shows that the document was a legal document prepared by counsel and would require legal expertise to respond to the question. This witness would not be qualified to give such legal opinion.

(Farrington Dep. p. 389, 1. 3 to p. 390, 1. 19.)

The invocation of the attorney-client privilege is wholly inappropriate since the question does not seek a description of confidential communications by the client to the attorney to elicit legal advice. It simply asks whether he believes that any statement in the advertisement is inaccurate.
26. Q. Prior to February 16, 1988, did you ever say, in words or substance, that you believed that Mr. Rattner was responsible for the continuation of the litigation?
*28 A. It is quite possible.
Q. And--
MR. HANDLER: With respect to this area of questioning, you will, of course, exclude from any of your answers conversations had with counsel.

(Farrington Dep. p. 269, 1. 3-12.)

This is the first of a series of questions that the Village categorizes as invasive of an "executive session" privilege. The specific grounds for defendants' objection, however, are obscure. The question is listed in the witness's affidavit under the "executive session" privilege but the colloquy and the argument in the memorandum of law suggest invocation of the attorney- client privilege. In any event, neither applies. There is no suggestion, much less evidence, that a statement blaming Rattner for continued litigation, even if made to counsel, was a confidential communication undertaken for the purpose of eliciting legal advice. In any event, defendants do not seek to establish that fact. As for the executive session adjudgment, it fails for the reasons previously noted.
27. Q. Did you ever ask any Village employee to conduct surveillance of Mr. Rattner's Pleasantville properties?
MR. HANDLER: Other than pursuant to the instructions of counsel.

(Farrington Dep. p. 286, 1. 24 to p. 287, 1. 4.)

Again, the Village categorizes this question as coming within an executive session privilege but its argument suggests an attempted invocation of the attorney-client privilege and the work-product rule. For reasons already stated, there is no basis for invoking an executive-session privilege. As for the attorney-client privilege, it is inapplicable since the question does not seek disclosure of communications between client and attorney, but rather actions undertaken by the Village. Whether those actions were done pursuant to the suggestion of an attorney or not is entirely beside the point. *See, e.g., Radio Today v. Westwood One, supra,* opinion at 2. With regard to the work-product rule, defendants offer no evidence to support its invocation; in particular, they do not attempt to prove that the alleged surveillance was done principally to prepare for litigation. Finally, I note that any confidentiality with respect to surveillance activities has been waived. (*See, e.g.,* Deposition of Michael Testa at 9-12, 20-26, 43-46, 130-32.)
28. Q. Did you ever ask Mr. Testa to conduct surveillance of the Rattner parties' Pleasantville property?
MR. HANDLER: Subject to my instruction that you not testify with respect to anything that was done at the request of counsel in connection with the defense or prosecution of the state court litigation.
A. I don't believe so.

(Farrington Dep. p. 287, 1. 8-17.)

The limiting instruction was plainly improper since actions of this sort are not shielded by a privilege merely because they were done at the request of an attorney. *See, e.g., Radio Today v. Westwood One, supra,* Opinion at 2. Furthermore, defendants offer no evidence to support the privilege that they purport to invoke. Mr. Farrington's affidavit classifies this question as being barred by the executive session privilege, which is inapplicable, and he is entirely silent as to whether the alleged instructions to take photographs were principally for purposes of litigation. Also, plaintiffs' need for the information would in any event outweigh the purported interest of the Village in confidentiality for its efforts to surveil the property of one of its residents. Finally, as noted, confidentiality with respect to this matter was waived by, *inter alia,* Mr. Testals deposition testimony.

*29 29. Did you ever ask Mr. Testa to take photographs of Mr. Rattner's Pleasantville properties?
MR. HANDLER: Again, subject to the same limitation that I have instructed, you can answer that.
A. No, subject to the same litigation.

(Farrington Dep. p. 287, 1. 22 to p. 288, 1. 4.)

This question is proper for the reasons noted with respect to the preceding question.

30. Q. Did Rose See ever conduct any surveillance of the Rattner parties' properties?
MR. MALDONADO: objection as to form.
MR. HANDLER: Subject to the limitation that it is not being done by counsel or at counsel's request, or instruction in connection with the state court litigation, you can answer.
A. Define "surveillance".
Q. Observation on a regular basis.
A. I don't believe so.

(Farrington Dep. p. 288, 1. 5-15.)

Again even if counsel instructed the Village to surveil plaintiffs' property, this would not justify invocation of the attorney-client privilege. Equally, the work-product rule has not been shown to be applicable, and in any event plaintiffs' need for the information would justify compelling its disclosure. Finally, defendants' waiver of confidentiality with respect to surveillance undermines any privilege claim.

31. Q. After you had your first conversation with Mr. St. Leger about the sign, did Mr. St. Leger come back to you and report about the sign?
MR. HANDLER: To the extent that Mr. St. Leger gave you any report about legal advice received, you are to exclude that from your answer.
A. I don't recall anything that was said outside of the context of legal advice.

(Farrington Dep. p. 329, 1. 8-16.)

The record leaves unclear what the answer of the witness is. Although he may be able to exclude a description of the legal advice, the question calls simply for a "yes" or "no" answer and it is therefore not invasive of any privilege.

32. Q. You don't recall any discussion of Mr. Rattner's First Amendment rights in conjunction with his sign?
MR. HANDLER: I think that was asked and answered.
Answer it again, Mr. Farrington.
A. What I recall I've testified to. Outside of specific legal advice. As far as I'm concerned, that is privileged communication.

(Farrington Dep. p. 332, 1. 23 to p. 333, 1. 7.)

Again the answer is unclear since it mixes the witness's views about privilege with a response to a narrow question about the facts. The inquiry seeks a "yes" or "no" answer, and plaintiffs are entitled to a responsive answer, which they have not yet received.

33. Q. How far is your house from Mr. Netburn's?
A. I've never measured it.
Q. Is it more than a block?
A. What is the definition of a block?
Q. Oh, gee. Is it more than--you are familiar with city blocks, aren't you?
A. Not very. Are they streets, avenues, and which way are you going to measure?
MR. HANDLER: I think the witness lives within a couple of blocks.
Q. can you approximate how far your home is from Mr. Netburn?
MR. HANDLER: i think he already did that, that he lives within a couple of blocks.
Q. can you approximate?
*30 A. I'll stand on the previous testimony, the answer to the question that I gave.

(Farrington Dep. p. 197, 1. 3-22.)

This question is the first of a series which, according to plaintiffs, were not answered completely because the Village's counsel gave the witness a limiting instruction or the witness allegedly failed, on his own, to give a responsive answer. This particular question was answered in the testimony preceding the quoted passage, (see Farrington Dep. p. 196 1. 21 to

P. 197, 1.1) and need not be answered again.
34. Q. And did Mr. St. Leger inform you of this rumor on February 8th?
A. I stand on previous testimony.

(Farrington Dep. p. 201, 1. 22-24.)

The witness failed to provide a responsive answer to a proper question. Although at a prior session of the deposition he had indicated that he could not remember the date

(Farrington Dep. p. 42, 1. 9-14), he might well have recalled this date in the interim and it was therefore proper to attempt to jog his memory.
35. Q. How do you know that Mr. Netburn's letter was personal?
A. I stand on the testimony that I gave in my prior deposition.
Q. Please indulge me. How do you know that Mr. Netburn's letter was a personal letter?
A. I stand on my prior deposition.
Q. We will seek a ruling compelling you to answer that question.
A. That is your prerogative.

(Farrington Dep. p. 245, 1. 14-23.)

The witness answered a related question at his first deposition session (Farrington Dep. p. 106, 1. 9-23), but the two sets of questions were somewhat different and call for different information. Accordingly, the refusal of the witness to provide a specific and responsive answer was improper.
36. Q. All right. Thank you.
Now, when you told Mr. Netburn, standing in mr. Netburn Is driveway, that whether he would send a personal letter was his decision to make, what was your basis for saying that?
A. I'll stand on my prior deposition testimony.
Q. With respect, I don't think you answered that question.
A. With respect, I believe I did.

(Farrington Dep. p. 268, 1. 9-18.)

The witness did answer essentially the same question at the first deposition session. (Farrington Dep. p. 105, 1. 12-13.) He will not be required to answer it again.
37. A. During the League debate, do you recall saying, "We are initiating complex legal procedures as a defensive tactic" in reference to the Rattner litigation?
MR. MALDONADO: Is that the 1988 League of Women Voters debate?

MR. KITTAY: Yes.
A. I don't recall saying that.
Q. Do you recall, in substance, saying that the Village was initiating complex legal procedures in the Rattner litigation?
A. I just answered that question.
Q. What complex legal procedures was the Village initiating as a defensive tactic in the Rattner litigation at the time of the League of Women Voters debate?
MR. MALDONADO: Objection to form. No foundation.
A. I don't recall having said that.
Q. Was the Village initiating complex legal procedures as a defensive tactic at the time of the League of Women Voters debate?
*31 MR. MALDONADO: Objection.
A. That calls for a legal judgment and I'm not going to give you a legal judgment. You can answer that question as well as I can.
Q. But I would like you to answer it.
A. I'm not going to answer it. It calls for a legal determination. I'm not going to make one.
MR. HANDLER: I think the witness, as a layperson, is saying he is just not qualified to answer your question.
MR. KITTAY: I'll seek a direction.

(Farrington Dep. 345, 1. 23 to p. 347, 1. 8.)

In substance the question called for the witness to confirm the correctness of a public statement that he himself had made. This is plainly proper inquiry.
38. Q. Was it your view that Mr. Rattner's ad criticized Village government?
A. It was my view the timing of Mr. Rattner's ad was meant to have an influence on the outcome of the election.
MR. KITTAY: Move to strike.
Q. Would you read back the pending question.
(Record read)
MR. HANDLER: Answer? (Record read)
MR. HANDLER: O.K. The question is asked and answered. we disagree.
MR. KITTAY: We do. I would like the witness to answer.
MR. HANDLER: No, no, the witness has answered. Somebody else besides you and I will decide the issue.
Q. Was it your view that the Rattner ad criticized Village government?
MR. HANDLER: Asked and answered.
A. I stand on my previous answer.
MR. KITTAY: We will seek a ruling.

(Farrington Dep. p. 407, 1. 17 to p. 408, 1. 15.)

The question has not been answered, and plaintiffs are entitled to an answer.

E. *Deposition of Thomas McConnell*

The affidavit of Mr. McConnell follows the same format and wording as that of the prior two witnesses. The first category involves questions purportedly invasive of the attorney-client privilege, the second group are said to be barred by an "executive session" privilege and the third involve allegedly unresponsive answers. I address each in turn.

> 1. Q. Did Mayor Farrington ever express his views, with particular emphasis regarding the Rattner litigation, prior to February 16th, 1988?
> A. I decline to answer.
> MR. HANDLER: Just a minute. With respect to discussions concerning the Rattner litigation, we stand on executive privilege and also attorney-client privilege. The record is clear in this case that there were periodic meetings with counsel. There were other discussions concerning the strategy, the progress of the Rattner litigation. The order of the magistrate, with respect to executive privilege, has limited the extent of your inquiry into these privileged conversations, and I think you will have to abide by that.
> MR. KITTAY: We disagree on the scope of that, but that is not for us to rule on.
> MR. HANDLER: I am invoking attorney-client privilege and executive privilege with respect to discussions about--when I say the Rattner litigation, we are referring to the Rattner state court litigation.

(McConnell Dep. p. 213, l. 11 to. 214, l. 15.)

This question has not been shown to invade any cognizable privilege. Indeed, it seeks simply a "yes" or "no" answer concerning whether the Mayor expressed strongly held views about the litigation. In any event defendants fail to offer any competent evidence of the facts necessary to sustain a privilege claim. Finally, defendants' passing suggestion in their memorandum of law that the question seeks irrelevant information has no basis. If Farrington had an intense dislike of or hostility to Rattner based on his lawsuits, a trier of fact could infer a greater likelihood that he encouraged the Netburn letter, which is a key issue in this case. Moreover, malice is obviously relevant to punitive damages. *See, e.g., Smith v. Wade*, 461 U.S. 30, 56 (1983).

> *32 2. Q. Without revealing the substance of any of those discussions, at any time during discussions among the Board of Trustees regarding the Rattner litigation, did Mayor Farrington raise his voice?
> MR. HANDLER: I am not going to--
> A. I decline to answer based on attorney-client privilege.
> MR. HANDLER: I am not going to allow you to inquire. It is outside the parameters of permissible examination.

(McConnell Dep. p. 214, l. 19 to p. 215, l. 6.)

This question does not seek the content of privileged communications and is plainly not subject to any proper objection.

> 3. Q. Did Mayor Farrington ever use profanity at any meeting regarding the Rattner litigation?
> A. I decline to answer on the ground of client privilege and executive sessions.

(McConnell Dep. p. 215, l. 8-12.)

Again, the objection is meritless, for the reasons stated above.

> 4. Q. Did Mayor Farrington ever say he wished Mr. Rattner would leave town?
> MR. HANDLER: I direct him not to answer. Privilege.

(McConnell Dep. p. 217, l. 5-8.)

The plaintiffs do not, as defendants claim (Defendants' Memorandum at 5), concede that the question is objectionable. (See Plaintiffs' Memorandum at 4.) Moreover defendants have not shown that an answer would disclose privileged information.

> 5. Q. Was there any input from attorneys into this discussion of options that took place on February 16th?
> MR. MALDONADO: Objection to the form. No foundation.
> MR. HANDLER: I object. Attorney-client privilege. You are asking him to divulge the contents of legal advice. The answer is, it is privileged.
> MR. KITTAY: We don't have a foundation as to whether there was.
> MR. HANDLER: I think you do. It is your examination. You lay the foundation. I am not going to permit him to breach any attorney-client privilege.
> MR. KITTAY: You instruct him not to answer?
> MR. HANDLER: Yes, on grounds of privilege.

(McConnell Dep. p. 250, l. 17 to p. 251, l. 12.)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works