FN18. The substance of the legal advice has of course not been disclosed.

FN19. A comparable exception has been recognized with respect to other privileges as well. *See, e.g., United States v. Estes,* 793 F.2d 465, 467-68 (2d Cir.1986) ("joint participation" exception to spousal "confidential communication" privilege). *See also In re Grand Jury Subpoena United States,* 755 F.2d 1022, 1027 n.6 (2d Cir.1985), *vac. as moot sub nom. United States v. Koecher,* 475 U.S. 133 (1986).

FN20. Plaintiffs suggest as well that the Netburn letter was tantamount to fraud, even though no such allegation is found in the complaint. The reasoning on this point is somewhat obscure but appears to be that the letter concealed the fact that it was sponsored by the Village. This reasoning appears somewhat inconsistent with plaintiffs' general thesis that the letter was intended to and did intimidate its recipients. Such alleged intimidation would seem more likely to follow from the awareness of the recipients that the author was in fact a high-ranking Village official.

FN21. There is clearly no basis to suggest that the Village sought by these communications to conceal these acts.

FN22. Plaintiffs invoke the "crime/fraud/tort" exception with respect to questions numbered 19-29, 32-36, 44-63 and apparently, 68-77 of the Handler and Goodman depositions. I find their argument to be deficient, for the reasons stated, with respect to each of these questions. I therefore do not revisit this issue in the later phases of this Memorandum and order.

FN23. I note as well that Mr. Netburn's and Mr. St. Leger's testimony indicates that Mr. St. Leger sought such advice. (See St. Leger Dep. at 68-69; Netburn Dep. at 724.) Thus, the fact that such advice was rendered cannot conceivably be viewed as confidential.

FN24. Indeed, I discuss the status of those documents at pp. 16061, *infra,* and find them not to be privileged.

FN25. I note, however, that the questions were proper in that they focus directly on whether the asserted privilege applies to the entire document.

FN26. Defendants' memorandum of law simply refers to disclosure of "the substance of a privileged document." (Defendants' Handler & Goodman Memorandum at 38.)

FN27. Based on an *in camera* review of these and other documents, I find them not to be privileged. *See* pp. 160-61, *infra.*

FN28. In any event St. Leger revealed at least some of the substance of the discussion. (*See* St. Leger Dep. at 69-70.)

FN29. Implied waiver is appropriately found if the privilege-holder has itself injected into the case the question of the substance of privileged communications or has made partial and potentially misleading disclosure of such a communication. *See, e.g., Joy v. North,* 692 F.2d 880, 893-94 (2d Cir.1982), *cert. denied,* 460 U.S. 1051 (1983); *Teachers Ins. Fund & Annuity Ass'n v. Shamrock Broadcasting Co., supra,* 521 F.Supp. at 642; 2 *Weinstein's Evidence, supra,* ¶ 511[02] at 511-7 to -8.

FN30. The record also reflects that some of the "advice" rendered-- specifically the much-disputed memorandum entitled "An Update on the Rattner Litigation"--was not principally legal in nature and that "advice" has thus been ordered disclosed.

FN31. It bears noting that comparable questions were answered by Netburn and St. Leger concerning a prior contact by St. Leger with counsel. I see no basis,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

however, for deeming this to be a waiver with respect to subsequent attorney-client contacts.

FN32. Two documents are withheld on the asserted basis of irrelevance. Both are letters to plaintiffs' attorney Charles V. Martalbano, Esg. The theory for the claim of irrelevance is that the letters discuss possible settlement of the dispute and thus are inadmissible at trial, presumably under Fed.R.Evid. 408. This argument is meritless, since Rule 408 does not purport to create an immunity from discovery but merely limits the scope of relevance for purposes of admissibility of evidence at trial. Moreover, the rule contemplates that evidence of settlement discussions can be admissible at trial for a number of purposes. In sum, the letters are discoverable.

FN33. Defendants also argue that plaintiffs conceded in state court that the waiver did not encompass communications regarding Rattner's counterclaims in the state suit and his claims in the 1984 federal suit. In fact, the concession by plaintiffs extended only to communications *solely* relating to those claims, and defendants make no effort to demonstrate which, if any, of the documents can be so categorized.

FN34. It is conceivable that the witness might have prepared a written communication to the Village attorney describing the results of his surveillance, and in that case the writing would be privileged. Defendants have not demonstrated, however, that Testals notes constituted such a communication to counsel. *See, e.g., Folger Adam Co. v. PMI Industries, Inc., supra,* 16/89 Star. Dec. at 326.

FN35. Obviously, the degree of meritlessness was necessary to trigger such an award falls far short of the standards applicable to an award under Rule 11.

1989 WL 223059, 1989 WL 223059 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

DURHAM INDUSTRIES, INC., Plaintiff,
v.
The NORTH RIVER INSURANCE COMPANY, Defendant.

**No. 79 Civ. 1705 (RWS).**

Nov. 21, 1980.

Lawrence Lauer, New York City, for plaintiff.

Newman & Schlau, P.C. (Ted J. Tanenbaum, Elaine H. Nissen, of counsel), New York City, for defendant.

OPINION

SWEET, District Judge.

*1 Plaintiff Durham Industries, Inc. ("Durham") moves to compel two non- party witnesses to answer certain questions and produce certain documents relating to this action to recover damages for prima facie tort against defendant North River Insurance Company ("North River"). In addition, North River has moved for a protective order with respect to certain documents and submitted certain files for *in camera* review on the grounds that they are encompassed by the attorney-client privilege and attorney's work product doctrines. Both motions are denied in part and granted in part as described herein.

Two earlier opinions fully set forth the history of this litigation. [FN1] In brief, the original action between these parties related to North River's refusal to pay Durham under the terms of a surety bond. To distribute the risk, North River had contracted with two reinsurance companies, The American Reinsurance Company ("American") and North American Reinsurance Company ("North American"), to share a percentage of the risk of loss and expenses, including attorney's fees, in exchange for a percentage of the premiums paid to North River for the bond. That case proceeded to trial and judgment was thereafter entered for Durham, which then instituted the present suit against North River alleging prima facie tort and improper use of the process of the court.

Durham seeks discovery of three categories of information. First, Durham moves for production of two letters sent to North River by its former law firm, Konheim, Halpern, Bleiwas and Greenberg ("the Konheim firm"), involving the progress of the litigation concerning the bond (Items A and B); second, Durham seeks to compel answers to questions at deposition concerning a conversation between North River and North American (Item C); third, Durham seeks to compel the production of five additional letters--two from North River, written by an attorney, to American and three letters from North River, not written by an attorney, to American (Items D-H).

In its opinion of May 8, 1980, this court held certain documents such as Items A and B in North River's possession to be privileged communications between attorney and client. Subsequent to this ruling, Durham, while taking a deposition of one of the reinsurers, American, learned that copies of Items A and B were contained in American's files. Although the Konheim firm, which authored the letters, never represented American, nonetheless it refuses to disclose the letters, claiming attorney-client privilege. Durham now argues that even if an attorney-client privilege existed between the Konheim firm and North River, the privilege is not available to American because the Konheim firm was not representing American, and the disclosure of the letters to American as a third party constituted a waiver of the privilege.

North River and American take the position that they have a "common interest" because, as insurer and reinsurer of the surety bond, they share a risk of exposure to liability and are liable for a percentage of any expenses incurred in connection with the bond. They claim that the Konheim firm, North River's attorney, represented American's interest in defending the suit on the bond, and their common interest vitiates any waiver of privilege. I agree.

*2 The parameters of the attorney-client privilege have been expressed as follows:

> The privilege applie[s] only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the Bar of a Court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

proceeding and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358 (D.Mass.1950). The purpose of the privilege is to encourage clients to make full disclosures to their attorneys, *Fisher v. United States,* 425 U.S. 391, 403 (1975), and the privilege extends to confidential communications from attorney to client as well as from client to attorney. *Buckley v. Vidal,* 50 F.R.D. 271, 275 (S.D.N.Y.1970).

It is well settled that a communication is not confidential if it is disclosed to disinterested third parties. *In re Horowitz,* 482 F.2d 72, 81 (2d Cir.), *cert. denied,* 414 U.S. 867 (1973); *United States v. Aronoff,* 466 F.Supp. 855, 862 (S.D.N.Y.1979). *See also* 8 Wigmore, *Evidence* § 2311 (McNaughton rev. 1961); 10 *McCormick on Evidence* § 91 (2d Ed. 1974). However, an exception to this general rule arises when the third party shares a common interest with the client which is adverse to that of the party seeking disclosure. *See e.g. United States v. McPartlin,* 595 F.2d 1321, 1336-1337 (7th Cir.1979), *cert. denied,* --- U.S. ----, 100 S.Ct. 65 (1980) (privilege applies when co- defendant shares a common defense or joint interest); *Magnaleasing, Inc. v. State Island Mall,* 76 F.R.D. 559, 564 (S.D.N.Y.1977) (judgment debtor and third party sufficiently aligned to have "joint" or "common" defense); *SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508, 525 (D.Conn.), *appeal dismissed,* 534 F.2d 1031 (2d Cir.1976) (third party's actual liability considered to provide "common interest"); *Stix Products, Inc. v. United Merchants & Mfrs., Inc.,* 47 F.R.D. 334, 339 (S.D.N.Y.1969) (disclosure to third party with common economic interest held not to constitute waiver of work-product privilege). *Contra Herbert v. Lando,* 73 F.R.D. 387, 400 (S.D.N.Y.1977) *rev'd. on other grounds,* 568 F.2d 974, *rev'd. on other grounds,* 441 U.S. 153 (1980) (defendant's forwarding to co-defendant of letter from attorney constituted waiver of privilege).

A community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice.

*3 *DuPlan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1172 (D.S.C.1974).

Here, where the reinsurers bear a percentage of liability on the bond, their interest is clearly identical to that of defendant. The fact that the reinsurers were not represented by the Konheim firm does not affect this result. *Cf. United States v. McPartlin, supra,* at 1337 ("The attorney who thus undertakes to serve his client's co-defendant for a limited purpose becomes the co-defendant's attorney for that purpose."). Therefore, North River did not waive its attorney-client privilege upon disclosure of Items A and B to American.

Durham also seeks answers to questions involving certain conversations between North River and North American, and production of additional documents passing between North River and American. There is a critical difference, however, between the two letters comprising the first category, and the remaining categories of information sought. Items C-H were not written by North River's attorney but by North River itself to another holding a joint interest. Therefore, only where the documents or conversation repeat an otherwise confidential communication between North River and its attorney as construed below, is the information privileged.

When the sought-after information does not concern a communication between an attorney and his client, no justification exists for its protection. *Cf. SCM Corp. v. Xerox Corp., supra,* at 521-523; *Herbert v. Lando, supra,* at 399. Additionally, the privilege does not apply to an attorney-client communication when the attorney is acting as a business agent giving "incidental legal advice". *United States v. International Business Machines Corp.,* 66 F.R.D. 206, 212 (S.D.N.Y.1974). *See also United States v. Silverman, supra; Colton v. United States,* 306 F.2d 633, 638 (2d Cir.1962). The test is whether the legal advice element predominates; even legal advice is unprivileged if it is incidental to business advice. *United States v. International Business Machines Corp., supra.* Therefore, where the documents or conversations are pursuant to business matters and do not reiterate confidential information between North River and its attorney, they must be disclosed.

Applying these principles to Items C-H after inspection *in camera,* they are held discoverable in the following fashion. The two letters by Windrow, the attorney employed as Assistant Vice President of North River's parent company (Items D and E), are not privileged. They discuss business matters and do not reflect any communication between North River and its attorney. The fact that Windrow is an attorney is of no consequence since he is not here acting in that capacity.

The March 5, 1979 letter written by Tanner, North

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

River's Assistant Vice President in charge of claims (Item F), does not discuss an attorney-client communication and must therefore be disclosed to Durham. A portion of the letter of June 6, 1979 (Item G) relates to a confidential communication between North River and its newly retained (and present) attorney. Again, since I have found North River and its reinsurers to share a common interest, that portion of the letter (the last sentence of the second paragraph) is deleted. The remaining sections of the letter express North River's own opinions, not communicated to its attorney, and must be disclosed as requested. A portion of the letter of January 10, 1980 (Item H) discusses a confidential communication and the second paragraph is hereby deleted. In summary, then, the March 6, 1979 letter is unprotected, along with portions of the June 6, 1979 and January 10, 1980 letters, as described.

*4 Durham also seeks answers to questions at deposition concerning a conversation between employees of North River and North American (Item C). North River has not specifically stated what the substance of that conversation is and why the privilege should protect it. Since the party claiming the privilege must establish that the conversations are encompassed thereby, Gorzegno v. Maguire, 62 F.R.D. 617, 621 (S.D.N.Y.1973), North River has failed to meet its burden and must answer questions in accordance with the principles set forth herein.

North River also alleges the work product doctrine protects the sought-after information. This argument lacks merit. The work product rule provides only qualified protection against discovery of *documents* prepared by an attorney in anticipation of litigation. Fed.R.Civ.P. 26(b)(3). [FN2] Thus the conversation at issue cannot be so protected. While the rule is intended to protect the lawyer's materials containing his mental impressions, conclusions, opinions or legal theories, none of the undeleted portions of the disputed letters discuss the opinions of the attorney representing the defendants. On the contrary, the letters appear to project North River's own viewpoint or concern purely business matters. Therefore, the work-product doctrine goes no further than the attorney-client privilege in this case, and the information must be disclosed as indicated above.

Since the argument of this motion, pursuant to the opinion of this court of May 8, 1980, North River, by letter of October 14, 1980, has submitted an additional file for *in camera* review, again asserting the attorney-client privilege. The file has been numbered for future reference.

The documents numbered 4, 5, 10-15, 22-23, 25-27, 29-36, 39-44, 66-74, 92-97, 103-104, 127-135, 142-156 are not confidential and therefore not subject to the privilege.

The remainder of the file is properly subject to the attorney-client privilege. It contains confidential communications between attorney and client either giving or seeking legal advice and, as such, it falls squarely within the attorney-client privilege. *See United States v. United Shoe Machinery Corp., supra.*

However, Durham alleges that the essence of its cause of action is the interposition of a defense of fraud in the prior action between the parties, a defense not based on fact or law and intended solely to harm Durham by delaying its recovery. Advice rendered to assist the commission of a crime is not entitled to the privilege. *See* Matter of Doe, 551 F.2d 899, 901 (2d Cir.1977); United States v. Bob, 106 F.2d 37, 40 (2d Cir.), *cert. denied,* 308 U.S. 589 (1939); DuPlan v. Deering Milliken, Inc., *supra*, at 1177; 8 Wigmore, *Evidence* § 2298 (McNaughton rev. 1961). The same reasoning applies here to any communications which would constitute, or, relate to, the commission of a prima facie tort.

Despite the customary test of discovery relevance, Westhemeco v. New Hampshire Ins. Co., 82 F.R.D. 702, 709 (S.D.N.Y.1979), *modified on other grounds* in 484 F.Supp. 1153 (S.D.N.Y.1980), and the particular nature of the cause of action claimed here, I shall enforce the attorney-client privilege. There are certain letters in the submitted file which state the basis on which counsel for North River asserted the defense of fraud in the prior action. Those letters are enumerated as follows:

*5 Letters of Konheim firm to North River dated:
September 23, 1976 (# 136)
November 5, 1976 (# 125)
March 3, 1977 (# 102)
April 19, 1978 (# 77)
October 30, 1978 (# 55)
November 11, 1978 (# 45).

Even if it is assumed that these communications fail to reveal any factual basis for the assertion of fraud and that the allegation was founded on no more than counsel's intuition, such an intuition does not constitute an intent to harm or the commission of a wrongful act such as to deprive the communication of its otherwise privileged nature. There is here no evidence of intent to harm, at most simply an intent to advance a defense in the hope that facts could be

discovered in the course of the litigation. Whatever the propriety of this conduct in the initial lawsuit, it fails to rise to a level of misconduct which would render the privilege nugatory. Therefore, without some further showing of an intent to harm on the part of North River to which these communications are addressed, these communications, standing alone, are privileged. *See Matter of Doe, supra.*

IT IS SO ORDERED

FN1. *Durham Industries, Inc. v. North River Insurance Co.*, No. 79 Civ. 1705 (Dec. 11, 1979); *Durham Industries, Inc. v. North River Insurance Co.*, No. 79 Civ. 1705 (May 8, 1980).

FN2. Federal Rule of Civil Procedure 26(b)(3) provides in pertinent part:
[A] party may obtain discovery of documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

1980 WL 112701, 1980 WL 112701 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**CERTIFICATION**

This is to certify that true and correct copies of the foregoing Appendix of Unpublished Cases in Support of Defendants' Memorandum in Response to Plaintiffs' Motion to Compel Production of Documents was served via facsimile and first class mail on this 14th day of November, 2003, on the following counsel of record:

Richard A. Bieder, Esq.
Antonio Ponvert III, Esq.
Koskoff, Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

Gregory G. Jones, Esq.
Law Firm of Gregory G. Jones, P.C.
603 South Main Street, Suite 200
Grapevine, TX 76051

Marc R. Stanley, Esq.
Roger L. Mandel, Esq.
Stanley, Mandel & Iola
3100 Monticello Avenue
Suite 750
Dallas, TX 75205

Brian O'Donnell