# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LOU HADDOCK, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, PETER WIBERG, as trustee of the Crown Tool & Die Deferred Compensation Plan, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan, RONALD SIMON as trustee of the Hartford Roofing, Inc. Deferred Compensation Plan, CARL ANDERSON as trustee of the Anderson & Ferdon Deferred Compensation Plan,

> PLAINTIFFS,

> v.

NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,

> DEFENDANTS.

CIVIL ACTION NO.:

3:01CV1552(CFD)

December 2, 2003

## OBJECTION TO MAGISTRATE JUDGE'S RULING DENYING DISCOVERY INTO NEW ISSUES RAISED BY PLAINTIFFS' AMENDED NEW MOTION FOR CLASS CERTIFICATION

Defendants respectfully object pursuant to Local Rule 72.2 to the Magistrate Judge's November 18, 2003, order refusing to allow reasonable discovery on class certification issues ("Discovery Order"). Defendants make this objection because the Discovery Order

- Permitted Plaintiffs to submit new discovery responses, and substantially change their material factual allegations in this case, *after* the close of class certification discovery;

- Denied Defendants' request to inquire into Plaintiffs' re-written discovery responses, and to inquire into the new factual allegations and legal theories raised for the first time in Plaintiffs' pending class certification motion; and

- Was inconsistent with the Magistrate Judge's prior orders recognizing Defendants' need for additional responses on outstanding discovery and reasonable discovery on new issues raised by Plaintiffs' class certification papers.

In effect, the Discovery Order permits Plaintiffs to proceed with a class certification motion based on factual allegations and legal theories that have never been subjected to discovery, and even though Plaintiffs are now purporting to retract the factual allegations and legal theories that were the subject of discovery over the past year.

The Discovery Order is clearly erroneous. It severely prejudices Defendants' ability to address class certification issues in this case, and will burden the Court by forcing it to resolve class certification based on an incomplete and untested factual record. Furthermore, it creates these problems for no good reason, as Plaintiffs have failed to even claim that additional discovery would prejudice them. A proposed order that would overrule the Discovery Order and establish a fair schedule for the requested discovery is attached. The proposed order would either temporarily suspend the class certification briefing schedule and allow for filing of Defendants' opposition memorandum after completion of discovery or, if Defendants have already filed an opposition memorandum, allow for an amended opposition once discovery has been completed.

## I.    BACKGROUND

Plaintiffs purport to be the trustees of five retirement plans. Those five plans and their participants allegedly purchased variable annuity contracts issued by Nationwide. Those variable annuity contracts allegedly provided the retirement plans with the opportunity to invest money in certain "variable accounts" that invested in mutual funds.

Plaintiffs assert that Nationwide violated a fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, when it received payments from

mutual funds or related entities pursuant to certain service contracts. Under this novel claim, Plaintiffs claim that Nationwide simultaneously acquired and breached fiduciary duties *solely* by receiving payments for services. Plaintiffs do not allege that Nationwide acted as a traditional ERISA fiduciary (in the role of a retirement plan trustee, investment advisor, or manager of their plan assets).

Plaintiffs' factual allegations and legal theories have changed constantly and materially over the last two years, frustrating Defendants' numerous efforts to discover the basis (to the extent one exists) for Plaintiffs' ERISA claims and Plaintiffs' motion for class certification. Plaintiffs' latest material changes came in September 2003, *after* class certification discovery was closed. The following summarizes briefly Defendants' efforts to obtain discovery, and Plaintiffs' maneuvers to avoid it.

### A.    Plaintiffs' Original Motion for Class Certification and Defendants' Motion to Dismiss the Complaint

Plaintiffs filed this action in August 2001, and an amended complaint in September 2001. Defendants moved to dismiss that complaint in November 2001. While Defendants' motion to dismiss was pending, Plaintiffs moved for certification of a national class in December 2001. *See* Memorandum in Support of Plaintiffs' Motion for Class Certification (Docket 21) ("Original Class Certification Motion"). Plaintiffs opposed the motion to dismiss, and moved for class certification, on the grounds that Defendants received "undisclosed kickbacks," "misrepresented" fees, "breached contracts with the Plaintiff retirement plans," and engaged in "self-dealing." *Id.* at 8; *see also generally* Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss (Docket 30); Plaintiffs' Memorandum in Response to Defendants' Reply Memorandum (Docket 46).

Defendants' motion to dismiss was denied "without prejudice to filing a motion for summary judgment," *see* Endorsement Order dated September 11, 2002 (no docket number assigned), and the Magistrate Judge then directed the parties to take discovery on the issues raised by Plaintiffs' certification motion. *See* Scheduling Order dated March 26, 2002 (Docket 44). The March 26, 2002, scheduling order gave Plaintiffs the right to file a "supplemental memorandum of law" in support of their class certification motion after discovery was complete. It also provided that Defendants could seek leave to take "additional class certification-related discovery" if they believed such discovery was needed "to adequately oppose" class certification. *See id.* at 2.

**B.    Defendants' Efforts to Conduct Discovery On the First Amended Complaint**

Defendants sought discovery in December 2002 on Plaintiffs' allegations of "undisclosed kickbacks," misrepresentation, breach of contract, and "self-dealing." In January 2003, Plaintiffs refused to respond, arguing that they were amending their complaint to revise their factual allegations and legal claims and to drop their "self-dealing" claim, *see, e.g.*, Plaintiff Carl Anderson's Responses to Defendant's First Set of Interrogatories, Response Nos. 4, 5, 6, 8, 9 (Exhibit A[1/]), and relying on other boilerplate objections, *see, e.g.*, Plaintiff Ronald Simon's Responses to Defendant's First Set of Interrogatories, Response Nos. 2, 3 (Exhibit B); Plaintiff Allen Gouse's Responses and Objections to Defendants' Second Set of Interrogatories, Response No. 2 (Exhibit C).

---

[1/]    All documents referred to in this objection that are not contained in the Court's docket are attached as Exhibits to the Declaration of Sam Broderick-Sokol in Support of Defendant's Objection to Magistrate Judge's Ruling Denying Discovery Into New Issues Raised by Plaintiffs' Amended Motion for Class Certification.

**C.    Defendants' Efforts To Conduct Discovery On the Second Amended Complaint**

When Plaintiffs filed a Second Amended Complaint, Defendants again sought discovery on the pertinent legal claims and factual allegations, which now included the entirely new claim that Defendants had violated ERISA because the service payments by the mutual funds were in fact something called "skimmed plan assets," a term that was not defined in the complaint. These discovery requests again met a stone wall, with Plaintiffs claiming in February 2003 that they were not obliged to answer these questions because they sought "information that is contained in documents in the possession and control of the Defendants" or "information that is equally or more easily obtained by the Defendants than by" Plaintiffs. *See, e.g.*, Plaintiff Lou Haddock's Responses and Objections to Defendants' Second Set of Interrogatories, Response Nos. 4, 5, 6, 7, 8, 9 (Exhibit D).

**D.    Defendants' Efforts To Conduct Discovery On the Third Amended Complaint**

In May 2003, Plaintiffs amended their complaint for a third time, apparently in an effort to drop the "misrepresentation," non-disclosure, and breach of contract allegations that discovery had been shown to be unsuited for class certification. *See* Plaintiffs' Motion for Leave to File Third Amended Complaint (Docket 95). After amendment, Plaintiffs continued to refuse to respond to Defendants' discovery on "skimmed plan assets" or the remaining allegations. *See, e.g.*, Plaintiffs' Responses to Defendants' Third Set of Interrogatories, Response Nos. 2, 3, 4, 6, 7 (Exhibit E). Plaintiffs also each appeared for deposition and testified that they had essentially no information regarding the facts or legal theories supporting their ERISA claims. *See, e.g.*, Deposition of Edward Kaplan March 11, 2003 at 22-29 (acknowledging that Kaplan had no knowledge of his Plans' interrogatory responses) (Exhibit F); Deposition of Ronald Simon April

21, 2003 at 17 ("Q: As you sit here today, do you have any understanding of what the word 'annuity' means? A: No.") (Exhibit G).[2/]

### E.    Plaintiffs' July 2003 "Supplemental" Discovery Responses

In April and June 2003, the Magistrate Judge granted Defendants' Motions to compel discovery, ruling, for example, that "discovery regarding allegedly 'skimmed' plan assets must be dealt with more specifically and thoroughly." Discovery Rulings June 1, 2003 (Docket 96); *see also* Endorsement Order April 17, 2003 (no docket number assigned). Plaintiffs never fully complied with these rulings, requiring Defendants to move for discovery sanctions in August 2003. *See* Defendants' Motion for Sanctions for Plaintiffs' Failure to Answer Defendants' First and Second Set of Interrogatories (Docket 113). (As described below, this motion eventually was denied without prejudice to reconsideration so that Defendants could review Plaintiffs' class certification papers to determine if the information sought remained relevant. *See* note 3, *infra*.)

Plaintiffs ultimately served supplemental responses to Defendants' interrogatories in July 2003, the month before the class certification discovery period was to close. The supplemental responses identified the "skimmed plan assets" as money that could be traced through an eight step process from the Plaintiff plans into the mutual funds to mutual fund advisors and then to fees paid to Defendants. *See* Plaintiffs' Supplemental Responses and Objections to Defendants' Third Set of Interrogatories, Response No. 2 (Exhibit I). This "tracing" theory rested on the

---

[2/]    *See also* Simon Deposition at 69 (witness did not know if he ever received disclosures regarding challenged service fees) (Exhibit G); Deposition of Peter Wiberg March 4, 2003 at 12 ("Q: Are you claiming that there were any transactions prohibited by the ERISA laws in this lawsuit? A: I don't know the -- those laws. There's too many of them.") (Exhibit H); *id.* at 56-57 (witness unaware of any facts regarding challenged service relationships between Nationwide and mutual fund entities); *id.* at 65 (Plaintiffs' counsel acknowledging that "Mr. Wiberg has testified at least five times he doesn't know what a variable annuity is").

premise that the Plaintiff plans owned the plan assets that were "skimmed" out of the assets of the mutual funds.

This interrogatory answer conclusively established what Defendants had argued from the beginning of this case: Plaintiffs cannot prove ERISA liability because Plaintiffs never owned, as a matter of law, the assets of the mutual funds; accordingly, any money that flowed from those funds to Nationwide could not have been "plan assets," skimmed or otherwise. Defendants promptly moved for summary judgment once initial discovery was closed. Such a motion had been anticipated by the parties' Rule 26(f) scheduling conference report, *see* Report of Parties' 26(f) Planning Meeting (Docket 13), and the Court's own order denying Defendant's motion to dismiss without prejudice to such a motion, *see* Endorsement Order September 11, 2002 (no docket number assigned).

### F.    Plaintiffs' September 2003 "First Amended Supplemental" Discovery Responses

Plaintiffs' response to Defendants' motion was to change their factual allegations yet again, this time by purporting to completely retract those discovery responses that had proved unhelpful to their case and replacing them with brand new allegations. These "First Amended Supplemental" discovery responses, dated September 8, 2003, were served weeks *after* the August 18, 2003 cut-off for class certification discovery. According to Plaintiffs, this new set of facts "moot[ed]" Defendants' motion for summary judgment. *See* Plaintiffs' Memorandum in Opposition to Defendants' Motion for Leave at 24 (Docket 155) ("Opposition to Discovery").

Plaintiffs' new factual allegations stated for the first time that the "skimmed plan assets" referred to in their complaint were something called the "accumulation units" in the variable accounts associated with their variable annuity contracts. Defendants allegedly exercised authority or control over these accumulation units in a variety of ways never before identified.

Plaintiffs purported to abandon in these new discovery responses the theory that the "skimmed plan assets" could be traced from the plans to Defendants; rather, the Plaintiffs now allege that the Nationwide Defendants received something called the "fruits of plan assets." *See* Plaintiffs' First Amended Supplemental Responses and Objections to Defendants' Third Set of Interrogatories  Response No. 2 ("New Responses") (Exhibit J); *id.* at 3 ("Plaintiffs' contentions do not depend upon tracing specific dollars from the hands of the Plan into the hands of Nationwide").

**G.      The Magistrate Judge's September 18 Discovery Ruling**

Shortly after Plaintiffs' "First Amended Supplemental" Responses, the Magistrate Judge ruled on a series of discovery motions and disputes that predated those responses, and directed Plaintiffs to respond to six outstanding discovery requests. *See* Rulings Re: Discovery and Scheduling (September 18 Ruling) (Docket 126).  In four different paragraphs of the September 18 Ruling the Magistrate Judge directed Defendants to evaluate Plaintiffs' forthcoming "supplemental" class certification brief, which was due on September 28, and renew the pending discovery or seek new discovery if necessary. *See* September 18 Ruling ¶¶ 2-5.[3]  That approach

---

[3]      Paragraph 2 of the September 18 Ruling states: "If the defendants need additional information to respond [to the class certification brief], and consequently need more time than originally contemplated, they make seek a reasonable extension."

Paragraph 3 states in part: "If, having reviewed the class certification papers, defendants still believe the issues addressed in the [Defendants' outstanding requests for production of documents] are more than tangential and should be significant to the Court on certification, they should so advise plaintiffs' counsel and the Court, and plaintiffs will have a week to respond, with particular, detailed claim of any under burden."

Paragraph 4 states in part: "In light of sections 2 and 3 above [the paragraphs directing Defendants' to review Plaintiffs' forthcoming brief], the defendants' recent Motion for Sanctions (Doc. # 113), dealing with the first and second set of interrogatories, is denied without prejudice to reconsideration if the matter truly needs to be addressed for the class certification determination."

was consistent with the various scheduling orders in this action, each of which indicated that, upon review of Plaintiffs' supplemental class certification papers, Defendants could seek leave to take additional discovery.

Despite the Court's order, Plaintiffs refused to provide further discovery to Defendants' six outstanding requests.

### H.     Plaintiffs File Their Amended Class Certification Memorandum and, After Reviewing It, Defendants Seek Additional Discovery

On September 22, 2003, Plaintiffs filed an "amended" motion for class certification. *See* Plaintiffs' First Amended Motion for Class Certification (Docket 128); Plaintiffs' First Amended Memorandum in Support of Plaintiffs' First Amended Motion for Class Certification (Docket 129) ("Class Certification Memorandum"). This amended motion was based largely on Plaintiffs' untimely New Responses, and bore almost no resemblance to the original class certification motion, Plaintiffs' third amended complaint, or any of Plaintiffs' responses to the discovery that occurred before the August 8, 2003 discovery.

Plaintiffs' Class Certification Memorandum also contains factual assertions that should have been disclosed in response to Defendants' prior discovery requests, but were not. For example, the memorandum contains numerous factual assertions regarding:  the payments allegedly made by the mutual funds to Defendants; the services allegedly provided (or not provided) by Defendants for those payments; and the fair market value for those services, which are all critical components of proof in this ERISA action.[4/]  Defendants had sought this

---

Paragraph 5 states in part:  "If a fair opportunity to respond to plaintiffs' class certification arguments requires additional information, and if compliance with the order stated in paragraph 1 [that Plaintiffs are to file their Class Certification Memorandum] fails to provide that information, the Court would entertain an argument that the requests [for admission], if trimmed down to a reasonable number, need to be addressed."

[4/]     *See, e.g.*, Class Certification Memorandum at 10, 33-34, 35.

information during discovery[5/] and Plaintiffs had refused to provide it.[6/]  However, the

information suddenly appeared in their September 2003 Class Certification Memorandum, along

with descriptions of previously undisclosed market data and expert testimony that will allegedly

allow the court to make such valuations on a classwide basis.

Faced with the "First Amended Supplemental" responses, and a Class Certification

Memorandum based on assertions that had not previously been tested through discovery,

Defendants promptly moved for additional discovery into those issues, as expressly

contemplated by the earlier discovery orders in this case. *See* Defendants' Motion (1) For Leave

to Conduct Additional Class Certification Discovery, (2) To Address Outstanding Discovery

Disputes, and (3) To Revise the Schedule in This Action (Docket 143).[7/]

The Magistrate Judge denied Defendants' discovery motion.  The Magistrate Judge did

not issue an opinion or rationale for that ruling, which not only prevented additional discovery

but also reversed the order of September 18 to the extent it required Plaintiffs to respond to

certain outstanding discovery requests.

---

[5/]      Defendants' Second Set of Interrogatories Nos. 5(iii) & 5(iv) (Exhibit K) asked each
Plaintiff to state "the fair market value of *each* of [the services at issue] performed by
Nationwide" and "how Plaintiffs determined the 'fair market value' of the services performed by
Nationwide as alleged in paragraphs 21 and 32 of the Complaint."

[6/]      Plaintiffs' Supplemental Responses and Objections to Defendants Second Set of
Interrogatories, Response No. 5(iii) (Exhibit L), served in July 2003, stated "Plaintiffs do not
have the necessary information to state the fair market value of each of the services provided by
Nationwide.  Indeed, it may not be possible to break down fair market value for each of those
services.  Plaintiffs can state that Nationwide's standard charge for providing all of these services
to mutual funds prior to its implementation of revenue sharing was fifty (.50¢) cents a month/six
($6/.00) per year per participant."  Response No. 5(iv) (Exhibit L) stated that "Plaintiffs based
their allegations on documents produced by nationwide and research into this area by Class
Counsel."

[7/]      This consolidated motion addressed several outstanding issues, although the core of the
briefing dealt with Defendants' need for additional discovery in view of the issues raised by
Plaintiffs' New Responses and amended Class Certification Memorandum.

## II.    THE MAGISTRATE CLEARLY ERRED IN DENYING THE REQUESTED DISCOVERY

The Magistrate Judge's order was clearly erroneous and should be overruled by this Court. Defendants sought reasonable discovery on factual allegations and legal theories that were raised for the first time by Plaintiffs after the close of initial class certification discovery. Such supplemental class certification discovery was always contemplated in this case. Moreover, Plaintiffs' "amended" class certification papers bear almost no resemblance to Plaintiffs' original class certification papers or Plaintiffs' third amended complaint, on which Defendants' discovery had been based. Failure to allow supplemental discovery will deprive Defendants of their right to fully address the new class certification arguments raised by Plaintiffs, and will burden the Court because the class certification issues will have to be addressed on an incomplete and untested record.

### A.    Defendants Seek Discovery Into Issues Raised By Plaintiffs After The Initial Discovery Period Had Closed

Plaintiffs' "First Amended Supplemental" discovery responses served in September 2003, and Plaintiffs' amended Class Certification Memorandum filed shortly thereafter, raise entirely new factual allegations and legal theories that were never subjected to meaningful inquiry. They also purport to retract and re-write Plaintiffs' earlier responses that were the subject of the previous discovery, and provide for the first time information that Defendants requested (but never received) for months during the regular discovery period. As a result, Defendants have had no opportunity to meaningfully inquire into the facts and legal theories that form the basis for Plaintiffs' request for class certification in this case.

For example, Defendants have been deprived of discovery on the following material factual allegations. Each was alleged for the first time after the close of discovery, and each is central to Plaintiffs' new Motion for Class Certification :

11

- Plaintiffs' allegations that Defendants are ERISA fiduciaries because they exercised authority or control over "plan assets" in the form of "accumulation units" owned by the Plaintiff retirement plans, and that Defendants exercised that authority or control by managing or disposing of these units in a variety of ways never before identified. Class Certification Memorandum at 12-13.

- Plaintiffs' allegation that the Defendants violated ERISA by receiving something called "the fruits of plan assets." Class Certification Memorandum at 13. These fruits apparently derived in some unexplained way from payments allegedly made by the mutual funds to the Defendants under various service contracts. *Id.*

- Plaintiffs' allegation that Defendants violated ERISA by accepting payments for services from the mutual funds that caused the value of their "accumulation units" to decline on a "one-for-one" or "corresponding" basis. Class Certification Memorandum at 6, 13.

- Plaintiffs' allegation that Nationwide violated ERISA because it received money from the mutual funds for the "same services for which Nationwide was already being compensated by . . . PPAs [Pension Plan Administrators]." Class Certification Memorandum at 7. Plaintiffs claim that this new factual allegation of overlapping compensation is "crucial[]" to their claims, *id.* even though such payments by PPAs were never mentioned in Plaintiffs' complaint or discovery responses. *See* Third Amended Complaint (Docket 95) ¶¶ 4-33 (describing the relationship between the plans, Nationwide, and the mutual funds, and explaining "the scheme," but never mentioning PPAs).

- Plaintiffs' allegation that there is still unidentified "market data" and "expert economic testimony" that supports class certification. *See* Class Certification Memorandum at 35, 36. That new allegation comes long after the deadline for identifying experts, and despite numerous requests by Defendants for information on this fair market value issue. *See* Plaintiffs' Supplemental Responses and Objections to Defendants' Second Set of Interrogatories, Response No. 5(iii) (Exhibit K) (Plaintiffs did "not have the necessary information" and "it may not be possible to break down fair market value for each of those services.").

Even if it were permissible to spring these new factual allegations on Defendants *after* the close of class certification discovery (which Defendants vigorously contest), Defendants were at the very least entitled to discovery to inquire into these new allegations in order to have a fair opportunity to address Plaintiffs' new class certification arguments. This is especially true because Plaintiffs frustrated Defendants' efforts to take any meaningful discovery before the

discovery cut-off, and purported to retract or re-write much of the discovery that Defendants did receive.

**B.    Plaintiffs Offered No Good Reason to Deny the Requested Discovery**

Plaintiffs did not provide the Magistrate Judge with any reasonable basis for denying Defendants' request for additional discovery.  Plaintiffs mainly asserted that their September 2003 New Responses did not require additional discovery because they merely corrected a "technical error" revealed during the deposition of one of Defendants' experts in August 2003. *See* Opposition to Discovery at 2, 6.

That assertion is frivolous.  As described above, even a cursory comparison of the New Responses to the old shows that Plaintiffs have in fact attempted to completely re-write the facts that lie at the heart of their case. *See supra* at 7, 9-10.  Plaintiffs themselves vouch for the significance of their changes by asking that the New Responses "supersede[ ] and replace[ ]" their Original Responses in their entirety, New Responses at 1, and asserting that their new theory guts Defendants' Summary Judgment Motion, *see* Opposition to Discovery at 24-25.

Plaintiffs have also claimed that Defendants should not be allowed discovery because Defendants already know everything there is to know about the relevant transactions.[8]  But Defendants are entitled to know the facts on which Plaintiffs rely.  This is particularly true where, as here, many of Plaintiffs' assertions *contradict* the facts known to Defendants.  For example, when Plaintiffs assert that Defendants have violated ERISA because their receipt of service fees from mutual funds "causes the Units to decline in value on a one-to-one basis," Defendants are entitled to discover the facts known to Plaintiffs that support the supposed "one-

---

[8]    For example, Plaintiffs asserted that Defendants are not entitled to discovery regarding Plaintiffs' claim that mechanical calculations of damages are possible because Defendants supposedly "understand far better than Plaintiffs how they can be made."  Opposition to Discovery at 16.

to-one" decline. Defendants have no idea how Plaintiffs could justify this claim and so Defendants' familiarity with the relevant transactions does not excuse Plaintiffs from providing any information they possess.

Plaintiffs have not -- and cannot -- justify their unreasonable position that Defendants should be forced to defend themselves against class certification arguments in a case that Plaintiffs claim is worth "hundreds of billions of dollars," Class Certification Memorandum at 32, without allowing basic discovery into how Plaintiffs intend to prove that claim on a classwide basis. Defendants should not be required to guess at Plaintiffs' evidence or to prove the negative -- *e.g.*, that there are no facts that support Plaintiffs' erroneous assertions. Defendants are entitled to know the facts on which Plaintiffs base their claims in order to be able to explain to the Court why Defendants believe those facts and claims are inadequate.

If Plaintiffs do not have facts to support their assertions, Defendants are also entitled to establish that failing. It is only after discovery of such facts that Defendants can adequately brief -- and the Court can fairly assess -- Plaintiffs' assertion that this action is suitable for class litigation.

### C. Defendants Are Also Entitled to Responses to Their Outstanding Class Certification Discovery

In the September 18 Ruling, the Magistrate Judge directed Plaintiffs to file additional responses to six of the outstanding questions from Defendants' Third Set of Interrogatories. Those interrogatories sought information which is central to the allegations in the Class Certification Memorandum and not contained in Plaintiffs' New Responses or any discovery responses given by Plaintiffs. For example, the outstanding portion of Interrogatories 2 and 7 asked Plaintiffs to identify specific contract provisions or statements in contracts that reflect or

establish Defendants' alleged authority or control over plan assets. *See* Defendants' Third Set of Interrogatories Nos. 2, 7 (Exhibit E). Plaintiffs have never identified such contract provisions.

Similarly, the outstanding portion of Interrogatory 11 asks Plaintiffs to identify the services they believe are provided by Defendants in exchange for the administrative fees referenced in their complaint. Plaintiffs have never provided a complete sworn listing of those services even though they make self-serving assertions about those services when it suits them such as "[t]hose services are, generally, the same services that Nationwide purports to be providing to mutual funds and/or mutual fund advisors in return for the payment of skimmed plan assets." *See* New Response No. 11(iii) (Exhibit M).

Plaintiffs even go so far as to assure the Court that they will be able to prove the value of these services and the reasonableness of the related fees on a classwide basis. *See* Class Certification Memorandum at 33-35. Plaintiffs cannot be allowed to assert in their brief that the services provided by Defendants to the Plans, the PPAs, and the mutual fund entities are all the same, *see* Class Certification Memorandum at 7, without disclosing through discovery the facts they possess that support (or undermine) their conclusion. Only the disclosure of such facts about those services will allow for Defendants to test --and this Court to assess -- Plaintiffs' assertion that the sameness of those services provides some sort of classwide proof of liability.[9]

Plaintiffs resisted answering these questions -- as the Magistrate Judge had only weeks before directed them to do -- by arguing that they had in fact previously complied with all of

_____

[9]    Defendants believe that testing this assertion through proper discovery will reveal that there are individualized differences among the service relationships established by Plans, PPAs, mutual funds, mutual-fund related entities, and Defendants and related entities that make it impossible to analyze the services and related fees on any sort of classwide basis. Plaintiffs undoubtedly disagree. But that sort of dispute need not -- and should not -- be resolved on this instant objection. Only after fair discovery will the Court be in a position to assess the competing factual and legal claims of the parties.

their discovery obligations. *See* Plaintiffs' Opposition to Defendant's Motion For Interim Extension of Time (Docket 154) at 3. That assessment is disturbingly removed from reality. The written record shows that Plaintiffs stonewalled Defendants' discovery for months, twice revising their complaint to avoid answering discovery. This sequence of events is set forth in a timeline presented to the Magistrate Judge that is attached as Exhibit N. It shows that, only after Plaintiffs were forced by the Magistrate Judge to provide facts that went to the heart of the complaint and Plaintiffs' claim under ERISA -- facts describing specifically the "plan assets" at issue, how the Defendants allegedly exercised authority and control over those plan assets, and how the Defendants breached any fiduciary duty that allegedly arose from that exercise of authority and control -- did Plaintiffs finally provide some basic facts through "Supplemental" interrogatory answers that came near the end of the discovery period. But then, as is more fully described above, Plaintiffs purported to rewrite those responses *after* the initial class certification discovery period.

Plaintiffs have never fully answered Defendants' questions, although Plaintiffs rely on responsive information in their Class Certification Memorandum. Accordingly, the Magistrate Judge's unexplained and inexplicable decision releasing them from their obligation to respond to timely discovery was clearly erroneous. Plaintiffs' practices -- if unremedied by this Court -- risk denying Defendants their right to meaningful class certification discovery in support of their defense of this action.

### D.    Denying Discovery Needlessly Burdens the Class Certification Decision

If the Magistrate Judge's decision is allowed to stand, this Court will be forced to resolve a lengthy and complicated class certification motion without the benefits that adversarial discovery brings to the judicial process. Plaintiffs' Class Certification Memorandum is full of bald assertions about evidence that will allegedly wipe away the individualized issues that

16

Defendants believe permeate this case. If Defendants are granted the opportunity to test those assertions, that testing will reveal whether common issues truly predominate, as required by Rule 23(b)(3) of the Federal Rules of Civil Procedure, and whether the class is cohesive and suitable for class treatment, as required by Rule 23(b)(2). In this way, discovery will assist the Court in deciding whether class certification is appropriate.

On the other hand, without allowing reasonable discovery into the facts known to the Plaintiffs, the parties will not be able to meet each other's arguments head on, and the parties memoranda will be like two ships passing in the night. If that happens, the Court will be deprived of the substantial assistance that effective discovery provides to fair and accurate decision making.

Finally, if Plaintiffs had made -- or even attempted to make -- any credible showing of prejudice, the decision before the Court would be more difficult. But here, there is no doubt that Plaintiffs have articulated a new theory of the case on the eve of class certification briefing, and that there would be no prejudice to requiring Plaintiffs to respond to reasonable discovery on that new theory.

## III.    CONCLUSION

The Magistrate Judge's order deprives Defendants of the basic tools available to any litigant.  It does so in case that Plaintiffs claim involves damages of "hundreds of billions of dollars" even though there is no claim that additional discovery would prejudice any party. Under the circumstances, the order is clearly erroneous, and should be overruled by this Court.


Respectfully submitted,

Date:  December 2, 2003          Defendants Nationwide Financial Services
                                 Inc. and Nationwide Life Insurance Co.


By:

Eric Mogilnicki, Esq.
Sam Broderick-Sokol, Esq. (CT 25264)
Mark Bieter, Esq.
Wilmer, Cutler & Pickering
2445 M Street, N.W.
Washington, D.C. 20037
Telephone:    (202) 663-6000
Facsimile:    (202) 663-6363

Charles C. Platt, Esq. (CT 23036)
Wilmer, Cutler & Pickering
399 Park Avenue
New York, NY  10022
Telephone:    (212) 230-8800
Facsimile:    (212) 230-8888

Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone:    (860) 293-3500
Facsimile:    (860) 293-3555

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LOU HADDOCK, as trustee of the Flyte Tool & Die,
Incorporated Deferred Compensation Plan, PETER
WIBERG, as trustee of the Crown Tool & Die
Deferred Compensation Plan, ALAN GOUSE, as
trustee of the Greater Hartford Easter Seal
Rehabilitation Center Deferred Compensation Plan,
RONALD SIMON as trustee of the Hartford Roofing,
Inc. Deferred Compensation Plan, CARL
ANDERSON as trustee of the Anderson & Ferdon
Deferred Compensation Plan,

     PLAINTIFFS,

          v.

NATIONWIDE FINANCIAL SERVICES INC., and
NATIONWIDE LIFE INSURANCE CO.,

     DEFENDANTS.

CIVIL ACTION NO.:

3:01CV1552(CFD)

## [PROPOSED] ORDER

The Court, having read and considered Defendants' Objection to Magistrate Judge's Order Denying Discovery Into New Issues Raised by Plaintiffs' Motion for Class Certification, and all papers and arguments submitted in support of and in opposition to that objection, HEREBY ORDERS THAT:

1.     The Magistrate Judge's November 18, 2003, Order denying Defendants' request to take additional class certification discovery is vacated;

2.     Defendants may take additional discovery into issues raised by Plaintiffs' First Amended Motion for Class Certification;

3.     The discovery permitted by paragraph 2 of this Order shall be completed within 90 days of the date of this Order;

1

4.    Briefing of Plaintiffs' Class Certification Motion shall be suspended during the discovery period described in paragraph 3 of this Order;

5.    30 days after the close of the discovery period described in paragraph 3 of this Order, Defendants shall file their Opposition to Plaintiffs' First Amended Motion for Class Certification;  if Defendants previously have filed an Opposition to Plaintiffs' First Amended Motion for Class Certification, they may file an Amended Opposition on the date described in this paragraph;

6.    Plaintiffs shall file their Reply to Defendants' Opposition or Amended Opposition to Plaintiffs' First Amended Motion for Class Certification 30 days after the date described in paragraph 5 of this Order.

7.    All other deadlines remain in effect.

Date: _____        _____

The Honorable Christopher F. Droney
United States District Judge

## CERTIFICATION

This is to certify that true and correct copies of the foregoing Objection to Magistrate

Judge's Order Denying Discovery Into New Issues Raised By Plaintiffs' Amended Motion for

Class Certification was served via Overnight Mail on this 2nd day of December, 2003, on the

following counsel of record:

>Richard A. Bieder, Esq.
>Michael A. Stratton, Esq.
>Antonio Ponvert III, Esq.
>Koskoff, Koskoff & Bieder
>350 Fairfield Avenue
>Bridgeport, CT 06604
>
>Gregory G. Jones, Esq.
>Law Firm of Gregory G. Jones, P.C.
>603 South Main Street, Suite 200
>Grapevine, TX 76051
>
>Marc R. Stanley, Esq.
>Roger L. Mandel, Esq.
>Stanley, Mandel & Iola
>3100 Monticello Avenue
>Suite 750
>Dallas, TX 75205

Sam Broderick-Sokol