UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

United States District Court
District of Connecticut
FILED AT HARTFORD
12/24/03
Kevin F. Rowe, Clerk
By_____
Deputy Clerk

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, PETER WIBERG, as trustee of the Crown Tool & Die Deferred Compensation Plan, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan, RONALD SIMON as trustee of the Hartford Roofing, Inc. Deferred Compensation Plan, CARL ANDERSON as trustee of the Anderson & Ferdon Deferred Compensation Plan, | CIVIL ACTION NO.: 3:01CV1552(CFD) |
| PLAINTIFFS, | December 23, 2003 |
| v. | |
| NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO., | |
| DEFENDANTS. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE DECLARATIONS AND PRECLUDE OPINIONS
OF PLAINTIFFS' PUTATIVE CLASS CERTIFICATION EXPERT**

In support of their motion for class certification, Plaintiffs have submitted two declarations of law professor Samuel Issacharoff.[1] These declarations consist of pure legal conclusions regarding the proper resolution of Plaintiffs' motion, complete with citations to legal authority and extended discussion of reported judicial decisions. Such legal argument is not a permissible subject for expert testimony. For that reason, the Court should strike the declarations

---

[1] The Declaration of Samuel Issacharoff ("Issacharoff Declaration") is Exhibit 19 to Plaintiffs' Appendix in Support of Plaintiffs' First Amended Motion for Class Certification. The Supplement Declaration of Samuel Issacharoff ("Issacharoff Supplemental Declaration") is Exhibit 17 to that Appendix.

1

and preclude the opinions of Professor Issacharoff in support of Plaintiffs' motion.[2/]

Professor Issacharoff's opinions are additionally flawed because they are not based on adequate knowledge of the pertinent facts and legal principles and Professor Issacharoff is not qualified to offer such opinions. Those flaws require the Court to strike the declarations and preclude Professor Issacharoff's opinions from this action.

## I.   PROFESSOR ISSACHAROFF'S DECLARATIONS CONSIST OF PURE LEGAL CONCLUSIONS REGARDING THE PROPRIETY OF CLASS CERTIFICATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23

Professor Issacharoff opines that this action meets the legal requirements of Federal Rule of Civil Procedure 23. Thus, in his initial declaration, the professor states his "opinion" that this is "the type of uniform conduct case in which common issues predominate," Issacharoff Declaration ¶ 24, and explains that the "structure" of the proposed class "reinforce[s] the propriety of class certification," *id.* ¶ 28. The initial declaration also contains the professor's efforts to reconcile Plaintiffs' allegations in support of class certification with the facts of various reported judicial opinions. *See* Issacharoff Declaration ¶¶ 19-21 (arguing that this case is distinguishable from *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)); *id.* ¶ 22 (arguing that this case is the same as *In re Prudential Insurance Co. of America Sales Practices Litigation*, 148 F.3d 283 (3d Cir. 1998)[3/]).

---

[2/]   Defendants believe that expert legal opinion on the application and requirements of the class certification rules is not appropriate or admissible. However, if the Court does allow Plaintiffs to present such evidence, Defendants will be compelled to respond with rebuttal evidence from Professor George Priest. If the Court agrees that legal testimony on the application of Rule 23 is not proper, and strikes the Issacharoff declarations and opinions for that reason, Defendants intend to withdraw the opinions of Professor Priest.

[3/]   Incidentally, this case in fact is not comparable to *In re Prudential Insurance Company*, which involved a settlement class action in which the Defendant did not contest class certification or liability. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 192 (3d Cir. 2001) ("Although plaintiffs attempt to fit this case under *Prudential*, that case raised different issues because the class was certified for the purpose of settlement. This is

2

The professor's supplemental declaration contains similar legal conclusions. *See, e.g.* Issacharoff Supplemental Declaration ¶ 8 ("[T]his appears to be a prototypical matter for common resolution through a class action."). Indeed, the supplemental declaration contains lengthy passages of pure legal discussion regarding the state of the caselaw on various issues and comparing this action to other sorts of lawsuits. *See, e.g.*, *id.* ¶ 10 ("To my mind, once the claim is exclusively brought under ERISA and once the remedy is exclusively equitable and restitutionary, this case begins to resemble a Title VII action before the 1991 amendments to the Civil Rights Act."); *id.* ¶ 9. And one paragraph of the supplemental declaration consists of a purely legal inquiry into the tension between Fifth and Second Circuit caselaw on issues of damages and restitution, concluding after the legal analysis that Rule 23(b)(2) certification "must" be available in a case like this one. *Id.* ¶ 11.

## II. LEGAL CONCLUSIONS ARE NOT A PROPER SUBJECT FOR EXPERT TESTIMONY

Federal Rule of Evidence 702 provides that expert testimony may be admissible if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." It is well-settled that a lawyer-witness' legal opinions cannot help the trier of fact determine facts or understand the evidence and, for this reason, the courts have uniformly concluded that such opinions are not proper under the federal rules. *See Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony

---

significant because the settlement approval inquiry is far different from the certification inquiry. . . . Significantly, in *Prudential* we did not have to inquire whether the case, if tried, would present intractable management problems for the proposal was that there be no trial.") (internal quotation marks, brackets, and ellipses omitted). Additionally, as the Third Circuit explained in *Newton*, "*Prudential* involved mature claims," while the instant case (like *Newton*) "does not share a similar track record." *Id.* Needless to say, the fact that legal argument is necessary to counter Professor Issacharoff's opinions simply demonstrates that the he is serving as a lawyer rather than an expert here.

3

that expresses a legal conclusion."); *see also United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988) (expert improperly offered "legal conclusions that were highly prejudicial and went well beyond his province as an expert"); *Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 510 (2d Cir. 1977) ("As Professor Wigmore has observed, expert testimony on law is excluded because the tribunal does not need the witness' judgment. . . . The special legal knowledge of the judge makes the witness' testimony superfluous.") (internal quotation marks, bracket, and ellipsis omitted).[4/]

Courts have rejected opinions in the precise context of purported "class certification experts" such as those offered in this action by Professor Issacharoff. That is because "the question whether to certify a class is one of law, resting in the district court's discretion, and falling outside the usual legitimate boundaries of expert opinion testimony." *Schenek v. FSI Futures, Inc.*, No. 94 Civ. 6345 (CSH), 1998 WL 427625, at *4 n.6 (S.D.N.Y. July 28, 1998); *see also In re PaineWebber Ltd. Partnerships Litigation*, 171 F.R.D. 104, 119 n.36 (S.D.N.Y. 1997) (unnecessary to assess qualifications of putative "expert in class actions" because "her actual testimony was substantively indistinguishable from legal argument"); *In re Domestic Air*

---

[4/]     *See also In re Initial Public Offering Securities Litigation*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("The rule prohibiting experts from providing their legal opinions or conclusions is 'so well-established that it is often deemed a basic premise or assumption of evidence law -- a kind of axiomatic principle'") (*quoting* Thomas Baker, The Impropriety of Expert Witness Testimony on the Law, 40 U. Kan. L.Rev. 325, 352 (1992)); *Music Sales Corp. v. Morris*, 73 F.Supp.2d 364, 381 (S.D.N.Y.1999) ("This Court has repeatedly held that the testimony of an expert on matters of domestic law is inadmissible for any purpose.") *Snap-Drape, Inc. v. Commissioner*, 98 F.3d 194, 198 (5th Cir.1996) (trial court properly excluded expert witness reports that contained "nothing more than legal arguments"); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law. Experts interpret and analyze factual evidence. They do not testify about the law.") (internal quotation marks omitted); *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) ("[e]xpert testimony that consists of legal conclusions cannot properly assist the trier of fact"); *Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (law professor's "expert testimony as to legal conclusions" was properly excluded).

*Transp. Antitrust Litigation*, 137 F.R.D. 677, 682 n.2 (N.D. Ga. 1991) (declining to consider legal conclusions offered on behalf of plaintiffs by Herbert Newberg, and instead relying on Newberg's class action treatise).[5/] Indeed, courts have rejected the improper opinions of Professor Issacharoff himself. *See Clay v. American Tobacco Co.*, No. 97-1467-JPG (S.D. Ill. 1999) ("Whether a class should be certified is a question of law that does not require expert testimony specifically on that issue. . . . The motion to strike the testimony of Professor Samuel Issacharoff is granted.") (unpublished Order attached as Exhibit A); *Hoyte v. Stauffer Chemical Co.*, No. 98-3024-CI-7, 2002 WL 31892830, at *3 n.5 (Fla. Cir. Ct. Nov. 6, 2002) ("Prior to the hearing, plaintiffs also had engaged a fourth expert, Mr. Samuel Issacharoff, a legal expert, whose opinions were excluded by this Court on May 7, 2002.").

Thus, the declaration and supplemental declaration of Professor Issacharoff should be stricken, and the professor should be barred from offering any opinions in this action.

### III. PROFESSOR ISSACHAROFF'S OPINIONS ARE ALSO INADMISSIBLE BECAUSE THEY ARE "FATALLY FLAWED"

At class certification, the district court may not rely on expert evidence that is "fatally flawed." *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 135 (2d Cir. 2001). Professor Issacharoff's opinions are fatally flawed because they are based on an inadequate grasp of the facts and law governing Plaintiffs' claims. Furthermore, Professor Issacharoff lacks qualifications necessary to meet this standard, as his background reflects no expertise or experience in complex ERISA litigation of this sort.

---

[5/] Magistrate Judge Garfinkel himself recognized the dubious propriety of this sort of "expert" testimony: "Is this a new thing, you know, using law professors on -- as experts on the viability of class certification? I mean, gee, isn't that what you have judges for." Transcript of November 6, 2003 Discovery Hearing at 108:23-109:1 (a true and correct copy of the cited portions of the hearing transcript is attached as Exhibit B); *see also id.* at 110:9-11 ("Good money if you can get the gig, as a[n] expert on . . . whether some judge should [be] certifying a class.").

### A. Professor Issacharoff Does Not Know The Relevant Facts or Law

Professor Issacharoff may be a teacher and author on class actions. But he does not have adequate knowledge of the requirements of ERISA or the factual underpinnings of Plaintiffs' ERISA theories to offer useful opinions to the Court in this action. Thus, even if the Court were to conclude that a lawyer's expert opinion on whether this ERISA class action should be certified under Rule 23 could be admissible, Professor Issacharoff's opinions should still be excluded.

The critical issues in this ERISA class action are (i) whether Defendants are fiduciaries because they "exercised authority or control" over "plan assets," (ii) if so, whether Defendants breached any ERISA fiduciary duties, and (iii) if so, whether Plaintiffs were harmed or Defendants improperly profited due to that breach. *See* Defendants' Opposition to Plaintiffs' First Amended Motion for Class Certification at 1-2. Plaintiffs claim that Defendants became fiduciaries -- and simultaneously breached their fiduciary duties -- when Defendants allegedly received service payments from various mutual funds pursuant to various service contracts. (According to Plaintiffs, these service payments were "skimmed plan assets"-- that is, the service payments originated from or reduced the value of their "plan assets"-- even though the mutual funds used their own money, not plan money, to make those service payments.) *See id.* .

At his deposition, Professor Issacharoff acknowledged that he does not know the definition of a "fiduciary" for purposes of ERISA and that he had no idea what classwide proof Plaintiffs would present at trial in order to establish that Defendants were fiduciaries in connection with the challenged transactions. *See* Transcript of July 16, 2003, Deposition of Samuel Issacharoff at 272:2-10[6/]; Transcript of December 2, 2003, Deposition of Samuel Issacharoff at 32:14-19 ("Q: [Y]ou can't tell me sitting here today what the common proof will

---

[6/] True and Correct copies of all excerpts of the transcripts of Professor Issacharoff's deposition (taken on three different dates) are attached as Exhibit C.

6

be that Nationwide stands in relation to the plans as an ERISA fiduciary" A: As I stand or sit here today, no."). The professor also testified that he had not considered what individualized factual issues might arise in determining whether Defendants were or were not ERISA fiduciaries in connection with any particular transactions. *See* July 16, 2003 Transcript at 273:5-273:13.

Professor Issacharoff acknowledged that he does not know the definition of "plan assets" under ERISA, *id.* at 279:8-10, or what evidence Plaintiffs would produce to identify the pertinent plan assets, *id.* at 284:5-12; *see also* December 2 Transcript at 64:9-14 ("technical details" of Nationwide's authority or control over accumulation units "largely irrelevant"). When questioned in more detail about the facts supporting his generalized legal opinions, Professor Issacharoff explained that he "[had not] considered the specifics" but relied on a "common sense evaluation" of the issues. July 16 Transcript at 286:4-13. When asked if he could describe that "common sense" evaluation, Professor Issacharoff said "no." *Id.* at 286:14-15.

Professor Issacharoff's opinions are unreasonably vague and unsupported in other respects as well. He testified that he did not have any information about the "skimming" of plan assets at the heart of Plaintiffs' claims. *See id.* at 288:5-289:8. He testified that he did not know if there were disclosures made to the putative class members, s*ee id.* at 294:17-20, despite the obvious significance for class certification of the presence or absence of individualized disclosures. On the critical question of how Plaintiffs would prove on a classwide basis that no services or few services were provided in exchange for the service fees that are challenged in this action, Professor Issacharoff acknowledged that he "[did not] know how the facts are going to play out on this." *Id.* at 338:20-24; *see also* December 2 Transcript at 80:16-19 ("Q: Have you seen any common proof with respect to administrative services that the Nationwide defendants

7

were performing? A: No.").

When questioned on how his opinions could be reliable if he did not know the underlying facts or legal principles, Professor Issacharoff repeatedly stated that the unknown information was not relevant or did not matter. *See, e.g.*, Transcript of April 4 Deposition of Samuel Issacharoff at 172:17-173:5 (witness did not consider relevant the facts regarding how money was transferred from mutual fund entities to Nationwide entities); *id.* at 176:12-16 ("Q: Were the mutual funds taking money out of the plan assets as fees or charges? A: I don't what exactly they billed it as, but I'm not sure I see why that's relevant in this case."); July 16 Transcript at 272:10-17 (stating that the contents of the ERISA definition of fiduciary is "really quite irrelevant"); *see also* April 4 Transcript at 170:19-25 (stating that witness had not considered if it was significant for class certification purposes whether or not the plans purchased shares directly from mutual funds); December 2 Transcript at 33:9-13 ("Q: Would it matter to your class certification [analysis] whether some mutual fund entities made payments and some mutual fund entities did not? A: Not particularly."). On the significant issue of whether individualized proof will be needed to assess which of the plans agreed to or ratified the challenged service fee payments, Professor Issacharoff stated that he did not know if any of the plans ratified Nationwide's receipt of money from the mutual funds, and did not know if such information would make any difference to his class certification analysis. *See* July 16 Transcript at 292:17-25; *cf.* December 2 Transcript at 74:18-22 ("Q: Did any of the variable annuity contracts provide that [Nationwide] could cancel or transfer accumulation units with the agreement of the plans? A: I don't know. Q: Would that affect your class certification analysis in this case? A: I don't know.").

8

The issues described above are basic to this case. No fair assessment of whether a class can be certified consistent with Rule 23 can be made without taking them into account because, at class certification, the Court must conduct a "rigorous analysis" of the legal and factual claims and defenses to determine if a class trial is permissible and appropriate. *See* Defendants' Opposition to Plaintiffs' First Amended Motion for Class Certification at 23-25 (describing proceduers for analyzing class certification).

Thus, Professor Issacharoff's candid admissions that he did not consider these issues relevant and/or that he had no information about them demonstrates that his proffered testimony is "fatally flawed" and should not be admitted in support of Plaintiffs' motion. Expert testimony that is not based on the relevant facts or law cannot assist the Court. *See Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999) ("[A] district court must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used."). Because Professor Issacharoff's legal opinions are not reasonably based on the facts, and because the professor mistakenly assumed that the pertinent facts were not relevant, his declarations should be stricken and his opinions should be precluded from this action.

**B.   Professor Issacharoff Lacks Necessary Qualifications**

Professor Issacharoff may be a respected law professor. He would make an able attorney for the Plaintiffs in this action. (Indeed, the record suggests that Professor Issacharoff has in effect been acting as one of Plaintiffs' counsel during the litigation of this action. *See, e.g.*, April 4 Transcript at 53-57 (describing Professor Issacharoff's reservations about the self-dealing

9

claim, which Plaintiffs eventually dropped); *id.* at 146:4-16, 214:22-215:6 (noting problems with "vestigial" misrepresentation claim, which Plaintiffs eventually dropped); July 16 Transcript at 351:16-18 (indicating need for a fourth amended complaint); *Cf. id.* at 40:5-14 (noting that Plaintiffs' counsel previously had retained Professor Issacharoff to "help them formulate a trial strategy").)

However, Professor Issacharoff has no particular qualifications that would permit him to offer opinions on the various legal and factual issues before the Court on Plaintiffs' motion for certification under Rule 23. As described above, Professor Issacharoff is not aware of and certainly not an expert in the ERISA principles that will govern the proof in this action. Also, the professor has never managed or administered any sort of complex ERISA litigation.[7]

Under Rule 702, a witness may offer expert opinions only if he or she possess "specialized knowledge" that would assist the trier of fact. The professor possess no such "specialized knowledge" beyond that possessed by any attorney with modest experience in class action litigation who has conducted legal research and study. But Plaintiffs are already represented in this action by multiple "qualified, experienced, and capable attorneys." Plaintiffs' First Amended Memorandum in Support of First Amended Motion for Class Certification at 25. There is no need for the legal opinions of additional counsel to be accepted by the Court, particularly when his brief is filed as putative "expert" testimony. If Professor Issacharoff is to offer legal argument on behalf of the Plaintiffs, he must enter an appearance, submit to the

---

[7] The professor's only experience in class actions comes "as an attorney of record and as an expert witness." Issacharoff Declaration 1. Of those class actions in which he served as an attorney of record, all but one were voting rights act cases, or civil rights cases; none were complex business cases. April 4 Transcript at 14:20-25. Professor Issacharoff has never tried a case to a jury. Id. at 15:22-23. In his only service as a special master, he was selected by a colleague to serve as part of a "special master team" that conducted research and prepared a written report for the judge; he did not manage or administer any aspect of that litigation. Id. at 29:5-31:10.

supervision of the Court, and express himself through the briefing and argument process as would any other lawyer. His putative "expert" declarations and opinions should be stricken.

Respectfully submitted,

Date: December 23, 2003

Defendants Nationwide Financial Services Inc. and Nationwide Life Insurance Co.

By: _____
Eric Mogilnicki, Esq. (CT 23053)
Sam Broderick-Sokol, Esq. (CT 25264)
Mark Bieter, Esq.
Wilmer, Cutler & Pickering
2445 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Charles C. Platt, Esq. (CT 23036)
Wilmer, Cutler & Pickering
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone: (860) 293-3500
Facsimile: (860) 293-3555