UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, PETER WIBERG, as trustee of the Crown Tool & Die Deferred Compensation Plan, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan, RONALD SIMON as trustee of the Hartford Roofing, Inc. Deferred Compensation Plan, CARL ANDERSON as trustee of the Anderson & Ferdon Deferred Compensation Plan, | FILED<br><br>CIVIL ACTION NO.:<br><br>3:01CV1552(SRU) |
| PLAINTIFFS, | |
| v. | January 30, 2004 |
| NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO., | |
| DEFENDANTS. | |

**REVISED MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

    Page

TABLE OF AUTHORITIES ........................................................................................................ ii

STATEMENT OF MATERIAL UNDISPUTED FACTS ........................................................... 2

    A.    The Retirement Plans' Investment in the Variable Annuity Contracts .................... 3

    B.    The Variable Accounts and Accumulation Units ................................................... 4

    C.    The Service Payments Received By Defendants .................................................... 4

    D.    Plaintiffs' Shifting Allegations Regarding "Plan Assets" ....................................... 5

ARGUMENT ................................................................................................................................. 7

I.    Plaintiffs' ERISA Claim Requires Proof That Defendants Improperly Received or Diminished "Plan Assets" ................................................................................................... 8

    A.    Plaintiffs' "Fruits of Plan Assets" Allegation Fails to Establish that the Service Payments to Defendants Were Plan Assets under ERISA ....................... 10

    B.    Plaintiffs' "Accumulation Units" Allegations Fail to Establish that the Service Payments to Defendants Were Plan Assets under ERISA ....................... 13

CONCLUSION ............................................................................................................................ 17

# TABLE OF AUTHORITIES

## CASES

Bickerstaff v. Vassar College,
196 F.3d 435 (2d. Cir. 1999) ..................................................................................................7

Christensen v. Kiewit-Murdock Investment Corp.,
815 F.2d 206 (2d Cir. 1987) ...................................................................................................8

City of New York v. Citisource, Inc.,
679 F. Supp. 393 (S.D.N.Y. 1988) ........................................................................................16

Damasco & Assocs. 401(k) Profit Sharing Plan v. Manufacturers Life Insurance Co., No.
C 99-2135 CRB, 1999 U.S. Dist. LEXIS 13654 (N.D. Cal. Aug. 20, 1999) ........................17

F.H. Krear & Co. v. Nineteen Named Trustees,
810 F.2d 1250 (2d Cir. 1987) ..........................................................................................8, 16

Grohowski v. U.E. Systems, Inc.,
917 F. Supp. 258 (S.D.N.Y. 1996) ..........................................................................................9

Health Care Service Corp. v. TAP Pharmaceutical Products, Inc.,
274 F. Supp.2d 807 (E.D. Tex. 2003) ...............................................................................12, 13

ITPE Pension Fund v. Hall,
334 F.3d 1011 (11th Cir. 2003) ..............................................................................................9

Jenkins v. Area Cooperation Education Services,
248 F. Supp. 2d 117 (D. Conn. 2003) ....................................................................................7

Johnson v. Georgia Pacific Corp.,
19 F.3d 1184 (7th Cir. 1994) ................................................................................................15

Lewis v. Levy,
635 F.2d 960 (2d Cir. 1980) ...................................................................................................9

Lopresti v. Terwilliger,
126 F.3d 34 (2d Cir. 1997) .....................................................................................................9

Maniace v. Commerce Bank of Kansas City, N.A.,
40 F.3d 264 (8th Cir. 1994) .................................................................................................15

Marcella v. Capital Distribution Physicians' Health Plan, Inc.,
293 F.3d 42 (2d Cir. 2002) ...................................................................................................16

Meyer v. Oppenheimer Management Corp.,
895 F.2d 861 (2d Cir. 1990) .................................................................................................14

Molyneux v. Arthur Guinness & Sons, P.L.C.,
616 F. Supp. 240 (S.D.N.Y. 1985) ........................................................................................7

Nieto v. Ecker,
845 F.2d 868 (9th Cir. 1988) ..............................................................................................18

Pegram v. Herdrich,
530 U.S. 211 (2000) ............................................................................................................16

Sonoco Prods. Co. v. Physicians Health Plan, Inc., 338 F.3d 366 (4th Cir. 2003) ....................15

Turner v. GMAC, 980 F. Supp. 737 (S.D.N.Y. 1997) .................................................................8

**DOCKETED CASES**

Electricians Health & Welfare Plan, IBEW Local 995 v. Southeast Medical Alliance,
NO. CIV. A. 97-0206, 1998 WL 373401 (E.D. La. July 02, 1998) ....................................12

Prince v. American Airlines, Inc.,
97 Civ. 7231 RWS, 1999 U.S. Dist. LEXIS 15550, at *16 (S.D.N.Y. Oct. 1, 1999) ..........16

**RELEASES**

In re Bearing of Distribution Expenses by Mutual Funds, Securities Act of 1933 Release
No. 6119, Release No. 33-6119, 1979 WL 193460 .............................................................14

**STATUTES AND RULES**

29 U.S.C. 1104(a)(1) ......................................................................................................................8

29 U.S.C. § 1106(b) .......................................................................................................................8

FED. R. CIV. P. 56(c) .....................................................................................................................7

FED. R. CIV. P. 56(c) Statement .....................................................................................................3

Defendants Nationwide Financial Services, Inc. and Nationwide Life Insurance Company ("Nationwide Life") (collectively, "Defendants") respectfully submit this revised memorandum of law in support of their motion pursuant to Rule 56(c) of the Federal Rules of Civil Procedure for summary judgment dismissing Plaintiffs'[1] individual claims (Docket 116). The Magistrate Judge provided that Defendants could file this revised memorandum in light of recent changes in Plaintiffs' claims.[2]

## INTRODUCTION

Plaintiffs purport to be the trustees of five retirement plans that allegedly invested ERISA "plan assets" in Nationwide Life variable annuity contracts.[3] Plaintiffs are complaining about Defendants' receipt of payments pursuant to service contracts with mutual fund affiliates. According to Plaintiffs, Defendants' receipt of such service payments simultaneously created and breached a fiduciary duty to the plans because the payments either consisted of or diminished Plaintiffs' "plan assets" under ERISA.

However, it is undisputed that the service payments were made from the assets of the mutual fund affiliates -- *not* from Plaintiffs' plan assets. Furthermore, Plaintiffs have explicitly renounced any intention of showing that the monies used to make service payments to

---

[1] Plaintiffs are Lou Haddock, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan; Peter Wiberg, as trustee of the Crown Tool & Die Deferred Compensation Plan; Alan Gouse, as trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan; Ronald Simon, as trustee of the Hartford Roofing, Inc. Deferred Compensation Plan; and Carl Anderson, as trustee of the Anderson & Ferdon Deferred Compensation Plan.

[2] *See* Transcript of November 6, 2003 hearing before Magistrate Judge Garfinkel (Docket 169) ("Nov. 6 Tr.") at 115, 132-35.

[3] "ERISA" means the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*

1

Defendants by the mutual fund affiliates could be traced to plan assets. Accordingly, Plaintiffs cannot prove their allegation that the service payments consisted of or diminished any plan assets. For this simple reason, Defendants are entitled to judgment as a matter of law.

Defendants have also opposed class certification in this case. If the Court were to find a potential relationship between particular service payments and plan assets, that relationship would vary by retirement plan and by mutual fund, making class treatment inappropriate. *See generally* Defendants' Opposition to Class Certification (Docket 179). However, Defendants respectfully request that the Court hear this summary judgment motion first. A decision to grant summary judgment now would resolve this case without unnecessarily affecting absent members of the putative class. A decision to deny summary judgment would identify genuine issues of material fact in the case, and so assist the Court is assessing whether those issues could be resolved on a classwide basis. Defendants will file concurrently with this revised memorandum a motion and memorandum of law making this request.

## STATEMENT OF MATERIAL UNDISPUTED FACTS

As Defendants' Opposition to Class Certification illustrates, there are a large number of facts that support Defendants' position on class certification and the merits. This Statement sets forth only the undisputed facts necessary to decide the narrow issue of law presented by Defendants' motion: whether Defendants are entitled to summary judgment on Plaintiffs' claim that the service payments received by Defendants consisted of or diminished "plan assets." The following material undisputed facts, which are also set forth in the accompanying Defendants' Local Rule 56(a)1 Statement ("Rule 56(a)1 Statement"), have all been asserted or admitted by Plaintiffs in their pleadings and discovery responses, or are established by Plaintiffs' contracts and the mutual funds' public disclosure documents. Defendants have also submitted two declarations to assist the Court in reviewing and understanding the undisputed facts.

2

## A.   The Retirement Plans' Investment in the Variable Annuity Contracts

The five Plaintiffs in this case purport to be trustees of "participant directed 401(k) savings-for-retirement plan[s]."[4/] These five retirement plans and their participants allegedly purchased different variable annuity contracts from Nationwide Life. *See* Rule 56(a)1 Statement ¶ 2. The variable annuity contracts provided a variety of different benefits to the retirement plans, including the opportunity for the plans and their participants to invest money in variable accounts that in turn invested in a variety of different mutual funds. *See id.* ¶ 3. The five retirement plans and their participants invested money at various times in these variable accounts. *See id.* ¶ 4. When the plans and their participants invested in the variable accounts, they allocated the investment within the variable accounts to sub-accounts that were designed to purchase or sell the shares of specific mutual funds. *See id.* ¶ 5.

Each sub-account received allocations from multiple plans and plan participants, and some sub-accounts received allocations from investors who were not members of the proposed class. *See id.* ¶ 6. Each sub-account in turn purchased or sold shares of a designated mutual fund to reflect the combined allocations by the retirement plans and their participants (as well as all the other investors in that variable account). *See id.* ¶ 7. When mutual funds received funds

---

[4/]   *See* Plaintiffs' Third Amended Class Action Complaint (Docket 95) ("Third Am. Compl.") ¶¶ 13-17; Rule 56(a)1 Statement ¶ 1. Throughout this Memorandum, Defendants cite the pleadings of Plaintiffs for the purpose of showing that Plaintiffs' own allegations support Defendants' Motion for Summary Judgment. *Defendants do not thereby concede that any of Plaintiffs' allegations are correct.* Indeed, Plaintiffs' allegations are full of inaccuracies, beginning with Plaintiffs' persistent failure to properly name the plans for which they claim to be trustees, and to properly identify the statutory provision under which the plans were formed. *Compare, e.g.,* Ex. 1(A) at N 021 (correctly identifying applicant as "Trustee of the Flyte Tool & Die Company, Inc. 401(k) Profit Sharing Plan Trust") *with* Third Am. Compl. ¶ 4 (incorrectly identifying Plaintiff Lou Haddock as trustee of the "Flyte Tool & Die Incorporated Deferred Compensation Plan").

3

from the sub-accounts, those funds were pooled with funds from other investors who are not part of the putative class, and became assets of the fund. *See id.* ¶ 8.

### B. The Variable Accounts and Accumulation Units

The mutual fund shares purchased by the sub-accounts are assets of the variable accounts. *See id.* ¶ 9. The money invested by the sub-accounts became part of the pool of money owned by the mutual funds. *See id.* ¶ 8.

The variable accounts allocated "accumulation units" to the plans and their participants that reflected the amount of money that they invested in the variable account. *See id.* ¶ 10. As the plans' own records demonstrate, the mutual fund shares were not plan assets owned by the retirement plans or their participants. *See id.* ¶ 11.[5]

### C. The Service Payments Received By Defendants

The mutual funds entered into contracts with various service providers to provide investment, administrative, and other services for the mutual funds. *See id.* ¶ 12. Some of these service providers were affiliated with the mutual funds. *See id.* ¶ 13. Each mutual fund paid for those services out of fees that were fully disclosed in the mutual funds' prospectuses, and applicable to all investors. *See id.* ¶ 14. The mutual funds fully disclosed that their affiliates might be paying fees for services to insurance companies. *See id.* ¶ 15. Defendants disclosed that they or their affiliated entities might receive such payments. *See id.* ¶ 16.

---

[5] Exhibits 17, 18, 19, 20, referenced in the Revised Memorandum in Support of Defendants' Motion for Summary Judgment and in Defendants' Local Rule 56(a)1 Statement in Support of Revised Motion for Summary Judgment, are the subject of a separate Defendants' Motion to File Documents Under Seal, filed with the Court on this date. Copies of the referenced exhibits will be filed with the Court after the ruling on the Motion to File Documents Under Seal.

Some of the mutual fund affiliates that provided services to mutual funds in turn entered into contracts with third parties, including Defendants and related entities ("Nationwide entities") to help provide services. *See id.* ¶ 17. These relationships involved varyious mutual funds, fund affiliates, Nationwide entities, services and payments. *See id.* ¶ 18. Some Nationwide entities received service payments from some mutual fund affiliates pursuant to those contracts. *See id.* ¶ 19. In general, the payments were based on the amounts invested in the mutual funds by the different variable accounts available through the variable annuity contracts. *See id.* ¶ 20. The payments were sometimes based on a per-account formula. *See id.* ¶ 21. Some mutual funds disclosed that their affiliated service providers might enter into such contracts, *see id.* ¶ 22, and Defendants disclosed that the Nationwide entities might receive such payments. *See id.* ¶ 23.

### D.     Plaintiffs' Shifting Allegations Regarding "Plan Assets"

Plaintiffs have not alleged that Defendants became ERISA fiduciaries to the five retirement plans on the basis of any plan documents or contracts with the plans, or that Defendants acted in the role of a traditional ERISA fiduciary. *See id.* ¶ 24. Plaintiffs originally alleged that Defendants had and violated fiduciary duties to the plans because the service payments received by Defendants were "kickbacks" from "inferior" mutual funds and derived from "plan assets." *See id.* ¶ 25. However, after some discovery, Plaintiffs dropped those allegations. *See id.* ¶ 26. Plaintiffs also explicitly abandoned their initial allegations that Defendants engaged in any misrepresentations, lack of disclosure, breach of contract, or fraud. *See id.* ¶ 27.

Plaintiffs now claim that the service payments received by Defendants were "skimmed plan assets." *See id.* ¶ 26. In support of this claim, Plaintiffs alleged that "the mutual funds are not using their own assets to pay Nationwide. Rather, they are simply taking a percentage of the

5

Plans' assets invested in them and transferring it to Nationwide." *See id.* In "supplemental" interrogatory answers served in July 2003, Plaintiffs averred more specifically that: the five retirement plans had invested their money (i.e. their "plan assets") in mutual funds through their variable annuity contracts with Nationwide Life; those mutual funds had "skimmed" some or all of those "plan assets;" and that the mutual funds had paid those "skimmed plan assets" to Defendants -- all through an eight-step process that ended with mutual funds' service providers making payments to Defendants pursuant to service contracts. *See id.* ¶ 28.

Defendants moved for summary judgment on Plaintiffs' claim in August 2003, because, as a matter of law, the mutual funds never received or held any "plan assets," and so the service payments to Defendants could not have been "skimmed" from such assets. *See id.* ¶ 29. In September 2003 -- after initial discovery had closed -- Plaintiffs responded by recanting their interrogatory responses. *See id.* ¶ 30.

In sharp contrast to the Plaintiffs' factual assertions in their Third Amended Complaint and discovery responses, Plaintiffs now concede that the service payments were *not* made with Plaintiffs' plan assets. In particular, Plaintiffs now admit that: (1) "the Plans and their participants did not invest directly in the mutual funds"; (2) the mutual funds did not receive or hold any plan assets; (3) the money used to make the service payments belonged to the mutual funds or their affiliates, and those "dollars in the hands of the mutual funds are not plan assets;" and (4) Plaintiffs will not attempt to trace any plan assets through the mutual funds to Defendants.[6]

---

[6]  *See id.* ¶ 30. Ever since Defendants demonstrated in their initial Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Docket 117) (at 15-16) that tracing funds through the variable accounts and mutual fund entities is impossible, Plaintiffs have insisted that such tracing is not part of their case. *See* First Amended Memorandum in Support

6

Instead, Plaintiffs have unveiled two new allegations on which they now seek class certification. *First,* Plaintiffs allege that the service contract payments received by Defendants "from the mutual funds and/or mutual fund advisors" were the "fruits of plan assets." *See id.* ¶ 31. *Second,* Plaintiffs allege that the "accumulation units" allocated by the variable accounts to the retirement plans are "plan assets" under ERISA, and that those accumulation units were diminished "on a one-to-one basis" when the mutual fund affiliates made service payments to Defendants. *See id.* ¶ 32.

## ARGUMENT

Summary judgment is proper if the moving party establishes "that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law." *Jenkins v. Area Coop. Educ. Servs.,* 248 F. Supp. 2d 117, 121 (D. Conn. 2003); *see* Fed. R. Civ. P. 56(c). Indeed, the Court "must grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Jenkins,* 248 F. Supp. 2d at 122.

Plaintiffs cannot avoid summary judgment by mere assertion, *see Molyneux v. Arthur Guinness & Sons, P.L.C.,* 616 F. Supp. 240, 243 (S.D.N.Y. 1985) (court will disregard a

---

of Plaintiffs' First Amended Motion for Class Certification (Docket 129) ("Class Certification Memorandum") at 5 ("Plaintiffs' contentions do not depend upon tracing specific dollars from the hands of a Plan into the hands of Nationwide."); Plaintiffs' Opposition to Defendants' Discovery Motion (Docket 155) at 25 ("Plaintiffs do not rely on tracing plan assets from the hands of the Plans into the hand of Defendants . . ."); *see also* Plaintiffs' First Amended Supplemental Responses and Objections to Defendants' Third Set of Interrogatories ("Pls.' Amended Supplemental Responses") (Ex. 14) at 3 ("Plaintiffs' contentions do not depend upon it [sic] tracing specific dollars from the hands of the Plan into the hands of Nationwide."); Nov. 6 Tr. at 47 ("We don't claim to trace. We concede that the dollars in the hands of the mutual funds are not plan assets. ... So that leaves a common legal issue. If we're not tracing, if there are not plan assets in the hands of the mutual fund, can they legally be plan assets after Nationwide receives these payments, okay? That's a common legal issue.").

"conclusory label" if the plaintiff does not state facts necessary to establish the label's validity), or by revising their claims on the fly. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 454-55 (2d. Cir. 1999) (party may not manufacture fact dispute to avoid summary judgment by contradicting prior testimony). If summary judgment is granted on Plaintiffs' *individual* claims, the Court need not address the *class* claims asserted in the Third Amended Complaint. *See Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 214 (2d Cir. 1987).[7]

## I. Plaintiffs' ERISA Claim Requires Proof That Defendants Improperly Received Or Diminished "Plan Assets"

Plaintiffs' ERISA claim requires proof that Defendants had, and violated, fiduciary duties to Plaintiffs.[8] To prove that Defendants had fiduciary duties under ERISA, Plaintiffs must show that Defendants "exercised authority or control" over the "management or disposition" of "plan assets." ERISA § 3(21)(A)(i). If Plaintiffs make that showing, the resulting fiduciary duty extends only as far as the fiduciary's authority and control of plan assets. "A person may be an ERISA fiduciary with respect to certain matters but not others. [He] has that status 'only to the extent' that he has or exercises the described authority or responsibility" with respect to the matters complained of in the lawsuit. *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d

---

[7] *See also Turner v. GMAC*, 980 F. Supp. 737, 745 n.5 (S.D.N.Y. 1997) ("A district court has discretion to decide a motion for summary judgment before ruling on a plaintiff's motion to certify a lawsuit as a class action. This procedure is particularly appropriate where, as here, the defendant makes a specific request that the court rule on its motion for summary judgment before deciding the class certification issue." (citations omitted)).

[8] *See* 29 U.S.C. 1104(a)(1) (explaining how "a fiduciary shall discharge his duties with respect to a plan"); 29 U.S.C. § 1106(b) (governing "[t]ransactions between plan and fiduciary"); *see also* Class Certification Memorandum at 12 (ERISA analysis begins with analysis of whether Defendants are fiduciaries).