1250, 1259 (2d Cir. 1987).[9] Summary judgment is appropriate if there is no basis to conclude that a defendant misused their authority or control over "plan assets."[10]

Plaintiffs do not allege that Defendants became ERISA fiduciaries to the five retirement plans on the basis of any plan documents or contracts with the plans, or that Defendants acted in the role of a traditional ERISA fiduciary (such as a plan trustee, investment advisor, or plan administrator). Plaintiffs have also explicitly abandoned their initial allegations that Defendants engaged in any misrepresentations, lack of disclosure, breach of contract, or fraud. *See* Rule 56(a)1 Statement ¶ 27. Instead, Plaintiffs claim only that Defendants were ERISA fiduciaries because the service payments received by Defendants either consisted of or diminished "plan assets" that Plaintiffs invested in their variable annuity contracts.

The critical problem for Plaintiffs' claim is the undisputed fact that the service payments were made by the mutual funds' affiliates from *mutual fund* assets, and not from *plan* assets. This problem is compounded by the fact that Plaintiffs will not attempt to prove that the relevant mutual fund assets may be traced back to plan assets. Thus, Plaintiffs are reduced to asserting that the service payments create an ERISA fiduciary duty because they are the "*fruits* of plan assets" and/or that these payments diminish the value of the accumulation units received by the

---

[9] *See also, e.g., Lopresti v. Terwilliger*, 126 F.3d 34, 40-41 (2d Cir. 1997) (holding that shareholder authorized to sign corporate checks was not a fiduciary under ERISA because he "did not exercise authority or control regarding the disposition of plan assets"); *Lewis v. Levy*, 635 F.2d 960, 969 (2d Cir. 1980) ("[Appellant's] effort to state a claim against Superintendent Lewis as a fiduciary must fail for lack of any plan assets over which Lewis has discretionary authority as a trustee, 29 U.S.C. § 1002(21).") (Manion, J., concurring).

[10] *See Grohowski v. U.E. Sys., Inc.*, 917 F. Supp. 258, 261 (S.D.N.Y. 1996) (granting summary judgment on breach of fiduciary duty claim, and explaining that "[i]f a person's authority or control does not concern 'management,' or 'plan assets,' that person is not a fiduciary"); *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1014 n.4 (11th Cir. 2003) ("Without any control over plan assets, there is no predicate upon which to declare the officer a fiduciary of the Plan, and, without fiduciary status, no basis on which to hold him liable under ERISA.").

9

retirement plans. Neither of these new allegations is consistent with the undisputed facts or established ERISA doctrine.[11]

### A. Plaintiffs' "Fruits of Plan Assets" Allegation Fails to Establish that the Service Payments to Defendants Were Plan Assets under ERISA

Plaintiffs' "fruits of plan assets" allegation asks this Court to find that monies that were *not* ERISA plan assets in the hands of the mutual fund entities were *transformed* into ERISA plan assets when they passed into the hands of Defendants. In other words, Plaintiffs allege that the service payments "constitute plan assets in the hands of Defendants even though they did not constitute plan assets in the hands of the mutual funds prior to their payment to Defendants." Plaintiffs' Opposition to Defendants' Discovery Motion (Docket 155) at 24; *supra* at 6-7; *see also* Rule 56(a)1 Statement ¶ 30. Defendants are entitled to judgment as a matter of law on this allegation. Plaintiffs' "fruits of plan assets" construct, which appears nowhere in ERISA, nor in the regulations or caselaw interpreting ERISA (nor in Plaintiffs' Complaint), is merely a last-minute improvisation that still fails to satisfy the ERISA requirement that "plan assets" be at issue. Plaintiffs offer no reason for the Court to find that this wholly new and unprecedented allegation states a claim.

---

[11] For ease of discussion, this Memorandum refers generally to the service payments, mutual fund affiliates, and Defendants' affiliates, without setting forth all of the many variations in the parties to the service contracts, the services involved, and the payments. *See supra* at 4-5. These factual variations are not important here, because *all* of these payments were made from mutual fund assets rather than plan assets. However, these variations would make class certification impossible if Plaintiffs' theories are pursued further. *See* Defendants' Opposition to Class Certification at 28-30.

Plaintiffs' entire explanation of why the service payments are the "fruits of plan assets" is as follows:

> By arranging for, accepting and retaining payments from mutual funds and/or mutual fund advisors based upon a percentage of the daily accrued value of a Plan's Units, Nationwide exercised control over the disposition of those payments that it received. Those payments, which constitute a percentage of the daily accrued value of a Plan's Units, constitute Plan assets in the hands of Nationwide because they are the fruits of the Plan's assets and Nationwide did not have the right under its annuity contracts with the Plans or their participants to retain such fruits.

Pls.' Amended Supplemental Responses at 3; *see also* Class Certification Memorandum at 13. This explanation does not withstand close analysis.

*First*, Defendants' alleged actions ("arranging for, accepting and retaining, . . . exercising control over") may be relevant to whether Defendants exercised "authority and control" over those service payments (*see supra* at 8) but they have no bearing on whether those payments were "plan assets."

*Second*, the assertion that these service payments are "Plan assets . . . because they are the fruits of the Plan's assets" merely restates -- rather than supports -- Plaintiffs' conclusion. Similarly, the claim that "Nationwide did not have the right under its annuity contracts with the Plans . . . to retain such fruits" simply presupposes that these "fruits" belong to Plaintiffs rather than Defendants.[12] In fact, the contracts' silence on this issue is another reason why Defendants were under no obligation to avoid receipt of the service payments.

---

[12] The same circular reasoning is present in Plaintiffs' Class Certification Memorandum, in which they argue that "[t]hese payments constitute plan assets because they are the fruits of the Plan's assets which Nationwide did not have the right to retain under the annuity contracts, such that Nationwide should, in equity and good conscience, return them to the Plans." Class Certification Memorandum at 13. Of course, equity has no claims on Defendants until Plaintiffs can provide some reason to believe that the payments to Defendants were plan assets. Similarly,

11

*Third*, Plaintiffs' allegations that these service payments are "based upon a percentage of the daily accrued value of a Plan's Units" and "constitute a percentage of the daily accrued value of a Plan's Units" are factually incorrect. Plaintiffs' own definition of the class states that the service payments from mutual funds were *based on a percentage of the assets invested in the funds by Nationwide ....*" Class Certification Memorandum at 1 (emphasis added). More precisely, the service contracts show that the service payments are usually based on the amounts invested in the mutual funds by the different variable accounts available through the variable annuity contracts.[13] The amounts invested by the different variable accounts included money from ordinary investors who are *not* proposed class members. The unsurprising and undisputed fact that some service payments were set by a formula that reflected the volume of investments involved does nothing to support Plaintiffs' claim that the service payments were "plan assets" or even "fruits of plan assets." *See Electricians Health & Welfare Plan, IBEW Local 995 v. Southeast Med. Alliance*, NO. CIV A. 97-0206, 1998 WL 373401 (E.D. La. July 2, 1998) (Appendix of Authorities, Authority A ("Auth. A")) (fees consisting of a "negotiated percentage" of payments made by a health plan to a hospital were not plan assets and the party that received them was not an ERISA fiduciary).

Furthermore, there is no ERISA authority for Plaintiffs' theory that monies that are not "plan assets" can be transformed into "plan assets" when used to pay for services. In their Class Certification Memorandum, Plaintiffs rely upon *Health Care Serv. Corp. v. TAP Pharmaceutical*

---

there is no basis for asking for the service payments' "return to the Plans" until Plaintiffs prove that those payments originated with the Plans -- which would require precisely the kind of tracing that Plaintiffs have said they will not even attempt. *See supra*, n.5.

[13]   *See supra* at 5. These payments are sometimes based on a per-account formula, *see id.*, making such generalizations -- and class certification -- inappropriate.

12

*Prods., Inc.*, 274 F. Supp.2d 807 (E.D. Tex. 2003). However, that case does not support Plaintiffs' theory. In *TAP Pharmaceutical*, the plaintiffs alleged that drug companies overcharged a benefits plan for prescription drugs, and so were fiduciaries "of the plans from which they improperly obtained funds." *Id.* at 810. There was no allegation that the monies paid to the drug companies were not plan assets before payment, but were transformed into plan assets when received by the drug companies. To the contrary, the payments "were obviously made from those same self-funded plans." *Id.* at 812.

### B. Plaintiffs' "Accumulation Units" Allegations Fail to Establish that the Service Payments to Defendants Were Plan Assets under ERISA

Plaintiffs also allege the accumulation units received by the retirement plans were ERISA "plan assets" and that the units were diminished in value when Defendants received service payments from mutual fund affiliates. *See* Pls.' Amended Supplemental Responses at 3; *see also* Class Certification Memorandum at 13. More specifically, Plaintiffs claim that because payments for services were "equal to a percentage of the daily accrued value of a Plan's Units," those payments must "cause the Units to decline in value on a one-to-one basis." Class Certification Memorandum at 13 (emphasis added); *see also id.* at 15; Pls.' Amended Supplemental Responses at 3.[14/] This claim is unsupported and unsupportable.

*First*, as a matter of logic, the fact that a payment is *calculated* to equal a percentage of a sum of money does not meant that it *comes from* that sum of money. *Second*, the undisputed facts here show that the service payments do *not* come from plan assets. Just like their "fruits of plan assets" allegation, Plaintiffs' "accumulation units" allegation founders on the undisputed

---

[14/]   As a threshold matter, the service payments were *not* based on the value of accumulation units. *See supra* at 5.

13

facts that: (1) the service payments were made from the assets of each mutual fund or affiliate and not from "plan assets;"[15] and (2) Plaintiffs will not even attempt to prove that this money may be traced back to plan assets.[16]

*Third*, the Second Circuit and the SEC have recognized that mutual fund expenses are paid by using *mutual fund* assets -- not the assets of a particular investor or group of investors. *See Meyer v. Oppenheimer Mgmt. Corp.*, 895 F.2d 861, 863 (2d Cir. 1990).[17] The fact that the payments are paid from each mutual funds' assets is important here because those assets are a pool of money that includes fees paid by all of the mutual fund's investors -- not just the putative class members. The use of such pooled assets to make service payments disproves Plaintiffs' claim that the service payments diminished *plan* assets on a "one-to-one" basis. Indeed, the facts show that mutual fund fees *decreased* after Defendants began receiving service payments. *See* Defendants' Opposition to Class Certification at 15-16, Exhibit 20(B).

*Fourth*, Plaintiffs' "accumulation units" allegation fails to state a claim under ERISA. Plaintiffs' theory is that if Defendants were ERISA fiduciaries with respect to the accumulation units, and the accumulation units were adversely affected by the service payments, then

---

[15] *See* Plaintiffs' Supplemental Responses and Objections to Defendants' Third Set of Interrogatories (Ex. 15), Response No. 2 at 3 (the mutual fund deducts "a percentage of its assets [i.e. the mutual fund's assets] ... as fees.").

[16] *See supra* at 5, n.6.

[17] The Second Circuit explained in *Meyer* that "Rule 12b-1 permits an open-end investment company to use *fund assets* to cover sale and distribution expenses pursuant to a written plan approved by a majority of the fund's board of directors, including a majority of the disinterested directors, and a majority of the fund's outstanding voting shares.") (emphasis added); *see also In re Bearing of Distribution Expenses by Mutual Funds*, Securities Act of 1933 Release No. 6119, Release No. 33-6119, Investment Company Act of 1940 Release No. IC - 10862, 1979 WL 193460 (Sept. 7, 1979) (Auth. B) (exploring "the legal and policy implications of use of [mutual] *fund assets* for distribution") (emphasis added).

14

Defendants' acceptance of those payments must have violated their fiduciary duty. *See* Class Certification Memorandum at 14 ("By causing the Units to decrease in value by virtue of its receipt of the skimmed plan assets . . . Nationwide did not use the Units for the purpose of providing benefits to participants . . ."). This theory seriously misreads ERISA. Under ERISA, a fiduciary duty flows from "authority or control" over "plan assets," and extends only to the exercise of that "authority or control." *See Johnson v. Georgia Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994) ("A person 'is a fiduciary to the extent that' he performs one of the described duties; people may be fiduciaries when they do certain things but be entitled to act in their own interests when they do others.").[18/] Indeed, Plaintiffs have conceded that Defendants are "not a general purpose fiduciary" and instead are only "a fiduciary as to specific plan assets over which they're exercising authority or control." Nov. 6 Tr. at 5. Thus, Defendants' alleged authority and control over the accumulation units did not make them fiduciaries when accepting service payments.

Plaintiffs' allegation that the service payments adversely affected the accumulation units, Class Certification Memorandum at 14, does not improve Plaintiffs' claim that Defendants had a fiduciary duty under ERISA to refuse such payments. The Supreme Court has made clear that "in every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a

---

[18/]   *See also Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 373 (4th Cir. 2003) (party "may perform some functions as a fiduciary to the plan, while it may perform other functions on its own behalf, i.e., in a non-fiduciary capacity"); *Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994) ("Fiduciary status under § 1002(21)(A) is not an all or nothing concept. A court must ask whether a person is a fiduciary with respect to the particular activity in question.") (internal quotation marks, brackets, and ellipsis omitted).

15

fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).[19] Defendants were not "performing a fiduciary function" with regard to the accumulation units when "taking the action subject to complaint" -- the receipt of service payments. Indeed, Defendants were not performing *any* function with regard to the accumulation units when they accepted the service payments. Thus, Defendants' receipt of the service payments cannot serve as a basis for Plaintiffs' ERISA claim.

Finally, and in the alternative, *even if* the service payments could somehow be traced back to plan assets, those payments -- standing alone -- would not necessarily violate ERISA. The Department of Labor has found that the mere receipt by an ERISA fiduciary of a fee or other compensation from the mutual fund in connection with the plan's investment does not violate ERISA. *See* Department of Labor Advisory Opinions 97-16A (May 22, 1997) (Auth. C); 97-15A (May 22, 1997) (Auth. D); and 2003-09A (June 25, 2003) (Auth. E) ("Advisory Opinions").[20] Indeed, Plaintiffs have themselves correctly stated that the Department of Labor

---

[19] *See also F.H. Krear & Co.*, 810 F.2d at 1259 (a party is a fiduciary "only to the extent that he has or exercises ... authority or responsibility" over plan assets).

[20] Department of Labor's opinions are entitled to "great weight." *City of New York v. Citisource, Inc.*, 679 F. Supp. 393, 399 (S.D.N.Y. 1988); *see also Prince v. Am. Airlines, Inc.*, 97 Civ. 7231 RWS, 1999 U.S. Dist. LEXIS 15550, at *16 (S.D.N.Y. Oct. 1, 1999) (Auth. F) (Department Advisory Opinion letters "express the opinion of the DOL, an opinion to which the courts afford deference"). As the Second Circuit noted recently, "even though not formally promulgated as regulations, these opinion letters, as the views of the agency charged with implementing ERISA, are at least 'a body of experience and informed judgment to which courts and litigants may properly resort for guidance,' and we have often relied on them for support." *Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 48 (2d Cir. 2002) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998) (quoting *Skidmore v. Swift*, 323 U.S. 134 (1944))).

has "opined that a fiduciary which does not direct plan investments to mutual funds which pay it 'fees' does not violate [ERISA's prohibited transaction provision] by accepting those 'fees.'"[21/]

The Advisory Opinions note that their analysis could change if there were a challenge to the disclosures of fees or to the fiduciary's deletion or substitution of the mutual funds available to the plan. However, Plaintiffs have explicitly excluded such allegations from this lawsuit.[22/] In addition, the mutual funds fully disclosed that they would be paying fees for services to insurance companies such as Nationwide Life and Nationwide Life disclosed that it might receive such payments.[23/]

The Department of Labor's Advisory Opinions are consistent with the great weight of other applicable legal authority, which holds that ERISA fiduciary status is not conferred simply because an ERISA defendant may have received some money that may have originally derived from plan assets. *See Damasco & Assocs. 401(k) Profit Sharing Plan v. Mfrs. Life Ins. Co.*, No. C 99-2135 CRB, 1999 U.S. Dist. LEXIS 13654, at *20 (N.D. Cal. Aug. 20, 1999) (Auth. G) (explaining that neither an annuity company nor a retirement plan consultant were "fiduciaries within the meaning of ERISA" even though the consultant allegedly received a portion of the asset fees paid by the plan as a "kickback" for promoting the annuity company's annuities). These cases uniformly recognize that it would be unfair and counterproductive if ERISA

---

[21/] Plaintiffs' Memorandum of Law in Opposition To Defendants' Motion To Dismiss Plaintiffs' First Amended Class Action Complaint (Docket 30) at 15 n.11. Plaintiffs do not allege that Defendants "direct plan investments to mutual funds."

[22/] *See supra* at 5; *see also* Plaintiffs' Supplemental Responses to Defendants' First Set of Interrogatories (Ex. 16), Response to Interrogatory No. 4 at 2 (stating that Plaintiffs have removed allegation of Defendants' substitution of "inferior" mutual funds from amended complaint).

[23/] *See supra* at 4; Rule 56(a)1 Statement ¶¶ 15-16.

17

fiduciary status were conferred merely by the receipt of any money that a plaintiff could claim was traceable back to plan assets. *See, e.g., Nieto v. Ecker*, 845 F.2d 868, 870-71 (9th Cir. 1988) ("Under [Plaintiffs'] rationale anyone performing services for an ERISA plan -- be it an attorney, an accountant, a security guard or a janitor -- would be rendered a fiduciary insofar as he exercised some control over trust assets and through negligence or dishonesty jeopardizes those assets. We find no basis for expanding the meaning of fiduciary in this fashion."). By failing to make any allegations beyond the claim that Defendants received plan assets, Plaintiffs have failed to state an ERISA claim even if they could show -- which they cannot -- that Defendants' receipt of fees from mutual funds somehow involved plan assets.

## CONCLUSION

For all the foregoing reasons, the Nationwide Defendants respectfully request that the Court grant their motion pursuant to Fed. R. Civ. P. 56(c) for summary judgment dismissing the Third Amended Complaint in its entirety.


Date: January 30, 2004

Defendants, Nationwide Financial Services Inc.
and Nationwide Life Insurance Co.


By:     _____
        Dennis F. Kerrigan, Jr., Esq. (CT 09621)
        Brian O'Donnell, Esq. (CT 16041)
        LeBoeuf, Lamb, Greene & MacRae, L.L.P.
        Goodwin Square, 225 Asylum Street
        Hartford, CT 06103
        Telephone:    (860) 293-3500
        Facsimile:    (860) 293-3555

        Charles C. Platt, Esq. (CT 23036)
        Wilmer, Cutler & Pickering
        399 Park Avenue
        New York, NY 10022
        New York, NY 10019-5389
        Telephone:    (212) 230-8800
        Facsimile:    (212) 230-8888

        Eric Mogilnicki, Esq.
        Samuel Broderick-Sokol, Esq.
        Mark Bieter, Esq.
        Wilmer, Cutler & Pickering
        2445 M Street, N.W.
        Washington, D.C. 20037
        Telephone:    (202) 663-6000
        Facsimile:    (202) 663-6363

19

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing Revised Memorandum of Law in Support of Defendants' Motion for Summary Judgment was served via overnight express delivery on this 30th day of January, 2004, on the following counsel of record:

> Richard A. Bieder, Esq.
> Antonio Ponvert III, Esq.
> Koskoff, Koskoff & Bieder
> 350 Fairfield Avenue
> Bridgeport, CT 06604
>
> Gregory G. Jones, Esq.
> Law Firm of Gregory G. Jones, P.C.
> 603 South Main Street, Suite 200
> Grapevine, TX 76051
>
> Marc R. Stanley, Esq.
> Roger L. Mandel, Esq.
> Stanley, Mandel & Iola
> 3100 Monticello Avenue
> Suite 750
> Dallas, TX 75205

_____
Mark Bieter