
UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, PETER WIBERG, as trustee of the Crown Tool & Die Deferred Compensation Plan, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan, RONALD SIMON as trustee of the Hartford Roofing, Inc. Deferred Compensation Plan, CARL ANDERSON as trustee of the Anderson & Ferdon Deferred Compensation Plan,<br><br>PLAINTIFFS,<br><br>v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,<br><br>DEFENDANTS. | : | CIVIL ACTION NO.:<br><br>3:01CV1552(SRU)<br><br>January 30, 2004 |

**DEFENDANTS' LOCAL RULE 56(a)1 STATEMENT**
**IN SUPPORT OF REVISED MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56(a)1, Defendants Nationwide Financial Services, Inc. ("Nationwide Financial") and Nationwide Life Insurance Company ("Nationwide Life") (collectively, "Nationwide") respectfully submit this statement of undisputed facts in support of their revised motion pursuant to Rule 56(c) of the Federal Rules of Civil Procedure for summary judgment. Throughout this Statement, Defendants cite the discovery responses and pleadings of Plaintiffs for the purpose of showing that Plaintiffs' assertions and admissions support Defendants' Motion for Summary Judgment. Defendants do not hereby concede any of those assertions or allegations for any other purpose.

**The Retirement Plans' Investment in the Variable Annuity Contracts**

1. The five Plaintiffs in this case purport to be trustees of "participant directed 401(k) savings-for-retirement plan[s]." *See* Plaintiffs' Third Amended Class Action Complaint (Docket 95) ("Third Am. Compl.") ¶¶ 13-17; Plaintiffs' First Amended Memorandum In Support Of Plaintiffs' First Amended Motion For Class Certification (Docket 129) ("Plaintiffs' Class Certification Memorandum") at 1.

2. These five retirement plans and their participants allegedly purchased different variable annuity contracts from Nationwide Life. *See* Plaintiffs' Class Certification Memorandum at 1; Flyte Tool & Die Company, Inc. 401(k) Profit Sharing Plan Variable Annuity Contract (Jan. 6, 1993) ("Flyte Tool Contract") (Ex. 1(A)); Crown Tool & Die Co., Inc. Salary Deferral Profit Sharing Plan Variable Annuity Contract (May 22, 1992) ("Crown Tool Contract") (Ex. 1(B)); The Hartford Roofing Company Profit Sharing Plan Variable Annuity Contract (Jan. 10, 1996) ("Hartford Roofing Contract") (Ex. 1(C)); Carl D. Anderson & Associates, Inc. 401(k) Profit Sharing Plan Variable Annuity Contract ("Anderson Contract") (Ex. 2(1), 2(2)); The Greater Hartford Easter Seal Rehabilitation Center Tax Sheltered Annuity Plan Variable Annuity Contract ("Easter Seal Contract") (Ex. 2(3), 2(4)).

3. The variable annuity contracts provided a variety of different benefits to the retirement plans, including the opportunity for the plans and their participants to invest money in variable accounts that in turn invested in a variety of different mutual funds. *See* Plaintiffs' Class Certification Memorandum at 3; Declaration of Gary Berndt ("Berndt Decl.") ¶¶ 3, 4, 7; Flyte Tool Contract (Ex. 1(A)) at N 028; Crown Tool

Contract (Ex. 1(B)) at N 006; Hartford Roofing Contract (Ex. 1(C)) at N 053; Anderson Contract (Ex. 2(1)) at N 081; Easter Seal Contract (Ex. 2(4)) at N 325.

4. The five retirement plans and their participants invested money at various times in these variable accounts. *See* Class Certification Memorandum at 5; Third Am. Compl. ¶¶ 13-17 (alleging that various plan participants "and the plan sponsor funded" variable accounts).

5. When the plans and their participants invested in the variable accounts, they allocated the investment within the variable accounts to sub-accounts that were designed to purchase or sell the shares of specific mutual funds. *See* Plaintiffs' Class Certification Memorandum at 5; Berndt Decl. ¶¶ 6-7; Easter Seal Contract (Ex. 2(4)) at N 325 ("The Variable Account is divided into Sub-Accounts which invest in shares of mutual funds. Purchase payments are allocated among one or more of these Sub-Accounts, as designated by the owner."); Anderson Contract (Ex. 2(1)) at N 081; Flyte Tool Contract (Ex. 1(A)) at N 028; Crown Tool Contract (Ex. 1(B)) at N 006; Hartford Roofing Contract (Ex. 1(C)) at N 053.

6. Each sub-account received allocations from multiple plans and plan participants, and some sub-accounts received allocations from investors who were not members of the proposed class. *See* Berndt Decl. ¶¶ 5-6; Easter Seal Contract (Ex. 2(3)) at N 272 ("There are two sub-accounts within the Variable Account for each of the Mutual Funds which may be designated by the Contract Owner. One such sub-account contains the Mutual Funds shares attributable to Accumulation Units under Qualified Contracts and one such sub-account contains the Mutual Funds shares attributable to Accumulation Units under Non-Qualified Contracts.").

7. Each sub-account in turn purchased or sold shares of a designated mutual fund to reflect the combined allocations by the retirement plans and their participants (as well as all the other investors in that variable account). *See* Plaintiffs' Class Certification Memorandum at 5-6; Berndt Decl. ¶ 7; Easter Seal Contract (Ex. 2(4)) at N 325-326; Anderson Contract (Ex. 2(1)) at N 081-82; Flyte Tool Contract (Ex. 1(A)) at N 030; Crown Tool Contract (Ex. 1(B)) at N 09; Hartford Roofing Contract (Ex. 1(C)) at N 055.

8. When mutual funds received funds from the sub-accounts, those funds were pooled with funds from other investors who are not part of the putative class and became assets of the mutual funds. *See* Declaration of William Goslee ("Goslee Decl.") ¶ 7; Study of 401(k) Plan Fees and Expenses (Ex. 1 to Plaintiffs' Class Certification Memorandum) § 2.4.1 (noting that mutual funds consist of "pools" of cash and other assets and investments and that shareholders possess "an undivided common interest in the pool of investments"); Dreyfus Stock Index Fund Prospectus (May 1, 2001) (Ex. 6) at N 004705 ("This fund is a mutual fund: a pooled investment that is professionally managed and gives you the opportunity to participate in financial markets.").

**The Variable Accounts and Accumulation Units**

9. The mutual fund shares purchased by the sub-accounts are assets of the variable accounts. *See* Berndt Decl. ¶ 9; Statement of Additional Information Deferred Variable Annuity Contracts Issued by Nationwide Life Insurance Company Through its Nationwide Variable Account - II ("Variable Account - II SAI") (May 1, 1999) (Ex. 3) at N 014083-85; Variable Account - II SAI (May 1, 1998) (Ex. 4) at N 014028-30; Variable Account - II SAI (December 23, 1996) (Ex. 5) at N 013945-46.

10. The variable accounts allocated "accumulation units" to the plans and their participants that reflected the amount of money that the plans and their participants invested in the variable account. *See* Plaintiffs' Class Certification Memorandum at 5; Berndt Decl. ¶ 8; Flyte Tool Contract (Ex. 1(A)) at N 027-29; Crown Tool Contract (Ex. 1(B)) at N 006-8; Hartford Roofing Contract (Ex. 1(C)) at N 052-54; Anderson Contract (Ex. 2(1)) at N 081; Easter Seal Contract (Ex. 2(4)) at N 325.

11. The mutual fund shares were not plan assets owned by the retirement plans or their participants. *See* Plaintiffs' Class Certification Memorandum at 5 (stating that the accumulation units "constitute plan assets"); Transcript of November 6, 2003 Hearing (Docket 169) ("Nov. 6 Tr.") at 47:2-3 ("We concede that the dollars in the hands of the mutual funds are not plan assets ...."); Trust Financial Report, The Hartford Roofing Company 401(k) Profit Sharing Plan (1997) (Ex. 7) at HR00545 (showing plan assets invested in Nationwide Life Insurance Company and not individual mutual funds); Trust Financial Report for 1998, Crown Tool & Die Co., Inc. (Ex. 8) at NP05023 (same); Deposition Transcript of Edward Kaplan (March 11, 2003) (portions attached as Ex. 17) at 195:5-18.[1]

**The Service Payments Received By Defendants**

12. The mutual funds entered into contracts with various service providers to provide investment, administrative, and other services for the mutual funds. *See*

---

[1] Exhibits 17, 18, 19, 20, referenced in the Revised Memorandum in Support of Defendants' Motion for Summary Judgment and in Defendants' Local Rule 56(a)1 Statement in Support of Revised Motion for Summary Judgment, are the subject of a separate Defendants' Motion to File Documents Under Seal, filed with the Court on this date. Copies of the referenced exhibits will be filed with the Court after the ruling on the Motion to File Documents Under Seal.

Plaintiffs' Class Certification Memorandum at 6; Goslee Decl. ¶ 4; Fidelity Variable Insurance Products Service Class Fund Prospectus (April 30, 2001) (Ex. 9) at N 003960.

13. Some of these service providers were affiliated with the mutual funds. *See* Goslee Decl. ¶ 4; *See* Fidelity Variable Insurance Products Fund Prospectus (April 30, 2001) (Ex. 9) at N 003958.

14. Each mutual fund paid for those services out of fees that were fully disclosed in the mutual funds' prospectuses and applicable to all investors. *See* Plaintiffs' Class Certification Memorandum at 6; Goslee Decl. ¶ 3, 8-9; Fidelity Variable Insurance Products Fund Prospectus (April 30, 2001) (Ex. 9) at N 003960; Dreyfus Stock Index Fund Prospectus (May 1, 2001) (Ex. 6) at N 004707; Janus Aspen Series Prospectus (May 1, 2001) (Ex. 10) at N 004387.

15. The mutual funds fully disclosed that their affiliates might be paying fees for services to insurance companies. *See, e.g.,* Fidelity Variable Insurance Products Fund Prospectus (April 30, 2001) (Ex. 9) at N 003960; Dreyfus Stock Index Fund Prospectus (May 1, 2001) (Ex. 6) at N 004707; Janus Aspen Series Prospectus (May 1, 2001) (Ex. 10) at N 004387; *see also* Goslee Decl. ¶ 11.

16. Defendants disclosed that they or their affiliated entities might receive such payments. *See* The Best of America Retirement Advisor Group Variable Annuity Contract Profile (Ex. 11) at N 011139; 1998 Variable Account - II SAI (Ex. 4) at N 014024 ("The Company, or affiliates of the Company, may have entered into agreements with either the investment adviser or distributor for several of the underlying Mutual Funds. The agreements relate to administrative services furnished by the Company or an affiliate of the Company and provide for an annual fee based on the average aggregate

net assets of the Variable Account … invested in particular underlying mutual funds."); 1997 Annual Report of Nationwide Variable Account - II (Ex. 12) at 21 (Nationwide Life "performs various services on behalf of the Mutual Fund Companies in which the [variable account] invests and may receive fees for the services performed. These services include, among other things, shareholder communications, preparation, postage, fund transfer agency and various other record keeping and customer service functions. These fees are paid to an affiliate of the company.").

17. Some of the mutual fund affiliates that provided services to mutual funds in turn entered into contracts with third parties, including Defendants and related entities ("Nationwide entities") to help provide services. *See* Plaintiffs' Class Certification Memorandum at 8; Goslee Decl. ¶ 5; 1999 Variable Account - II SAI (Ex. 3) at N014100 ("[Nationwide] performs various services on behalf of the Mutual Fund Companies in which the Account invests and may receive fees for the services performed. These services include, among other things, shareholder communications, preparation, postage, fund transfer agency and various other record keeping and customer service functions."); *see also* Plaintiffs' Supplemental Responses and Objections to Defendants' Second Set of Interrogatories, Response to Interrogatory No. 5 (Ex. 13) (describing services).

18. These relationships involved various mutual funds, fund affiliates, Nationwide entities, services and payments. *See* Goslee Decl. ¶ 6; *Compare* Fund Agreement Between Nationwide Financial Services, Inc. and INVESCO Funds Group (Ex. 18) *with* Service Agreement Between Nationwide Financial Services, Inc. and Janus Service Corporation (Ex. 19).

19. Some Nationwide entities received service payments from some mutual fund affiliates pursuant to those contracts. *See* Plaintiffs' Class Certification Memorandum at 8; Third Am. Compl. ¶ 25; Goslee Decl. ¶¶ 5-6; Service Agreement Between Nationwide Financial Services, Inc. and Janus Service Corporation (Ex. 19).

20. In general, the service payments to Nationwide entities were based on the amounts invested in the mutual funds by the different variable accounts available through the variable annuity contracts. *See* Plaintiffs' Class Certification Memorandum at 8; Goslee Decl. ¶ 6; Service Agreement Between Nationwide Financial Services, Inc. and Janus Service Corporation (Ex. 19) at N 013417; Agreement Between Nationwide Financial Services, Inc. and Villanova Fund Capital Trust (Ex. 20) at N 013424.

21. The payments were sometimes based on a per-account formula. *See* Goslee Decl. ¶ 6; Fund Agreement Between Nationwide Financial Services, Inc. and INVESCO Funds Group (Ex. 18) at N 013506.

22. The mutual funds disclosed that their affiliated service providers might enter into such contracts. *See, e.g.,* Fidelity Variable Insurance Products Fund Prospectus (April 30, 2001) (Ex. 9) at N 003960; Dreyfus Stock Index Fund Prospectus (May 1, 2001) (Ex. 6) at N 004707; *see also* Goslee Decl. ¶ 11.

23. Defendants disclosed that Nationwide entities might receive such payments. *See* 1997 Annual Report of Nationwide Variable Account - II (Ex. 12) at 21 (Nationwide Life "performs various services on behalf of the Mutual Fund Companies in which the [variable account] invests and may receive fees for the services performed. These services include, among other things, shareholder communications, preparation,

postage, fund transfer agency and various other record keeping and customer service functions. These fees are paid to an affiliate of the company.").

**Plaintiffs' Shifting Allegations Regarding "Plan Assets"**

24. Plaintiffs have not alleged that Defendants became ERISA fiduciaries to the five retirement plans on the basis of any plan documents or contracts with the plans, or that Defendants acted in the role of a traditional ERISA fiduciary. *See* Nov. 6 Tr. at 5 (Defendants are "not a general purpose fiduciary, they're not a trustee, they're not a fiduciary for all purposes . . . our contention is that they are a fiduciary as to specific plan assets over which they're exercising authority or control.").

25. Plaintiffs originally alleged that Defendants had and violated fiduciary duties to the plans because the service payments received by Defendants were "kickbacks" from "inferior" mutual funds and derived from "plan assets." Plaintiffs' First Amended Class Action Complaint (Docket 4) ¶¶ 1, 5, 27, 28, 49.

26. However, after some discovery, Plaintiffs dropped those allegations and now claim that the service payments received by Defendants were "skimmed plan assets," Third Am. Compl. ¶ 22, and further allege that "the mutual funds are not using their own assets to pay Nationwide. Rather, they are simply taking a percentage of the Plans' assets invested in them and transferring it to Nationwide." *Id.* ¶ 33.

27. Plaintiffs also explicitly abandoned their intial allegations that Defendants engaged in any misrepresentations, lack of disclosure, breach of contract, or fraud. *See* Third Am. Compl. ¶ 42; *see also* Plaintiffs' Motion for Leave to File Third Amended Complaint and Memorandum in Support Thereof ("Pl. Mot.") (Docket 83) ("The **only**

claim in this case is for breach of fiduciary duty through conversion of Plan assets.") (emphasis in original); *id.* at 1-2 (stating that the Third Amended Complaint deletes all allegations concerning misrepresentations, non-disclosures, breach of contract); Class Certification Memorandum at 36-37 ("Plaintiffs specifically disavow seeking relief based upon any misrepresentations or omissions by Nationwide or any understandings of Class members as to representations or omissions by Nationwide or any reliance by Class members on any representations or omissions of Nationwide."); Plaintiffs' First Amended Supplemental Responses and Objections to Defendants' Third Set of Interrogatories ("Pls.' Amended Supplemental Responses") (Ex. 14), Response No. 2 at 5-6 ("Plaintiffs specifically disclaim that their cause of action rests upon any representations or omissions having been made to them, their understanding of any representations or omissions, their reliance upon any representations or omissions or them having taking any action or failed to take any action as a result of any representations or omissions by Nationwide.").

28.   In "supplemental" interrogatory answers served in July 2003, Plaintiffs averred more specifically that the five retirement plans had invested their money (i.e. their "plan assets") in mutual funds through their variable annuity contracts with Nationwide Life, that those mutual funds had "skimmed" some or all of those "plan assets," and that the mutual funds had paid those "skimmed plan assets" to Defendants -- all through an eight-step process that ended with mutual funds' service providers making payments to Defendants pursuant to service contracts. *See* Plaintiffs' Supplemental Responses and Objections to Defendants Third Set of Interrogatories ("Pls.' Supplemental Responses") (Ex. 15), Response No. 2 (setting forth the eight steps); *see*

*also* Third Am. Compl. ¶ 32 ("[T]he mutual funds are not using their own assets to pay Nationwide. Rather they are simply taking a percentage of the Plans' assets invested in them and transferring it to Nationwide.").

29. Defendants moved for summary judgment on Plaintiffs' claim in August 2003 because, as a matter of law, the mutual funds never received or held any "plan assets," and so the service payments to Defendants could not have been "skimmed" from such assets. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Docket 117) at 12-16.

30. In response, Plaintiffs recanted their interrogatory answers in September 2003, after initial discovery had closed, and now concede that: (1) "the Plans and their participants did not invest directly in the mutual funds" (Plaintiffs' Class Certification Memorandum at 5); (2) the mutual funds did not receive or hold any plan assets (*see* Nov. 6 Tr. at 47:2-3 ("We concede that the dollars in the hands of the mutual funds are not plan assets ...."); *id.* at 42:13-15 ("we concede that ... the cash that's being paid in the hands of the mutual funds was not a plan asset ...."); (3) the money used to make the service payments belonged to the mutual funds or their affiliates, and those "dollars in the hands of the mutual funds are not plan assets" (Plaintiffs' Opposition to, and Memorandum in Support, to Defendants' Discovery Motion (Docket 155) at 24; *see also* Nov. 6 Tr. at 47:2-3); and (4) they will not attempt to trace any plan assets through the mutual funds to Defendants. *See* Plaintiffs' Class Certification Memorandum at 5 ("Plaintiffs' contentions do not depend upon tracing specific dollars from the hands of a Plan into the hands of Nationwide."); Plaintiffs' Opposition to Defendants' Discovery Motion at 25 ("Plaintiffs do not rely on tracing plan assets from the hands of the Plans

into the hands of Defendants . . ."); Pls.' Amended Supplemental Responses (Ex. 14) at 3 ("Plaintiffs' contentions do not depend upon it [sic] tracing specific dollars from the hands of the Plan into the hands of Nationwide."); Nov. 6 Tr. at 47:2-8 ("We don't claim to trace. We concede that the dollars in the hands of the mutual funds are not plan assets. … If we're not tracing, if there are not plan assets in the hands of the mutual fund, can they legally be plan assets after Nationwide receives these payments, okay?").

31.     Instead, Plaintiffs have unveiled two new allegations on which they now seek class certification. *First,* Plaintiffs allege that the service contract payments received by Defendants "from the mutual funds and/or mutual fund advisors" were the "fruits of plan assets." Pls.' Amended Supplemental Responses (Ex. 14), Response No. 2 at 3; Plaintiffs' Class Certification Memorandum at 13.

32.     *Second,* Plaintiffs allege that the "accumulation units" allocated by the variable accounts to the retirement plans are "plan assets" under ERISA, and that those accumulation units were diminished "on a one-to-one basis" when the mutual fund affiliates made service contract payments to Defendants. *See* Plaintiffs' Class Certification Memorandum at 12-13.

Dated: January 30, 2004

Defendants, Nationwide Financial Services Inc.
and Nationwide Life Insurance Co.

By: ______________________________

Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone: (860) 293-3500
Facsimile: (860) 293-3555

Charles C. Platt, Esq. (CT 23036)
Wilmer, Cutler & Pickering
399 Park Avenue
New York, NY 10022
New York, NY 10019-5389
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Eric Mogilnicki, Esq.
Samuel Broderick-Sokol, Esq.
Mark Bieter, Esq.
Wilmer, Cutler & Pickering
2445 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

**CERTIFICATION**

This is to certify that a true and correct copy of the foregoing Defendants' Local Rule 56(a)1 Statement in Support of Revised Motion for Summary Judgment was served via overnight mail, on this 30th day of January, 2004, on the following counsel of record:

Richard A. Bieder, Esq.
Antonio Ponvert III, Esq.
Koskoff, Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

Gregory G. Jones, Esq.
Law Firm of Gregory G. Jones, P.C.
603 South Main Street, Suite 200
Grapevine, TX 76051

Marc R. Stanley, Esq.
Roger L. Mandel, Esq.
Stanley, Mandel & Iola
3100 Monticello Avenue
Suite 750
Dallas, TX 75205

Mark Bieter