UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, PETER WIBERG, as trustee of the Crown Tool & Die Deferred Compensation Plan, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan, RONALD SIMON as trustee of the Hartford Roofing, Inc. Deferred Compensation Plan, CARL ANDERSON as trustee of the Anderson & Ferdon Deferred Compensation Plan, <br><br>PLAINTIFFS, <br><br>v. <br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO., <br><br>DEFENDANTS. | CIVIL ACTION NO.: <br><br>3:01CV1552 (SRU) <br><br><br>February 13, 2004 |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO STRIKE DECLARATIONS AND PRECLUDE OPINIONS OF
PLAINTIFFS' PUTATIVE CLASS CERTIFICATION EXPERT**

Defendants Nationwide Financial Services Inc. and Nationwide Life Insurance Co. ("Defendants") respectfully submit this memorandum in further support of Defendants' Motion to Strike Declarations and Preclude Opinions of Plaintiffs' Putative Class Certification Expert ("Defendant's Motion") (Docket 177) and in response to Plaintiffs' Opposition thereto (Docket 195). Plaintiffs' Opposition describes the standards that govern a district court's consideration of an *economist's* expert testimony on *economic issues*. However, that discussion fails to explain why the Court should accept as "expert" the testimony of a *lawyer* on *legal issues*. The Second Circuit has made clear that courts do not need, and should not accept, "expert" opinions on how to evaluate legal issues. Accordingly, this Court should strike the declarations of Professor Issacharoff and preclude his legal opinions from this action.

1

I.  **LEGAL OPINIONS ON THE APPLICATION OF RULE 23 ARE NOT PROPER EXPERT TESTIMONY**

Defendants' Motion and Memorandum of Law in Support (Docket 178) ("Defendants' Memorandum") demonstrated that the declarations of Plaintiffs' putative class action expert Samuel Issacharoff consist of inadmissible legal opinion. *See* Defendants' Memorandum at 2-3 (describing legal conclusions contained in Issacharoff declarations); *id.* at 3-4 (reviewing cases holding that legal opinions are not proper expert testimony)[1]; *id.* at 4-5 (reviewing cases holding that "expert" legal opinions on whether a class should be certified are inadmissible).[2] Defendants also cited two judicial decisions precluding legal opinions offered by Professor Issacharoff in other putative class actions. *See id.* at 5.

Plaintiffs' Opposition does not challenge or dispute Defendants' assessment that the declarations of Professor Issacharoff consist of legal opinion. Nor do Plaintiffs distinguish -- or even mention -- any of the authority cited by Defendants to demonstrate that such legal opinions are not properly accepted as expert testimony. Instead, Plaintiffs rely upon *ad homenim* attacks that accuse Defendants of "choosing to leave the Court with misleading and incorrect impression that expert opinions on class certification are *per se* inadmissible." Plaintiffs' Opposition at 1. In fact, Defendants argue only that legal opinions about how the Court should interpret Rule 23 -- like the testimony offered by Professor Issacharoff -- are not proper expert testimony. *See* Defendants' Motion at 1 ("Professor Issacharoff's opinions in this action consist of improper legal

---

[1]    *See, e.g., In re Initial Public Offering Securities Litigation*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("The rule prohibiting experts from providing their legal opinions or conclusions is so well-established that it is often deemed a basic premise or assumption of evidence law -- a kind of axiomatic principle.") (internal quotation marks omitted).

[2]    *See, e.g., Schenek v. FSI Futures, Inc.*, No. 94 Civ. 6345 (CSH), 1998 WL 427625 at *4 n.6 (S.D.N.Y. July 28, 1998) ("[T]he question whether to certify a class is one of law, resting in the district court's discretion, and falling outside the usual legitimate boundaries of expert opinion testimony.").

2

conclusions"); Defendants' Memorandum at 1 ("Such legal argument is not a permissible subject for expert testimony.").

By mischaracterizing Defendants' position, Plaintiffs set themselves to the easy task of proving that expert testimony is not *per se* inadmissible at class certification, rather than grappling with Defendants' contention that legal opinion is outside of "the usual legitimate boundaries of expert opinion testimony." *Schenek, supra* at n.2. For example, Plaintiffs claim that *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124 (2d Cir. 2001), is the "controlling case" here, Plaintiffs' Opposition at 2, even though the *Visa Check* case was antitrust litigation in which the Second Circuit evaluated the use of economic expert testimony at the class certification stage. *Id.* at 135. In resolving that a particular economist's expert methodology was not "fatally flawed," *id.*, the Second Circuit did not rule or suggest that the Courts should accept legal opinions offered as "expert" testimony.[3]

Plaintiffs likewise cite four far-flung district court cases for "rejecting requests to exclude class certification expert opinions." *See* Plaintiffs' Opposition at 3. All of these cases, like *In re Visa Check/MasterMoney*, address the use of expert economic testimony regarding the financial impact of alleged antitrust violations.[4] While these cases demonstrate that economics experts may

---

[3] Indeed, the language used *In re Visa Check/MasterMoney* supports Defendants' contentions here. The *Visa Check* Court stated that "the question for the district court at the class certification stage is whether plaintiffs' expert *evidence* is sufficient to *demonstrate* common questions of fact warranting certification of the proposed class[.]" *In re Visa Check/MasterMoney*, 280 F.3d at 135 (emphasis added). In contrast, the testimony of Professor Issacharoff here is neither evidence nor demonstrative. It is pure legal opinion that seeks to supplant rather than assist the Court's analysis.

[4] *See Nichols v. SmithKline Beecham Corp.*, 2003 WL 302352 at *2 (E.D. Pa.); *Thomas & Thomas Rodmakers, Inc.*, 209 F.R.D. 159, 161 (C.D. Cal. 2002); *In re Monosodium Glutamate Antitrust Litig.*, 205 F.R.D. 229, 234 (D. Minn. 2001); *Midwestern Machinery v. Northwest Airlines, Inc.*, 211 F.R.D. 562, 566 (D. Minn. 2001).

These cases do suggest that a loose standard may be used to review such testimony at the class certification stage, because full testing of the expert may be reserved to trial. *See Thomas*, 209 F.R.D. at 162; *Nichols*, 2003 WL 302352 at *4; *In re Monosodium Glutamate Antitrust Litigation*,

3

sometimes assist a court in evaluating economic issues at the class certification stage, they do simply not address Defendants' argument that a law professor's opinion on whether a case meets the requirements of Rule 23 is not a proper subject for "expert" testimony.

For all the reasons stated in Defendants' Memorandum at 3-5, which stand unrebutted by Plaintiffs, Professor Issacharoff's legal opinions should be precluded from this action and his two declarations should be stricken from the record.

## II. PROFESSOR ISSACHAROFF'S OPINIONS ARE FATALLY FLAWED

If this Court wishes to consider admitting legal "expert" testimony, it must, as Defendants explained in their initial Memorandum, "ensure that the basis of the expert opinion is not so flawed that it would be inadmissible as a matter of law." Defendants' Memorandum at 5 (quoting *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d at 135). In their Opposition, Plaintiffs contend that Defendants do not challenge Professor Issacharoff's methodology. *See* Plaintiffs' Opposition at 6.[5/] In fact, Defendants have explained that the professor's methods are fatally flawed because he is opining on Plaintiffs' motion to certify an ERISA class action without knowing -- and so without considering -- the facts and law that are pertinent to Plaintiffs' ERISA claims. *See* Defendants' Memorandum at 6-9.

The gaps in the professor's knowledge go to the heart of the dispute on which he is opining. For example, the professor acknowledged that he does not know the definitions of a "fiduciary" or

---

205 F.R.D. at 234-35; *Midwestern Machinery*, 211 F.R.D. at 565-66. But that reasoning is inapplicable here because Professor Issacharoff is not opining on the merits, but on the class certification motion before the Court, and so there is no later time when his opinion will be subject to closer review.

[5/]   Notably, Plaintiffs' own discussion of this issue establishes that Professor Issacharoff's "methodology" consists simply of legal analysis, which supports Defendants' basic point that the professor is acting as a lawyer, not an expert, here. *See* Plaintiffs' Opposition at 6 (explaining that the professor's methodology consists of reviewing pleadings and documents).

4

"plan assets" under ERISA. *Id.* These issues are essential elements of Plaintiffs' class claims.[6/]
Indeed, Defendants' opposition to class certification is based in large part upon the absence of any common proof for Plaintiffs' allegation that service payments to Nationwide entities were comprised of or diminished ERISA "plan assets"[7/] Thus, any sound analysis of class certification here requires an understanding of how ERISA defines "plan assets," and whether Plaintiffs can prove that element of their claim on a class basis. *Cf. In re Visa Check/MasterMoney*, 280 F.3d at 136 (observing that, in resolving the plaintiffs' certification motion, "[t]he district court examined whether plaintiffs could establish each of the three required elements of an antitrust claim . . . using common evidence"); *see also* Defendants' Opposition to Plaintiffs' First Amended Motion for Class Certification at 23-25 (describing procedures for analyzing class certification) (Docket 179).

The fact that Professor Issacharoff does not know what an ERISA "plan asset" is -- and so could not possibly know whether it would be easy or impossible to use common proof to show that such assets are involved here -- makes his opinion on class certification fatally flawed. This flaw in the professor's methods is compounded by his admitted ignorance regarding what common proof of Defendants' fiduciary status (if any) Plaintiffs would present at a class trial of this action, or how Plaintiffs would prove on a classwide basis that no services or few services were provided in exchanged for the payments challenged in this action. *Id.* at 6, 7. The Court should not accept as "expert" testimony an analysis that is so poorly grounded in the facts of this case.

Finally, Defendants have shown that Professor Issacharoff lacks qualifications needed to opine on whether a class trial of this action would be manageable. *See* Defendants' Memorandum

---

[6/] *See, e.g.*, Plaintiffs' First Amended Memorandum of Law in Support of Plaintiffs' First Amended Motion for Class Certification (Docket 129) at 11-15 (ERISA elements), 18-20 (analysis of plan assets issues).

[7/] *See* Defendants' Opposition to Plaintiffs' First Amended Motion for Class Certification at 18-23 (ERISA elements); 26-44 (analysis of fiduciary status and plan assets issues).

5

at 9-11. The professor has never managed any complex ERISA litigation, and lacks knowledge of the legal principles that will govern the proof in this action. Plaintiffs' response that Professor Issacharoff is a respected law professor and an experienced expert witness does not meet the substance of this argument. *See* Plaintiffs' Opposition at 8. The issue is not whether Professor Issacharoff is qualified to be an expert witness in any case of any kind; the issue is whether the professor is qualified to be an expert witness in this ERISA case. Here, Professor Issacharoff's lack of familiarity with the pertinent legal principles and the relevant facts, and his lack of experience managing any comparable litigation, render his opinions "fatally flawed" and not "sufficiently reliable for certification purposes" as those terms are used in *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d at 135. Accordingly, Defendants' Motion should be granted.

Respectfully submitted,

Date: February 13, 2004

Defendants Nationwide Financial Services Inc. and Nationwide Life Insurance Co.

By: _____
Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone:    (860) 293-3500
Facsimile:    (860) 293-3555

Eric Mogilnicki, Esq. (CT 23053)
Sam Broderick-Sokol, Esq. (CT 25264)
Mark Bieter, Esq.
Wilmer Cutler Pickering LLP
2445 M Street, N.W.
Washington, D.C. 20037
Telephone:    (202) 663-6000
Facsimile:    (202) 663-6363

Charles C. Platt, Esq. (CT 23036)
Wilmer Cutler Pickering LLP
399 Park Avenue
New York, NY 10022
Telephone:   (212) 230-8800
Facsimile:   (212) 230-8888

## CERTIFICATION

This is to certify that true and correct copies of the foregoing Reply Memorandum in Support of Motion to Strike Declarations and Preclude Opinions of Plaintiffs' Putative Class Certification Expert were served by overnight mail on this 12th day of February, 2004, on the following counsel of record:

>Richard A. Bieder, Esq.
>Antonio Ponvert III, Esq.
>Koskoff, Koskoff & Bieder
>350 Fairfield Avenue
>Bridgeport, CT 06604
>
>Gregory G. Jones, Esq.
>Law Firm of Gregory G. Jones, P.C.
>2400 Scott Avenue
>Fort Worth, TX 76103
>
>Marc R. Stanley, Esq.
>Roger L. Mandel, Esq.
>Stanley, Mandel & Iola
>3100 Monticello Avenue
>Suite 750
>Dallas, TX 75205

Sam Broderick-Sokol