UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, PETER WIBERG, as trustee of the Crown Tool & Die Deferred Compensation Plan, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan, RONALD SIMON as trustee of the Hartford Roofing, Inc. Deferred Compensation Plan, CARL ANDERSON as trustee of the Anderson & Ferdon Deferred Compensation Plan, <br><br>PLAINTIFFS, <br><br>v. <br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO., <br><br>DEFENDANTS. | CIVIL ACTION NO.: <br><br>3:01CV1552 (SRU) <br><br><br>March 3, 2004 |

**REPLY MEMORANDUM IN SUPPORT OF MOTION REQUESTING THAT THE COURT DECIDE SUMMARY JUDGMENT BEFORE DECIDING CLASS CERTIFICATION**

Defendants Nationwide Financial Services Inc. and Nationwide Life Insurance Co. ("Defendants") respectfully submit this memorandum in further support of Defendants' Motion Requesting that the Court Decide Summary Judgment Before Deciding Class Certification ("Defendants' Motion") (Docket 189) and in response to Plaintiffs' Opposition thereto (Docket 202).

Plaintiffs' Opposition asserts that caselaw and the Court's prior scheduling orders prevent the Court from deciding Defendants' Summary Judgment Motion before Plaintiffs' Class Certification Motion. In fact, Second Circuit caselaw establishes the Court's discretion to decide motions in the order it deems best in light of all the facts and circumstances, and the scheduling orders in this case explicitly authorize Defendants' Summary Judgment Motion and provide for the Court to decide the order in which to rule.

1

The Court should rule on Defendants' Summary Judgment Motion first because it raises a very narrow legal issue. The Court's decision on that issue will either wholly dispose of Plaintiffs' claims or simplify the motion for class certification. Deciding class certification first does nothing but delay the efficient resolution of this case, and increase the risk of serious prejudice to absent class members.

I.  **GOVERNING LEGAL STANDARDS GRANT BROAD DISCRETION TO THE COURT**

The governing legal standard in this Circuit is clear: "A district court has discretion to decide a motion for summary judgment before ruling on a plaintiff's motion to certify a lawsuit as a class action." *Turner v. General Motors Acceptance Corp.*, 980 F. Supp. 737, 747 n.5 (S.D.N.Y. 1997); *see also Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 214 (2d Cir. 1987) (noting that "the procedure followed by the court [of deciding a dispositive motion before class certification] was well within its discretion"); *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998) (explaining that "the decision to award summary judgment before acting on class certification was well within the discretion of the district court").

Even the cases relied on by Plaintiffs recognize that a request to test the individual merits first should be granted if doing so will spare a needless effort to resolve a difficult certification motion.[1] And contrary to Plaintiffs' assertion, *see* Plaintiffs' Opposition at 3-4, the Second Circuit does not require that a case be "exceptional" for the Court to decide summary judgment before class

---

[1]  *See, e.g., Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995) ("The bank elected to move for summary judgment before the district court decided whether to certify the suit as a class action. This is a recognized tactic, and does not seem to us improper.") (citations to *Newburg on Class Actions* and Wright & Miller's *Federal Practice and Procedure* omitted); *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92 (D.C. Cir. 2001) (explaining that nothing in Federal Rule of Civil Procedure 23(c) "suggests that a court is barred from rendering an easy decision on an individual claim to avoid an unnecessary and harder decision on the propriety of certification"); *see also id.* (explaining that, where the district court perceives fatal flaws in plaintiff's claims, deciding summary judgment first "spares both the parties and the court a needless, time-consuming inquiry into certification").

2

certification, and there are no specific factors that restrict the Court's discretion here. Instead, the Second Circuit has noted that discretion must be exercised on a case-by-case basis depending on all the facts and circumstances. *See, e.g., Christensen*, 815 F.2d at 214 ("In any particular case, [reserving decision of a certification motion pending resolution of a dispositive motion] may or may not be appropriate depending on the complexity of the legal or factual issues raised by the motion to certify.").

Plaintiffs ask this Court to apply a three-prong test culled largely from out-of-circuit cases to determine whether to exercise its discretion. *See* Plaintiffs' Opposition at 4. That test directs the Court to consider when the motion for summary judgment was first made, the likelihood of summary judgment being granted, and any prejudice to Plaintiffs. Even assuming that this were the applicable test in this Circuit, it supports Defendants' request.

Defendants moved for summary judgment as soon as they discovered the basis for Plaintiffs' ERISA claims, which showed that there was no dispute over facts that establish Defendants' entitlement to judgment as a matter of law.[2/] Defendants could not move for summary judgment sooner because Plaintiffs repeatedly amended their complaint, and refused to respond to Defendants' discovery requests until finally ordered to do so by this Court. *See* Defendants' Scheduling Motion at 4-8 (chronicling Plaintiffs' discovery abuses). During this time, Defendants did *not* know Plaintiffs' basis for claiming that Defendants' conduct amounted to an ERISA violation, because Plaintiffs kept adding and dropping allegations and theories. For example,

---

[2/]      *See* Plaintiffs' July 2003 Supplemental Responses and Objections to Defendants' Third Set of Interrogatories ("Supplemental Responses"), Response to Interrogatory No. 2 (explaining for the first time in this action how the challenged service payments could be ERISA plan assets) (Plaintiffs' Supplemental Responses are attached as Exhibit K to the Declaration of Dennis Kerrigan (Docket 145), submitted in support of Defendants' Motion (1) For Leave to Conduct Additional Class Certification Discovery, (2) To Address Outstanding Discovery Disputes, and (3) To Revise the Schedule in this Action (Dockets 143, 144) ("Scheduling Motion")); *see also* Scheduling Motion at 1, 7 (explaining how Defendants promptly moved for summary judgment after receiving the Supplemental Responses).

3

Plaintiffs have dropped their allegations that Defendants made misrepresentations and omissions, breached contracts, and improperly substituted or deleted mutual funds, and Plaintiffs were still adding their current allegations and theories when Defendants first moved for summary judgment last summer. *See* 6-7 *infra*; Plaintiffs' Motion For Leave to File Third Amended Complaint (Docket 83) at 1-2 (seeking leave to drop those allegations in April 2003). Having delayed Defendants' Summary Judgment Motion by their own maneuverings, Plaintiffs should not be permitted to insist that class certification come first.

With respect to the second prong of Plaintiffs' proposed standard, the revised summary judgment motion is likely to be granted for the simple reason that Plaintiffs cannot show that the challenged service payments involved or affected any ERISA plan assets. Even Plaintiffs concede that the issues in this case are appropriate for summary judgment. *See* Revised Memorandum in Support of Defendants' Motion For Summary Judgment (Docket 186) at 7-17; Transcript of Nov. 6 Hearing (Docket 169) at 9.

As for the third prong, deciding summary judgment first causes no prejudice to Plaintiffs, whose individual claims will have to survive a legal testing at some point in this action, whether before or after certification is resolved.[3/] On the other hand, any class certification here would needlessly bind absent class members to claims that are deficient as a matter of law. *See* Memorandum of Law supporting Defendants' Motion (Docket 190) ("Defendants' Memorandum of

---

[3/]  Plaintiffs may believe that, if a class is certified, the settlement pressure on Defendants will be so intense that a settlement can be coerced without their individual claims *ever* facing the crucible of a motion for summary judgment. *Cf. Robinson v. Metro-North Commuter Rd.*, 267 F.3d 147, 172 n.15 (2d Cir. 2001) (separate footnote of Walker, C.J.) (recognizing "the intense pressures to settle that often follow a class certification decision"); *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1297-98 (7th Cir. 1995) (discussing settlement pressures faced by defendants in certified class actions, regardless of the merits of the initial claims); *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1241 (11th Cir. 2000) (discussing the "blackmail value of a class certification that can aid the plaintiffs in coercing the defendant into a settlement"). Needless to say, the potential loss of such a strategic weapon does not amount to legally cognizable prejudice to Plaintiffs.

Law") at 9-10. Such a result would be particularly inappropriate here, where Plaintiffs have aggressively sculpted their putative class claims to conform to their own individual circumstances and theories, and abandoned claims allegedly possessed by absent class members. *See* Defendants' Opposition to Plaintiffs' First Amended Motion For Class Certification (Docket 179) at 56-58.

The Court's authority to decide summary judgment first is fully established by the pre-amendment version of Rule 23. However, as stated in Defendants' Memorandum of Law, recent amendments have replaced the phrase "as soon as practicable" with the more flexible phrase "at an early practicable time." One reason for this change, stated by the Rule 23 Advisory Committee in the comments to the amendments, is that "[t]he party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified." Advisory Committee Notes to December 1, 2003, Amendments to Federal Rule of Civil Procedure 23, Notes to Section 23(c)(1); *see also* Defendants' Memorandum of Law at 6. Plaintiffs' Opposition conveniently ignores this portion of the Advisory Committee's notes. *See* Plaintiffs' Opposition at 4-5.

## II. GOVERNING COURT ORDERS AUTHORIZE DEFENDANTS' MOTION

Plaintiffs assert that Defendants' Motion is barred by the scheduling orders in this action. However, the Magistrate Judge has already *expressly* rejected this argument, and Plaintiffs never appealed the Magistrate Judge's ruling.[4/] Nor could they, because the Magistrate Judge's ruling is entirely consistent with the prior scheduling orders and stipulations between the parties in this action. *See* Report of Parties' Rule 26(f) Planning Meeting (Docket 13) ¶ F ("The parties may file

---

[4/]   *See* September 18, 2003, Rulings Re: Scheduling and Discovery (Docket 126) ¶ 6 (observing that "defendants' summary judgment motion raises serious [merits] issues," ruling that "defendants may proceed" with that motion, and leaving it to this Court "to decide the order in which [to] rule"); Transcript of Nov. 6 Hearing (Docket 169) at 115, 132-35. *See also* Local Rule 72.2(a) ("A party may not thereafter assign as error a defect in the Magistrate Judge's order to which objection was not timely made.").

motions for summary judgment at any time."); Endorsement Order of Judge Droney dated September 11, 2002 (no docket number assigned) (denying motion to dismiss "without prejudice to the filing of a motion for summary judgment").

## III. PLAINTIFFS' CURRENT ERISA CLAIM HAS NOT BEEN LEGALLY TESTED

Plaintiffs' Opposition asserts that Defendants' Summary Judgment Motion should not be heard because their claims already survived a motion to dismiss, and the Summary Judgment Motion is a mere "reiteration" of Defendants' earlier arguments. *See* Plaintiffs' Opposition at 6-7. However, Plaintiffs do not dispute Defendants' statement that "Plaintiffs defeated [the Motion to Dismiss] on the basis of a set of legal claims and factual allegations that they have since abandoned."[5] Nor could they. The motions to dismiss addressed Plaintiffs' allegations regarding Defendants' fund selection, receipt of "undisclosed kickbacks," misrepresentations or omissions, breach of contract, and status as an investment advisor to Plaintiffs.[6] Nowhere in the extensive briefing on the motion to dismiss did Plaintiffs state or rely on their current theories and allegations concerning "fruits of plan assets," "accumulation units," or the supposed "one-to-one" relationship between the value of the accumulation units and the challenged service payments. Magistrate Judge Garfinkel himself acknowledged that Plaintiffs' present theories have not been tested, remarking "I

---

[5] Defendants' Memorandum of Law at 8. Plaintiffs argue that a section of Defendants' *reply* memorandum on the motion to dismiss cites three authorities that are also cited in a short argument -- explicitly presented "in the alternative" -- that appears near the end of Defendants' revised summary judgment memorandum. *See* Plaintiffs' Opposition at 6-7. That minor overlap does not support Plaintiffs' assertion that the summary judgment motion rehashes old issues. In fact, the motion to dismiss was denied "without prejudice to filing a motion for summary judgment," presumably based on Plaintiffs' assertion in their opposition brief that the facts would show a basis for their conclusory allegations that Defendants are ERISA fiduciaries. *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss (Docket 30) at 10-11; September 11, 2002, Endorsement Order of Judge Droney (no docket number assigned).

[6] *See generally* Pleadings on Defendants' Motion To Dismiss Plaintiffs' First Amended Class Action Complaint (Dockets 14-17 (Defendants' Motion and supporting papers), 30 (Plaintiffs' Opposition), 34 (Defendants' Reply), 46 (Plaintiffs' Response), 45 (Defendants' Sur-Reply)).

6

know there was a motion to dismiss, but that was . . . a few theories ago." Transcript of Nov. 6 Hearing (Docket 169) at 130:12-13. Plaintiffs cannot transform their individual allegations and theories long after the motion to dismiss has been resolved, rely on the new allegations and theories to seek class certification, and then insist that these new claims were tested by the motion to dismiss. *See* Defendants' Reply Memorandum in Support of Defendants' Scheduling Motion (Docket 156) at 1-11 (analyzing in detail how the "amended" responses and Plaintiffs' amended class certification motion changed the factual and legal basis of Plaintiffs' ERISA claims).

## IV.   RESOLVING SUMMARY JUDGMENT BEFORE CLASS CERTIFICATION WILL PRESERVE JUDICIAL AND PARTY RESOURCES

Defendants' Summary Judgment Motion presents a straightforward legal question based on a small universe of facts that have been asserted or admitted by Plaintiffs in this litigation. If the Court grants summary judgment, the substantial effort needed to resolve the certification motion (and the additional motions related thereto) will be saved. Even if the Court denies summary judgment, resolving that motion will streamline or clarify the issues and sharpen the Court's understanding of the facts that will be disputed at trial, which in turn will assist the Court in ruling on class certification. Those benefits are lost if the Court resolves class certification first because, however it should rule on certification, the Court will still need to resolve Defendants' Summary Judgment Motion. In these circumstances, the Court should make "an easy decision on an individual claim to avoid an unnecessary and harder decision on the propriety of certification." *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92 (D.C. Cir. 2001).

Plaintiffs make three arguments to support their claim that "judicial economy can not conceivably be served by deciding summary judgment before class certification." Plaintiffs' Opposition at 5. *First*, they contend that resolving class certification will require "very little effort on the part of the parties or the Court" so that, if summary judgment is granted, only a little effort will have been wasted. *Id.* But Plaintiffs' certification motion already involves over 100 pages of

7

briefing and well over one thousand pages of exhibits, and requires resolution of two pending motions, and may require expert testimony and a full-blown evidentiary hearing. Defendants' motion for summary judgment presents a simpler and more manageable issue to resolve.

*Second*, Plaintiffs contend that summary judgment will be burdensome to decide because it will require additional discovery. Plaintiffs' Opposition at 5-6. If Plaintiffs believe they need additional discovery to oppose summary judgment, they must submit an affidavit that meets the strict requirements of Rule 56(f) and Second Circuit law in opposition to Defendants' motion.[7] Of course, in doing so, they will find it difficult to adhere to their position that Defendants' pending Summary Judgment Motion merely rehashes the legal issues raised by Defendants' Motion to Dismiss. *See* Plaintiffs' Opposition at 6-7.

Furthermore, the additional discovery sought by Plaintiffs, *see id.* at 5-6, has no bearing on the issues raised by Defendants' Summary Judgment Motion and so could not provide a basis for delaying its resolution. *See Sage Realty Corp. v. Insurance Co. of North America*, 34 F.3d 124, 128 (2d Cir. 1994) (party may not avoid summary judgment by seeking discovery of irrelevant materials). Defendants' procedures when a mutual fund shuts down are not relevant here, where no such event has been alleged to have occurred. Plaintiffs' claim that they need discovery into this "*analogous*" situation, *see* Plaintiffs' Opposition at 6 (emphasis added), only underscores how far Plaintiffs must stretch to identify allegedly disputed facts. Plaintiffs also fail to explain how the situations are "analogous," and do not identify anything in ERISA law suggesting that these different sorts of assets would be equivalent for purposes of assessing Defendants' fiduciary status.

---

[7] *See Oneida Indian Nation of New York v. City of Sherrill, New York*, 337 F.3d 139, 167-68 (2d Cir. 2003) (Rule 56(f) affidavit must describe "(i) the information sought and how it will be obtained; (ii) how it is reasonably expected to raise a genuine issue of material fact; (iii) prior efforts to obtain the information; and (iv) why those efforts were unsuccessful").

Plaintiffs also seek discovery into whether the challenged payments "in whole or part" constitute payments for services rendered by Defendants. Plaintiffs' Opposition at 6. But Plaintiffs have already conceded that the challenged payments were in fact made in exchange for services.[8/] Furthermore, the requested discovery would still have no bearing on Defendants' Summary Judgment Motion, which is not based on the reasonableness or propriety of the payments. *See* Defendants' Local Rule 56(a)1 Statement in Support of Revised Motion for Summary Judgment (Docket 187).

*Third*, Plaintiffs contend that the Court should certify a class before reaching the individual merits so as to resolve all claims in one action "even in the unlikely event that the Court later grants summary judgment." Plaintiffs' Opposition at 8. Leaving aside the implications of Plaintiffs' eagerness to recklessly bind the absent class members to an adverse judgment, the contention that deciding certification first is necessary to avoid multiple lawsuits simply presupposes that certification will be granted. For all of the reasons stated above, deciding summary judgment first preserves judicial and party resources regardless of the ultimate disposition of this matter.

---

[8/]   *See, e.g.*, Plaintiffs' First Amended Memorandum in Support of Plaintiffs' Motion For Class Certification (Docket 129) at 7-8 (listing services provided by Defendants to mutual funds and asserting that the Defendants received overlapping compensation for providing these services); Plaintiffs' Supplemental Responses and Objections to Defendants' Second Set of Interrogatories (Exhibit J to Defendants' Scheduling Motion (Docket 144)), Response to Interrogatory No. 5 (listing services provided by Defendants to mutual funds).

9

Respectfully submitted,

Date: March 3, 2004

Defendants Nationwide Financial Services Inc. and Nationwide Life Insurance Co.

By: */s/ Sam Broderick-Sokol*

Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone:   (860) 293-3500
Facsimile:   (860) 293-3555

Eric Mogilnicki, Esq.  (CT 23053)
Sam Broderick-Sokol, Esq. (CT 25264)
Mark Bieter, Esq.
Wilmer Cutler Pickering LLP
2445 M Street, N.W.
Washington, D.C. 20037
Telephone:   (202) 663-6000
Facsimile:   (202) 663-6363

Charles C. Platt, Esq. (CT 23036)
Wilmer Cutler Pickering LLP
399 Park Avenue
New York, NY  10022
Telephone:   (212) 230-8800
Facsimile:   (212) 230-8888

## CERTIFICATION

This is to certify that true and correct copies of the foregoing Reply Memorandum in Support of Motion Requesting that the Court Decide Summary Judgment Before Deciding Class Certification were served by overnight mail on this 3rd day of March, 2004 on the following counsel of record:

>Richard A. Bieder, Esq.
>Antonio Ponvert III, Esq.
>Koskoff, Koskoff & Bieder
>350 Fairfield Avenue
>Bridgeport, CT 06604
>
>Gregory G. Jones, Esq.
>Law Firm of Gregory G. Jones, P.C.
>603 South Main Street, Suite 200
>Grapevine, TX 76051
>
>Marc R. Stanley, Esq.
>Roger L. Mandel, Esq.
>Stanley, Mandel & Iola
>3100 Monticello Avenue
>Suite 750
>Dallas, TX 75205

_____
Mark Bieter