UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Lou Haddock, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, et. al., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 01-CV-1552 (SRU) |
| Nationwide Financial Services Incorporated, and Nationwide Life Insurance Company, | § § § § § | |
| Defendants. | § | March 5, 2004 |

## **PLAINTIFFS' LOCAL RULE 56(a)2 STATEMENT**

Pursuant to Local Rule 56(a)(2), Plaintiffs file the following statement:

*I.    RESPONSE TO DEFENDANTS' LOCAL RULE 56(a)(1) STATEMENT.*

Each paragraph responds to the similarly numbered paragraph in Defendants' Local Rule 56(a)1 Statement in Support of Revised Motion for Summary Judgment [Docket No. 187]:

1. Admitted.

2. Admitted that Plaintiffs purchased variable annuity contracts from Nationwide. Denied they are "different."

3. Admitted.

4. Admitted.

5. Admitted that Plans and their Participants chose the mutual funds in which they invested. Denied that the Plans and their Participants "allocated the investment within the variable accounts to sub-accounts that were designed to purchase or sell the shares of specific mutual funds." After the Plans and their participants chose the mutual funds in which they

wished to invest, any allocations to sub-accounts corresponding to those mutual funds was made by Nationwide.

6. Admitted that "each sub-account received allocations from multiple plans and plan participants." Denied that "some sub-accounts received allocations from investors who were not members of the proposed class" as to the Nationwide Qualified Plans Variable Account in which all Plans and their participants holding group annuity contracts invested. Admitted that "some sub-accounts received allocations from investors who were not members of the proposed class" as to the Nationwide Variable Account - II in which all Plans and their participants holding individual annuity contracts invested. However, as to the Nationwide Variable Account - II, there are two sub-accounts for each of the available mutual funds, one of which contains exclusively mutual fund shares of Class members and one of which contains mutual fund shares of persons who are not Class members. The existence of sub-accounts containing mutual fund shares of persons who are not Class members is simply irrelevant to this case.

7. Admitted that "each sub-account in turn purchased or sold shares of a designated mutual fund to reflect the combined allocations by the retirement plans and their participants." Denied that each sub-account "purchased or sold shares of a designated mutual fund to reflect the combined allocations by ... the other investors in that variable account," because there are no sub-accounts which contain both shares of Class members and shares of persons who are not Class members.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Plaintiffs are without information sufficient to admit this statement, so it is denied.

15. Plaintiffs are without information sufficient to admit this statement, so it is denied.

16. Denied for two reasons. First, Defendants did not make any disclosures during parts of the Class Period. Second, Defendants have never disclosed the true nature of the revenue sharing payments.

17. Denied for three reasons. First, Plaintiffs have no knowledge of contracts between mutual fund affiliates and 401k providers other than Nationwide. Second, despite the wording of the contracts, they were not entered into for the purpose of Nationwide actually providing services to the mutual fund affiliates in return for the revenue sharing payments. Third, Nationwide did not in fact provide services to the mutual fund affiliates in return for revenue sharing payments.

18. This statement is so vague and ambiguous that Plaintiffs can neither admit or deny it.

19. Denied because the revenue sharing payments did not, in fact, constitute payments by mutual fund affiliates in return for services actually rendered by Nationwide to those affiliates.

20. Admitted that revenue sharing payments to Nationwide are based on the amounts invested in the mutual funds by the different variable accounts available through the variable annuity contracts. Denied that the revenue sharing payments constitute payment for services.

21. Denied because Plaintiffs have seen no evidence that revenue sharing payments were ever based purely on a per-account formula.

22. Plaintiffs are without sufficient information to admit this statement, so it is denied.

23. Denied for two reasons. First, Defendants did not make any disclosure during part of the Class Period. Second, Defendants have never disclosed the true nature of the revenue sharing payments.

24-32. These are not statements of fact, but rather characterizations by Nationwide of various of Plaintiffs' pleadings and discovery responses and of its own pleadings. Accordingly, they were not properly included in a Local Rule 56(a)1 Statement, and they do not require response by Plaintiffs in this Local Rule 56(a)2 Statement. Plaintiffs deny the accuracy of these characterizations, however.

## II.   STATEMENT OF GENUINE ISSUES OF MATERIAL FACT TO BE TRIED.

### A.   Issue No. 1

As to the subject matter of Nationwide's summary judgment motion, there is definitely one genuine issue of material fact to be tried:

*Whether the revenue sharing payments by the mutual funds constitute, in whole or in part, payments for services rendered by Nationwide?*

The following material facts support that there is a genuine issue of material fact that the revenue sharing payments by the mutual funds **do not** constitute, in whole or in part, payments for services rendered by Nationwide:

1. Prior to implementation of the revenue sharing scheme (approximately in November of 1995), Nationwide provided to Plans and PPA's, in return for compensation from

them, trade processing, recordkeeping, communications and distribution services from which mutual funds and/or mutual fund advisors may have incidentally benefitted, including generation of customer statements and confirmations; processing of customer transactions; handling of customer services inquiries via phone and fax; processing of payments and tax forms; distribution of checks and tax forms; processing of purchases and sales on a daily basis; calculations of unit values that take place on daily basis; share reconciliation between Nationwide's separate accounts and the funds; printing and mailing of product level and fund level prospectuses; and general administration of systems and processing in a secure environment.[1]

2.    Because it already provided these services to Plans and PPA's in return for compensation from them, prior to implementation of the revenue sharing scheme, Nationwide typically didn't receive any revenue sharing or expense reimbursement from mutual funds/mutual fund advisors, although it may have received 50 cents per month ($6.00 per year) per participant from a few funds.[2]

3.    Pricing Nationwide's services on a per participant basis made sense, because the cost associated with providing those services varies with the number of participants, not the

---

[1] 30(b)(6) Deposition of Nationwide employee William G. Goslee of February 25, 2003 ("Goslee Depo."), 72:2-74:24; 75:4-12, Confidential Appendix in Support of Plaintiffs' First Amended Motion for Class Certification ("Conf. App.") Tab K [Docket No. 137]; 30(b)(6) Deposition of Nationwide employee John M. Davis of March 10, 2003 ("Davis Depo."), 44:9-50:22; 51:21-53:21; 60:4-23 and 63:12-21, Conf. App. Tab E; 30(b)(6) Deposition of Nationwide employee John S. Bath of February 27, 2003 ("Bath Depo."), 139:19-23; 200:15-202:1; 203:8-13, Conf. App. Tab A; 30(b)(6) Deposition of Nationwide employee Steven Rose of March 17, 2003 ("Rose Depo."), 31:9-32:23 and 213:12-216:7, Conf. App. Tab F; 30(b)(6) Deposition of Nationwide employee Eric Henderson of March 18, 2003 (" Henderson Depo."), 82:6-83:20, Conf. App. Tab G; 30(b)(6) Deposition of Nationwide employee John J. Scranton of March 10, 2003 ("Scranton Depo."), 25:5-10, Conf. App. Tab H; Defendants' Local Rule 56(a)1 Statement in Support of Motion for Summary Judgment ("Statement"), ¶ 26, App. Tab 7 [Docket No. 130].

[2] Bath Depo., 115:9-117:6, Conf. App. Tab A [Docket No. 137].

amount of assets.[3]

4.  All of the revenue sharing payments are based in whole or in overwhelming part on a percentage of a Plan's investment in a mutual fund.[4]

5.  While the revenue sharing payments are described by Nationwide as reimbursements for expenses incurred in providing services to the mutual funds, those services from which mutual funds/mutual fund advisors may incidentally benefit are actually ones which Nationwide had traditionally supplied to Plans and PPA's as a necessary part of its business in return for charges collected from them, and those services did not change as a result of revenue sharing.[5]

6.  Although the description of the services Nationwide provides to Plans and PPA's from which mutual funds/mutual fund advisors may incidentally benefit varies slightly from contract to contract, the actual services are virtually identical in every case.[6]

B.  Possible Issue No. 2

Plaintiffs believe that undisputed facts should cause the Court to hold that the revenue sharing payments constitute plan assets in Nationwide's hands as a matter of law. However, at a minimum, there is a genuine issue of material fact to be tried in this regard. The material facts supporting the existence of such a genuine issue of material fact include:

---

[3] Davis Depo., 60:25-61:3, Conf. App. Tab E [Docket No. 137].

[4] Deposition Exhibit 609, Conf. App. Tab Q [Docket No. 137].

[5] Bath Depo., 139:19-23; 200:15-202:1; 203:8-13, Conf. App. Tab A [Docket No. 137]; Henderson Depo., 82:6-83:20. Conf. App. Tab G; Davis Depo., 60:4-23, Conf. App. Tab E.

[6] Goslee Depo., 72:7-74:24; 75:4-12; 83:17-84:13; 87:7-94:7; 94:10-95:2; 95:3-8; 96:15-97:25; 98:1-99:10, Conf. App. Tab K [Docket No. 137], Bath Depo., 56:20-57:11, Conf. App. Tab A; Rose Depo., 31:9-32:23, Conf. App. Tab F; Davis Depo., 44:9-45:7, Conf. App. Tab E; Henderson Depo., 81:7-82:5, Conf. App. Tab G.

1.      The revenue sharing payments would not have been made but for the Plans' investments of their assets through Nationwide's variable annuity contracts.[7]

2.      Nationwide did not contract with the Plans to receive the revenue sharing payments, despite the opportunity to do so.[8]

3.      The revenue sharing payments could be used for the benefit of the Plans and their participants rather than Nationwide.[9]

C.      Possible Issue No. 3

In addition, depending upon certain rulings by the Court, there may be a third issue of genuine material fact to be tried:

*What effect did Nationwide's receipt of the revenue sharing payments have on the value of the Plans' accumulation units?*

The following material facts support that there is a genuine issue of material fact that Nationwide's receipt of revenue sharing payments causes a decrease in the value of the Plans' accumulation units:

1.      The payment of fees by mutual funds to their investment managers/advisors which make the revenue sharing payments to Nationwide causes a decrease in the value of the Plans' accumulation units.[10]

---

[7] Deposition Exhibit 609, Conf. App. Tab Q (showing that all of the revenue sharing payments are based in whole or in overwhelming part on a percentage of a Plan's investment) [Docket No. 137].

[8] Rose Depo., 158:14-23 (group annuity contracts), Conf. App. Tab F [Docket No. 137]; Henderson Depo., 53:2-54:16 (individual annuity contracts), Conf. App. Tab G [Docket No. 137].

[9] See Depo. Exhibit 522 (¶ 4 discussing Nationwide's choice to pass through the revenue sharing payments to the Plans or simply keep them), Conf. App. Tab M [Docket No. 137]; Depo. Ex. 524 (second page, first full ¶, discussing Nationwide's choice to either pass through the revenue sharing payments to the Plans or to simply keep them to benefit its bottom line). Conf. App. Tab N [Docket No. 137].

[10] Deposition of Nationwide's expert witness Fredrick M. Werblow of August 20, 2003 ("Werblow Depo."), 42:8-43:15, Conf. App. Tab J [Docket No. 137].

2.  The amount of fees charged by an investment manager to a particular fund often determines in large part how much in revenue sharing that investment manager will pay to Nationwide in regard to that particular fund.[11]

D.  To the extent required by Local Rule 56(a)(2) and/or (3), the Statement of Facts section of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment and Revised Memorandum of Law in Support of Defendants' Motion for Summary Judgment is incorporated herein by reference as if fully set forth here verbatim. Plaintiffs believe that the vast majority of the facts set forth in the Statement of Facts are undisputed.

Respectfully submitted,

_____
Marc R. Stanley
Federal Bar No. ct18179
Roger L. Mandel
Federal Bar No. ct18180
Martin Woodward
Federal Bar No. ct25263

STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, Texas  75205
214-443-4300
214-443-0358 (Fax)

---

[11] Goslee Depo., 189:25-197:23, Conf. App. Tab K [Docket No. 137].

Antonio Ponvert, III
Federal Bar No. ct17516
Richard A. Bieder
Federal Bar No. ct04208

KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgeport, Connecticut 06604
203-336-4421
203-368-3244 (Fax)


Gregory G. Jones
Federal Bar No. ct23443

LAW FIRM OF GREGORY G. JONES PC
603 S. Main Street, Suite 200
Grapevine, Texas 76051
817-424-9001
817-424-1665 (Fax)

**PLAINTIFFS' COUNSEL**

9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing were served this ___ day of March, 2004, upon the following counsel via the methods indicated:

| | |
|---|---|
| Dennis F. Kerrigan, Jr.<br>LeBoeuf, Lamb, Greene & MacRae<br>Goodwin Square<br>225 Asylum Street<br>Hartford, CT  06103 | ☐ via certified mail, RRR<br>☐ via fax 860/293-3555<br>☐ via first-class, U.S. mail<br>☐ via overnight delivery<br>☐ via hand delivery |
| Charles C. Platt<br>Wilmer Cutler & Pickering<br>399 Park Avenue<br>New York, NY 10022 | ☐ via certified mail, RRR<br>☐ via fax 212/230-8888<br>☐ via first-class, U.S. mail<br>☐ via overnight delivery<br>☐ via hand deliver |
| Eric J. Mogilnicki<br>Wilmer Cutler & Pickering<br>2445 M Street, N.W.<br>Washington, D.C.  20037 | ☐ via certified mail, RRR<br>☐ via fax 202/663-6363<br>☐ via first-class, U.S. mail<br>☐ via overnight delivery<br>☐ via hand deliver |

ROGER L. MANDEL