UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LOU HADDOCK, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, PETER WIBERG, as trustee of the Crown Tool & Die Deferred Compensation Plan, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan, RONALD SIMON as trustee of the Hartford Roofing, Inc. Deferred Compensation Plan, CARL ANDERSON as trustee of the Anderson & Ferdon Deferred Compensation Plan,

    PLAINTIFFS,

    v.

NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,

    DEFENDANTS.

CIVIL ACTION NO.:

3:01CV1552(SRU)

March 16, 2004

## DEFENDANTS' MEMORANDUM REGARDING *IN CAMERA* DOCUMENTS

Pursuant to the Magistrate Judge's February 9, 2004 Ruling on Pending Motions (Docket 197) ("Magistrate Judge's Ruling"), Defendants Nationwide Financial Services Inc. and Nationwide Life Insurance Co. ("Defendants") hereby submit the attached privileged materials for the Magistrate Judge's *in camera* review. Defendants submit this memorandum to assist the Magistrate Judge by identifying the similarities between these documents and documents for which the Magistrate Judge has already upheld Defendants' privilege claims. However, if the Magistrate Judge has any concern with any specific privilege claim, Defendants respectfully request that they be provided an opportunity to support that specific claim.

## BACKGROUND

On June 1, 2003, the Magistrate Judge directed Plaintiffs to select 10 documents from Defendants' privilege log for *in camera* review. *See* Magistrate Judge's Discovery Rulings (Docket 96). Plaintiffs did so, and Defendants produced the documents to the Magistrate Judge. *See* Defendants' *Ex Parte* Submission of Documents Contained on Defendants' Second Amended Privilege Log Designated by Plaintiffs for The Court's *In Camera* Review Pursuant to the June 1, 2003 Discovery Ruling (June 23, 2003, no docket number assigned). After reviewing the documents, the Magistrate Judge on September 18, 2003 ordered Defendants to produce to Plaintiffs *in camera* Documents 4, 7, 8, 9, and 10 and portions of *in camera* Documents 1 and 6.[1] *See* Magistrate Judge's Rulings Re: Discovery And Scheduling (Docket 126) ("September Ruling"). The Magistrate Judge concluded that *in camera* Documents 2, 3, and 5 and portions of 1 and 6 were privileged. *Id.*

Defendants requested reconsideration of the September Ruling with regard to *in camera* Documents 1, 6, 8, and 9. *See* Motion for Reconsideration of Certain Portions of Magistrate Judge's Ruling (Docket 138). The Memorandum accompanying that Motion provided specific explanations of the relevant privilege claims, and noted similarities between those documents and documents previously found to be privileged. *See* Memorandum of Law in Support of Defendants' Motion for Reconsideration of Certain Portions of Magistrate's Ruling (Docket 139) at 4-11. On reconsideration, the Magistrate Judge reversed his prior ruling as to *in camera* Document 1 and portions of 6 and affirmed his prior ruling as to *in camera* Documents 8 and 9.

---

[1] Throughout this Memorandum, Defendants refer to the ten documents submitted June 23, 2003 as the "*in camera* Documents," and the 52 documents that accompany this Memorandum by the numbers on the April 23, 2003 and August 12, 2003 privilege logs (attached as Exhibits B (listing document numbers 1-52) and C (listing document numbers 53-90)).

2

*See* Ruling on Pending Motion for Reconsideration (Docket 196) ("Ruling on Motion for Reconsideration").

After issuing his Ruling on Motion for Reconsideration, the Magistrate Judge also ordered Defendants to: (1) disclose those documents previously reviewed *in camera* that were not subject to Defendants' Motion for Reconsideration; (2) review the remainder of the documents listed on Defendants' privilege log and produce to Plaintiffs "documents [Defendants] believe to be similar to those ordered produced ...."; and (3) produce the remainder of the privileged documents to the Magistrate Judge for *in camera* review.[2/] *See* Magistrate Judge's Ruling at 1-2. Defendants have completed their review of the documents listed on the privilege log and have produced to Plaintiffs both the seven *in camera* documents ordered to be disclosed and 53 documents (or portions thereof) listed on the privilege log that are similar to those ordered produced by the Magistrate Judge. *See* March 1, 2004 Letter From Eric Mogilnicki to Roger Mandel (Exhibit A). The parties have agreed that this production does not waive "any privilege with regard to any other document or information." Plaintiffs' Memorandum in Reply to Defendants' Memorandum in Response to Plaintiffs' Motion to Compel Production of Documents (Docket 168) at 1.

---

[2/]  The Magistrate Judge's Ruling ordered Defendants to review "the remainder of the fifty-two documents for which they assert attorney-client privilege ...." *Id.* at 1. This number appears to refer to the 52 documents on Defendants' privilege log on the date of the Magistrate Judge's June 1, 2003 ruling on Plaintiffs' Motion to Compel. However, Defendants claimed attorney-client privilege as to an additional 38 before the close of discovery in August. *See generally* Defendants' August 12, 2003 Privilege Log (Exhibit C).

Defendants assume that the Magistrate Judge intended for his order to apply to all privileged documents, and so have treated all of the privileged documents in the manner directed by the Magistrate Judge's Ruling. However, the additional number of documents involved further counseled against a detailed defense of each privilege claim unless particular documents become at issue.

3

In keeping with the Magistrate Judge's order, Defendants also herewith produce under seal to the Magistrate Judge the 52 documents (or portions thereof) which Defendants have determined are privileged in accordance with the Magistrate Judge's privilege rulings. In order to assist the Magistrate Judge's *in camera* review of these privilege determinations, Defendants have outlined those portions of documents that were redacted when produced to Plaintiffs.

## DISCUSSION

The number of documents involved here precludes a detailed explanation of every privilege claim made by Defendants. However, Defendants hereby seek to assist the Magistrate Judge by providing a brief guide that compares the attached documents to the documents already determined by the Magistrate Judge to be privileged. Documents are identified by the numbers on the April 23, 2003 and August 12, 2003 privilege logs, which are attached to this Memorandum as Exhibits B and C.

### A.     Documents Similar to *In Camera* Documents 1 and 5

The Magistrate Judge ruled that most of *in camera* Document 1, the minutes of a January 22, 1993 meeting attended by several Nationwide employees, need not be disclosed to Plaintiffs. *See* September Ruling ¶ 7(1); Ruling on Motion for Reconsideration at 2. The Magistrate Judge also ruled that the entirety of *in camera* Document 5, the minutes of two meetings with various Nationwide employees and General Counsel, were protected by the attorney-client privilege. *See* September Ruling ¶ 7(5).[3]

---

[3]     This ruling was clearly correct, because these documents contain legal advice and analysis. *See Bank Brussels Lambert v. Credit Lyonnais*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995) ("The attorney-client privilege also extends to communications between and among non-lawyer employees of the client, who make inquiries at the attorney's direction or relay the attorney's advice on legal, as opposed to business, issues to other employees."); *In re Grand Jury 90-1*, 758 F. Supp. 1411, 1413 (D. Colo. 1991) (corporate president's letter to board of directors discussing

4

Several of the privileged documents which Defendants are submitting *in camera* are, like Documents 1 and 5, minutes of meetings in which participants provided or discussed legal advice and analysis:

Document 10: These are the minutes of a June 2, 1995 meeting of the Mutual Fund Revenue Implementation Team. Defendants have produced this document to Plaintiffs, except for the first two paragraphs under the heading "Filings" on the first page. Those paragraphs discuss legal advice provided at the meeting by Brian Burke, an attorney in Compliance, *see Ex Parte* Affidavit of Steven J. Rose (June 23, 2003) (Docket 111) ¶ 6. Mr. Burke also discussed a course of legal action based on that advice. As such, the communication is clearly privileged.

Document 11: These are the minutes of the May 12, 1995 meeting of the Mutual Fund Revenue Implementation Team. Defendants have produced this document to Plaintiffs, except for one sentence containing legal advice from attorneys in the Compliance Office.

Document 36: This email contains notes from a July 18, 1995 meeting of the Mutual Fund Revenue Implementation Team. Defendants have produced this document to Plaintiffs, except for a portion of one sentence in the first paragraph under "Compliance Activity." That portion contains a legal conclusion reached by attorneys in the Compliance Office about a state's laws on the filing of annuity contracts.

Document 37: This email summarizes meetings on various issues. Defendants have produced this document to Plaintiffs, except for one sentence that discusses legal analysis regarding annuity contracts and repeats a legal conclusion reached by counsel.

---

legal advice given by attorney was protected from disclosure to grand jury; corporation was client, and the president relayed information to the board as means of "making advice available" to the corporation).

Document 65: These are the minutes of the October 26, 1993 meeting of the Pensions Management Team. Defendants have produced this document to Plaintiffs, except for three portions on N 015297. The first contains a summary of advice from General Counsel on a legal matter. The second discusses a course of legal action pursued by General Counsel. The third summarizes consideration of this course of legal action and is protected under the same analysis applied to Documents 60, 61, 63, 66, 67, 68, 71, and 78, discussed in section C, *infra*.

Document 69: These are the minutes of a January 3, 1994 meeting of the Pensions Management Team. Defendants have produced this document to Plaintiffs, except for four portions. The first portion summarizes legal advice General Counsel provided one of the participants. The second and fourth portions summarize consideration of a course of legal action and are protected under the same analysis applied to Documents 60, 61, 63, 66, 67, 68, 71, and 78, discussed in section C, *infra*. The third portion discusses the General Counsel's analysis of a court case and its applicability to Nationwide's activities.

Document 70: These minutes summarize the January 17, 1994 meeting of the Pensions Management Team. Defendants have produced this document to Plaintiffs except for three portions. The first contains a summary of legal advice given by Jan Henderson, an attorney in the Compliance Office. *See* Affidavit of Thomas Barnes, Esq. (April 30, 2003) (Docket 91) ¶ 6. The second and third portions summarize consideration of a course of legal action and are protected under the same analysis applied to Documents 60, 61, 63, 66, 67, 68, 71, and 78, discussed in section C, *infra*.

Document 74: These are the minutes of a June 2, 1994 meeting of the Pensions Management Team. Defendants have produced this document to Plaintiffs except for one

6

sentence on the second page (N 015331). The sentence contains a summary of a request for legal advice from Attorney Jan Henderson.

Document 85: This email contains the minutes of a September 22, 1995 meeting of the Pensions Management Team. Defendants have produced this document to Plaintiffs, except for three sentences on the final page of the document, N 015541. This portion provides legal analysis of a state law and its applicability to Defendants' practices.

### B. Document Similar to *In Camera* Document 2

The Magistrate Judge ruled that the attorney-client privilege applied to the entirety of *in camera* Document 2, an April 15, 1993 memorandum from John Williams. *See* September Ruling ¶ 7(2). *In camera* Document 2 contains summaries of legal analysis provided by Thomas Barnes, Associate General Counsel for both Defendants. *See Ex Parte* Affidavit of Thomas E. Barnes, Esq. (June 23, 2003) (Docket 111) ("Barnes Aff.") ¶ 1.

Document 89, a memorandum from the Mutual Fund Revenue Implementation Team, was produced to Plaintiffs except for one portion on the first page. This passage summarizes a course of legal action recommended by the Compliance Office and is protected by the attorney-client privilege under the same analysis the Magistrate Judge applied to *in camera* Document 2.

### C. Documents Similar to Portions of *In Camera* Document 6 Ruled Privileged

The Magistrate Judge ruled that the attorney-client privilege applied to most of *in camera* Document 6.[4] *In camera* Document 6 (N 013810-16) is a November 17, 1993 memorandum

---

[4] *See* September Ruling ¶7(6); Ruling on Motion for Reconsideration at 2. In his September Ruling, the Magistrate Judge concluded that *in camera* Document 6 need not be disclosed from the second sentence of the fifth paragraph (at N 013811) through the remainder of the document. Defendants sought reconsideration of that ruling to the extent it required production of paragraphs 2-5. On reconsideration, the Magistrate Judge ruled that "the Court still disagrees with Defendants with respect to the third paragraph and the first sentence of the

7

from the Pensions Management Team to senior Nationwide Life executives. *See* Barnes Aff. ¶¶ 21-22. The document contains discussions of legal analysis on a particular topic. The following documents contain legal advice and analysis that are identical, or almost identical, to those portions of *in camera* Document 6 the Magistrate Judge ruled privileged.

Document 20: This November 2, 1993 memorandum from Steve Rose discusses legal options similar to those provided regarding the topic of *in camera* Document 6.

Document 27: This April 23, 1993 memorandum from John Williams to Associate General Counsel Thomas Barnes contains four specific requests for follow-up legal advice related to a confidential April 20, 1993 memorandum by Mr. Barnes (Document 28, discussed in section D, *infra*).

Document 29: This April 19, 1993 memorandum by John Williams is similar to those portions of *in camera* Document 6 ruled privileged by the Magistrate Judge. Moreover, the document contains responses to questions raised in *in camera* Document 2 (Mr. Williams's April 15, 1993 memorandum), which the Magistrate Judge found to be privileged. *See* September Ruling ¶ 7(2).

Document 31: This document, another memorandum by John Williams, discusses a request for information from Associate General Counsel Thomas Barnes regarding the provision of legal advice on the topic of *in camera* Document 6. This document also follows up on matters contained in *in camera* Document 2, which the Magistrate Judge found to be privileged.

---

fifth paragraph." *Id.* Accordingly, Defendants have produced to Plaintiffs those two additional portions of *in camera* Document 6. However, there is some remaining ambiguity because the Magistrate Judge also ruled that "Defendants need not disclose part of the second and fourth paragraphs." *Id.* In the absence of specific instructions otherwise, Defendants have understood the ruling as a whole to require disclosure only of the third paragraph and the first sentence of the fifth paragraph. Defendants respectfully reserve their right to object to a subsequent order requiring disclosure of any portion of the second and fourth paragraphs.

Documents 34, 55, 56, 57: The redacted portions of each of these documents are identical and contain language that repeats the legal analysis provided in the privileged portion of *in camera* Document 6.

Documents 38, 43, 44, 59, 62, 64: Defendants have produced these document to Plaintiffs, except for small redacted portions that contain legal analysis related to the topic of the privileged portion of *in camera* Document 6.

Document 48: This is an outline related to the Mutual Fund Revenue Project, *see* April 23, 2003 Privilege Log (Exhibit B) at 14. The document contains legal analysis with language almost identical to portions of *in camera* Document 6 ruled privileged by the Magistrate Judge.

Document 54: This is a memorandum titled "401(k) Situational Analysis." The second redacted portion contains legal analysis related to the topic of *in camera* Document 6. The remaining redacted portions contain legal analysis that should be protected by the privilege under the reasoning that the Magistrate Judge applied to the privileged portions of *in camera* Document 6.

Documents 60, 61, 63, 66, 67, 68, 71, 78: Defendants produced these documents to Plaintiffs except for small portions. Those small portions mention the consideration of a particular course of legal action related to the topic of *in camera* Document 6. Plaintiffs are not entitled to know courses of legal action considered by Defendants in consultation with their counsel, and so these brief passages are protected by the attorney-client privilege.

Document 76: This document, a March 15, 1993 memorandum from John Williams, contains a summary of discussions with General Counsel regarding the pursuit of a course of legal action related to the topic of the privileged portion of *in camera* Document 6.

Document 77: This document is another memorandum from John Williams that contains a summary of legal advice given by Joe Rath, an attorney in the Office of General Counsel. *See* Barnes Aff. ¶ 10. The legal advice relates to the subject of the privileged portion of *in camera* Document 6.

Document 87: This document was produced to Defendants with the exception of a portion of one sentence on the last page (N 015564). That portion summarizes the legal advice on the topic of the privileged portion of *in camera* Document 6.

D.     **Confidential Attorney Memoranda**

A number of documents in the privilege log are memoranda authored by an attorney offering legal advice and analysis. The applicability of the attorney-client privilege to these memoranda is apparent from their headings and opening sentences, and no further analysis is necessary or appropriate. *Cf. United States v. Zolin*, 491 U.S. 554, 570-71 (1989) (quoting *United States v. Reynolds*, 345 U.S. 1, 8 (1953)) ("Too much judicial inquiry into the claim of privilege would force disclosure of the thing the privilege was meant to protect ....").

Documents 14, 16, 17, 19, 21, 23, 24, 28, 32, 49, 50: These documents are all legal memoranda written by Associate General Counsel Thomas Barnes analyzing a variety of legal topics. Most of the memoranda are marked "Privileged and Confidential." Most also make clear from the first sentence that their purpose is to provide confidential legal advice. Document 14, for example, begins with Mr. Barnes providing legal arguments regarding a topic raised at a meeting earlier that day. The first sentence of Document 16 similarly indicates that the memorandum will provide advice on particular legal matters.

Document 18: This is a letter from Associate General Counsel Thomas Barnes to outside counsel discussing legal analysis related to a draft document. The letter and draft documents are

10

protected by the privilege. *See Royal Surplus Lines Ins. Co. v. Sofamor Danek Group, Inc.*, 190 F.R.D. 505, 511 (W.D. Tenn. 1999) (attorney-client privilege applies to memorandum and draft agreement prepared by outside counsel).

Documents 51, 52, 88: These documents are memoranda authored by in-house attorneys providing legal advice. For example, Document 51 is a February 17, 1997 memorandum from Jeanne Griffin from the Office of General Counsel marked "Privileged and Confidential." The memorandum discusses legal matters related to the receipt of mutual fund revenue and attaches several confidential legal memoranda from Thomas Barnes (Documents 14, 16, 49, and 50 identified at 10, *supra*).

Respectfully submitted,

Date: March 16, 2004

Defendants, Nationwide Financial Services Inc.
and Nationwide Life Insurance Co.

By: /s/ Eric Mogilnicki / MB

Eric Mogilnicki, Esq.
Samuel Broderick-Sokol, Esq.
Mark Bieter, Esq.
Wilmer Cutler Pickering LLP
2445 M Street, N.W.
Washington, D.C. 20037
Telephone:    (202) 663-6000
Facsimile:    (202) 663-6363

Charles C. Platt, Esq. (CT 23036)
Wilmer Cutler Pickering LLP
399 Park Avenue
New York, NY 10022
New York, NY 10019-5389
Telephone:    (212) 230-8800
Facsimile:    (212) 230-8888

Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone:    (860) 293-3500
Facsimile:    (860) 293-3555

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing Defendants' Memorandum Regarding *In Camera* Documents was served by overnight mail on this 15th day of March, 2004, on the following counsel of record:

>Richard A. Bieder, Esq.
>Antonio Ponvert III, Esq.
>Koskoff, Koskoff & Bieder
>350 Fairfield Avenue
>Bridgeport, CT 06604
>
>Gregory G. Jones, Esq.
>Law Firm of Gregory G. Jones, P.C.
>603 South Main Street, Suite 200
>Grapevine, TX 76051
>
>Marc R. Stanley, Esq.
>Roger L. Mandel, Esq.
>Stanley, Mandel & Iola
>3100 Monticello Avenue
>Suite 750
>Dallas, TX 75205

_____
Mark Bieter