UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, PETER WIBERG, as trustee of the Crown Tool & Die Deferred Compensation Plan, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan, RONALD SIMON as trustee of the Hartford Roofing, Inc. Deferred Compensation Plan, CARL ANDERSON as trustee of the Anderson & Ferdon Deferred Compensation Plan,<br><br>PLAINTIFFS,<br><br>v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,<br><br>DEFENDANTS. | CIVIL ACTION NO.:<br><br>3:01CV1552(SRU)<br><br><br>April 2, 2004 |

## DEFENDANTS' REPLY TO PLAINTIFFS' LOCAL RULE 56(a)2 STATEMENT

Defendants Nationwide Financial Services, Inc. ("Nationwide Financial") and Nationwide Life Insurance Company ("Nationwide Life") (collectively, "Nationwide" or "Defendants") respectfully submit this Reply to Plaintiffs' Local Rule 56(a)2 Statement (Docket 207) ("56(a)2 Statement"). In their 56(a)2 Statement, Plaintiffs have denied numerous statements of fact that are supported by their previous admissions and by the relevant documents. Defendants submit this Reply to highlight and correct Plaintiffs' denials. For the Court's convenience, Plaintiffs include the entirety of Defendants' original statement and Plaintiffs' response, and demonstrate, where necessary, that there is no genuine factual dispute.

### The Retirement Plans' Investment in the Variable Annuity Contracts

1. The five Plaintiffs in this case purport to be trustees of "participant directed 401(k) savings-for-retirement plan[s]." *See* Plaintiffs' Third Amended Class Action Complaint (Docket 95) ("Third Am. Compl.") ¶¶ 13-17; Plaintiffs' First Amended Memorandum In Support Of Plaintiffs' First Amended Motion For Class Certification (Docket 129) ("Plaintiffs' Class Certification Memorandum") at 1.

**Plaintiffs' Response:** *Admitted.*

2. These five retirement plans and their participants allegedly purchased different variable annuity contracts from Nationwide Life. *See* Plaintiffs' Class Certification Memorandum at 1; Flyte Tool & Die Company, Inc. 401(k) Profit Sharing Plan Variable Annuity Contract (Jan. 6, 1993) ("Flyte Tool Contract") (Ex. 1(A)); Crown Tool & Die Co., Inc. Salary Deferral Profit Sharing Plan Variable Annuity Contract (May 22, 1992) ("Crown Tool Contract") (Ex. 1(B)); The Hartford Roofing Company Profit Sharing Plan Variable Annuity Contract (Jan. 10, 1996) ("Hartford Roofing Contract") (Ex. 1(C)); Carl D. Anderson & Associates, Inc. 401(k) Profit Sharing Plan Variable Annuity Contract ("Anderson Contract") (Ex. 2(1), 2(2)); The Greater Hartford Easter Seal Rehabilitation Center Tax Sheltered Annuity Plan Variable Annuity Contract ("Easter Seal Contract") (Ex. 2(3), 2(4)).

**Plaintiffs' Response:** *Admitted that Plaintiffs purchased variable annuity contracts from Nationwide. Denied they are "different."*

**Defendants' Reply:** **Plaintiffs' variable annuity contracts differed from each other, as Plaintiffs acknowledge in their opposition memorandum.** *See* **Pls.' Opp at 3-4, 9. Most fundamentally, three of the Plaintiff plans purchased group variable**

2

annuity contracts and two purchased individual annuity contracts. *Compare* **Flyte Tool Contract (Ex. 1(A))**[1] *with* **Anderson Contract (Ex. 2(1)). The group and individual contracts contained different provisions, charges, and investment options.** *See id.* **at N 028, N 073. The Plaintiffs' contracts also offered different mutual funds for investment.** *Compare, e.g.,* **Crown Tool Contract (Ex. 1(B)) at N 001 (listing 16 funds for participant selection)** *with* **Hartford Roofing Contract (Ex. 1(C)) (listing 39 funds for participant selection). The contracts also contained different charges.** *Compare, e.g.,* **Flyte Tool Contract (Ex. 1(A)) at N 025** *with* **Crown Tool Contract (Ex. 1(B)) at N 003.**

    3.    The variable annuity contracts provided a variety of different benefits to the retirement plans, including the opportunity for the plans and their participants to invest money in variable accounts that in turn invested in a variety of different mutual funds. *See* Plaintiffs' Class Certification Memorandum at 3; Declaration of Gary Berndt ("Berndt Decl.") ¶¶ 3, 4, 7; Flyte Tool Contract (Ex. 1(A)) at N 028; Crown Tool Contract (Ex. 1(B)) at N 006; Hartford Roofing Contract (Ex. 1(C)) at N 053; Anderson Contract (Ex. 2(1)) at N 081; Easter Seal Contract (Ex. 2(4)) at N 325.

    <u>**Plaintiffs' Response:**</u> *Admitted.*

    4.    The five retirement plans and their participants invested money at various times in these variable accounts. *See* Class Certification Memorandum at 5; Third Am. Compl. ¶¶ 13-17 (alleging that various plan participants "and the plan sponsor funded" variable accounts).

---

[1]    All exhibit numbers used in this Reply refer to those used in Defendants' Revised Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Docket 186).

**Plaintiffs' Response:** *Admitted.*

5.  When the plans and their participants invested in the variable accounts, they allocated the investment within the variable accounts to sub-accounts that were designed to purchase or sell the shares of specific mutual funds. *See* Plaintiffs' Class Certification Memorandum at 5; Berndt Decl. ¶¶ 6-7; Easter Seal Contract (Ex. 2(4)) at N 325 ("The Variable Account is divided into Sub-Accounts which invest in shares of mutual funds. Purchase payments are allocated among one or more of these Sub-Accounts, as designated by the owner."); Anderson Contract (Ex. 2(1)) at N 081; Flyte Tool Contract (Ex. 1(A)) at N 028; Crown Tool Contract (Ex. 1(B)) at N 006; Hartford Roofing Contract (Ex. 1(C)) at N 053.

**Plaintiffs' Response:** *Admitted that Plans and their Participants chose the mutual funds in which they invested. Denied that the Plans and their Participants "allocated the investment within the variable accounts to sub-accounts that were designed to purchase or sell the shares of specific mutual funds." After the Plans and their participants chose the mutual funds in which they wished to invest, any allocations to sub-accounts corresponding to those mutual funds was made by Nationwide.*

**Defendants' Reply: In their class certification memorandum, Plaintiffs stated, "Pursuant to their contracts, *participants allocate* their contributions ... to particular sub-accounts within the variable accounts which correspond to particular mutual funds." Plaintiffs' Class Certification Memorandum at 5 (emphasis added).**

6.  Each sub-account received allocations from multiple plans and plan participants, and some sub-accounts received allocations from investors who were not members of the proposed class. *See* Berndt Decl. ¶¶ 5-6; Easter Seal Contract (Ex. 2(3))

4

at N 272 ("There are two sub-accounts within the Variable Account for each of the Mutual Funds which may be designated by the Contract Owner. One such sub-account contains the Mutual Funds shares attributable to Accumulation Units under Qualified Contracts and one such sub-account contains the Mutual Funds shares attributable to Accumulation Units under Non-Qualified Contracts.").

**Plaintiffs' Response:** *Admitted that "each sub-account received allocations from multiple plans and plan participants." Denied that "some sub-accounts received allocations from investors who were not members of the proposed class" as to Nationwide Qualified Plans Variable Account in which all Plans and their participants holding group annuity contracts invested. Admitted that "some sub-accounts received allocations from investors who were not members of the proposed class" as to the Nationwide Variable Account - II in which all Plans and their participants holding individual annuity contracts invested. However, as to the Nationwide Variable Account - II, there are two sub-accounts for each of the available mutual funds, one of which contains exclusively mutual fund shares of Class members and one of which contains mutual fund shares of persons who are not Class members. The existence of sub-accounts containing mutual fund shares of persons who are not class members is simply irrelevant to this case.*

**Defendants' Reply:** As the individual contracts demonstrate, the only segregation of assets within the Nationwide Variable Account - II is made according to whether the participant receives favorable tax treatment from the IRS. *See* Easter Seal Contract (Ex. 2(4)) at N 272. Thus, the sub-account for tax-favored investments was not limited to pension plans covered by ERISA.

5

7. Each sub-account in turn purchased or sold shares of a designated mutual fund to reflect the combined allocations by the retirement plans and their participants (as well as all the other investors in that variable account). *See* Plaintiffs' Class Certification Memorandum at 5-6; Berndt Decl. ¶ 7; Easter Seal Contract (Ex. 2(4)) at N 325-326; Anderson Contract (Ex. 2(1)) at N 081-82; Flyte Tool Contract (Ex. 1(A)) at N 030; Crown Tool Contract (Ex. 1(B)) at N 09; Hartford Roofing Contract (Ex. 1(C)) at N 055.

**Plaintiffs' Response:** *Admitted that "each sub-account in turn purchased or sold shares of a designated mutual fund to reflect the combined allocations by the retirement plans and their participants." Denied that each sub-account "purchased or sold shares of a designated mutual fund to reflect the combined allocations by ... the other investors in that variable account," because there are no sub-accounts which contain both shares of Class members and shares of persons who are not Class members.*

**Defendants' Reply:** **Plaintiffs are incorrect for the same reason provided in Defendants' Reply to ¶ 6.**

8. When mutual funds received funds from the sub-accounts, those funds were pooled with funds from other investors who are not part of the putative class and became assets of the mutual funds. *See* Declaration of William Goslee ("Goslee Decl.") ¶ 7; Study of 401(k) Plan Fees and Expenses (Ex. 1 to Plaintiffs' Class Certification Memorandum) § 2.4.1 (noting that mutual funds consist of "pools" of cash and other assets and investments and that shareholders possess "an undivided common interest in the pool of investments"); Dreyfus Stock Index Fund Prospectus (May 1, 2001) (Ex. 6) at N 004705 ("This fund is a mutual fund: a pooled investment that is professionally managed and gives you the opportunity to participate in financial markets.").

**Plaintiffs' Response:** *Admitted.*

### The Variable Accounts and Accumulation Units

9.    The mutual fund shares purchased by the sub-accounts are assets of the variable accounts. *See* Berndt Decl. ¶ 9; Statement of Additional Information Deferred Variable Annuity Contracts Issued by Nationwide Life Insurance Company Through its Nationwide Variable Account - II ("Variable Account - II SAI") (May 1, 1999) (Ex. 3) at N 014083-85; Variable Account - II SAI (May 1, 1998) (Ex. 4) at N 014028-30; Variable Account - II SAI (December 23, 1996) (Ex. 5) at N 013945-46.

**Plaintiffs' Response:** *Admitted.*

10.    The variable accounts allocated "accumulation units" to the plans and their participants that reflected the amount of money that the plans and their participants invested in the variable account. *See* Plaintiffs' Class Certification Memorandum at 5; Berndt Decl. ¶ 8; Flyte Tool Contract (Ex. 1(A)) at N 027-29; Crown Tool Contract (Ex. 1(B)) at N 006-8; Hartford Roofing Contract (Ex. 1(C)) at N 052-54; Anderson Contract (Ex. 2(1)) at N 081; Easter Seal Contract (Ex. 2(4)) at N 325.

**Plaintiffs' Response:** *Admitted.*

11.    The mutual fund shares were not plan assets owned by the retirement plans or their participants. *See* Plaintiffs' Class Certification Memorandum at 5 (stating that the accumulation units "constitute plan assets"); Transcript of November 6, 2003 Hearing (Docket 169) ("Nov. 6 Tr.") at 47:2-3 ("We concede that the dollars in the hands of the mutual funds are not plan assets ...."); Trust Financial Report, The Hartford Roofing Company 401(k) Profit Sharing Plan (1997) (Ex. 7) at HR00545 (showing plan assets invested in Nationwide Life Insurance Company and not individual mutual funds);

7

Trust Financial Report for 1998, Crown Tool & Die Co., Inc. (Ex. 8) at NP05023 (same); Deposition Transcript of Edward Kaplan (March 11, 2003) (portions attached as Ex. 17) at 195:5-18.

**Plaintiffs' Response:** *Admitted.*

### The Service Payments Received By Defendants

12.     The mutual funds entered into contracts with various service providers to provide investment, administrative, and other services for the mutual funds. *See* Plaintiffs' Class Certification Memorandum at 6; Goslee Decl. ¶ 4; Fidelity Variable Insurance Products Service Class Fund Prospectus (April 30, 2001) (Ex. 9) at N 003960.

**Plaintiffs' Response:** *Admitted.*

13.     Some of these service providers were affiliated with the mutual funds. *See* Goslee Decl. ¶ 4; *See* Fidelity Variable Insurance Products Fund Prospectus (April 30, 2001) (Ex. 9) at N 003958.

**Plaintiffs' Response:** *Admitted.*

14.     Each mutual fund paid for those services out of fees that were fully disclosed in the mutual funds' prospectuses and applicable to all investors. *See* Plaintiffs' Class Certification Memorandum at 6; Goslee Decl. ¶ 3, 8-9; Fidelity Variable Insurance Products Fund Prospectus (April 30, 2001) (Ex. 9) at N 003960; Dreyfus Stock Index Fund Prospectus (May 1, 2001) (Ex. 6) at N 004707; Janus Aspen Series Prospectus (May 1, 2001) (Ex. 10) at N 004387.

**Plaintiffs' Response:** *Plaintiffs are without information sufficient to admit this statement, so it is denied.*

**Defendants' Reply:** **Defendants have pointed Plaintiffs to four separate disclosure documents that demonstrate the disclosure of this arrangement.**

15. The mutual funds fully disclosed that their affiliates might be paying fees for services to insurance companies. *See, e.g.,* Fidelity Variable Insurance Products Fund Prospectus (April 30, 2001) (Ex. 9) at N 003960; Dreyfus Stock Index Fund Prospectus (May 1, 2001) (Ex. 6) at N 004707; Janus Aspen Series Prospectus (May 1, 2001) (Ex. 10) at N 004387; *see also* Goslee Decl. ¶ 11.

**Plaintiffs' Response:** *Plaintiffs are without sufficient information to admit this statement, so it is denied.*

**Defendants' Reply:** **Defendants refer to their reply to ¶ 14.**

16. Defendants disclosed that they or their affiliated entities might receive such payments. *See* The Best of America Retirement Advisor Group Variable Annuity Contract Profile (Ex. 11) at N 011139; 1998 Variable Account - II SAI (Ex. 4) at N 014024 ("The Company, or affiliates of the Company, may have entered into agreements with either the investment adviser or distributor for several of the underlying Mutual Funds. The agreements relate to administrative services furnished by the Company or an affiliate of the Company and provide for an annual fee based on the average aggregate net assets of the Variable Account ... invested in particular underlying mutual funds."); 1997 Annual Report of Nationwide Variable Account - II (Ex. 12) at 21 (Nationwide Life "performs various services on behalf of the Mutual Fund Companies in which the [variable account] invests and may receive fees for the services performed. These services include, among other things, shareholder communications, preparation, postage,