UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, PETER WIBERG, as trustee of the Crown Tool & Die Deferred Compensation Plan, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan, RONALD SIMON as trustee of the Hartford Roofing, Inc. Deferred Compensation Plan, CARL ANDERSON as trustee of the Anderson & Ferdon Deferred Compensation Plan, <br><br>    PLAINTIFFS, <br><br> v. <br><br> NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO., <br><br>    DEFENDANTS. | CIVIL ACTION NO.: <br><br> 3:01CV1552(SRU) <br><br><br> April 2, 2004 |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**

# TABLE OF CONTENTS

    Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 2

I.    PLAINTIFFS HAVE NOT RAISED A GENUINE ISSUE OF DISPUTED FACT ......... 2

II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT UNDER PLAINTIFFS' "FRUITS OF PLAN ASSETS" AND ACCUMULATION UNIT THEORIES ................................................................................................................... 7

    A.   Plaintiffs Have Abandoned Their "Fruits of Plan Assets" Theory ........................ 7

    B.   Plaintiffs' Argument That Accumulation Units Were Diminished Does State Claim Under ERISA ................................................................................. 8

III.  PLAINTIFFS' NEW "FUNCTIONAL APPROACH" THEORY OF ERISA LIABILITY DOES NOT PREVENT SUMMARY JUDGMENT ................................... 11

    A.   Plaintiffs' Functional Approach Does Not Prevent Summary Judgment .......... 12

    B.   A Functional Approach Does Not Eliminate the ERISA Elements of Fiduciary Duty and Plan Assets ........................................................................ 15

    C.   The Department of Labor Recognizes That A Party Does Not Violate ERISA Merely By Receiving Payments ............................................................ 17

IV.  PLAINTIFFS' SUMMARY JUDGMENT ARGUMENTS ARE INCONSISTENT WITH THEIR CLASS CERTIFICATION ARGUMENTS. ............... 18

    A.   The Functional Approach and Tracing of Assets ............................................... 19

    B.   Plaintiffs' Contract Arguments And Defendants' Provision of Services .......... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

Acosta v. Pacific Enterprises,
950 F.2d 611 (9th Cir. 1991) ...... 16

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ...... 4

Bannistor v. Ullman,
287 F.3d 394 (5th Cir. 2002) ...... 16

Board of Trustees of Airconditioning and Refrigeration Industry Health and Welfare
Trust Fund v. J.R.D. Mechanical Services, Inc., 99 F. Supp. 2d 1115 (C.D. Cal. 1999) ...... 16

Brandt v. Grounds,
687 F.2d 895 (7th Cir. 1982) ...... 13

Burlington Coat Factory Warehouse Corp. v. Esprit de Corp,
769 F.2d 919 (2d Cir. 1985) ...... 6

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ...... 5

Coleman v. Nationwide Life Insurance Co.,
969 F.2d 54 (4th Cir. 1992) ...... 9, 14, 15

Cruz v. American Airlines, Inc.,
356 F.3d 320 (D.C. Cir. 2004) ...... 19

D'Amasco & Assocs. 401(k) Profit Sharing Plan v. Manufacturers Life Ins. Co., No. C
99-2135 CRB, 1999 US Dist. LEXIS 13654 (N.D. Cal. August 20, 1999) ...... 18

Eckelkamp v. Beste, 201 F. Supp. 2d 1012 (E.D. Mo. 2002) ...... 14

First National Bank of Arizona v. Cities Service Co.,
391 U.S. 253 (1968) ...... 6, 11, 13

Flanigan v. General Electric Co.,
242 F.3d 78 (2d Cir. 2001) ...... 14

Friend v. Sanwa Bank California,
35 F.3d 466 (9th Cir. 1994) ...... 10, 14

Johnson v. Georgia-Pacific Corp.,
19 F.3d 1184 (11th Cir. 1994) ................................................................................................9, 15

Kerzer v. Kingly Manufacturing,
156 F.3d 396 (2d Cir. 1998)...............................................................................................................7

LoPresti v. Terwilliger,
126 F.3d 34 (2d Cir. 1997)...............................................................................................................16

Massachusetts Mutual Life Insurance Co. v. Russell,
473 U.S. 134 (1985)...........................................................................................................................15

Patelco Credit Union v. Sahni,
262 F.3d 897 (9th Cir. 2001) .........................................................................................................17

Pension Fund-Mid Jersey Trucking Industry--Local 701 v. Omni Funding Group,
731 F. Supp. 161 (D.N.J. 1990) ....................................................................................................14

Reich v. Goldstein,
839 F. Supp. 1068 (S.D.N.Y. 1993)..............................................................................................16

Robinson v. Metro-North Commuter Railroad Co.,
267 F.3d 147 (2d Cir. 2001).............................................................................................................20

United States v. Glick,
142 F.3d 520 (2d Cir. 1198)............................................................................................................16

United States v. Grizzle,
933 F.2d 943 (11th Cir. 1991) ........................................................................................................16

United States v. Labarba,
129 F.3d 81 (2d Cir. 1997)..............................................................................................................16

Unterberg Harris Private Equity Partners, L.P. v. Xerox Corp.,
995 F. Supp. 437 (S.D.N.Y. 1998) ..................................................................................................6

### DOCKETED CASES

Edgington v. R.G. Dickinson & Co.,
No. 90-1274-C, 1992 WL 223822 (D. Kan. Aug. 7, 1992)......................................................19

### STATUTES

Fed. R. Civ. P. 23(b)(3).....................................................................................................................22

Defendants respectfully submit this Reply Memorandum in Support of Defendants' Motion for Summary Judgment (Docket 116), and in response to Plaintiffs' Opposition thereto (Docket 205) ("Pls.' Opp.").

## INTRODUCTION

Plaintiffs allege that Defendants became ERISA fiduciaries, and violated ERISA, when Defendants received payments pursuant to contracts with mutual funds and fund affiliates. However, it is undisputed that these payments were made from assets of the funds and affiliates, and *not* from Plaintiffs' plan assets. *See* Transcript of November 6, 2003, Hearing (Docket 169) at 47:2-3 ("We concede that the dollars in the hands of the mutual funds are not plan assets."). Plaintiffs have also explicitly renounced any intention of showing that these payments can be traced back to their plan assets. These undisputed facts entitle Defendants to summary judgment because Plaintiffs cannot establish that Defendants received any relevant "plan assets," as they must to prove their ERISA claim.

Plaintiffs argue in their Opposition that there are issues of fact that require further discovery. But Plaintiffs do not dispute the key material facts recited above that are dispositive. To the extent that Plaintiffs' Local Rule 56(a)2 Statement fails to admit Defendants' other background facts, it raises only issues that are not material to summary judgment (and does so mostly by contradicting Plaintiffs' own prior statements and admissions).

Plaintiffs also argue that Defendants' motion unfairly limits the ERISA plan assets at issue. To the contrary, Defendants' motion deals directly with the theories of plan assets that are set forth in Plaintiffs' most recent interrogatory answers and class certification motion—*i.e.* that the payments are "fruits of plan assets" or somehow harmed the accumulation units. Rather than addressing Defendants' dispositive arguments regarding those theories, Plaintiffs have instead

added their "fruits of plan assets" argument to their growing discard pile in this case, and now rely on a new theory that they label a "functional approach" to ERISA plan assets. But this new story, which bears no relation to Plaintiffs' allegations in their class certification motion and their interrogatory answers, fares no better than the old one in trying to convert third-party assets into plan assets.

In addition to rebutting Plaintiffs' new theory and demonstrating why Defendants are entitled to judgment as a matter of law, this Memorandum also explains the substantial differences between the legal theories on which Plaintiffs oppose summary judgment and those on which they seek class certification. If the Court is not persuaded that summary judgment is appropriate, and proceeds to evaluate Plaintiffs' motion for class certification, it should require Plaintiffs to amend their class certification papers so that they are consistent with the grounds on which Plaintiffs would have avoided judgment as a matter of law.

## ARGUMENT

### I.     PLAINTIFFS HAVE NOT RAISED A GENUINE ISSUE OF DISPUTED FACT

Plaintiffs' Opposition concedes that Defendants are not traditional ERISA fiduciaries; their claim instead is that Defendants became ERISA fiduciaries and violated their ERISA fiduciary duties by receiving payments that Plaintiffs characterize as "plan assets." Plaintiffs do not dispute that these payments were made with assets belonging to fund service providers or affiliates or, in some cases, the funds, and not from any assets that belonged to the Plaintiffs or the Plans.[1] See Pls.' Opp. at 6 (a fund pays advisors and service providers "out of its general

---

[1]     As described in Defendants' opposition to Plaintiffs' motion for class certification, the payments that are the subject of Plaintiffs' ERISA claim were made and received by many different entities. Defendants will use the term "fund affiliates" to refer to the mutual fund advisors, service providers, and affiliates who make these payments, and the term "fund assets" to describe assets belonging to the mutual funds, fund affiliates, or non-affiliated service

assets"); *see also* Local Rule 56(a)2 Statement (Docket 207) ("56(a)2 Statement") ¶¶ 9, 11 (Plaintiffs admit that the mutual fund shares purchased by sub-accounts are assets of the Nationwide variable accounts, and not the assets of the plans or their participants).[2/] And Plaintiffs insist that they will not attempt to trace any of these payments to assets belonging to Plaintiffs or the Plans. *See* Defendants' Revised Memorandum of Law in Support of Defendants' Motion For Summary Judgment (Docket 186) ("Revised Memorandum") at 5 n.6.

These simple and undisputed material facts require summary judgment because Plaintiffs cannot prove what they concede is an essential element of their ERISA claim—that Defendants received plan assets that could create an ERISA fiduciary duty. *See* First Amended Memorandum in Support of Plaintiffs' First Amended Motion for Class Certification (Docket 129) ("Pls.' Class Cert. Mem.") at 12 ("Obviously, the first element of Plaintiffs' cause of action under either § 404 or § 406 is establishing Nationwide's fiduciary status."); ERISA § 3(21)(A)(i) (party is an ERISA fiduciary only "to the extent" that it "exercises any authority or control respecting management or disposition of [plan] assets").

Plaintiffs disagree with portions of Defendants' Local Rule 56(a)1 Statement and suggest that this case presents many complicated factual issues with respect to the relationships of the different retirement plans to the variable accounts within the variable annuity contracts, the mutual funds, the mutual fund affiliates and to the Nationwide entities. These complicated

---

providers. Defendants will also refer to "Defendants' receipt" of payments even though the specifics of who actually received the payments would be in dispute at trial.

[2/]   *See also* Plaintiffs' Opposition to Defendants' Discovery Motion (Docket 155) at 24 (mutual fund payments "did not constitute plan assets in the hands of the mutual funds prior to their payment to Defendants"); Plaintiffs' Supplemental Responses and Objections to Defendants' Third Set of Interrogatories (Ex. 15 to Defendants' Revised Summary Judgment Motion), Response No. 2 at 3 (the mutual fund deducts "a percentage of its assets [i.e. the mutual fund's assets] … as fees").

factual issues certainly highlight why class certification should not be granted, as described in greater detail in Defendants' Opposition to Plaintiffs' First Amended Motion For Class Certification (Docket 179) ("Defs.' Class Cert. Opp.").

However, as is demonstrated by Defendants' Reply to Plaintiffs' Local Rule 56(a)2 Statement, many of Plaintiffs' "denials" consist simply of disavowing their own prior admissions (indeed, many of the statements that Plaintiffs dispute are simply *quotes* from Plaintiffs' prior pleadings), and in all cases these supposedly disputed facts are not material to the very narrow issue regarding plan assets presented by this motion.[3/]  Plaintiffs cannot avoid summary judgment by pointing at (or manufacturing) such immaterial disputes. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("By its very terms, [Rule 56(c)] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (original emphasis).

Plaintiffs point to only one issue that "definitely" requires a trial: "Whether the . . . payments by the mutual funds constitute, in whole or in part, payments for services rendered by

---

[3/]  *See* Defendants' Reply to Plaintiffs' Local Rule 56(a)2 Statement at ¶¶ 17, 19 (Plaintiffs now deny that Defendants provided actual services to the mutual funds in exchange for the service fees, even though Plaintiffs previously admitted that Defendants *did* provide services to the mutual funds); ¶ 5 (Plaintiffs now deny that the plans allocated their investments within the variable accounts, even though Plaintiffs previously stated in their class certification motion that, "[p]ursuant to their contracts, *participants allocate* their contributions ... to particular sub-accounts within the variable accounts ...."); ¶ 21 (Plaintiffs now deny that payments "were sometimes based on a per-account formula, even though Plaintiffs have previously stated that Defendants "may have received" per-participant payments from some mutual funds, and Defendants have provided Plaintiffs with an example of a service agreement that based fees on a per-participant formula); ¶¶ 6, 7 (Plaintiffs deny that there was co-mingling of investments in Nationwide sub-accounts by prospective class members and non-class members, even though the individual annuity contracts expressly prove otherwise).

Nationwide?" 56(a)2 Statement at 4.[4/] Plaintiffs also describe this same issue in their Opposition as whether the payments were for services that Defendants were already obligated to provide the Plans, and whether Defendants had already received compensation for any services under the terms of the variable annuity contracts. *See* Pls.' Opp. at 2, 4, 7-8, 11, 27, 33.

Plaintiffs do not and cannot show why this question (regardless of how it is stated) bars summary judgment on the issue of whether Defendants ever received any relevant plan assets. *See* Revised Memorandum at 9. Indeed, Plaintiffs have never suggested in their interrogatory answers or their class certification motion that the answer to this question had any bearing whatsoever on whether the payments were plan assets. That is because this question is material only to a separate issue: Whether the payments that Defendants received were reasonable compensation for services, or were received for some other reason or no reason at all. While Defendants agree that this separate issue is one that Plaintiffs would have to address as part of their case at any trial, it is not one that precludes summary judgment here because Plaintiffs cannot overcome their "complete failure of proof" concerning the distinct ERISA plan assets issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (explaining that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"); *Unterberg Harris Private Equity Partners, L.P. v. Xerox Corp.*, 995 F. Supp. 437, 442 (S.D.N.Y. 1998) ("If the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with

---

[4/] Plaintiffs also identify "possible" issues of fact. *See* 56(a)2 Statement at 6, 7. Apparently, what Plaintiffs mean by "possible" is that these are issues of fact if necessary to block Defendants' Summary Judgment Motion, but issues of law if necessary to show that there are not factual variations that prevent class certification. This Court should not find genuine issues of material fact that even Plaintiffs are uncertain exist.

respect to other elements of the claim become immaterial and cannot defeat a motion for summary judgment.") (internal quotation marks omitted).

Because the services issue is immaterial to the instant motion, Plaintiffs' Rule 56(f) claim that the issue requires additional discovery is without merit. And that request has another fatal defect: the issue already has been the subject of discovery and questioning at deposition.[5] Rule 56(f) does not allow a party to avoid summary judgment when it has or could have previously obtained the requested information. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 298-99 (1968) (plaintiff who had ample opportunity during discovery to substantiate its claim was not entitled to obtain additional discovery under Rule 56(f)); *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp*, 769 F.2d 919, 926 (2d Cir. 1985) (district court properly denied further discovery for plaintiff who had deposed defendant's principals, and received interrogatory answers and relevant documents, and therefore had "sufficient" opportunity for discovery).

Plaintiffs also suggest that there is an issue of fact "as to whether investment managers [at the funds' affiliates] would reduce the fees they charge to the mutual funds if they did not have to make ... payments to [Defendants]." Pls.' Opp. at 37; *see also id.* at 6-7, 11. But Plaintiffs already have disavowed any intention to trace the money that Defendants received from these mutual fund affiliates back to plan assets that were invested in the variable annuity contracts. *See* Revised Memorandum at 5 n.6. Accordingly, an inquiry into whether the fund

---

[5] *See, e.g.*, Rose Deposition Transcript (Confidential Appendix In Support of Plaintiffs' First Amended Motion for Class Certification ("Conf. Ex."), Exhibit F) at 31:9-33:2; Goslee Deposition Transcript (Conf. Ex. K) at 71:13-80:17, 83:6-100:5; Davis Deposition Transcript (Conf. Ex. E) at 44:9-45:7, 45:8-54:18, 57:21-60:24; Bath Deposition Transcript (Conf. Ex. A) at 122:4-126:2; Scranton Deposition Transcript (Conf. Ex. H) at 22:21-25:10; Henderson Deposition Transcript (Conf. Ex. G) at 9:10-15:20, 81:7-82:20.