of future class certification decision); *accord Edgington v. R.G. Dickinson & Co.*, No. 90-1274-C, 1992 WL 223822, at *11 n.1 (D. Kan. Aug. 7, 1992) (Authority B) (court will "apply consistently its finding[s]" from class certification proceedings to pending motion for summary judgment). Two important examples of the contradictions between Plaintiffs' briefs are set forth below.

### A.   The Functional Approach and Tracing of Assets

When arguing for class certification, Plaintiffs claim Defendants received "fruits of plan assets" in the form of mutual fund payments based on a percentage of the daily accrued value of those accumulation units. *See* Pls.' Class Cert. Mem. at 12, 19. Under this theory of their case, Plaintiffs renounced any need to trace plan assets through the various transactions at issue to the payments received by Defendants. *See id.* at 13 ("Plaintiffs' contentions do not depend upon tracing specific dollars from the hands of a Plan into the hands of Nationwide."); *see also id.* at 19 ("no tracing is required under Plaintiffs' theory").

Now, in opposing summary judgment, Plaintiffs claim that there is some general, imprecise effect that the payments had on the Plans' assets. Thus, Plaintiffs vaguely describe the supposedly "huge" effect that payments have on the value of a hypothetical plan's investment, *see* Pls.' Opp. at 11, claim (with no explanation or support) that the payments are made "at the expense" of the Plans, *id.* at 17, and assert without specifics that the payments generally "cause a decrease in the value of the Plans' accumulation units," *id.* at 36-37. However, for all of the reasons that led Plaintiffs to concede that they cannot trace any specific plan assets *forward* to show that plan assets were used by the fund affiliates to make any payments to Defendants, Plaintiffs cannot trace the specific effect of any payments *backward* to show any diminishment of plan assets.

Plaintiffs have asked for substantial additional discovery into the payments as part of their effort to show this general effect that the payments had on plan assets. *See* Pls.' Opp., Ex. A at ¶¶ 10-15. These requests, which serve Plaintiffs' goal of fending off summary judgment, undermine Plaintiffs' efforts to obtain class certification. If Plaintiffs' case will require a review of the different payments to determine whether they had an effect on any plan assets, Plaintiffs cannot tell this Court that individual issues will not predominate.

Defendants have consistently pointed out that the need for Plaintiffs to trace assets (either precisely or generally) gives rise to serious manageability problems, cutting against Rule 23(b)(3) certification. *See* Defs.' Class Cert. Opp. at 46. The need to trace funds backwards, from the fees paid by the mutual funds to the eventual impact of those fees on Plan value (taking into account off-setting amounts that Defendants may have earned based on different services provided to each distinct mutual fund), would also preclude certification under Rule 23(b)(2). By definition, the "incidental damages" allowed for a Rule 23(b)(2) class must not "vary based on subjective considerations of each class member's claim," and even a Rule 23(b)(2) class cannot be certified when the case would be unmanageable. *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 165 (2d Cir. 2001); *see also* Defs.' Class Cert. Opp. at 52.

### B. Plaintiffs' Contract Arguments and Defendants' Provision of Services

In their Third Amended Complaint, Plaintiffs formally abandoned any claim for breach of contract. *See* Pls.' Mot. for Leave to File Third Amended Complaint (Docket 83) ("Pls.' Mot. to Amend") at 2, 4. That claim turned on an allegation that "Nationwide . . . effectively increased the amounts paid to it by the Plans for its services above the amounts provided for in its contracts with the Plans, thereby breaching those contracts." Plaintiffs' Second Amended Class Action Complaint (Docket 64) ¶ 45. Now, in opposing summary judgment, Plaintiffs have resurrected this argument, claiming that Defendants violated ERISA by accepting assets which

they had not contracted to receive. *See* Pls.' Opp. at 15. Plaintiffs should not be allowed to support their "functional approach" to ERISA liability, or create an issue of material fact, by bringing back into play discarded allegations.

Similarly, Plaintiffs now claim that Defendants never disclosed the "true nature" of the payments. 56(a)2 Statement ¶¶ 16, 23. Yet Plaintiffs cannot demonstrate how the issue of disclosure is relevant to Defendant's summary judgment motion on the narrow plan assets issue, particularly since they have abandoned any claims of misrepresentation and non-disclosure in this case. *See* Pls.' Mot. to Amend at 1-2; Pls.' Class Cert. Mem. at 36-37. If Plaintiffs are allowed to resurrect those claims in avoiding summary judgment, they must also defend the appropriateness of certifying such issues for class treatment.

Plaintiffs further claim that the payments were not in exchange for *bona fide* services, and try to parlay this contention into a disputed issue of material fact. *See* Pls.' Opp. at Ex. A, ¶¶ 10-12 (proposing "in-depth discovery" regarding the existence and nature of such services), notwithstanding the fact that Plaintiffs already have conceded that Defendants provided services to the mutual funds. *See supra* at n.3. As Defendants previously have argued, questions about the different types and level of service that Nationwide provided to different mutual funds cannot be resolved through common, generalized proof, rendering class certification inappropriate. *See generally* Defs.' Class Cert. Opp., Section IV.E. In essence, "Plaintiffs cannot offer the needed common proof because the reasonableness of any service payments will necessarily require an individual analysis of the amount of the payment and the type and level of service for that payment, as well as the amount of the payments that were returned to the plans through lower prices." *Id.* at 39 (citing *O'Sullivan v. Countrywide Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003)). Thus, the one issue of fact that Plaintiffs assert "definitely" exists—whether the

payments were "in whole or in part, payments for services rendered by Nationwide," 56(a)2 Statement at 4—strongly suggests that a trial involving one set of payments will not be an appropriate vehicle for making classwide judgments. Given the "complexity of assessing the reasonableness of differing fees paid for different services," among other issues, Plaintiffs' putative class claims do not meet the standard for certification under Fed. R. Civ. P. 23(b)(3). See Defs.' Class Cert. Opp. at 45-6.

## CONCLUSION

For the reasons stated above, and in Nationwide's Motion for Summary Judgment and memorandum in support thereof, Nationwide moves that the Court grant summary judgment in its favor. If the Court proceeds to evaluate Plaintiffs' motion for class certification, Nationwide requests that the Court require Plaintiffs to amend their class certification papers so that they are consistent with the position Plaintiffs have taken with respect to summary judgment.

Respectfully submitted,

Date: April 2, 2004

Defendants Nationwide Financial Services Inc.
and Nationwide Life Insurance Co.

By: _____
Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone:    (860) 293-3500
Facsimile:    (860) 293-3555

Charles C. Platt, Esq. (CT 23036)
Wilmer Cutler Pickering LLP
399 Park Avenue
New York, NY  10022
New York, NY 10019-5389
Telephone:     (212) 230-8800
Facsimile:     (212) 230-8888

Eric Mogilnicki, Esq.
Samuel Broderick-Sokol, Esq.
Karen Daly, Esq.
Mark Bieter, Esq.
Wilmer Cutler Pickering LLP
2445 M Street, N.W.
Washington, D.C. 20037
Telephone:     (202) 663-6000
Facsimile:     (202) 663-6363

# AUTHORITY A

1999 U.S. Dist. LEXIS 13654, *

LEXSEE 1999 US DIST. LEXIS 13654

**DAMASCO & ASSOCIATES 401(k) PROFIT SHARING PLAN, on behalf of itself and all others similarly situated and the general public of the State of California, Plaintiff, v. THE MANUFACTURERS LIFE INSURANCE COMPANY, et al., Defendants.**

No. C 99-2135 CRB

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*1999 U.S. Dist. LEXIS 13654*

**August 20, 1999, Decided**
**August 20, 1999, Filed; August 25, 1999, Entered in Civil Docket**

**DISPOSITION:** [*1] Action REMANDED and defendants' motion to dismiss DISMISSED as moot.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants responded to the federal district court's order to show cause why the action should not be remanded to state court, and filed a motion to dismiss plaintiff's state law claims as preempted under the Employee Retirement Income Security Act.

**OVERVIEW:** Plaintiff profit sharing plan sued defendants after discovering a kickback scheme related to the successful recommendation of annuity contracts. Defendants removed the case to federal court. The issue before the court was whether plaintiff's state law claims were preempted by the Employee Retirement Income Security Act (ERISA). The court remanded the action back to state court, and dismissed defendants' motion to dismiss as moot. The court concluded that defendants were not ERISA fiduciaries because the "regular investment advice" factor was not satisfied by the allegations of the complaint. The court also concluded that since the parties' relationships were not ERISA-governed relationships, plaintiff's claims did not relate to an employee benefit plan and were therefore not preempted.

**OUTCOME:** Action remanded to state court and defendants' motion to dismiss dismissed because defendants were not ERISA fiduciaries. Because the parties' relationships were not ERISA-governed relationships, plaintiff's claims did not relate to an employee benefit plan and were not preempted by ERISA.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

*Civil Procedure > Removal > Basis for Removal*
[HN1] The burden of establishing federal jurisdiction is placed on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Question JurisdictionCivil Procedure > Removal > Basis for Removal*
[HN2] The threshold requirement for removal under *28 U.S.C.S. § § 1331* and 1441 is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court. That issue turns on whether the complaint includes a claim that arises under the Constitution, laws, or treaties of the United States. *28 U.S.C.S. § § 1331* & 1441(b).

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Question Jurisdiction*
[HN3] Under the "well-pleaded" complaint rule, a cause of action arises under federal law only when the plaintiffs' well-pleaded complaint raises issues of federal law.

Case 3:01-cv-01552-SRU   Document 225-3   Filed 04/13/2004   Page 8 of 11

Page 2
1999 U.S. Dist. LEXIS 13654, *

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Question Jurisdiction*
*Civil Procedure > Removal > Basis for Removal*
[HN4] The complete preemption doctrine, provides that Congress may so completely preempt a particular area that a civil complaint raising this select group of claims is necessarily federal in character. In such a case, even if the only claim in a complaint is a state law claim, if that claim is one that is "completely preempted" by federal law, federal subject matter jurisdiction exists and removal is appropriate.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
[HN5] The federal courts have developed a two-prong test to determine complete preemption under the Employee Retirement Income Security Act (ERISA): the state law claim must both (1) "relate to" an employee benefit plan, and (2) fall within the scope of ERISA's civil enforcement provisions.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
[HN6] The first prong of the preemption test is based upon 29 U.S.C.S. § 1144(a) which provides that the Employee Retirement Income Security Act shall supersede any and all state laws insofar as they relate to any employee benefit plan covered by the statute.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
[HN7] Using a "relationship test" to help determine the first prong of the test to determine complete preemption under the Employee Retirement Income Security Act (ERISA), courts look to whether the cause of action under state law encroaches on the relationships regulated by ERISA.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
[HN8] The Employee Retirement Income Security Act (ERISA) does not preempt regulation of those relationships where a plan operates just like any other commercial entity. However, preemption is justified where the state law reaches a relationship that is already regulated by ERISA whether directly (by telling the parties what they can or cannot do), or indirectly (by imposing on the parties extra duties that flow from their conduct in this relationship). Any regulation of the relationship is basis enough for preemption.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
[HN9] The Employee Retirement Income Security Act does not ordinarily preempt claims arising out of a relationship between a plan and its outside service providers.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN10] 29 U.S.C.S. § 1106 (a)(1)(D) forbids a "fiduciary" from causing the plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN11] 29 U.S.C.S. § 1106(b)(1) prohibits a plan "fiduciary" from dealing with the assets of the plan in his own interest or for his own account.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN12] 29 U.S.C.S. § 1106(b)(3) prohibits a plan "fiduciary" from receiving any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN13] The Employee Retirement Income Security Act provides three ways in which one can acquire fiduciary status: (1) exercising discretionary authority or control over management of the plan or disposition of its assets; (2) rendering investment advice for a fee or other compensation; or (3) exercising discretionary authority in the administration of the plan. 29 U.S.C.S. § 1002(21)(A).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN14] With respect to the second method of acquiring fiduciary status, the following five factors must be met: (1) providing individualized investment advice; (2) the advice having been given pursuant to a mutual understanding; (3) the advice was provided on a regular basis; (4) the advice pertained to the value of property or consisted of recommendations as to the advisability of investing in certain property; and (5) the advice was rendered for a fee. 29 U.S.C.S. § 1002(21); 29 C.F.R. § 2510.3-21(c)(1)(1); 29 C.F.R. § 2510.3-21(c)(1)(ii)(B).

Case 3:01-cv-01552-SRU   Document 225-3   Filed 04/13/2004   Page 9 of 11

Page 3
1999 U.S. Dist. LEXIS 13654, *

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN15] The Employee Retirement Income Security Act does not define a fiduciary as one who has fiduciary duties under the common law.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*
[HN16] An Employment Retirement Income Security Act (ERISA) plan may pursue a state law claim for breach of fiduciary duty against a non-fiduciary under ERISA.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities*
[HN17] 29 U.S.C.S. § 1006 by its express terms only prohibits a plan fiduciary from engaging in certain conduct.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
[HN18] 29 U.S.C.S. § 1006(a)(1) can be enforced against Employee Retirement Income Security Act (ERISA) parties in interest that engage in the prohibited transaction. ERISA parties in interest include persons who provide services to a plan. 29 U.S.C.S. § 1102(14)(B).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary ResponsibilitiesLabor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
[HN19] In order to sustain an alleged transgression of 29 U.S.C.S. 1106(a), a plaintiff must show that a fiduciary caused the plan to engage in the allegedly unlawful transaction. Unless a plaintiff can make that showing, there can be no violation of 29 U.S.C.S. 1106(a) to warrant relief under enforcement provisions.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary ResponsibilitiesLabor & Employment Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions*
[HN20] 29 U.S.C.S. § 1106 regulates only those prohibited transactions that are caused by fiduciaries.

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & RemediesLabor & Employment Law > Employee*

*Retirement Income Security Act (ERISA) > Federal Preemption*
[HN21] The second prong of complete preemption requires that plaintiff's state law claims fall within the scope of the Employee Retirement Income Security Act's civil enforcement scheme in 29 U.S.C.S. § 1132(a).

*Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
[HN22] See 29 U.S.C.S. § 1132(a)(3).

**COUNSEL:** For DAMASCO & ASSOCIATES 401(K) PROFIT SHARING PLAN, Plaintiff: Daniel C. Girard, Girard & Greene LLP, San Francisco, CA.

For THE MANUFACTURERS LIFE INSURANCE COMPANY (USA), MANUFACTURERS LIFE INSURANCE COMPANY, ROSS GORDON & ASSOCIATES INC., defendants: H. Joseph Escher, III, Linda Q. Foy, Eve H. Cervantez, Howard Rice Nemerovski Canady Falk & Rabin, San Francisco, CA.

**JUDGES:** CHARLES R. BREYER, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** CHARLES R. BREYER

**OPINION:**

### MEMORANDUM AND ORDER

Now before the Court is defendants' response to the Court's Order to Show Cause ("OSC") why this action should not be remanded to state court and defendants' motion to dismiss plaintiff's state law claims. The OSC and defendants' motion to dismiss address the same issue -- whether plaintiff's claims are preempted by ERISA. After carefully considering the pleadings submitted by the parties, and having had the benefit of oral argument on July 23, 1999, the Court concludes that plaintiff's claims are not preempted and REMANDS this lawsuit to the Superior Court of the State of California for the County of San Francisco.

### BACKGROUND

**A. Summary of the Complaint**

Plaintiff Damasco & Associates 401(k) Profit Sharing Plan ("Plan") is a plan qualified under *section 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a)*. The Plan is sponsored by Damasco & Associates, a corporation which provides accounting and tax services. Complaint P 3.

Defendant Ross Gordon & Associates n1 ("Gordon") [*2] provides plan design, actuarial and

administrative services to ERISA plans, their sponsors, and beneficiaries. Id. P 7. Gordon was retained by the Plan as a consultant to advise and assist the Plan in its establishment and administration. Id. P 8. Gordon was paid compensation based on its hourly rates or fixed fees. Id. P 8. Plaintiff alleges that plan consultants, such as Gordon, typically do not advise ERISA plans, their sponsors, or their beneficiaries about investing plan assets in particular securities, or recommend securities for investment. Id. P 9.

> n1 Ross Gordon & Associates is being sued individually and as a representative of a defendant class defined as "all Plan Consultants who received a portion of the Asset Charge assessed on the Retirement Plan's investment under the Annuity Contract." Id. P 25.

Defendants Manufacturers Life Insurance Company (U.S.A.) and Manufacturers Life Insurance Company (collectively referred to as "Manulife") promote and sell annuity contracts to qualified [*3] plans such as plaintiff. Id. P 10. These annuity contracts allow plan members to choose from among a range of mutual funds in which Manulife will invest contributions made to the plan. These mutual funds are not administered by Manulife. Id. Manulife advertises these annuity contracts to the public as a sound way for people of modest means to save for their retirement, but makes only vague and incomplete disclosure concerning the services to be rendered under the annuity contracts and the compensation the plan must pay for those services. Id. PP 11-12. Manulife assesses a "Participant Fee" and an "Asset Charge" on plans which invest in Manulife annuity contracts. Id. P 13. These fees are calculated monthly based on the value of the investment made by the plan under the annuity contracts. Id. P 13.

On Gordon's recommendation, plaintiff invested in a Manulife annuity contract. Id. P 15. Unbeknownst to plaintiff, Manulife covertly pays plan consultants "kickbacks" (a portion of the Asset Charge) for successfully recommending Manulife's annuity contracts to their clients. Id. P 14. Accordingly, Manulife secretly paid Gordon a portion of the Asset Charge each [*4] month. Id. PP 15-16. No disclosure of any kind was made to plaintiff that Manulife had promised to pay Gordon for the successful referral. Id. P 15. Plaintiff did not authorize Gordon to receive compensation in connection with the investment of Plan assets. Id.

Plaintiff's first cause of action is for "Fraudulent and Unfair Business Practices" in violation of *California Business & Professions Code section 17200* for the "kickback" scheme. Plaintiff contends that the payment of these "kickbacks" gives plan consultants a substantial financial incentive to recommend Manulife's annuity contracts over other investment instruments that might be more suitable for their clients. Id. PP 36-37.

Plaintiff's second cause of action is against Gordon for "Breach of Contract." Plaintiff alleges that a contract existed between it and Gordon requiring Gordon to "remain free of undisclosed conflicts of interest and refrain from self-dealing." Id. P 41. Gordon allegedly breached this contract by (1) recommending the Manulife annuity contract in return for a "kickback"; (2) engaging in self-dealing; and (3) failing to disclose its "conflict of interest" in connection with its recommendation [*5] to purchase the Manulife annuity contracts. Id. PP 43-44.

Plaintiff's third cause of action is against Manulife for "Intentional and Tortious Interference with Contractual Relations" based on its actions inducing the breach of contract by Gordon and the defendant class as alleged above. Id. P 51.

Plaintiff's fourth cause of action is for "Unjust Enrichment" stemming from Manulife's collection of fees and charges from Plan members and Gordon's receipt of the "kickbacks." Id. PP 56-57.

Plaintiff seeks the following relief: (1) an order enjoining defendants from engaging in alleged fraudulent and unfair business practices; (2) an order for disgorgement and/or restitution of their fees; (3) an order establishing a constructive trust over the kickbacks and fees collected from Plan by Manulife; (4) compensatory and exemplary damages; and (5) attorneys' fees.

### B. Procedural History

Defendants removed this case to federal court, arguing that some or all of plaintiff's state law claims are completely preempted by ERISA. The Court subsequently ordered defendants to show cause why this action should not be remanded to state court for lack of federal jurisdiction. Defendants [*6] also filed a motion to dismiss all of plaintiff's state law claims on the ground that the claims are preempted by ERISA.

### LEGAL STANDARD

[HN1] "The burden of establishing federal jurisdiction is placed on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Salveson v. Western States Bankcard Ass'n, 731 F.2d 1423, 1426 (9th Cir. 1984)* (citations omitted). [HN2] The threshold requirement for removal under *28 U.S.C. sections 1331* and *1441* is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court. See *Toumajian v. Frailey, 135 F.3d 648, 653 (9th Cir. 1998)*. That issue

Case 3:01-cv-01552-SRU   Document 225-3   Filed 04/13/2004   Page 11 of 11

Page 5
1999 U.S. Dist. LEXIS 13654, *

turns on whether the complaint includes a claim that "arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331 & 1441(b) (1988). [HN3] Under the "well-pleaded" complaint rule, "a cause of action arises under federal law only when the plaintiffs' well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987). [*7]

A resulting corollary to this rule, known as [HN4] the complete preemption doctrine, provides that "Congress may so completely preempt a particular area that a civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins.*, 481 U.S. at 63-64. "In such a case, even if the only claim in a complaint is a state law claim, if that claim is one that is 'completely preempted' by federal law, federal subject matter jurisdiction exists and removal is appropriate." *Toumajian*, 135 F.3d at 653 (citing *Metropolitan Life Ins.*, 481 U.S. at 63-64).

## DISCUSSION

[HN5] The federal courts have developed a two-prong test to determine complete preemption under ERISA: the state law claim must both (1) "relate to" an employee benefit plan, and (2) fall within the scope of ERISA's civil enforcement provisions. See *Toumajian*, 135 F.3d at 654.

### A. "Relationship Test"

[HN6] The first prong of the preemption test is based upon ERISA section 1144(a) which provides that ERISA "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan" covered by the statute. [*8] 29 U.S.C. § 1144(a). This provision reflects Congress's intent to subject plans to a uniform body of benefits law. See *New York Conf. of Blue Cross & Blue Shield Plans v. Travelers*, 514 U.S. 645, 656, 131 L. Ed. 2d 695, 115 S. Ct. 1671 (1995). The Supreme Court has acknowledged that the plain language of section 1144(a) is expansive, and common law causes of action are included within the "state law" which may be preempted. See *id.* at 656; *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142, 112 L. Ed. 2d 474, 111 S. Ct. 478 (1990). Nevertheless, recent decisions clarify that ERISA's preemption clause is not boundless, and that preemption should not occur unless within Congress's clear intent, as revealed by the objectives of the ERISA statute. See *De Buono v. NYSA-ILA Medical and Clinical Serv. Fund*, 520 U.S. 806, 813-14, 138 L. Ed. 2d 21, 117 S. Ct. 1747 (1997); *Travelers*, 514 U.S. at 645, 654.

The Ninth Circuit has developed [HN7] a "relationship test" to help determine the first prong; the courts look to whether the cause of action under state law "encroaches on the relationships [*9] regulated by ERISA." *Geweke Ford v. St. Joseph's Omni Preferred Care, Inc.*, 130 F.3d 1355, 1358 (1997) (quoting *General Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1522 (9th Cir. 1993)). [HN8] ERISA does not preempt regulation of those relationships "where a plan operates just like any other commercial entity." *Castonguay*, 984 F.2d at 1522. However, preemption is justified where the "state law reaches a relationship that is already regulated by ERISA . . . whether . . . directly (by telling the parties what they can or cannot do), or indirectly (by imposing on the parties extra duties that flow from their conduct in this relationship). Any regulation of the relationship is basis enough for preemption." Id. Thus, the key issue is whether the parties' relationships are ERISA-governed relationships. See *Geweke Ford*, 130 F.3d at 1358; *Castonguay*, 984 F.2d at 1522.

In this case, the Plan is suing its outside consultant and an investment company. Plaintiff contends that since defendants are not traditional ERISA entities -- such as the Plan, the employer, the plan fiduciaries or beneficiaries, see [*10] *Thiokol Corp. v. Roberts*, 76 F.3d 751, 755 (6th Cir. 1996) -- no ERISA-regulated relationships are at issue. As support for its contention, plaintiff cites several cases in which claims against outside service providers to an ERISA plan were not preempted. See *Geweke Ford*, 130 F.3d at 1360 (holding that contract claims against plan's third-party administrator and insurer for failure to repay plan for its expenses not preempted), *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1466-67 (4th Cir. 1996) (concluding that malpractice claims against plan's insurance consultants not preempted); *Bourns, Inc. v. KPMG Peat Marwick*, 876 F. Supp. 1116, 1121 (C.D. Cal. 1994) (finding no ERISA preemption of state law claims by plan against its accountant). Plaintiff principally relies on *Hanovi Corp. v. SF Pension Corp.*, 1993 U.S. Dist. LEXIS 18314, 1993 WL 548809 at *1 (N.D. Cal. December 15, 1993), in which a plan trustee brought suit against its professional consultant for negligent performance of its duties in providing tax advice. The court held that the claim was a "simple malpractice" action without a special federal interest at stake. Id. [*11] at *4.

These cases establish that [HN9] ERISA does not ordinarily preempt claims arising out of a relationship between a plan and its outside service providers. See *Castonguay*, 984 F.2d at 1522. Defendants argue, however, that the present action must be distinguished from these cases because the specific conduct of which plaintiff complains -- the alleged "kickback" scheme -- is regulated by ERISA through its "prohibited transactions" provision, 29 U.S.C. § 1106.