1992 WL 223822                                                                                       Page 5
RICO Bus.Disp.Guide 8149
**(Cite as: 1992 WL 223822 (D.Kan.))**

plaintiffs invested in copper commodity option contracts on assurances that it was a safe investment which was sure to make a profit. The defendant argued the trial court erred in not giving its requested instruction on justifiable reliance. The Tenth Circuit upheld the district court's ruling and distinguished *Zobrist,* as follows:

> *6 *Zobrist* involved an action brought by purchasers of stock against the sellers to recover for fraud. In *Zobrist* we held that the warnings and statements contained in a private placement memorandum could be imputed to a sophisticated investor even though he had not read them and that the investor could not justifiably rely on misrepresentations where the falsity of the misrepresentations is palpable. Such is not the case at hand.
> Neither of the Wegerers were sophisticated investors. Furthermore, it is uncontested that the Wegerers were told not to read the materials sent to them; that Jones told the Wegerers the material were sent by FCCB merely to comply with a legal requirement; that the Wegerers were lied to repeatedly; and the Wegerers were "badgered by numerous telephone calls and pressured into investing.

744 F.2d at 723. The court in *Wegerer* obviously suggests there are some factual circumstances that would militate against imputing constructive knowledge of information found in accompanying written documents. This approach has been taken by other courts. *See, e.g., McCoy v. Goldberg,* 748 F.Supp. 146, 152 (S.D.N.Y.1990) (Given the plaintiff's naivete in financial matters and the defendants' suggestion not to "wade through" the offering memorandum, the defendants cannot avail themselves of the constructive knowledge doctrine); *Luksch v. Latham,* 675 F.Supp. 1198, 1203 (N.D.Cal.1987) (Constructive notice of prospectus should be limited to circumstances where the investor is sophisticated, has initiated the transaction, and receives offering materials that directly contradict the oral representations). Even so, the plaintiffs here offer no such reasons, and the court is aware of none, to prevent their constructive knowledge of the information contained in the official statement.

The court is unable to say as a matter of law that the oral representations and omissions were directly contradicted by the risks disclosed in the official statement. The plaintiffs allege that the April 14th letter affirmatively misrepresented that the Series XI bonds had been called and that the new Series III bonds would soon be oversubscribed. The plaintiffs further allege that Riedl orally misrepresented that the Series III bonds were solid and the best investment he had available for them at the time. As for omissions, the plaintiffs allege that they were not told the value of the related Parking Center bonds had been seriously impaired by the tenants failure to rental payments to KG & E. Nor were they told that certain payments owed by the parking garage tenant were being made from the bond reserve account and that if these related Parking Garage bonds were to go into default then the value of the Series III bonds would be seriously impaired. The plaintiffs also allege the defendants failed to disclose that the bond reserve account for the Market Centre bonds had decreased, that the real estate market in downtown Wichita was deteriorating and threatening the value of the Series III bonds, that the Parking Garage bonds were declining in value, and that a feasibility study had not been conducted. Other than revealing that no market study or survey had been obtained, the official statement is not completely at odds with the other misrepresentations or omissions. The official statement does say that the bonds have a certain degree of risk and are speculative in nature. But it is quite possible to read this as consistent with the representation that the bonds were a solid investment. The official statement explains that changes in economic conditions and the supply of competing properties are factors not within the tenant's control and that adverse changes could impair the tenant's ability to meet his obligations. What the official statement does not say is that the economic conditions in downtown Wichita were not favorable for commercial leasing. The official statement mentions that the parking garage and walkway is needed to attract tenants. But it is does not offer any hint that the parking garage tenant was having financial problems or that the Parking Garage bonds were the matter of some financial doubt. The court cannot say as a matter of law that any differences or contradictions between the alleged misrepresentations and the official statement were palpable and fairly leapt from the pages. [FN6]

*7 Nor can the court meaningfully analyze the seven factors relevant to a determination of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1992 WL 223822  
RICO Bus.Disp.Guide 8149  
(Cite as: 1992 WL 223822 (D.Kan.))

Page 6

justifiable reliance on the state of the record. Piecing together the facts gleaned from the various briefs filed in support of other motions, the court understands that the plaintiffs were not naivete about bonds, but they were elderly and had relied on Riedl's advice for some time in making their different bond purchases. The subject transaction was initiated by Riedl or his agents through the April 14th letter and a subsequent phone call. At least on the facts as now known, the court cannot hold as a matter of law that the plaintiffs were not justified in relying on the defendants' misrepresentations and omissions made in the April 14th letter and in later oral advice.

*12(2)*

The defendants argue that the Series III bonds are industrial revenue bonds exempt from the provisions of § 12(2), 15 U.S.C. § 77l. The plaintiffs do not respond to this argument. The court grants the defendants' motion on this claim as being uncontested by the plaintiffs. [FN7]

*Statute of Limitations*

The defendants last attack on the plaintiffs' securities claims concerns the timeliness of these claims. The defendants first argued that the claims were not brought within the limitations period established by the Supreme Court in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). In their reply brief, the defendants conceded for purposes of the case *sub judice* that *Lampf* had been superseded by statute:

> The limitation period for any private civil action implied under section 78j(b) of this title that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

15 U.S.C. § 78aa-1(a) (1992 Supp.).

Before *Lampf,* 10b-5 claims arising in Kansas were subject to the two-year limitation governing common-law fraud, K.S.A. 60-513. *Seiffer v. Topsy's International, Inc.,* 64 F.R.D. 714, 716 (D.Kan.1974), *appeal dismissed,* 520 F.2d 795 (1975), *cert. denied,* 423 U.S. 1051 (1976); *Hecox v. R.G. Dickinson & Co.,* No. 84-1789, 1987 WL 14502 1987 U.S. Dist. LEXIS 13901 (D.Kan. Jan. 12, 1987). The accrual of a 10b-5 cause of action, however, is governed by the federal equitable tolling rule that the limitations period commences to run when the plaintiff actually knows or through the exercise of due diligence should have known of the alleged fraud. *Ebrahimi v. E.F. Hutton & Co., Inc.,* 852 F.2d 516, 521 (10th Cir.1988); *Dubin v. Miller,* 132 F.R.D. 269, 275 (D.Colo.1990). This rule applies to both claims of affirmative misrepresentation and fraudulent concealment. *State of Ohio v. Peterson, Lowry, Rall, Etc.,* 651 F.2d 687, 694-95 (10th Cir.), *cert. denied,* 454 U.S. 895 (1981).

The exercise of reasonable diligence is typically an issue of fact not suitable to disposition by summary judgment motion. *Kennedy v. Josephthal & Co., Inc.,* 814 F.2d 798, 803 (1st Cir.1987). On the other hand, if the evidence of record "clearly and convincingly persuade[s] the trial judge that plaintiff in the exercise of reasonable diligence would have discovered the fraud at such a time as to bar the action," summary disposition is permitted. *State of Ohio,* 651 F.2d at 694.

*8 "Notice is the key to our analysis, and merely 'inquiry notice' will do." *Anixter v. Home-Stake Production Co.,* 939 F.2d 1420, 1437 (10th Cir.) (citation omitted), *amended on reh'g,* 947 F.2d 897 (1991), *cert. granted and vacated on other grounds,* 112 S.Ct. 1757 (1992). The limitations period will start running when there are " 'sufficient storm warnings to alert a reasonable person to the possibility that there were either misleading statements or significant omissions involved in the sale.' " *Anixter,* 939 F.2d at 1437 (quoting *Cook v. Avien, Inc.,* 573 F.2d 685, 697 (1st Cir.1978)). " 'Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself.' " *Anixter,* 939 F.2d at 1438 (quoting *Kennedy v. Josephthal & Co.,* 814 F.2d at 802). Whether the plaintiffs exercised reasonable diligence is a fact-specific inquiry that entails considering the same seven factors identified in *Zobrist. Luksch v. Latham,* 675 F.Supp. at 1202-03; *see, e.g., Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 128 (1st Cir.1987). In summary, the two-year limitations period will commence when the plaintiffs knew or discovered, or in the exercise of reasonable diligence should

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1992 WL 223822                                                                    Page 7
RICO Bus.Disp.Guide 8149
(Cite as: 1992 WL 223822 (D.Kan.))

have known or discovered, the facts giving rise to the claim. *Anixter*, 947 F.2d at 899 n. 5.

Defendants contend that a reasonable investor after reading the official statement would have been put on inquiry notice about the possibility of misrepresentations and omissions. On the state of the record, the court is not clearly and convincingly persuaded that had the plaintiffs read and understood the official statement that they would have discovered the alleged fraudulent acts before May 31, 1988, the facts giving rise to their claim. The conclusions reached above on the issue of justifiable reliance apply with equal force here. More importantly, the evidence does not establish that the plaintiffs even received the official statement before May 31, 1988. Finally, the court is without the evidence to consider the relevant factors underlying a determination of reasonable diligence. The defendants' motion for summary judgment is denied as to the plaintiffs' 10b-5 securities claims based on the misrepresentations and omissions made in the April 14th letter and subsequent oral communications.

### RICO

The plaintiffs bring actions under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically, 18 U.S.C. § 1962(a), (b) and (c). [FN8] The RICO statute permits civil actions by "[a]ny person injured in his business or property by reasons of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Section 1962 consists of subsections with each addressing a separate situation. Section 1962(a) prohibits "any person who has received any income derived ... from a pattern of racketeering activity from using that money to acquire, establish or operate any enterprise that affects interstate commerce. Section 1962(b) prohibits any person from acquiring or maintaining an interest in, or controlling any such enterprise "through a pattern of racketeering activity." Section 1962(c) prohibits any person employed by or associated with an enterprise affecting interstate commerce from "conduct[ing] or participat[ing] ... in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Banks v. Wolk*, 918 F.2d 418, 421 (3rd Cir.1990).

*9 The defendants contend the plaintiffs are unable to prove they have standing to bring these RICO claims. A "plaintiff only has standing, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Consequently, the plaintiffs under § 1962(a) must allege and prove that their injury from purchasing the Series III bonds was caused by the Riedl's use or investment of racketeering income. *Danielsen v. Burnside-Ott Aviation Training Center*, 941 F.2d 1220, 1229 (D.C.Cir.1991); *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149 (10th Cir.), *cert. denied*, 493 U.S. 820 (1989). The plaintiffs say they have pleaded such an action by alleging that Riedl used his income earned from sales commissions to purchase an interest in R.G. Dickinson. The plaintiffs' position is untenable for several reasons. First, Riedl did not become the branch owner of R.G. Dickinson until more than three years after the plaintiffs purchased the Series III bonds. Second, the plaintiffs have come forth with no evidence to show that Riedl acquired his interest in R.G. Dickinson with income earned from sales commissions. Finally, and most importantly, the plaintiffs still have not alleged or proved that their business injury was suffered as a result of Riedl investing in R.G. Dickinson.

Section 1962(b) makes it unlawful to acquire or maintain an interest in or control of such enterprise through a pattern of racketeering activity. The plaintiffs must plead and prove that their business injury bears a proximate causal relationship to Riedl's acquisition and control of his interest in R.G. Dickinson. *Danielson*, 941 F.2d at 1231; *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3rd Cir.), *cert. denied*, 111 S.Ct. 2839 (1991). The plaintiffs appear to make the same argument here for standing that was advanced under subsection 1962(a). But this argument fails to establish a causal relationship between the Series III bond's decline in value and Riedl's acquisition of the R.G. Dickinson's branch office.

On their § 1962(c) claim, the plaintiffs must allege and prove:
(1) an injury to [their] business or property by reason of the violation;
(2) the existence of an enterprise;
(3) that the defendant was employed by or associated with the enterprise;
(4) that the defendant participated in conduct of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1992 WL 223822
RICO Bus.Disp.Guide 8149
**(Cite as: 1992 WL 223822 (D.Kan.))**

Page 8

the enterprise's affairs; and
(5) that the participation was through a pattern of racketeering activity.

*Danielsen,* 941 F.2d at 1231. For purposes of § 1962(c), the defendant cannot be the enterprise; the "person" and "enterprise" must be distinct. *Bd. of Cty. Comm'rs of San Juan Cty. v. Liberty Group,* 965 F.2d 879, 885 (10th Cir.1992); *Kehr Packages, Inc.,* 926 F.2d at 1411. Having alleged that R.G. Dickinson is the enterprise, the plaintiffs are unable to make it a defendant to the same § 1962(c) claim. *Kehr Packages, Inc.,* 926 F.2d at 1411.

*10 Riedl seeks summary judgment on this claim arguing the plaintiffs are unable to prove that he played an active and dominant role in conducting R.G. Dickinson's affairs by using a pattern of racketeering activity. [FN9] The plaintiffs have not responded to this argument other than to assert in a conclusory fashion that Riedl "used the auspices of R.G. Dickinson to engage in a pattern of racketeering activity" which "allowed him access to the plaintiffs, and ... the means to conduct this pattern of racketeering." (Dk. 130 at 13). These allegations do not show that he participated in the operation or management of R.G. Dickinson's affairs through a pattern of racketeering activity. Moreover, Riedl is correct that the plaintiffs have not shown their injury was the proximate result of any management by him of R.G. Dickinson's affairs. Defendants are entitled to summary judgment on the plaintiffs' RICO claims.

*Fraud*

The defendants make the same argument here that was advanced against the plaintiffs' securities fraud claim, that is, the plaintiffs could not have reasonably relied on any misrepresentations or omissions in light of the disclosures made in the official statement. The plaintiffs repeat their position that the reasonableness of their reliance on Riedl's misrepresentations and omissions is a question of fact to be decided after considering all relevant circumstances.

Under Kansas law, fraud is actionable upon proof of an untrue statement of material fact, known to be untrue by the person making it, made with the intent to deceive or recklessly made with disregard for its truthfulness, where another party justifiably relies upon the statement and acts to his injury. *Slaymaker v. Westgate State Bank,* 241 Kan. 525, 531, 739 P.2d 444 (1987). Never a matter of presumption, fraud requires proof by a preponderance of such evidence that is clear and convincing. *Weigand v. Union National Bank of Wichita,* 227 Kan. 747, 753, 610 P.2d 572 (1980).

On the subjective side, the plaintiff must actually rely on the misrepresentation to its detriment. *Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665, 677 (D.Kan.1989). On the objective side, the plaintiff's reliance " 'must be reasonable [and] justifiable.' " *Id.* (quoting *Hutchinson Travel Agency, Inc. v. McGregor,* 10 Kan.App.2d 461, 464, 701 P.2d 977 (1985)). For the reasons stated earlier, the court cannot say as a matter of law that the risk disclosures in the official statement should have alerted the plaintiffs to the alleged misrepresentations and omissions. [FN10] Nor can it be said that the disclosures in the official statement overshadow any attempt at proving Riedl intentionally deceived the plaintiffs. On the present record of the case, the elements of scienter and reliance turn upon genuine issues of material fact.

*Other Claims*

The defendants also seek summary judgment on the plaintiffs' securities claim under K.S.A. 17-1268(a), the state counterpart to § 12(2). Putting forth the same argument that the official statement adequately disclosed the relevant risks, the defendants insist that the plaintiffs are unable to show they were excusably ignorant. Excusable ignorance requires deciding the same genuine issues of material fact which exist in deciding justifiable reliance and reasonable diligence. Summary judgment is inappropriate.

*11 In their reply brief, the defendants argue for the first time that they are entitled to summary judgment on the plaintiffs' breach of fiduciary duty claim. This argument is summarily denied for the court generally will not consider issues initially raised in reply briefs. *See Wagher v. Guy's Foods, Inc.,* 765 F.Supp. 667, 671 (D.Kan.1991).

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment (Dk.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1992 WL 223822  
RICO Bus.Disp.Guide 8149  
**(Cite as: 1992 WL 223822 (D.Kan.))**

Page 9

121) is granted as to the plaintiffs' 10b-5 claims based on material omissions in the official statement, 12(2) claims and all RICO claims, and the motion is denied as to all other claims.

IT IS FURTHER ORDERED that the plaintiffs' motion for review (Dk. 119) is denied on *de novo* reconsideration.

FN1. The court does not share the plaintiffs' belief that the present motion involves "many of the same issues" that were addressed in the class certification proceedings and the earlier summary judgment motion. It is true that the court will apply consistently its finding that the defendants have rebutted the presumption that the plaintiffs relied on any material omissions in the official statement. But the present motion deals not only with material omissions in the official statement but with material omissions and affirmative misrepresentations in the broker's oral advice. To date, this issue has not been directly raised before the court for ruling. Moreover, the court frowns upon this practice of wholesale incorporation of arguments from earlier briefs. It should not be the task of the court to review the earlier briefs and to determine which one or more of the factual and legal arguments the party believes still apply under the facts now presented.

FN2. The plaintiffs argue that "the factual allegations underlying the merits of [their] claims must be construed as true." (Dk. 130 at 10). This argument is contrary to the law. The defendants have shown certain material facts to be undisputed, and the plaintiffs now, as required by Rule 56(e), must do more than refer to allegations in their briefs or pleadings. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun,* 956 F.2d 949, 951 (10th Cir.1992) (citations omitted).

FN3. Over the course of their joint deposition, the plaintiffs' testimony on this matter changed. At first they believed the official statement was received before the settlement date, but later they thought it was not received until after the settlement date. In their original and amended complaints, the plaintiffs alleged that the official statement was provided to them prior to their purchase of the bonds. Giving respective weight to this testimony, the complaints and Riedl's affidavit, the court cannot conclude any more than that the plaintiffs received a copy of the official statement either before the settlement date of May 31, 1988, or shortly thereafter.

FN4. As will become apparent later in the order, this last reason is not supported by the case law. The court hereby modifies its order of January 14, 1992, and withdraws that final reason. Nonetheless, the court believes summary judgment for First Securities is still sustained by the other reasons.

FN5. Some courts have chosen the concept of causation over reliance and then have broken down causation into two parts: transaction causation and loss causation. The first links the alleged violation to the plaintiff's reliance. The second links the alleged violation to the plaintiff's injury. In the instant case, transaction causation is established by proof that the plaintiffs purchased the Series III bonds as a result of the defendants' omissions and misrepresentations. Under an omissions theory, transaction causation is presumed upon a showing of materiality. As for loss causation, the plaintiffs must prove that the misrepresentations or omissions "touched upon" the reasons for the decline in value of the Series III bonds. *Huddleston v. Herman & MacLean,* 640 F.2d 534, 549 (5th Cir.1981), *aff'd in part and rev'd in part on other grounds,* 459 U.S. 375 (1983). Loss causation is met when the misrepresentations are inherently related to the losses suffered by the plaintiff. *See*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1992 WL 223822
RICO Bus.Disp.Guide 8149
**(Cite as: 1992 WL 223822 (D.Kan.))**

Page 10

*Bruschi v. Brown,* 876 F.2d 1526, 1530-31 (11th Cir.1989); *Seiffer v. Topsy's Intern., Inc.,* 487 F.Supp. 653, 665-66 (D.Kan.1980). In practice, transaction causation is nothing more than the above third element of reliance, and loss causation is the same as the fourth element's requirement that the damages be sustained as a proximate result of the misrepresentation.

FN6. The plaintiffs' admission that had they read and understood the other disclosed risks they would not have purchased the bonds does not sever as a matter of law the causal link established by their reliance on the defendants' misrepresentations and omissions in the letter and oral advice. In other words, the plaintiffs should not lose their claim simply because constructive knowledge may give them other reasons for not investing but may not give them cause to question their reliance on the defendants' misrepresentations. A genuine issue of material fact exists as to whether the defendants' misrepresentations and omissions were the cause-in-fact of the plaintiffs' injury.

FN7. It is not the court's responsibility to assume the role of advocating an exception to this exemption, even though one arguably exists. *See In re Bexar Cty. Health Fac. Dev. Corp. Sec. Lit.,* 125 F.R.D. 625 (E.D.Pa.1989), *reconsid. granted and modified on other grounds,* 130 F.R.D. 602 (1990); *Gorsey v. I.M. Simon & Co., Inc.,* No. 86-1875-Z, 1987 WL 7749, 1987 U.S.Dist. LEXIS 1940 (D.Mass. Feb. 23, 1987).

FN8. The court assumes the plaintiffs are bringing claims under each subsection. Neither their complaints nor their contentions in the pretrial order identify which subsections are alleged. Such ambiguity in pleading, particularly at the pretrial order stage, is unacceptable.

FN9. To be liable under § 1962(c), the defendant must not only participate in the enterprise's affairs, "but *in the conduct* of the enterprise's affairs." *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639,* 913 F.2d 948, 954 (D.C.Cir.1990) (en banc), *cert. denied,* 111 S.Ct. 2839 (1991). In other words, the defendant must participate "in the operation or management of the enterprise itself." *Danielsen,* 941 F.2d at 1231.

FN10. The alleged misrepresentations need not be the only cause of the plaintiffs' harm. *Slaymaker,* 241 Kan. at 532. It will be enough for the plaintiffs to show that the misrepresentations were a moving cause and without them the plaintiffs would not have purchased the bonds. *Id.*

1992 WL 223822, 1992 WL 223822 (D.Kan.), RICO Bus.Disp.Guide 8149

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing Defendants' Reply Memorandum in Support of Summary Judgment was served via overnight mail and facsimile on this 2nd day of April, 2004, on the following counsel of record:

Richard A. Bieder, Esq.
Antonio Ponvert III, Esq.
Koskoff, Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

Gregory G. Jones, Esq.
Law Firm of Gregory G. Jones, P.C.
603 South Main Street, Suite 200
Grapevine, TX 76051

Marc R. Stanley, Esq.
Roger L. Mandel, Esq.
Stanley, Mandel & Iola
3100 Monticello Avenue
Suite 750
Dallas, TX 75205

Dennis F. Kerrigan, Jr.