**ORIGINAL**

## STANLEY, MANDEL & IOLA, L.L.P.
### ATTORNEYS & COUNSELORS

ROGER L. MANDEL
BOARD CERTIFIED - CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL NO.: 214-443-4302
EMAIL: rmandel@smi-dallas.com

3100 MONTICELLO AVENUE, SUITE 750
DALLAS, TEXAS 75205
TEL: 214-443-4300 • FAX: 214-443-0358

February 25, 2004

*via federal express*
Mr. Kevin F. Rowe
U.S. District Clerk
United States District Court
District of Connecticut
915 Lafayette Boulevard
Bridgeport, CT 06604

Re:    *Lou Haddock, as Trustee of the Flyte Tool & Die, Incorporated Deferred
       Compensation Plan v. Nationwide Financial Services, Inc. and
       Nationwide Life Insurance Co.*; Case No. 01-CV-1552(SRU)

Dear Mr. Rowe:

Please file the original and one copy of this letter brief and return a filed-stamped copy in the enclosed pre-stamped, pre-addressed envelope.

The briefing regarding Plaintiffs' Motion for Class Certification became final on January 30, 2004. Subsequently, on February 13, 2004, the United States District Court for the District of Kansas issued an opinion regarding class certification in *In Re: Universal Service Fund Telephone Billing Practices Litigation*, Case No. 02-MD-1468-JWL, a true and correct copy of which is attached hereto as Exhibit A.

The opinion addresses three issues relevant to the class certification decision currently pending before the Court:

1.    Adequacy of representation -- "claims splitting" (pp. 11-17);

2.    Adequacy of representation -- knowledge of class representatives (pp. 18-23); and

3.    Rule 23(b)(2)--- predominance of injunctive and declaratory relief over monetary damages (pp. 38-43).

A REGISTERED LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

February 25, 2004
Page 2

      Thank you for your cooperation and assistance in this matter.  If you have any questions or comments, please feel free to call.

                          Sincerely,

                          Roger L. Mandel

cc:    Mr. Eric Mogilnicki (via FedEx, w/encl.)
       Mr. Dennis F. Kerrigan, Jr. (via FedEx, w/encl.)
       Mr. Charles C. Platt (via FedEx, w/encl.)
       Mr. Antonio Ponvert (via reg. mail, w/encl.)
       Mr. Richard Bieder (via reg. mail, w/encl.)
       Mr. Greg Jones (via reg. mail, w/encl.)
       Mr. Marc R. Stanley (w/o encl.)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN RE: UNIVERSAL SERVICE FUND
TELEPHONE BILLING PRACTICES
LITIGATION

**Case No. 02-MD-1468-JWL**

This Order Relates to All Cases

---

## MEMORANDUM AND ORDER

This multidistrict litigation consists of numerous putative class action lawsuits arising from the practices of defendants AT&T Corporation ("AT&T") and Sprint Communications Company, L.P. ("Sprint") and non-parties MCI WORLDCOM Network Services, Inc. and MCI WorldCom Communications, Inc. (collectively "MCI")[1] of charging their customers to recoup their contributions to the federal Universal Service Fund ("USF") program. Plaintiffs are customers or former customers of defendants and MCI who allege defendants engaged in an illegal scheme of conspiring to overcharge them for USF-fund surcharges, thereby creating a secret profit center. This matter is presently before the court on plaintiffs' motion for class certification (Doc. 102). For the reasons explained below, the court will grant this motion as modified by plaintiffs' revised proposed class definition (Doc. 223) and clarified by plaintiffs' supplemental memorandum (Doc. 236).

---

[1] These MCI entities are subsidiaries of WorldCom, Inc. and, like WorldCom, Inc., have filed for bankruptcy. The bankruptcy court declined to lift the automatic stay to allow plaintiffs to pursue their claims against MCI, and therefore plaintiffs are currently precluded from naming either of these MCI entities as defendants in this case.

## FACTUAL BACKGROUND

The Federal Communications Commission (the "FCC") administers the USF, a federal fund that subsidizes telecommunications service for low-income consumers, consumers in rural and high-cost areas, schools, libraries, and health care providers. 47 U.S.C. § 254. Long distance carriers such as defendants are required to contribute a percentage of their revenues to maintaining the USF. *Id.* All major long distance carriers attempt to recover the costs of their contributions to the USF fund from their customers by way of line-item surcharges.

Plaintiffs are customers or former customers of defendants and MCI who allege defendants engaged in an illegal scheme of conspiring to overcharge them for these USF surcharges, thereby creating a secret profit center. For example, plaintiffs allege that the FCC USF contribution factor during the relevant time period in 2001 and 2002 ranged from 6.8% to 7.28%, and that during this same time period defendants and MCI imposed USF surcharges on their residential customers ranging from 9.9% to 11.5% and USF surcharges on their business customers ranging from 7.5% to 10.6%. Defendants explain that this disparity is attributable to several factors such as their declining long distance revenues, uncollectible accounts, and their attempts to recoup their costs to administer the program.

Plaintiffs' second consolidated and amended class action complaint (hereinafter referred to as simply the "complaint") asserted a number of claims against defendants. On December 1, 2003, the court entered a memorandum and order that compelled arbitration of certain aspects of some of the plaintiffs' claims, dismissed certain aspects of some of the plaintiffs' claims, and referred plaintiffs' claims under §§ 201(b) and 202(a) of the Federal

Communications Act ("FCA"), 47 U.S.C. §§ 151 *et seq.*, to the Federal Communications Commission to exercise primary jurisdiction. *See generally In re Universal Serv. Fund Tel. Billing Practices Lit.*, No. 02-1468, 2003 WL 23219878, at *1-*40 (D. Kan. Dec. 1, 2003). Given the court's rulings in that memorandum and order, the claims remaining in this court that are not currently stayed include: (1) the post-detariffing aspect of the business customers' and the AT&T California residential customer's antitrust claim under the Sherman Act, 15 U.S.C. § 1, and sections 4 and 16 of the Clayton Act, 15 U.S.C. § 15; (2) the post-detariffing aspect of the Sprint business customers' claim under the Kansas Consumer Protection Act, K.S.A. §§ 50-623 *et seq.* ("KCPA"); and (3) the business customers' and the AT&T California residential customer's breach of contract claim.  Plaintiffs now seek class certification with respect to certain aspects of their antitrust claim as well as their breach of contract claim. Plaintiffs' supplemental brief clarifies that they do not seek class certification with respect to their claim under the KCPA or the aspect of their antitrust claim involving an alleged conspiracy to implement arbitration clauses.

Plaintiffs' antitrust claim is asserted by all plaintiffs against both AT&T and Sprint. Plaintiffs ask the court to certify the following class with respect to this antitrust claim (the "conspiracy class"):

> All business long distance customers of AT&T, Sprint, or MCI in the United States and all residential long distance customers of AT&T in California who paid a USF charge on or after August 1, 2001.[2]

---

[2] Excluded from plaintiffs' proposed class and subclass definitions are defendants and MCI; any subsidiary, affiliate or other entity in which defendants or MCI have a controlling

3

This proposed conspiracy class would include the following named plaintiffs: Roger Gerdes, an AT&T long distance residential customer[3] in California; Goldman & Hellman, P.A. ("Goldman & Hellman"), an AT&T long distance business customer; Lady Di's, Inc. ("Lady Di's"), an AT&T long distance business customer; Sterling Beimfohr d/b/a Sterling Sails ("Sterling Sails"), an AT&T long distance business customer; Pressman Toy Co. ("Pressman Toy"), a Sprint long distance business customer; B&C Values, Inc. ("B&C Values"), a Sprint long distance business customer; and NYLB, Inc. d/b/a Siany ("NYLB"), an MCI long distance business customer.

Plaintiffs' breach of contract claim is asserted by the AT&T customers against AT&T and by the Sprint customers against Sprint.   Plaintiffs ask the court to certify the following two subclasses with respect to this claim (the "AT&T subclass" and the "Sprint subclass"):

> All business long distance customers of AT&T in the United States and all residential long distance customers of AT&T in California who paid a USF charge between August 1, 2001, and March 31, 2003.

> All business long distance customers of Sprint in the United States who paid a USF charge between August 1, 2001, and March 31, 2003.

---

interest; any employees, officers, or directors of defendants or MCI; legal representatives, successors, or assigns of defendants or MCI; and any justice, judge or magistrate judge of the United States who may hear the case, individually or as a fiduciary, and all other related persons, as defined in 28 U.S.C. § 455(b).

[3] These named plaintiffs are not necessarily still customers of the companies listed. More accurately, the complaint alleges they were customers during at least a portion of the relevant time period.   For ease of reference, however, the court will simply refer to each named plaintiff as an AT&T, Sprint, or MCI customer.

Mr. Gerdes, Goldman & Hellman, Lady Di's, and Sterling Sails are the proposed named plaintiffs of the AT&T subclass. Pressman Toy and B&C Values are the proposed named plaintiffs of the Sprint subclass.

## LEGAL STANDARD FOR CLASS CERTIFICATION

The decision whether to certify a class is committed to the broad discretion of the trial court. *Rector v. City & County of Denver*, 348 F.3d 935, 949 (10th Cir. 2003); *Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999); *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1287 (10th Cir. 1999). The court must perform a rigorous analysis of whether the proposed class satisfies the requirements of Rule 23. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982); *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988) (party seeking to certify a class is under a strict burden of proof to show that all of the requirements are met). The court should accept the allegations in the complaint as true, but it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and factual issues presented by plaintiff's complaints." *Hart*, 186 F.3d at 1290 n.7 (quotation omitted; brackets in original). The court may not inquire into the merits of the case. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982).

The standards for certifying a class action are set forth in Fed. R. Civ. P. 23. This rule requires all four prerequisites of Rule 23(a) and at least one of the three requirements of Rule

23(b) to be satisfied. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *In re Integra Realty Res.*, 354 F.3d 1246, 1262 (10th Cir. 2004).

## DISCUSSION

As explained below, the court finds that the four prerequisites of Rule 23(a)—that is, numerosity, commonality, typicality, and adequacy of representation—are satisfied with respect to the proposed class and both proposed subclasses. The requirements of Rule 23(b)(3) are also satisfied because common questions of law and fact will predominate this case and a class action is the most superior method for adjudicating this controversy. The court will also certify the conspiracy class pursuant to Rule 23(b)(2) because defendants have allegedly acted on grounds generally applicable to the class with respect to their USF-fund recovery practices, and therefore final injunctive relief may be warranted with respect to the conspiracy class as a whole. Accordingly, the court will certify the conspiracy class, the AT&T subclass, and the Sprint subclass under the class definitions set forth above. Further, the court will appoint co-lead counsel in this multidistrict litigation as class counsel.

## I.     Rule 23(a) Requirements

Rule 23(a) provides four prerequisites for class certification. Specifically, it provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

6

Fed. R. Civ. P. 23(a); *Integra Realty*, 354 F.3d at 1262 n.3.   Thus, the court must examine whether these four requirements of numerosity, commonality, typicality, and adequacy of representation are satisfied in this case.

### A.    Numerosity

Rule 23(a)(1) allows certification of a class only if the proposed class is so large that joinder of all class members would be impracticable.    In order to satisfy this numerosity requirement, plaintiffs "must present some evidence or otherwise establish by reasonable estimate the number of class members who may be involved."   *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978).    Plaintiffs have submitted exhibits which state that publicly available records reflect that the proposed conspiracy class, the AT&T subclass, and the Sprint subclass will consist of millions of long distance customers dispersed across the country.    Based on this information, the court finds plaintiffs have satisfied the numerosity requirement with respect to the proposed class and each of the proposed subclasses because joinder of all class members would be impracticable.    Indeed, defendants do not dispute that the proposed class and each of the proposed subclasses satisfy the numerosity requirement.

### B.    Commonality

Rule 23(a)(2) requires the presence of questions of law or fact common to the class. The question of commonality under Rule 23(a)(2) is different from the question of whether common questions predominate under Rule 23(b)(3).    The predominance and superiority requirements of Rule 23(b)(3) are far more demanding than Rule 23(a)(2)'s commonality

requirement.   *Amchem Prods.*, 521 U.S. at 624.   Under Rule 23(a)(2), a finding of commonality "requires only a single issue common to the class." *Hart*, 186 F.3d at 1288.

The court is satisfied that the members of the conspiracy class share common issues of law and fact.   These include, for example, whether defendants and MCI engaged in a combination or conspiracy to raise, fix, stabilize, and maintain USF surcharges at supracompetitive levels; the effect of the alleged combination or conspiracy on their respective surcharge rates; and whether the alleged combination or conspiracy violated the antitrust laws. *See, e.g., In re Monosodium Glutamate Antitrust Lit.*, 205 F.R.D. 229, 232 (D. Minn. 2001) ("Common questions are often found in antitrust price-fixing conspiracy cases, because by their nature, these cases deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy."); *In re Playmobil Antitrust Lit.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998) (collecting case law; explaining that courts generally find commonality requirement satisfied in cases where the complaint alleges price fixing); *In re Aluminum Phosphide Antitrust Lit.*, 160 F.R.D. 609, 613 (D. Kan. 1995) (finding commonality requirement satisfied in antitrust price-fixing case);   *see generally* 7A Charles Alan Wright et al., Federal Practice & Procedure § 1763, at 204 & n.11 (2d ed. 1986 & Supp. 2003) (observing that "[t]he claimed existence of a conspiracy to fix prices . . . in violation of the antitrust laws has been found to present common questions"; citing an abundance of case law on this issue).

The court is also satisfied that the members of the AT&T subclass and the Sprint subclass, respectively, share common issues of law and fact.   Plaintiffs' second amended

8

complaint alleges AT&T breached the "General Terms and Conditions" of its business service guide, part of its business customer contracts, and the "Miscellaneous Charges and Taxes" section of its service guide that is a part of its residential customer contracts.    One of the common issues among the AT&T subclass will be whether AT&T breached these provisions in its standard form contracts by virtue of its USF-fund recovery practices.    Similarly, the complaint alleges Sprint breached section 10.1 of its Terms and Conditions of Schedule No. 3 of its business customers' contracts.    Thus, as with the AT&T subclass's breach of contract claim, one of the common issues among the Sprint subclass will be whether Sprint breached this provision in its standard form contract.[4]    Thus, the court finds that the proposed commonality requirement is satisfied with respect to each of the proposed subclasses.    *See, e.g., In re Tri-State Crematory Lit.*, 215 F.R.D. 660, 692 (N.D. Ga. 2003) (finding commonality requirement satisfied in breach of contract claim involving form contracts); *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 213 F.R.D. 689, 694-95 (S.D. Ga. 2002) (same); *Haroco, Inc. v. Am. Nat'l Bank & Trust Co.*, 121 F.R.D. 664, 669 (N.D. Ill. 1988) (finding commonality agreement satisfied where plaintiffs' claims arose from allegations of common practice and rights derived from form contracts; case presented "the classic case for treatment as a class action" (quotation omitted)).

### C.    Typicality

---

[4] Even if plaintiffs amend their complaint to identify a different contractual provision, the substance of the relevant provision that Sprint allegedly breached will remain the same. *See infra* Section I(C).

9

Plaintiffs must also show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ P. 23(a)(3). A finding of typicality under Rule 23(a)(3) "does not require that the claims of class members be identical to the claims of the class plaintiffs." *Hart*, 186 F.3d at 1299. "'[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory.'" *Id.* (quoting *Adamson*, 855 F.2d at 675).

The named plaintiffs and the proposed members of the conspiracy class were all allegedly victims of the conspiracy among defendants and MCI to artificially inflate their USF surcharge rates and to use that surcharge as a secret profit center. Further, the breach of contract claims of the named plaintiffs of the AT&T and Sprint subclasses are representative of those of the other class members. Therefore, the court is satisfied that the named plaintiffs' claims are typical of those of the other class members. *See, e.g., In re Linerboard Antitrust Lit.*, 203 F.R.D. 197, 207 (E.D. Pa. 2001) (noting the typicality requirement is generally satisfied in antitrust disputes because the named plaintiffs need to prove a conspiracy, its effectuation, and damages, which is precisely what the absentee class members must also prove; citing case law), *aff'd*, 305 F.3d 145 (3d Cir. 2002), *cert. denied*, 123 S. Ct. 1786 (2003); *Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 116 (D. Kan. 1995) (finding the typicality requirement satisfied in breach of contract claim).

Sprint, however, argues the breach of contract claims of Pressman Toy and B&C Values are not typical of those of the other class members because the complaint alleges a

10

breach of section 10.1 of the terms and conditions of "Schedule No. 3" of the Sprint business customers' contracts, and Sprint's contracts with Pressman Toy and B&C Values do not contain a Schedule No. 3. In response, plaintiffs request leave to amend their complaint to allege a breach of section 10.8 of Schedule No. 11. At the class certification hearing, plaintiffs clarified that the issue is merely one of identifying the location of the relevant contractual provision. The substance of the contractual provision remains the same, and therefore the breach of contract claims of Pressman Toy and B&C Values are typical of those of the other members of the Sprint subclass. The court hereby grants plaintiffs leave, as requested, to file an amendment to their complaint on or before **February 27, 2003**. The pleading shall be entitled "Amendment to Second Consolidated and Amended Class Action Complaint," and it may only amend plaintiffs' breach of contract claim against Sprint. It shall set forth only the pertinent amended allegations and shall not reiterate any of the other allegations in plaintiffs' complaint.

**D.     Adequacy of Representation**

Rule 23(a)(4) requires that the named plaintiff must fairly and adequately protect the interests of class members. To meet this requirement, the named plaintiff must be a member of the class he or she seeks to represent. *E. Tex. Motor Freight Sys., Inc. v. Rodriquez*, 431 U.S. 395, 403 (1977). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002)

(quotation omitted), *cert. denied*, 123 S. Ct. 2275 (2003); *see also Amchem Prods.*, 521 U.S. at 626 n.20 (1997) ("The adequacy heading also factors in competency and conflicts of class counsel."); Fed. R. Civ. P. 23 advisory committee notes to the 2003 amendments ("Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative . . . .").

The court is satisfied that class counsel will fairly and adequately protect the interests of class members, as counsel have vigorously prosecuted this case thus far and the record does not reveal any potentially problematic conflicts of interest. In this case, the parties dispute the adequacy of the proposed named plaintiffs. Defendants argue the proposed named plaintiffs are inadequate class representatives because: (1) they have demonstrated an obvious disregard for the interests of the class by abandoning their fraud claim in an attempt to obtain class certification, *i.e.*, they have split their claims; and (2) they have impermissibly abdicated their role as class representatives to their attorneys.

### 1. Splitting of Plaintiffs' Claims

Defendants contend the proposed named plaintiffs have disregarded the interests of the class members by abandoning their fraud claim "in order to grease the wheels of class certification." Defs.' Joint Opp'n to Pls.' Mot. for Class Certification (Doc. 165), at 40. Claim splitting is generally prohibited by the doctrine of res judicata, which bars parties to a prior action or those in privity with them from raising in a subsequent proceeding any claim they could have raised in the prior action where all of the claims arise from the same set of operative facts. *See generally* Restatement (Second) of Judgments 2d § 24 (1982) (stating the general rule barring splitting claims). "[U]sual principles of both claim and issue

12

preclusion apply in class actions," *Rector v. City and County of Denver*, 348 F.3d 935, 949 (10th Cir. 2003), but "the court . . . cannot predetermine the *res judicata* effect of the judgment; this can be tested only in a subsequent action," Fed. R. Civ. P. 23 advisory committee's notes to the 1966 amendments.

Case law certainly exists to support the proposition that class certification should be denied on the basis that class representatives are inadequate when they opt to pursue certain claims on a class-wide basis while jeopardizing the class members' ability to subsequently pursue other claims. Defendants specifically rely on four cases in support of their argument. In *Clark v. Experian InformationSolutions, Inc.*, Nos. 00-1217-24, 00-1218-24 & 00-1219-24, 2001 WL 1946329, at *1-*6 (D.S.C. Mar. 19, 2001), the proposed named plaintiffs had disclaimed other, more substantial, claims of the class members in favor of a single cause of action for statutory and punitive damages under the Fair Credit Reporting Act, thereby potentially prejudicing class members who may have wanted to pursue other potential claims under the Fair Credit Reporting Act, claims for actual and compensatory damages, claims under state credit-reporting statutes, and state common law claims. *Id.* at *4. The court determined the proposed named plaintiffs did not satisfy the adequacy of representation requirement because their interests were "not aligned with those of the class." *Id.* In *Thompson v. American Tobacco Co.*, 189 F.R.D. 544 (D. Minn. 1999), the court determined the proposed named plaintiffs in a tobacco litigation case were inadequate class representatives because they alleged industry-wide fraud and sought only a smoking cessation and/or medical monitoring program while they potentially jeopardized class members' rights to bring personal

13

injury and damage claims in a later lawsuit. *Id.* at 550. The court reasoned that "the possible prejudice to class members is simply too great for the Court to conclude that the named Plaintiffs' interests are aligned with those of the class." *Id.* at 551. In *Pearl v. Allied Corp.*, 102 F.R.D. 921 (E.D. Pa. 1984), the court determined the proposed named plaintiffs were inadequate class representatives because they sought to recover the cost of removing the allegedly defective product, punitive damages, and a fund for testing, screening and treatment of future medical problems, while they abandoned their claims for present physical injury, dimunition in property value, and breach of express warranty. *Id.* at 922-23. The court reasoned that the case was analogous to *Feinstein*. *Id.* at 924. In *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 606-07 (S.D.N.Y. 1982), the court determined the proposed named plaintiffs were not adequate representatives because they asserted only claims for breach of implied warranty and sought only economic damages, when claims for death, injury, accident-related property damage, or other consequential damage could have been pursued. *Id.* at 606. The court reasoned the plaintiffs' design of the case was essentially a cosmetic move that subjected putative class members to significant risks of being told later that they had impermissibly split a single cause of action. *Id.*; *see also, e.g.*, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Lit.*, 209 F.R.D. 323, 340 (S.D.N.Y. 2002) (class representatives inadequate because they sought only injunctive relief while jeopardizing class members' personal injury claims); *W. States Wholesale, Inc. v. Synthetic Indus.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002) (class representative inadequate because it sought only injunctive

14

relief and disgorgement of profits while abandoning damage claim; conflict among class members would also arise by virtue of the need to apportion disgorged profits).

Ultimately, the proposed class representatives' inadequacy in this line of cases was attributable to conflicts of interest between the proposed named plaintiffs and the class members. *Cf. Amchem Prods.*, 521 U.S. at 625 (adequacy of representation requirement serves to uncover conflicts of interest between class representatives and class members). As one court explained, those cases

> are all distinguishable from the case at bar, in that they involved actions where the class representatives had left aside the far stronger claims for monetary damages and sought to have the weaker claims certified, for dubious strategic purposes. The courts were justifiably cautious in observing the potential preclusive effect of such weak class actions.

*Coleman v. Gen. Motors Acceptance Corp.*, No. 39-0211, 2004 WL 187332, at *18 (M.D. Tenn. Jan. 14, 2004).

In contrast, in this case the court is satisfied that the interests of the named plaintiffs are aligned with the interests of the absent class members. Although the named plaintiffs abandoned their common law fraud claim, they continue to pursue all of their other claims for compensatory damages, treble damages (a remedy akin to the punitive damage claim plaintiffs elected to forego when they abandoned their fraud claim), attorneys' fees and costs, and a judgment enjoining defendants from continuing their allegedly unlawful combination or conspiracy. This is not a case where the class representatives are pursuing relatively insignificant claims while jeopardizing the ability of class members to pursue far more substantial, meaningful claims. Rather, here the named plaintiffs simply decided to pursue

15

certain claims while abandoning a fraud claim that probably was not certifiable.   *See, e.g.,*
*Gunnells v. Healthplan Servcs., Inc.*, 348 F.3d 417, 434 (4th Cir. 2003) (holding the district
court committed reversible error by certifying a class with respect to fraud claim); *Sandwich*
*Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 211 (5th Cir. 2003)
(observing that "[f]raud actions that require proof of individual reliance cannot be certified as
Fed. R. Civ. P. 23(b)(3) class actions"; holding the district court committed reversible error
by certifying a class in a RICO fraud action); *Broussard v. Meineke Discount Muffler Shops,*
*Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) (holding fraud claims do not provide a suitable basis
for class-wide relief); *Baum v. Great W. Cities, Inc.*, 703 F.2d 1197, 1210 (10th Cir. 1983)
(affirming the district court's ruling denying class certification with respect to a fraud claim
because individual issues would predominate).   While the court can certainly appreciate the
fact that a named plaintiff's failure to assert certain claims of the absent class members might
give rise to a conflict of interest when the named plaintiff is advancing his or her own interests
at the expense of the class, the mere fact that a named plaintiff elects not to pursue one
particular claim does not necessarily create such a conflict.   Here, the named plaintiffs'
decision to abandon the fraud claim appears to have been a choice that advances the named
plaintiffs' interests as well as the interests of the absent class members, and therefore the
court is unpersuaded that any impermissible conflict of interest exists.

The court further wishes to observe that if defendants' argument were taken to its
logical extreme, class action defendants could routinely defeat class certification by simply
injecting the argument that a conflict of interest exists between the named plaintiffs and the

absent class members because the named plaintiffs are not pursuing potential fraud claims. This would, for example, as noted by plaintiffs at the class certification hearing, presumably eviscerate the possibility of certifying class actions under section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (2002), or Rule 10(b)(5) promulgated thereunder, 17 C.F.R. § 240.10b-5, because the nucleus of facts giving rise to a 10(b)(5) securities fraud case also commonly give rise to a common law fraud claim.

In sum, the court is satisfied that the named plaintiffs' interests are aligned with those of the class members and that no conflicts of interest exist that would render the named plaintiffs inadequate class representatives. *See, e.g., In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1112 (10th Cir. 2001) (finding no conflict of interest where defendant class representative's "interests were aligned with those of the other class members" in the sense that "all concerned wished to limit their liability to the lowest possible amount"); *see also, e.g., In re St. Jude Med., Inc. Silzone Heart Valves Prods. Liab. Lit.*, No. MDL 01-1396, 2003 WL 1589527, at *3-*4 (D. Minn. Mar. 27, 2003) (rejecting inadequacy of representation argument in a multidistrict litigation case dealing with surgically implanted prosthetic heart valves and finding the plaintiffs "all have the same incentive to pursue claims against" the defendant).[5]

---

[5] Plaintiffs also cite *Hicks v. Kaufman & Broad Home Corp.*, 107 Cal. Rptr. 2d 761, 774-75 (Cal. App. 2001), in support of their argument that class notice and opt-out provisions can protect class members' rights to pursue fraud claims on an individual basis if they wish to do so. There is contrary authority, however, stating that notice and opt-out procedures are insufficient to overcome conflicts of interest between the named plaintiffs and the class members. *See MTBE Lit.*, 209 F.R.D. at 338 n.23 (rejecting the same argument raised by

### 2.     Abdication of Role as Class Representative

Defendants also contend that many of the class representatives lack personal knowledge regarding their claims and have essentially abdicated their role as class representatives to their attorneys.

> [T]he general standard is that the representatives must be of such a character as to assure the vigorous prosecution or defense of the action so that the members' rights are certain to be protected.
>      . . . If the representative displays a lack of credibility regarding the allegations being made or a lack of knowledge or understanding concerning what the suit is about, then the court may conclude that Rule 23(a)(4) is not satisfied. This inquiry into the knowledge of the representative is to ensure that the party is not simply lending his name to a suit controlled entirely by the class attorney; the named party must be an adequate representative in addition to having adequate counsel.

7A Charles Alan Wright et al., Federal Practice & Procedure § 1766, at 302-11 (2d ed. 1986 & Supp. 2003) (footnotes omitted).   In making this inquiry, the court has considered the affidavits of the proposed named plaintiffs as a helpful starting point.   The court's analysis, however, will focus on the deposition testimony of the proposed named plaintiffs, which the court finds more illuminating on this particular issue.

Mr. Gerdes is an AT&T residential customer in California who is also an attorney.   His deposition testimony reflects that he understands the nature of the USF fund and the nature of

---

plaintiffs); *Clark*, 2001 WL 1946329, at *4 (D.S.C. 2001) (same).   The court need not decide this issue because, for the reasons explained above, no impermissible conflict exists between the named plaintiffs and the absent class members in this case.
      Nevertheless, with that being said, it would certainly be prudent to include language in the class notice advising potential class members that this lawsuit does not involve any fraud or FCA claims, and further that class members may risk being barred from pursuing any such potential claims in the future if they do not opt out of the class.

the allegations in this lawsuit. *See* Gerdes Dep. at 22:16-23, 25:18-26:4, 54:13-17.    He

sought out information concerning AT&T's Universal Connectivity Charge[6] from an attorney.

He conducted his own research regarding the USF fund through public records and public

filings, and he has reviewed the research performed by his attorneys.    He understands his

responsibilities as a class representative and has already carried out many of those

responsibilities. *See id.* at 50:1-12.    Defendants do not contend (indeed, they could not

credibly contend) that Mr. Gerdes is an inadequate class representative.    The court finds that

Mr. Gerdes is clearly an adequate representative for the conspiracy class and the AT&T

subclass.

Gary Hellman is an attorney and a partner with Goldman & Hellman, an AT&T

customer.    Mr. Hellman admitted in his deposition that all information he possesses regarding

AT&T's alleged overcharge has been provided by his attorney, and that he relied on counsel to

obtain factual support for the allegation of collusion in the complaint.    Mr. Hellman explained

his understanding of the case, which is that the providers are using the fund as a profit center

by charging their customers more than their contributions to the fund and keeping the

difference, and that the providers had some type of agreement that they were all going to

charge their customers more than the amount they contributed to the fund.    He understands that

his role as class representative primarily entails monitoring the litigation, keeping informed

regarding the course of the litigation, assisting counsel with prosecuting the case, reviewing

---

[6] AT&T refers to its USF surcharge as a Universal Connectivity Charge.

19

pleadings, responding to discovery, giving deposition testimony, and being consulted with respect to the course of the litigation. The court is satisfied that Goldman & Hellman will serve as an adequate representative for the conspiracy class and the AT&T subclass.

Sterling Beimfohr d/b/a Sterling Sails is also an AT&T customer. Most of his knowledge regarding the USF and related surcharge rates also came from his attorneys. He refused to state in his deposition, based on the attorney-client privilege, whether his attorney solicited his involvement in the litigation. He testified that he understands the case to be about the way the phone companies charge the Universal Connectivity fee in the sense that they are charging customers more than they are required to pay the government, and that the carriers conspired to fix the rates. He testified that he understands his role in this litigation to be "[t]o represent the class to the best of their interest." He expects to keep informed about the case and what is happening with the case. He has "read all the documents" the attorneys have sent him relating to this case. The court is also satisfied that Mr. Beimfohr is sufficiently interested in the case that Sterling Sails will serve as an adequate representative for the conspiracy class and the AT&T subclass.

Diane Markin-Venn is the owner and president of Lady Di's, an AT&T customer. Ms. Markin-Venn testified in her deposition that her knowledge regarding calculation of the USF charge also comes solely from her attorneys. She testified regarding her general understanding of the manner in which the USF fund is administered, *see* Markin-Venn Dep. at 26:18-27:21, and she believes the carriers have agreed to charge the same amount for the USF charge. She understands her role in this litigation is to represent the businesses and customers who have

been overcharged, and she further indicated she is willing to testify at trial and take on any other role needed. The court is satisfied that Lady Di's will serve as an adequate representative for the conspiracy class and the AT&T subclass.

Miriam Kane is an accounts payable manager at Pressman Toys, a Sprint customer. She testified in her deposition that the only information she knows about the alleged conspiracy comes from her attorney,[7] which is how Pressman Toys became involved in this lawsuit. Ms. Kane testified that her understanding of the USF surcharge rate was that the carriers are supposed to collect "whatever the government told them was the cost," but "weren't supposed to jack up the rate." She testified that as a class representative Pressman Toys is supposed to "produce documents that are needed and stand up for the rights not only of our company but everyone else in the class action suit and protect their rights as best we can." She further testified that she got involved in the litigation "[b]ecause it bothered [her] and it bothered the company that we were misled or things were misrepresented." She stated: "[W]e try to cut costs and . . . to be overpaying for something that was unnecessary . . . it's . . . part of doing business where we try to catch things like that and not be duped." The court is satisfied that Pressman Toys will serve as an adequate representative for the conspiracy class and the Sprint subclass.

---

[7] Defendants have pointed out that Ms. Kane's attorney, Michael Kane, is also her son. Defendants do not argue, however, that Pressman Toys is an inadequate class representative on this basis. The court finds this fact to be immaterial because Mr. Kane has not entered his appearance in this case nor is there any suggestion that he has taken any active role in this case.

21

Ronald Johnson is the controller and Rule 30(b)(6) designee of B&C Values, a Sprint customer. He testified in his deposition that his attorneys initiated contact with him and his knowledge of the alleged overcharge came solely from the complaint and from allegedly privileged discussions with his attorneys. He testified that his understanding of the case is that the USF charge was understood to be a pass-through charge to the FCC and "that may not be the case" and that the companies "may be setting the USF rate." He has tried to keep up in terms of what is going on with the case by reading the complaint and other documents. He understands that B&C Values has a fiduciary duty to others in the same position and that B&C is representing others in the same position who are using Sprint as a long distance carrier. The court is persuaded that B&C Values will serve as an adequate representative for the conspiracy class and the Sprint subclass.

David Leib is the owner and president of NYLB, an MCI customer. His deposition testimony reflects that his involvement in this case arose from a routine telephone conversation with a childhood friend, who happened to be an attorney. His knowledge of MCI's allegedly inflated USF surcharge rates came from his attorney-friend, as did his involvement in this case. His knowledge of his claims came solely from his attorney and from reviewing the complaints. During Mr. Leib's deposition, he demonstrated adequate familiarity and interest in the case. He understands the nature of his claims against AT&T and Sprint, *i.e.*, "[f]or price fixing of the USF fee," and he is familiar with the allegations in the complaint. Perhaps most importantly, his deposition testimony reflects that he has been playing an active role as a named plaintiff. He understands that his duties as a class representative include hiring

22

competent counsel, appearing at trial, monitoring and participating in the litigation, and participating in discovery. He communicates with counsel when new documents come about, he reviews faxes and e-mails, he stays "in the general loop of what's going on," and he talks "a good amount" with his attorney by phone and in person. Based on Mr. Leib's familiarity with the nature of the case and his demonstrated willingness to carry out the duties of a class representative, the court is satisfied that NYLB will serve as an adequate representative for the conspiracy class.

## II.    Rule 23(b) Requirements

Now that the court has determined Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation are satisfied, it must also find that the requirements of one of the subsections of Rule 23(b) are satisfied. In this case, plaintiffs ask the court to certify the classes under Rule 23(b)(2) and 23(b)(3). Defendants argue that the court should not certify a Rule 23(b)(3) class because individual rather than common issues will predominate the class, and also that the court should not certify a Rule 23(b)(2) class because the predominant form of relief sought by plaintiffs is money damages. For the reasons explained below, the court disagrees and finds that class certification under both Rule 23(b)(2) and Rule 23(b)(3) is appropriate.

### A.    Certification Under Rule 23(b)(3)

To certify a class under Rule 23(b)(3), the court must find that: (1) common questions predominate over questions affecting only individual members; and (2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.

23

Fed. R. Civ. P. 23(b)(3); *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 615 (1997). In this case, the court finds that both of these requirements are satisfied with respect to the conspiracy class and both subclasses.

### 1.     Predominance: Plaintiffs' Antitrust Claim

In order for plaintiffs to prevail on their antitrust price-fixing conspiracy claim, they must prove: (1) that defendants violated the antitrust laws; (2) the fact of damage, which is also called impact; and (3) the amount of damages. *See Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 675-76 (5th Cir. 1982) (liability under the Clayton Act requires showing a violation of the antitrust laws, the fact of damage, and some indication of the amount of damage); *In re Linerboard Antitrust Lit.*, 203 F.R.D. 197, 214 (E.D. Pa. 2001) (listing these three elements), *aff'd*, 305 F.3d 145 (3d Cir. 2002), *cert. denied*, 123 S. Ct. 1786 (2003); *In re Playmobil Antitrust Lit.*, 35 F. Supp. 2d 231, 240-41, 245 (E.D.N.Y. 1998) (same); *see also Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th Cir. 1992) (plaintiff seeking treble damages under the Clayton Act must establish an antitrust violation and impact).

### a.     Violation of the Antitrust Laws

The issue of whether defendants violated the antitrust laws will be a common one among all of the class members. The central allegation in plaintiffs' complaint is that defendants and MCI engaged in a combination or conspiracy to raise, fix, or maintain at artificially high and non-competitive levels their USF surcharge rates. Thus, plaintiffs can present common proof on the issue of whether defendants violated the antitrust laws by engaging in this combination or conspiracy. This issue will necessarily focus on the conduct of defendants and MCI, not on