≡ 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - -

LOU HADDOCK, as trustee of the
Flyte Tool & Die, Incorporated
Deferred Compensation Plan,
PETER WIBERG, as trustee of the
Crown Tool & Die Deferred Compensation
Plan, ALAN GOUSE, as trustee of the
Greater Hartford Easter Seal Rehabilitation
Center Deferred Compensation Plan,
RONALD SIMON as trustee of the
Hartford Roofing, Inc. Deferred
Compensation Plan, CARL ANDERSON
For the Anderson & Ferdon Deferred
Compensation Plan,
                    Plaintiffs,

      -against-                        Civ. No.
                                    3:01 CV 1552(CFD)

NATIONWIDE FINANCIAL SERVICES
INC., and NATIONWIDE LIFE
INSURANCE CO.,

                    Defendants.
- - - - - - - - - - - - - - - -x


    DEPOSITION of SAMUEL ISSACHAROFF, taken by

Defendants, at the offices of LeBoeuf, Lamb,

Greene & MacRae, 125 West 55th Street, New York,

New York, pursuant to Agreement, on April 4, 2003,

commencing at 10:12 a.m., before Jeffrey Benz, a

Registered Professional Reporter and Notary Public

within and for the State of New York.

Page 53

Issacharoff

tell you about the kinds of proof that would be
introduced on various claims?

   A.   We had at least one, and probably more
than one discussion about how you would prove the
substitution claim.  You had a different term for
it before, but I called it the substitution claim.

   Q.   That was the self-dealing claim?

   A.   That was your term.  Maybe that's their
term.  I understood it as a constriction of the
scope of available mutual funds.

   Q.   The allegation was that Nationwide was
either adding or eliminating funds based on
whether or not they would make payments.

   A.   That is correct.

   Q.   And what did Mr. Stanley and Mr. -- or
Mr. Mandel tell you about the kinds of proof that
would be introduced on those, on that subject
point?

   A.   There was a discussion about the use of
market performance of those plans versus other
plans, as the benchmark for the -- the -- both the
liability and the damages.

   Q.   What specifically did Mr. Mandel or
Mr. Stanley say about the use of market

Issacharoff

1 performance as a benchmark for liability and

2 damage?

3      A.   I don't recall.

4      Q.   Was there any discussion about the need

5 for proof that Nationwide was, in fact, adding or

6 eliminating funds?

7      A.   There may have been.  That was not the

8 area that I was focussed on.

9      Q.   Why were you focussed on the use of

10 market performance as a benchmark?

11      A.   Because I've learned in my experience

12 that successful handling of class actions require

13 not just a theory of liability that is sensible in

14 the aggregate, but a measure of relief that

15 corresponds to the theory of liability and that

16 can be effectively handled in the aggregate.

17      And by handled in the aggregate, I don't

18 mean that it's not amenable to individual

19 calibration, but rather that the theory of the

20 harm is based upon the defendant's actual conduct,

21 rather than what any particular individual -- how

22 any particular individual experienced the harm.

23      Q.   And it was your thought that there was

24 not that connection between the measure of relief

Issacharoff

1
2    and the theory of liability with respect to the
3    so-called substitution claim.
4         A.    I was concerned because the theory of
5    liability and of damages turned on a
6    counterfactual, and particularly, to my mind, the
7    calculation of damages turned on a counterfactual
8    assumption of what would have happened absent
9    the -- the limitation of the scope of funds by the
10   conduct alleged by Nationwide.
11              And I expressed my reservation that I
12   did not understand how one could establish -- or
13   I -- not -- not that one could not, but that I was
14   very -- I had trouble thinking of cases in which
15   damages had been assessed on a counterfactual
16   basis.
17        Q.    What does it mean to make a
18   counterfactual assumption in a case such as this?
19        A.    What would have happened had the facts
20   been different.
21        Q.    So your concern was that the market
22   performance of the funds might have been the same
23   regardless of whether Nationwide added or
24   eliminated funds.  Is that essentially what you're
25   saying?

Issacharoff

1

2  could not possibly formulate an opinion on the

3  manageability.

4          MR. PONVERT:  John, can we take five

5      minutes at some point?

6          MR. PLATT:  Yes, we can, whenever you

7      like.  Now would be a good time?

8          MR. PONVERT:  Yes.  Thanks.

9          (A recess was taken.)

10     Q.   When you expressed your concerns about

11  the substitution claim to Mr. Mandel and

12  Mr. Stanley, how did they respond?

13     A.   My recollection is that Mr. Stanley, at

14  some point early on in this, indicated that he

15  thought that this was a claim that they were not

16  intending to pursue.

17     Q.   Did he say they were not intending to

18  pursue it based on your thoughts?

19     A.   No.

20     Q.   I think you also said that as part of

21  these discussions with Mr. Stanley and Mr. Mandel,

22  you talked about the effect of the judge's ruling.

23     A.   Yes.

24     Q.   Was -- what specifically was the

25  discussion about the effect of the judge's ruling?

Page 204

1                    Issacharoff

2    its ability to raise defenses.

3            Their claim is that it's really

4    irrelevant why they wanted to do it.  Your client,

5    because of its fiduciary relationship to the

6    plans, was preventing -- and the plan

7    participants, was prevented from doing so.

8        Q.    We've talked about disclosures that may

9    or may not have been made in connection with this

10   case.

11       A.    Right.

12       Q.    Would differences in the disclosures

13   that were made about these arrangements between

14   the mutual funds and Nationwide affect your class

15   certification analysis in this case?

16       A.    It could.

17       Q.    How could it affect your analysis?

18       A.    If your client had contractually

19   disclosed and secured the agreement of the plans

20   that it was charging, not only its 2 percent

21   against plan assets, but recovering 2 percent

22   additional from the mutual funds -- in other

23   words, if it disclosed the entirety of the amount

24   that it was receiving in revenues from its role in

25   being a plan fiduciary, then it would arguably

Page 205

1                    Issacharoff

2    defeat liability.  And if that is the case, there

3    will be differences from plan to plan.

4        Q.   If there were differences in the

5    disclosures regarding the arrangements themselves,

6    would that affect your class certification

7    analysis?

8        A.   I don't understand the term

9    "arrangements themselves."

10       Q.   Well, there were contracts between

11   Nationwide and mutual funds, allegedly, whereby

12   Nationwide received money from the mutual funds.

13   Is that right?

14       A.   Yes.

15       Q.   And if there are differences in the

16   disclosure with respect to those arrangements,

17   without disclosure of the details, does that --

18   would that affect your class certification

19   analysis?

20       A.   I don't understand, arrangements.

21   Disclosure of what arrangements to whom?

22       Q.   Let's define the arrangements as the

23   contracts between the mutual funds and the

24   Nationwide entities.

25       A.   Right.

Page 206

                      Issacharoff

1

2      Q.    If there were disclosure with respect to

3   those arrangements or contracts, would that affect

4   your class certification analysis?

5      A.    That's the same question as before.

6      Q.    Right.  Well, you alleged it, that there

7   would have to be disclosure with respect to the

8   entirety of the amount of money, and I'm asking

9   you the more general question.

10     A.    The plaintiffs' allegation is that,

11  without that kind of full disclosure of the total

12  amount that you are getting from the relationship,

13  you are not discharging your fiduciary obligations

14  per ERISA.

15     Q.    So it's your understanding that if there

16  were differences in terms of the disclosure, it

17  would be irrelevant, unless there was complete

18  disclosure about every last detail of the

19  arrangement.  Is that correct?

20     A.    For class certification purposes, every

21  last detail is a facetious formulation.

22  Obviously, you know, nobody can disclose every

23  last detail.  We met on Tuesday in the blue room

24  for lunch.  I had a tuna fish sandwich.  I mean,

25  that's preposterous.  So obviously that's not the

1                          Issacharoff
2     position I'm taking.
3            The plaintiffs' allegation is that you
4     cannot receive money unless it is known how much
5     you are receiving.  That's their allegation.  They
6     rely on some Department of Labor advisory
7     opinions.  They rely on various things that they
8     think are going to help them make that claim.  If
9     you can prove that that is not so, then you're
10    going to win the case, assuming you disclose --
11    assuming you disclose something.
12           Because your question is really this, as
13    I understand it.  And correct me if I'm wrong.
14    Your question really is, what if we said, we're
15    charging 2 percent from you, and we may be getting
16    some money back elsewhere from mutual funds for
17    bulk contracting benefits, or something like that.
18    Is that enough?  Their allegation is no.
19         Q.   I'm asking you, professor, whether or
20    not, for purposes of class certification analysis,
21    whether differences in the levels of disclosure
22    would affect your analysis.
23         A.   It could or it could not.  It depends
24    what the relevant levels are.  Let's say you need
25    to hit -- just to put a mathematical number, you

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing Declaration of

Dennis F. Kerrigan, Jr. was served via overnight mail, on this 6th day of July, 2004, on the

following counsel of record:

> Richard A. Bieder, Esq.
> Antonio Ponvert III, Esq.
> Koskoff, Koskoff & Bieder
> 350 Fairfield Avenue
> Bridgeport, CT 06604
>
> Gregory G. Jones, Esq.
> Law Firm of Gregory G. Jones, P.C.
> 603 South Main Street, Suite 200
> Grapevine, TX 76051
>
> Marc R. Stanley, Esq.
> Roger L. Mandel, Esq.
> Stanley, Mandel & Iola
> 3100 Monticello Avenue
> Suite 750
> Dallas, TX 75205

Dennis F. Kerrigan, Jr.