UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT



2004 JUL -7  A 9: 17

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing, ALAN GOUSE, as trustee of Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, EDWARD KAPLAN, as trustee of the Hartford Roofing 401(k) Profit Sharing Plan and the Hartford South, L.L.C. 401(k) Profit Sharing Plan, and DENNIS FERDON, as trustee of the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan, | CIVIL ACTION NO.: 3:01CV1552 (SRU) |
| PLAINTIFFS, | |
| v. | July 6, 2004 |
| NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO., | |
| DEFENDANTS. | |

**SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

PROCEDURAL HISTORY........................................................................................... 3

    A.    Plaintiffs' Factual Allegations and Legal Theories Prior to the Summary
        Judgment Hearing .................................................................................... 3

    B.    Plaintiffs' Factual Allegations and Legal Theories at and after the
        Summary Judgment Hearing..................................................................... 5

ARGUMENT................................................................................................................7

    A.    Defendants' Fiduciary Duties, If Any, Were Limited to Their Exercise of
        Authority or Control Over the Accumulation Units ................................. 8

    B.    Plaintiffs' Claim Does Not Arise out of the Exercise of Authority or
        Control over Plan Assets by Nationwide ................................................ 10

    C.    Defendants Were Custodians, Not Fiduciaries, Regarding the
        Accumulation Units ............................................................................... 15

    D.    Plaintiffs Have Failed to Establish that the Challenged Payments Were
        Plan Assets Under ERISA. ..................................................................... 19

    E.    If This Action Is Allowed To Proceed, Plaintiffs Should File a New
        Motion for Class Certification ............................................................... 22

CONCLUSION...........................................................................................................24

# TABLE OF AUTHORITIES

## CASES

Acosta v. Pac. Enters., Inc., 950 F.2d 611 (9th Cir. 1992) ............................................21

Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona), 125 F.3d 715 (9th Cir. 1997) ..................................................................................................................15, 17

Beddall v. Sate Street Bank and Trust Co., 137 F.3d 12 (1st Cir. 1998)......................17

Blatt v. Marshall & Lassman, 812 F.2d 810 (1987) ....................................................21

Brandt v. Grounds, 687 F.2d 895 (7th Cir. 1982)....................................................9, 10

F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250 (2d Cir. 1987)........8, 11

Financial Institutions Retirement Fund v. Office of Thrift Supervision, 766 F. Supp. 1302 (S.D.N.Y. 1991)............................................................................................................7

Flanigan v. General Electric Co., 242 F.3d 78 (2d Cir. 2001)..................................9, 10

Friend v. Sanwa Bank California, 35 F.3d 466 (9th Cir. 1994)......................................9

Gray v. Briggs, 45 F. Supp. 2d 316 (S.D.N.Y. 1999)..........................................9, 10, 11

Health Care Service Corp. v. Tap Pharmaceutical Prods., Inc., 274 F. Supp. 2d 807 (E.D. Tex. 2003)...............................................................................................................23

Lopresti v. Terwilliger, 126 F.3d 34 (2d Cir. 1997) ....................................................20

Lowen v. Tower Asset Management, 829 F.2d 1209 (2d Cir. 1987) ........................13, 14

Mass Mutual Life Ins. Co. v. Russell, 473 U.S. 134 (1985) ..........................................17

NYSA-ILA Medical & Clinical Services Fund v. Catucci, 60 F. Supp. 194 (S.D.N.Y. 1999) ...............................................................................................................18

New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002)..........................................................17

Pegram v. Herdrich, 530 U.S. 211 (2000) ..........................................................8, 9, 13

Pension Fund Mid-Jersey Trucking Industry Local 701 v. Omni Funding Group, 731 F. Supp. 161 (D. N.J. 1990) ..................................................................................9, 10, 11, 15

Reich v. Goldstein, 839 F. Supp. 1068 (S.D.N.Y. 1993)................................................20

Robbins v. First American Bank, 514 F. Supp. 1183 (N.D. Ill. 1981) .................................... 15-16

Schulist v. Blue Cross of Iowa, 717 F.2d 1127 (7th Cir. 1983)........................................21

Shultz v. Texaco, Inc., 127 F. Supp. 2d 443 (S.D.N.Y. 2001) ........................................8

## STATUTES

29 C.F.R. § 2509.75-8...........................................................................................8, 17

29 C.F.R. §§ 2510.3-101 & 2510.3-102 ......................................................................20

29 C.F.R. § 2510.3-101(a)(2)...................................................................................20

29 U.S.C. § 1002(21)(A)..........................................................................................8

29 U.S.C. § 1101(b)(1) ...........................................................................................20

During the June 1, 2004, hearing on Defendants' Motion for Summary Judgment, Plaintiffs raised a series of new factual allegations and legal theories. Accordingly, Defendants requested and were granted leave to file this Supplemental Memorandum of Law. On June 4, 2004, the Court ordered Plaintiffs to file an Amended Complaint setting forth their current theories of liability. That Fourth Amended Complaint was filed on June 15, 2004, and is also addressed in this Supplemental Memorandum.

## INTRODUCTION

Plaintiffs purport to be the trustees of five retirement plans that purchased Nationwide variable annuities and invested money in those annuities. Plaintiffs allege that the retirement plans or their participants allocated the money they invested into variable accounts offered in connection with the variable annuities, and that sub-accounts of the variable accounts in turn invested money in mutual funds as designated by the participants.

Plaintiffs' legal claim is that ERISA entitles them to receive any payments that Defendants received pursuant to separate contracts between Defendants and affiliates of the mutual funds.[1] There is no ERISA precedent for that claim. Plaintiffs have tried to fit their claim into the ERISA framework by offering a series of factual allegations and legal theories over the last several years. Throughout that period, Defendants have pointed out the inadequacy of Plaintiffs' then-current story, only to have Plaintiffs switch to a new story and insist that the

---

[1]    Any such payments were made for services, but because Defendants need not prove that fact in order to obtain summary judgment, they are referred to herein only as "payments" or "challenged payments" rather than "service payments." These payments were made by and to various entities, and those differences would be relevant to class certification and on the merits. However, for ease of presentation, and without waiving any right to later present the full complexity of these transactions, this Memorandum will refer to them as payments by mutual funds and to "Defendants."

1

Court should not resolve the case. This pattern of evasion continued through the June 1 summary judgment hearing. At that hearing, Plaintiffs changed their allegations and theories of the case yet again, and the Court thereafter ordered them to file yet another complaint. *See* Order of June 4, 2004 (Docket 232).

Plaintiffs' Fourth Amended Complaint does not allow Plaintiffs to avoid summary judgment. The new Complaint asserts that Defendants were ERISA fiduciaries because they exercised authority or control over accumulation units that qualify as ERISA "plan assets" and also asserts that Defendants received payments from mutual funds. However, Plaintiffs still fail to connect those two assertions in a way that states a claim under ERISA. This hole in the middle of Plaintiffs' ERISA case entitles Defendants to summary judgment. *See infra* at 8-17.

In addition, the new Complaint alleges that Defendants simultaneously obtained and breached ERISA fiduciary status when they received the challenged payments. This was Plaintiffs' primary theory prior to the June 1 hearing. As noted in Defendants' prior summary judgment briefing and at the hearing, this allegation fails as a matter of law because Plaintiffs have admitted that (1) the payments were made with money belonging to the mutual funds -- not the plans -- and thus they were not "plan assets" that could create ERISA fiduciary status, and (2) Plaintiffs will not attempt to trace those payments to "plan assets" (which tracing would in any event be impossible as a matter of law). These undisputed facts demonstrate that ERISA does not govern Defendants' conduct with regard to those payments. *See infra* at 17-20.

## PROCEDURAL HISTORY

### A.    Plaintiffs' Factual Allegations and Legal Theories Prior to the Summary Judgment Hearing

As noted above, prior to the June 1 hearing, Plaintiffs alleged that Defendants *became*

ERISA fiduciaries *because* the payments that Defendants received from mutual fund affiliates

either consisted of or diminished "plan assets." *See, e.g.,* Pls.' First Am. Supp. Resps. and Objs.

to Defs.' Third Set of Interrogatories, Response No. 2 at p.4 ("Pls.' Am. Resps.") (stating that

"the mutual fund payments constitute plan assets in the hands of Nationwide"); *see also* Pls.'

Opp. to Defs.' Mot. for Summary Judgment at 1 ("Pls.' Opp.") (Docket 205) ("As a matter of

law, Nationwide's pocketing of the revenue sharing payments constitutes it dealing with plan

assets in its own interest and for its own account, and Nationwide should be forced by the Court

to return those assets.").[2/]

Along the way to that position, Plaintiffs expressly dropped all claims that Defendants

owed or breached any ERISA fiduciary duties by engaging in self-dealing,[3/] by acting as an

---

[2/]    *See also* Pls.' First Am. Mem. in Support of Plaintiffs' First Am. Mot. For Class Certification (Docket 129) ("Pls.' Class Cert. Mem.") at 1-2 ("Nationwide . . . received payments from mutual funds that served to directly reduce the value of Class members' investments [and t]his scheme made Nationwide a fiduciary as to the assets it affected and simultaneously breached its fiduciary duties."); Pls.' Am. Resps., Response No. 2 at p.5 ("Plaintiffs do not claim that any specific acts, communications or omissions *other than* Nationwide's arranging for the payment of skimmed plan assets . . . and Nationwide's acceptance and retention of the payments of skimmed plan assets, as described above, constitute . . . a breach of fiduciary duty by Nationwide.") (emphasis added). Pls.' Am. Resps. are attached as Exhibit 14 to the Dec. of Mark Bieter in Support of Defs.' Rev. Mem. of Law in Support of Defs.' Mot. for Summary Judgment (Docket 187).

[3/]    *See* Pls.' Mot. for Leave to File Second Am. Class Action Compl. at 2 (Docket 55) ("Plaintiffs' First Amended Class Action Complaint pleads ... a claim based upon Defendants' self-dealing in the selection of mutual funds offered to the plans and their participants. Plaintiffs seek leave to file a second amended complaint primarily to drop [that] claim.").

investment advisor,[4] by selecting inferior funds for inclusion in the annuity contracts,[5] by

making misrepresentations or non-disclosures,[6] or by failing to fully perform any obligations

imposed by the annuity contracts.[7] Plaintiffs dropped these allegations for two strategic

purposes: to narrow the claims for which they would seek class certification, and because they

could not or would not respond to Defendants' discovery requests on these issues.[8]

---

[4]      *See, e.g.*, Pl. Carl Anderson's Reps. and Objs. to Defs.' First Set of Interrogatories,
Response No. 9 (refusing to answer interrogatory regarding allegation in First Amended
Complaint that Defendant provided investment advice for a fee because Plaintiffs planned to
drop that allegation in the then-forthcoming Second Amended Class Action Complaint) (Exhibit
C to the Declaration of Dennis F. Kerrigan (Docket 145)).

[5]      *See* Pls.' Mot. for Leave to File Third Am. Compl. at 4 (Docket 83) ("[A]llegations
concerning the defendants' ability to substitute or delete mutual funds ... [are] entirely irrelevant
...."); Pls.' Supp. Resps. and Objs. to Defs.' First Set of Interrogatories, Response No. 4-1
(refusing to answer interrogatories regarding Defendants' alleged selection of inferior funds
because those allegations are "not part of the Third Amended Complaint") (Exhibit I to the
Declaration of Dennis F. Kerrigan (Docket 145)).

[6]      *See* Pls.' Am. Resps., Response No. 2 ("Plaintiffs specifically disavow seeking relief
based upon any misrepresentations or omissions by Nationwide . . . .").

[7]      *See* Pls.' Mot. for Leave to File Third Am. Compl. at 1-2 (stating that "the proposed
complaint . . . deletes all allegations concerning the defendants' alleged breach of contract").

[8]      *See, e.g.,* Transcript of April 4, 2003, Deposition of Plaintiffs' putative class certification
expert Samuel Issacharoff (Ex. A to the Declaration of Dennis Kerrigan in Support of Defs.'
Mot. for Summary Judgment) at 53-55, 58 (expressing "reservation[s]" and "concern[s]" that
claims regarding "adding or eliminating funds based on whether or not they would make
payments" would be difficult to prove on a class basis); *id.* at 204-207 (noting that different
disclosures about the challenged payments could affect the class certification analysis); Pls.'
Supp. Resps. and Objs. to Defs.' First Set of Interrogatories, Response Nos. 4, 5, 6 (refusing to
answer interrogatories regarding alleged self dealing, receipt of kickbacks, and selection of
inferior funds or selection of funds based only on willingness to make payments because those
allegations are "not part of the Third Amended Complaint"); Pls.' Mot. for Leave to File Third
Am. Compl. at 4 (stating that breach of contract claims are being dropped "in order that breach
of contract issues not become the focus" of discovery or class certification proceedings).

After the close of class certification discovery, Defendants moved for summary judgment on the basis of Plaintiffs' interrogatory answers. In response, Plaintiffs recanted those answers, and submitted new ones. Their re-written answers alleged that Plaintiffs received accumulation units when they invested money in their variable annuity contracts; that those units were "plan assets" under ERISA; and that Defendants wrongfully caused those units to diminish in value by receiving the challenged payments from the mutual funds. *See* Pls.' Am. Resps., Response No. 2 at 2-3.

Defendants renewed their motion for summary judgment and addressed Plaintiffs' altered interrogatory answers. *See* Defs.' Rev. Mem. of Law in Support of Defs.' Mot. for Summary Judgment (Defs.' Mem.) (Docket 186). Plaintiffs' opposition to that revised motion confined their new allegations regarding the diminishment of the accumulation units as plan assets to the back of their brief, where they were characterized as a "fall-back position." Pls.' Opp. at 34-37. Plaintiffs continued to argue primarily that the payments that Defendants allegedly received were "plan assets" and that Defendants *became* ERISA fiduciaries *because* Defendants received them. *See id* at 1, 14. Indeed, Plaintiffs asserted that "[i]f the Court holds that Nationwide constitutes a fiduciary as to the revenue sharing payments, it need not address any issues relating to the accumulation units." *Id.* at 34.

**B.      Plaintiffs' Factual Allegations and Legal Theories at and after the Summary Judgment Hearing**

At the June 1 summary judgment hearing, Plaintiffs yet again changed their claim. As described above, Plaintiffs previously had asserted that Defendants' alleged receipt of payments from the mutual funds simultaneously created and violated an ERISA duty *because* the payments were plan assets. *See supra* at 3. On June 1, however, Plaintiffs claimed that Defendants'

5

alleged receipt of payments violated ERISA *regardless* of whether the payments were "plan assets" under ERISA.

Plaintiffs justified this new theory by asserting that since Defendants had fiduciary duties to the plans with regard to the accumulation units, that was sufficient to create an ERISA fiduciary duty with respect to the challenged payments. However, despite repeated questions from the Court, Plaintiffs never explained *how* Defendants' alleged ERISA fiduciary duty regarding the accumulation units was meaningfully connected to Defendants' receipt of the payments. *See* Transcript of June 1, 2004, Oral Argument (Docket 231) ("Tr.") at 38, 42-44, 47-48, 50, 52-53. For example, the Court properly asked: "What has happened at the expense of the plan?" *Id.* at 42. Plaintiffs had no adequate response, conceding that no money was taken from the plan and saying that the only harm was that the payments were not given as a gift to the plan by Defendants. *Id.* at 43.

In making their new claim, Plaintiffs conceded that the payments were not made from money belonging to the plans and would not be traced back to plan assets. And Plaintiffs admitted that Defendants' alleged fiduciary duty with regard to the accumulation units did not necessarily make Defendants a fiduciary regarding the challenged payments.[9]

Plaintiffs' new Fourth Amended Complaint echoes Plaintiffs' oral argument -- and similarly fails to connect the accumulation units (and Defendants' alleged exercise of authority or control with respect to their management or disposition), on the one hand, and Defendants'

---

[9]     *See* Tr. at 85-86 ("Finally, on this thing -- well, they can be a fiduciary as to . . . accumulation units, but not as to the revenue sharing payments. That's . . . a basic principle, as you pointed out, . . . . but all we're saying is not that this automatically makes them a fiduciary as to that, but it's one of the reasons it informs the fact as to why the revenue sharing payments are plan assets . . . .").

alleged receipt of payments from the mutual funds under separate contracts, on the other.

Instead, the Fourth Amended Complaint contains only conclusory allegations that the challenged

payments "are paid solely as a result of Nationwide's position as a fiduciary as to the

accumulation units," Fourth Am. Compl. ¶¶ 53-54 (Docket 235), and that Defendants used their

"possession of [the accumulation units] to generate the revenue sharing payments which [they]

pocket," *id.* ¶¶ 56-57.  Plaintiffs make no allegation, and have offered no proof, regarding *how*

Defendants used their alleged authority and control respecting the management or disposition of

the units to generate the payments.

Plaintiffs' latest complaint also repeats their earlier claim that "the revenue sharing

payments themselves constitute plan assets under the functional approach." *Id.* ¶ 54.  However,

Plaintiffs repeatedly add that Defendants are liable "regardless of whether the revenue sharing

payments constitute plan assets in Nationwide's hands," *see id.* ¶¶ 56, 57, and the Fourth

Amended Complaint replaces earlier references to the challenged payments as "plan assets" with

references to "revenue sharing payments." *Compare, e.g., id.* at ¶¶ 1, 2, 43, 60 *with* Third. Am.

Compl., ¶¶ 1, 2, 42, 45 (Docket 95).

## ARGUMENT

Summary judgment is appropriate here because Plaintiffs have still failed -- despite

countless opportunities -- to show how or why Defendants owed or breached any ERISA

fiduciary duty with respect to any payments they received from the mutual funds.  ERISA is

concerned with preventing fiduciaries from improperly exercising authority and control with

respect to the management or disposition of plan assets.  *See, e.g., Financial Institutions*

*Retirement Fund v. Office of Thrift Supervision*, 766 F. Supp. 1302, 1310 (S.D.N.Y. 1991)

(ERISA fiduciary duties "protect the assets of the plan for the plan beneficiaries").  The big hole

7

in the middle of Plaintiffs' case is that they cannot connect their allegation that Defendants

exercised authority or control over plan assets to their allegation that Defendants violated ERISA

by receiving the challenged payments.  The hole is only made wider by the fact that Plaintiffs'

allegation that Defendants had some authority or control over the accumulation units is

contradicted by the relevant agreements.  To the extent that Plaintiffs seek to sidestep this hole

by repeating their allegation that the challenged payments were themselves ERISA "plan assets,"

they are blocked by their two admissions that the payments were not made out of plan assets and

will not be traced to plan assets.  In short, the alternatives presented to the Court are to grant

summary judgment to Defendants or to expand ERISA liability beyond well-established

boundaries.

A.    **Defendants' Fiduciary Duties, If Any, Were Limited to Their Exercise of Authority
or Control Over the Accumulation Units**

Under ERISA, an entity is a fiduciary only "to the extent" it is exercising authority or

control with respect to the management or disposition of plan assets.  *See* 29 U.S.C. §

1002(21)(A); *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000).[10]  Thus, "a person may be an

ERISA fiduciary with respect to certain matters but not others, for he has that status only 'to the

extent' that he has or exercises the described authority or responsibility."  *F.H. Krear & Co. v.

Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987); *see also Shultz v. Texaco, Inc.*,

127 F. Supp. 2d 443, 451 (S.D.N.Y. 2001) ("[A] person is a fiduciary only with respect to those

---

[10]    *See also* 29 C.F.R. § 2509.75-8 ("A fiduciary with respect the plan who is not a named
fiduciary is a fiduciary only to the extent that he or she performs one or more of the functions
described in section 3(21)(A) of the Act.  The personal liability of a fiduciary who is not a named
fiduciary is generally *limited to the fiduciary functions which he or she performs* with respect to
the plan.") (emphasis added).  There is no allegation in this case that Defendants are named
fiduciaries in the plan documents.

portions of a plan over which he exercises discretion or control. Thus, a claim for a breach of fiduciary duties is only viable if the person accused of such a breach is a fiduciary with respect to the particular activity being challenged.") (citation omitted).[11/] This limitation on ERISA liability is commonly explained in the cases as meaning that that a fiduciary can wear "two hats," sometimes acting in a "corporate" capacity, and sometimes acting in "fiduciary" capacity. *See Pegram*, 530 U.S. at 225. Consistent with this basic principle, Plaintiffs have conceded that Defendants are sometimes free of any fiduciary obligation to them. *See* Transcript of November 6, 2003, Discovery Hearing Before Magistrate Judge Garfinkel at 5 (Docket 169) (Argument of Roger Mandel) ("[Defendants are] not a general purpose fiduciary, they're not a trustee, they're not a fiduciary for all purposes.").

When a party is not exercising its fiduciary responsibilities, it may take actions for its own benefit -- even if those actions have adverse consequences for the plan. *See Pegram*, 530 U.S. at 225; *Friend*, 35 F.3d at 470. Thus, in *Pegram*, even though the defendant HMO was an ERISA fiduciary, that status did not extend to the patient treatment decisions it made even though those decisions benefited the defendant and reduced plan benefits. Similarly, in *Friend*, the defendant bank did not act as a fiduciary when it refused to extend a line of credit, even though that corporate action rendered plan assets -- over which it was a trustee -- worthless. *See Friend*, 35 F.3d at 470. Likewise, in *Flanigan*, a company that transferred surplus ERISA pension assets in order to receive a higher sale price during a spin off transaction was not acting

---

[11/]     *See also Flanigan v. General Electric Co.*, 242 F.3d 78 (2d Cir. 2001); *Friend v. Sanwa Bank California*, 35 F.3d 466 (9th Cir. 1994); *Brandt v. Grounds*, 687 F.2d 895 (7th Cir. 1982); *Gray v. Briggs*, 45 F. Supp. 2d 316 (S.D.N.Y. 1999); *Pension Fund Mid-Jersey Trucking Industry Local 701 v. Omni Funding Group*, 731 F. Supp. 161 (D. N.J. 1990).

as a fiduciary when it structured the transaction because the decision was "at its core, a corporate business decision, and not one of a plan administrator." *See Flanigan*, 242 F.3d at 88.

Because an ERISA fiduciary's duties extend only to its *exercise* of authority or control respecting the management or disposition of plan assets, a plaintiff does not state an ERISA claim merely by pointing to some fiduciary duties and then identifying some alleged misconduct that does not involve those duties. *See Pension Fund Mid Jersey Trucking Industry Local 701*, 731 F. Supp. at 173-75 (no ERISA liability when a bank with some fiduciary duties failed to obtain necessary loan documents before releasing plan assets to fund loans); *Gray*, 45 F. Supp. 2d at 328 (no ERISA liability when an investment advisor with some fiduciary duties improperly transferred plan assets to a personal account of a plan trustee); *Brandt*, 687 F.2d at 897 (no ERISA liability when a bank with some fiduciary duties failed to prevent a trustee's embezzlement of plan assets).

Under these well-settled rules, Plaintiffs here do not state a claim by merely pointing to an alleged fiduciary duty that Defendants had with respect to the accumulation units and then alleging that Defendants received payments that were not used to benefit the plan. If that sort of conclusory allegation was sufficient, ERISA's careful distinction between "fiduciary" and "corporate" actions would be rendered meaningless.

## B.    Plaintiffs' Claim Does Not Arise out of the Exercise of Authority or Control over Plan Assets by Nationwide

Defendants are entitled to judgment as a matter of law because Plaintiffs have failed to connect Defendants' exercise of their alleged fiduciary duties with respect to the accumulation units to their claim that Defendants violated ERISA by receiving the challenged payments. Plaintiffs allege that Defendants were fiduciaries because they exercised authority and control

with respect to the management or disposition of accumulation units by "holding them for the benefit of the Plans, canceling them to pay its fees, transferring them to use as collateral for loans, canceling them to pay loans, canceling them to purchase annuities and canceling them to make cash payments." Fourth Am. Compl. ¶ 53.[12/] To have a claim under ERISA, Plaintiffs must show how that same conduct -- the alleged holding, canceling, and transferring of the units -- gave rise to Defendants' alleged breach of fiduciary duty. Absent such a connection, Defendants are entitled to judgment as a matter of law. *See, e.g., F.H. Krear & Co.*, 810 F.2d at 1259; *Gray*, 45 F. Supp. 2d at 328 (rejecting breach of fiduciary duty claim because challenged transactions "bore no relation to the basis for [defendants]' fiduciary status, namely their provision of investment advice to the Plans"); *Pension Fund Mid Jersey*, 731 F. Supp. at 173-75 (rejecting breach of fiduciary claim because challenged release of plan assets had nothing to do with the alleged basis for the defendant's fiduciary status: "Having found that [the bank] was not a fiduciary beyond its limited role in investing [plan] monies in short term investments . . . this Court is not presented with any claim that [the bank] breached its fiduciary duties in that regard.").

Plaintiffs here rely upon Defendants' alleged authority or control with respect to the management and disposition of the accumulation units to claim that Defendants were fiduciaries, but they never allege that Defendants improperly exercised that authority or control in a way that gives rise to their ERISA claim. Specifically, Plaintiffs do not allege that Defendants'

---

[12/]    *See also* Tr. at 5:8-13 ("We believe that [the units] are fiduciary assets to them because they exercise all sorts of authority and control over them. They buy and sell them as needed based upon the . . . various participants changing their account allocations and that sort of thing.").

cancellation, transfer or sale of the accumulation units caused Defendants to receive the

challenged payments.[13/] For this reason, Defendants are entitled to judgment as a matter of law.

In a nod to the ERISA principle described above, Plaintiffs do make some modest efforts

in their new Complaint to connect Defendants' alleged duties to their receipt of the challenged

payments. The failure of those efforts only serves to demonstrate the hole in the middle of

Plaintiffs' ERISA claim. Plaintiffs first try to show the required connection by claiming that the

payments are "effectively based on the amounts of the accumulation units." Fourth Am. Compl.

¶ 54. That allegation is insufficient under ERISA. As Defendants previously have noted, a

payment may be *calculated* to equal a percentage of a sum of money without *coming from* that

sum of money. *See* Defs.' Mem. at 13-14. Indeed, Plaintiffs no longer insist that the payments

are plan assets. Absent a showing that the payments came from the accumulation units, the

allegation that they are calculated on a percentage basis does not help Plaintiffs establish that

Defendants acted in a fiduciary capacity when accepting them.

More generally, Plaintiffs simply assert that there is a relationship between Defendants'

alleged fiduciary duties and Defendants' receipt of the payments, without explaining either the

relationship or its relevance under ERISA. Thus, Plaintiffs vaguely claim that the payments

were "paid solely as a result of Nationwide's position as a fiduciary as to the accumulation units .

. . and not through any non-fiduciary actions or status of Nationwide," Fourth Am. Compl. ¶ 54,

and that Nationwide was "using its possession of [the accumulation units] to generate the

revenue sharing payments," *id.* at ¶ 56. But this broad-brush phrasing merely sidesteps the

---

[13/]    As noted above, while Plaintiffs alleged in their summary judgment opposition brief that
Defendants' actions "diminished" the units, that unsupportable allegation does not appear in the
Fourth Amended Complaint.

central question: what *actions* taken by Defendants with regard to the accumulation units resulted in the challenged payments? Plaintiffs have not described any *exercise* of authority or control respecting management or disposition of the units that resulted in the payments. Because Plaintiffs have not connected Defendants' duties to the challenged payments, they have no ERISA claim.

The cases cited by Plaintiffs further illuminate the hole in Plaintiffs' Fourth Amended Complaint. For example, Plaintiffs repeatedly referred to *Lowen v. Tower Asset Management*, 829 F.2d 1209 (2d Cir. 1987) during oral argument. *See* Tr. at 56-58. But in *Lowen*, there was ERISA liability because the very same action that constituted the exercise of authority and control over the management or disposition of plan assets -- the fiduciary defendants' discretionary decision to invest the plan's assets in particular companies -- directly caused the challenged side payments and other benefits those fiduciaries received. *See* 829 F. 2d at 1214. In other words, the plaintiffs in *Lowen* -- unlike Plaintiffs here -- established a connection between the duty and the challenged payments.

Similarly, Plaintiffs' assorted hypotheticals and analogies during the oral argument all involved a fiduciary that had abused the particular authority or control over the management or disposition of plan assets that made it a plan fiduciary. For example, Plaintiffs imagined a fiduciary charged with storing a piece of art owned by an ERISA plan. Plaintiffs asserted that, under ERISA, if the fiduciary decided to publicly display the art and charge admission, the admission money would belong to the plan. *See* Tr. at 39. Assuming for the sake of argument that Plaintiffs are right, their example only illustrates the principle that ERISA governs a fiduciary's *exercise* of fiduciary control. Under Plaintiffs' hypothetical, the entity charged with storing the art would apparently be exercising authority and control with respect to the

13

management of a plan asset (by deciding where and how it will be located), and would violate
ERISA if it used that particular authority to show (instead of store) the art for its own profit. In
other words, the hypothetical involves precisely the connection between the duty and the
challenged action that is absent here.

This example -- like *Lowen* -- would be relevant only if Defendants held, canceled,
transferred, or sold the accumulation units in a particular way, and were then compensated for
exercising that particular authority in that particular way. But Plaintiffs have not made any such
connection. Indeed, Plaintiffs concede that Defendants did not act as investment advisors and
that Plaintiffs -- not Defendants -- made their own investment decisions. Under the annuity
contracts, Plaintiffs' investment decisions drove any resulting cancellation, transfer, or sale of
the units. *See* Fourth Am. Compl. ¶ 25; Pls.' Rule 56(a)2 Statement at 5 (Docket 207)
("Admitted that Plans and their Participants chose the mutual funds in which they invested.");
*see also infra* at 15-16 & n.16.

Plaintiffs' failure to connect the challenged payments to any improper action by
Defendants with respect to the accumulation units explains Plaintiffs' inability to identify any
harm to them caused by those payments. During the June 1 hearing, the Court repeatedly asked
how the challenged payments hurt the Plans. Plaintiffs' only response was to say that the Plans
would have more money if the payments were given to them. *See, e.g.*, Tr. at 65 ("[T]his money
can definitely be used to benefit me and they are keeping it at my expense, because you can see
the difference if they simply give me the money back."); *see also id.* at 42-43. But ERISA is not
so infinitely expandable as to cover any situation when money could have been given as a gift to
the plan but was not. As the Court stated during the hearing, "[a]ny dollar can be used for the
benefit of the plan." Tr. at 50. Plaintiffs' inability to explain why they are entitled to money

14

paid to Defendants by third parties reflects Plaintiffs' ongoing failure to conform their Complaint to ERISA.

**C.    Defendants Were Custodians, Not Fiduciaries, Regarding the Accumulation Units**

Plaintiffs' latest Complaint assumes that Defendants were ERISA fiduciaries by virtue of exercising authority or control over the management or disposition of the accumulation units. Defendants need not show that this assumption is wrong for purposes of this motion because, for the reasons set forth above, Defendants did not violate ERISA with regard to the challenged payments *even if* they were considered fiduciaries regarding the units. *See supra* at 7-14. However, the undisputed facts also require summary judgment for Defendants on Plaintiffs' claim that Defendants were ERISA fiduciaries with respect to the units.

The plans and their participants in this case allegedly purchased variable annuities from Nationwide Life Insurance Company ("Nationwide Life"). As described below, the governing annuity contracts precisely set forth the obligations of Nationwide Life to accept payments, execute the plans' allocation of this money, account for and track the participants' designated investment choices, and make various payouts chosen by the plans on or before annuitization. All of these actions were directed by the plans or their participants, and none of these actions amounted to fiduciary authority or control over the management or disposition of any plan assets by Defendants. *See Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 125 F.3d 715, 721-22 (9th Cir. 1997) ("A person or entity who performs only ministerial or

administrative functions within a framework of policies, rules, and procedures established by others is not an ERISA fiduciary.").[14]

As Plaintiffs have admitted, Defendants did not determine which funds the plans and participants would invest in and did not make any recommendations about such investments.[15] Nationwide Life performed only the purely ministerial function of executing and tracking the plans' and participants' investment choices and, at the contractually-designated time, calculating the value of their annuities.[16] Defendants only followed the directions of the plans and their participants, and Plaintiffs have expressly dropped any claim that Defendants breached those contractual obligations. *See* Pls.' Mot. for Leave to File Third Am. Compl. at 1-2 (stating that

---

[14]    *See also Pension Fund Mid-Jersey Trucking Industry Local 701 v. Omni Funding Group*, 731 F. Supp. 161, 175 (D. N.J. 1990) (holding that bank was not a fiduciary regarding plan funds it held because it "followed strict guidelines regarding the payout of monies [and] provided no guidance as to [plan investments]"); *Robbins v. First American Bank*, 514 F. Supp. 1183, 1190-91 (N.D. Ill. 1981) (bank that was a "servicing agent" for a plan investment was not a fiduciary because it was "never itself involved with the administration or management of the [plan] itself or in making its investment policies and decisions").

[15]    *See* Plaintiffs' Rule 56(a)2 Statement at 5 ("Admitted that Plans and their Participants chose the mutual funds in which they invested."); *see also* Flyte Contract (Ex. 1(A) to the Dec. of Mark Bieter in Support of Defs.' Mot. For Summary Judgment) (Docket 187) at N031 ("The Contractholder shall advise the Company in writing of a Fund or Funds to which each Deposit is to be credited.").

[16]    *See, e.g.*, Flyte Contract at N029 (stating that all plan deposits will be credited to units within a specified time period); *id.* at N029-30 (stating how to calculate unit value); N033-034 (stating that, upon annuitization, the company will cancel a specified number of units to fund the annuity); *id.* at N032 (stating that the company will cancel units to facilitate a plan's exchange of investments between funds and stating how to calculate the proper number of units to be transferred and the time period in which the exchange must be effectuated); *id.* at N040 (stating that the Company will cancel a plan's units within a specified period of time if a plan wishes to transfer its investment); *see also* Anderson Contract (Exhibit 2(1) to Dec. of Mark Bieter in Support of Defs.' Mot. For Summary Judgment) (Docket 187) at N081-82 (describing the units and stating how to calculate their value).

"the proposed complaint . . . deletes all allegations concerning the defendants' alleged breach of contract").

In particular, Defendants' relationship to accumulation units allegedly received by the plans did not make them fiduciaries. An accumulation unit is merely "an accounting unit of measure used to calculate the Variable Account Contract Value." Best of America IV 1998 Prospectus (Exhibit 12 to Dec. of Mark Bieter in Opp. to Class Certification) (Docket 179) at N344. When a plan participant withdraws money from (or becomes eligible to begin receiving annuity payments under) a variable annuity contract, the amount of those payments is determined by calculating the value of the relevant accumulation units. *See id.* at N372 ("Contract Value" is determined by calculating unit value and any fixed investments by the plan); N378-79 (annuity payment amounts based on Contract Value). As described above, the annuity contracts provided strict rules for how the accumulation units are to be valued and accounted for by Defendants.[17]

Thus, Defendants were not fiduciaries regarding the units because "the mere exercise of physical control or the performance of mechanical administrative tasks generally is insufficient to confer fiduciary status." *Beddall v. Sate Street Bank and Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998); *see also Arizona State Carpenters Pension Trust Fund*, 125 F.3d at 721-22 ("A person or entity who performs only ministerial or administrative functions within a framework of policies, rules, and procedures established by others is not an ERISA fiduciary."); *New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions*, 235 F. Supp. 2d 123, 126 (N.D.N.Y. 2002) (same). Indeed, the governing Department of Labor regulation has long made clear that a party does not become a fiduciary by calculating plan benefits, processing plan

---

[17]    *See supra* note 16 and accompanying text.

claims, or preparing reports concerning plan benefits. *See* 29 C.F.R. § 2509.75-8 (Question and Answer D-2). This makes sense. A contrary rule -- such as the one apparently advocated by Plaintiffs -- would make any entity that sold investment products to ERISA plans into unwitting fiduciaries. In the long run, such a regime would greatly reduce the scope of investment opportunities available to plans and their participants, as providers shunned the market to avoid the costs and risks of ERISA fiduciary status.[18]

Pursuant to these principles, the Department already has said that Defendants here were mere custodians of the plans' investments in the units. *See* November 19, 1998, Letter From Department of Labor to Peter Wiberg ("Participants may direct the investment of their accounts in investments offered by the custodian, Nationwide Life Insurance Company.") (Ex. 34 to the Dec. of Mark Bieter in Support of Defs.' Opp. to Class Certification (Docket 179). Accordingly, Defendants did not have fiduciary obligations regarding the units and, for this reason too, are entitled to summary judgment on Plaintiffs' ERISA claim.[19]

---

[18]    *Cf. Mass Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 147 , 148 n.17 (1985) (describing the Court's reluctance to tamper with ERISA carefully constructed enforcement scheme and recognizing Congress' concern that "the cost of federal standards discourage the growth of private pension plans").

[19]    Plaintiffs asserted at the June 1 hearing that "it was not [their] understanding [Defendants] were going to deny that they are a fiduciary as to the accumulation units." *See* Tr. at 87. In fact, Defendants made the same denial in their December 2003 class certification brief: "Plaintiffs' shifting allegations reflect their varying efforts to find a way to shoehorn the facts here into an ERISA claim, even though Defendant Nationwide Life acts only as a 'Custodian' with respect to the variable annuity contracts." Defs.' Opp. to Pls.' First Am. Mot. For Class Certification at 18 (Docket 179); *see also id.* at 20 ("Performing administrative acts regarding plan assets does not make a person a fiduciary. Similarly, merely receiving or holding plan assets does not make that person a fiduciary.") (footnotes omitted).

**D.     Plaintiffs Have Failed to Establish that the Challenged Payments Were Plan Assets Under ERISA.**

Plaintiffs' Fourth Amended Complaint also alleges that Defendants *became* ERISA

fiduciaries *because* they received ERISA "plan assets" in the form of the challenged payments.

*See* Fourth Am. Comp. ¶¶ 54-55. As noted in Defendants' prior summary judgment

memorandum, this claim fails because the undisputed facts show that the payments were not

ERISA "plan assets." *See* Defs.' Mem. at 8-10.

Plaintiffs now admit that the mutual funds and their affiliates did not possess "plan

assets," and so could not possibly use "plan assets" to make the challenged payments. *See* Nov.

6 Tr. at 47 ("We concede that the dollars in the hands of the mutual funds are not plan assets . . .

."); *see also* Pls.' Opp. at 15.[20] Instead, the Fourth Amended Complaint alleges that the

challenged payments *became* ERISA plan assets when they were received by Defendants under a

"functional approach" to ERISA liability. According to Plaintiffs, the payments were plan assets

because "they would not have been paid but for the fact that Nationwide exercises authority and

control over (i.e. is a fiduciary as to) the accumulation units, which are plan assets" and "they are

effectively based on the amount of the accumulation units, which are plan assets." Fourth Am.

Compl. ¶ 54; *see also* Tr. at 83 ("The reason we refer back to the fact that they are a fiduciary as

to the accumulation units is that the fact they are in a fiduciary informs the fact as to why under

---

[20]     This is a substantial change of position from that presented in the Third Amended
Complaint. In that document, Plaintiffs stated "Crucially, all amounts invested by the Plans and
their participants in the mutual funds through Nationwide's variable annuity contracts constituted
plan assets . . . Thus, the skimmed plan assets deducted by the mutual funds directly from the
amounts invested in them by the Plans and their participants and transferred by the mutual funds
to Nationwide constituted plan assets over which Nationwide exercised authority or control."
Third Am. Compl. ¶ 22. This "crucial[]" allegation is nowhere to be found in Plaintiffs' Fourth
Amended Complaint.

the functional approach, the revenue sharing payments should be treated as plan assets."). But this new approach to ERISA plan assets has no basis in law, and reflects an effort to circumvent well-established boundaries of ERISA liability.

ERISA "plan assets" are identified by looking to the plan documents, plan contracts, or Department of Labor regulations. *See Reich v. Goldstein*, 839 F. Supp. 1068, 1073 (S.D.N.Y. 1993); *Lopresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir. 1997); *NYSA-ILA Medical & Clinical Services Fund v. Catucci*, 60 F. Supp. 2d 194, 201 (S.D.N.Y. 1999). None of the documents, contracts or regulations at issue here support Plaintiffs' position. To the contrary, the undisputed facts demonstrate that the challenged payments from the mutual fund's own assets were *not* ERISA plan assets. The challenged payments are not covered or addressed by the relevant documents and contracts,[21] or any Department of Labor regulation,[22] and Plaintiffs have conceded they will not attempt to trace those payments back to any plan assets.[23] Furthermore, even if Plaintiffs sought to retract their strategic decision not to attempt to trace the payments back to some plan assets, such tracing would be impossible as a matter of law because ERISA and Department of Labor regulations expressly state that the assets of a registered investment company such as a mutual fund are not plan assets, a rule that is echoed in Department of Labor regulations.[24]

---

[21]    *See, e.g.*, Flyte Contract at *passim*; Anderson Contract at *passim* (Exhibits 1(A) and 2(1) to the Dec. of Mark Bieter in Support of Defs.' Motion for Summary Judgment).

[22]    *See* 29 C.F.R. §§ 2510.3-101 & 2510.3-102 (Department of Labor plan asset regulations).

[23]    *See* Pls.' First Am. Mem. in Support of Pls.' First Am. Mot. for Class Certification at 19 (Docket 129) ("No tracing is required under Plaintiffs' theory . . . .").

[24]    *See* 29 U.S.C. § 1101(b)(1); 29 C.F.R. § 2510.3-101(a)(2).

The "functional approach" does not rescue Plaintiffs from these undisputed facts. *First*, the "functional approach" is not used by courts to define whether an asset is a "plan asset" under ERISA. Rather, courts occasionally use the functional approach to determine whether a person is "exercising authority or control" over a plan asset, which is an entirely separate issue. *See, e.g. Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (1987); *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131 (7th Cir. 1983). *Second*, even under the broad dicta that Plaintiffs rely on from the *Acosta v. Pac. Enters., Inc.*, 950 F.2d 611, 620 (9th Cir. 1992) case, a determination that an asset is an ERISA "plan asset" requires a review of the facts *regarding that asset itself* -- not facts regarding other aspects of the parties' relationship. *See Acosta*, 950 F.2d at 620. Thus, the issue of whether the challenged payments are a plan asset has nothing to do with the issue of whether the accumulation units are plan assets. For example, in *Acosta*, the defendants were plan fiduciaries, but that status was not considered at all in determining whether the relevant asset -- a list of plan participants -- was itself a plan asset. *See Acosta*, 950 F.2d at 617, 620.

No case cited by Plaintiffs analyzes a defendant's alleged fiduciary status regarding *different* assets to determine whether a particular asset under consideration belonged to an ERISA plan. Instead, all the employee and employer contributions cases cited by Plaintiffs turn on the particular facts relevant to the assets at hand -- *i.e.*, whether the relevant assets were owned by or owed to the plan by virtue of a contract, collective bargaining agreement, Department of Labor regulation, or were comparably earmarked. *See* Defs.' Reply at 15-17. Plaintiffs cannot turn the challenged payments here into "plan assets" by making allegations regarding the accumulation units.

Plaintiffs have now abandoned all their other theories as to why the challenged payments were plan assets. Accordingly, the two undisputed facts -- that (1) the payment were

21

undisputedly made by mutual funds and fund affiliates from their own assets; and (2) Plaintiffs

will not trace any dollars from the plans to those payments -- mean that, as a matter of law, those

payments themselves were not plan assets and Defendants do not become ERISA fiduciaries by

virtue of having received them.  Accordingly, Defendants' Motion For Summary Judgment

should be granted, and this action should be dismissed.

## E.    If This Action Is Allowed To Proceed, Plaintiffs Should File a New Motion for Class Certification

Plaintiffs' new factual allegations and legal theories are deficient as a matter of law and

should be dismissed.  However, if the case is allowed to proceed, then Plaintiffs should be

ordered to file a new motion for class certification that seeks certification of the claims now pled

in the Fourth Amended Complaint.  Plaintiffs' current motion for class certification is based on

theories that Plaintiffs have long since abandoned, such as the claims that the challenged

payments were "fruits of plan assets" or were "skimmed plan assets" that "directly reduce the

value of Class members' investments."  Pls.' Class Cert. Mem. at 1-2.  Similarly, Plaintiffs' class

certification memorandum also relies upon their now-discarded theory that the payments

"cause[d] the Units to decline in value on a one-to-one basis."  *Id.* at 13, 14.

Plaintiffs' current allegations regarding Defendants' alleged exercise of authority and

control over the accumulation units are also different from those presented in their Motion for

Class Certification.  In particular, the class certification memorandum never states that

Defendants violated ERISA by "using [their] possession of [the accumulation units]" to generate

the payments, as Plaintiffs now allege.  Assuming Plaintiffs' new theory has enough merit to

survive dismissal, their new approach to ERISA may raise substantial individualized issues.  It is

22

therefore essential that Plaintiffs be required to explain exactly why they believe their current claims are suitable for class treatment.

Similarly, the pending certification memorandum also does not allege that the challenged payments are plan assets under a "functional approach," as Plaintiffs now claim in opposition to summary judgment. Instead, Plaintiffs' certification papers assert that the payments are plan assets because they are "fruits of plan assets," a claim they support solely by citing a decision from the Eastern District of Texas that appears nowhere in their summary judgment papers. *See* Plaintiffs' Class Certification Memorandum at 13 (citing *Health Care Service Corp. v. Tap Pharmaceutical Prods., Inc.*, 274 F. Supp. 2d 807 (E.D. Tex. 2003)). If Plaintiffs' new theory that the payments are plan assets based on a "functional approach" survives dismissal at this point, it would necessarily raise a host of individualized issues regarding the relationships between the plans, participants, funds, fund affiliates, and Defendants. If Plaintiffs survive summary judgment by virtue of their latest shift in legal theories, they should be required to use their current theory as the basis for any claim to class certification.

## CONCLUSION

For all the reasons stated above, Defendants' Motion for Summary Judgment should be granted and this action should be dismissed with prejudice. If the case is allowed to proceed, Plaintiffs should be ordered to file revised class certification papers to reflect the allegations and theories on which they will have survived summary judgment.

Respectfully submitted,

Defendants Nationwide Financial Services Inc.
and Nationwide Life Insurance Co.

By: _____
Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone:     (860) 293-3500
Facsimile:     (860) 293-3555

Charles C. Platt, Esq. (CT 23036)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
New York, NY 10019-5389
Telephone:     (212) 230-8800
Facsimile:     (212) 230-8888

Eric Mogilnicki, Esq.
Samuel Broderick-Sokol, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
2445 M Street, N.W.
Washington, D.C. 20037
Telephone:     (202) 663-6000
Facsimile:     (202) 663-6363

24

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing Defendants' Supplemental Memorandum of Law in Support Defendants' Motion for Summary Judgment was served via email and overnight mail on this 6th day of July, 2004, on the following counsel of record:

Richard A. Bieder, Esq.
Antonio Ponvert III, Esq.
Koskoff, Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

Gregory G. Jones, Esq.
Law Firm of Gregory G. Jones, P.C.
603 South Main Street, Suite 200
Grapevine, TX 76051

Marc R. Stanley, Esq.
Roger L. Mandel, Esq.
Stanley, Mandel & Iola
3100 Monticello Avenue
Suite 750
Dallas, TX 75205