UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, EDWARD KAPLAN, as trustee of the Hartford Roofing 401(k) Profit Sharing Plan and the Hartford South, L.L.C. 401(k) Profit Sharing Plan, and DENNIS FERDON, as trustee of the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan, | § § § § § § § § § § § § § § § | CASE NO. 01-CV-1552 (SRU) |
| PLAINTIFFS, | § § § | |
| v. | § § | |
| NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO., | § § § § | |
| DEFENDANTS. | § § | |

**PLAINTIFFS' RESPONSE, AND MEMORANDUM OF LAW IN SUPPORT, TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOCKET NO. 239]**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     NATIONWIDE CONSTITUTES A FIDUCIARY
        AS TO THE ACCUMULATION UNITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.      *NATIONWIDE EXERCISES SIGNIFICANT GENERAL AUTHORITY
        AND CONTROL OVER THE MANAGEMENT AND DISPOSITION
        OF THE ACCUMULATION UNITS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B.      *NATIONWIDE NEED NOT EXERCISE DISCRETIONARY
        AUTHORITY OR CONTROL OVER THE ACCUMULATION UNITS
        TO CONSTITUTE A FIDUCIARY AS TO THOSE PLAN ASSETS* . . . . . . . . . . . . . . . . . 6

C.      *NATIONWIDE EXERCISED SPECIFIC DISCRETIONARY AUTHORITY
        AND CONTROL OVER THE ACCUMULATION UNITS BY USING THEM
        TO GENERATE THE REVENUE SHARING PAYMENTS* . . . . . . . . . . . . . . . . . . . . . . . 11

III.    NATIONWIDE CONSTITUTES A FIDUCIARY AS
        TO THE ACCUMULATION UNITS FOR PURPOSES OF
        ITS RECEIPT OF THE REVENUE SHARING PAYMENTS . . . . . . . . . . . . . . . . . . . . 12

A.      *NATIONWIDE'S ARRANGING FOR, RECEIVING AND RETAINING
        THE REVENUE SHARING PAYMENTS CONSTITUTES BOTH THE
        EXERCISE OF AUTHORITY AND CONTROL OVER THE
        ACCUMULATION UNITS AND BREACH OF THE RESULTING
        FIDUCIARY DUTY AS A MATTER OF LAW OR, ALTERNATIVELY,
        A GENUINE ISSUE OF MATERIAL FACT EXISTS IN THIS REGARD
        FOR TRIAL* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

B.      *NATIONWIDE'S GENERAL EXERCISE OF AUTHORITY AND
        CONTROL OVER THE ACCUMULATION UNITS MAKES IT A
        FIDUCIARY AS TO THE ACCUMULATION UNITS FOR
        ALL PURPOSES, INCLUDING ITS RECEIPT OF THE
        REVENUE SHARING PAYMENTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        1.      The Cases Cited by Nationwide Do Not Support Its Argument . . . . . . . . . . . . 14

        2.      Case Law Supports Plaintiffs' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        3.      Nationwide's Argument Would Render ERISA § 406(b)(3)
                Ineffective as to Functional (Limited Purpose) Fiduciaries
                Under ERISA § 3(21)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.     NATIONWIDE CONSTITUTES A FIDUCIARY
        AS TO THE REVENUE SHARING PAYMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

A.      *THE FUNCTIONAL APPROACH GOVERNS WHETHER THE
        REVENUE SHARING PAYMENTS CONSTITUTE PLAN ASSETS* . . . . . . . . . . . . . . . 18

**Page**

B. *NATIONWIDE RETAINS THE REVENUE SHARING PAYMENTS AT THE EXPENSE OF THE PLANS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

V. THE COURT SHOULD NOT ORDER  NEW CLASS CERTIFICATION BRIEFING (DELAY AIN'T JUST A CONGRESSMAN FROM TEXAS) . . . . . . . . . 23

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## INDEX OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Amalgamated Clothing & Textile Workers Union,*
*AFL-CIO v. Murdock,* 861 F.2d 1406 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona),*
125 F.3d 715 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bannistor v. Ullman,* 287 F.3d 394 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Beddall v. State Street Bank & Trust Co.,*
137 F.3d 12 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Board of Trustees of Bricklayers & Allied Craftsmen*
*Local 6 of N.J. Welfare Fund v. Wettlin Assoc., Inc.,*
237 F.3d 270 (3rd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Brandt v. Grounds,* 687 F.2d 895 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*Brink v. DaLesio,* 496 F. Supp. 1350 (D. Md 1980),
*aff'd in part and rev'd in part on other grounds,*
667 F.2d 420 (4th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Donovan v. Bierwirth,* 754 F.2d 1049 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*IT Corp. v. General American Life Ins. Co.,*
107 F.3d 1415 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8, 10, 11

*F.H. Krear & Co. v. Nineteen Named Trustees,*
810 F.2d 1250 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*FirsTier Bank, N.A. v. Zeller,* 16 F.3d 907 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Flanagan v. General Electric Co.,* 242 F.3d 78 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Friend v. Sanwa Bank California,* 35 F.3d 466 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gray v. Briggs,* 45 F. Supp. 2d 316 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kayes v. Pacific Lumber Co.,* 51 F.3d 1449 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 18, 19, 21

*Leigh v. Engle,* 727 F.2d 113 (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lopresti v. Terwilliger,* 126 F.3d 34 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lowen v. Tower Asset Management, Inc.,*
829 F.2d 1209 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*M & R Investment Co., Inc. v. Fitzsimmons,* 484 F. Supp. 1041
(D. Nev. 1980), *aff'd,* 685 F.2d 283 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Marshall v. Kelly,* 465 F. Supp. 341 (W.D. Okla. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Cases**                                                                **Page(s)**

*Martin v. Nat'l Bank of Alaska*, 828 F. Supp. 1427 (D. Ala. 1992) . . . . . . . . . . . . . . . . . . . . . . 11

*Metzler v. Solidarity of Labor Organizations Health & Welfare Fund*,
1998 WL 477964 (S.D.N.Y. Aug. 14, 1998), *aff'd, Herman v. Goldstein*,
224 F.3d 128 (2d Cir. 2000), *cert. denied*, 533 U.S. 928 (2001) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Midwest Community Health Service, Inc. v.*
*American United Life Ins. Co.*, 255 F.3d 374 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*N.Y. State Teamsters Council Health & Hospital Fund v.*
*Centrus Pharmacy Solutions*, 235 F.2d 123 (N.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nickel v. Bank of America Nat'l Trust & Savings Assoc.*,
290 F.3d 1134 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Patelco Credit Union v. Sahni*, 262 F.3d 897 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 7, 18, 21

*Pegram v. Herdrich*, 530 U.S. 211 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pension Fund--Mid Jersey Trucking Industry--Local 701 v.*
*Omni Funding Group*, 731 F. Supp. 161 (D.N.J. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Robbins v. First American Bank of Virginia*,
514 F. Supp. 1183 (N.D. Ill. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Shultz v. Texaco, Inc.*, 127 F. Supp. 2d 443 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 14


**STATUTES AND REGULATIONS**

29 C.F.R. § 2509.75-8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6-8, 12, 16

ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 7, 10, 16

ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ERISA § 404, 29 U.S.C. § 1104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 20

ERISA § 406, 29 U.S.C. § 1106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17, 20

ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ERISA § 409(a), 29 U.S.C. § 1109(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20


**TREATISES**

*Restatement (Second) of Trusts* § 203 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23

*Restatement (Second) of Agency* § 388 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# I.

## **INTRODUCTION**

Nationwide's keen hope in this case is that the Court will lose sight of the forest because of imaginary trees. Specifically, Nationwide makes its arguments regarding the accumulation units and the revenue sharing payments as if it handled each in complete isolation from the other and argues on that basis that it does not act as a fiduciary as to either. It does so for good reason, because the undeniable interrelationship between its handling of those assets makes it a fiduciary as to both.

The undisputed facts demonstrate that Nationwide uses the accumulation units (which, according to Nationwide, merely constitute accounting units that measure the value of the Plans' investments) to generate the revenue sharing payments by agreeing with mutual fund families that it will offer their funds in its variable accounts and that, in return, the mutual fund families will pay to Nationwide a percentage of the Plans' investments in their funds. This action by Nationwide is crucially significant in two respects: (1) it constitutes the exercise of authority and control over the accumulation units, making Nationwide a fiduciary as to them, and (2) it explains why, under the common law trust principles incorporated into ERISA, Nationwide retains the revenue sharing payments at the expense of the Plans, making the revenue sharing payments plan assets under the functional approach.[1]

Nationwide's other tactic is to try to persuade the Court to ignore the plain language of ERISA § 3(21)(A)(i) which makes a person who exercises "*any*" authority or control over plan assets a fiduciary as to those plan assets regardless of whether that exercise is "discretionary" or "purely ministerial." Alternatively, Nationwide asks the Court to make the unprecedented holding that the "*to the extent*" language of § 3(21)(A) makes a party liable under ERISA §§ 404 and 406 only if the same action by it constitutes both the exercise of authority or control over a plan asset and the breach of the resulting fiduciary duty.

---

[1] In the course of explaining why Nationwide retains the revenue sharing payments at the expense of the Plans, Plaintiffs answer the questions by the Court during the June 1, 2004 hearing. *See, infra*, at 22-23.

The Court should reject Nationwide's invitation to ignore the plain language of the statute or, alternatively, to make such an unprecedented holding, as either action by the Court would fly in the face of clear Congressional intent.  Accordingly, it should hold that Nationwide constitutes a fiduciary with respect to the accumulation units based on its general exercise of authority and control over them, such that its use of the accumulation units to generate the revenue sharing payments must stand the test of the fiduciary standards of ERISA.

**II.**

**NATIONWIDE CONSTITUTES
A FIDUCIARY AS TO THE ACCUMULATION UNITS**

While Nationwide concedes that the accumulation units constitute plan assets, it denies acting as a fiduciary as to those plan assets, claiming instead that it merely acts as a custodian.[2] In support, Nationwide characterizes the actions it has the authority to and routinely does engage in as to the accumulation units as non-discretionary, purely ministerial actions and argues that its exercise of such allegedly non-discretionary, purely ministerial control does not make it a fiduciary as to those plan assets.

Nationwide errs in its interpretation of the law.  The plain language of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), makes a person who exercises "*any*" authority or control over plan assets a fiduciary as to those plan assets regardless of whether that exercise is "discretionary" or "purely ministerial."  Under this standard, Nationwide undisputedly constitutes a fiduciary as to the accumulation units.

Moreover, even if the actions that Nationwide generally takes as to the accumulation units do not constitute the exercise of authority and control over them, its use of the accumulation units to generate the revenue sharing payments does.  And, crucially, since neither the Plans or their participants has in any way authorized, much less directed, Nationwide to so use the accumulation units, Nationwide thereby exercises purely discretionary control over them.

---

[2]  Supplemental Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Supp. Mem.") at 15-18 [Docket No. 239].

A. *NATIONWIDE EXERCISES SIGNIFICANT GENERAL AUTHORITY AND CONTROL OVER THE MANAGEMENT AND DISPOSITION OF THE ACCUMULATION UNITS.*

Pursuant to standard form contracts, Nationwide provided investment options to the Plans through insurance products called variable annuities.[3] Nationwide offered two types of variable annuity contracts: group annuity contracts, pursuant to which Nationwide contracted only with the Plan, but each participant had an individual account, and individual annuity contracts, for which Nationwide contracted separately with each participant.[4]

Nationwide chose a group of mutual funds that it made available for investment in by the Plans with group annuity contracts, and those Plans chose a subset of those funds for investment in by their participants, with those Plans' choices as indicated on the group annuity applications becoming part of their group annuity contracts.[5] Likewise, from the subset of mutual funds chosen by Plans with individual annuity contracts, the individual participants chose specific funds to invest in, with their individual applications becoming part of the individual annuity contracts.[6] Under both types of contracts, participants had the right to freely move their investments between the various mutual fund options chosen by their Plans.[7]

Technically, however, the Plans and their participants did not invest directly in the mutual funds. Rather, the Plans and their participants invested in "variable accounts," also known as "separate accounts," established by Nationwide.[8] All Plans and their participants holding group

---

[3]  Deposition Exhibit 44 (Verification of Receipt of Specimen Group Annuity Contracts executed by the Crown Plan), Confidential Appendix in Support of Plaintiffs' First Amended Motion for Class Certification ("Conf. App.") Tab D [Docket No. 137].

[4]  Pension and Welfare Benefits Administration, Department of Labor, *STUDY OF 401(K) PLAN FEES AND EXPENSES* (1998) ("Study") § 2.51, Appendix in Support of Plaintiffs' First Amended Motion for Class Certification ("App.") Tab 1 [Docket No. 130]; Defendants' Local Rule 56(a)(1) Statement in Support of Motion for Summary Judgment filed August 29, 2003 ("Statement"), ¶¶ 2-4, App. Tab 7; The group annuity contracts between Nationwide and the Flyte Plan, the Crown Plan, and the Hartford Roofing Plan, Exhibits A, B and C, respectively, to the Affidavit of Ronald L. Wyant, Jr., ("Wyant Aff.") filed November 15, 2001 [Docket No. 16]; The individual annuity contracts between Nationwide and participants in the Anderson & Ferdon Plan and the Easter Seal Plan, Exhibits 1-4, respectively, to the Affidavit of Stephanie Eakins ("Eakins Aff.") filed November 15, 2001 [Docket No. 17].

[5]  Deposition Exhibit 19, App. Tab 8 [Docket No. 130]; Deposition Exhibit 24, App. Tab 9; Wyant Aff., Exhibits A-C [Docket No. 16]; Deposition Exhibit 50, Conf. App. Tab I [Docket No. 137].

[6]  Eakins Aff., Exhibits 1-4 [Docket No. 17].

[7]  Wyant Aff., Exhibits A-C [Docket No. 16]; Eakins Aff., Exhibits 1-4 [Docket No. 17].

[8]  Statement, ¶ 5, App. Tab 7 [Docket No. 130].

annuity contracts invested in the "Nationwide Qualified Plans Variable Account," while all Plans and their participants holding individual annuity contracts invested in the "Nationwide Variable Account - II."[9]

Both of those variable accounts are divided into sub-accounts that correspond to the mutual funds and other investment options available under the annuity contract.[10]  Pursuant to their contracts, participants choose the mutual funds in which their contributions and any matching contributions made by their employers are invested, and Nationwide allocates those contributions to particular sub-accounts within the variable accounts which correspond to the chosen mutual funds.[11]  In return for the contributions, the Plans and their participants receive accumulation units (shares) of the applicable sub-accounts of the variable accounts.[12]  Those accumulation units owned by the Plans and their participants constitute plan assets.[13]

Under the annuity contracts, Nationwide engages in the following general actions as to the accumulation units: cancelling the units to pay its fees, cancelling them to pay taxes, cancelling them to transfer investments from one mutual fund to another, transferring them to use as collateral for loans, cancelling them to pay loans, cancelling them to purchase annuities and cancelling them to make cash payments.[14]  The Plans and their participants never instruct Nationwide to take any action in regard to accumulation units; rather, the Plans or participants instruct Nationwide as to which mutual funds to invest in or that a loan or cash payment should be made or that an annuity should be purchased, and Nationwide decides whether and how to handle the accumulation units.[15]  Nationwide cancels accumulation units to pay its fees and to pay taxes without any prompting

---

[9]    Statement, ¶¶ 7 & 8, App. Tab 7 [Docket No. 130].

[10]   Statement, ¶ 9, App. Tab 7 [Docket No. 130].

[11]   Statement, ¶ 10, App. Tab 7 [Docket No. 130].

[12]   Statement, ¶ 12, App. Tab 7 [Docket No. 130].

[13]   Statement, ¶ 13, App. Tab 7 [Docket No. 130].

[14]   *See* the group contracts, Exhibits A-C to the Wyant Aff. [Docket No. 16], and the individual contracts, Exhibits 1-4 to the Eakins Aff. [Docket No. 17].

[15]   The Best of America IV Individual Deferred Variable Annuity Contracts Prospectus at 20 (N 114) a portion of Exhibit 1 to the Eakins Aff. [Docket No. 17].  *See generally* the group contracts, Exhibits A-C to the Wyant Aff. [Docket No. 16] and the individual contracts, Exhibits 1-4 to the Eakins Aff. [Docket No. 17].

from Plans or their participants.[16]

Nationwide attempts to distract the Court from the fact that the Plans and their participants make general requests for action by Nationwide in regard to the retirement savings without directing Nationwide in any way to take specific actions in regard to the accumulation units. It does so by arguing that because an accumulation unit merely constitutes an accounting unit of measure used to calculate the value of a Plan's or participant's investment, Plans and participants effectively direct Nationwide to take specific actions in regard to accumulation units by directing them to take actions in regard to their investments.[17] In other words, Nationwide asks the Court to treat the accumulation units as mere proxies for the Plans' investments, blurring the distinction between the accumulation units (shares of the variable account), the shares of the mutual funds held in the variable account, the assets of the mutual funds which make those mutual fund shares valuable, the fees deducted from those mutual funds and the revenue sharing payments derived from those fees.

In contrast, in support of its argument that the revenue sharing payments did not constitute plan assets in the mutual funds' hands prior to payment to it, Nationwide noted that the accumulation units are the plan assets, not the mutual fund shares, not the mutual fund assets, not the mutual fund fees and not the revenue sharing payments while in the mutual funds' hands.[18] In other words, in this context, Nationwide asks the Court to treat only the accumulation units as constituting the Plans' investments and everything else as having nothing whatsoever to do with the Plans. This Court should not allow Nationwide to have it both ways.

The Court should resolve Nationwide's contrary positions by respecting the technical differences between the accumulation units, the mutual fund shares, etc., in evaluating both whether Nationwide's arranging for and receiving the revenue sharing payments itself constitutes the exercise of authority and control over the accumulation units and whether the revenue sharing payments become plan assets in Nationwide's hands pursuant to the "functional approach."

---

[16] *Id*.

[17] Supp. Mem. at 15-18 [Docket No. 239].

[18] *Id*. at 19-22 [Docket No. 239].

However, in doing both, the Court should also keep in mind that the distinctions between the accumulation units, the mutual fund shares, mutual fund assets, mutual fund fees and the revenue sharing payments are merely technical, resulting from the business model created by Nationwide. The reality is that Nationwide uses the Plans' investments (represented by and accounted for as accumulation units) to generate the revenue sharing payments by agreeing with mutual fund families that it will offer their funds in its variable accounts and that, in return, the mutual fund families will pay to Nationwide a percentage of the Plans' investments in their funds.[19]

B.    *NATIONWIDE NEED NOT EXERCISE DISCRETIONARY AUTHORITY OR CONTROL OVER THE ACCUMULATION UNITS TO CONSTITUTE A FIDUCIARY AS TO THOSE PLAN ASSETS.*

ERISA § 3(21)(A) provides that:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or *exercises any authority or control respecting management or disposition of its assets*, (ii) he renders investment advice for a fee...or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (emphasis added).

Under ERISA § 3(21)(A), a party can become a fiduciary by its actions in connection with rendering investment advice, plan management, asset management/disposition and plan administration.  *Id*.  Significantly, the statute plainly treats asset management/disposition differently from plan management and plan administration, in that it requires the authority or control be "*discretionary*" as to plan management  and plan administration but makes a person who exercises "*any*" authority or control over asset management/disposition into a fiduciary as to those assets.  *IT Corp. v. General American Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997).

As the Ninth Circuit explained:

*The statutory qualification, that control must be 'discretionary' for it to establish fiduciary status, applies to the first and third phases, management and administration but not to the second, assets.  'Any' control over disposition of plan money makes the person who has the control a fiduciary...."*

---

[19]  30(b)(6) Deposition of Nationwide employee William G. Goslee of February 25, 2003 ("Goslee Depo."), 104:16-18; 108:11-16; 109:10-110:13; 112:5-8; 161:13-162:11, Conf. App. Tab K [Docket No. 137]; Statement, ¶ 25, App. Tab 7 [Docket No. 130].  *See* four examples of such contracts attached as Exhibits 21-24 to the Declaration of Mark Bieter in Support of Defendants' Motion for Summary Judgment [Docket No. 187].

*Id.*

In particular, ERISA § 3(21)(A)(i) distinguishes between plan management and asset management/disposition:

> *Subsection (i) of 29 U.S.C. § 1002(21)(A) differentiates between those who manage the plan in general, and those who manage the plan assets.  These functions are set out in two clauses under Subsection (i) separated by the conjunction 'or.'  A significant difference between the two clauses is that discretion is specified as a prerequisite to fiduciary status for a person managing an ERISA plan, but the word 'discretionary' is conspicuously absent when the text refers to assets.  'This distinction is not accidental--it reflects the high standard of care trust law imposes upon those who handle money or other assets on behalf of another.'  FirsTier Bank, N.A. v. Zeller, 16 F.3d 907, 911 (8th Cir. 1994).*

*Board of Trustees of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assoc., Inc. ("Wettlin")*, 237 F.3d 270, 272-3 (3rd Cir. 2001).

Crucially, every court which has specifically considered this distinction made by the plain language of the statute has found it dispositive and has held that the exercise of "*any*" authority or control over management or disposition of plan assets makes a party a fiduciary as to those plan assets regardless of whether that authority or control is "discretionary" or "purely ministerial." *See Patelco Credit Union v. Sahni*, 262 F.3d 897, 909 (9th Cir. 2001); *Wettlin*, 237 F.3d at 272-3; *Lopresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) ("*...the district court overlooked the fact that an individual also may be an ERISA fiduciary by, as just stated, 'exercis[ing] **any** authority **or** control respecting management **or** disposition of [plan] assets.'*) (emphasis added)*; IT Corp. v. General American Life Ins. Co.*, 107 F.3d at 1421; *FirsTier Bank, N.A. v. Zeller*, 16 F.3d at 911 ("*Note that this section imposes fiduciary duties only if one exercises **discretionary** authority or control over plan **management**, but imposes those duties **whenever** one deals with plan **assets**.*") (emphasis added).  Nationwide simply ignores this vital distinction.

The Ninth Circuit's decision in *IT Corp. v. General American Life Ins. Co.* is particularly instructive.  An ERISA plan had hired General American to administer its functions pursuant to a written Administrative Services Agreement.  107 F.3d at 1417.  Pursuant to the Agreement, General American had the job of processing health care claims, paying or denying them pursuant to the terms of the ERISA plan, except when claims were contested or doubtful, in which case the

plan would decide coverage. *Id.* at 1417-18.

General American claimed that it was not a fiduciary because its duties were purely ministerial; indeed, its agreement with the plan explicitly provided that this was the case. *Id.* at 1419. The Ninth Circuit nevertheless held that because General American could write checks on a bank account that constituted a plan asset, it exercised authority or control over the management and disposition of a plan asset regardless of whether it had any discretion whatsoever in when and if it wrote the checks. *Id.* at 1421.

In so holding, the Ninth Circuit wrote that:

> *The right to write checks on plan funds is 'authority or control respecting management of disposition of its assets.'...The words of the ERISA statute, and its purpose of assuring that people who have practical control over an ERISA plan's money have fiduciary responsibilities to the plan's beneficiaries, require that a person with authority to direct payment of a plan's money be deemed a fiduciary.*

*Id.*

In this case, no doubt exists but that Nationwide generally exercises "*any*" control or authority over the management or disposition of the accumulation units. Nationwide can and does cancel accumulation units to pay its fees, cancel them to pay taxes, cancel them to transfer investments from one mutual fund to another, transfer them to use as collateral for loans, cancel them to pay loans, cancel them to purchase annuities and cancel them to make cash payments. Nationwide engages in all of this conduct without any directions from the Plans and their participants directly addressing accumulation units, and it cancels accumulation units to pay its fees and to pay taxes without any prompting whatsoever from the Plans and their participants. This authority and control over the management and disposition of plan assets makes Nationwide a fiduciary regardless of whether its exercises that authority or control in a discretionary fashion or as a purely ministerial matter.

The cases relied upon by Nationwide fail to recognize the distinction plainly made by ERISA § 3(21)(A) between asset management/disposition ("*any*" authority or control) and plan management and plan administration ("*discretionary*" authority or control) and erroneously apply a "discretionary" standard to all aspects of the conduct of the defendant in question. *See Beddall*

*v. State Street Bank & Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998) ("*...one's fiduciary responsibility under ERISA is directly and solely attributable to its possession or exercise of discretionary authority...*"); *Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 125 F.3d 715, 722 (9th Cir. 1997) ("*Having to make a decision in the exercise of a ministerial duty does not rise to the level of discretion required to be an ERISA fiduciary.*"); *N.Y. State Teamsters Council Health & Hospital Fund v. Centrus Pharmacy Solutions*, 235 F.2d 123, 128 (N.D.N.Y. 2002) ("*Each of the duties imposed upon defendant under the Agreement...were purely ministerial and did not involve the exercise of discretion....*"); *Pension Fund--Mid Jersey Trucking Industry--Local 701 v. Omni Funding Group* ("*Omni*"), 731 F. Supp. 161, 173 (D.N.J. 1990) ("*A party becomes a fiduciary with regard to pension fund assets when it is vested with or exercises discretionary authority.*"); *Robbins v. First American Bank of Virginia*, 514 F. Supp. 1183, 1190-1 (N.D. Ill. 1981) ("*The bank was required to fulfill various ministerial functions....The fixed terms of the loan and commercial nature of the transaction belie the plaintiffs' allegations of sufficient discretionary responsibility to come within the terms of the Act.*").

All of these cases erroneously relied upon or cited in support a Department of Labor interpretive bulletin given in the form of a question and answer. *See* 29 C.F.R. § 2509.75-8.[20] The question provides in pertinent part as follows:

> Are persons who have no power to make any decision as to plan policy, interpretations, practices   or procedures, *but who perform the following administrative functions for an employee benefit plan*, within a framework of policies, interpretations, rules, practices and procedures made by other persons, fiduciaries with respect to the plan...?

29 C.F.R. § 2509. 75-8 (emphasis added).  The question then lists eleven administrative functions to be performed on behalf of an employee benefit plan.  *Id.*

This question quite clearly addresses a party engaged in plan administration as provided in ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), and asks whether certain ministerial administration activities constitute "*discretionary*" authority or responsibility as required by that section for a party to become a fiduciary.  *Id*.  It does not address plan asset/disposition under

---

[20]    A true and correct copy of this interpretive bulletin is attached hereto in its entirety as Exhibit A for the Court's convenience.

ERISA § 3(21)(A)(i).  *Id.*  As the Third Circuit noted, "*After examining the Department of Labor's interpretation...we conclude that it addresses situations...involving the administration of benefits under a plan and does not speak to the activities under subsection (i).*"  *Wettlin*, 237 F.3d at 274.  Further, even if the interpretive bulletin could be construed as applying to § 3(21)(A)(i), the agency interpretation would not be binding on this Court, given that it contradicts the plain language of § 3(21)(A)(i).  *Id*

In short, the cases which have actually considered the difference in the statute's language regarding asset management, on the one hand, and plan management and administration, on the other hand, have unanimously held that a party becomes a fiduciary by exercising "*any*" authority or control over the management or disposition of plan assets regardless of whether it does so in a "*discretionary*" fashion or even in a purely ministerial fashion.  The contrary cases cited by Nationwide simply ignore, improperly, the plain language of the statute.

Significantly, good policy reasons support Congress' decision to make the fiduciary threshold for asset management lower than for plan management or plan administration.

> *That Congress established a lower threshold for fiduciary status where control of assets is at stake is not surprising, given that '(a)t common law, fiduciary duties characteristically attached to decisions about managing assets and distributing property to beneficiaries.' [citation omitted].  'By mandating the trust form by transposing the duty of loyalty from trust to pension law, the drafters of ERISA were able to institute a familiar fiduciary regime to protect pension funds from internal defalcation.' [citation omitted].*

*Wettlin*, 237 F.3d at 274.  The Court should find these policy reasons dispositive.

Finally, Nationwide may reply that the Third and Ninth Circuits both acknowledged that a bank which merely maintains a checking account for a plan does not thereby become a fiduciary as to the money in the checking account (*Wettlin*, 237 F.3d at 275; *IT Corp. v. General American Life Ins. Co.*, 107 F.3d at 1422) and then argue that it exercises no more authority or control over the accumulation units than does a bank over a checking account.  The undisputed facts regarding its authority and control over the accumulation units either rebut this argument as a matter of law or leave a genuine issue of material fact for resolution by trial.

With a checking account, a plan directs specifically in each instance with deposit slips, checks and endorsements how the bank should handle the money; the bank makes no decisions of any kind. *IT Corp. v. General American Life Ins. Co.*, 107 F.3d at 1422. In contrast, while the Plans and their participants give general directions to Nationwide as to which mutual funds their funds should be invested in (like the plan's terms in *IT Corp.* generally instructed the insurance company as to which types of benefit claims it should pay), Nationwide makes the specific decisions as to whether and how accumulation units should be cancelled or transferred (like the insurance company in *IT Corp.* decided whether to write checks in payment of claims). Further, it cancels accumulation units in many instances (to pay its fees and pay taxes) without any prompting whatsoever from Plans or their participants. Nationwide is thus more akin to a bank which acts as the trustee of a common trust fund in which ERISA plan assets are invested - a fiduciary role under ERISA. *Martin v. Nat'l Bank of Alaska*, 828 F. Supp. 1427, 1432-3 (D. Ala. 1992).

As a matter of law, therefore, Nationwide's control and authority over the accumulation units does not fall to the level of that of a bank which merely maintains a checking account. Alternatively, that question creates a genuine issue of material fact which must be resolved by trial.

C.    *NATIONWIDE EXERCISED SPECIFIC DISCRETIONARY AUTHORITY AND CONTROL OVER THE ACCUMULATION UNITS BY USING THEM TO GENERATE THE REVENUE SHARING PAYMENTS*

As discussed above, Nationwide concedes that an accumulation unit merely constitutes an accounting measure of the value of a Plan's or a participant's investment. Nationwide enters into written contracts with mutual fund families that provide that Nationwide will offer those families' funds in its variable accounts for investment in by the Plans and their participants and that the mutual fund families will, in return, pay to Nationwide a percentage of the Plans' and participants' investments in those mutual funds taken from the Plans and their participants as fees.[21]

When the Court looks beyond the technicalities of the manner in which the Plans' and their

---

[21] Goslee Depo., 104:16-18; 108:11-16; 109:10-110:13; 112:5-8; 161:13-162:11, Conf. App. Tab K [Docket No. 137]; Statement, ¶ 25, App. Tab 7 [Docket No. 130]. *See* four examples of such contracts attached as Exhibits 21-24 to the Declaration of Mark Bieter in Support of Defendants' Motion for Summary Judgment [Docket No. 187].

participants' investments are handled by Nationwide, as Nationwide tells the Court it should do, it becomes undeniable that Nationwide uses its control over or custody of (whichever the case may be) the Plans' and their participants' investments (represented by and accounted for as accumulation units) to obtain the revenue sharing payments from the mutual fund families.  If Nationwide did not have control or custody of the Plan's investments and did not facilitate their placement in the mutual funds, the mutual fund families would not make the payments.[22]

Dispositively, Nationwide's use of the Plans' and their participants' investments as represented by the accumulation units to generate the revenue sharing payments constitutes the exercise of discretionary authority and control over those plan assets.  Nationwide concedes this in its discussion of the art hypothetical by effectively conceding that a party which had contracted to store a piece of art for an ERISA plan would exercise discretionary control over the piece by publicly displaying it and charging admission.[23]

In exactly the same way, Nationwide exercises control over the Plans' and their participants' investments (represented by and accounted for as accumulation units) by using its control or custody over them to obtain the revenue sharing payments from mutual fund families.  Crucially, since the Plans and their participants undisputedly did not even authorize, much less direct, Nationwide to so use their investments to generate the revenue sharing payments, Nationwide's exercise of control in the manner is undoubtedly "*discretionary.*"

### III.

### NATIONWIDE CONSTITUTES A FIDUCIARY AS TO THE ACCUMULATION UNITS FOR PURPOSES OF ITS RECEIPT OF THE REVENUE SHARING PAYMENTS

Relying upon the "*to the extent*" language in ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), Nationwide claims that its general exercise of authority and control over the accumulation units

---

[22]  During the June 1 hearing, the Court in passing made the comment that the revenue sharing payments only exist because of the relationship between Nationwide and the mutual fund.  Transcript at 52 [Docket No. 231].  Plaintiffs respectfully disagree.  The facts demonstrate that the revenue sharing payments are made by the mutual fund families solely because Nationwide made it possible for them to receive the Plans' investments.  If Nationwide did not have custody or control over the Plans' investments, the mutual fund families would not make the revenue sharing payments regardless of any other relationship between those families and Nationwide.

[23]  Supp. Mem. at 13-14 [Docket No. 239].

by cancelling and transferring them for various purposes does not make it a fiduciary as to any other actions it takes in connection with the accumulation units, such as arranging for, accepting and retaining the revenue sharing payments.[24]  Put another way, Nationwide argues that as a functional (limited purpose) fiduciary it can only be liable for arranging for, accepting and retaining the revenue sharing payments if doing so constitutes both the exercise of authority or control over the accumulation units and the breach of the resulting fiduciary duty.[25]

    Nationwide's argument does not entitle it to summary judgment for two independent reasons.

A.    *NATIONWIDE'S ARRANGING FOR, RECEIVING AND RETAINING THE REVENUE SHARING PAYMENTS CONSTITUTES BOTH THE EXERCISE OF AUTHORITY AND CONTROL OVER THE ACCUMULATION UNITS AND BREACH OF THE RESULTING FIDUCIARY DUTY AS A MATTER OF LAW OR, ALTERNATIVELY, A GENUINE ISSUE OF MATERIAL FACT EXISTS IN THIS REGARD FOR TRIAL.*

    As set forth above, the undisputed facts demonstrate that Nationwide uses the investments of the Plans and their participants as represented by the accumulation units to generate the revenue sharing payments.  This, by itself, constitutes the exercise of authority and control over the accumulation units by Nationwide.  As a consequence, even if Nationwide correctly argues that the same action that constitutes the exercise of authority or control over plan assets must also constitute the breach of fiduciary duty, Plaintiffs have shown as a matter of law that, or at least created a genuine issue of material fact as to whether, Nationwide's use of the accumulation units to generate the revenue sharing payments constitutes both the exercise of authority and control over the accumulation units (creating the fiduciary duty) and the breach of that duty.

B.    *NATIONWIDE'S GENERAL EXERCISE OF AUTHORITY AND CONTROL OVER THE ACCUMULATION UNITS MAKES IT A FIDUCIARY AS TO THE ACCUMULATION UNITS FOR ALL PURPOSES, INCLUDING ITS RECEIPT OF THE REVENUE SHARING PAYMENTS.*

    Plaintiffs contend that once a party becomes a fiduciary as to particular plan assets all of its conduct in connection with those plan assets must meet the fiduciary standards of ERISA.  In contrast, as previously discussed, Nationwide contends that fiduciary liability only attaches to a

----

[24]  *Id.* at 8-15 [Docket No. 239].

[25]  *Id.* [Docket No. 239].

defendant if the actions constituting its exercise of authority or control over a plan asset (which make it a fiduciary as to that plan asset) also constitute its breach of fiduciary duty.

Nationwide cites no authority for this proposition, however. Rather, it selectively quotes language from various cases which do not remotely support that proposition. In fact, the cited cases at best stand for the proposition that a functional (limited purpose) fiduciary constitutes a fiduciary only as to those assets over which it exercises authority or control. In contrast, strong case law supports Plaintiffs' position.

    1.    <u>The Cases Cited by Nationwide Do Not Support Its Argument.</u>

In *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000), the Supreme Court merely stated the basic "*to the extent*" principle without actually applying it. In *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1997), the Second Circuit merely held that a party which may have become an ERISA fiduciary at some point after entering into contracts with ERISA plans could not be held liable for breach of fiduciary duty for conduct engaged in while negotiating the contracts, as to which negotiations it did not act as a fiduciary. Thus, neither case supports that the same act by the defendant must both create the fiduciary duty (by constituting the exercise of authority or control) and breach it.

*Friend v. Sanwa Bank California*, 35 F.3d 466, 469 (9th Cir. 1994), is not even a "*to the extent*" case. Rather, it is a damages case in which the Ninth Circuit merely held that a trustee is liable for breach of fiduciary duty only if the losses the plaintiff seeks to recover resulted from that breach of fiduciary duty. *Id.* Thus, it too fails to support Nationwide's argument.

In *Flanagan v. General Electric Co.*, 242 F.3d 78, 88 (2d Cir. 2001), the Second Circuit merely held that the decision in issue was a corporate business decision made as a settlor and not a plan administration decision made as a fiduciary. The Second Circuit never held or even discussed the possibility that the same actions which constitute the exercise of authority or control over a plan asset must also constitute the breach of the resulting fiduciary duty.

In *Shultz v. Texaco, Inc.*, 127 F. Supp. 2d 443, 451-2 (S.D.N.Y. 2001), the district court merely held that named fiduciaries who had delegated certain fiduciary responsibilities as provided

for in the plan could not be held liable for breach of those delegated fiduciary duties.  In *Brandt v. Grounds*, 687 F.2d 895, 897 (7th Cir. 1982), and *Gray v. Briggs*, 45 F. Supp. 2d 316, 328 (S.D.N.Y. 1999), the respective courts merely held that defendants who were fiduciaries for purposes of providing investment advice could not be held liable as fiduciaries for activities not involving the provision of investment advice.  None of these three cases remotely supports the proposition  for which Nationwide cites them.

Finally, in *Omni*, 731 F. Supp. at 173-174, the district court held that the bank could not be held liable as a fiduciary for actions it took in regard to mortgage loans, given that it was not a fiduciary as to those mortgage loans, but rather only acted as a fiduciary as to certain short term investments.  The court in no way limited the bank's fiduciary responsibility regarding  those plan assets (the short term investments) as to which it acted a fiduciary, which means the case in no way supports Nationwide's argument.

       2.    <u>Case Law Supports Plaintiffs' Position</u>.

Case law supports the intuitive principle that once a party has exercised sufficient authority and control over particular plan assets to become a fiduciary as to those plan assets, it must fulfill its fiduciary obligations in regard to all the actions it takes in connection with those plan assets, regardless of whether those particular actions, by themselves, would constitute a sufficient exercise of authority or control to make the party into a fiduciary.  A good example is the Seventh Circuit's decision in *Midwest Community Health Service, Inc. v. American United Life Ins. Co.*, 255 F.3d 374 (7th Cir. 2001).

In that case, an insurance company (much like Nationwide) provided a group annuity contract to an employee benefit plan.  *Id*. at 375.  The Seventh Circuit held that the insurer constituted a fiduciary as to the group annuity contract because it had the unilateral right to amend it in ways that could change its value.  *Id*. at 376.  The Seventh Circuit then held that the insurer's failure to disclose certain information to the plan in connection with the plan's voluntary decision to switch from that contract to another violated the insurer's fiduciary duty as to the annuity contract.  *Id*. at 378-9.  It did so even though it never found that the failure to disclose the

-15-

information itself constituted the exercise of authority or control over the annuity contract which made the insurer a fiduciary as to it. *Id.*

The Seventh Circuit's decision is absolutely incompatible with the proposition that the very act that makes a defendant a fiduciary as to a plan asset must also constitute the breach of fiduciary duty. It demonstrates that once a party becomes a fiduciary as to a plan asset, all of its actions in connection with that asset must meet the fiduciary standards of ERISA.

*Brink v. DaLesio* also demonstrates this proposition. In that case, the court first held that the defendant trustee hired to administer the plans fell within the definition of fiduciary provided in ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). 496 F. Supp. 1350, 1367 (D. Md 1980), *aff'd in part and rev'd in part on other grounds*, 667 F.2d 420 (4th Cir. 1982). The court then held that the defendant had violated his fiduciary duties by receiving gratuities from individuals providing services to the plans. *Id.* at 1367-8. The court did not find that the receipt of the gratuities itself constituted the exercise of authority or control over plan assets sufficient to make the defendant a fiduciary, but rather held that it constituted a violation of the fiduciary duty owed as a result of the other control and authority exercised by the defendant. *Id.*

3.    Nationwide's Argument Would Render ERISA § 406(b)(3) Ineffective as to Functional (Limited Purpose) Fiduciaries Under ERISA § 3(21)(A).

The holding in *Brink* makes clear that Nationwide's argument would render it unreasonably difficult to hold liable under ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), any person who constitutes a fiduciary pursuant to ERISA § 3(21)(A)(i) by virtue of its asset management or disposition (as opposed to a "named fiduciary"). ERISA § 406(b)(3) bars a fiduciary from receiving "*any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.*"[26] 29 U.S.C. § 1106(b)(3).

Under Nationwide's theory, a defendant who constitutes a fiduciary as to certain plan assets pursuant to ERISA § 3(21)(A)(i) would not violate § 406(b)(3) by accepting a kickback (or gratuity or commission) from a party dealing with an ERISA plan in connection with a transaction

---

[26]    This section was designed by Congress to prevent kickbacks. *Brink v. DaLesio*, 496 F. Supp. at 1367 (citations omitted).

involving those plan assets unless the acceptance of the kickback would also constitute the exercise of authority or control over the plan assets that made the defendant a fiduciary in the first instance. Two facts demonstrate that Congress did not conceivably intend this result. First, it included no language in § 406 which so limits its scope. Second, it included § 406 in ERISA as a barrier to undue erosion of the common law rules against self-dealing by fiduciaries. *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1215 (2d Cir. 1987).

Nationwide argues for exactly such undue erosion of the prohibition against self-dealing by fiduciaries. Accordingly, the Court should reject Nationwide's argument and hold that once Nationwide became a fiduciary as to the accumulation units all its actions in connection with them had to meet the fiduciary standards of ERISA, including its arranging for, receiving and retaining the revenue sharing payments.

## IV.

### NATIONWIDE CONSTITUTES A FIDUCIARY AS TO THE REVENUE SHARING PAYMENTS

Nationwide does not dispute that it exercises authority and control over the revenue sharing payments by arranging for, accepting and retaining them. Rather, it denies that the revenue sharing payments constitute plan assets. In making this argument once again, Nationwide simply ignores the questions the Court asked during the June 1, 2004 summary judgment hearing.

During that hearing, the Court appeared to accept that the functional approach should guide it in determining whether the revenue sharing payments constitute plan assets in Nationwide's hands and asked questions about the second element of that approach: whether the defendant's use of the funds in issue is at the expense of plan participants or beneficiaries.[27] In its Supplemental Memorandum, Nationwide does not even address this issue. Instead, it reiterates, once again, its unsupported assertion that no functional approach exists to determining whether a particular asset constitutes a plan asset.[28]

Out of an abundance of caution, Plaintiffs will first briefly rebut Nationwide's argument.

---

[27]  6/1/04 Transcript at 37, 42 & 51 [Docket No. 231].

[28]  Supp. Mem. at 19-22 [Docket No. 239].

Following that, Plaintiffs will explain to the Court why it should hold as a matter of law that Nationwide retains the revenue sharing payments at the expense of the Plans or, alternatively, why it should hold that a genuine issue of material fact exists for trial as to whether Nationwide retains the revenue sharing payments at the expense of the Plans.

A.     *THE FUNCTIONAL APPROACH GOVERNS WHETHER THE REVENUE SHARING PAYMENTS CONSTITUTE PLAN ASSETS.*

Contrary to Nationwide's assertion,[29] courts use the functional approach to determine whether an asset constitutes a plan asset under ERISA as well as to determine whether a person exercises authority or control over a plan asset.  As the Ninth Circuit stated, "*This court has adopted a broader functional definition of what constitutes an 'asset of the plan' for purposes of § 406.*"  *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1467 (9th Cir. 1995).

Judge Wood elaborated that:

> ...[C]ourts have adopted two approaches to deciding what constitutes a plan asset: (1) a documentary approach..., and (2) a functional approach, assessing whether the item in question '**may be used to the benefit (financial or otherwise) of the fiduciary at the expense of plan participants or beneficiaries.**' [citation omitted].

*Metzler v. Solidarity of Labor Organizations Health & Welfare Fund*, 1998 WL 477964 at 5 (S.D.N.Y. Aug. 14, 1998) (emphasis in original), *aff'd, Herman v. Goldstein*, 224 F.3d 128 (2d Cir. 2000), *cert. denied*, 533 U.S. 928 (2001).

This functional approach to determining whether funds constitute plan assets has been applied numerous times, including multiple cases holding that employee and employer contributions constitute plan assets.[30]  In addition, the holdings of *Patelco Credit Union v. Sahni*, 262 F.3d 897, 902 (9th Cir. 2001), and *Bannister v. Ullman*, 287 F.3d 394, 402 (5th Cir. 2002), can only have been based upon the functional approach.[31]  They could not have been based upon the asset tracing or documentary approaches which Nationwide claims constitute the sole methods of determining the status of plan assets.

---

[29]   *Id.* at 21 [Docket No. 239].

[30]   *See* cases cited in Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment and Revised Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("P. Mem.") at 13-14 [Docket No. 205].

[31]   See the detailed discussion of these cases in P. Mem. at 18-20 [Docket No. 205].

In short, overwhelming authority supports Plaintiffs' position, while none supports the limited view of plan assets propounded by Nationwide. Recognizing this, Nationwide alternatively argues that under the functional approach a court may only look at facts regarding the assets in question and may not consider the relationships between the defendant and the plan and other assets.[32] Nationwide offers no explanation as to why this should be the case, however, and the functional approach cases prove Nationwide's assertion false.

For example, in *Kayes*, the Ninth Circuit clearly considered the defendant's pre-existing fiduciary relationship to the plan in holding that a contingent right to residual plan surplus constituted a plan asset. 51 F.3d at 1466-68. Similarly, in holding that loan advances from a bank constituted plan assets, the Fifth Circuit considered it dispositive that the defendants had previously exercised authority or control over and had therefore become fiduciaries as to employee contributions. *Bannistor v. Ullman*, 287 F.3d at 404-5.

Thus, this Court has not only the ability to but the duty to look at Nationwide's relationship to the Plans and the Plans' investments (represented by and accounted for as accumulation units) in deciding whether the revenue sharing payments constitute plan assets in Nationwide's hands. When it does so, it will conclude either that the revenue sharing payments constitute plan assets in Nationwide's hands as a matter of law or that a genuine issue of material fact in that regard exists for trial.

B.   *NATIONWIDE RETAINS THE REVENUE SHARING PAYMENTS AT THE EXPENSE OF THE PLANS.*

During the June 1 hearing, the Court asked how Nationwide retains the revenue sharing payments at the expense of the Plans and their participants if its receipt of such payments does not harm the Plans. The common law of trusts provide the answer.

ERISA codifies and imports the common law of trusts. *Donovan v. Bierwirth*, 754 F.2d 1049, 1055 (2d Cir. 1985). That common law sets a strict rule that a trustee may not profit (other than from trust administration fees) from transactions involving trust assets. *Lowen*, 829 F.2d at 1214. Indeed, a trustee must account for all profits made in connection with trust assets even if

---

[32] Supp. Mem. at 21.  [Docket No. 239].

the profits did not result from a breach of trust.  *See Restatement (Second) of Trusts* § 203 (1959).[33]

> The Ninth Circuit explained the reasoning behind this rule as follows:

> *The purpose behind this rule is to deter the fiduciary from engaging in disloyal conduct by denying him the profits of his breach.  [citation omitted].  If there is no financial incentive to breach, a fiduciary will be less tempted to engage in disloyal transactions.  [citation omitted].  The purpose of the rule is not to make beneficiaries whole for any damages they may have suffered.  In fact, whether beneficiaries have been financially damaged by the breach is immaterial.  [citation omitted].  Rather, the duty is to make 'disobedience of the trustee to the [duty of loyalty] so prejudicial to him that he and all other trustees will be induced to avoid disloyal transactions in the future.'  [citation omitted].*

*Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1411-12 (9th Cir. 1988).

ERISA § 409(a) specifically incorporates this principle by providing that a fiduciary shall "*...restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary....*"  29 U.S.C. § 1109(a).  *See Leigh v. Engle*, 727 F.2d 113, 122 fn. 17 (7th Cir. 1984) ("*The disgorgement provisions of § 1109(a) are in accord with the common law of trusts.*").  As the Ninth Circuit succinctly put it, "*Section 409(a) reflects ERISA's adoption of common law trust principles.*"  *Murdock*, 861 F.2d at 1411.

Pursuant to § 409(a) and the common law principle it implements, fiduciaries must make restitution to ERISA plans of any amounts they obtain in violation of their duties under ERISA regardless of whether the ERISA plans suffer any harm. *Leigh v. Engle*, 727 F.2d at 122 ("*ERISA clearly contemplates actions against fiduciaries who profit by using trust assets, even where the plan beneficiaries do not suffer direct financial loss.*"); *M & R Investment Co., Inc. v. Fitzsimmons*, 484 F. Supp. 1041, 1055 (D. Nev. 1980) (holding "*lack of harm to the plan or the good faith or lack of the same on the part of the borrower are not relevant, and certainly not controlling, under ERISA § 406*" as to legality of loan from pension fund to fiduciary), *aff'd*, 685 F.2d 283 (9th Cir. 1982); *Marshall v. Kelly*, 465 F. Supp. 341, 354 (W.D. Okla. 1978) ("*However, a question of whether ERISA has been violated does not depend upon whether any harm results from the*

---

[33]  This means that even in the unlikely event that Nationwide does not breach ERISA by using the accumulation units to generate the revenue sharing payments, it nevertheless becomes a fiduciary over the revenue sharing payments by receiving them and violates ERISA §§ 404 and 406 by retaining them.

*transaction*.").

Under this principle, Nationwide must use the revenue sharing payments for the benefit of the Plans and their participants because they resulted from Nationwide's use of the Plans' investments (as represented and measured by the accumulation units). *See Nickel v. Bank of America Nat'l Trust & Savings Assoc.*, 290 F.3d 1134, 1138 (9th Cir. 2002) ("*The elementary rule of restitution is that if you take my money and make money with it, your profit belongs to me*.") As a consequence, Nationwide retains the revenue sharing payments at the expense of the Plans and their participants, either as a matter of law or raising a genuine issue of material fact in that regard for trial.

Two cases illustrate this principle and its proper application to the revenue sharing payments. In *Kayes*, the defendant had pledged as collateral the right to receive future residual distributions from an ERISA plan after that plan's termination via purchases of annuities for all participants reflecting their full vested benefits. 51 F.3d at 1466. The Ninth Circuit held that even though the pledge of those contingent rights had never put plan assets at risk or otherwise harmed the plan, the contingent residual rights pledged as collateral constituted plan assets because they were generated by the defendant's control over other plan assets. *Id*. at 1467-8. As the Ninth Circuit noted, "*Corporations should not be permitted to rely on their ERISA plan assets to finance takeovers or other risk ventures*." *Id*. at 1468.

In *Sahni*, assets of the ERISA health plan paid the premiums to purchase stop-loss insurance. 262 F.3d at 901-2. Even though the assets used to pay stop-loss benefits in two checks did not constitute plan assets in the hands of the insurance company, the Ninth Circuit held that they constituted plan assets in the hands of the defendant because they resulted from the expenditure of plan assets on the premiums and could be used to benefit the health plan and its beneficiaries. *Id*. at 908-9.

In both cases, the defendants received or utilized assets as a result of having custody or control over other plan assets. Consequently, consistent with the common law trust principle discussed above, the Ninth Circuit held in both cases that the defendants received or used the

-22-

assets at the expense of the ERISA plans, making them plan assets under the functional approach. Likewise, Nationwide retains the revenue sharing payments at the expense of the Plans and their participants because it generated them using plan assets, which under general trust law principles, as incorporated into ERISA, gives the Plans a claim to those payments.

Several examples make this undeniable. First, consistent with its expert's testimony, Nationwide concedes that when it liquidates a participant's investment in a particular mutual fund for reinvestment in another fund and receives cash as a result, it must treat that cash as a plan asset and reinvest it per the participant's instruction rather than pocketing it.[34]   This effectively constitutes a concession by Nationwide that if it pocketed such cash, it would constitute funds used at the expense of a Plan.

Under Nationwide's theory, however, this cash would not constitute a plan asset in its hands because: (i) the cash did not constitute a plan asset in the hands of the mutual fund, and (ii) no document defines that cash as a plan asset. Crucially, in the absence of the cash constituting a plan asset, Nationwide has no explanation for why it cannot pocket that money. The only explanation for the undisputed conclusion that Nationwide could not pocket the cash is that it constitutes a plan asset under the functional approach.

A very similar example is the situation where a mutual fund closes, liquidates its assets and returns cash to Nationwide. Nationwide does not dispute that it would have to use that cash for the Plans' benefit; it could not simply pocket the money. The only possible reason it could not pocket the money is that such cash would constitute a plan asset. It would do so only under the functional approach, however. Significantly, Nationwide has never once articulated in any of its multiple briefs any good reason why revenue sharing payments could be treated differently.

Application of these principles makes clear the answers to the questions posed by the Court during the June 1 hearing. If a son goes to the grocery store as agent for his father to buy a loaf of bread using the father's money, he has to pay over to his father the stick of butter he receives as a bonus from the grocery store because he cannot profit from having had custody or control

---

[34]   Deposition of Frederick Werblow, 63:4-18; 63:25-64:3; 65:3-14, Conf. App. Tab J [Docket No. 137].

over his father's money. *Restatement (Second) of Agency* § 388 (1958) ("*Unless otherwise agreed, an agent who makes a profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal.*"). Simply put, his retention of the butter would come at the expense of his father.

In the context of the Court's other example, the son cannot keep the stick of butter as a commission. Under common law trust principles, a defendant with custody or control over a plaintiff's assets cannot use the plaintiff's assets to generate a commission for itself above and beyond the fees which the parties have contracted for the plaintiff to pay to the defendant. *Restatement (Second) of Trusts* § 203, comment a (1959) ("*Thus, if the trustee receives a commission or bonus for acts in connection with the administration of the trust, he is accountable therefor, even if he does not commit a breach of trust in receiving the commission or bonus.*") Thus, Nationwide cannot use its custody or control over the Plans' investments to generate a commission for itself. Rather, any funds generated beyond what the Plans contracted to pay Nationwide must be turned over to the Plans because their assets generated those funds.[35]

For the foregoing reasons, the Court should hold that Nationwide retains the revenue sharing payments at the expense of the Plans as a matter of law, making them plan assets under the functional approach as a matter of law. Alternatively, the Court should hold that a genuine issue of material fact exists in that regard for trial.

V.

### THE COURT SHOULD NOT ORDER NEW CLASS CERTIFICATION BRIEFING (DELAY AIN'T JUST A CONGRESSMAN FROM TEXAS)

Seeking to further delay this case, Nationwide seizes upon the refinement of Plaintiffs' theory of the case as embodied by the Fourth Amended Complaint and changes in the nomenclature used by Plaintiffs to argue that class certification should be completely rebriefed. In support, however, Nationwide merely makes purely conclusory statements that the refinement

---

[35] During the June 1 hearing, the Court asked Plaintiffs to explain in this brief what they meant when they said they would not try to trace plan assets. Plaintiffs meant only that they would not try to show that specific dollars sent by the Plans to Nationwide correlate to specific dollars paid to Nationwide by the mutual fund companies. As set forth above, Plaintiffs need not trace in this manner in order to prove that the revenue sharing payments constitute plan assets in Nationwide's hands under the functional approach.

of Plaintiffs' theory somehow changes the class certification analysis or raises the possibility of individual issues not discussed in the prior briefing.

The Court should reject this tactic of delay. It should proceed directly to consideration of class certification after it denies Nationwide's summary judgment motion. If, in the context of its review, it believes that the Fourth Amended Complaint raises one or two discrete class certification issues not previously addressed by the parties in their voluminous briefing, it can ask for further briefing on those specific issues.

No reason exists, however, for the Court to disregard the hundreds (if not thousands) of hours already expended by the parties on comprehensive class certification briefing and the thousands of pages of supporting documents already filed with the Court by the parties. Simply put, judicial efficiency and the timely disposition of this case demand rejection of Nationwide's unsupported request to completely rebrief class certification.

## VI.

## <u>CONCLUSION</u>

In ruling, the Court should consider the entirety of the relationships between the Plans, Nationwide and the mutual fund families, and, particularly, the interrelationship between Nationwide's handling of the Plans' investments (represented by and accounted for as accumulation units) and the revenue sharing payments. When it does so, and it applies well-established interpretations of ERISA, it will find that Nationwide constitutes a fiduciary as to both the accumulation units and the revenue sharing payments. Accordingly, it should deny Nationwide's summary judgment motion and immediately begin consideration of class certification based upon the existing comprehensive briefing.

Respectfully submitted,

_____

Marc R. Stanley
Federal Bar No. ct18179
Roger L. Mandel
Federal Bar No. ct18180

STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, Texas  75205
214-443-4300
214-443-0358 (Fax)


Antonio Ponvert III
Federal Bar No. ct17516
Richard A. Bieder
Federal Bar No. ct04208

KOSKOFF KOSKOFF & BIEDER, P.C.
350 Fairfield Avenue
Bridgeport, Connecticut 06604
203-336-4421
203-368-3244 (Fax)


Gregory G. Jones
Federal Bar No. ct23443

LAW FIRM OF GREGORY G. JONES PC
603 S. Main Street, Suite 200
Grapevine, Texas 76051
817-424-9001
817-424-1665 (Fax)

**PLAINTIFFS' COUNSEL**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing were served this ____ day of August, 2004, upon the following counsel via the methods indicated:

| | |
|---|---|
| Dennis F. Kerrigan, Jr.<br>LeBoeuf, Lamb, Greene & MacRae<br>Goodwin Square<br>225 Asylum Street<br>Hartford, CT  06103 | ☐   via certified mail, RRR<br>☐   via fax 860/293-3555<br>☐   via first-class, U.S. mail<br>☐   via overnight delivery<br>☐   via hand delivery |
| Charles C. Platt<br>Wilmer Cutler Pickering Hale and Dorr<br>399 Park Avenue<br>New York, NY 10022 | ☐   via certified mail, RRR<br>☐   via fax 212/230-8888<br>☐   via first-class, U.S. mail<br>☐   via overnight delivery<br>☐   via hand deliver |
| Eric J. Mogilnicki<br>Wilmer Cutler Pickering Hale and Dorr<br>2445 M Street, N.W.<br>Washington, D.C.  20037 | ☐   via certified mail, RRR<br>☐   via fax 202/663-6363<br>☐   via first-class, U.S. mail<br>☐   via overnight delivery<br>☐   via hand deliver |

_____

Roger L. Mandel

-27-