14-15. ERISA does not stretch that far, and Plaintiffs have not provided any other support for their claim that Defendants may not accept payments made from mutual fund assets.[19]

## V.    New Class Certification Briefing is Necessary.

Plaintiffs filed for class certification in September, 2003. Since that time, Plaintiffs have substantially altered their factual allegations and legal claims. Indeed, this Court has required them to file a new Complaint and to explain their position on the tracing of plan assets. *See* Order of June 4, 2004 (Docket 232); June 1, 2004 Hearing Tr. (Docket 231) at 90:1-12. Plaintiffs' latest Opposition to Summary Judgment further revises their allegations and claims. In light of these changes, any consideration of class certification would require new briefing by the parties.

In opposing this sensible approach, Plaintiffs pretend that Defendants did not already identify specific new theories not addressed in Plaintiffs' current class certification briefing. *Compare* Pls.' Resp. at 23 *with* Defs.' Supp. Mem. at 22-23. That is incorrect. For example, Defendants noted that Plaintiffs rely upon a "functional approach" to ERISA, *see* Defs.' Supp. Mem. at 23, that is not mentioned in their class certification papers. *Id.* Plaintiffs also cannot explain why the Court would order them to amend their Complaint if Plaintiffs had merely offered "refinement" and "changes in nomenclature" in their most recent briefing. *See* Pls.' Resp. at 23.

---

[19]    Plaintiffs claim that cash received by Defendants when a mutual fund closes or when fund shares are sold must be a plan asset because "in the absence of the cash constituting a plan asset, Nationwide has no explanation for why it cannot pocket that money." Pls.' Resp. at 22. In fact, state insurance law, *see* Ohio Rev. Code Ann. § 3907.15, and federal securities rules, *see* Rule 0-1(e)(2) under the Investment Company Act of 1940, require that the separate account maintain reserves at least equal to the contractholders' interest in the contracts, which would include the proceeds of any such liquidation. Thus, any cash proceeds that are not distributed out of the separate account at the contractholder's direction must remain in that account, allocated to alternative investment options (other accumulation units) selected by the contractholder.

Furthermore, Plaintiffs' Response itself demonstrates that the existing class certification briefing is inadequate. For example, Plaintiffs failed to respond adequately to the Court's request that they explain whether and how they plan to trace assets from the plans to Defendants. *See* June 1, 2004 Hearing Tr. (Docket 231) at 90:1-12. Instead, Plaintiffs merely rule out the tracing of "specific dollars." Pls.' Resp. at 23, n.35. That response begs the question of what manner of tracing Plaintiffs anticipate, if any. The Court cannot assess whether a class trial is appropriate without such information. *See* Defs.' Reply Mem. at 19-20; Defs.' Class Cert. Opp. (Docket 179) at 46.[20] Plaintiffs' Response also alleges that "the mutual fund families would not make the payments" absent certain actions by Defendants. Pls.' Resp. at 12. This claim is false and without support. *See supra* at 3-4. However, if Plaintiffs evade summary judgment on this basis of this assertion, they must explain how it could be proved as to every one of thousands of relevant mutual funds without individualized evidence as to the motive of each in entering into service contracts with Nationwide.

## CONCLUSION

After three years of litigation, five different Complaints, and more than two complete rounds of summary judgment briefing, it has become manifestly clear that Plaintiffs have no case on the facts and no case on the law. Plaintiffs have been given every reasonable opportunity (and then some) by this Court to find and articulate a viable theory of potential liability for

---

[20] The tracing issue is further complicated by Plaintiffs' express reliance on "the common law of trusts" to seek to establish Nationwide's breach of fiduciary duty. *See* Pls.' Resp. at 23. Not only are "trust remedies . . . simply inapposite" under ERISA, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 219 (2002), but they would require that claimants be able to specifically trace the assets they seek to recover. *See Ellis Nat'l Bank of Jacksonville v. Irving Trust Co.*, 786 F.2d 466, 469 (2d Cir. 1986) (seeking recovery of stolen funds "traceable into the Plans" under state common law of trusts and other theories).

Defendants, and have been unable to do so.  Based on the undisputed facts and the unambiguous

law, Defendants are entitled to judgment as a matter of law, and Plaintiffs' Fourth Amended

Complaint should be dismissed with prejudice.

Dated:  August 27, 2004

                     Defendants Nationwide Financial Services Inc.
                     and Nationwide Life Insurance Co.

By:

Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Jessica A. Ballou. Esq. (CT 22253)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Email:  Dennis.Kerrigan@llgm.com
Telephone:  (860) 293-3500
Facsimile:  (860) 293-3555

Charles C. Platt, Esq. (CT 23036)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
New York, NY 10019-5389
Telephone:  (212) 230-8800
Facsimile:  (212) 230-8888

Eric Mogilnicki, Esq.
Samuel Broderick-Sokol, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
2445 M Street, N.W.
Washington, D.C. 20037
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

Exhibit A

RECYCLED

Westlaw.

Not Reported in F.Supp.
1995 WL 704687 (D.Conn.)
**(Cite as: 1995 WL 704687 (D.Conn.))**

Page 1

**c**

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Carmen T. D'AMORE, Salvatrice Coscina,
Plaintiffs,
v.
STANGLE and DENIGRIS, INC., Plan
Administration, Ltd., and the Union Central
Life Insurance Company, Defendants.

**Civ. No. 3:94CV01087 (AVC).**

May 19, 1995.

*MEMORANDUM OF DECISION ON MOTIONS
TO STRIKE*

COVELLO, District Judge:

**\*1** This is an action brought pursuant to Title I of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.* The plaintiffs seek recovery of sums allegedly due them pursuant to certain contracts of insurance. The defendants now move to strike the plaintiffs' claim for punitive damages and the plaintiffs' demand for a jury trial. The issues presented are: 1) whether 29 U.S.C. § 1132 (a)(3)(B) allows the recovery of punitive damages, and 2) whether the plaintiffs are entitled to a jury trial. For the reasons stated herein, the court concludes that punitive damages are not authorized under § 1132 (a)(3)(B). Further, the court also concludes that the plaintiffs are not entitled to a jury trial. Accordingly the defendants' motions to strike the plaintiffs' claims for punitive damages and demand for jury trial are granted.

*FACTS*

Examination of the complaint and the memoranda submitted by the parties discloses the following

facts:

The plaintiffs are executors of the estate of James D'Amore, deceased. The complaint alleges that James D'Amore and his wife Lucy D'Amore, also deceased, each held group term life insurance policies with the defendant, Union Central Life Insurance Company ("Union Central"), pursuant to a group plan purchased by D'Amore Rest Haven, Inc. The complaint further alleges that the defendant, Stangle and DeNigris, Inc. ("Stangle and DeNigris"), and its subsidiary, the defendant Plan Administration, Ltd. "administered" such insurance policies. On July 7, 1992, Union Central sent a notice of impending cancellation to D'Amore Rest Haven, Inc., in care of Stangle and DeNigris and/or Plan Administration. On July 17, 1992, the complaint alleges, Union Central sent a letter to Stangle and DeNigris stating that the policy was "terminated." The complaint further alleges that Stangle and DeNigris and Plan Administration, pursuant to its contract with D'Amore Rest Haven, Inc., were required to promptly transmit to D'Amore all communications from Union Central, and failed to communicate the notice of cancellation to D'Amore Rest Haven Inc.

On August 6, 1992, the complaint further alleges, Stangle and DeNigris, acting on behalf of D'Amore Rest Haven, contacted Union Central requesting reinstatement of the policy. In September, 1992, Stangle and DeNigris sent D'Amore Rest Haven a premium notice for the policy covering the period from May 1, 1992 to August 31, 1992. James D'Amore allegedly paid this bill. On September 5, 1992, James D'Amore's wife Lucy D'Amore died. On September 15, 1992, the complaint alleges, Stangle and DeNigris returned the payment made by D'Amore with notice that the policy had been "terminated." Union Central refused to pay any life insurance proceeds on the life of Lucy D'Amore. Union also thereafter refused to reinstate James D'Amore's life insurance policy.

James D'Amore brought the instant action in the superior court for the judicial district of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 2
1995 WL 704687 (D.Conn.)
**(Cite as: 1995 WL 704687 (D.Conn.))**

Hartford/New Britain seeking compensatory and exemplary damages for the improper cancellation of the plaintiff's life insurance policy. The plaintiff also sought reinstatement of the policy and attorneys' fees. The complaint alleged that the defendants' actions constituted negligence, breach of contract, and violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110 *et seq.* The defendants thereafter removed the case to this court. The plaintiff then moved to remand the case to the state superior court, and the defendants moved to dismiss the action. The court denied both motions, concluding that ERISA governs this action entirely.

### STANDARD

**\*2** Pursuant to Rule 12 (f), the court may, "at any time...order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). When a motion to strike is based on a claim that the damages sought are not recoverable, the motion to strike is properly treated as a motion to dismiss pursuant to rule 12(b)(6). See *Commercial Union Insurance,* 409 F.Supp. 453 (W.D. La., 1976), also 5A Wright and Miller, *Federal Practice and Procedure,* § 1380, p 647. [FN1]

### DISCUSSION

I. Motion to strike plaintiff's claim for punitive damages

The plaintiffs, in their amended complaint, have asked for "punitive damages pursuant to 29 U.S.C. section 1132(a)(3)(B)(i)." The defendants first claim that, under ERISA, punitive damages are unavailable. Specifically, the defendants move to strike the plaintiffs' claim for punitive damages because 29 U.S.C. § 1132(a)(3)(B) does not authorize punitive damages to plan beneficiaries in its allowance for "...other equitable or remedial relief...". The plaintiff responds that "ERISA...incorporates the common law of trusts...", and that "based on traditional trust law, trustees may be liable in certain instances in suits for breach of trust for exemplary or punitive damages where malice or fraud is involved."

The plaintiffs are successor in interest to the decedent James D'Amore. D'Amore was both a

participant in the plan and a beneficiary. Section 1132(a) provides:
   A civil action may be brought-

                    * * *

   (3) by a participant, beneficiary or fiduciary ...(B) to obtain other appropriate equitable relief (i) to redress such violations [of this chapter or of the plan]"
In *Mertens v. Hewitt Associates,* 113 S.Ct. 2063, 2068-2070 (1993), the Supreme Court interpreted section 1132(a)(3) to authorize only those damages "typically available in equity, (such as injunction, mandamus, and restitution...)" If the plaintiffs are correct, then the phrase "other appropriate equitable relief", in the statute, implies legal as well as equitable relief. As the Supreme Court stated in *Mertens,* "We will not read the statute to render the modifier superfluous." *Id.* at 2069. See also *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 146-148 (1985); *Diduck v. Kaszycki & Sons Contractors,* 974 F.2d. 270, 286 (2nd Cir. 1992).

The plaintiffs attempt to distinguish this precedent by claiming that they seek punitive damages on behalf of the plan itself, rather than as beneficiary under the plan. The complaint, however, does not state that the suit is brought on behalf of the plan itself. To the contrary, the amended complaint specifically alleges that the defendants are liable to "the plaintiffs, as plan participants...".

II. Motion to strike plaintiffs' demand for jury trial

The defendants next claim that the plaintiffs are not entitled to a jury trial. Specifically, they argue that the overwhelming weight of authority supports the proposition that no right to a jury trial exists in an action brought pursuant to ERISA. The plaintiffs respond that in cases where the essence of the claim is legal, rather than equitable, the right to jury trial is preserved. The plaintiffs assert that this is just such a case. The court concludes that the plaintiffs' claims are here wholly equitable, and accordingly, a jury trial is inappropriate.

**\*3** The court of appeals in this circuit has never addressed the question of whether the civil enforcement provisions of ERISA wholly preclude jury trials. When plaintiffs seek solely equitable

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

relief in the form of restitution and removal of the trustees of a plan, they are not entitled to a jury trial. *Katsaros v. Cody,* 744 F.2d. 270, 278 (2d. Cir. 1984). The *Katsaros* court commented that this result applied to equitable relief "... as distinguished from damages for wrongdoing or non-payment of benefits." *Id.* The plaintiffs here allege, *inter alia,* violations of 29 U.S.C. § 1132(a)(1)(B). This section provides,

> "A civil action may be brought by a participant or beneficiary...to recover benefits due [him or her] under the terms of [his or her] plan, to enforce rights under the terms of [his or her] plan, or to clarify [his or her] rights under the terms of the plan..."

When a plaintiff seeks equitable relief under this section, a jury trial is inappropriate. *Katsaros v. Cody,* 744 F.2d. 270, 278 (2d Cir. 1984). Other courts have ruled that this section contemplates only equitable relief, and therefore a jury trial is wholly unavailable. *Turner v. CF & I Steel Corp.,* 770 F. 2d. 43,44-45 (3d. Cir. 1985); *Pane v. RCA Corp.,* 868 F. 2d. 631, 635. (3d. Cir, 1989). However, when a statute creates the right to bring a civil action, "... a jury trial must be available if the action involves rights and remedies typically enforced in an action at law." *Curtis v. Loether,* 415 U.S. 189, 195 (1973). Further, in cases where legal and equitable claims are united in the same pleadings, the legal claim is properly submitted to the jury. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 473 (1962); *Scott v. Neely,* 140 U.S. 106, 117 (1891), *Weber v. Jacobs Mfg. Co.,* 751 F.Supp. 21, 24-26 (D.Conn. 1990). Therefore, the court here must determine if the claims in the plaintiffs' amended complaint are equitable or legal in nature.

The plaintiffs argue that because they seek relief in the form of money, their claim is legal in nature and as such they are entitled to a jury trial. In many cases brought pursuant to ERISA, however, plaintiffs seek plan benefits, usually in the form of money, which have not been paid to them as a result of alleged breaches of a fiduciary duty by the plan administrator. A claim is not classified as legal simply because it seeks money. "We need not, and do not, ... say that any award of monetary relief must necessarily be 'legal relief'." *Curtis v. Loether,* 415 U.S. 189, 196 (1974). The plaintiffs' amended complaint here sets forth three counts. The first and

second counts allege the breach of a fiduciary duty by all three defendants. "It is true that, at common law, courts of equity had exclusive jurisdiction virtually all actions by fiduciaries for breach of trust." *Mertens v. Hewitt Assoc.,* 113 S.Ct. 2063, 2068. See also 3 A. Scott and Fratcher, *Law of Trusts,* § 197, p. 188 (4th Ed. 1988). Thus the first two counts are wholly equitable in nature.

**\*4** The third count of the amended complaint alleges that the three defendants "...have failed to meet their obligations under the terms of the employee benefit plan and are thus liable to the plaintiffs under 29 § 1132 (a)(1)(B)." The claim here seeks enforcement of the plan pursuant to § 1132(a)(1)(B). "Claims under [29 U.S.C. § 1132 (a)(1)(B)] to recover benefits allegedly due and for breach of fiduciary duty are analogous not to a legal action for breach of contract ... but rather to an action by a beneficiary against a trustee under the law of trusts that have traditionally been viewed as equitable in nature." *Gardella v. Mutual Life Ins. Co. of New York,* 707 F.Supp. 627, 628 (D. Conn. 1988). Thus, the plaintiffs here are in the position of beneficiaries seeking to enforce terms of a trust. "[N]o jury trial is required in suits under [§ 1132(a)(1)(B)] by a beneficiary or participant against a trustee." *Turner v. CF & I Steel Corp.,* 770 F.2d. 43,47 (3d Cir. 1985). See also *Pane v. RCA Corp.,* 868 F.2d. 631, 636 (3d Cir. 1989) ("In [ *Turner*] ... we held that the [29 U.S.C. § 1132(a)(1)(B)] cause of action was equitable. In so holding we ... rejected the claim that in a suit for recovery of benefits under an ERISA employee benefit plan, a litigant was entitled to a jury trial.") "Traditionally, claims for present and future [benefits] have been viewed as equitable in nature and triable by a court ... Congress intended to preserve this view when it enacted [section 1132]." *In re Vorpahl,* 695 F.2d 318, 322 (8th Cir. 1982). The court determines that this claim is equitable as well.

### Conclusion

For the foregoing reasons, the defendants' motions to strike the plaintiffs' claim for punitive damages (documents number 23-1 and 24) are granted, and the defendants' motions to strike the plaintiffs' demand for jury trial (documents number 37 and 39-1) are granted.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1995 WL 704687 (D.Conn.)
**(Cite as: 1995 WL 704687 (D.Conn.))**

Page 4

It is so ordered.

> FN1. The plaintiff does not contest the
> appropriateness of the motion to strike on
> procedural grounds. The court will treat
> the motion to strike as a motion to dismiss
> under Rule 12(b)(6). The court agrees with
> the reasoning of *Professional Asset
> Management, Inc. v. Penn Square Bank,*
> 566 F.Supp. 134, 136 (W.D.Okl., 1983),
> that "to do otherwise would be to retreat to
> the strict, technical form of common law
> practice that the Federal Rules have
> abandoned."

1995 WL 704687 (D.Conn.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



1998 WL 477964
1998 WL 477964 (S.D.N.Y.)
(Cite as: 1998 WL 477964 (S.D.N.Y.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Cynthia A. METZLER, Acting Secretary of Labor,
United States Department of
Labor, Plaintiff,

v.

SOLIDARITY OF LABOR ORGANIZATIONS
HEALTH & WELFARE FUND; Edmundo Perez;
Pedro
Lopez; William Fagello; Philip Vero; Arthur
Goldstein; Solidarity of Labor
Organizations, Local Union 947; Associate
Members Administrative Services,
Inc.; and, Medco Administrators, Ltd., Defendants.

**No. 95 Civ. 7247(KMW).**

Aug. 14, 1998.

OPINION & ORDER

WOOD, J.

**\*1** The Department of Labor (the "DOL") [FN1]
sues under the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. 1001 *et
seq.,* to enjoin acts and practices of defendants
Medco Administrative Services, Ltd. ("Medco")
and Arthur Goldstein ("Goldstein"), President of
Medco, that allegedly violate Title I of ERISA, and
to halt the extraction of fees by defendants from
contributions made by employers to obtain
employee health benefits from an employee benefit
plan. The DOL also requests an order directing the
return of previously extracted fees and barring
defendants from engaging, directly or indirectly, in
any transactions with ERISA-covered employee
welfare benefits plans. Before the Court are cross
motions for summary judgment. For the reasons
stated below, plaintiff's motion is granted in part

and denied in part and defendants' motion is denied
in its entirety.

FN1. Robert B. Reich, former Secretary of
Labor, originally filed this action. Pursuant
to Rule 25(d) of the Federal Rules of Civil
Procedure, Cynthia A. Metzler has been
automatically substituted as plaintiff.

I. *Procedural History*

The DOL commenced this action on August 31,
1995 against defendants Solidarity of Labor
Organizations Health and Welfare Fund ("SOLO
Benefit Fund" or the "Fund"); Edmundo Perez and
Pedro Lopez, trustees of the SOLO Benefit Fund;
William Fagello, administrator of the plan;
Solidarity of Labor Organizations, Local Union 947
("Local 947"), the union sponsor of the SOLO
Benefit Fund; Associate Members Administrative
Services, Inc. ("AMAS"), the exclusive Employer
Collective Bargaining Representative with respect
to the SOLO Associate Membership Program; and
Philip Vero, President of AMAS; Medco, and
Goldstein. On February 27, 1997, the Secretary
filed Consent Judgments with this Court as
proposed final dispositions of the Secretary's
complaint with respect to all defendants except
Medco and Goldstein. Plaintiff Metzler now moves
for summary judgment and injunctive relief against
Medco and Goldstein, and defendants Medco and
Goldstein cross-move for summary judgment
dismissing the complaint in its entirety.

II. *Factual Background*

The SOLO Benefit Fund was established on March
31, 1985 by Local 947, and two employers, Dress
Up and Home Care Industries, Inc., both of whom
had preexisting collective bargaining agreements
with Local 947. [FN2] According to the Solidarity
of Labor Organizations Welfare Trust Agreement
(the "Trust Agreement"), the Fund was established
to provide hospital and medical coverage to eligible

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1998 WL 477964
1998 WL 477964 (S.D.N.Y.)
(Cite as: 1998 WL 477964 (S.D.N.Y.))

Page 2

employees and was to be jointly administered by representatives of Local 947 and employers. (Pl.Exh. 6.) Due to shrinkage of union membership in 1989, the trustees of the Fund instituted an "associate membership program," whereby Local 947 entered into contracts with employers of so-called "associate members" for the sole purpose of providing health benefits through the union employee welfare benefit plan, the SOLO Benefit Fund. However, these contracts did not cover other employment issues such as wages, hours, and terms and conditions of employment. In addition to these direct negotiations with employers, Local 947 also began to work through so-called "employer collective bargaining representatives" ("ECBRs") in the latter half of 1990. An ECBR, after contracting with the Fund to serve in such a capacity, would then enter into separate contracts with employers, which authorized the ECBR to negotiate an "Associate Membership Agreement" on behalf of an employer with Local 947 for the benefit of its employees. Under the terms of the Association Membership Agreement, which was signed by Local 947, the employer, and the ECBR, the employer's recognition of Local 947 as the collective bargaining representative of its employees was expressly limited to "matters arising from participation of its employees resulting from the operation and administration of the SOLO Health and Welfare Fund, and for no other matters." (See Pl. Exh. 11; Pl. Exh. 23.)

FN2. Unless otherwise indicated, the facts in this section are taken from those portions of plaintiff's statement of material facts undisputed by defendants.

*2 From 1990 to 1992, Perez, while employed as Assistant Fund Administrator, selected those entities that would be permitted to market the health benefits of the Fund to employers. The first such entity was The Phoenix Agency, whose president, Dennis Grasso ("Grasso"), was an insurance broker and the employer of a daughter of Perez. During 1990 and 1991, Grasso solicited and enrolled employees to receive health benefits from the Fund as associate members of Local 947. In December 1990, Perez executed a memorandum of agreement with Associate Benefit Agency ("ABA")--a

company created by Tracey Perez, another daughter of Perez who was also an employee of the Fund, and whose fiancee, Philip Vero, was made Vice President and Manager of ABA--to allow ABA to bring employers it represented as a collective bargaining representative to participate in the Fund. (Pl.Exh. 18.) After being advised by lawyers that Tracey Perez's involvement with ABA while employed by the Fund was problematic, Philip Vero formed a new corporation, AMAS, [FN3] which was then recognized by the Fund's Board of Trustees as the "liason for the associate membership enrollment" on or about January 8, 1991 (Pl. Statement at ¶ 41; Pl. Exh. 19.) [FN4] On or about May 2, 1991, Perez and Philip Vero executed a memorandum of agreement under which AMAS was permitted to solicit employers for participation of their employees in the Fund through the associate membership program. On April 1, 1992, AMAS enrolled itself in the Fund's associate membership program as a participating employer, resulting in its employees receiving health benefit coverage from the Fund.

FN3. Philip Vero was also the owner and President of AMAS.

FN4. On or about April 30, 1991, Philip Vero notified Local 947 that ABA was assigning its rights under its agreement with Local 947 to AMAS, and that any employers that the ABA had obtained for participation in the Fund's associate membership program would be handled by AMAS.

In or around March 1991, defendant Medco, [FN5] entered an agreement with the AMAS, under which AMAS granted Medco "access" to the Fund "for the purpose of acquiring Associate Members." (Pl.Exh. 36.) The agreement further provided that AMAS would receive a fee from Medco in the amount of $7.00 per month for each employee Medco enrolled in the Fund who obtained individual coverage, and $14 .00 per month for each employee obtaining family coverage. At about the same time Medco and AMAS executed this agreement, Medco also entered an agreement with Perez, under which

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.