1998 WL 477964
1998 WL 477964 (S.D.N.Y.)
**(Cite as: 1998 WL 477964 (S.D.N.Y.))**

Page 3

Medco was authorized to solicit employees for participation in the Fund's associate membership program. In addition to soliciting employers for participation of their employees in the Fund, Medco also enrolled itself in the Fund's associate membership program as a participating employer in March 1993, resulting in its employees receiving health benefit coverage from the Fund.

> FN5. From its inception to March 1996, Goldstein served as President of Medco. The present President of Medco is Goldstein's brother, Arthur Goldstein. The only shareholders of Medco are Goldstein's spouse and sister-in-law.

Medco's role in soliciting employers for the Fund's associate membership program can be summarized as follows. An interested employer was first required to execute an Authorization of Collective Bargaining Representative," naming Medco as the employer's "Collective Bargaining Representative." The Medco representative would then provide employers with application forms as well as medical history questionnaires to be completed and signed by participating employees. These forms were then forwarded to the Fund for assessment of the employees' medical history. If an employer's employees met the criteria established by the Fund, the Medco representative then presented that employer with an Associate Membership Agreement for its signature. The Fund was not a party to the Associate Membership Agreement; only the employer, Local 947 and Medco were parties to this agreement. However, under the Associate Membership Agreement, the employer agreed to be bound by the terms of the Trust Agreement and the rules and regulations governing the operation of the Fund, and to accept the decisions of the Fund's Board of Trustees as final and binding upon the employer and its employees. (*See* Pl. Exh. 11.)

*3 The billing procedure contemplated under the Associate Membership Agreement can be described as follows. A participating employer was required to make contributions to the Fund on behalf of all its employees "in accordance with the Schedule of Benefits and the contribution amount agreed to between Medco and the Employer." (*Id.*) The Associate Membership Agreement directed the employer to pay its monthly contribution to Medco and specified that this amount includes "the monthly contributions to the SOLO Health and Welfare Fund, Local 947, Solidarity of Labor Organizations Associate Membership fees in the amount of twelve (12) dollars per covered employee per month pursuant to written authorization, and a service fee payable to Medco." (*Id.*) The monthly fees for coverage and Associate Membership in Local 947 were set by Fund's trustees and Local 947, respectively. Goldstein and Medco determined the amount of the service fee. The bill Medco sent to each participating employer did not specify the amount of the employer's total monthly contribution which constituted Medco's fee. [FN6] Upon receiving the lump sum of the employer's monthly contribution, Medco would deposit the payment in its own account and from such account issue a check to the Fund reflecting the amount charged for the provision of benefits, and a check to Local 947 reflecting the amount charged for association membership. Medco retained the balance as its fee. [FN7]

> FN6. Medco altered the statement sent to employers in November 1995, so that it indicated the percentage of the total amount due going to each of the following: union dues, benefit fund contribution, "service & organization," and "administration & billing." (Pl.Exh. 46.)

> FN7. In those instances where Medco used an outside salesperson to enroll employers, Medco paid a commission to the salesperson out of the money it retained from the employer's monthly contribution payment to Medco. If the salesperson who solicited the employer on behalf of Medco used an agent, a commission was paid by the salesperson to that agent out of the commissions the salesperson received from the marketer. A portion of the amount retained by Medco also was used to pay access fees to AMAS.

III. *The Parties' Contentions*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1998 WL 477964    Page 4
1998 WL 477964 (S.D.N.Y.)
**(Cite as: 1998 WL 477964 (S.D.N.Y.))**

In its motion for summary judgment, DOL takes the position that the essential factual elements needed to establish defendants' violations of ERISA, as alleged in the complaint, are not in dispute. Because defendants determined the total amount of the employer's monthly contribution and retained a portion of the employer's payment, DOL argues, defendants exercised authority and control over employee welfare benefit plan assets and are thus fiduciaries as defined by ERISA. 29 U.S.C. § 1002(21). DOL further contends that defendants are parties in interest within the meaning of ERISA, because (1) they are fiduciaries, § 3(14)(A), and (2) Medco is an employer of employees covered by the Fund and Goldstein was the President of Medco, §§ 3(14)(C) and (H). DOL maintains that the pleadings, depositions, and exhibits in the record clearly establish that defendants: (1) breached their fiduciary duty of loyalty by not acting solely in the interest of the participants and beneficiaries of the Fund, and for the exclusive purposes of providing benefits to them and defraying reasonable expenses of administering the Fund, in violation of § 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A); (2) failed to act with the care, skill, and diligence of a prudent man acting in a similar capacity, in violation of § 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B); (3) engaged in "prohibited transactions" by receiving plan assets for their own benefit, in violation of §§ 406(a)(1)(D) and (b)(1) of ERISA, 29 U.S.C. §§ 1106(a)(1)(D) and (b)(1); and (4) breached their fiduciary duties as co-fiduciaries, in violation of § 405(a) of ERISA, 29 U.S.C. § 1105(a).

*4 In their motion for summary judgment, defendants agree that there are no material facts in dispute, but insist that the record supports their position that they cannot be held fiduciaries under ERISA. They contend that Medco performed a "non-discretionary, ministerial function, namely, dividing the amount received from employers into its contractually determined constituent parts." Moreover, they maintain that the monies retained by Medco from employer contributions as its "collective bargaining representative fee" (the "ECBR fee") were not an "assets of the plan" within the meaning of ERISA. According, they argue, defendants cannot be construed as "fiduciaries" within the meaning of ERISA, because they were never appointed to positions as fiduciaries and neither had nor exercised discretionary authority over the disposition of any plan assets. Defendants contend that, because DOL cannot establish that defendants were ERISA fiduciaries, the complaint in this action must be dismissed. [FN8] In addition, they submit that the Fund has suffered no monetary damages as a result of defendants' representation of employers participating in the Fund; defendants' remitted to the Fund the full coverage rate required under the Associate Membership Agreement, "which was not only enough for the Fund to provide the benefits but also allowed for a tremendous increase in the new assets of the Fund." (Def. Mem. at 10.)

> FN8. Defendants further insist that the material facts establish that the Fund has suffered no monetary damages as a result of Medco's representation of employers participating in the Fund.

### IV. Discussion
#### A. Summary Judgment Standard

On a motion for summary judgment, a court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987) (citations and internal quotation marks omitted). To prevail on a motion for summary judgment, the moving party therefore must show that there are no such genuine issues of material fact to be tried, and that he or she is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Citizens' Bank v. Hunt,* 927 F.2d 707, 710 (2d Cir.1991). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," which includes identifying the materials in the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323. Once a motion for summary judgment is made and supported, the non-moving party must set forth specific facts that show that there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although a

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

court considering a motion for summary judgment must view all evidence in the light most favorable to the non-moving party, and must draw all reasonable inferences in that party's favor, *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir.1993), the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp. .*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If, based on the submissions to the court, no rational fact-finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate. *See Anderson*, 477 U.S. at 250.

B. *Fiduciary Status*

**\*5** ERISA permits suits for breach of fiduciary duty only against a person who acts as a fiduciary with respect to a plan or trust covered by ERISA. *Acosta v. Pacific Enterprises*, 950 F.2d 611, 617 (9th Cir.1992). Section 3(21) of ERISA provides, in pertinent part, that a fiduciary is anyone who:

> (i) ... exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting managment or disposition of its assets, (ii) ... renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) ... has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The inquiry of the Court is guided by the principle that Congress intended this statutory definition to be broadly construed. *Lopresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir.1997) In determining whether fiduciary status should be assigned to an individual or entity, the primary focus is on the functions performed rather than the formal title held by that individual or entity. *Blatt v. Marshall and Lassman*, 812 F.2d 810, 812 (2d Cir .1986); *see also Acosta*, 950 F.2d at 618 (concluding that language of § 1002(21)(A) clearly indicates that "a person's actions, not the official designation of his role, determine whether he enjoys fiduciary status"); *Galgay v. Gangloff*, 677 F.Supp. 295, 302 (M.D.Pa.1987)(noting legislative history reveals Congress sought "to codify the traditional principles of fiduciary responsibility from the law of trusts" and "adopted a broad, functional definition of the term" in order to further this purpose). Courts have stressed that a person need not have "absolute discretion with respect to a benefit plan to be considered a fiduciary." *Blatt*, 912 F.2d at 812; *see also American Federation of Unions v. Equitable Life Assurance Soc'y*, 841 F.2d 658, 663 (5th Cir.1988). Fiduciary status is properly assigned where an individual or entity is shown to exercise "any authority or control respecting ... diposition of [a plan's] assets." *Blatt*, 812 F.2d at 813.

As both parties recognize, defendants' liability under ERISA hinges on the question of whether or not the monies retained by Medco as its ECBR fee constitute "plan assets" within the meaning of ERISA. For if defendants exercised no authority or control respecting the management or disposition of any plan assets they are not "fiduciaries" within the meaning of ERISA and cannot be subject to the standards of conduct ERISA imposes on fiduciaries.

The ERISA statute provides no definition of the term "plan asset," and the DOL has not defined the term by regulation in the context of employer contributions on behalf of employees for health benefits. However, the regulations do provide that determinations of what constitutes a plan asset should be "based on ordinary notions of property rights under non-ERISA law and the terms of any contract to which the plan is a party." *See* Proposed Regulating Relating to the Definition of Plan Assets, 50 Fed.Reg. 961 (January 8, 1985) at 962. As plaintiff correctly notes, courts have adopted two approaches to deciding what constitutes a plan asset: (1) a documentary approach, looking to the documents governing the relationship between the Fund and the employers as the foundation for determining whether the item at issue is an asset of the plan, *see, e.g. Galgay*, 677 F.Supp. at 301, and (2) a functional approach, assessing whether the item in question "may be used to the benefit (financial or otherwise) of the fiduciary at the expense of plan participants or beneficiaries." *See, e.g., Acosta*, 950 F.2d at 620. After reviewing the record in this case, the Court finds that both of these approaches lead to the same conclusion: that the moneys received from employers and retained by Medco constitute assets of the Fund.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1998 WL 477964  
1998 WL 477964 (S.D.N.Y.)  
**(Cite as: 1998 WL 477964 (S.D.N.Y.))**

Page 6

1. Analysis of governing documents

**\*6** Defendants contend that the moneys with which they were dealing when they set the amount of the ECBR fee were not assets of the Fund. Without citing any specific language from any of the documents governing the relationship between employers and the Fund, defendants generally maintain that the "existence" of the ECBR's fee was disclosed to all parties as an amount collected from employers in addition to the coverage rage and that the Fund thus has no "right" to the fees retained by Medco. However, plaintiff has pointed to language in the Trust Agreement and the Associate Membership Agreements which it argues establish that the total amount of the employer contribution paid to Medco is an asset of the Fund.

In reviewing these documents, the Court observes that Section 2.19 of the Trust Agreement defines "Trust Fund" to mean "the Trust herein established and the sum of the contributions made by the contributing party and held by the Trustee in a trust created hereby, increased by the profits and income thereon and decreased by any losses and reasonable expenses incurred in the administration of the Trust and any payments made therefrom under the Plan." ( *See* Pl.Exh. 6, 7.) [FN9] Moreover, section 3.1 of the Trust Agreement defines "contributions to the Trust" as payments made by participating employers "in the amounts set forth in their agreements with the Union for the services in said Agreements provided." (*Id.*) These agreements, styled as Associate Membership Agreements, [FN10] identify the employer's "contributions to the Solo Health and Welfare Fund ... on behalf of all employees" as the payment made "in accordance with the Schedule of Benefits and the contribution amount agreed to between Medco and the employer." (Pl.Exh.11.) The Associate Membership Agreements further provide that this "contribution amount" includes the following components: "monthly contributions to the SOLO Health and Welfare Fund, Local 947, Solidarity of Labor Organizations Associate Membership fees ... and a service fee payable to Medco." (*Id.*)

> FN9. More specifically, the Trust Agreement provides that "all expenses and charges incurred in the administration and operation of the Health Care Plan and Trust Agreement, the Administrators or other agents or professionals employed or retained pursuant hereto, shall be paid out of the assets of the Trust Fund. (*Id.*)

> FN10. As noted above, under these Associate Membership Agreements employers agreed to be bound by the provisions of the Trust Agreement and the rules and regulations governing the operation of the Fund and the decisions of the Board of Trustees of the Fund. (Pl.Exh. 11.)

Insofar as the Associate Membership Agreements set out these components, this case may be thus be distinguished from *In re Consolidated Welfare Fund ERISA Litigation*, 839 F.Supp. 1068 (S.D.N.Y.1993), where the agreements signed by employers made "no mention of the deduction of commissions or fees from the stated contribution rates." *In re Consolidated*, 839 F.Supp. at 1073. Yet the "service fee payable to Medco" was defined as a component of the "employer's contributions," which may fairly be construed from the other governing documents described above to constitute assets of the Fund. Moreover, the Court notes that the summary plan description provided to employee participants [FN11] and the invoices sent to clients [FN12] fail to make any reference to the fees and commissions deducted by Medco from the stated employer contribution rates. Viewing the governing documents and taking these additional considerations into account, the Court concludes that the contractual language in this case establishes that the total amount of the monthly employer contributions paid to Medco constituted assets of the Fund.

> FN11. The summary plan description states:
> The SOLO Benefit Fund is a Fund that is jointly administered by an equal number of management and union Trustees for the sole benefit of Fund members. The Fund is financed by contributions made by Employers to benefit their employees....

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1998 WL 477964                                                                                                                          Page 7
1998 WL 477964 (S.D.N.Y.)
**(Cite as: 1998 WL 477964 (S.D.N.Y.))**

> The Fund makes no profit because it is a Trust Fund. Because it is administered efficiently and honestly, the members can derive greater benefits from it than they could from any commercial enterprise or benefits company.
> (Pl.Mem. at 19.)

> FN12. As noted above, the invoice was altered in 1995 to delineate the components of the employer contribution, indicating what percentage of the total amount due went to the union dues, benefit fund contribution, "service and organization" and "administration and billing." However as plaintiff rightly notes, the revised version still failed to indicate the amount Medco deducted as its fee; it is unclear whether Medco retained the sums deducted from the total contribution for "service & organization" or "administration & billing," or both.

2. "Assets of the Plan" from a Functional Perspective

**\*7** Defendants' arguments fare no better when the question of what constitutes an asset of the Fund is considered from a functional perspective. Courts following this approach have been guided by the legislative history of ERISA, which reveals that "the crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140 n. 8, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (citing 120 Cong.Rec. 29,932, 29,951, 29,954, 29,957, 29,961, 29,194, 29,196-97, 29,206 (1974)); *see also Acosta,* 950 F.2d at 620. These courts view the congressional imposition of a broad duty of loyalty upon fiduciaries of employee benefit plans as counselling "a more functional approach" to the question of whether a particular item constitutes an "asset of the plan." *Acosta* 950 F.2d at 620. Under this approach, courts assess "whether the item in question may be used to the benefit (financial or otherwise) of the fiduciary at the expense of plan participants or beneficiaries." *Id.*

Taking this approach to the instant case, the Court finds that the item in question--employers' total contributions paid to Medco--was clearly used to benefit defendants. The total amount of the employers, contribution was set by defendants, and they retained that portion of the contribution not remitted to the Fund or Local 947. As plaintiff points out, the percentage of an employer's contribution retained by defendants was substantial; by way of example, plaintiff cites one case in which defendants retained an amount constituting more than 31% of the participating employer's monthly contribution. (Pl.Mem. at 15.) The detriment to plan participants and beneficiaries can also be established in this case, insofar as they paid higher premiums than were needed to provide benefits. (*Id.*) Defendants seek to deflect attention from this point by stressing that Medco remitted monies to the Funds in accordance with the coverage rate set by Local 947 and observing that the net assets of the Fund increased after Medco began serving as an ECBR. (Def.Mem. at 10.) But defendants' calculations fail to take into account the extent to which they profited at the expense of plan participants and beneficiaries by exercising the discretion to set the total amount of participating employers' monthly contributions and then retaining the difference between that total and the amounts forwarded to the Fund and Local 947. In light of these considerations, the Court finds that, the monthly employers' contributions paid to Medco constitute "assets of the plan" when viewed from a functional perspective.

Because the Court finds that the amount of the employers' contributions paid to Medco constitute assets of the Fund and because defendants had set the total sum of the contribution employers had to pay (over and above the coverage rate set by the Fund and the union membership fee set by Local 947) to receive benefits through the Fund, the Court further concludes that defendants are fiduciaries within the meaning of ERISA; the record clearly indicates defendants had "discretionary authority or discretionary control ... respecting management or disposition of [the Fund's] assets." 29 U.S.C. § 1002(21)(A).

C. Liability of Defendants under ERISA

**\*8** Having determined that defendants are fiduciaries within the meaning of ERISA, the Court

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1998 WL 477964                                                                                                         Page 8
1998 WL 477964 (S.D.N.Y.)
**(Cite as: 1998 WL 477964 (S.D.N.Y.))**

proceeds to consider plaintiff's claims that defendants, by extracting fees from contributions employers paid to obtain benefits through the Fund and diverting those assets of the Fund to their own use, (1) engaged in prohibited transactions under §§ 406(a)(1)(D) and 406(b)(1)(2) breached their fiduciary duties under §§ 404(a)(1)(A) and 404(a)(1)(B) of ERISA; and (3) are liable as co-fiduciaries under § 405(a)(1). [FN13]

> FN13. I note that defendants have not addressed the question of their liability under specific provisions of ERISA because they rest their entire argument on the premise that the service fee deducted by Medco from the employers' contribution paid to Medco is not a "plan asset" within the meaning of ERISA.

1. Prohibited Transactions: Sections 406(a)(1)(D) and 406(b)(1) of ERISA

Plaintiff claims that defendants Medco and Goldstein engaged in prohibited transactions under ERISA §§ 406(a)(1)(D) [FN14] and 406(b)(1) [FN15] by extracting fees from contributions employers paid to obtain health benefits from the Fund and diverting those Fund assets to their own use.

> FN14. ERISA § 406(a)(1)(D) provides, in pertinent part:
> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect ... transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan....
> 29 U.S.C. § 1106(a)(1)(D).

> FN15. ERISA § 406(b)(1) provides, in pertinent part:
> (b) Transactions between plan and fiduciary A fiduciary with respect to a plan shall not ... deal with the assets of the plan in his own interest or for his own account....
> 29 U.S.C. § 1106(b)(1).

The *per se* prohibitions identified in § 406 of ERISA, 29 U.S.C. § 1106, are designed to prevent categories of "insider" transactions which Congress believed offered an especially high potential for abuse of plan assets. *Cutaiar v. Marshall,* 590 F.2d 523, 529 (3d Cir.1979). Section 406(a) prohibits a fiduciary from causing the plan to enter into or maintain transactions with categories of "parties in interest," a term defined by § 3(14), 29 U.S.C. § 1002(14) [FN16] to include any fiduciary and any employer of employees covered by the plan or an officer or director of such employer. *Brock,* 8 Employee Benefits Cas. (BNA) at 2308. Section 406(b) prohibits a fiduciary from acting in conflict-of-interest situations, including dealing with plan assets in their own interest and acting on behalf of the plan in situations where they have an adverse interest or on behalf of another party whose interest is adverse. *Id.*

> FN16. ERISA § 3(14) provides in relevant part:
> The term "party in interest" means, as to an employee benefit plan--
> (A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;
> (B) a person providing services to such plan;
> (C) an employer any of whose employees are covered by such plan....
> 29 U.S.C. S 1002(14).

In order for a particular transaction to run afoul of § 406(a)(1)(D), it must involve (1) a transfer (2) to a party in interest (3) of plan assets. *Liss v. Smith,* 991 F.Supp. 278, 293 (S.D.N.Y.1998). The parties in interest involved here are Medco and Goldstein. Medco is a party in interest because its employees receive benefit coverage through the Fund, 29 U.S.C. § 1002(14)(C), and Goldstein, because he is a person who provided services to the Fund, 29 U.S.C. § 1002(14)(B). [FN17] Having found that the total employers' contributions paid to Medco

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

constitute assets of the Fund, the Court further finds that defendants, deduction of fees from this total amount paid by employers is a transaction proscribed by § 406(a)(1)(D) of ERISA.

> FN17. Goldstein served in this capacity from April 4, 1991 through March 1996. (Pl.St.¶¶ 48-50.)

With respect to § 406(b), the Court notes that the Second Circuit Court of Appeals has counseled in favor of broad construction of its provisions in order to protect beneficiaries and provide notice to fiduciaries of prohibited transactions. Such liability is imposed even where there is "no taint of scandal, no hint of self-dealing, no trace of bad faith." *Id.* (quoting *Cutaiar*, 590 F.2d at 528). In light of the Court's finding that the fees retained by defendants in their own interest or for their own account constituted assets of the Fund, defendants are further found to have acted in violation of § 406(b)(1) of ERISA.

2. Breaches of Fiduciary Duty: Sections 404(a)(1)(A) and 404(a)(1)(B)

*9 Section 404(a) of ERISA, 29 U.S.C. § 1104(a), sets forth the fiduciary's basic duties, which derive from traditional principles of the law of trusts. *Brock v. Ardito*, 8 Employee Benefits Cas. (BNA) 2303, 2307 (E.D.N.Y.1987) The Second Circuit Court of Appeals has stated that sections 404(a)(1)(A) and 404(a)(1)(B) [FN18] "impose three different although overlapping standards":

> FN18. Sections 404(a)(1)(A) and 404(a)(1)(B) provide, in pertinent part:
> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
> (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims....
> 29 U.S.C. §§ 1104(a)(1)(A) -(B).

A fiduciary must discharge his duties "solely in the interests of the participants and beneficiaries." He must do this "for the exclusive purpose" of providing benefits to them. And he must comply "with the care, skill, prudence, and diligence under the circumstances then prevailing" of the traditional "prudent man".

*Donavan v. Bierwirth*, 689 F.2d 263, 271 (2d Cir.1982). Measuring the actions of the defendants in this case against the standards of care and prudence set forth by the Second Circuit, this Court finds that defendants have clearly violated their fiduciary duties under §§ 404(a)(1)(A) and 404(a)(1)(B) of ERISA. Defendants failed to take action with respect to the Fund "with an eye single to the interests of the participants and beneficiaries," *See Donovan v. Bierwirth*, 680 F.2d at 271, insofar as they acted in their own interest in setting the total amount of the contribution employers were required to make in order to obtain employee benefits through the Fund. Moreover, in calculating the total amount of the employers, contributions, defendants clearly did not act with the "exclusive purpose of defraying reasonable expenses of administering the plan," as required under the statute. 29 U.S.C. § 404(a)(1)(A).

The Court further finds that the summary judgment record supports the conclusion that defendants' actions also constitute a breach of defendants' fiduciary duty of prudence. Prudence is measured according to the objective "prudent person" standard developed in the common law of trusts. *Katsaros v. Cody*, 744 F.2d 270 (2d Cir .1984) (quoting *Donovan v. Mazzola*, 716 F.2d 1226, 1231 (9th Cir.1983)); *see also United States v. Mason Tenders Dist. Council of Greater New York*, 909 F.Supp. 882, 885 (S.D.N.Y.1995). ERISA's prudence standard "is not that of a prudent lay person but rather that of a prudent fiduciary with experience dealing with a similar enterprise." *Id.* (quoting *Marshall v. Snyder*, 1 Employee Benefits Cas. (BNA) 1878, 1886 (E.D.N.Y.1979)); *see also Donovan v.. Mazzola*, 716 F.2d 1226, 1231-32 ("Courts have also recognized that in enacting

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1998 WL 477964  
1998 WL 477964 (S.D.N.Y.)  
**(Cite as: 1998 WL 477964 (S.D.N.Y.))**

Page 10

ERISA Congress made more exacting the requirements of the common law of trusts relating to employee benefit trust funds ."). The summary judgment record in this case adequately supports the conclusion that defendants failed to act as would prudent fiduciaries having experience dealing with a similar enterprise. The retention by defendants of Fund assets as fees, which the Court found above to constitute prohibited transactions under § 406 of ERISA, resulted in losses to the Fund for which defendants is liable under § 404(a)(1)(B). *See, e.g., Sandoval v. Simmon,* 622 F.Supp. 1174, 1215 & n. 3 (D.Ill.1985) (quoting Joint Explanatory Statement of the Committee of Conference, House Conference Report No. 1280, 93d Cong., 2d Sess.; citing *Herman v. Painting Industry Insurance Fund,* No. 77 Civ. 1490, slip op. at 3 (S.D.N.Y.1981)).

3. Liability for breach of co-fiduciary: Section 405(a)

**\*10** Finally, the Court considers plaintiff's claim that defendants are each liable under § 404(a)(1) of ERISA for the fiduciary violations of §§ 404(a)(1)(A), 404(a)(1)(B), 406(a)(1)(D) and 406(b)(1) of ERISA committed by the other, as co-fiduciaries. Section 404(a)(1) of ERISA renders a fiduciary vulnerable to liability for breaches committed by other fiduciaries "if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or a duty to the plan, (2) that the fiduciary knowingly participated in the breach or undertook to conceal it, and (3) damages resulting from the breach. *See Diduck v. Kaszycki & Sons Contractors,* 974 F.2d 270, 281-82 (2d Cir.1992); *see also Silverman v. Mutual Benefit Life Ins. Co.,* 941 F.Supp. 1327, (E.D.N.Y.1996). While plaintiff's briefing of this point is relegated to a footnote, (*see* Pl.Mem. at 32 n. 8), the Court finds that the summary judgment record provides a sufficient basis for establishing defendants' liability under § 405(a)(1). As has been concluded above, both Medco and Goldstein breached a duty to the Fund and each acted with the knowledge of the other's activities. Moreover, insofar as defendants' breach consisted of deducting Fund assets from employers, contributions as their fee, there was clearly damage to the Fund. Accordingly, the Court grants summary judgment to plaintiff as to their claims against defendants under § 405(a).

D. Remedies

To remedy defendants, violations of ERISA, plaintiff seeks injunctive and other equitable relief in the form of an order of the Court: (1) correcting the prohibited transactions; (2) restorating to the Fund of all losses incurred as a result of the fiduciary breaches they committed, plus interest (including prejudgment interest); and (3) enjoining defendants from violating ERISA and from ever serving as fiduciaries or service providers of fiduciary breaches they committed, plus interest (including prejudgment interest); and (3) enjoining defendants from violating ERISA and from ever serving as fiduciaries or service providers of any employee benefit plan, pursuant to § 409(a) of ERISA, 29 U.S.C. § 1109.

Section § 409(a) provides, in pertinent part:
  Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

29 U.S.C. § 1109(a). Under the circumstances of this case, the Court finds that the relief requested by plaintiff is reasonable in all respects. However the Court finds that an inquest is required to determine the damages assessable against Medco and Goldstein. According, this action is hereby referred by Magistrate Judge Ellis for this purpose. The parties are directed to contact Magistrate Judge Ellis' Chambers by August 31, 1998 to schedule further proceedings in this matter.

V. *Conclusion*

**\*11** For the reasons stated above, plaintiff's motion for summary judgment is granted in its entirety and defendants' motion for summary judgment is denied in its entirety. This matter is hereby referred to Magistrate Judge Ellis for an inquest to determine the damages assessable against Medco and Goldstein. The parties are directed to contact

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1998 WL 477964
1998 WL 477964 (S.D.N.Y.)
**(Cite as: 1998 WL 477964 (S.D.N.Y.))**

Page 11

Magistrate Judge Ellis' Chambers by August 31, 1998 to schedule further proceedings in this action.

SO ORDERED.

1998 WL 477964 (S.D.N.Y.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing Defendants' Supplemental Reply Memorandum in Support of Defendants' Motion for Summary Judgment was served via facsimile and first class mail, postage prepaid, on this 27th day of August, 2004, on the following counsel of record:

Richard A. Bieder, Esq.
Antonio Ponvert III, Esq.
Koskoff, Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

Gregory G. Jones, Esq.
Law Firm of Gregory G. Jones, P.C.
603 South Main Street, Suite 200
Grapevine, TX 76051

Marc R. Stanley, Esq.
Roger L. Mandel, Esq.
Stanley, Mandel & Iola
3100 Monticello Avenue
Suite 750
Dallas, TX 75205

Dennis F. Kerrigan, Jr.