UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, EDWARD KAPLAN, as trustee of the Hartford Roofing 401(k) Profit Sharing Plan and the Hartford South, L.L.C. 401(k) Profit Sharing Plan, and DENNIS FERDON, as trustee of the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan, | § § § § § § § § § § § § § § § | |
| PLAINTIFFS, | § § | |
| v. | § § | |
| NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO., | § § § § § | CASE NO. 01-CV-1552 (SRU) |
| DEFENDANTS. | § | SEPTEMBER 2, 2005 |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
REGIONAL NEW DECISION IN OPPOSITION TO
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

*Coldesina v. Estate of Simper*, 407 F.3d 1126 (10th Cir. 2005), strongly supports three of Plaintiffs' key arguments as set forth in Plaintiffs' Response, and Memorandum of Law in Support, to Defendants' Supplemental Memorandum of Law in Support of Defendants' Motion for Summary Judgment [Docket No. 246] filed August 6, 2004 ("the Response"). Specifically, it strongly supports that: (1) Nationwide's general control and authority over the accumulation units makes it a fiduciary as to those accumulation units, (2) its fiduciary status resulting from that general control and authority extends to its use of the accumulation units to obtain the revenue sharing payments from the mutual fund families, and (3) its use of the accumulation units to generate the revenue sharing payments specifically makes it a fiduciary as to the accumulation units for purposes of its receipt of the revenue sharing payments. For those reasons, the Court should deny Defendants' motion for summary judgment.

## SUMMARY OF THE ISSUES

As set forth in the Response, Plaintiffs argue that Nationwide is subject to and violated ERISA in two respects. Initially, Nationwide is a fiduciary as to the accumulation units (which undisputedly constitute plan assets) by virtue of both its general authority and control over them and its specific use of them to generate the revenue sharing payments, and it violates that fiduciary duty by arranging for, receiving and retaining the revenue sharing payments. Further, the revenue sharing payments constitute plan assets in Nationwide's hands under the functional approach, and Nationwide simultaneously exercises control over them (becoming a fiduciary as to them) and violates its resulting fiduciary duty by retaining them for its own benefit, rather than using them for the benefit of the Plans. Nationwide asks for summary judgment as to the first argument on the basis that it allegedly does not constitute a fiduciary as to the accumulation units because it only exercises ministerial, not discretionary, authority and control over them.

## THE FACTS OF *COLDESINA*

Dr. Coldesina established an employee benefit plan for his dental practice and hired his friend, Simper, as an investment advisor. *Id.* at 1130. Upon Simper's recommendation, Dr. Coldesina hired the accountant defendants as the plan administrator. *Id.* To make investments on behalf of the plan, Dr. Coldesina wrote checks from the plan payable to the accountant defendants,

-1-

and the accountant defendants deposited the checks into their account. *Id*.

Initially, the accountant defendants wrote checks on their account directly to the insurance company to purchase its products for the plan. *Id*. Subsequently, at Simper's directions, the accountant defendants wrote checks to Simper with the understanding that Simper would then use the funds to purchase the insurance products for the plan. *Id*. Simper did not use the money for that purpose and pocketed over $600,000 of the plan's funds. *Id*. at 1131.

The trial court granted summary judgment to the accountant defendants after finding that they did not constitute plan fiduciaries. *Id*. The Tenth Circuit reversed. *Id*. at 1135.

### *COLDESINA* CONVINCINGLY DEMONSTRATES THAT NATIONWIDE CONSTITUTES A FIDUCIARY AS TO THE ACCUMULATION UNITS

The Tenth Circuit began its analysis by explaining that *any authority or control* over the management or disposition of plan assets, whether discretionary or merely ministerial, makes a party a fiduciary as to those plan assets:

> Discretion is conspicuously omitted from the fiduciary function of controlling plan assets. Indeed, the statute provides that "*any authority or control*" over the management or disposition of plan assets is sufficient to render fiduciary status. 29 U.S.C. § 1002(21)(A)(I) (emphasis added). As other courts have recognized, this distinction evidences Congress's intent to treat control over assets differently than control over management or administration. [citations omitted]. [FN1]. In Congress's judgment and consistent with general trust law, parties controlling plan assets are *automatically* in a position of confidence by virtue of that control, and as such they are obligated to act accordingly. [citations omitted].
>
> FN1. Several courts gloss over this distinction applying the discretionary language to control over assets as well management and administration. [citations omitted]. However, this approach is unpersuasive as it cannot be reconciled with the clear statutory language.

*Id*. at 1132 (emphasis in original).

This analysis by the Tenth Circuit tracks almost exactly the argument made by Plaintiffs in the Response at 6-11. Collectively, *Coldesina* and the authorities cited by Plaintiffs in the Response convincingly demonstrate that regardless of whether Nationwide's authority and control over the accumulation units is properly characterized as discretionary or ministerial, Nationwide has authority and control over the accumulation units sufficient to make it a fiduciary as to them. As explained both in the Response and *Coldesina*, the contrary cases cited by Nationwide ignore the plain language of the statute and are, therefore, incorrectly decided.

After reciting the controlling legal principle, the Tenth Circuit proceeded to apply it to the facts of the case and to explain the rationale for the principle:

> ....Mr. Madsen received plan contribution funds from the plan, which he deposited into his business account, and then wrote checks on behalf of the plan for the amount of the contribution. This arrangement was initially set up to facilitate better record- keeping; however, the practical reality is that Mr. Madsen had total control over the plan's money while it was in his account. By way of example only, though not authorized to do so, he could have withdrawn the plan's money to pay his business expenses or go on vacation, and certainly if he had done either it would have been appropriate to treat his actions as a breach of fiduciary duty. *See Olsen v. E.F. Hutton & Co., Inc.*, 957 F.2d 622, 626 (8th Cir. 1992) ("A person who asserts authority over a plan's assets and makes decisions about the use or disposition of those assets should know they are acting as a fiduciary.").
>
> Indeed, this practical reality is precisely why control over assets is treated differently than control over management. [citation omitted]. As a general matter, a relationship of trust is established when one acquires possession of another's property with the understanding that it is to be used for the owner's benefit, and in these circumstances an obligation arises on the part of the one in possession to act in the owner's best interests rather than his own. As such, assigning fiduciary obligations serves the purposes of ERISA. Indeed, "[t]he words of the ERISA statute, and its purpose of assuring that people who have practical control over an ERISA plan's money have fiduciary responsibility to the plan's beneficiaries, *require* that a person with the authority to direct payment of a plan's money be deemed a fiduciary. [citation omitted].

*Id*. at 1133-4 (emphasis in the original)

In this case, Nationwide has, as a practical matter, total control over the accumulation units owned by the Plans. It could, if it chose to do so, simply cancel them all, completely eliminating the Plans' investments. Pursuant to *Coldesina*, that ability on the part of Nationwide alone generally makes it a fiduciary as to the accumulation units.[1] By taking custody of the accumulation units, Nationwide assumed the fiduciary responsibility of using them exclusively for the Plans' benefit.

The defendant accountants in *Coldesina* defended on the basis that they allegedly "were not in control of the plan's assets because they were simply performing a ministerial, check-writing service." *Id*. at 1134. The Tenth Circuit rejected this argument for two reasons. First, it rejected it because "...the dichotomy between discretionary and ministerial authority is not determinative

---

[1] Of course, Nationwide doesn't just have theoretical authority and control over the accumulation units, it actually exercises authority and control. Nationwide can and does cancel accumulation units to pay its fees, cancel them to pay taxes, cancel them to transfer investments from one mutual fund to another, transfer them to use as collateral for loans, cancel them to pay loans, cancel them to purchase annuities and cancel them to make cash payments.

regarding control over assets." *Id.* The Tenth Circuit further rejected it as "not entirely accurate," noting that "[w]hile it is true Mr. Madsen did not have any involvement in how the plan chose to invest its assets, [citation omitted], or which claims were properly payable under the plan, [citation omitted] or even which of various competing creditors would be paid, [citation omitted], he did exercise judgment in naming the payee on the checks he wrote on behalf of the plan." *Id*.

The exact same analysis applies to Nationwide's argument that it does not constitute a fiduciary as to the accumulation units because it only exercises ministerial control over them. While the Plans and their participants give general instructions to Nationwide regarding the shifting of investments from one mutual fund to another or the liquidation of retirement accounts or the payment of loans, Nationwide makes the specific decisions as to cancellation and transfer of the accumulation units necessary to effectuate those general instructions. Furthermore, it cancels accumulation units to pay fees and taxes without any prompting whatsoever from Plans and their participants. Thus, if a distinction between discretionary and ministerial authority and control over assets actually existed, Nationwide's control would constitute sufficient discretionary control over the accumulation units to make it a fiduciary as to them.

### *COLDESINA* DEMONSTRATES THAT NATIONWIDE CONSTITUTES A FIDUCIARY AS TO THE ACCUMULATION UNITS IN REGARD TO THE REVENUE SHARING PAYMENTS

Nationwide argues that even if it constitutes a fiduciary as to the accumulation units based upon the general authority and control it can and does exercise over them pursuant to its annuity contracts, it only constitutes a fiduciary as to them for purposes of those activities and not for purposes of the revenue sharing payments. *Coldesina* supports both of Plaintiffs' arguments as to why the Court should reject Nationwide's claim: (1) once a party becomes a fiduciary as to certain plan assets, it is a fiduciary as to those plan assets for all purposes; and (2) if necessary, Nationwide's specific use of the accumulation units to generate the revenue sharing payments makes it a fiduciary as to the accumulation units for that purpose.

The Tenth Circuit held that the accountant defendants constituted fiduciaries based upon their general authority and control; that is, based on their general ability to dispose of plan assets. *Id*. at 1133. It did not even bother to consider whether the specific acts of the accountant

defendants in writing checks to Simper constituted the exercise of authority or control sufficient to make the accountant defendant fiduciaries as to those plan assets. To the contrary, based solely upon the accountant defendants' general fiduciary status as to the funds, which derived from their general authority and control over them, the Tenth Circuit found that a cause of action for breach of fiduciary duty existed as to the checks written to Simper.[2] *Id*.

Accordingly, the general authority and control that Nationwide can and does exercise over the accumulation units makes it a fiduciary as to the accumulation units for all purposes, including its receipt of the revenue sharing payments. This is true regardless of whether the use of the accumulation units to generate the revenue sharing payments by itself would constitute such an exercise of authority or control sufficient to make Nationwide a fiduciary as to the accumulation units.

However, if necessary, *Coldesina* also supports that the use of the accumulation units to generate the revenue sharing payments constitutes a sufficient exercise of authority and control over them to make Nationwide a fiduciary. Specifically, the Tenth Circuit stated that a party appropriating plan assets in its custody simultaneously exercises control over the assets, creating a fiduciary duty as to them, and breaches that resulting fiduciary duty. *Id*. Nationwide's use of the accumulation units to generate the revenue sharing payments is no different, because it constitutes Nationwide using the accumulation units for its own benefit, rather than the benefit of the Plans, every bit as much as if it had simply appropriated them.

## **CONCLUSION**

Plaintiffs request the Court to deny Nationwide's motion for summary judgment and then proceed immediately to consideration of class certification.

---

[2] Nationwide may argue that the accountant defendants' fiduciary status derived from their status as the plan administrator - a named fiduciary. In fact, the Tenth Circuit never even considered that possibility, explicitly basing its decision on a functional approach. *Id*. at 1132.

       Respectfully submitted,

       _____
       Antonio Ponvert III
       Federal Bar No. ct17516
       Richard A. Bieder
       Federal Bar No. ct04208

       KOSKOFF KOSKOFF & BIEDER, P.C.
       350 Fairfield Avenue
       Bridgeport, Connecticut 06604
       203-336-4421
       203-368-3244 (Fax)

       Marc R. Stanley
       Federal Bar No. ct18179
       Roger L. Mandel
       Federal Bar No. ct18180

       STANLEY, MANDEL & IOLA, L.L.P.
       3100 Monticello Avenue, Suite 750
       Dallas, Texas 75205
       214-443-4300
       214-443-0358 (Fax)

       Gregory G. Jones
       Federal Bar No. ct23443

       LAW FIRM OF GREGORY G. JONES PC
       603 S. Main Street, Suite 200
       Grapevine, Texas 76051
       817-424-9001
       817-424-1665 (Fax)

       **PLAINTIFFS' COUNSEL**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that true and correct copies of the foregoing were served this 2nd day of September, 2005, upon the following counsel via the methods indicated:

| | |
|---|---|
| Dennis F. Kerrigan, Jr.<br>LeBoeuf, Lamb, Greene & MacRae<br>Goodwin Square<br>225 Asylum Street<br>Hartford, CT  06103 | ☐ via certified mail, return receipt requested<br>☐ via fax 860/293-3555<br>☐ via first-class, U.S. mail<br>☐ via overnight delivery<br>☐ via hand delivery |
| Charles C. Platt<br>Wilmer Cutler Pickering Hale and Dorr<br>399 Park Avenue<br>New York, NY 10022 | ☐ via certified mail, return receipt requested<br>☐ via fax 212/230-8888<br>☐ via first-class, U.S. mail<br>☐ via overnight delivery<br>☐ via hand deliver |
| Eric J. Mogilnicki<br>Wilmer Cutler Pickering Hale and Dorr<br>2445 M Street, N.W.<br>Washington, D.C.  20037 | ☐ via certified mail, return receipt requested<br>☐ via fax 202/663-6363<br>☐ via first-class, U.S. mail<br>☐ via overnight delivery<br>☐ via hand deliver |

_____
Richard A. Bieder