UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT



United States District Court
District of Connecticut
FILED AT          BRIDGEPORT

2 - 13      2004
Kevin F. Rowe, Clerk

By     C. W. Cod
Deputy Clerk

Lou Haddock, as trustee of the Flyte
Tool & Die, Incorporated Deferred
Compensation Plan, et. al.,

      Plaintiffs,

v.

Nationwide Financial Services
Incorporated, and Nationwide Life
Insurance Company,

      Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§

Case No. 01-CV-1552 (SRU)

January 30, 2004

## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' FIRST AMENDED MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

I.     THE PROPOSED CLASS MEETS THE NUMEROSITY,
       COMMONALITY AND TYPICALITY REQUIREMENTS
       OF RULE 23(a)(1), (2) & (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    THE PROPOSED CLASS SATISFIES THE ADEQUACY
       REQUIREMENT OF RULE 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.     *PLAINTIFFS HAVE SUFFICIENT KNOWLEDGE TO ACT
       AS CLASS REPRESENTATIVES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.     *NATIONWIDE'S FILING OF COUNTERCLAIMS AGAINST THREE
       OF THE FIVE PLAINTIFFS DOES NOT MAKE THE FIVE
       PLAINTIFFS INADEQUATE CLASS REPRESENTATIVES* . . . . . . . . . . . . . . . . . . . 4

C.     *PLAINTIFFS HAVE NOT IMPERMISSIBLY ABANDONED
       VALUABLE CLAIMS SO AS TO RENDER THEM INADEQUATE
       AS CLASS REPRESENTATIVES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       1.     No Res Judicata . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       2.     Plaintiffs Made a Reasoned Decision . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.   THE COURT SHOULD CERTIFY THIS CASE PURSUANT
       TO RULE 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A.     *THE EQUITABLE MONETARY RELIEF SOUGHT BY PLAINTIFFS
       QUALIFIES FOR CERTIFICATION UNDER RULE 23(b)(2)* . . . . . . . . . . . . . . . . 9

B.     *ALTERNATIVELY, THE EQUITABLE MONETARY RELIEF
       SOUGHT BY PLAINTIFFS QUALIFIES FOR 23(b)(2) TREATMENT,
       BECAUSE IT IS ONLY INCIDENTAL TO THE INJUNCTIVE AND
       DECLARATORY RELIEF* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Page

C.      ALTERNATIVELY, PLAINTIFFS' EQUITABLE MONETARY RELIEF
        QUALIFIES FOR 23(b)(2) TREATMENT, BECAUSE THE INJUNCTIVE
        AND DECLARATORY RELIEF PREDOMINATES UNDER THE
        SECOND CIRCUIT'S AD HOC TEST FROM ROBINSON ..................... 13

IV.     THE COURT SHOULD ALSO CERTIFY THIS CASE
        PURSUANT TO RULE 23 (b)(3), BECAUSE COMMON ISSUES
        PREDOMINATE OVER ISSUES AFFECTING ONLY
        INDIVIDUAL CLASS MEMBERS ...................................... 15

A.      WHETHER THE REVENUE SHARING PAYMENTS BY MUTUAL
        FUNDS TO NATIONWIDE CONSTITUTE PLAN ASSETS IN
        NATIONWIDE'S HANDS PRESENTS A COMMON ISSUE ..................... 16

B.      WHETHER NATIONWIDE EXERCISED AUTHORITY OR CONTROL
        OVER REVENUE SHARING PAYMENTS PRESENTS A COMMON ISSUE ........ 18

C.      WHETHER NATIONWIDE EXERCISED AUTHORITY OR CONTROL
        OVER THE ACCUMULATION UNITS PRESENTS A COMMON ISSUE ........... 19

D.      "AGREEMENT, RATIFICATION AND DISCLOSURE" DO NOT
        RAISE INDIVIDUAL ISSUES REGARDING NATIONWIDE'S
        EXERCISE OF AUTHORITY OR CONTROL OVER PLAN ASSETS .............. 19

E.      NATIONWIDE'S LIABILITY FOR BREACH OF FIDUCIARY
        DUTY PRESENTS A COMMON ISSUE ................................... 20

1.      Nationwide's ERISA Liability Under § 404(a)(1)(A)
        Presents a Common Issue ........................................ 20

2.      Nationwide's ERISA Liability Under § 404(a)(1)(B)
        Presents a Common Issue ........................................ 20

3.      Nationwide's ERISA Liability Under § 406(b) Presents a Common Issue .......... 21

4.      Nationwide's Alleged Defense That the Revenue Sharing Payments
        Constituted Payments for Services Rendered Does Not Create
        Individual Issues .............................................. 21

**Page**

5.    Predominating Individual Issues Do Not Arise in Order
      to Prove Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.    **THE COURT SHOULD CERTIFY THIS CASE PURSUANT
       TO RULE 23(b)(3) BECAUSE A CLASS ACTION IS
       SUPERIOR TO OTHER ALTERNATIVES FOR RESOLVING
       THE ISSUES IN THIS CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VI.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## INDEX OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Allison v. Citgo Petroleum Co.,*
151 F.3d 402 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*Arnold v. United Artists Theater Circuit, Inc.,*
158 F.R.D. 439 (N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 25

*Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.,*
222 F.3d 52 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3, 17

*Bublitz v. E.I. du Pont de Nemours and Co.,*
202 F.R.D. 251 (S.D. Iowa 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Castano v. American Tobacco Co.,*
84 F.3d 734 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Demitropoulos v. Bank One Milwaukee, N.A.,*
915 F. Supp. 1399 (N.D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Feinstein v. Firestone Tire & Rubber Co.,*
535 F. Supp. 595 (S.D.N.Y. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Great-West Life & Annuity Ins. Co. v. Knudson,*
534 U.S. 204 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gunnells v. Health Plan Services, Inc.,* 348 F.3d 417 (4th Cir. 2003) . . . . . . . . . . . . . 4, 7, 9, 24

*Harris Trust & Savings Bank v. Salomon Smith Barney Inc.,*
530 U.S. 238 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Health Care Service Corp. v. Tap Pharmaceutical Products, Inc.,*
2003 WL 21801636 (E.D. Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In Re Anjopa Paper & Board Manuf. Co.,*
269 F. Supp. 241 (S.D.N.Y. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In Re Martin Fein & Co., Inc.,*
43 B.R. 623 (Bankr. S.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In Re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.,*
209 F.R.D. 323 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**CASES**                                                                    **PAGE(S)**

*In Re Monumental Life Ins. Co., Industrial Life Ins. Litig.,*
2003 WL 21921137 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In Re Nortel Networks Corp. Securities Litig.,*
2003 U.S. Dist. LEXIS 15712 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17

*In Re Warner-Quinlan Co.,*
886 F.2d 103 (2d Cir. 1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Int'l Woodworkers of America, AFL-CIO, CLC v.*
*Chesapeake Bay Plywood Corp.,* 659 F.2d 1259 (4th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . 5

*Koch v. Dwyer,* 2001 WL 289972 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Marshall v. Kirkland,* 602 F.2d 1282 (8th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Marshall v. Snyder,* 572 F.2d 894 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Microsoft Corp. v. Manning,*
914 S.W.2d 602 (Tex. App.--Texarkana 1995, writ dism'd by agr.) . . . . . . . . . . . . . . . . . . . 7, 9

*Middleton v. Sun Star Acceptance Corp.,*
2000 WL 33385388 (S.C. Com. Pl. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Pearl v. Allied Corp.,* 102 F.R.D. 921 (E.D. Pa. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Quebe v. Ford Motor Co.,* 908 F. Supp. 446 (W.D. Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Robinson v. Metro-North Commuter R.R. Co.,*
267 F.3d 147 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11-15, 25

*Rodger v. Electronic Data Systems Corp.,*
160 F.R.D. 532 (E.D.N.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Salisbury Inv. Co. v. Irving Trust Co.,*
70 F.2d 313 (2d Cir. 1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Selby v. Principal Mut. Life Ins. Co.,*
197 F.R.D. 48 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Smilow v. Southwestern Bell Mobile Systems, Inc.,*
323 F.3d 32 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**CASES**                                                                 **PAGE(S)**

*Strom v. Goldman, Sachs & Co.*, 203 F.3d 138 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 9-11

*Sullivan v. Chase Investment Services of Boston, Inc.*,
79 F.R.D. 246 (N.D. Cal. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Thompson v. American Tobacco Co., Inc.*,
89 F.R.D. 544 (D. Minn. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Thomas v. SmithKline Beecham Corp.*,
201 F.R.D. 386 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Western States Wholesale, Inc. v. Synthetic Indus., Inc.*,
206 F.R.D. 271 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Westman v. Textron, Inc.*, 151 F.R.D. 229 (D. Conn. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 26

**STATUTES AND RULES**

ERISA § 404(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ERISA § 404(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ERISA § 406(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ERISA § 406(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ERISA § 408 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ERISA § 502(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11

29 U.S.C. § 1002(21)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

29 U.S.C. § 1104(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

29 U.S.C. § 1104(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

29 U.S.C. § 1106(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

29 U.S.C. § 1108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**STATUTES AND RULES**                                                    **PAGE(S)**

Fed. R. Civ. P. 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11. 13, 27

Fed. R. Civ. P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 24, 25, 27

Fed. R. Civ. P. 23(c)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 23(c)(4)(A), 1966 advisory comment . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## TREATISES

Restatement of Restitution § 160, Comment a (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Restatement of Restitution § 209, Comment a (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5 Scott on Trusts § 515, at 3610-11 (3d ed. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' FIRST AMENDED MOTION FOR CLASS CERTIFICATION

Defendants' Opposition to Plaintiffs' First Amended Motion for Class Certification ("D. Opp.") demonstrates that with endless resources and compulsive attention to endless irrelevant details, talented counsel can concoct an apparent level of complication that makes class certification seem impossible. Despite counsel's valiant efforts, Nationwide has failed to obscure the simplicity of Plaintiffs' case and its suitability for certification. What emerges from the class certification briefing is that common issues perfect for determination on a classwide basis will dominate this litigation:

- Did Nationwide enter into a coordinated, centralized scheme to increase its profits by arranging back-end, non-contracted-for payments by the mutual funds (described by Nationwide as "revenue sharing payments")?

- Do the revenue sharing payments constitute plan assets in Nationwide's hands?

- Does Nationwide constitute a fiduciary under ERISA as to those revenue sharing payments?

- Does Nationwide violate its fiduciary duties under ERISA by pocketing the revenue sharing payments?

Resolving these common issues will almost entirely resolve the case and will certainly demand the lion's share of the parties' and the Court's time and effort. As a consequence, the efficiency desirable from resolving ancillary monetary claims pursuant to a (b)(2) certification will be realized and common issues will predominate over issues affecting only individual class members as required for (b)(3) certification.

## I. THE PROPOSED CLASS MEETS THE NUMEROSITY, COMMONALITY AND TYPICALITY REQUIREMENTS OF RULE 23(a)(1), (2) & (3)

Nationwide does not contest numerosity at all and contests commonality and typicality only in passing, referring the Court to its predominance argument.[1]  Because Nationwide does not seriously contest that the proposed Class meets these requirements, Plaintiffs rely on their prior arguments made to the Court.[2]

## II. THE PROPOSED CLASS SATISFIES THE ADEQUACY REQUIREMENT OF RULE 23(a)(4)

Nationwide challenges the adequacy of Plaintiffs as class representatives on three grounds:

- the alleged lack of knowledge of Plaintiffs;

- the fact that it has asserted counterclaims against three of the five Plaintiffs; and

- Plaintiffs' alleged dropping of valuable claims to increase the chances of certification.

Significantly, Nationwide does not dispute that Plaintiffs meet the actual standard for adequacy – lack of disabling conflict of interest and adequate counsel.

### A. PLAINTIFFS HAVE SUFFICIENT KNOWLEDGE TO ACT AS CLASS REPRESENTATIVES.

Plaintiffs demonstrated during their depositions that they understand the essence of this suit, which is that Nationwide received payments from mutual funds which belong to the Plans.[3] That makes them adequate, because class representatives need not have detailed knowledge of the facts or law in complex cases. *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d

---

[1]   D. Opp. at 29-30, [Docket No. 179].

[2]   First Amended Memorandum in Support of Plaintiffs' First Amended Motion for Class Certification ("P. Mem.") at 16-22, [Docket No. 129].

[3]   February 13, 2003 Deposition of Alan Gouse, 41:13-21, Exhibit "A" hereto; February 24, 2003 Deposition of Lou Haddock, 46:5-47:25, Exhibit "B" hereto; March 4, 2003 Deposition of Peter Wiberg, 9:12-21, Exhibit "C" hereto; March 11, 2003 Deposition of Edward Kaplan, 40:20-42:3, Exhibit "D" hereto; July 16, 2003 Deposition of Dennis A. Ferdon, 56:12-59:13, Exhibit "E" hereto.

52, 61 (2d Cir. 2002) ("*The Supreme Court in Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 370-*
*74...(1966) expressly disapproved of attack on the adequacy of a class representative based on the*
*representative's ignorance.*").[4]  Nationwide attempts to avoid this authority by arguing that
Plaintiffs' purported lack of knowledge allegedly led them to give "misleading and contradictory"
testimony, supposedly rendering them inadequate.[5]

Of course, inherent in the proposition that class representatives need not have significant
knowledge of either the facts or the law in complex cases is the realization that this may lead to
class representatives giving testimony that does not parrot the pleadings. *See, e.g., Demitropoulos*
*v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1418-19 (N.D. Ill. 1996) (holding plaintiff who
described his claim primarily as a "lemon law" claim was adequate to represent a class bringing
very technical Consumer Leasing Act claims which he did not fully understand).  Further, any time
plaintiffs are deposed at the very beginning of discovery, it is possible that their understanding of
the law and of facts not personal to them will be superceded as their counsel obtain new
understanding of the facts through discovery and new understanding of the law through further
research and briefing.

It is exactly these types of discrepancies that Nationwide pejoratively and falsely calls
"misleading and contradictory" testimony.  As Nationwide is at pains to point out, Class Counsel's
theory of the case has evolved somewhat over time through the discovery process and through the
process of further research and briefing.  It is only to be expected, therefore, that the case has
evolved in ways that cause it to vary from the testimony given by Plaintiffs early in discovery.  As
the Fourth Circuit explained, "*It is hornbook law that 'in a complex lawsuit, such as one in which*
*the defendant's liability can be established only after a great deal of investigation and discovery by*

---

[4]  *See also* P. Mem. at 26, [Docket No. 129].

[5]  D. Opp. at 54-6, [Docket No. 179].

*counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.*"  *Gunnells v. Health Plan Services, Inc.*, 348 F.3d 417, 430 (4th Cir. 2003) (citations omitted).  Plaintiffs, therefore, have sufficient knowledge to act as class representatives.

B.    *NATIONWIDE'S FILING OF COUNTERCLAIMS AGAINST THREE OF THE FIVE PLAINTIFFS DOES NOT MAKE THE FIVE PLAINTIFFS INADEQUATE CLASS REPRESENTATIVES.*

Plaintiffs anticipated this argument by Nationwide and provided the Court with three pages of arguments demonstrating its lack of merit.[6]  Nationwide makes only a one sentence response[7] to Plaintiffs' arguments.  Plaintiffs, therefore, rely on that prior class certification briefing and on Plaintiffs' briefing regarding dismissal of Nationwide's counterclaims.[8]

Immediately following that one sentence argument, Nationwide makes in passing (two sentences) a completely different argument -- that, in connection with contract amendments, some unspecified number of the five Plaintiffs allegedly "ratified" Nationwide's revenue sharing scheme, allegedly making them inadequate as class representatives.[9]  This argument only potentially applies to Haddock, Wiberg and Kaplan, whose plans (Flyte, Crown and Hartford Roofing) had group contracts, because Nationwide not only never amended the individual contracts, it never bothered to communicate in any manner that it was implementing revenue sharing to the plans and

---

[6]    P. Mem. at 23-25, [Docket No. 129].

[7]    D. Opp. at 53, [Docket No. 179].

[8]    Plaintiffs' Notice of Motion and Motion to Dismiss Nationwide's Amended Counterclaims filed June 10, 2003 [Docket No. 97]; Memorandum in Support of Plaintiffs' Notice of Motion and Motion to Dismiss Nationwide's Amended Counterclaims filed June 10, 2003 [Docket No. 98]; Reply Memorandum in Support of Plaintiffs' Motion to Dismiss Nationwide's Amended Counterclaims filed July 28, 2003 [Docket No. 104].

[9]    D. Opp. at 53, [Docket No. 179].

participants holding individual annuity contracts.[10]  This means that Gouse and Ferdon, whose

plans (Easter Seals and Anderson & Ferdon) had individual contracts, do not even potentially face

this unique defense, and they constitute adequate representatives of the entire Class regardless of

this issue.

As to Haddock, Wiberg and Kaplan, Nationwide's argument is equally lacking in merit for

two reasons.  First, Nationwide offers no authority for the proposition that a plan trustee can agree

to or ratify a third party receiving plan assets which it was not contractually entitled to receive.

Second, unique defenses (if available) asserted against a class representative do not render the

class representative's claims atypical or render the class representative inadequate so long as the

defense will not likely dominate the litigation.  *See Int'l Woodworkers of America, AFL-CIO, CLC

v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1269 (4th Cir. 1981); *Rodger v. Electronic

Data Systems Corp.*, 160 F.R.D. 532, 539 (E.D.N.C. 1995).

This so-called ratification defense, if it even exists, could not possibly dominate the

litigation, because it is based on standard explanatory correspondence which accompanied the

group contract amendments, which amendments themselves undisputedly did not provide for

Nationwide's receipt of revenue sharing payments.[11]  Thus, via summary judgment or at trial, the

Court will be asked to rule as a matter of law on whether ratification exists as a defense and, if

so, whether the standard form written correspondence gives rise to such defense.  Resolution of

the issue will accordingly take only a small fraction of the Court's efforts in this case.

---

[10]  30(b)(6) Deposition of Nationwide employee Eric Henderson of March 18, 2003 ("Henderson Depo."), 53:2-54:16, Confidential Appendix in Support of Plaintiffs' First Amended Motion for Class Certification ("Conf. App.") Tab G, [Docket No. 137]; 30(b)(6) Deposition of Nationwide employee John S. Bath of February 27, 2003 ("Bath Depo."), 130:22-131:3, Conf. App. Tab A.

[11]  30(b)(6) Deposition of Nationwide employee Steven Rose of March 17, 2003 ("Rose Depo."), 84:18-85:4; 127:9-22; 158:14-23, Conf. App. Tab F, [Docket No. 137]; Depo. Exhibit 534, Conf. App. Tab R; Depo. Exhibit 54 (Amendment to the Crown Plan, along with the explanatory correspondence from Nationwide, Conf. App. Tab S; Haddock Exhibit 9 (Amendment to the Flyte Plan along with explanatory correspondence from Nationwide), Conf. App. Tab T.

C.    *PLAINTIFFS HAVE NOT IMPERMISSIBLY ABANDONED VALUABLE CLAIMS SO AS TO RENDER THEM INADEQUATE AS CLASS REPRESENTATIVES.*

Nationwide claims that Plaintiffs are inadequate because they have decided not to pursue liability based upon misrepresentation, non-disclosure and breach of contract and thereby have allegedly abandoned claims valuable to some Class members, which claims those Class members allegedly might be precluded from bringing in a subsequent suit by res judicata.[12]  The Court should reject Nationwide's argument because res judicata would not apply in these circumstances, and even if it would, the reasoned decision by Plaintiffs not to pursue alternative theories of liability which could not obtain any additional damages does not call into question Plaintiffs' adequacy.

1.    No Res Judicata.

Nationwide relies on a series of district court cases in which the class representatives limited the classes' claims to narrow economic damages while leaving unpursued far more substantial causes of action for personal injury by many class members.[13]  The concern of these courts was that the claims for personal injury of some class members, which would dwarf the economic recovery sought for them in the class action, would be subsequently precluded by res judicata under the doctrine of "claim splitting."  The courts felt that by risking those class members potentially losing these far more valuable claims as a result of the class actions, the proposed class representatives were not adequately representing those class members.

Those cases overstate the risk of unasserted claims being precluded.  Claims not asserted in a class action because they are not suitable for class certification are not actually litigated and are, therefore, not barred by res judicata. *Gunnells*, 348 F.3d at 432 ("*But a class action, 'of course*

---

[12]  D. Opp. at 56-58, [Docket No. 179].

[13]  *See In Re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.*, 209 F.R.D. 323, 338-9 (S.D.N.Y. 2002); *Thompson v. American Tobacco Co., Inc.*, 89 F.R.D. 544, 550-1 (D. Minn. 1999); *Pearl v. Allied Corp.*, 102 F.R.D. 921, 923 (E.D. Pa. 1984); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 606 (S.D.N.Y. 1982).

-6-

*is one of the recognized exceptions to the rule against claim-splitting'"* (citation omitted));

*Marshall v. Kirkland*, 602 F.2d 1282, 1298 (8th Cir. 1979); *Sullivan v. Chase Investment Services*

*of Boston, Inc.*, 79 F.R.D. 246, 265 (N.D. Cal. 1978); *Microsoft Corp. v. Manning*, 914 S.W.2d

602, 611 (Tex. App.--Texarkana 1995, writ dism'd by agr.). This is inherent in Rule 23(c)(4)(A),

which allows an action to be brought or maintained as a class action with respect to particular

issues, leaving individual claims not suitable for class certification for later resolution in the same

or subsequent actions. *Microsoft Corp.*, 914 S.W.2d at 611.[14]

    2.    <u>Plaintiffs Made a Reasoned Decision</u>.

    Even if claim preclusion were an issue, this case is completely distinguishable from the

cases upon which Nationwide relies, because Plaintiffs do not drop claims which are clearly

meritorious and which clearly have significantly more value than the claims they do assert. In this

case, the potential claims for misrepresentation, non-disclosure and breach of contract could

recover only the exact same damages Plaintiffs seek through their breach of fiduciary duty cause

of action -- recovery of the revenue sharing payments.[15]  So, unlike the cases where class

representatives risked some class members' personal injury claims that dwarfed the economic

damages actually sought, Plaintiffs merely chose not to pursue alternative theories of liability to

recover the exact same damages.

---

[14]   As the advisory comment states, *"This provision recognizes that an action may be maintained as a class action as to particular issues only. For example, in a fraud or similar case, the action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims."*  Fed. R. Civ. P. 23(c)(4)(A), 1966 advisory comment.

[15]   This distinguishes this case from *Western States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002), as well.  In *Western States*, the plaintiffs abandoned claims for additional damages--damages for lost sales or market share--not just an alternative theory to recover the same relief. Further, the relief sought by the plaintiffs created an intra-class conflict, unlike this case. *Id.*

Furthermore, Plaintiffs made a reasoned choice on the substantive merits in dropping those alternative theories of liability, given that discovery did not reveal good evidence of affirmative misrepresentations being made but did reveal factual and legal problems with non-disclosure and breach of contract. Under those circumstances, Plaintiffs' choice does not represent Plaintiffs simply abandoning the most valuable claims of some Class members in order to achieve class certification. *See Middleton v. Sun Star Acceptance Corp.*, 2000 WL 33385388 at *6 (S.C. Com. Pl. 2000) (distinguishing *Feinstein* on the ground that the plaintiffs' election to pursue one remedy and not another was a rational, good faith election).

Likewise, Plaintiffs made a rational and reasonable decision to give up pursuing any positive investment return that would have been generated had the amounts of the revenue sharing payments remained invested for the Class members. Plaintiffs dropped this claim for two reasons.

First, it is arguably inconsistent with Plaintiffs' contention that Class members are entitled to restitution of the revenue sharing payments regardless of whether Class members actually suffered damages as a result of the payments. Second, since these damages would, in essence, compensate for the time value of money, an election would have to be made between such damages and prejudgment interest, and Plaintiffs believe that prejudgment interest is a better choice, given that most Class members may have actually suffered negative returns on their investments during the class period and that prejudgment interest would be far more certain of recovery in every case.[16]

Finally, numerous courts have noted that slight concerns over potential claim preclusion can be adequately handled by allowing class members who wish to pursue claims or theories of

---

[16] In this respect, this case is like *Middleton*, in which the plaintiffs were substantively forced to choose between actual or statutory damages. *2000 WL 33385388 at *6.* The plaintiffs' rational choice of statutory damages over actual damages (like choosing prejudgment interest over the uncertain calculation of potential investment returns) did not constitute improper "claim splitting" that rendered the proposed class representatives inadequate. *Id.*

liability that the class representatives have not chosen to pursue to opt out. *See Gunnells*, 348 F.3d at 432; *Quebe v. Ford Motor Co.*, 908 F. Supp. 446, 453 n.6 (W.D. Tex. 1995); *Middleton*, 2000 WL 33385388 at *7; *Microsoft Corp.*, 914 S.W.2d at 611. If the Court certifies this case pursuant to (b)(2), the Court may use its discretion to provide the same notice and chance to opt out as in a (b)(3) case in order to eliminate any due process concerns. *See Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 166 (2d Cir. 2001).

## III.   THE COURT SHOULD CERTIFY THIS CASE PURSUANT TO RULE 23(b)(2)

Plaintiffs argue that their claim for equitable monetary relief qualifies for certification under Rule 23(b)(2) for three independent and alternative reasons:

(1)    because it constitutes a form of equitable relief;

(2)    because even if it is not equitable, it is only incidental to the injunctive and declaratory relief; and/or

(3)    because even if it is not equitable, the injunctive and declaratory relief predominates under the Second Circuit's ad hoc test.[17]

*A.    THE EQUITABLE MONETARY RELIEF SOUGHT BY PLAINTIFFS QUALIFIES FOR CERTIFICATION UNDER RULE 23(b)(2).*

In *Robinson*, 267 F.3d at 169-70, the Second Circuit held that Title VII discrimination claims for back pay should be routinely certified under Rule 23(b)(2) as claims for equitable monetary relief. Previously, in the context of concluding that a restitution claim under ERISA § 502(a)(3) constituted "*other equitable relief*," the Second Circuit held that such "*...relief...is indistinguishable from back pay in any material respect.*" *Strom v. Goldman, Sachs & Co.*, 203 F.3d 138, 147 (2d Cir. 1999). In light of this, little doubt exists but that class actions seeking "*other equitable relief*" under § 502(a)(3) should routinely be certified under Rule 23(b)(2) in the Second Circuit.

---

[17] P. Mem. at 27-32, [Docket No. 129].

Nationwide responds that *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), implicitly reversed *Strom*. While *Knudson* did call into question part of the reasoning of *Strom* by narrowing what constitutes equitable relief under § 502(a)(3), the restitutionary relief sought by Plaintiffs still fits comfortably within that narrowed definition.

Under *Knudson*, restitution lies in equity and thus can be asserted pursuant to § 502(a)(3) when it seeks not to impose personal liability on the defendant, but rather to recover particular funds in the defendant's possession. *Id.* (citing to Restatement of Restitution § 160, Comment a (1937)). Crucially, this condition is met where the defendant deposits the plaintiff's assets into a bank account containing the defendant's own assets, as the plaintiff is entitled to restitution out of the mingled fund. Restatement of Restitution § 209, Comment a (1937).

Thus, in the Second Circuit, it has been consistently held that if assets which should be returned to the plaintiff can be identified as going into bank accounts of the defendant, the plaintiff is entitled to equitable restitution out of those bank accounts. *In Re Martin Fein & Co., Inc.*, 43 B.R. 623, 627-8 (Bankr. S.D.N.Y. 1984) (citing *Salisbury Inv. Co. v. Irving Trust Co.*, 70 F.2d 313, 316 (2d Cir. 1934) ("*If a trustee mingles the trust funds with the mass of his other funds, as long as there remains on hand a sufficient sum to cover the amount of the trust fund, the cestui que trust may follow the trust fund and reclaim it.*"); *In Re Warner-Quinlan Co.*, 886 F.2d 103, 105 (2d Cir. 1936) (dictum); *In Re Anjopa Paper & Board Manuf. Co.*, 269 F. Supp. 241, 261 (S.D.N.Y. 1967); 5 Scott on Trusts § 515, at 3610-11 (3d ed. 1967)).

As Nationwide received the revenue sharing payments, it deposited them into one or more of its bank accounts and showed them as contra-expenses in specific ledgers in its books.[18] Under the Second Circuit authorities discussed above, a claim in equity for restitution against those bank

---

[18] 30(b)(6) Deposition of Nationwide Employee John J. Scranton of March 10, 2003 ("Scranton Depo."), 25:18-26:23; 40:21-41:16, Conf. App. Tab H, [Docket No. 137].

accounts can be asserted, making it a claim for *"appropriate equitable relief"* under § 502(a)(3) of ERISA and qualifying it for (b)(2) certification under *Robinson* and *Strom*.[19]

The Supreme Court itself confirmed this in *Knudson* by holding that the plaintiffs in *Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000), had asserted an equitable claim for restitution under § 502(a)(3). 534 U.S. at 215. The plaintiffs in *Harris Trust* sought to recover restitution from the defendant of the purchase price of several motel properties -- which money the defendant presumably had deposited into one or more accounts which could be identified. *Harris Trust*, 530 U.S. at 242-3. This case cannot be distinguished.

To the same effect is *Health Care Service Corp. v. Tap Pharmaceutical Products, Inc.*, 2003 WL 21801636 at *3 (E.D. Tex. 2003). The plaintiff alleged that the pharmaceutical company had induced it into overpaying for drugs, and the plaintiff sought restitution of the overpayments, which presumably the defendant had deposited in one or more bank accounts. *Id.* at *1. Citing to *Harris Trust*, the district court held that the action for restitution constituted appropriate equitable relief under § 502(a)(3).

Significantly, because the equitable monetary relief sought by plaintiffs qualifies for (b)(2) certification, it does not matter whether the injunctive and declaratory relief sought by Plaintiffs does or does not predominate over this equitable monetary relief. Thus, the Court need not even address this issue.

B.    *ALTERNATIVELY, THE EQUITABLE MONETARY RELIEF SOUGHT BY PLAINTIFFS QUALIFIES FOR 23(b)(2) TREATMENT, BECAUSE IT IS ONLY INCIDENTAL TO THE INJUNCTIVE AND DECLARATORY RELIEF.*

Nationwide does not deny that any case meeting the "incidental damages" standard of *Allison v. Citgo Petroleum Co.*, 151 F.3d 402, 415 (5th Cir. 1998), will be appropriate for (b)(2)

---

[19]    Plaintiffs have not specifically pled for imposition of an equitable lien against bank accounts of Nationwide. If their general pleadings for equitable relief do not encompass such relief, Plaintiffs request leave of Court to amend to specifically plead for such relief.

-11-

certification. *Robinson*, 267 F.3d at 163-4. Rather, Nationwide argues that simply because the monetary relief sought by Plaintiffs could potentially amount to millions of dollars, it cannot possibly constitute incidental damages.[20]

That is simply not the standard, however. Rather, the standard is whether the monetary relief is "*capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances.*" *Allison,* 153 F.3d at 415. Indeed, the Fifth Circuit held that damages that could easily amount to billions of dollars (hundred or thousands of dollars in premiums and benefits for each of 5.6 million insurance policies) were incidental. *In Re Monumental Life Ins. Co., Industrial Life Ins. Litig.*, 2003 WL 21921137 at *1 & *7 (5th Cir. 2003), App. Tab 18.

Recognizing this, Nationwide denies that the damages in this case can be calculated by means of objective standards.[21] Significantly, in doing so, Nationwide does not deny that the amount of revenue sharing payments received by Nationwide attributable to each plan can be objectively and mechanically calculated.[22] Thus, Nationwide has effectively conceded that no individual damages determinations will be required if Plaintiffs are entitled to recover the full amounts of the revenue sharing payments.

Faced with this problem, Nationwide attempts to raise a smoke screen. Specifically, it simply assumes it is entitled to an offset for the reasonable value of any services it allegedly provided to the mutual funds in return for those payments and then claims that individual determinations will have to be made as to each plan to determine the value of those services. This argument has no merit for two reasons.

---

[20]  D. Opp. at 50-1, [Docket No. 179].

[21]  D. Opp. at 52-3, [Docket No. 179].

[22]  *Id.*

-12-

First, Nationwide's assumption is false. As previously explained, using common proof, Plaintiffs can prove the payments did not, in fact, constitute payment for services, such that Nationwide will be entitled to no offset whatsoever in any case.[23] Second, even if the Court finds that part of the payments constituted payment for services, no individual determinations will be necessary. Rather, Plaintiffs will, using common proof, demonstrate a reasonable per participant per annum charge for Nationwide's services applicable to all plans which can be deducted on a mechanical basis during the damages calculations, as explained below at 21-23.

Thus, if necessary, this case clearly meets the *Allison* incidental damages standard, making it appropriate for (b)(2) certification.

C.    *ALTERNATIVELY, PLAINTIFFS' EQUITABLE MONETARY RELIEF QUALIFIES FOR 23(b)(2) TREATMENT, BECAUSE THE INJUNCTIVE AND DECLARATORY RELIEF PREDOMINATES UNDER THE SECOND CIRCUIT'S AD HOC TEST FROM ROBINSON.*

Nationwide denies that the two *Robinson* factors favor (b)(2) certification.[24] As to the first factor -- whether the positive weight or value of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed--Nationwide does not deny that the injunctive or declaratory relief sought would be both reasonably necessary and appropriate if Plaintiffs prevail on the merits. Rather, Nationwide merely notes that in both the First and Second Amended Complaints, Plaintiffs sought certification only of (b)(3) classes and then argues that it "strains credulity" for Plaintiffs to claim they would have brought the suit even in the absence of possible monetary recovery.[25] This argument makes no sense for two reasons.

---

[23]  P. Mem. at 34, [Docket No. 129].

[24]  D. Opp. at 51-2, [Docket No. 179].

[25]  D. Opp. at 52, [Docket No. 179].

First, the issue is not the subjective question of whether the Plaintiffs in this case would bring this suit to obtain injunctive or declaratory relief in the absence of a possible monetary recovery, but rather the objective question of whether "reasonable plaintiffs" would do so. *Robinson*, 263 F.3d at 164.  Crucially, Nationwide does not dispute that, as an objective matter, reasonable plaintiffs would seek final injunctive and declaratory relief regardless of monetary recovery because the savings over several years would dwarf the equitable monetary relief sought by Plaintiffs.[26]

Second, even if the subjective belief or intent of the Plaintiffs was relevant, their waiting until the Third Amended Complaint to ask for certification of a (b)(2) class indicates nothing.  In both the First Amended and Second Amended Complaints, Plaintiffs pled for the injunctive or declaratory relief they plead for in the Third Amended Complaint.[27]  The fact that Plaintiffs did not then seek (b)(2) certification only indicates their counsel's thinking about class certification at those times and absolutely nothing about their thinking as to whether they would bring this suit if they could only recover injunctive and declaratory relief.

Finally, Nationwide alleges that individual damages determinations will have to occur, such that (i) injunctive and declaratory relief allegedly does not predominate, and (ii) the second *Robinson* factor--that class treatment will be efficient and manageable, thereby achieving an appreciable measure of judicial economy--is allegedly not met.  For the reasons just discussed and elaborated on below, that argument has no merit because no individual damages determinations will be required.  In any event, the need for individual damages determinations in this case would not prevent class certification, just as back pay awards in Title VII cases (which are to be routinely certified in the Second Circuit), which always require individual and often complex damages

---

[26]  P. Mem. at 31-2, [Docket No. 129].

[27]  Plaintiffs' First Amended Class Action Complaint ¶¶ 9, 43 & 57, [Docket No. 4]; Plaintiffs' Second Amended Class Action Complaint ¶¶ 3, 47 & 51, [Docket No. 65].

hearings for each class member, do not prevent (b)(2) certification. *Robinson*, 267 F.2d at 167-170; *Arnold v. United Artists Theater Circuit, Inc.*, 158 F.R.D. 439, 453 (N.D. Cal. 1994).

The Court should accordingly, if necessary, find that this case is suitable for (b)(2) certification pursuant to the Second Circuit's ad hoc test.

## IV.    THE COURT SHOULD ALSO CERTIFY THIS CASE PURSUANT TO RULE 23(b)(3), BECAUSE COMMON ISSUES PREDOMINATE OVER ISSUES AFFECTING ONLY INDIVIDUAL CLASS MEMBERS

Prior to implementation of its revenue sharing scheme, Nationwide's predominant source of revenue was the contracted-for charges paid by the plans based on a percentage of their assets invested through Nationwide. With its uniform implementation of the revenue sharing scheme as to all the plans, Nationwide added a huge new source of revenue for which it had not contracted with the plans -- payments by the mutual funds calculated as a percentage of the plans' investments. Plaintiffs contend that under those common general circumstances, the revenue sharing payments constituted plan assets in Nationwide's hands, that Nationwide exercised authority or control over them by arranging for them and pocketing them, making it a fiduciary as to those payments, and that Nationwide violated its fiduciary duty by pocketing the payments.

The Court will resolve this case as to all members of the proposed Class by resolving those common issues, and resolving those common issues will take the overwhelming majority of the parties' and the Court's time and efforts. For that reason, there should be little doubt as to the appropriateness of certifying this case to proceed as a (b)(3) class action.

Nationwide tries to confuse the simplicity of the case by delving into the complicated details of how it chose to structure its business -- forming separate accounts, issuing accumulation units (shares) of those separate accounts to the plans, holding mutual fund shares in the separate accounts and contracting with mutual funds or their advisors for the revenue

-15-

sharing payments -- and claiming those details create a myriad of individual issues.  Those

details are irrelevant to class certification, however, because all the plans are subject to the

same general revenue sharing scheme and resolution of whether that revenue sharing scheme

subjects Nationwide to and violates ERISA constitutes a common question.

A.    WHETHER THE REVENUE SHARING PAYMENTS BY MUTUAL FUNDS TO
      NATIONWIDE CONSTITUTE PLAN ASSETS IN NATIONWIDE'S HANDS PRESENTS
      A COMMON ISSUE.

As a reminder, Plaintiffs' cause of action starts with proof that the revenue sharing

payments constituted plan assets in Nationwide's hands.  Thus far, Plaintiffs' and Nationwide's

discussion of how Plaintiffs will go about proving this point are two ships passing in the night.

Plaintiffs' ship is, however, the one which will bring the Court safely to the correct port.

Plaintiffs contend that the revenue sharing payments by the mutual funds constitute, in

Nationwide's hands, plan assets because they derive (in a general sense, not through tracing of

specific assets)[28] from plan assets and should, in equity and good conscience, be treated as plan

assets.[29]  Plaintiffs further contend that this is the case regardless of the fact that the money did

not constitute plan assets in the hands of the mutual funds.  In other words, the revenue sharing

payments became plan assets upon their receipt by Nationwide.

Nationwide's response is, in essence, to tell the Court that it should ignore Plaintiffs'

theory because it could not possibly be correct.[30]  It then argues that once the Court rejects

Plaintiffs' theory, Plaintiffs will have to resort to tracing of specific assets from the hands of the

plans into its hands into the mutual funds' hands into the mutual fund advisors' hands and then

---

[28]  The revenue sharing payments were calculated based on a percentage of the plans' investments.

[29]  A cause of action for restitution lies when a defendant holds money which, in equity and good conscience, belongs
to or should be returned to a plaintiff.  Knudson, 534 U.S. at 213.

[30]  D. Opp. at 31-3, [Docket No. 179].

-16-

back into its hands, which will require highly individualized inquiries, if it is possible at all.[31]

Nationwide's tactic fails as a matter of both class certification and substantive law. As to class certification law, courts must decide certification based upon how plaintiffs intend to prove their case, not based on how defendants claim the plaintiffs will be forced to proceed. *See Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 42 (1st Cir. 2003) (holding that decertification based upon individual issues created by oral misrepresentations improper where plaintiffs disclaimed any intent to rely on oral misrepresentations).[32] In other words, so long as plaintiffs do not rely upon patently impossible legal or factual premises, they have the right to frame the issues for class certification purposes.

Significantly, as a couple of examples make clear, Plaintiffs' contentions make perfect sense as a matter of substantive law. For example, if a particular mutual fund offered by Nationwide in which plans had invested simply closed, the mutual fund would liquidate its assets and pay to Nationwide the money attributable to those plans' investments. That money did not constitute plan assets in the hands of the mutual fund. Nevertheless, once Nationwide received the money, it would undeniably have to treat that money as assets of the plans and credit it to the plans in some manner; it could not simply pocket those funds. The same holds true of the revenue sharing payments.

Another good example would be a participant directing Nationwide to liquidate his investment in a particular mutual fund, resulting in the receipt of cash by Nationwide. Nationwide would have to treat the cash as an asset of the plan and credit it accordingly; it could not simply pocket the money despite the fact that the money did not constitute a plan asset in the hands of the

---

[31] *Id.*

[32] *See also Baffa*, 222 F.3d at 58 ("*Nothing in either the language or history of Rule 23...gives the court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.*"); *In Re Nortel Networks Corp. Securities Litig.*, 2003 U.S. Dist. LEXIS 15712 at *5 (S.D.N.Y. 2003) (Courts "*must accept plaintiffs' allegations as true and refrain from conducting an examination of the merits when determining the propriety of class certification.*").

-17-

mutual fund. Even Nationwide's expert agrees with this proposition.[33]

Thus, Plaintiffs assert a restitution claim pursuant to which the payments by the mutual funds uniformly constituted plan assets in Nationwide's hands, even though they did not constitute plan assets in the hands of the mutual funds. Without really denying the commonality of the claim, Nationwide asks the Court to simply ignore it for class certification purposes on the grounds that it is allegedly incorrect as a matter of law. The correct course of action for the Court is to find that Plaintiffs intend to prove this element of their case on a common basis, certify it for class treatment, and then decide on a classwide basis whether Plaintiffs or Nationwide are right as to the sufficiency of this theory. Simply put, the revenue sharing payments either constituted plan assets as to the entire Class or they did not.

B.    *WHETHER NATIONWIDE EXERCISED AUTHORITY OR CONTROL OVER REVENUE SHARING PAYMENTS PRESENTS A COMMON ISSUE.*

After proving that the revenue sharing payments constituted plan assets in Nationwide's hands, Plaintiffs will then prove that Nationwide exercised authority or control over them, making it a fiduciary as to those payments. *"...[A] person is a fiduciary with respect to a plan to the extent (i) he...exercises any authority or control respecting management or disposition of its assets...."* 29 U.S.C. § 1002(21)(A). The factual record presented by both sides demonstrates that Nationwide contractually arranged for the revenue sharing payments and kept them for its own benefit. Whether this amounts to the exercise of authority or control under ERISA, making Nationwide a fiduciary, constitutes a common issue of law.

---

[33]    Deposition of Nationwide expert witness Frederick M. Werblow of August 20, 2003 ("Werblow Depo."), 63:4-18; 63:25-64:3; 65:3-14, Conf. App. Tab J, [Docket No. 137].

C.    *WHETHER NATIONWIDE EXERCISED AUTHORITY OR CONTROL OVER THE ACCUMULATION UNITS PRESENTS A COMMON ISSUE.*

Plaintiffs argue that Nationwide also acted as a fiduciary as to the accumulation units,[34] undisputedly plan assets, by also exercising authority or control over them. Plaintiffs do so only as a fallback position in the unlikely event the Court does not hold that the revenue sharing payments constitute plan assets in Nationwide's hands. If the Court finds the revenue sharing payments constitute plan assets, it will not need to decide any issues in regard to the accumulation units, including Nationwide's exercise of authority or control over them.

However, if the Court reaches the issue, it will find that Nationwide's exercise of authority or control over the units presents a common issue, as Plaintiffs previously explained.[35] Nationwide responded by discussing a number of reasons why it allegedly did not exercise authority or control over the accumulation units, but examination of those reasons reveals that they all apply or do not apply to the plans on a uniform basis, raising only common issues.[36]

D.    *"AGREEMENT, RATIFICATION AND DISCLOSURE" DO NOT RAISE INDIVIDUAL ISSUES REGARDING NATIONWIDE'S EXERCISE OF AUTHORITY OR CONTROL OVER PLAN ASSETS.*

Nationwide's argument appears to be that if it had an excuse or justification for pocketing the revenue sharing payments (disclosure, agreement, or ratification) its pocketing of the payments would somehow not constitute the exercise of authority or control over those payments. This is akin to arguing in a murder case that if the defendant killed in self-defense, the defendant did not actually kill the victim. To state the argument demonstrates its absurdity.

---

[34]    As a reminder, "accumulation units" is the term Nationwide uses for the plan assets which represent the plans' investments in the mutual funds. They are the shares of the separate accounts in which Nationwide holds mutual fund shares. While participants are allowed to pick specific mutual funds to invest in and are told the value of their investments in each of their chosen mutual funds, Nationwide has, for its own reasons, chosen to measure the value of those investments by a number of accumulation units of a separate account, rather than by the number of mutual fund shares held in the separate account for the benefit of the participant.

[35]    P. Mem. at 12-13.

[36]    D. Opp. at 34-6.

E.    NATIONWIDE'S LIABILITY FOR BREACH OF FIDUCIARY DUTY PRESENTS A COMMON ISSUE.

1.    Nationwide's ERISA Liability Under § 404(a)(1)(A) Presents a Common Issue.

Nationwide misleadingly argues to the Court in two purely conclusory sentences that § 404(a) requires Plaintiffs prove that it was not merely "defraying reasonable expenses," which allegedly raises individual issues.[37]   Of course, § 404(a)(1)(A) actually refers to "*defraying reasonable expenses of administering the plan*." 29 U.S.C. § 1104(a)(1)(A).  Nationwide did not administer any of the plans (they were administered by their trustees and third party administrators hired by the trustees) and could not, therefore, conceivably have accepted the revenue sharing payments for the purposes of defraying reasonable expenses of administering those plans. Nationwide obviously hoped that the deception inherent in its argument would escape the Court's notice.

2.    Nationwide's ERISA Liability Under § 404(a)(1)(B) Presents a Common Issue.

In one purely conclusory sentence, Nationwide claims that proving a breach of "*the care, skill, prudence and diligence under circumstances then prevailing*" as required by 29 U.S.C. § 1104(a)(1)(B) necessarily raises individual issues because the circumstances then prevailing will differ from class member to class member.[38]  However, as Plaintiffs have explained at length, the "circumstances then prevailing" were a uniform scheme to obtain revenue sharing payments for which Nationwide did not contract, raising a common issue of breach of fiduciary duty under § 404(a)(1)(B).

---

[37]   D. Opp. at 39, [Docket No. 179].

[38]   *Id.*

3.    Nationwide's ERISA Liability Under § 406(b) Presents a Common Issue.

Once again in one conclusory sentence, Nationwide argues that "conditions and exceptions" to ERISA § 406(b), 29 U.S.C. § 1106(b), would require analysis of facts that vary from retirement plan to retirement plan.[39] Presumably, Nationwide refers to the transactions exempted from § 406's prohibition by ERISA § 408. *See* 29 U.S.C. § 1108. Significantly, Nationwide would have the burden to prove the application of § 408. *Lowen*, 829 F.2d at 1215; *Marshall v. Snyder*, 572 F.2d 894, 900 (2d Cir. 1978). And crucially, Nationwide has not argued, and cannot argue, that its arranging for, receiving and retaining the revenue sharing payments could conceivably constitute transactions exempted from illegality by § 408.

4.    Nationwide's Alleged Defense That the Revenue Sharing Payments Constituted Payments for Services Rendered Does Not Create Individual Issues.

Plaintiffs contend that Nationwide violates ERISA § 406(b)(3) by accepting the revenue sharing payments because this represents Nationwide receiving consideration for its own personal account from mutual funds dealing with the plans in connection with transactions involving the assets of the plans. 29 U.S.C. § 1106(b)(3). Once Plaintiffs make their prima facie case under § 406(b)(3), the burden will shift to Nationwide to prove by clear or convincing evidence that the revenue sharing payments were justified. *Lowen*, 829 F.2d at 1215.

Nationwide's attempted justification goes something like this: (1) mutual funds pay their assets all the time for various goods and services (office space, janitorial services and paper clips, for example), (2) those payments by the mutual funds do not become plan assets in the hands of those payees, and (3) the revenue sharing payments constitute payments by the mutual funds of their own assets to Nationwide for services rendered by Nationwide, making them like payments for office space, janitorial services or paper clips.

---

[39] *Id.*

For purposes of class certification, Nationwide argues that this defense would require a determination for each plan of the value of the services rendered to mutual funds on that plan's behalf with only that portion of the revenue sharing payments which exceeded the reasonable value of Nationwide's services constituting recoverable plan assets. Nationwide does not, however, offer any proof to the Court that it could put on evidence on a plan-by-plan basis of the value of its services allegedly rendered to the mutual funds. Rather, assuming wrongly that the burden would rest on Plaintiffs, Nationwide essentially argues that such individual determinations would be impossible. If Nationwide is correct, it has proven that it cannot raise individual issues in this manner.

In any event, the Court would never have to engage in individual determinations, because Plaintiffs can handle this alleged defense on either of two bases that are common to the entire Class. Initially, Plaintiffs would demonstrate using exclusively common proof that the revenue sharing payments do not actually constitute payment for services rendered.[40] Nationwide does not deny that Plaintiffs can respond in this manner through common proof. For that reason alone, Nationwide's argument fails.

Even if the Court were to find the revenue sharing payments constitute, at least in part, payment for services rendered, Plaintiffs can use common proof to show the reasonable value of the services in the form of a per participant per annum charge.[41] Such per participant per annum charge could be mechanically applied as an offset to the amounts of the revenue sharing

---

[40] P. Mem. at 34, [Docket No. 129].

[41] P. Mem. at 34-5, [Docket No. 129].

payments.[42]

That common proof as to the reasonable per participant per annum value of the services allegedly provided by Nationwide to mutual funds consists of: (i) Nationwide's uniform pre-revenue sharing practice of charging $6.00 per participant per year to a few mutual funds and $12.00 per participant per year to PPA's; (ii) Nationwide's current per participant per year charges to PPA's; and (iii) market data regarding the per participant per year charges for provision of similar unlimited access services by independent third party providers.[43] In addition, Plaintiffs can show as common proof the per participant per annum charges still paid by a few mutual funds to Nationwide.[44]

Of these four types of common proof, Nationwide attacks only the market data on the ground that Plaintiffs have allegedly not shown sufficiently that it exists. Crucially, Nationwide does not deny that its own prior and current practices provide common proof of the reasonable value of its services on a per participant per annum basis. This demonstrates that Plaintiffs can handle this issue using common proof regardless of whether market data does or does not exist. Nevertheless, Plaintiffs believe that they will develop such data, and common sense undoubtedly tells the Court that they can do so.

---

[42] Nationwide argues that there is no proof that any services it allegedly provides mutual funds **must** be priced on a per participant per annum basis. Plaintiffs do not, however, have to prove (nor do they claim) that the only way that providers of services to mutual funds could reasonably price their services would be on a per participant per annum basis. Rather, Plaintiffs would only need to show the reasonable value of any services allegedly provided by Nationwide, and Nationwide does not even attempt to deny that one way of calculating a reasonable value would be on a per participant per annum basis. Indeed, Nationwide could not make that argument, since it uniformly priced its alleged services in exactly that manner prior to implementation of the revenue sharing scheme.

[43] P. Mem. at 35, [Docket No. 129].

[44] The reason Nationwide could and still does price on a per participant per annum basis, and why it constitutes a reasonable method of valuation, is that Nationwide undeniably provides its so-called services on an unlimited access basis. Because it does so, the actual quantum of services it may have provided for the benefit of particular plans is irrelevant. The reasonable value of its services is a reasonable charge for unlimited access services, therefore, which eliminates any need to delve into the specific provision of services on behalf of a particular plan, allowing application of a uniform per participant per annum figure, if any, as an offset to recovery of the revenue sharing payments.

Finally, even if individual determinations of the reasonable value of services provided by

Nationwide are required to calculate offsets to the recovery of the revenue sharing payments, this

does not destroy the predominance of common issues or otherwise foreclose class certification:

> But Rule 23 contains no suggestion that the necessity for individual damage
> determinations destroys commonality, typicality, or predominance, or otherwise
> forecloses class certification.  In fact, Rule 23 explicitly envisions class actions
> with such individualized damage determinations.  [citations omitted]....Indeed, 'in
> actions for money damages under Rule 23(b)(3), courts **usually** require individual
> proof of the amount of damages each member incurred.'  [citation
> omitted]....Courts have routinely rejected this argument, concluding, as we have
> in previous cases, that the need for individualized proof of damages alone will
> **not** defeat class certification.  [citations omitted].

*Gunnells*, 348 F.3d at 427-8 & 429 (emphasis in original).

5.    <u>Predominating Individual Issues Do Not Arise in Order to Prove Damages</u>.

As anticipated, Nationwide argues that in order to prove they were damaged by the revenue

sharing scheme, Plaintiffs will have to prove the mutual funds would have lowered their fees

charged to the plans and their participants had they not been required to pay Nationwide.[45]  As

Plaintiffs previously explained, this is not the case, because Nationwide must make restitution to

the plans of any amounts it obtained in violation of its fiduciary duties under ERISA, regardless

of whether the plans suffered any harm.[46]  Nationwide does not challenge or even address the case

law cited by Plaintiffs, and the two cases it cites in footnote 94 at page 44 of its opposition are

perfectly consistent with this case law.

Further, Plaintiffs explained how trial of whether mutual funds would have lowered their

fees had they not had to make the revenue sharing payments to Nationwide could be readily

managed if the Court surprisingly were to find it necessary.[47]  Nationwide did not deny that such

---

[45]    D. Opp. at 44, [Docket No. 179].

[46]    P. Mem. at 38-9, [Docket No. 129].

[47]    P. Mem. at 39-40, [Docket No. 129].

procedure would make the trial of this issue quite manageable or that under such a procedure common issues would continue to predominate. Indeed, given that separate hearings for each member of a Title VII class to determine proper back pay awards are manageable and should be routinely certified in the Second Circuit, this type of procedure (which is far simpler) is clearly manageable. *Id.* at 429-30; *Robinson*, 267 F.3d at 167-170; *Arnold*, 158 F.R.D. at 453.

## V. THE COURT SHOULD CERTIFY THIS CASE PURSUANT TO RULE 23(b)(3) BECAUSE A CLASS ACTION IS SUPERIOR TO OTHER ALTERNATIVES FOR RESOLVING THE ISSUES IN THIS CASE.

Nationwide argues against superiority on the grounds that individual issues allegedly predominate and/or will cause management problems and that Plaintiffs allegedly assert "immature" claims which would be better tested in individual cases before a class is ever certified. Neither of Nationwide's arguments has merit. As to the first, Plaintiffs explained in their initial briefing and above why common issues predominate and why this non-jury case can be easily managed.[48]

As to the second argument, Nationwide relies on *Castano,* which held that a class action asserting claims for death and serious injury caused by smoking and asserting novel liability theories was not superior to the trial of a number of individual cases which would make clear whether likely problems of predominance and manageability would constitute insurmountable obstacles to handling the claims on a classwide basis. *Castano v. American Tobacco Co.*, 84 F.3d 734, 747 (5th Cir. 1996). Crucially, *Castano* involved claims that: (i) were very large (because they were for death or serious injury) and therefore could and would likely be brought as individual suits absent a class action, (ii) involved injuries that were obvious and known to the potential class members, as was the obvious connection to smoking, and (iii) involved novel theories of liability. *Id.*

---

[48]   P. Mem. at 33-40, [Docket No. 129].

In contrast, as demonstrated by the lack of individual suits by Class members, the likelihood is that the overwhelming majority of Class members in this case have no awareness of Nationwide's revenue sharing practices and/or their illegality and would never even think to bring suit. Further, as previously explained, it is unrealistic to believe that the vast majority of Class members could or would bring suit, even given the availability of statutory attorneys' fees.[49] Nationwide simply ignores these compelling arguments.

Further, this case involves a well-established cause of action for breach of fiduciary duty under ERISA. While this case does present a unique factual context in which the breaches of fiduciary duty arise, that will certainly be true of almost every breach of fiduciary duty case, and courts routinely apply well-established law regarding ERISA on a classwide basis to the unique factual circumstances presented in their cases.[50] This is simply not a case involving novel theories of liability like those in *Castano*.

Finally, the efficiencies of resolving common issues in a single class action, rather than in repetitive individual trials, outweighs any interest of individual Class members in pursuing individual cases, given that any Class members that feel strongly about pursuing their own individual actions can opt out. For all these reasons, a class action is the superior alternative for resolving these issues.

---

[49]  P. Mem. at 37, [Docket No. 129].

[50]  *See, e.g., Bublitz v. E.I. du Pont de Nemours and Co.*, 202 F.R.D. 251 (S.D. Iowa 2001) (certifying class action brought for breach of fiduciary duty under ERISA); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386 (E.D. Pa. 2001) (same); *Koch v. Dwyer*, 2001 WL 289972 (S.D.N.Y. 2001) (same); *Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48 (S.D.N.Y. 2000) (same); *Westman v. Textron, Inc.*, 151 F.R.D. 229 (D. Conn. 1993) (same).

## VI.    CONCLUSION

Pursuant to its revenue sharing scheme, Nationwide accepts payments from mutual funds or their advisors based on a percentage of the investments of all the plans which compose the proposed Class. Nationwide did not contract with those plans to receive the revenue sharing payments. The overriding issues in this case are whether those payments constituted plan assets in Nationwide's hand and, if they did, whether Nationwide breached its fiduciary duty by retaining them.

The Court will decide these issues on a classwide basis, leaving only calculation of individual recoveries on a mechanical basis to finally resolve the case. For those reasons, the Court should certify this case to proceed as a class action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) despite Nationwide's attempts to complicate Plaintiffs' very basic claim for breach of fiduciary duty and restitution.

Respectfully submitted,

Antonio Ponvert, III
Federal Bar No. ct17516
Richard A. Bieder
Federal Bar No. ct04208

KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgeport, Connecticut 06604
203-336-4421
203-368-3244 (Fax)

Marc R. Stanley
Federal Bar No. ct18179
Roger L. Mandel
Federal Bar No. ct18180
Martin Woodward
Federal Bar No. ct25263

STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, Texas 75205
214-443-4300
214-443-0358 (Fax)


Gregory G. Jones
Federal Bar No. ct23443

LAW FIRM OF GREGORY G. JONES PC
603 S. Main Street, Suite 200
Grapevine, Texas 76051
817-424-9001
817-424-1665 (Fax)

**PLAINTIFFS' COUNSEL**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing were served this __30__ day of January, 2004, upon the following counsel via the methods indicated:

| | |
|---|---|
| Dennis F. Kerrigan, Jr.<br>LeBoeuf, Lamb, Greene & MacRae<br>Goodwin Square<br>225 Asylum Street<br>Hartford, CT  06103 | • • via certified mail, RRR<br>• • via fax 860/293-3555<br>• • via first-class, U.S. mail<br>• • via overnight delivery<br>• • via hand delivery |
| Charles C. Platt<br>Wilmer Cutler & Pickering<br>399 Park Avenue<br>New York, NY 10022 | • • via certified mail, RRR<br>• • via fax 212/230-8888<br>• • via first-class, U.S. mail<br>• • via overnight delivery<br>• • via hand deliver |
| Eric J. Mogilnicki<br>Wilmer Cutler & Pickering<br>2445 M Street, N.W.<br>Washington, D.C.  20037 | • • via certified mail, RRR<br>• • via fax 202/663-6363<br>• • via first-class, U.S. mail<br>• • via overnight delivery<br>• • via hand deliver |

Antonio Ponvert III