UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, EDWARD KAPLAN, as trustee of the Hartford Roofing 401(k) Profit Sharing Plan and the Hartford South, L.L.C. 401(k) Profit Sharing Plan, and DENNIS FERDON, as trustee of the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan, | § § § § § § § § § § § § § § § § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| v. | § | |
| | § | |
| NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO., | § § § | |
| | § | |
| DEFENDANTS. | § | |

CASE NO. 01-CV-1552 (SRU)

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FIFTH AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ................................................................................................. 1

A.   *NATIONWIDE ACTS AS A FIDUCIARY IN FOUR MANNERS* .........................................2

B.   *NATIONWIDE BREACHES ITS FIDUCIARY DUTIES IN THREE MANNERS* ...............3

C.   *ORGANIZATION OF THIS BRIEF* .......................................................................4

II.  PLAINTIFFS' SPECIFIC ACCUMULATION UNIT
     THEORY SURVIVES BECAUSE IT IS A VALID THEORY
     THAT NATIONWIDE DID NOT MOVE TO DISMISS ...............................................4

III. THE COURT HAS NO REASON TO RECONSIDER ITS
     HOLDING THAT NATIONWIDE CONSTITUTES A
     FIDUCIARY AS TO THE REVENUE SHARING PAYMENTS ..............................7

A.   *THE COURT HAS NO REASON TO RECONSIDER ITS CONCLUSIONS
     THAT THE FUNCTIONAL APPROACH EXISTS, SHOULD BE USED,
     AND MAKES THE REVENUE SHARING PAYMENTS PLAN ASSETS
     IN NATIONWIDE'S HANDS* ................................................................................8

1.   The Court Appropriately Used the Functional Approach ...................................8

2.   The Court's Two-Part Test Is Appropriate ......................................................10

3.   The Revenue Sharing Payments Undisputedly Constitute
     Plan Assets Under the Court's Two-Part Test ..................................................11

B.   *THE COURT HAS NO REASON TO RECONSIDER ITS HOLDING
     THAT NATIONWIDE CONSTITUTES A FIDUCIARY AS TO THE
     REVENUE SHARING PAYMENTS* ........................................................................11

IV.  THE COURT HAS NO REASON TO RECONSIDER ITS HOLDING
     THAT NATIONWIDE CONSTITUTES A FIDUCIARY UNDER THE
     MUTUAL FUND SELECTION THEORY .................................................................12

A.   *THE MUTUAL FUND SELECTION THEORY IS CORRECT* ..........................................12

B.   *PLAINTIFFS DID NOT WAIVE THE MUTUAL FUND SELECTION THEORY* .............15

V.   THE COURT SHOULD RECONSIDER AND HOLD THAT
     PLAINTIFFS ADEQUATELY PLEAD THAT NATIONWIDE
     CONSTITUTES A FIDICUARY PURSUANT TO THE GENERAL
     ACCUMULATION UNIT THEORY ..........................................................................18

i

**PAGE**

A.    *ONCE A PARTY BECOMES A FIDUCIARY AS TO PARTICULAR
      PLAN ASSETS, ALL ITS CONDUCT IN RELATIONSHIP TO THEM
      MUST MEET THE FIDUCIARY STANDARDS OF ERISA* .............................................18

1.    Significant Case Law Supports Plaintiffs' Position..........................................................19

2.    The Court's Holding Would Render ERISA § 406(b)(3) Ineffective as
      to Functional (Limited Purpose) Fiduciaries Under ERISA § (3)(21)(A).......................21

3.    The Only Case Cited by the Court in Support of Its Holding
      Does Not Support It .........................................................................................................23

B.    *NATIONWIDE NEED NOT EXERCISE DISCRETIONARY AUTHORITY
      OR CONTROL OVER THE ACCUMULATION UNITS TO CONSTITUTE
      A FIDUCIARY AS TO THOSE PLAN ASSETS*.................................................................24

VI.   **PLAINTIFFS PLEAD ERISA VIOLATIONS NOT
      CHALLENGED BY NATIONWIDE** ..........................................................................25

VII.  **THE COURT HAS NO REASON TO RECONSIDER ITS
      HOLDING THAT PLAINTIFFS ADEQUATELY PLEAD
      NATIONWIDE'S VIOLATION OF ERISA § 406(b)(3)** ...........................................25

VIII. **CONCLUSION** .........................................................................................................27

# INDEX OF AUTHORITIES

<u>CASE</u>                                                                                                  <u>PAGE(S)</u>

*Acosta v. Pacific Enterprises, Inc.*,
950 F.2d 611 (9th Cir. 1992) ...........................................................................................8

*Bannistor v. Ullman*,
287 F.3d 394 (5th Cir. 2002) ...........................................................................................9

*Blatt v. Marshall & Lassman*,
812 S. 2d 810 (2d Cir. 1987) ...........................................................................................15

*Board of Trustees of Brick Layers & Allied Craftsmen*
*Local 6 of N.J. Welfare Fund v. Wettlin Assoc., Inc.*,
237 F.3d 270 (3d Cir. 2001) ...............................................................................14, 24, 25

*Board of Trustees of the Air Conditioning and Refrigeration Industry*
*Health & Welfare Trust Fund v. J.R.D. Mechanical Services, Inc.*,
99 F. Supp. 2d 1115 (C.D. Cal. 1999) ............................................................................9

*Brink v. DaLesio*, 496 F. Supp. 1350 (D. Md 1980),
*aff'd in part and rev'd in part on other grounds*,
667 F.2d 420 (4th Cir. 1982) ....................................................................................21, 22

*Chicago Board Options Exchange, Inc. v. Connecticut Gen'l Life Ins. Co.*,
713 F.2d 254 (7th Cir. 1983) ...........................................................................................13

*Coldesina v. Estate of Simper*,
407 F.3d 1126 (10th Cir. 2005) ......................................................................................24

*Dugan v. Palumbo Bros., Inc.*,
1991 WL 55755 (N.D. Ill. April 8, 1991) ......................................................................16

*Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*,
805 F.2d 732 (7th Cir. 1986) ...........................................................................................13

*FDIC v. St. Paul Fire & Marine Ins. Co.*,
942 F.2d 1032 (6th Cir. 1991) .........................................................................................16

*FirsTier Bank, N.A. v. Zeller*,
16 F.3d 907 (8th Cir. 1994) .............................................................................................24

*Flanigan v. General Elec. Co.*,
242 F.3d 78 (2d Cir. 2001) ........................................................................................19, 23

*Guardsmark, Inc. v. Blue Cross & Blue Shield of Tenn.*,
313 F. Supp. 2d 739 (W.D. Tenn. 2004) ..............................................................14, 20, 21

**CASE**                                                                                                      **PAGE(S)**

*Health Care Service Corp. v. Tap Pharmaceutical Products, Inc.*,
2003 WL 21801636 (E.D. Tex. Aug. 1, 2003) ..................................................................12

*Inductotherm Indus., Inc. v. U.S.*,
351 F.3d 123 (3d Cir. 2003) ..........................................................................................18

*IT Corp. v. Gen'l American Life Ins. Co.*,
107 F.3d 1415 (9th Cir. 1997) ............................................................................. 13-14, 24

*Kayes v. Pacific Lumber Co.*,
51 F.3d 1449 (9th Cir. 1995) ............................................................................................8

*Lopresti v. Terwilliger*,
126 F.3d  34 (2d Cir. 1997) .........................................................................................9, 24

*Lowen v. Tower Asset Management, Inc.*,
829 F.2d 1209 (2d Cir. 1987) ......................................................................................7, 22

*Martin v. Feilin*,
965 F.2d 660 (8th Cir. 1992) ..........................................................................................23

*Metzler v. Solidarity of Labor Organizations Health & Welfare Fund*,
1998 WL 477964 (S.D.N.Y. Aug. 14, 1998), *aff'd sub nom., Herman v. Goldstein*,
224 F.3d 128 (2d Cir. 2000) .........................................................................................7, 8

*Midwest Community Health Service, Inc. v. American United Life Ins. Co.*,
255 F.3d 374 (7th Cir. 2001) ......................................................................................13, 20

*Mutual Life Ins. Co. of N.Y. v. Yampol*,
840 S.2d 421(7th Cir. 1988) ...........................................................................................15

*Patelco Credit Union v. Sahni*,
262 F.3d 897 (9th Cir. 2001) ......................................................................................9, 24

*Patterson v. Balsamico*,
440 F.3d 104 (2d Cir. 2006) ...........................................................................................16

*Reich v. Goldstein*,
839 F. Supp. 1068 (S.D.N.Y. 1993) ..............................................................................8, 9

*Reilly v. New England Teamsters & Trucking Indus. Pension Fund*,
737 F.2d 1274 (2d Cir. 1984) ..........................................................................................16

*Sinicropi v. Milone*, 915 F.2d 66 (2d Cir. 1990) ..........................................................16

*Skaraborg Invest USA, Inc. v. U.S.*, 9 F. Supp. 2d 706 (C.I.T. 1998) ..........................18

iv

**CASE**                                                                                  **PAGE(S)**

*Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67 (2d Cir. 1988) ......................................18

*U.S. v. Glick*, 142 F.3d 520 (2d Cir. 1998) ...........................................................................9

*U.S. v. Grizzle*, 933 F.2d 943 (11th Cir. 1991) ....................................................................9

*U.S. v. Labarbara*, 129 F.3d 81 (2d Cir. 1997) ....................................................................9

*U.S. v. Sixty Thousand Dollars ($60,000.00) in U. S. Currency*,
763 F. Supp. 909 (E.D. Mich. 1991) ..................................................................................18

*Waldorff v. Borough F. Kenilworth*,
878 F. Supp. 686 (D.N.J. 1995) ........................................................................................16

*Yesta v. Baima*,
837 F.2d 380 (9th Cir. 1988) ...........................................................................................12

## STATUTES AND RULES

ERISA § 3(21)(A) ...................................................................................................2, 6, 21, 24

ERISA § 3(21)(A)(i) ........................................................................................................22

ERISA § 404(a)(1)(A) ...............................................................................................3, 4, 25

ERISA § 404(a)(1)(B) ...............................................................................................3, 4, 25

ERISA § 406(b)(1) ....................................................................................................3, 4, 25

ERISA § 406(b)(3) ..............................................................................3, 4, 11, 21, 22, 25, 26

29 U.S.C. § 1002(21)(A) ..............................................................................................2, 6, 24

29 U.S.C. § 1106(b) ..........................................................................................................7

29 U.S.C. § 1106(b)(3) ............................................................................................11, 21, 22

## DOL ADVISORY OPINIONS

DOL Advisory Opinion 97-16A, 1997 WL 277979 ..................................................................14

DOL Advisory Opinion 97-15A, 1997 WL 277980 ..................................................................14

DOL Advisory Opinion 2003-09A (June 25, 2003) .................................................................26

I.    **INTRODUCTION**.

In its motion to dismiss, Nationwide fails to ask the Court to dismiss Plaintiffs' Fifth Amended Class Action Complaint ("Complaint") [Docket No. 270] in its entirety, and it fails to offer any persuasive reasons as to why the Court should reconsider any of its holdings in its Memorandum of Decision filed February 24, 2006 ("Order") [Docket No. 263].  Accordingly, the Court should deny the motion to dismiss in its entirety and allow this case to proceed to class certification and then to decision on the merits after so many years spent at the pleading stage.

The Motion to Dismiss the Complaint is a direct effort by Nationwide to relitigate its motion for summary judgment rejected by the Court in the Order.  It bears emphasizing the issues previously presented to, and resolved in Plaintiffs' favor by, this Court.  The core of the Court's prior holding was as follows:

> The Trustees present two theories of liability to support their allegations.  First, they propose a functional approach to defining ERISA "plan assets" and argue that, under that approach, the payments at issue constitute plan assets that are being retained by Nationwide in violation of ERISA.  Second, the Trustees argue that Nationwide violates ERISA by 'generat[ing] the revenue-sharing payments by agreeing with mutual fund families that it will offer their funds in its variable accounts and that, in return, the mutual fund families will pay to Nationwide a percentage of the Plans' investments in their funds.'  Pl. Supp. Response (doc. #246) at 1.  In other words, the Trustees contend that Nationwide engages in a quid pro quo arrangement with the mutual funds, agreeing to include their funds as investment options for the Plans in exchange for the revenue-sharing payments.
>
> Nationwide disputes the characterization of the challenged payments as "plan assets" and the extent, if any, of its fiduciary duties.
>
> I conclude that the Trustees have raised triable issues of fact with respect to Nationwide's status as a fiduciary, their claim that the challenged payments constitute "plan assets" under a functional approach, and the character of the so-called service contracts as prohibited transactions.  Accordingly, I deny Nationwide's motion for summary judgment.

Order at 11-12.

In the Complaint, Plaintiffs conform their pleadings to the rulings of this Court.  The Complaint puts forward in clear fashion the bases for the factual allegations of the breach of

fiduciary duty. Thus, Plaintiffs distinctly plead four different manners in which Nationwide acts

as a fiduciary as to assets of the Plans--three as to the accumulation units and one as to the

revenue sharing payments. Not only do these claims conform to the rulings already made in the

Order, but notably Nationwide only requests dismissal as to three of those four manners in its

Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Fifth Amended

Class Action Complaint ("Memorandum") [Docket No. 277]. Likewise, Plaintiffs distinctly

plead three different manners in which Nationwide breaches its fiduciary duties, and Nationwide

only seeks dismissal as to one of those manners. Accordingly, even if the Court were to grant

the motion to dismiss in its entirety (which it most definitely should not), Plaintiffs will still have

pled a valid cause of action for violation of ERISA against Nationwide.

A.    *NATIONWIDE ACTS AS A FIDUCIARY IN FOUR MANNERS.*

Plaintiffs plead that Nationwide is a fiduciary under ERISA § 3(21)(A), 29 U.S.C. §

1002(21)(A), as to the accumulation units because they are plan assets over which Nationwide

exercises authority or control respecting their management or disposition in at least three

different manners, including:

> (1)    by using its custody and control of them to obtain the revenue sharing
>        payments from the mutual funds ("the specific accumulation unit theory");
>
> (2)    by controlling which mutual funds are available investment options for the
>        Plans and their participants ("the mutual fund selection theory"); and
>
> (3)    by virtue of all the actions it can and does take as to them pursuant to its
>        annuity contracts with the Plans or their participants ("the general
>        accumulation unit theory").

Complaint §§ 25, 27, 35, 41-44 & 54.

Each of these theories survives the motion to dismiss. Initially, the Court did not address

the specific accumulation unit theory in its Order, and Nationwide failed to attack this theory in

the Memorandum. Accordingly, it survives no matter how the Court rules on the motion to

dismiss.[1]  Next, the Court specifically upheld the mutual fund selection theory in the Order at 12-17.  In the Memorandum at 3-19, Nationwide essentially asks the Court to reconsider this ruling.  Plaintiffs will demonstrate that Nationwide has given this Court no valid basis to even contemplate reconsidering its ruling.  Finally, as to the accumulation units, the Court rejected the general accumulation unit theory in the Order at 17-18.  Plaintiffs will provide ample reasons to justify the Court reconsidering this ruling.

Plaintiffs plead in the Complaint that, in addition to constituting a fiduciary as to the accumulation units, Nationwide constitutes a fiduciary as to the revenue sharing payments themselves because they constitute plan assets in Nationwide's hands (under the functional approach) over which Nationwide exercises control or authority respecting their management or disposition by arranging for, accepting and retaining them ("the revenue sharing payments theory").  Complaint ¶¶ 27, 30, 32, 41-44, 55 & 56.  In the Order at 18-26, the Court upheld Plaintiffs' prior pleading of this theory.  In the Memorandum at 21-3, Nationwide asks the Court to reconsider this ruling.  Plaintiffs will demonstrate that Nationwide has provided no basis for the Court to reconsider.

B.    *NATIONWIDE BREACHES ITS FIDUCIARY DUTIES IN THREE MANNERS.*

In the Complaint, Plaintiffs plead three separate violations of ERISA by Nationwide:

(1) violation of ERISA § 404(a)(1)(A) and (B);

(2) violation of ERISA § 406(b)(1); and

(3) violation of ERISA § 406(b)(3).

Complaint ¶¶ 57-59.

In the Order, the Court addressed only ERISA § 406(b)(3), holding Plaintiffs sufficiently pled its violation.  Order at 25-26.  In the Memorandum at 24-26, Nationwide only requests the

---

[1] Despite Nationwide's failure to address this theory, Plaintiffs will demonstrate its validity.

Court to reconsider its ruling on § 406(b)(3), ignoring the two other violations pled by Plaintiffs. Accordingly, regardless of the Court's ruling on the motion to dismiss, Plaintiffs will be entitled to continue to pursue the other two violations, and Plaintiffs will demonstrate that Nationwide has not provided a valid basis for the Court to reconsider its ruling on the § 406(b)(3) violation.

C.    *ORGANIZATION OF THIS BRIEF.*

Below, Plaintiffs will address their four theories as to how Nationwide constitutes a fiduciary from the simplest to the most difficult. Then, Plaintiffs will address their theories as to how Nationwide violated ERISA. In doing so, Plaintiffs will demonstrate that Nationwide's motion to dismiss the Complaint should be denied in its entirety. At a minimum, the Court should conclude that, because Nationwide did not challenge them in its motion to dismiss, Plaintiffs may continue to pursue their specific accumulation unit theory as to how Nationwide constitutes a fiduciary and their claims that Nationwide violates ERISA §§ 404(a)(1)(A) and (B) and 406(b)(1) by arranging for, receiving and retaining the revenue sharing payments.

**II.    PLAINTIFFS' SPECIFIC ACCUMULATION UNIT THEORY SURVIVES BECAUSE IT IS A VALID THEORY THAT NATIONWIDE DID NOT MOVE TO DISMISS.**

Plaintiffs plead that in return for their contributions, which are plan assets, the Plans and their participants receive accumulation units (shares) of the applicable sub-accounts of the variable accounts, which accumulation units are held by Nationwide and also constitute plan assets. Complaint ¶ 27. Thus, Plaintiffs effectively plead that the accumulation units merely constitute an accounting measure of the value of a Plan's or participant's investment held by Nationwide. Nationwide has previously conceded both the accumulation units' status as plan assets and as a mere accounting measure of a Plan's or participant's investment.[2]

---

[2] Supplemental Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Supp. Mem.") [Docket No. 239] at 15-18.

Plaintiffs further plead that Nationwide enters into written contracts with mutual fund families that provide that Nationwide will offer those families' funds in its variable accounts for investment in by the Plans and their participants and that the mutual fund families will, in return, pay to Nationwide a percentage of the Plans' and participants' investments in those mutual funds taken from the Plans and their participants as fees. Complaint ¶¶ 35 & 41-44. Thus, Plaintiffs plead that Nationwide exercises authority or control respecting the management or disposition of plan assets (the accumulation units, which are merely accounting measures of the Plans' and participants' investments) by using them to obtain the revenue sharing payments from the mutual fund families. Complaint ¶ 54.

The Court did not address this specific accumulation unit theory in the Order. Nationwide did not attack this theory in its motion to dismiss or Memorandum. Accordingly, it is not subject to the motion to dismiss, entitling Plaintiffs to continue with this case regardless of how the Court rules on the motion to dismiss. Although this should end the matter, given that Nationwide has no right to attack this theory for the first time in its reply, Plaintiffs will show the Court that this theory is well taken.

Nationwide uses its control over and custody of the Plans' and their participants' investments (represented by and accounted for as accumulation units) to obtain the revenue sharing payments from the mutual fund families. If Nationwide did not have control over and custody of the Plans' investments and did not facilitate their placement in the mutual funds, and if Nationwide did not condition the mutual funds' access to those investments upon payment of revenue sharing, the mutual fund families would not make the payments. Simply put, Nationwide uses the Plans' and their participants' investments (the accumulation units) to generate the revenue sharing payments, and that use of those investments by Nationwide constitutes an exercise of authority or control by Nationwide over their management or

disposition sufficient to make it a fiduciary as to that use of the accumulation units.[3]

Two examples make this clear. First, suppose Nationwide had pledged the accumulation units as collateral for a loan which it successfully repaid. While such action would not have ultimately harmed the investments of the Plans in any way, Nationwide's pledging of the accumulation units to obtain loan proceeds in this manner surely would have constituted an exercise of authority or control over their management or disposition sufficient to make it a fiduciary for this purpose. Likewise, using the accumulation units to obtain the revenue sharing payments constitutes the exercise of authority or control over their management or disposition.

Second, consider a party which had contracted to store a piece of art for an ERISA plan. If it publicly displayed the art and charged admission to see it, it would exercise authority or control over the management or disposition of the art. Indeed, Nationwide has conceded this point.[4] Nationwide's use of the investments of the Plans and their participants (represented by the accumulation units) to generate the revenue sharing payments from the mutual fund families is exactly analogous.

In summary, by implicitly or explicitly making payment of revenue sharing a condition for mutual fund families to have their funds offered to the Plans and their participants, Nationwide used the investments of the Plans and their participants to generate the revenue sharing payments. This constitutes the exercise of authority or control over the management or disposition of those plan assets (accumulation units), making Nationwide a fiduciary as to them.

---

[3] This theory does not possibly run afoul of the "to the extent" requirement of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because the very same acts of control and authority over the accumulation units by Nationwide that make it a fiduciary also constitute the violation of ERISA.

[4] Supp. Mem. [Docket No. 239] at 13-14.

### III.  THE COURT HAS NO REASON TO RECONSIDER ITS HOLDING THAT NATIONWIDE CONSTITUTES A FIDUCIARY AS TO THE REVENUE SHARING PAYMENTS.

In holding that the revenue sharing payments constitute plan assets in Nationwide's hands, this Court noted that courts have used two approaches to determining whether items not covered by a statute or regulation constitute "plan assets": (1) a documentary test, focusing on the documents governing the plan and the relationships between the parties; and (2) a functional test, focusing on whether the item in question may be used to benefit the fiduciary at the expense of plan participants or beneficiaries.  Order at 20, *quoting Metzler v. Solidarity of Labor Organizations Health & Welfare Fund*, 1998 WL 477964, *5 (S.D.N.Y. Aug. 14, 1998), *aff'd sub nom., Herman v. Goldstein*, 224 F.3d 128 (2d Cir. 2000).

The Court then held that using a functional approach to defining "plan assets" in this case to determine whether the revenue sharing payments constitute plan assets in Nationwide's hands is appropriate based upon the Second Circuit's holding that § 1106(b) must be broadly construed. Order at 22, *citing Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987), and *Metzler*, 1998 WL 477964 at *7.  The Court finally held that a two-part test should be used under the functional approach and that Plaintiffs' claims survive under this test.  Order at 23-4.

In the Memorandum at 21-3, Nationwide half-heartedly asks the Court to reconsider its holdings.  First, without citing any new authorities or providing any new reasoning, Nationwide futilely argues yet again that no functional approach exists to determining what items constitute plan assets.  Memorandum at 21-2.  Then, it argues that even if a functional approach is appropriate to analyze this issue, the Court's two-part test is too broad and ambiguous to be workable or fair and is circular.  Memorandum at 22-3.  The Court should summarily reject these unsupported attacks.

Notably, Nationwide does not contend that Plaintiffs have failed to plead in the Complaint that the revenue sharing payments constitute plan assets in its hands under the Court's two-part test. Furthermore, Nationwide does not challenge the Court's implicit holding that by pocketing the revenue sharing payments, Nationwide exercises sufficient authority or control over their management or disposition to make it a fiduciary as to them. Consequently, Plaintiffs sufficiently plead in the Complaint that Nationwide constitutes a fiduciary as to the revenue sharing payments (in addition to constituting a fiduciary as the accumulation units).

A.  *THE COURT HAS NO REASON TO RECONSIDER ITS CONCLUSIONS THAT THE FUNCTIONAL APPROACH EXISTS, SHOULD BE USED, AND MAKES THE REVENUE SHARING PAYMENTS PLAN ASSETS IN NATIONWIDE'S HANDS.*

1.  The Court Appropriately Used the Functional Approach.

Contrary to Nationwide's assertion, courts overwhelmingly use the functional approach to determine whether an asset constitutes a plan asset under ERISA as well as to determine whether a person exercises authority or control over a plan asset. As the Ninth Circuit stated, "This court has adopted a broader functional definition of what constitutes an 'asset of the plan' for purposes of § 406." *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1466 (9th Cir. 1995). Indeed, as the Court noted in the Order, it is generally accepted that courts have adopted two approaches, including the functional approach. Order at 20.

Nationwide criticizes the discussions of the functional approach in *Acosta v. Pacific Enterprises, Inc.*, 950 F.2d 611 (9th Cir. 1992), and *Metzler* cited by the Court as mistaken dicta, and further argues that the holdings in *Metzler*, 1998 WL 477964 at *6-7, and *Reich v. Goldstein*, 839 F. Supp. 1068, 1073 (S.D.N.Y. 1993), that employee and employer contributions constitute plan assets somehow do not reflect use of the functional approach. Memorandum at 22. Unfortunately for Nationwide, the court in *Metzler* separately and explicitly applied the

functional approach (after first applying the documentary approach),[5] and the court in *Reich* did not refer to any plan documents or any rule or regulation that could provide a basis for its holding, leaving only the functional approach. Furthermore, using the functional approach, multiple cases have held that employee and employer contributions constitute plan assets.[6]

Significantly, the holding of *Patelco Credit Union v. Sahni*, 262 F.3d 897, 902 (9th Cir. 2001), can only have been based upon the functional approach. In that case, the Ninth Circuit held that two checks for stop-loss benefits that an insurance company had made payable to the employer and not to the plan constituted plan assets in the employer's hands under the functional approach despite the fact that the checks did not constitute plan assets in the hands of the insurance company, were not derived from or traceable back to any plan assets, and were not defined by any plan documents as plan assets. *Id.* at 908-9.

Similarly, in *Bannistor*, the Fifth Circuit held that loan advances from a bank to the employer made after the employer failed to deliver employee contributions to the plans constituted plan assets in management's hands because those loans or advances could have been used to make the contributions that were owed (benefiting the plans). 287 F.3d at 405-6. The funds which made up the loan advances did not constitute plan assets in the hands of the bank, could not be traced back to plan assets, were not derived in any sense from plan assets, and were not defined by plan documents as plan assets. *Id.* Nevertheless, they constituted plan assets under the functional approach.

In short, overwhelming authority supports the Court's recognition of and use of the functional approach, while none supports the limited view of plan assets propounded by Nationwide. Accordingly, the Court has no reason to reconsider its use of the functional

---

[5] When a court holds that two different approaches justify its decision, neither holding constitutes mere dicta.
[6] *Bannistor v. Ullman*, 287 F.3d 394, 402 (5th Cir. 2002); *U.S. v. Glick*, 142 F.3d 520, 527 (2d Cir. 1998); *U.S. v. Labarbara*, 129 F.3d 81, 88 (2d Cir. 1997); *Lopresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir. 1997); *U.S. v. Grizzle*, 933 F.2d 943, 947 (11th Cir. 1991); *Board of Trustees of the Air Conditioning and Refrigeration Industry Health & Welfare Trust Fund v. J.R.D. Mechanical Services, Inc.*, 99 F. Supp. 2d 1115, 1120 (C.D. Cal. 1999).

approach.

2.    The Court's Two-Part Test Is Appropriate.

Recognizing the futility of its general attack on the functional approach, Nationwide specifically attacks the Court's two-part functional approach test by claiming it is too broad and ambiguous to be workable or fair. It claims that fiduciaries receive many "benefits" through the exercise of fiduciary discretion or authority that arguably or indirectly come "at the expense of" a plan which allegedly should not be considered plan assets but would be so considered under the Court's two-part test. As an example it gives advisory fees paid by a plan to a fiduciary investment advisor. Memorandum at 22-3.

Nationwide's criticism is mystifying, as its example proves perfectly the appropriateness of the Court's two-part test. Where a fiduciary investment advisor has entered into a written contract with a plan to provide investment advice in return for payment, such a payment is not made "at the expense of" the plan, because the plan has received consideration in the form of investment advice. Thus, under the functional approach, the payment received by the financial advisor does not constitute plan assets in his hands, even though it previously constituted plan assets in the hands of the plan. In contrast, under the documentary and asset tracing approach advocated by Nationwide, that payment would still constitute plan assets in the hands of the investment advisor. Simply put, the Court's two-part test for the functional approach reaches the correct result as to Nationwide's example, while Nationwide's suggested alternative does not.

Nationwide also complains that the Court's two-part test is circular because its pocketing of the revenue sharing payments only makes it an ERISA fiduciary as to those payments if they constitute plan assets and the two-part test depends upon whether Nationwide received the revenue sharing payments as a result of its status as an ERISA fiduciary. Memorandum at 23. Nationwide's criticism has no merit, because the Court did not utilize the test in such a circular

manner.  The Court held that Plaintiffs had alleged that Nationwide received the revenue sharing payments as a result of its exercise of fiduciary discretion or authority based upon allegations other than its pocketing of the revenue sharing payments--its exercising authority or control over the disposition of the retirement contributions (as represented by the accumulation units) by offering funds as investment options to the Plans and participants in exchange for the payments.[7] Order at 24.

3.    The Revenue Sharing Payments Undisputedly Constitute Plan Assets Under the Court's Two-Part Test.

Notably, Nationwide does not challenge that, if the Court's two-part test for application of the functional approach is correct, Plaintiffs have successfully alleged in the Complaint that the revenue sharing payments constitute plan assets under that test.  Accordingly, the Court must deny the motion to dismiss as to this issue.

B.    *THE COURT HAS NO REASON TO RECONSIDER ITS HOLDING THAT NATIONWIDE CONSTITUTES A FIDUCIARY AS TO THE REVENUE SHARING PAYMENTS.*

After holding that the revenue sharing payments constitute plan assets in Nationwide's hands, the Court did not explicitly address in the Order whether Nationwide exercises sufficient authority or control over their management or disposition to constitute a fiduciary as to them.  However, by holding that Plaintiffs had sufficiently pled that Nationwide engaged in prohibited transactions in violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), the Court implicitly made such a holding.  Order at 25-6.

In any case, no doubt exists but that Plaintiffs have sufficiently alleged such exercise of authority and control.  Plaintiffs plead that Nationwide "pockets" the revenue sharing payments.  Nationwide could not possibly exercise greater authority or control over the management or

_____

[7] The exact same analysis applies to Nationwide's exercise of fiduciary discretion or authority over the accumulation units by using them to generate the revenue sharing payments.

disposition of plan assets than by pocketing them. *See Yesta v. Baima*, 837 F.2d 380, 386 (9th Cir. 1988) (defendant who withdrew plan funds from account for benefit of third parties exercised authority or control over them and became a fiduciary as to them); *Health Care Service Corp. v. Tap Pharmaceutical Products, Inc.*, 2003 WL 21801636, at *4 (E.D. Tex. Aug. 1, 2003) (pharmaceutical company which received overpayments from plans and kept them, rather than returning them, constituted fiduciary as to those overpayments).

Recognizing this, Nationwide fails to contend in the Memorandum that it does not constitute a fiduciary as to the revenue sharing payments if they constitute plan assets in its hands. As a consequence, the Court should deny the motion to dismiss in this regard and hold that Plaintiffs have sufficiently alleged that Nationwide constitutes a fiduciary as to the revenue sharing payments.

## IV. THE COURT HAS NO REASON TO RECONSIDER ITS HOLDING THAT NATIONWIDE CONSTITUTES A FIDUCIARY UNDER THE MUTUAL FUND SELECTION THEORY.

### A. THE MUTUAL FUND SELECTION THEORY IS CORRECT.

The Court articulated the mutual fund selection theory in the Order at 15-17. Correspondingly, Plaintiffs plead in the Complaint that under its annuity contracts with the Plans, Nationwide has the unilateral right to cease offering mutual funds chosen by participants and substitute other funds in their place and that Nationwide actually did so on some occasions. Complaint ¶ 25. Plaintiffs further plead that the variable accounts in which Nationwide places the investments of the Plans and their participants are divided into sub-accounts corresponding to the different mutual funds and that the Plans and their participants received accumulation units of those sub-accounts. Complaint ¶ 27. Consequently, Plaintiffs plead that Nationwide has the unilateral right to exchange accumulation units in one sub-account (representing an investment in a mutual fund chosen by a Plan or its participant) for accumulation units in another sub-account

(representing an investment in a mutual fund chosen by Nationwide) and that it has actually done so on some occasions.  Complaint ¶¶ 25 & 27.

As the Court noted, the power to invest the contributions of the Plans and their participants in particular mutual funds constitutes power over their disposition.  Order at 15. Consequently, it is beyond argument that each and every time it unilaterally changed a Plan's or participant's investments by substituting accumulation units corresponding to a mutual fund chosen by it for accumulation units corresponding to a mutual fund chosen by the Plan or participant, Nationwide exercised control over those accumulation units.[8]

Significantly, case law provides that Nationwide's contracting for this power to change the investments of the Plans and their participants constitutes the exercise of authority or control over their management or disposition regardless of whether Nationwide actually utilizes the power.  For example, in *Chicago Board Options Exchange, Inc. v. Connecticut Gen'l Life Ins. Co.*, the Seventh Circuit held that the insurance company's "power to amend" the annuity contract that it issued to the ERISA plan made it an ERISA fiduciary.  713 F.2d 254, 260 (7th Cir. 1983).  Similarly, three years later, the Seventh Circuit again held that an insurance company's "power to amend" an annuity contract issued to an ERISA plan made it an ERISA fiduciary.  *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 738 (7th Cir. 1986).  As the Seventh Circuit later summarized, "We have twice held that an insurer's discretionary authority or control over group insurance contracts purchased by employee benefit plans subjects the insurer to ERISA fiduciary standards."  *Midwest Community Health Service, Inc. v. American United Life Ins. Co.*, 255 F.3d 374, 376 (7th Cir. 2001) (so holding for a third time).

To similar effect is *IT Corp. v. Gen'l American Life Ins. Co.*, in which the Ninth Circuit held that, "The *right to* write checks on plan funds is 'authority or control respecting

---

[8]     It does not matter whether the fund substituted by Nationwide was one that Nationwide chose without any input from the Plan or was another fund from the Plan's approved list.  Either way, Nationwide changed the disposition of the Plan's or participant's investments.

management or disposition of its assets.'" 107 F.3d 1415, 1421 (9th Cir. 1997) (emphasis

added). The Third Circuit held the same in *Board of Trustees of Brick Layers & Allied*

*Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assoc., Inc. ("Wettlin")*, 237 F.3d 270, 275

(3d Cir. 2001). As one district court put it, "When a person is *authorized to* draw checks on a

plan's account, that person necessarily exercises control over the disposition of plan assets."

*Guardsmark, Inc. v. Blue Cross & Blue Shield of Tenn.*, 313 F. Supp. 2d 739, 750 (W.D. Tenn.

2004) (emphasis added).

Pursuant to these cases, Nationwide's power to alter a Plan's investments by substituting

accumulation units in one sub-account (representing shares of a particular mutual fund chosen by

it) for accumulation units in another sub-account (representing investments in another mutual

fund chosen by the Plan or its participant) makes it a fiduciary as to all the accumulation units of

Plaintiffs and all of the other Plans. As noted by the Court in the Order at 16, two separate

Department of Labor Advisory Opinions held exactly that. Department of Labor ("DOL")

Advisory Opinion 97-16A, 1997 WL 277979; DOL Advisory Opinion 97-15A, 1997 WL

277980.

To no avail, Nationwide attempts to distinguish *one* of the *two* DOL Opinions, DOL

Advisory Opinion 97-16A, on the basis that its ability to substitute funds is allegedly more

limited than that of Aetna in that Opinion. Memorandum at 18-19. As Nationwide concedes, it

has the contractual power to substitute funds in two circumstances: (1) "[i]f the shares of the

Fund should no longer be available for investment by the separate account", or (2) "if, in the

judgment of the Company, further investment in the shares of the Fund should become

inappropriate in view of the purposes of the Contract…." Memorandum at 14. Of course, in

Nationwide's judgment, further investment in a particular mutual fund could become

inappropriate in view of the purposes of the annuity contract for any number of reasons,

including that the fund refuses to pay revenue sharing.  Simply put, this "limitation" is so vague as to constitute no limitation at all.

Perhaps recognizing the futility of its arguments as to the group annuity contracts, Nationwide notes multiple times that the individual annuity contracts do not contain similar fund substitution clauses.  Memorandum at 14 & 20.  Nationwide neglects to inform the Court, as it honestly revealed in an early pleading in this case, that in the individual annuity prospectuses, it reserves the right to substitute mutual funds subject only to prior approval of the SEC:

> There is a clause in the individual annuity prospectus that is in some respect analogous to the share substitution clause found in the group contracts, but it states:  'no substitution of securities in the Variable Account may take place without prior approval of the SEC, and under such requirements as it may impose.'

Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint [Docket No. 34] at 14-15.[9]

In summary, Nationwide has provided no basis for this Court to reconsider the merits of the mutual fund selection theory.

B.     *PLAINTIFFS DID NOT WAIVE THE MUTUAL FUND SELECTION THEORY.*

Plaintiffs will not individually address each letter, discovery response and pleading referenced by Nationwide in the Memorandum.  Rather, consistent with those documents, they will explain that their intent was never to give up the right to argue that Nationwide's power to substitute and delete funds made it a fiduciary for purposes of Plaintiffs' claims regarding the revenue sharing payments.  Since waiver is the "intentional relinquishment of a known right,"

---

[9]     The fact that the SEC has approval over substitutions does not mean that Nationwide's right to substitute funds no longer amounts to an exercise of authority to control sufficient to make it a fiduciary, because a party is a fiduciary to the extent it exercises **any** authority or control over the disposition of a plan asset.  *Mutual Life Ins. Co. of N.Y. v. Yampol*, 840 S.2d 421, 425 (7th Cir. 1988).  *See also Blatt v. Marshall & Lassman*, 812 S. 2d 810, 812 (2d Cir. 1987) ("[a]n entity need not have absolute discretion with respect to the benefit plan in order to be considered a fiduciary.")

this should more than suffice.[10]  *Patterson v. Balsamico*, 440 F.3d 104, 112 (2d Cir. 2006).

In Plaintiffs' First Amended Class Action Complaint ("First Complaint") [Docket No. 4], Plaintiffs alleged two causes of action:  the current revenue sharing claim in Count I and claims specifically based upon fund selection in Count II.  Judge Droney upheld both causes of action. Order Denying Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint entered September 11, 2002.  Notwithstanding Judge Droney's affirmance of Count II, Plaintiffs concluded that an allegation that "Plaintiffs lost money because Nationwide chose inferior mutual funds which paid Nationwide greater payments" would be difficult, if not impossible, to have certified for class treatment and to establish at trial.  Consequently, Plaintiffs decided to drop Count II and refused to answer discovery requests directed to that Count. Consistent with that decision, Plaintiffs' Second Amended Class Action Complaint ("Second Complaint") [Docket No. 64] dropped Count II.

By these actions, Plaintiffs intended only to forever abandon a separate, unique cause of action alleging that Nationwide chose the mutual funds available to the Plans not based upon their superior performance, but rather upon the amount of revenue sharing they were willing to pay, such that the Plans received lower rates of returns than they would have received had Nationwide picked the funds based on their performance.  Abandonment of a cause of action for damages based directly on fund selection is not the same as abandonment of a claim that Nationwide constitutes a fiduciary for purpose of Plaintiffs' revenue sharing claim based upon the mutual fund selection theory.  The revenue sharing claim seeks disgorgement of the revenue sharing payments, making it independent of a claim based upon a comparison between the

---

[10]  Nationwide attempts to take this issue beyond waiver by citing to a number of cases enforcing stipulations. Those cases all involved formal written stipulations signed by the parties and filed with the court, which is not the case here.  *See FDIC v. St. Paul Fire & Marine Ins. Co.*, 942 F.2d 1032, 1038 (6th Cir. 1991); *Sinicropi v. Milone*, 915 F.2d 66, 67-8 (2d Cir. 1990); *Reilly v. New England Teamsters & Trucking Indus. Pension Fund*, 737 F.2d 1274, 1278 (2d Cir. 1984); *Waldorff v. Borough F. Kenilworth*, 878 F. Supp. 686, 688-9 (D.N.J. 1995); *Dugan v. Palumbo Bros., Inc.*, 1991 WL 55755, at *1 (N.D. Ill. April 8, 1991).

performance of one group of funds and another which might have been picked had the funds made available by Nationwide been different.

Despite Plaintiffs dropping Count II in the Second Complaint, Nationwide continued to ask for discovery about and to make arguments based upon that cause of action because the Second Complaint still referenced in its statement of the facts that Nationwide selected funds for inclusion in the contracts and had the power to delete and substitute funds. In a series of letters, Plaintiffs merely sought to reassure Nationwide that it did not intent to prove damages based upon any claim that Plaintiffs suffered loss caused by Nationwide's fund selection. Plaintiffs did not thereby waive any claim that Nationwide constitutes a fiduciary because it has the contractual power to substitute and delete funds and that threatened use of that power to secure the revenue sharing payments from the mutual funds violated its fiduciary obligations under ERISA.

Plaintiffs' Third Amended Class Action Complaint [Docket No. 95] and Plaintiffs' Fourth Amended Class Action Complaint [Docket No. 235] were consistent with this intent. By removing the claim for damages resulting from Nationwide's fund selection from these complaints, Plaintiffs did not intend to give up the mutual fund selection theory as articulated by the Court and currently pleaded in the Complaint.

Even if the Court were to entertain an argument of waiver, the critical element of detrimental reliance would be missing. Given the current status of the case, Nationwide has no legitimate claim that it has been prejudiced by any confusion in this regard. At its own request, this case is back at the pleading stage, focused on the Complaint. The case has effectively started over as a result.

As a consequence, the briefing relating to prior complaints is not relevant.  Likewise, prior discovery is not relevant,[11] since the Court must take the allegations of the Complaint as true in ruling on the motion to dismiss.  Simply put, the Complaint brings the live pleadings into conformity with this Court's dispositive ruling, and Nationwide is simply not prejudiced by anything that occurred previously.[12]

Because Plaintiffs did not waive the mutual fund selection theory, and because Nationwide is not prejudiced by Plaintiffs pleading it in the Complaint, the Court should reject Nationwide's waiver argument.

## V.  THE COURT SHOULD RECONSIDER AND HOLD THAT PLAINTIFFS ADEQUATELY PLEAD THAT NATIONWIDE CONSTITUTES A FIDICUARY PURSUANT TO THE GENERAL ACCUMULATION UNIT THEORY

*A.    ONCE A PARTY BECOMES A FIDUCIARY AS TO PARTICULAR PLAN ASSETS, ALL ITS CONDUCT IN RELATIONSHIP TO THEM MUST MEET THE FIDUCIARY STANDARDS OF ERISA.*

To the extent Plaintiffs ultimately prevail on the specific accumulation unit theory, the general accumulation unit theory will become unnecessary.  However, out of an abundance of caution, Plaintiffs desire to preserve the general accumulation unit theory.  Accordingly, they ask the Court to reconsider its rejection of the theory in the Order at 14 and 17-18.

Plaintiffs plead that Nationwide exercises authority or control respecting the management or disposition of the accumulation units by virtue of all the actions that it can and does take as to them pursuant to its annuity contract with the Plans or their participants, including holding them for the benefit of the Plans, cancelling them to pay its fees, transferring them to use as collateral

---

[11]    Even if prior discovery is relevant, Nationwide has not been prejudiced, as all information about its substitution of funds is in its possession.  There is nothing Plaintiffs can tell it that it doesn't already know.  For example, none of the Plaintiffs has any knowledge of substitutions that they could have testified about during their depositions.

[12]    None of the waiver cases cited by Nationwide were at the motion to dismiss stage.  *See Inductotherm Indus., Inc. v. U.S.*, 351 F.3d 123 (3d Cir. 2003); *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67 (2d Cir. 1988); *Skaraborg Invest USA, Inc. v. U.S.*, 9 F. Supp. 2d 706 (C.I.T. 1998); *U.S. v. Sixty Thousand Dollars ($60,000.00) in U. S. Currency*, 763 F. Supp. 909 (E.D. Mich. 1991).

for loans, cancelling them to pay loans, cancelling them to purchase annuities and cancelling them to make cash payments. Complaint ¶ 54. Plaintiffs' theory is that once a party becomes a fiduciary as to particular plan assets, all of its conduct in connection with those plan assets must meet the fiduciary standards of ERISA, even if the conduct in question would not, by itself, make the party a fiduciary as to those assets.

In rejecting this theory, the Court held that "fiduciary duties are linked to actions, not particular assets" (Order at 14), such that Nationwide would not automatically act as a fiduciary in accepting the revenue sharing payments just because it acted as a fiduciary in regard to other actions that it took as to the accumulation units (Order at 18). In support of this proposition, the Court relied upon *Flanigan v. General Elec. Co.*, 242 F.3d 78, 87-8 (2d Cir. 2001). Order at 14. Plaintiffs respectfully believe the Court's holding is mistaken and that *Flanigan* does not support it.

The Court's ruling boils down to a holding that fiduciary liability only attaches to a defendant if the action constituting its exercise of authority or control over a plan asset (which made it a fiduciary as to that plan asset) also constituted its breach of fiduciary duty. The Court did not explain why this is or should be the rule under ERISA, and Plaintiffs respectfully suggest that the Court should do so before adopting such a restrictive rule. When the Court considers this issue, it will find three very strong reasons why it should reconsider and decline to make such a holding.

1.    Significant Case Law Supports Plaintiffs' Position.

Case law supports the intuitive principal that once a party has exercised sufficient authority or control over particular plan assets to become a fiduciary as to those plan assets, it must fulfill its fiduciary obligation in regard to all the actions it takes in connection with those plan assets, regardless of whether those particular actions, by themselves, would constitute a

sufficient exercise of authority or control to make the party into a fiduciary. A good example is the Seventh Circuit's decision in *Midwest Community Health Service, Inc.*, 255 F.3d at 374.

In that case, an insurance company (much like Nationwide) provided a group annuity contract to an employee benefit plan. *Id.* at 375. The Seventh Circuit held that the insurer constituted a fiduciary as to the group annuity contract because it had the unilateral right to amend it in ways that could change its value. *Id.* at 376. The Seventh Circuit then held that the insurer's failure to disclose certain information to the plan in connection with the plan's voluntary decision to switch from that contract to another violated the insurer's fiduciary duty as to the annuity contract. *Id.* at 378-9.

The Seventh Circuit did so even though it never found that the failure to disclose the information itself constituted an exercise of authority or control over the annuity contract which made the insurer a fiduciary as to the contract. *Id.* Accordingly, because the exercise of authority or control (power to amend the contract) that made the insurer a fiduciary was not the basis of the plaintiffs' complaint (the failure to disclose), the Seventh Circuit's decision is absolutely incompatible with the proposition that the very act that makes a defendant a fiduciary as to a plan asset must also constitute the breach of fiduciary duty. Rather, once the insurer became a fiduciary as to the annuity contract because of its unilateral power to amend the contract, it became a fiduciary for all purposes, including the disclosures it made to the plan regarding the plan's decision to switch from that contract to another contract. Simply put, this case demonstrates that once a party becomes a fiduciary as to a plan asset, all of its action in connection with that asset must meet the fiduciary standards of ERISA.

*Guardsmark, Inc.*, 313 F. Supp. 2d at 750-1, also demonstrates this proposition. The court held that the defendant constituted a fiduciary as to the benefit plan's checking account because it had the authority to draw checks on that account. *Id.* at 750. The court then held the

defendant would have constituted a fiduciary as to the retention of the float on the checking account but for the fact that the float constituted implied compensation to which the defendant was entitled under its agreement with the plan (i.e., it held the retention was compensation, not a plan asset). *Id.* at 751. Crucially, except for the implied compensation issue, the court would have held that the defendant constituted a fiduciary as to its retention of the float based on its ability to write checks on the plan, not based upon the retention of the float itself. *Id.* Of course, the retained float is very analogous to the revenue sharing payments in this case, such that this case demonstrates that once Nationwide became a fiduciary as to the accumulation units, all its actions in connection with them had to meet the fiduciary standards of ERISA.

*Brink v. DaLesio* also demonstrates this proposition. 496 F. Supp. 1350, 1367 (D. Md 1980), *aff'd in part and rev'd in part on other grounds*, 667 F.2d 420 (4th Cir. 1982). In that case, the court first held that the defendant trustee hired to administer the plans fell within ERISA's definition of fiduciary. *Id.* The court then held that the defendant had violated his fiduciary duties by receiving gratuities from individuals providing services to the plan. *Id.* at 1367-8. The court did not find that the receipt of the gratuities itself constituted the exercise of authority or control over plan assets sufficient to make the defendant a fiduciary, but rather held that it constituted a violation of the trustee's fiduciary duty owed as a result of the other control or authority he exercised. *Id.* Those gratuities in *Brink* are, of course, closely analogous to the revenue sharing payments in this case, making *Brink* a particularly persuasive decision.

In the Order, the Court did not address these decisions. When it does so, Plaintiffs believe it will reconsider its prior ruling.

2.    The Court's Holding Would Render ERISA § 406(b)(3) Ineffective as to Functional (Limited Purpose) Fiduciaries Under ERISA § (3)(21)(A).

*Brink* makes clear that the Court's holding would render it unreasonably difficult, if not impossible, to hold liable under ERISA § 406(b)(3), 29 U.S.C. § 1106 (b)(3), any person who

constitutes a fiduciary pursuant to ERISA § 3(21)(A)(i) by virtue of its asset management or disposition (as opposed to a "named fiduciary").  ERISA § 406(b)(3) bars a fiduciary from receiving "any consideration for its own personal account from any party dealing with such plan in connection with a transaction involving assets of the plan."[13]  29 U.S.C. § 1106(b)(3).

Under the Court's holding, a defendant which constitutes a fiduciary as to certain plan assets because of its exercise of authority or control over their management or disposition would not constitute a fiduciary subject to § 406(b)(3) by accepting a kickback (or gratuity or commission) from a party dealing with the ERISA plan in connection with a transaction involving those plans assets unless the acceptance of the kickback would, by itself, constitute an exercise of authority or control over the plan assets sufficient to make the defendant a fiduciary. Two facts demonstrate that Congress did not conceivably intend this result.  First, it included no language in § 406(b)(3) which so limits its application.  Second, it included § 406 in ERISA as a barrier to undue erosion of the common law rules against self-dealing by fiduciaries.  *Lowen*, 829 F.2d at 1215.

The Court's holding would lead to exactly such undue erosion of the prohibition against self-dealing by fiduciaries.  Under that holding, fiduciaries could, as Nationwide did in this case, use their custody or control over plan assets to extract kickbacks from third parties and then try to escape liability for same on the basis that their actions in arranging for and accepting  the kickbacks do not, by themselves, constitute an exercise of authority or control over the management or disposition of plan assets sufficient to make them fiduciaries as to their receipt of the kickbacks.  The Court did not deal with this issue in the Order, and Plaintiffs respectfully suggest that it should do so before imposing such a potentially significant limitation on the § 406(b)(3) liability of ERISA fiduciaries.  When the Court does consider this issue, Plaintiffs

---

[13] This section was designed by Congress to prevent kickbacks.  *Brink*, 496 F. Supp. at 1367 (citations omitted).

believe it will choose to reconsider its previous holding.

3.      The Only Case Cited by the Court in Support of Its Holding Does Not Support It.

The Court's reliance on *Flanigan* constitutes an example of allowing an exception to swallow the general rule. In that case, the Second Circuit held that the employer's decision to spin off a corporate division, including its pension plan, constituted a corporate business decision, rather than a decision by it as the plan administrator, such that it was acting as a settlor, not a fiduciary, when it transferred the assets in the pension plan along with the division. 242 F.3d at 88.

This holding does not represent a rejection of the general rule that once a party becomes a fiduciary as to certain plan assets, all of its conduct as to those assets must meet the fiduciary standards of ERISA. Rather, it merely recognizes the unique status of an employer which creates an ERISA plan. In some cases, the employer deals with the ERISA plan and its assets in its capacity as the settlor (creator) of the plan, rather than as the administrator/fiduciary. *Martin v. Feilin*, 965 F.2d 660, 665-6 (8th Cir. 1992). Thus, the holding in *Flanigan* merely represents recognition of an exception to the general rule based upon the unique dual role of an employer which creates an ERISA benefit plan.

Certainly, the Second Circuit did not state in *Flanigan* the proposition that the same actions which constitute the exercise of authority of control over a plan asset sufficient to make a party a fiduciary as to that plan asset must also constitute the breach of the resulting fiduciary duty. Further, its holding does not require such a rule. As a consequence, Plaintiffs suggest the Court took the holding beyond its proper context and allowed an exception to swallow the general rule.

B.    *NATIONWIDE NEED NOT EXECISE DISCRETIONARY AUTHORITY OR CONTROL OVER THE ACCUMULATION UNITS TO CONSTITUTE A FIDUCIARY AS TO THOSE PLAN ASSETS.*

As the Court noted in the Order at 17-18, in its definition of fiduciary, ERISA § 3(21)(A) distinguishes between authority or control respecting plan management, which must be discretionary, and authority or control respecting management or disposition of plan assets, as to which **any** authority or control is sufficient.  29 U.S.C. § 1002(21)(A).  As the Court also noted, courts which have required discretionary authority or control of plan assets have glossed over that statutory distinction.  Order at 17-18, *citing Coldesina v. Estate of Simper*, 407 F.3d 1126, 1132 n.1 (10th Cir. 2005).

While the Court did not decide whether Nationwide's allegedly non-discretionary exercise of authority and control over the accumulation units made it a fiduciary as to them, the Court properly seemed inclined towards so holding.  What the Court should find dispositive is that **every** court which has specifically considered the distinction made by the plain language of § 3(21)(A) has found it dispositive and has held that a party's exercise of "any" authority or control over the management or disposition of plan assets makes it a fiduciary as to those plan assets regardless of whether that authority or control is "discretionary" or "purely ministerial." *See id.*; *Patelco Credit Union*, 262 F.3d at 909; *Wettlin*, 237 F.3d at 272-3; *Lopresti*, 126 F.3d at 40 ("…the district court overlooked the fact that an individual also may be an ERISA fiduciary by, as just stated, 'exercis[ing] **any** authority or control respecting management or disposition of [plan] assets.'") (emphasis added); *IT Corp.*, 107 F.3d at 1421; *FirsTier Bank, N.A. v. Zeller*, 16 F.3d 907, 911 (8th Cir. 1994) ("Note that this section imposes fiduciary duties only if one exercises **discretionary** authority or control over plan **management**, but imposes those duties **whenever** one deals with plan **assets**.") (emphasis added).

Significantly, good policy reasons support Congress' decision to make the fiduciary threshold for asset management lower than for plan management or plan administration:

> That Congress established a lower threshold for fiduciary status where control of assets is at stake is not surprising given that '(a)t common law, fiduciary duties characteristically attached to decisions about managing assets and distributing property to beneficiaries.' [Citation omitted].  'By mandating the trust form by transposing the duty of loyalty from trust to pension law, the drafters of ERISA were able to institute a familiar fiduciary regime to protect pension funds from internal defalcation.'  [Citation omitted].

*Wettlin*, 237 F.3d at 274.  The Court should find dispositive the combination of the plain language of the statute and these policy reasons.

Based upon the foregoing, Plaintiffs request the Court to reconsider and hold that Plaintiffs sufficiently plead Nationwide's status as a fiduciary in the Complaint based upon the general accumulation unit theory.

## VI.  PLAINTIFFS PLEAD ERISA VIOLATIONS NOT CHALLENGED BY NATIONWIDE.

Plaintiffs plead that Nationwide's conduct in regard to its revenue sharing payments violates ERISA §§ 404(a)(1)(A) & (B) and 406(b)(1).  Complaint §§ 57-59.  Nationwide does not challenge the sufficiency of Plaintiffs' pleading of these violations in the Memorandum.  Accordingly, regardless of how the Court rules on their pleading of a § 406(b)(3) violation, Plaintiffs are entitled to continue on with their case based upon these two violations.

## VII.  THE COURT HAS NO REASON TO RECONSIDER ITS HOLDING THAT PLAINTIFFS ADEQUATELY PLEAD NATIONWIDE'S VIOLATION OF ERISA § 406(b)(3).

In the Order, this Court held that:

> Viewing the evidence in the light most favorable to the Trustees, a reasonable fact-finder could conclude that Nationwide received consideration (*i.e.*, the revenue-sharing payments) from a party dealing with Plans (*i.e.*, the mutual funds whose shares are available for investment by the Plans and participants) in connection with a transaction (*i.e.*, the so-called service contracts) involving assets of the plan (*i.e.*, the shares of the variable accounts, represented by the accumulation units).

Order at 25-6 (emphasis in original).

Nationwide attacks this holding by ignoring the economic substance of the relationships between it, the Plans and the mutual fund families. For example, it claims that the mutual funds do not actually deal with the Plans but rather only with the variable account entities. Memorandum at 24. While it is true that the variable account entities are the legal owners of the mutual fund shares, the economic substance of the arrangement is such that the Plans and their participants are the beneficial owners of those mutual fund shares. For every mutual fund share owned by the variable fund entity, an accumulation unit representing the mutual fund share is issued to a Plan or participant, and it is the Plan or participant that is entitled to the economic benefit of the ownership of that mutual fund share. As a consequence, Nationwide's argument is nothing more than sophistry.

In another bit of sophistry, Nationwide argues that the transactions do not involve the assets of the Plans because the revenue sharing payments are made out of the assets of the mutual fund advisors. Memorandum at 25. The Court, however, found that the assets of the Plans involved in the transactions are the accumulation units. Order at 26. That is undoubtedly correct, because the revenue sharing payments are calculated based upon the value of the accumulation units and are made in return for the investments of the Plans and their participants in the mutual funds that the accumulation units represent.

Finally, Nationwide argues that DOL Advisory Opinion 2003-09A (June 25, 2003), conclusively proves that it did not violate § 406(b)(3). In making this argument, Nationwide ignores the basis upon which the Court distinguished it in the Order--that the DOL assumed that the fees received by the Trustee were, in fact, fees for services, rather than kickbacks. Order at 26. This does indeed distinguish this case from that opinion, because Plaintiffs plead that Nationwide did not, in fact, perform services in consideration for the payments, and Nationwide

does not challenge that pleading by Plaintiffs.  Furthermore, the Court previously held that there

is ample evidence to support this pleading.  Order at 9-10 & 26.

## VIII.   <u>CONCLUSION</u>

For the reasons stated herein, the Court should deny Nationwide's motion to dismiss in

its entirety.

Respectfully submitted,

_____/RAB/_____
Richard A. Bieder
Federal Bar No. ct04208
Antonio Ponvert, III
Federal Bar No. ct17516
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgeport, Connecticut 06604
203-336-4421
203-368-3244 (Fax)

Marc R. Stanley
Federal Bar No. ct18179
Roger L. Mandel
Federal Bar No. ct18180
Martin Woodward
Federal Bar No. ct25263
STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, Texas  75205
214-443-4300
214-443-0358 (Fax)

Gregory G. Jones
Federal Bar No. ct23443
LAW FIRM OF GREGORY G. JONES PC
603 S. Main Street, Suite 200
Grapevine, Texas 76051
817-424-9001
817-424-1665 (Fax)

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 22, 2006 a copy of Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs' Fifth Amended Class Action Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

Dennis F. Kerrigan, Jr.
LeBoeuf, Lamb, Greene & MacRae
Goodwin Square
225 Asylum Street
Hartford, CT  06103

Charles C. Platt
Wilmer Cutler & Pickering
399 Park Avenue
New York, NY 10022

Samuel Broderick-Sokol
Wilmer Cutler & Pickering
2445 M Street, N.W.
Washington, D.C.  20037

_____
Richard A. Bieder