# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing, ALAN GOUSE, as trustee of Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, EDWARD KAPLAN, as trustee of the Hartford Roofing 401(k) Profit Sharing Plan and the Hartford South, L.L.C. 401(k) Profit Sharing Plan, and DENNIS FERDON, as trustee of the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan,<br>    PLAINTIFFS,<br><br>v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,<br><br>    DEFENDANTS. | CIVIL ACTION NO.:<br><br>3:01CV1552 (SRU)<br><br><br>June 6, 2006 |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIFTH AMENDED CLASS ACTION COMPLAINT**

I.   **Preliminary Statement**

Defendants' motion to dismiss Plaintiffs' Fifth Amended Class Action Complaint ("Complaint") demonstrated that Plaintiffs' only surviving theory of ERISA fiduciary status – the so-called "fund selection" or "fund substitution and deletion" theory – fails as a matter of law. Because Plaintiffs cannot show that Defendants are ERISA fiduciaries, all of Plaintiffs' ERISA claims for breach of fiduciary duty, 29 U.S.C. § 1104, or violations of the prohibited transactions rules, 29 U.S.C. § 1106(b)(1) or 1106(b)(3), must be dismissed, as this Court already has recognized. See Amended Memorandum of Decision at 12 ("Decision") (noting threshold requirement of allegations of fiduciary status).

Rather than responding to the deficiencies in their one surviving theory of ERISA fiduciary status, Plaintiffs try instead to stretch that one theory into four, apparently hoping that their usual strategy of constantly devising new theories will save their amoebic Complaint. But these additional theories are simply relabeled variations of the theories already rejected by the Court, and they should not be reconsidered here.

Plaintiffs also assert that Defendants are somehow "re-litigat[ing the] motion for Summary Judgment." Plaintiffs' Opposition in Opposition to Defendants' Motion to Dismiss at 1 ("Opp."). That is simply not so. Defendants' summary judgment motion addressed the "accumulation unit" theory of ERISA fiduciary status on which Plaintiffs then relied (*i.e.*, that Defendants exercised authority or control over the accumulation units in Plaintiffs' variable annuity contracts), which this Court clearly rejected in its Decision. Defendants' summary judgment motion did not address the "fund selection/deletion" theory (*i.e.*, that Defendants exercised authority or control indirectly over Plaintiffs' investment choices by substituting or

deleting mutual fund investment options in Plaintiffs' variable annuity contracts) because Plaintiffs had earlier waived that theory, and it was only revived in the Court's Decision.

**II.    Plaintiffs Do Not Address The Clear Evidence Of Strategic Waiver.**

Plaintiffs do not even address, much less rebut, the voluminous and unambiguous records establishing that Plaintiffs expressly and strategically waived their fund selection/deletion theory more than three years ago. Instead, Plaintiffs argue that their waiver was somehow limited to a particular claim for damages based on a particular legal theory. But Plaintiffs' own statements leave no doubt whatsoever that their strategic waiver went far beyond the limited scope conjured for the first time in Plaintiffs' Opposition. *See* Defendants' Memorandum in Support of Motion to Dismiss at 3-8 ("Memorandum").

For example, Plaintiffs expressly advised this Court in April 2003 that

> the proposed deletion of allegations concerning the defendants' ability to substitute or delete mutual funds is **necessary to avoid the continued waste of the Court's and the parties' time and resources** on an **issue that is entirely irrelevant** to the single cause of action asserted by the plaintiffs in this case.[1/]

Plaintiffs cannot seriously argue that they were pursuing their fund selection/deletion allegations at the same time they were advising this Court that those allegations were "entirely irrelevant" and amount to nothing more than a "waste of the Court's and the parties' time."

Similarly, Plaintiffs' argument that the waiver is somehow less significant because there was no formal written stipulation, Opp. at 16 n.10, is at best misleading. Plaintiffs did so stipulate when they avoided Defendants' motion to compel discovery on the grounds that "counsel for plaintiffs agreed to a formal stipulation" that none of their allegations "shall be

---

[1/]    Plaintiffs' Motion for Leave to File a Third Amended Complaint at 4 (Ex. P to the Declaration of Brian O'Donnell In Support of Defendants' Motion to Dismiss the Fifth Amended Complaint) (emphasis added). All subsequent exhibits to the O'Donnell declaration will be cited simply as "Ex. _".

construed to assert any claim(s) of fiduciary status or breach of fiduciary duties based upon the defendants' actual or alleged substitution or deletion of funds or based upon the defendants' actual or alleged contractual right to substitute or delete funds." Ex. N at 2-3.

Unable to refute the overwhelming evidence of waiver, Plaintiffs weakly assert that there was no "detrimental reliance," without ever addressing the Defendants' reliance on Plaintiffs' waiver during the numerous fact and expert depositions, the multiple expert witness reports, and the enormous amount of time and money that Defendants have spent addressing and disposing of Plaintiffs' serial accusations and preparing for class certification. Remarkably, Plaintiffs assert that the case has now "effectively started over," Opp. at 17, as if being dragged back to square one after almost five years of litigation is somehow neutral and should redound to their benefit.

Plaintiffs' grossly cavalier approach to this litigation, and to their own prior statements, should not be countenanced by the Court. Defendants' motion to dismiss should be granted on this basis alone.

### III. Plaintiffs Do Not Dispute That They Have No Claim Based On Fund Selection, And Their Fund Deletion And Substitution Theory Is Invalid As A Matter Of Law.

Even if there were no waiver, Plaintiffs have provided no support for their only surviving theory of ERISA fiduciary status – that Defendants allegedly exercised authority and control indirectly over Plaintiffs' investment choices by selecting or deleting investment options.

Plaintiffs do not dispute that any alleged "fund selection" before Plaintiffs purchased their contracts fails to establish ERISA fiduciary status as a matter of law. *See* Memorandum at 10-14.

Nor do Plaintiffs respond to Defendants' argument that any "fund deletion/substitution" that merely affects a plan's investment choices is too indirect to create ERISA fiduciary status. *See* Memorandum at 15-19. Likewise, Plaintiffs do not dispute that their Complaint lacks any

3

allegation that the "fund deletion/substitution" was in exchange for revenue sharing, *see* Memorandum at 19-20; such an allegation would make no sense in any event since the Complaint alleges that those same funds were selected *initially* in exchange for revenue sharing.

Instead, Plaintiffs try to shift their fund substitution/deletion theory (which they now mislabel their "mutual fund selection theory," even though it has nothing to do with the initial selection of funds) from one that affected their "investment choices" to one that affected their "accumulation units." Opp. at 14. But Plaintiffs' Complaint has no allegation that the units were misappropriated or diminished as a result of any fund deletion/substitution; it states only that Plaintiffs' investment choices may have been affected. *See* Complaint at ¶¶ 25, 54-56. This pleading was necessary, of course, because this Court has determined that Defendants' receipt of revenue sharing payments (the alleged misconduct at the core of this lawsuit) does not relate to their handling of the units. *See* Decision at 18. As a result, Plaintiffs cannot save their fund deletion/substitution theory by combining it with their rejected "accumulation unit" theory.

The Court should also reject Plaintiffs' new argument that Defendants were fiduciaries based on the mere possibility of fund substitution and deletion, regardless of whether any substitution or deletion actually occurred. Opp. at 13-14. That argument is incorrect as a matter of law. The text of ERISA plainly states that, where fiduciary status is based on authority or control respecting management or disposition of plan assets, it exists only "to the extent" the person "exercises" that authority or control. 29 U.S.C. § 1002(21)(A)(i). That statutory language is in marked contrast to § 1002(21)(A)(iii), which makes a person a fiduciary if he "has" the requisite authority or control, regardless of whether or not it was exercised.

The Court acknowledged this requirement when it found that a defendant may be a fiduciary "to the extent that it exercises authority or control" over plan assets, and the case law

4

supporting that conclusion is unanimous. Decision at 16-17.[2] Plaintiffs' Opposition plucks a few supposedly contrary quotations out of context, but in every one of those cases the purported fiduciary *actually exercised* the authority or control at issue.[3] Likewise, the *Aetna* and *Frost* DOL Advisory Opinions provide no support for Plaintiffs' position. In *Aetna*, the DOL explained that "a person would not be exercising discretionary authority or control over the management of a plan or its assets solely as a result of deleting or substituting a fund from a program of investment options and services offered to plans," assuming the plan fiduciary consents. DOL Advisory Opinion 97-16A, 1997 WL 277979, at *5. Plainly, this letter addresses only the situation where the power to substitute or delete is actually exercised, and does not support Plaintiffs' assertion that the mere contractual power to do so is enough. The *Frost* Opinion is the same, focusing on the trustee's "acts" in adding or deleting mutual fund families from an investment menu. DOL Advisory Opinion 97-15A, 1997 WL 277980, at *3 n.9.

---

[2] See, e.g., *Bouboulis v. Transport Workers Union of America*, 442 F.3d 55, 63 (2d Cir. 2006) ("Subsection one imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted. Subsection three describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised.") (quoting *Olson v. E.F. Hutton & Co., Inc.*, 957 F.2d 622, 625 (8th Cir. 1992)); *Bd. of Trustees v. Am. Benefit Plan Adm'rs, Inc.*, 925 F.Supp. 1424, 1429 (D.Minn. 1996); *Reich v. Hosking*, No. 94-CV-10363-BC, 1996 WL 182226, at *2 (E.D.Mich. Mar. 7, 1996); *Daniels v. Nat'l Employee Benefit Serv.*, 858 F.Supp. 684, 689 (N.D.Oh. 1994); *cf. Medical Ctr. of Cent. Ga. v. Denon Digital Employee Benefits Plan*, No. 5:03CV32 (DF), 2005 WL 1073624, at *6 (M.D.Ga. May 4, 2005).

[3] See *Chicago Bd. Options Exchange, Inc. v. Conn. Gen. Life Ins. Co.*, 713 F.2d 254, 260 (7th Cir. 1983) (defendant exercised power to amend insurance contract ); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 734 (7th Cir. 1986) (defendant exercised power to amend insurance contract); *Midwest Comm. Health Serv., Inc. v. Am. United Life Ins. Co.*, 255 F.3d 374, 375 (7th Cir. 2001) (defendant exercised power to amend contract); *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1418 (9th Cir. 1997) (defendant exercised its power to write checks on plan funds); *Bd. of Trustees v. Wettlin Assoc., Inc.*, 237 F.3d 270, 271 (3d Cir. 2001) (defendant exercised its power to write checks on plan funds); *Guardsmark, Inc. v. Blue Cross and Blue Shield of Tenn.*, 313 F. Supp. 2d 739, 746 (W.D.Tenn. 2004) (defendant exercised power to write checks on plan funds).

### IV. Plaintiffs' "Specific Accumulation Unit" Theory Does Not Create An ERISA Fiduciary Duty.

Facing dismissal because their fund deletion/substitution theory is waived and has no merit, Plaintiffs attempt to devise a new "specific accumulation unit theory" of ERISA fiduciary status. Opp. at 2. Under this theory, Defendants allegedly exercised authority or control over the management or disposition of the accumulation units by somehow using them "to obtain revenue sharing from the Mutual Fund families." Opp. at 5. This theory is really no different from what Plaintiffs now call their "general accumulation unit theory," *see* infra at 10 – both allege that Defendants exercised some authority or control over the management or disposition of the units. The Court has already correctly rejected these theories because any such exercise of authority or control was not related to Defendants' receipt of the challenged payments. Decision at 18.

Plaintiffs offer no explanation how the actions Defendants take regarding the units (transferring them, canceling them, cashing them in) resulted in or has any nexus to the challenged revenue sharing payments. Instead, they suggest that the mere *existence* of the units somehow "generated" the payments. Opp. at 5. But as this Court has already held, such allegations are not sufficient to state an ERISA claim because they do not connect the actions alleged to give rise to fiduciary status to the alleged breach. *See* Decision at 18; *Pegram v. Herdrich*, 530 U.S. 211, 225-26. Plaintiffs' examples regarding the display of art or the pledging of plan assets as loan collateral are inapposite. Those hypotheticals each involve a fiduciary abusing the particular authority or control that made it a fiduciary in the first place (*e.g.*, the decision to display art in public by a person who was a fiduciary based on his authority where to store the art), whereas there is no allegation here that Defendants abused any authority or control over the units. The hypotheticals are also distinguishable because, in each, the fiduciary's

actions concretely diminish the value of the asset (*e.g.*, by encumbering the assets as collateral). No such concrete impact on the units is alleged here.[4/]

### V. Plaintiffs Incorrectly Argue That The Functional Approach Creates A Separate ERISA Fiduciary Duty.

Plaintiffs also try to supplement their fund deletion/substitution theory by arguing that Defendants are ERISA fiduciaries under a separate and independent "functional approach," claiming that the Court "implicitly" held that the functional approach created an additional basis for Defendants' fiduciary status. Opp. at 11-12. But this Court did not adopt a "functional approach" to create an independent ground for ERISA fiduciary status. Rather, the Court considered the "functional approach" only *after* it concluded that Defendants could be fiduciaries under a substitution or deletion theory, as part of its analysis of whether the revenue sharing payments constituted plan assets so that Defendants' receiving them could violate ERISA's prohibited transactions provisions, 29 U.S.C. § 1106(b)(1) & 1106(b)(3). *See* Decision at 18 ("Consequently, *if Nationwide is a fiduciary*, the conduct at issue only violates section 1106(b) if it involves 'assets of the plan.'") (emphasis added).

Plaintiffs' suggestion that the Court determine whether Defendants are ERISA fiduciaries in the first place based on the "functional approach" is circular and illogical, and incorrect as a matter of law. Plaintiffs' functional approach theory would have the Court hold that the revenue sharing payments are plan assets because Defendants obtained them through fiduciary conduct,

---

[4/]    The closest Plaintiffs come to identifying concrete actions Defendants allegedly have taken that give rise to fiduciary status under the specific accumulation unit theory is when they assert that Defendants "condition" access to the units on funds agreeing to pay revenue sharing. Opp. at 5. Defendants dispute that this assertion describes any actual exercise of authority or control over the units, because Plaintiffs have not alleged that any action was taken that affected the units. It is also clear that, so framed, this theory becomes indistinguishable from the fund selection/deletion theories that Plaintiffs have waived.

but would then, in bootstrap fashion, have the Court hold that Defendants are fiduciaries in the first place simply because they obtained these plan assets. *See also* Memorandum at 23.

Even with regard to the narrow question of whether the revenue sharing payments can be considered plan assets, Plaintiffs' functional approach theory should be dismissed as a matter of law. As this Court recognized, the revenue sharing payments were made from assets of certain mutual fund affiliates, and "[t]he parties agree that [those] assets … *do not constitute ERISA plan assets as a matter of law*." Decision at 20 (emphasis added). No court has ever held that assets belonging to a third party as a matter of law can suddenly be transformed into assets belonging to the plans, and thereby create ERISA fiduciary status, simply because of a "functional approach." Instead, cases applying the so-called "functional approach" did so either in dicta (*Acosta*) or where there was some pre-existing claim by the plan to those assets (*Patelco, Bannistor*). See Decision at 21-22. No such pre-existing claim has been, or can be, alleged here.

Plaintiffs also fail to explain how their functional approach could be consistent with the *Pegram* decision. There the Supreme Court held that, even if a party is an ERISA fiduciary, it may take actions for its own benefit, even if those actions have adverse consequences for the plans. *Pegram*, 530 U.S. at 225. In this case, the proposed "functional approach" would be contrary to that reasoning – Defendants would be rendered ERISA fiduciaries simply because they took actions for their own benefit that allegedly had adverse consequences for the plans.

## VI. Plaintiffs Cannot Plead And Prove "Prohibited Transactions" In This Case.

Plaintiffs' Section 406(b)(3) claim has additional flaws – Plaintiffs cannot fairly allege that Defendants received revenue sharing payments from parties that "deal with the plans" or that those payments "involve assets of the plans."

*First*, Plaintiffs do not dispute that the Complaint and referenced documents all show that any revenue sharing payments came from mutual fund affiliates that only "deal with" the mutual

8

funds, and that those mutual funds in turn only "deal with" the independent trusts known as the "variable accounts." *See* Memorandum at 24-25. Plaintiffs' response is that the mutual fund affiliates "deal with the plans" because the plans are "beneficial owners" of the mutual fund shares, an assertion Plaintiffs make without citation to any legal authority whatsoever. Opp. at 26. That is incorrect. The variable accounts are the only owners of those shares under the annuity contracts that govern the parties' relations and there is no basis to revise or alter that relationship based on vague and inapt concepts such as "beneficial ownership."[5/]

*Second*, even Plaintiffs admit that the revenue sharing payments do not "involve assets of the Plans." *See* Memorandum at 25 & n.53. Plaintiffs respond nevertheless that the payments *indirectly* involve "assets of the plans" because they "are calculated based upon the value of the accumulation units and are made in return for the investments of the Plans." Opp. at 26. But the fact that the payments may be calculated with reference to the units does not mean that the payments "involve" the plan's assets or can be traced to the plans. Indeed, Plaintiffs admit that there is no such link.[6/]

## VII. Plaintiffs Cannot Ask Here For Reconsideration Of The Court's Order Rejecting Their Accumulation Unit Theory.

Finally, Plaintiffs ask the Court to reconsider the dismissal of their claim that Defendants were ERISA fiduciaries based on Defendants' alleged exercise of authority or control over the "accumulation units" (what Plaintiffs now call their "general accumulation unit theory"). Opp. at 18-25. Plaintiffs' untimely request for reconsideration in response to Defendants' motion to dismiss is not only improper, it is unaccompanied by the required showing that reconsideration is

---

[5/]   *See* Defendants' Reply to Plaintiffs' Local Rule 56(a)2 Statement ¶¶ 9, 11 (Ex. Y).

[6/]   *See* Defendants' Reply to Plaintiffs' Local Rule 56(a)2 Statement ¶¶ 30 (Ex. Y).

necessary "to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992); Fed. R. Civ. P. 60(b).

In any event, the Court's Decision dismissing Plaintiffs' accumulation unit theory was correct as a matter of law. This issue was fully briefed by the parties in the summer of 2004, including the cases that Plaintiffs now cite in their Opposition brief, which briefs we attach for the Court's convenience. *See, e.g.*, Defendants' Supplemental Reply Memorandum in Support of Defendants' Motion for Summary Judgment at 4-7. In short, Plaintiffs' accumulation unit theory failed because they could not allege that Defendants "exercised" meaningful authority or control over the accumulation units *and* that the alleged harm (the receipt of the revenue sharing payments) resulted from an exercise of that fiduciary authority or control. Decision at 17-18; *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987)("a person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only 'to the extent' that he has or exercises the described authority or responsibility"). Plaintiffs make no effort in their Opposition to allege otherwise, or to address the *Pegram*, *Krear*, or numerous other cases that are dispositive on this issue.[7/]

---

[7/]   Instead, they cite three cases which do not support their argument. *Midwest Community Health Service v. American United Life Ins. Co.*, 255 F.3d 374 (7th Cir. 2001) was expressly limited by the court to a single ERISA issue involving a limited exemption for insurance companies that is not applicable here, and in any event relied on authority expressing the exact principle Plaintiffs argue should be rejected – that ERISA can be violated only where the challenged action involves the improper exercise of a fiduciary function. *Brink v. DaLesio*, 496 F. Supp. 1350 (D. Md. 1980), also involves the same principle. Plaintiffs' reliance on *Guardsmark, Inc. v. Blue Cross & Blue Shield of Tenn.*, 313 F. Supp. 2d 739 (W.D. Tenn. 2004), is especially misplaced because it directly rejects the argument Plaintiffs press here: "Plaintiffs argue that, if BCBST was a fiduciary as to any of its conduct with respect to the Plan, BCBST was a fiduciary as to all of its conduct with respect to the Plan. Sixth Circuit law holds otherwise." *Id.* at 748.

Respectfully submitted,

Defendants Nationwide Financial Services Inc.
and Nationwide Life Insurance Co.

By: *[signature]*
Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
Jessica A. Ballou, Esq. (CT 22253)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone: (860) 293-3500
Facsimile:  (860) 293-3555

Charles C. Platt, Esq. (CT 23036)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY  10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Daniel H. Squire, Esq.
Sam Broderick-Sokol, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile:  (202) 663-6363

Dated:  June 6, 2006

## CERTIFICATION

I hereby certify that on this 6th day of June 2006, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

Richard A. Bieder, Esq.
Antonio Ponvert III, Esq.
Koskoff, Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, CT 06604

Gregory G. Jones, Esq.
Law Firm of Gregory G. Jones, P.C.
603 South Main Street, Suite 200
Grapevine, TX 76051

Marc R. Stanley, Esq.
Roger L. Mandel, Esq.
Stanley, Mandel & Iola
3100 Monticello Avenue, Suite 750
Dallas, TX 75205

*/s/ Jessica A. Ballou*
_____
Jessica A. Ballou