UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 JUL -7 A 9:17
U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing, ALAN GOUSE, as trustee of Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, EDWARD KAPLAN, as trustee of the Hartford Roofing 401(k) Profit Sharing Plan and the Hartford South, L.L.C. 401(k) Profit Sharing Plan, and DENNIS FERDON, as trustee of the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan,<br><br>PLAINTIFFS,<br><br>v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,<br><br>DEFENDANTS. | CIVIL ACTION NO.<br>3:01CV1552 (SRU)<br><br>July 6, 2004 |

**SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

PROCEDURAL HISTORY ............................................................................................. 3

    A.    Plaintiffs' Factual Allegations and Legal Theories Prior to the Summary Judgment Hearing ........................................................................................... 3

    B.    Plaintiffs' Factual Allegations and Legal Theories at and after the Summary Judgment Hearing .................................................................................... 5

ARGUMENT .................................................................................................................... 7

    A.    Defendants' Fiduciary Duties, If Any, Were Limited to Their Exercise of Authority or Control Over the Accumulation Units ............................................... 8

    B.    Plaintiffs' Claim Does Not Arise out of the Exercise of Authority or Control over Plan Assets by Nationwide ............................................................... 10

    C.    Defendants Were Custodians, Not Fiduciaries, Regarding the Accumulation Units ............................................................................................. 15

    D.    Plaintiffs Have Failed to Establish that the Challenged Payments Were Plan Assets Under ERISA. ...................................................................................... 19

    E.    If This Action Is Allowed To Proceed, Plaintiffs Should File a New Motion for Class Certification ................................................................................ 22

CONCLUSION ............................................................................................................... 24

i

## TABLE OF AUTHORITIES

### CASES

Acosta v. Pac. Enters., Inc., 950 F.2d 611 (9th Cir. 1992) .................................................. 21

Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona), 125 F.3d 715 (9th Cir. 1997) .............................................................................................................................. 15, 17

Beddall v. Sate Street Bank and Trust Co., 137 F.3d 12 (1st Cir. 1998) ................................ 17

Blatt v. Marshall & Lassman, 812 F.2d 810 (1987) .............................................................. 21

Brandt v. Grounds, 687 F.2d 895 (7th Cir. 1982) ............................................................... 9, 10

F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250 (2d Cir. 1987) .................. 8, 11

Financial Institutions Retirement Fund v. Office of Thrift Supervision, 766 F. Supp. 1302 (S.D.N.Y. 1991) ....................................................................................................................... 7

Flanigan v. General Electric Co., 242 F.3d 78 (2d Cir. 2001) ............................................ 9, 10

Friend v. Sanwa Bank California, 35 F.3d 466 (9th Cir. 1994) ............................................... 9

Gray v. Briggs, 45 F. Supp. 2d 316 (S.D.N.Y. 1999) ..................................................... 9, 10, 11

Health Care Service Corp. v. Tap Pharmaceutical Prods., Inc., 274 F. Supp. 2d 807 (E.D. Tex. 2003) ............................................................................................................................... 23

Lopresti v. Terwilliger, 126 F.3d 34 (2d Cir. 1997) ................................................................ 20

Lowen v. Tower Asset Management, 829 F.2d 1209 (2d Cir. 1987) ................................. 13, 14

Mass Mutual Life Ins. Co. v. Russell, 473 U.S. 134 (1985) ................................................... 17

NYSA-ILA Medical & Clinical Services Fund v. Catucci, 60 F. Supp. 2d 194 (S.D.N.Y. 1999) ....................................................................................................................................... 18

New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002) .................................................................. 17

Pegram v. Herdrich, 530 U.S. 211 (2000) ........................................................................ 8, 9, 13

Pension Fund Mid-Jersey Trucking Industry Local 701 v. Omni Funding Group, 731 F. Supp. 161 (D. N.J. 1990) ........................................................................................... 9, 10, 11, 15

Reich v. Goldstein, 839 F. Supp. 1068 (S.D.N.Y. 1993)..................................................20

Robbins v. First American Bank, 514 F. Supp. 1183 (N.D. Ill. 1981) ..................... 15-16

Schulist v. Blue Cross of Iowa, 717 F.2d 1127 (7th Cir. 1983).......................................21

Shultz v. Texaco, Inc., 127 F. Supp. 2d 443 (S.D.N.Y. 2001) ..........................................8

## STATUTES

29 C.F.R. § 2509.75-8..................................................................................................8, 17

29 C.F.R. §§ 2510.3-101 & 2510.3-102 ..........................................................................20

29 C.F.R. § 2510.3-101(a)(2)...........................................................................................20

29 U.S.C. § 1002(21)(A)....................................................................................................8

29 U.S.C. § 1101(b)(1) ....................................................................................................20

During the June 1, 2004, hearing on Defendants' Motion for Summary Judgment, Plaintiffs raised a series of new factual allegations and legal theories. Accordingly, Defendants requested and were granted leave to file this Supplemental Memorandum of Law. On June 4, 2004, the Court ordered Plaintiffs to file an Amended Complaint setting forth their current theories of liability. That Fourth Amended Complaint was filed on June 15, 2004, and is also addressed in this Supplemental Memorandum.

## INTRODUCTION

Plaintiffs purport to be the trustees of five retirement plans that purchased Nationwide variable annuities and invested money in those annuities. Plaintiffs allege that the retirement plans or their participants allocated the money they invested into variable accounts offered in connection with the variable annuities, and that sub-accounts of the variable accounts in turn invested money in mutual funds as designated by the participants.

Plaintiffs' legal claim is that ERISA entitles them to receive any payments that Defendants received pursuant to separate contracts between Defendants and affiliates of the mutual funds.[1] There is no ERISA precedent for that claim. Plaintiffs have tried to fit their claim into the ERISA framework by offering a series of factual allegations and legal theories over the last several years. Throughout that period, Defendants have pointed out the inadequacy of Plaintiffs' then-current story, only to have Plaintiffs switch to a new story and insist that the

---

[1] Any such payments were made for services, but because Defendants need not prove that fact in order to obtain summary judgment, they are referred to herein only as "payments" or "challenged payments" rather than "service payments." These payments were made by and to various entities, and those differences would be relevant to class certification and on the merits. However, for ease of presentation, and without waiving any right to later present the full complexity of these transactions, this Memorandum will refer to them as payments by mutual funds and to "Defendants."

1

Court should not resolve the case. This pattern of evasion continued through the June 1 summary judgment hearing. At that hearing, Plaintiffs changed their allegations and theories of the case yet again, and the Court thereafter ordered them to file yet another complaint. *See* Order of June 4, 2004 (Docket 232).

Plaintiffs' Fourth Amended Complaint does not allow Plaintiffs to avoid summary judgment. The new Complaint asserts that Defendants were ERISA fiduciaries because they exercised authority or control over accumulation units that qualify as ERISA "plan assets" and also asserts that Defendants received payments from mutual funds. However, Plaintiffs still fail to connect those two assertions in a way that states a claim under ERISA. This hole in the middle of Plaintiffs' ERISA case entitles Defendants to summary judgment. *See infra* at 8-17.

In addition, the new Complaint alleges that Defendants simultaneously obtained and breached ERISA fiduciary status when they received the challenged payments. This was Plaintiffs' primary theory prior to the June 1 hearing. As noted in Defendants' prior summary judgment briefing and at the hearing, this allegation fails as a matter of law because Plaintiffs have admitted that (1) the payments were made with money belonging to the mutual funds -- not the plans -- and thus they were not "plan assets" that could create ERISA fiduciary status, and (2) Plaintiffs will not attempt to trace those payments to "plan assets" (which tracing would in any event be impossible as a matter of law). These undisputed facts demonstrate that ERISA does not govern Defendants' conduct with regard to those payments. *See infra* at 17-20.

2

## PROCEDURAL HISTORY

A.  **Plaintiffs' Factual Allegations and Legal Theories Prior to the Summary Judgment Hearing**

As noted above, prior to the June 1 hearing, Plaintiffs alleged that Defendants *became* ERISA fiduciaries *because* the payments that Defendants received from mutual fund affiliates either consisted of or diminished "plan assets." *See, e.g.,* Pls.' First Am. Supp. Resps. and Objs. to Defs.' Third Set of Interrogatories, Response No. 2 at p.4 ("Pls.' Am. Resps.") (stating that "the mutual fund payments constitute plan assets in the hands of Nationwide"); *see also* Pls.' Opp. to Defs.' Mot. for Summary Judgment at 1 ("Pls.' Opp.") (Docket 205) ("As a matter of law, Nationwide's pocketing of the revenue sharing payments constitutes it dealing with plan assets in its own interest and for its own account, and Nationwide should be forced by the Court to return those assets.").[2]

Along the way to that position, Plaintiffs expressly dropped all claims that Defendants owed or breached any ERISA fiduciary duties by engaging in self-dealing,[3] by acting as an

---

[2]    *See also* Pls.' First Am. Mem. in Support of Plaintiffs' First Am. Mot. For Class Certification (Docket 129) ("Pls.' Class Cert. Mem.") at 1-2 ("Nationwide . . . received payments from mutual funds that served to directly reduce the value of Class members' investments [and t]his scheme made Nationwide a fiduciary as to the assets it affected and simultaneously breached its fiduciary duties."); Pls.' Am. Resps., Response No. 2 at p.5 ("Plaintiffs do not claim that any specific acts, communications or omissions *other than* Nationwide's arranging for the payment of skimmed plan assets . . . and Nationwide's acceptance and retention of the payments of skimmed plan assets, as described above, constitute . . . a breach of fiduciary duty by Nationwide.") (emphasis added). Pls.' Am. Resps. are attached as Exhibit 14 to the Dec. of Mark Bieter in Support of Defs.' Rev. Mem. of Law in Support of Defs.' Mot. for Summary Judgment (Docket 187).

[3]    *See* Pls.' Mot. for Leave to File Second Am. Class Action Compl. at 2 (Docket 55) ("Plaintiffs' First Amended Class Action Complaint pleads ... a claim based upon Defendants' self-dealing in the selection of mutual funds offered to the plans and their participants. Plaintiffs seek leave to file a second amended complaint primarily to drop [that] claim.").

3

investment advisor,[4] by selecting inferior funds for inclusion in the annuity contracts,[5] by making misrepresentations or non-disclosures,[6] or by failing to fully perform any obligations imposed by the annuity contracts.[7] Plaintiffs dropped these allegations for two strategic purposes: to narrow the claims for which they would seek class certification, and because they could not or would not respond to Defendants' discovery requests on these issues.[8]

---

[4]    *See, e.g.*, Pl. Carl Anderson's Reps. and Objs. to Defs.' First Set of Interrogatories, Response No. 9 (refusing to answer interrogatory regarding allegation in First Amended Complaint that Defendant provided investment advice for a fee because Plaintiffs planned to drop that allegation in the then-forthcoming Second Amended Class Action Complaint) (Exhibit C to the Declaration of Dennis F. Kerrigan (Docket 145)).

[5]    *See* Pls.' Mot. for Leave to File Third Am. Compl. at 4 (Docket 83) ("[A]llegations concerning the defendants' ability to substitute or delete mutual funds ... [are] entirely irrelevant ...."); Pls.' Supp. Resps. and Objs. to Defs.' First Set of Interrogatories, Response No. 4-1 (refusing to answer interrogatories regarding Defendants' alleged selection of inferior funds because those allegations are "not part of the Third Amended Complaint") (Exhibit I to the Declaration of Dennis F. Kerrigan (Docket 145)).

[6]    *See* Pls.' Am. Resps., Response No. 2 ("Plaintiffs specifically disavow seeking relief based upon any misrepresentations or omissions by Nationwide ....").

[7]    *See* Pls.' Mot. for Leave to File Third Am. Compl. at 1-2 (stating that "the proposed complaint ... deletes all allegations concerning the defendants' alleged breach of contract").

[8]    *See, e.g.*, Transcript of April 4, 2003, Deposition of Plaintiffs' putative class certification expert Samuel Issacharoff (Ex. A to the Declaration of Dennis Kerrigan in Support of Defs.' Mot. for Summary Judgment) at 53-55, 58 (expressing "reservation[s]" and "concern[s]" that claims regarding "adding or eliminating funds based on whether or not they would make payments" would be difficult to prove on a class basis); *id.* at 204-207 (noting that different disclosures about the challenged payments could affect the class certification analysis); Pls.' Supp. Resps. and Objs. to Defs.' First Set of Interrogatories, Response Nos. 4, 5, 6 (refusing to answer interrogatories regarding alleged self dealing, receipt of kickbacks, and selection of inferior funds or selection of funds based only on willingness to make payments because those allegations are "not part of the Third Amended Complaint"); Pls.' Mot. for Leave to File Third Am. Compl. at 4 (stating that breach of contract claims are being dropped "in order that breach of contract issues not become the focus" of discovery or class certification proceedings).

4

After the close of class certification discovery, Defendants moved for summary judgment on the basis of Plaintiffs' interrogatory answers. In response, Plaintiffs recanted those answers, and submitted new ones. Their re-written answers alleged that Plaintiffs received accumulation units when they invested money in their variable annuity contracts; that those units were "plan assets" under ERISA; and that Defendants wrongfully caused those units to diminish in value by receiving the challenged payments from the mutual funds. *See* Pls.' Am. Resps., Response No. 2 at 2-3.

Defendants renewed their motion for summary judgment and addressed Plaintiffs' altered interrogatory answers. *See* Defs.' Rev. Mem. of Law in Support of Defs.' Mot. for Summary Judgment (Defs.' Mem.) (Docket 186). Plaintiffs' opposition to that revised motion confined their new allegations regarding the diminishment of the accumulation units as plan assets to the back of their brief, where they were characterized as a "fall-back position." Pls.' Opp. at 34-37. Plaintiffs continued to argue primarily that the payments that Defendants allegedly received were "plan assets" and that Defendants *became* ERISA fiduciaries *because* Defendants received them. *See id* at 1, 14. Indeed, Plaintiffs asserted that "[i]f the Court holds that Nationwide constitutes a fiduciary as to the revenue sharing payments, it need not address any issues relating to the accumulation units." *Id.* at 34.

### B. Plaintiffs' Factual Allegations and Legal Theories at and after the Summary Judgment Hearing

At the June 1 summary judgment hearing, Plaintiffs yet again changed their claim. As described above, Plaintiffs previously had asserted that Defendants' alleged receipt of payments from the mutual funds simultaneously created and violated an ERISA duty *because* the payments were plan assets. *See supra* at 3. On June 1, however, Plaintiffs claimed that Defendants'

5

alleged receipt of payments violated ERISA *regardless* of whether the payments were "plan assets" under ERISA.

Plaintiffs justified this new theory by asserting that since Defendants had fiduciary duties to the plans with regard to the accumulation units, that was sufficient to create an ERISA fiduciary duty with respect to the challenged payments. However, despite repeated questions from the Court, Plaintiffs never explained *how* Defendants' alleged ERISA fiduciary duty regarding the accumulation units was meaningfully connected to Defendants' receipt of the payments. *See* Transcript of June 1, 2004, Oral Argument (Docket 231) ("Tr.") at 38, 42-44, 47-48, 50, 52-53. For example, the Court properly asked: "What has happened at the expense of the plan?" *Id.* at 42. Plaintiffs had no adequate response, conceding that no money was taken from the plan and saying that the only harm was that the payments were not given as a gift to the plan by Defendants. *Id.* at 43.

In making their new claim, Plaintiffs conceded that the payments were not made from money belonging to the plans and would not be traced back to plan assets. And Plaintiffs admitted that Defendants' alleged fiduciary duty with regard to the accumulation units did not necessarily make Defendants a fiduciary regarding the challenged payments.[2]

Plaintiffs' new Fourth Amended Complaint echoes Plaintiffs' oral argument -- and similarly fails to connect the accumulation units (and Defendants' alleged exercise of authority or control with respect to their management or disposition), on the one hand, and Defendants'

---

[2]    *See* Tr. at 85-86 ("Finally, on this thing -- well, they can be a fiduciary as to . . . accumulation units, but not as to the revenue sharing payments. That's . . . a basic principle, as you pointed out, . . . . but all we're saying is not that this automatically makes them a fiduciary as to that, but it's one of the reasons it informs the fact as to why the revenue sharing payments are plan assets . . . .").

6

alleged receipt of payments from the mutual funds under separate contracts, on the other. Instead, the Fourth Amended Complaint contains only conclusory allegations that the challenged payments "are paid solely as a result of Nationwide's position as a fiduciary as to the accumulation units," Fourth Am. Compl. ¶¶ 53-54 (Docket 235), and that Defendants used their "possession of [the accumulation units] to generate the revenue sharing payments which [they] pocket," *id.* ¶¶ 56-57. Plaintiffs make no allegation, and have offered no proof, regarding *how* Defendants used their alleged authority and control respecting the management or disposition of the units to generate the payments.

Plaintiffs' latest complaint also repeats their earlier claim that "the revenue sharing payments themselves constitute plan assets under the functional approach." *Id.* ¶ 54. However, Plaintiffs repeatedly add that Defendants are liable "regardless of whether the revenue sharing payments constitute plan assets in Nationwide's hands," *see id.* ¶¶ 56, 57, and the Fourth Amended Complaint replaces earlier references to the challenged payments as "plan assets" with references to "revenue sharing payments." *Compare, e.g., id.* at ¶¶ 1, 2, 43, 60 *with* Third. Am. Compl., ¶¶ 1, 2, 42, 45 (Docket 95).

## ARGUMENT

Summary judgment is appropriate here because Plaintiffs have still failed -- despite countless opportunities -- to show how or why Defendants owed or breached any ERISA fiduciary duty with respect to any payments they received from the mutual funds. ERISA is concerned with preventing fiduciaries from improperly exercising authority and control with respect to the management or disposition of plan assets. *See, e.g., Financial Institutions Retirement Fund v. Office of Thrift Supervision*, 766 F. Supp. 1302, 1310 (S.D.N.Y. 1991) (ERISA fiduciary duties "protect the assets of the plan for the plan beneficiaries"). The big hole

7

in the middle of Plaintiffs' case is that they cannot connect their allegation that Defendants exercised authority or control over plan assets to their allegation that Defendants violated ERISA by receiving the challenged payments. The hole is only made wider by the fact that Plaintiffs' allegation that Defendants had some authority or control over the accumulation units is contradicted by the relevant agreements. To the extent that Plaintiffs seek to sidestep this hole by repeating their allegation that the challenged payments were themselves ERISA "plan assets," they are blocked by their two admissions that the payments were not made out of plan assets and will not be traced to plan assets. In short, the alternatives presented to the Court are to grant summary judgment to Defendants or to expand ERISA liability beyond well-established boundaries.

### A. Defendants' Fiduciary Duties, If Any, Were Limited to Their Exercise of Authority or Control Over the Accumulation Units

Under ERISA, an entity is a fiduciary only "to the extent" it is exercising authority or control with respect to the management or disposition of plan assets. *See* 29 U.S.C. § 1002(21)(A); *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000).[10] Thus, "a person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only 'to the extent' that he has or exercises the described authority or responsibility." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987); *see also Shultz v. Texaco, Inc.*, 127 F. Supp. 2d 443, 451 (S.D.N.Y. 2001) ("[A] person is a fiduciary only with respect to those

---

[10] *See also* 29 C.F.R. § 2509.75-8 ("A fiduciary with respect the plan who is not a named fiduciary is a fiduciary only to the extent that he or she performs one or more of the functions described in section 3(21)(A) of the Act. The personal liability of a fiduciary who is not a named fiduciary is generally *limited to the fiduciary functions which he or she performs* with respect to the plan.") (emphasis added). There is no allegation in this case that Defendants are named fiduciaries in the plan documents.

8

portions of a plan over which he exercises discretion or control. Thus, a claim for a breach of fiduciary duties is only viable if the person accused of such a breach is a fiduciary with respect to the particular activity being challenged.") (citation omitted).[11] This limitation on ERISA liability is commonly explained in the cases as meaning that that a fiduciary can wear "two hats," sometimes acting in a "corporate" capacity, and sometimes acting in "fiduciary" capacity. *See Pegram*, 530 U.S. at 225. Consistent with this basic principle, Plaintiffs have conceded that Defendants are sometimes free of any fiduciary obligation to them. *See* Transcript of November 6, 2003, Discovery Hearing Before Magistrate Judge Garfinkel at 5 (Docket 169) (Argument of Roger Mandel) ("[Defendants are] not a general purpose fiduciary, they're not a trustee, they're not a fiduciary for all purposes.").

When a party is not exercising its fiduciary responsibilities, it may take actions for its own benefit -- even if those actions have adverse consequences for the plan. *See Pegram*, 530 U.S. at 225; *Friend*, 35 F.3d at 470. Thus, in *Pegram*, even though the defendant HMO was an ERISA fiduciary, that status did not extend to the patient treatment decisions it made even though those decisions benefited the defendant and reduced plan benefits. Similarly, in *Friend*, the defendant bank did not act as a fiduciary when it refused to extend a line of credit, even though that corporate action rendered plan assets -- over which it was a trustee -- worthless. *See Friend*, 35 F.3d at 470. Likewise, in *Flanigan*, a company that transferred surplus ERISA pension assets in order to receive a higher sale price during a spin off transaction was not acting

---

[11]   *See also Flanigan v. General Electric Co.*, 242 F.3d 78 (2d Cir. 2001); *Friend v. Sanwa Bank California*, 35 F.3d 466 (9th Cir. 1994); *Brandt v. Grounds*, 687 F.2d 895 (7th Cir. 1982); *Gray v. Briggs*, 45 F. Supp. 2d 316 (S.D.N.Y. 1999); *Pension Fund Mid-Jersey Trucking Industry Local 701 v. Omni Funding Group*, 731 F. Supp. 161 (D. N.J. 1990).

9

as a fiduciary when it structured the transaction because the decision was "at its core, a corporate business decision, and not one of a plan administrator." *See Flanigan*, 242 F.3d at 88.

Because an ERISA fiduciary's duties extend only to its *exercise* of authority or control respecting the management or disposition of plan assets, a plaintiff does not state an ERISA claim merely by pointing to some fiduciary duties and then identifying some alleged misconduct that does not involve those duties. *See Pension Fund Mid Jersey Trucking Industry Local 701*, 731 F. Supp. at 173-75 (no ERISA liability when a bank with some fiduciary duties failed to obtain necessary loan documents before releasing plan assets to fund loans); *Gray*, 45 F. Supp. 2d at 328 (no ERISA liability when an investment advisor with some fiduciary duties improperly transferred plan assets to a personal account of a plan trustee); *Brandt*, 687 F.2d at 897 (no ERISA liability when a bank with some fiduciary duties failed to prevent a trustee's embezzlement of plan assets).

Under these well-settled rules, Plaintiffs here do not state a claim by merely pointing to an alleged fiduciary duty that Defendants had with respect to the accumulation units and then alleging that Defendants received payments that were not used to benefit the plan. If that sort of conclusory allegation was sufficient, ERISA's careful distinction between "fiduciary" and "corporate" actions would be rendered meaningless.

**B.    Plaintiffs' Claim Does Not Arise out of the Exercise of Authority or Control over Plan Assets by Nationwide**

Defendants are entitled to judgment as a matter of law because Plaintiffs have failed to connect Defendants' exercise of their alleged fiduciary duties with respect to the accumulation units to their claim that Defendants violated ERISA by receiving the challenged payments. Plaintiffs allege that Defendants were fiduciaries because they exercised authority and control