with respect to the management or disposition of accumulation units by "holding them for the benefit of the Plans, canceling them to pay its fees, transferring them to use as collateral for loans, canceling them to pay loans, canceling them to purchase annuities and canceling them to make cash payments." Fourth Am. Compl. ¶ 53.[12/] To have a claim under ERISA, Plaintiffs must show how that same conduct -- the alleged holding, canceling, and transferring of the units -- gave rise to Defendants' alleged breach of fiduciary duty. Absent such a connection, Defendants are entitled to judgment as a matter of law. *See, e.g., F.H. Krear & Co.*, 810 F.2d at 1259; *Gray*, 45 F. Supp. 2d at 328 (rejecting breach of fiduciary duty claim because challenged transactions "bore no relation to the basis for [defendants]' fiduciary status, namely their provision of investment advice to the Plans"); *Pension Fund Mid Jersey*, 731 F. Supp. at 173-75 (rejecting breach of fiduciary claim because challenged release of plan assets had nothing to do with the alleged basis for the defendant's fiduciary status: "Having found that [the bank] was not a fiduciary beyond its limited role in investing [plan] monies in short term investments . . . this Court is not presented with any claim that [the bank] breached its fiduciary duties in that regard.").

Plaintiffs here rely upon Defendants' alleged authority or control with respect to the management and disposition of the accumulation units to claim that Defendants were fiduciaries, but they never allege that Defendants improperly exercised that authority or control in a way that gives rise to their ERISA claim. Specifically, Plaintiffs do not allege that Defendants'

---

[12/]   *See also* Tr. at 5:8-13 ("We believe that [the units] are fiduciary assets to them because they exercise all sorts of authority and control over them. They buy and sell them as needed based upon the . . . various participants changing their account allocations and that sort of thing.").

11

cancellation, transfer or sale of the accumulation units caused Defendants to receive the challenged payments.[13/] For this reason, Defendants are entitled to judgment as a matter of law.

In a nod to the ERISA principle described above, Plaintiffs do make some modest efforts in their new Complaint to connect Defendants' alleged duties to their receipt of the challenged payments. The failure of those efforts only serves to demonstrate the hole in the middle of Plaintiffs' ERISA claim. Plaintiffs first try to show the required connection by claiming that the payments are "effectively based on the amounts of the accumulation units." Fourth Am. Compl. ¶ 54. That allegation is insufficient under ERISA. As Defendants previously have noted, a payment may be *calculated* to equal a percentage of a sum of money without *coming from* that sum of money. See Defs.' Mem. at 13-14. Indeed, Plaintiffs no longer insist that the payments are plan assets. Absent a showing that the payments came from the accumulation units, the allegation that they are calculated on a percentage basis does not help Plaintiffs establish that Defendants acted in a fiduciary capacity when accepting them.

More generally, Plaintiffs simply assert that there is a relationship between Defendants' alleged fiduciary duties and Defendants' receipt of the payments, without explaining either the relationship or its relevance under ERISA. Thus, Plaintiffs vaguely claim that the payments were "paid solely as a result of Nationwide's position as a fiduciary as to the accumulation units . . . and not through any non-fiduciary actions or status of Nationwide," Fourth Am. Compl. ¶ 54, and that Nationwide was "using its possession of [the accumulation units] to generate the revenue sharing payments," *id.* at ¶ 56. But this broad-brush phrasing merely sidesteps the

---

[13/]   As noted above, while Plaintiffs alleged in their summary judgment opposition brief that Defendants' actions "diminished" the units, that unsupportable allegation does not appear in the Fourth Amended Complaint.

12

central question: what *actions* taken by Defendants with regard to the accumulation units resulted in the challenged payments? Plaintiffs have not described any *exercise* of authority or control respecting management or disposition of the units that resulted in the payments. Because Plaintiffs have not connected Defendants' duties to the challenged payments, they have no ERISA claim.

The cases cited by Plaintiffs further illuminate the hole in Plaintiffs' Fourth Amended Complaint. For example, Plaintiffs repeatedly referred to *Lowen v. Tower Asset Management*, 829 F.2d 1209 (2d Cir. 1987) during oral argument. *See* Tr. at 56-58. But in *Lowen*, there was ERISA liability because the very same action that constituted the exercise of authority and control over the management or disposition of plan assets -- the fiduciary defendants' discretionary decision to invest the plan's assets in particular companies -- directly caused the challenged side payments and other benefits those fiduciaries received. *See* 829 F. 2d at 1214. In other words, the plaintiffs in *Lowen* -- unlike Plaintiffs here -- established a connection between the duty and the challenged payments.

Similarly, Plaintiffs' assorted hypotheticals and analogies during the oral argument all involved a fiduciary that had abused the particular authority or control over the management or disposition of plan assets that made it a plan fiduciary. For example, Plaintiffs imagined a fiduciary charged with storing a piece of art owned by an ERISA plan. Plaintiffs asserted that, under ERISA, if the fiduciary decided to publicly display the art and charge admission, the admission money would belong to the plan. *See* Tr. at 39. Assuming for the sake of argument that Plaintiffs are right, their example only illustrates the principle that ERISA governs a fiduciary's *exercise* of fiduciary control. Under Plaintiffs' hypothetical, the entity charged with storing the art would apparently be exercising authority and control with respect to the

13

management of a plan asset (by deciding where and how it will be located), and would violate ERISA if it used that particular authority to show (instead of store) the art for its own profit. In other words, the hypothetical involves precisely the connection between the duty and the challenged action that is absent here.

This example -- like *Lowen* -- would be relevant only if Defendants held, canceled, transferred, or sold the accumulation units in a particular way, and were then compensated for exercising that particular authority in that particular way. But Plaintiffs have not made any such connection. Indeed, Plaintiffs concede that Defendants did not act as investment advisors and that Plaintiffs -- not Defendants -- made their own investment decisions. Under the annuity contracts, Plaintiffs' investment decisions drove any resulting cancellation, transfer, or sale of the units. *See* Fourth Am. Compl. ¶ 25; Pls.' Rule 56(a)2 Statement at 5 (Docket 207) ("Admitted that Plans and their Participants chose the mutual funds in which they invested."); *see also infra* at 15-16 & n.16.

Plaintiffs' failure to connect the challenged payments to any improper action by Defendants with respect to the accumulation units explains Plaintiffs' inability to identify any harm to them caused by those payments. During the June 1 hearing, the Court repeatedly asked how the challenged payments hurt the Plans. Plaintiffs' only response was to say that the Plans would have more money if the payments were given to them. *See, e.g.*, Tr. at 65 ("[T]his money can definitely be used to benefit me and they are keeping it at my expense, because you can see the difference if they simply give me the money back."); *see also id.* at 42-43. But ERISA is not so infinitely expandable as to cover any situation when money could have been given as a gift to the plan but was not. As the Court stated during the hearing, "[a]ny dollar can be used for the benefit of the plan." Tr. at 50. Plaintiffs' inability to explain why they are entitled to money

14

paid to Defendants by third parties reflects Plaintiffs' ongoing failure to conform their Complaint to ERISA.

C. **Defendants Were Custodians, Not Fiduciaries, Regarding the Accumulation Units**

Plaintiffs' latest Complaint assumes that Defendants were ERISA fiduciaries by virtue of exercising authority or control over the management or disposition of the accumulation units. Defendants need not show that this assumption is wrong for purposes of this motion because, for the reasons set forth above, Defendants did not violate ERISA with regard to the challenged payments *even if* they were considered fiduciaries regarding the units. *See supra* at 7-14. However, the undisputed facts also require summary judgment for Defendants on Plaintiffs' claim that Defendants were ERISA fiduciaries with respect to the units.

The plans and their participants in this case allegedly purchased variable annuities from Nationwide Life Insurance Company ("Nationwide Life"). As described below, the governing annuity contracts precisely set forth the obligations of Nationwide Life to accept payments, execute the plans' allocation of this money, account for and track the participants' designated investment choices, and make various payouts chosen by the plans on or before annuitization. All of these actions were directed by the plans or their participants, and none of these actions amounted to fiduciary authority or control over the management or disposition of any plan assets by Defendants. *See Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 125 F.3d 715, 721-22 (9th Cir. 1997) ("A person or entity who performs only ministerial or

15

administrative functions within a framework of policies, rules, and procedures established by others is not an ERISA fiduciary.").[14]

As Plaintiffs have admitted, Defendants did not determine which funds the plans and participants would invest in and did not make any recommendations about such investments.[15] Nationwide Life performed only the purely ministerial function of executing and tracking the plans' and participants' investment choices and, at the contractually-designated time, calculating the value of their annuities.[16] Defendants only followed the directions of the plans and their participants, and Plaintiffs have expressly dropped any claim that Defendants breached those contractual obligations. *See* Pls.' Mot. for Leave to File Third Am. Compl. at 1-2 (stating that

---

[14] *See also Pension Fund Mid-Jersey Trucking Industry Local 701 v. Omni Funding Group*, 731 F. Supp. 161, 175 (D. N.J. 1990) (holding that bank was not a fiduciary regarding plan funds it held because it "followed strict guidelines regarding the payout of monies [and] provided no guidance as to [plan investments]"); *Robbins v. First American Bank*, 514 F. Supp. 1183, 1190-91 (N.D. Ill. 1981) (bank that was a "servicing agent" for a plan investment was not a fiduciary because it was "never itself involved with the administration or management of the [plan] itself or in making its investment policies and decisions").

[15] *See* Plaintiffs' Rule 56(a)2 Statement at 5 ("Admitted that Plans and their Participants chose the mutual funds in which they invested."); *see also* Flyte Contract (Ex. 1(A) to the Dec. of Mark Bieter in Support of Defs.' Mot. For Summary Judgment) (Docket 187) at N031 ("The Contractholder shall advise the Company in writing of a Fund or Funds to which each Deposit is to be credited.").

[16] *See, e.g.*, Flyte Contract at N029 (stating that all plan deposits will be credited to units within a specified time period); *id.* at N029-30 (stating how to calculate unit value); N033-034 (stating that, upon annuitization, the company will cancel a specified number of units to fund the annuity); *id.* at N032 (stating that the company will cancel units to facilitate a plan's exchange of investments between funds and stating how to calculate the proper number of units to be transferred and the time period in which the exchange must be effectuated); *id.* at N040 (stating that the Company will cancel a plan's units within a specified period of time if a plan wishes to transfer its investment); *see also* Anderson Contract (Exhibit 2(1) to Dec. of Mark Bieter in Support of Defs.' Mot. For Summary Judgment) (Docket 187) at N081-82 (describing the units and stating how to calculate their value).

"the proposed complaint . . . deletes all allegations concerning the defendants' alleged breach of contract").

In particular, Defendants' relationship to accumulation units allegedly received by the plans did not make them fiduciaries. An accumulation unit is merely "an accounting unit of measure used to calculate the Variable Account Contract Value." Best of America IV 1998 Prospectus (Exhibit 12 to Dec. of Mark Bieter in Opp. to Class Certification) (Docket 179) at N344. When a plan participant withdraws money from (or becomes eligible to begin receiving annuity payments under) a variable annuity contract, the amount of those payments is determined by calculating the value of the relevant accumulation units. *See id.* at N372 ("Contract Value" is determined by calculating unit value and any fixed investments by the plan); N378-79 (annuity payment amounts based on Contract Value). As described above, the annuity contracts provided strict rules for how the accumulation units are to be valued and accounted for by Defendants.[17]

Thus, Defendants were not fiduciaries regarding the units because "the mere exercise of physical control or the performance of mechanical administrative tasks generally is insufficient to confer fiduciary status." *Beddall v. Sate Street Bank and Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998); *see also Arizona State Carpenters Pension Trust Fund*, 125 F.3d at 721-22 ("A person or entity who performs only ministerial or administrative functions within a framework of policies, rules, and procedures established by others is not an ERISA fiduciary."); *New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions*, 235 F. Supp. 2d 123, 126 (N.D.N.Y. 2002) (same). Indeed, the governing Department of Labor regulation has long made clear that a party does not become a fiduciary by calculating plan benefits, processing plan

---

[17]    *See supra* note 16 and accompanying text.

17

claims, or preparing reports concerning plan benefits. *See* 29 C.F.R. § 2509.75-8 (Question and Answer D-2). This makes sense. A contrary rule -- such as the one apparently advocated by Plaintiffs -- would make any entity that sold investment products to ERISA plans into unwitting fiduciaries. In the long run, such a regime would greatly reduce the scope of investment opportunities available to plans and their participants, as providers shunned the market to avoid the costs and risks of ERISA fiduciary status.[18]

Pursuant to these principles, the Department already has said that Defendants here were mere custodians of the plans' investments in the units. *See* November 19, 1998, Letter From Department of Labor to Peter Wiberg ("Participants may direct the investment of their accounts in investments offered by the custodian, Nationwide Life Insurance Company.") (Ex. 34 to the Dec. of Mark Bieter in Support of Defs.' Opp. to Class Certification (Docket 179). Accordingly, Defendants did not have fiduciary obligations regarding the units and, for this reason too, are entitled to summary judgment on Plaintiffs' ERISA claim.[19]

---

[18] *Cf. Mass Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 148 n.17 (1985) (describing the Court's reluctance to tamper with ERISA carefully constructed enforcement scheme and recognizing Congress' concern that "the cost of federal standards discourage the growth of private pension plans").

[19] Plaintiffs asserted at the June 1 hearing that "it was not [their] understanding [Defendants] were going to deny that they are a fiduciary as to the accumulation units." *See* Tr. at 87. In fact, Defendants made the same denial in their December 2003 class certification brief: "Plaintiffs' shifting allegations reflect their varying efforts to find a way to shoehorn the facts here into an ERISA claim, even though Defendant Nationwide Life acts only as a 'Custodian' with respect to the variable annuity contracts." Defs.' Opp. to Pls.' First Am. Mot. For Class Certification at 18 (Docket 179); *see also id.* at 20 ("Performing administrative acts regarding plan assets does not make a person a fiduciary. Similarly, merely receiving or holding plan assets does not make that person a fiduciary.") (footnotes omitted).

### D. Plaintiffs Have Failed to Establish that the Challenged Payments Were Plan Assets Under ERISA.

Plaintiffs' Fourth Amended Complaint also alleges that Defendants *became* ERISA fiduciaries *because* they received ERISA "plan assets" in the form of the challenged payments. *See* Fourth Am. Comp. ¶¶ 54-55. As noted in Defendants' prior summary judgment memorandum, this claim fails because the undisputed facts show that the payments were not ERISA "plan assets." *See* Defs.' Mem. at 8-10.

Plaintiffs now admit that the mutual funds and their affiliates did not possess "plan assets," and so could not possibly use "plan assets" to make the challenged payments. *See* Nov. 6 Tr. at 47 ("We concede that the dollars in the hands of the mutual funds are not plan assets . . . ."); *see also* Pls.' Opp. at 15.[20] Instead, the Fourth Amended Complaint alleges that the challenged payments *became* ERISA plan assets when they were received by Defendants under a "functional approach" to ERISA liability. According to Plaintiffs, the payments were plan assets because "they would not have been paid but for the fact that Nationwide exercises authority and control over (i.e. is a fiduciary as to) the accumulation units, which are plan assets" and "they are effectively based on the amount of the accumulation units, which are plan assets." Fourth Am. Compl. ¶ 54; *see also* Tr. at 83 ("The reason we refer back to the fact that they are a fiduciary as to the accumulation units is that the fact they are in a fiduciary informs the fact as to why under

---

[20] This is a substantial change of position from that presented in the Third Amended Complaint. In that document, Plaintiffs stated "Crucially, all amounts invested by the Plans and their participants in the mutual funds through Nationwide's variable annuity contracts constituted plan assets . . . Thus, the skimmed plan assets deducted by the mutual funds directly from the amounts invested in them by the Plans and their participants and transferred by the mutual funds to Nationwide constituted plan assets over which Nationwide exercised authority or control." Third Am. Compl. ¶ 22. This "crucial[]" allegation is nowhere to be found in Plaintiffs' Fourth Amended Complaint.

19

the functional approach, the revenue sharing payments should be treated as plan assets."). But this new approach to ERISA plan assets has no basis in law, and reflects an effort to circumvent well-established boundaries of ERISA liability.

ERISA "plan assets" are identified by looking to the plan documents, plan contracts, or Department of Labor regulations. *See Reich v. Goldstein*, 839 F. Supp. 1068, 1073 (S.D.N.Y. 1993); *Lopresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir. 1997); *NYSA-ILA Medical & Clinical Services Fund v. Catucci*, 60 F. Supp. 2d 194, 201 (S.D.N.Y. 1999). None of the documents, contracts or regulations at issue here support Plaintiffs' position. To the contrary, the undisputed facts demonstrate that the challenged payments from the mutual fund's own assets were *not* ERISA plan assets. The challenged payments are not covered or addressed by the relevant documents and contracts,[21] or any Department of Labor regulation,[22] and Plaintiffs have conceded they will not attempt to trace those payments back to any plan assets.[23] Furthermore, even if Plaintiffs sought to retract their strategic decision not to attempt to trace the payments back to some plan assets, such tracing would be impossible as a matter of law because ERISA and Department of Labor regulations expressly state that the assets of a registered investment company such as a mutual fund are not plan assets, a rule that is echoed in Department of Labor regulations.[24]

---

[21] *See, e.g.*, Flyte Contract at *passim*; Anderson Contract at *passim* (Exhibits 1(A) and 2(1) to the Dec. of Mark Bieter in Support of Defs.' Motion for Summary Judgment).

[22] *See* 29 C.F.R. §§ 2510.3-101 & 2510.3-102 (Department of Labor plan asset regulations).

[23] *See* Pls.' First Am. Mem. in Support of Pls.' First Am. Mot. for Class Certification at 19 (Docket 129) ("No tracing is required under Plaintiffs' theory . . . .").

[24] *See* 29 U.S.C. § 1101(b)(1); 29 C.F.R. § 2510.3-101(a)(2).

The "functional approach" does not rescue Plaintiffs from these undisputed facts. *First*, the "functional approach" is not used by courts to define whether an asset is a "plan asset" under ERISA. Rather, courts occasionally use the functional approach to determine whether a person is "exercising authority or control" over a plan asset, which is an entirely separate issue. *See, e.g. Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (1987); *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131 (7th Cir. 1983). *Second*, even under the broad dicta that Plaintiffs rely on from the *Acosta v. Pac. Enters., Inc.*, 950 F.2d 611, 620 (9th Cir. 1992) case, a determination that an asset is an ERISA "plan asset" requires a review of the facts *regarding that asset itself* -- not facts regarding other aspects of the parties' relationship. *See Acosta*, 950 F.2d at 620. Thus, the issue of whether the challenged payments are a plan asset has nothing to do with the issue of whether the accumulation units are plan assets. For example, in *Acosta*, the defendants were plan fiduciaries, but that status was not considered at all in determining whether the relevant asset -- a list of plan participants -- was itself a plan asset. *See Acosta*, 950 F.2d at 617, 620.

No case cited by Plaintiffs analyzes a defendant's alleged fiduciary status regarding *different* assets to determine whether a particular asset under consideration belonged to an ERISA plan. Instead, all the employee and employer contributions cases cited by Plaintiffs turn on the particular facts relevant to the assets at hand -- *i.e.*, whether the relevant assets were owned by or owed to the plan by virtue of a contract, collective bargaining agreement, Department of Labor regulation, or were comparably earmarked. *See* Defs.' Reply at 15-17. Plaintiffs cannot turn the challenged payments here into "plan assets" by making allegations regarding the accumulation units.

Plaintiffs have now abandoned all their other theories as to why the challenged payments were plan assets. Accordingly, the two undisputed facts -- that (1) the payment were

21

undisputedly made by mutual funds and fund affiliates from their own assets; and (2) Plaintiffs will not trace any dollars from the plans to those payments -- mean that, as a matter of law, those payments themselves were not plan assets and Defendants do not become ERISA fiduciaries by virtue of having received them. Accordingly, Defendants' Motion For Summary Judgment should be granted, and this action should be dismissed.

E.  **If This Action Is Allowed To Proceed, Plaintiffs Should File a New Motion for Class Certification**

Plaintiffs' new factual allegations and legal theories are deficient as a matter of law and should be dismissed. However, if the case is allowed to proceed, then Plaintiffs should be ordered to file a new motion for class certification that seeks certification of the claims now pled in the Fourth Amended Complaint. Plaintiffs' current motion for class certification is based on theories that Plaintiffs have long since abandoned, such as the claims that the challenged payments were "fruits of plan assets" or were "skimmed plan assets" that "directly reduce the value of Class members' investments." Pls.' Class Cert. Mem. at 1-2. Similarly, Plaintiffs' class certification memorandum also relies upon their now-discarded theory that the payments "cause[d] the Units to decline in value on a one-to-one basis." *Id.* at 13, 14.

Plaintiffs' current allegations regarding Defendants' alleged exercise of authority and control over the accumulation units are also different from those presented in their Motion for Class Certification. In particular, the class certification memorandum never states that Defendants violated ERISA by "using [their] possession of [the accumulation units]" to generate the payments, as Plaintiffs now allege. Assuming Plaintiffs' new theory has enough merit to survive dismissal, their new approach to ERISA may raise substantial individualized issues. It is

22

therefore essential that Plaintiffs be required to explain exactly why they believe their current claims are suitable for class treatment.

Similarly, the pending certification memorandum also does not allege that the challenged payments are plan assets under a "functional approach," as Plaintiffs now claim in opposition to summary judgment. Instead, Plaintiffs' certification papers assert that the payments are plan assets because they are "fruits of plan assets," a claim they support solely by citing a decision from the Eastern District of Texas that appears nowhere in their summary judgment papers. *See* Plaintiffs' Class Certification Memorandum at 13 (citing *Health Care Service Corp. v. Tap Pharmaceutical Prods., Inc.*, 274 F. Supp. 2d 807 (E.D. Tex. 2003)). If Plaintiffs' new theory that the payments are plan assets based on a "functional approach" survives dismissal at this point, it would necessarily raise a host of individualized issues regarding the relationships between the plans, participants, funds, fund affiliates, and Defendants. If Plaintiffs survive summary judgment by virtue of their latest shift in legal theories, they should be required to use their current theory as the basis for any claim to class certification.

...

## CONCLUSION

For all the reasons stated above, Defendants' Motion for Summary Judgment should be granted and this action should be dismissed with prejudice. If the case is allowed to proceed, Plaintiffs should be ordered to file revised class certification papers to reflect the allegations and theories on which they will have survived summary judgment.

Respectfully submitted,

Defendants Nationwide Financial Services Inc.
and Nationwide Life Insurance Co.

By: *[signature]*

Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone:   (860) 293-3500
Facsimile:   (860) 293-3555

Charles C. Platt, Esq. (CT 23036)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
New York, NY 10019-5389
Telephone:   (212) 230-8800
Facsimile:   (212) 230-8888

Eric Mogilnicki, Esq.
Samuel Broderick-Sokol, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
2445 M Street, N.W.
Washington, D.C. 20037
Telephone:   (202) 663-6000
Facsimile:   (202) 663-6363

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing Defendants' Supplemental Memorandum of Law in Support Defendants' Motion for Summary Judgment was served via email and overnight mail on this 6th day of July, 2004, on the following counsel of record:

Richard A. Bieder, Esq.
Antonio Ponvert III, Esq.
Koskoff, Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

Gregory G. Jones, Esq.
Law Firm of Gregory G. Jones, P.C.
603 South Main Street, Suite 200
Grapevine, TX 76051

Marc R. Stanley, Esq.
Roger L. Mandel, Esq.
Stanley, Mandel & Iola
3100 Monticello Avenue
Suite 750
Dallas, TX 75205

[signature]