2

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LOU HADDOCK, as trustee of the Flyte Tool & Die
Company, Inc. 401-K Profit Sharing Plan, PETER
WIBERG, as trustee of the Crown Tool & Die Co.
Inc. Salary Deferral Profit Sharing, ALAN GOUSE,
as trustee of Greater Hartford Easter Seal
Rehabilitation Center, Inc., Tax Sheltered Annuity
Plan and the Money Accumulation Pension Plan for
the Employees of Hartford Easter Rehabilitation
Center, Inc., Trust, EDWARD KAPLAN, as trustee of
the Hartford Roofing 401(k) Profit Sharing Plan and
the Hartford South, L.L.C. 401(k) Profit Sharing Plan,
and DENNIS FERDON, as trustee of the Anderson &
Ferdon P.C. 401(k) Profit Sharing Plan,

      PLAINTIFFS,

         v.

NATIONWIDE FINANCIAL SERVICES INC., and
NATIONWIDE LIFE INSURANCE CO.,

      DEFENDANTS.

CIVIL ACTION NO.:

3:01CV1552 (SRU)

August 27, 2004

---

## SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ....................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.    PLAINTIFFS' NEW QUID PRO QUO ALLEGATION IS UNSUPPORTED. .............. 2

II.   DEFENDANTS' FIDUCIARY DUTIES, IF ANY, WERE LIMITED TO THE
      EXERCISE OF AUTHORITY OR CONTROL OVER THE ACCUMULATION
      UNITS. ................................................................................................................ 4

      A.    Defendants Were Not ERISA Fiduciaries For All Purposes. ................................. 4

      B.    Plaintiffs' Claim Does Not Arise Out Of Defendants' Exercise Of
            Authority Or Control Over Plan Assets. ............................................................ 7

III.  DEFENDANTS WERE CUSTODIANS, NOT FIDUCIARIES, REGARDING
      THE ACCUMULATION UNITS. ............................................................................ 9

IV.   PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE CHALLENGED
      PAYMENTS WERE PLAN ASSETS UNDER ERISA. ............................................. 13

V.    NEW CLASS CERTIFICATION BRIEFING IS NECESSARY. .................................. 16

CONCLUSION ........................................................................................................... 17

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Arizona State Carpenters Pension Trust Fund v. Citibank,
125 F.3d 715 (9th Cir. 1997) ...................................................................10

Board of Trustees of Bricklayers and Allied Craftsmen Local 6 v. Wettlin
Associates, 237 F.3d 270 (3rd Cir. 2001) ...............................................10

Beddall v. State Street Bank and Trust Co.,
137 F.3d 12 (1st Cir. 1998).................................................................9, 10

Brandt v. Grounds,
687 F.2d 895 (7th Cir. 1982) ....................................................................5

Brink v. DaLesio,
496 F. Supp. 1350 (D. Md. 1980) .............................................................7

Brink v. DaLesio,
667 F.2d 420 (4th Cir. 1982) ....................................................................7

Chicago Board Options Exch., Inc. v. Connecticut General Life Insurance Co.,
713 F.2d 254 (7th Cir. 1983) ....................................................................7

Coger v. Connecticut,
309 F. Supp. 2d 274 (D. Conn. 2004)........................................................3

Ed Miniat, Inc. v. Globe Live Insurance Group, Inc.,
805 F.2d 732 (7th Cir. 1986) ....................................................................6

Ellis National Bank of Jacksonville v. Irving Trust Co.,
786 F.2d 466 (2d Cir. 1986)....................................................................17

F.H. Krear & Co. v. Nineteen Named Trustees,
810 F.2d 1250 (2d Cir. 1987)....................................................................5

Flanigan v. General Electric Co.,
242 F.3d 78 (2d Cir. 2001)........................................................................6

Friend v. Sanwa Bank California,
35 F.3d 466 (9th Cir. 1994) ......................................................................5

Gray v. Briggs,
45 F. Supp. 2d 316 (S.D.N.Y. 1999).........................................................5

Great-West Life & Annuity Insurance Co. v. Knudson,
534 U.S. 204 (2002) ........................................................................17

Harris Trust & Savings Bank v. Salomon Smith Barney Inc.,
530 U.S. 238 (2000) ........................................................................14

IT Corp. v. General America Life Insurance Co.,
107 F.3d 1415 (9th Cir. 1997) .........................................................9, 10

Kayes v. Pacific Lumber Co.,
51 F.3d 1449 (9th Cir. 1995) ...........................................................14

Lowen v. Tower Asset Management, Inc.,
829 F.2d 1209 (2d Cir. 1987)............................................................8, 15

Midwest Community Health Service, Inc. v. American United Life Insurance Co.,
255 F.3d 374 (7th Cir. 2001) ...........................................................6

N.S. v. Stratford Board of Education,
97 F. Supp. 2d 224 (D. Conn. 2000)...................................................4

Pegram v. Herdrich,
530 U.S. 211 (2000)........................................................................5, 15

Pension Fund Mid-Jersey Trucking Industry - Local 701 v. Omni Funding Group,
731 F. Supp. 161 (D.N.J. 1990) .......................................................5, 10

Robbins v. First Am. Bank of Virginia,
514 F. Supp. 1183 (N.D. Ill. 1981) ...................................................10

Ross v. Shell Oil Co.,
672 F. Supp. 63 (D. Conn. 1997).......................................................3

Tunnell v. United Techs. Corp.,
54 F. Supp. 2d 136 (D. Conn. 1999) ..................................................11

Tyson v. Willauer,
289 F. Supp. 2d 190 (D. Conn. 2003) ................................................3

## DOCKETED CASES[1]

D'Amore v. Stangle & Denigris, Inc.,
Civ. No. 3:94CV01087 (AVC), 1995 WL 704687 (D. Conn. May 19, 1995) ..................14

[1]    Copies of docketed cases are attached hereto as Exhibit A.

Metzler v. Solidarity of Labor Orgs. Health & Welfare Fund, No. 95 Civ. 7247
(KMW), 1998 WL 477964 (S.D.N.Y. Aug. 14, 1998 .......................................................14

## FEDERAL STATUTES AND RULES

29 C.F.R. § 2550.408b-2(e) ...........................................................................................7

Fed. R. Civ. P. 56(e) ....................................................................................................11

Investment Company Act of 1940, Rule 0-1(e)(2) .........................................................16

## STATE STATUTES

Ohio Rev. Code, § 3907.14.............................................................................................16

## INTRODUCTION

Summary judgment is appropriate here because Plaintiffs have failed -- despite countless opportunities -- to show how or why Defendants owed or breached any ERISA fiduciary duty. Plaintiffs have alleged that Defendants exercised authority or control over Plaintiffs' "plan assets," but have not shown how the exercise of that alleged authority or control is connected to their claim that Defendants violated ERISA by receiving payments from mutual funds. Without that connection, Plaintiffs' ERISA claim fails as a matter of law.

This hole in Plaintiffs' case has existed for over three years, and Plaintiffs have raised and then discarded a series of factual allegations and legal theories in an effort to address the problem.[2/] Now, in their latest opposition to summary judgment, Plaintiffs assert that the connection exists because of alleged *quid pro quo* arrangements in which different mutual funds agreed to make payments to Defendants in return for inclusion as investment options in the variable accounts. In Plaintiffs' words:

> Nationwide ... generate[s] the revenue sharing payments by agreeing with the mutual fund families that [Nationwide] will offer their funds in its variable accounts and that, in return, the mutual fund families will pay to Nationwide a percentage of the Plans' investments in their funds.

Plaintiffs' Response, and Memorandum of Law in Support, to Defendants' Supplemental Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Docket 246) ("Pls.' Resp.") at 1.

---

[2/]    *See* Defendants' Opposition to Plaintiffs' First Amended Motion for Class Certification (Docket 179) at 4-7 (describing Plaintiffs' shifting allegations); Defendants' Revised Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Docket 186) at 5-7 (same).

This *quid pro quo* allegation is not set forth in Plaintiffs' recently amended Complaint (Docket 235) nor in Plaintiffs' Local Rule 56(a)2 Statement (Docket 207), nor is it supported by any document, affidavit or other admissible evidence. *See, infra,* Point I. More importantly, this allegation still does not fill the hole in Plaintiffs' case, as it does not connect Defendants' conduct in discharging their alleged ERISA fiduciary duty (exercising authority or control over the accumulation units) to the conduct that allegedly violated ERISA (receiving the challenged payments, allegedly in return for offering certain funds). *See, infra,* Point II. In any event, Defendants were custodians rather than ERISA fiduciaries with respect to the accumulation units. *See, infra,* Point III.

Plaintiffs also claim that the payments from the mutual funds to Defendants "constitute" Plaintiffs' plan assets under a "functional approach." This argument has no merit as a matter of law or fact. *See, infra,* Point IV.[3/]

## ARGUMENT

### I.    Plaintiffs' New *Quid Pro Quo* Allegation Is Unsupported.

Local Rule 56(a)2 requires a party opposing summary judgment to file a statement listing each fact defeating summary judgment and citing an affidavit or other admissible evidence to support each such fact. Plaintiffs' Local Rule 56(a)2 Statement does not state or support Plaintiffs' new *quid pro quo* allegation. *Compare* Pls.' Resp. at 1, 2, 6, 11 *with* Plaintiffs' Local Rule 56(a)2 Statement (Docket 207). This is not surprising, since Plaintiffs' Fourth Amended

---

[3/]    As Defendants have previously explained, the payments at issue were made for services, and were made by and to many different entities. *See* Defendants' Reply Memorandum in Support of Summary Judgment (Docket 222) ("Defs.' Reply") at 2 n.1; Defendants' Supplemental Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Docket 239) ("Defs.' Supp. Mem.") at 1 n.1. However, for ease of presentation, and without waiving any right to later present a full account of these transactions, Defendants will herein refer to the payments at issue as "challenged payments" by "mutual funds" to "Defendants."

Complaint also contains no such factual allegation, even though the Court ordered Plaintiffs to set forth their current theories of liability. *See* Order of June 4, 2004 (Docket 232) at 1. Plaintiffs also never mentioned this *quid pro quo* allegation in their opposition to Defendants' earlier motions for summary judgment (Docket 205), in their motion for class certification (Docket 129), or in their responses to Defendants' interrogatories. Indeed, Plaintiffs previously (and properly) conceded that the challenged payments were for services. *See* Defs.' Reply to Pls.' Local Rule 56(a)2 Statement (Docket 222) at ¶ 17.

Plaintiffs' failure to raise and provide factual support for their *quid pro quo* allegation in their Rule 56(a)2 Statement means that the claim is not properly before the Court. Instead, Plaintiffs' failure to comply with Local Rule 56(a) should "result in the Court's deeming admitted all facts set forth in the moving party's Local Rule 56(a)1 Statement." *Tyson v. Willauer*, 289 F. Supp. 2d 190, 194 (D. Conn. 2003).[4] And while Plaintiffs' Response belatedly offers a handful of citations for the *quid pro quo* allegation, none of them support Plaintiffs' claim. Instead, each of the deposition excerpts, Local Rule 56(a)1 Statement (Docket 118) paragraphs, and service agreements cited by Plaintiffs reveal only that Defendants entered into certain types of contracts with various mutual fund entities. None of these contracts involved:

> Nationwide … agreeing with the mutual fund families that [Nationwide] will offer their funds in its variable accounts and that, in return, the mutual fund families will pay to Nationwide a percentage of the Plans' investments in their funds.

---

[4]     *See also* Local Rule 56(a)3; *Coger v. Connecticut*, 309 F. Supp. 2d 274, 277 (D. Conn. 2004) (facts in defendants' Rule 56(a)1 statement deemed admitted by plaintiff who filed blanket denial without citation to affidavits or exhibits); *Ross v. Shell Oil Co.*, 672 F. Supp. 63, 66 (D. Conn. 1997) (plaintiff's failure to comply with Local Rule 56(a) a "substantial factor" in granting defendant's summary judgment motion; rule "is strictly interpreted, and failure to properly controvert facts in opposing a summary judgment motion is an appropriate consideration in granting the motion").

*Compare* Pls.' Resp. at 1 *with* sources cited at Pls.' Resp. n.19, n.21. In short, Plaintiffs' *quid pro quo* allegation is precisely the sort of unsupported claim that is inadequate to prevent summary judgment. *See N.S. v. Stratford Bd. of Educ.*, 97 F. Supp. 2d 224, 228 (D. Conn. 2000) (granting summary judgment "even without reliance on the absence of a Rule [56(a)2] statement" because a belatedly submitted affidavit failed to create a genuine issue of material fact).

## II.    Defendants' Fiduciary Duties, If Any, Were Limited to the Exercise of Authority or Control Over the Accumulation Units.

Plaintiffs' ERISA claim also fails because they have not shown and cannot show a connection between the alleged fiduciary duty (Defendants' alleged exercise of authority or control over the accumulation units) and the alleged breach (Defendants' alleged receipt of the challenged payments from the mutual funds). That connection must be shown to state an ERISA claim because Section 3(21)(A)(i) of ERISA provides that a party is a fiduciary only "to the extent" it "exercises" the requisite "authority or control" over the "management or disposition" of "plan assets." *See* Defs.' Supp. Mem. at 8-14.

### A.    Defendants Were Not ERISA Fiduciaries For All Purposes.

Plaintiffs dispute the meaning of the "to the extent" language of ERISA, arguing that "once a party becomes a fiduciary as to particular plan assets *all of its conduct* in connection with those plan assets must meet the fiduciary standards of ERISA." Pls.' Resp. at 13 (emphasis added). There is no citation after this sentence, and it is an incorrect statement of the law.[5]

---

[5]    Plaintiffs' argument also conflicts with Plaintiffs' prior concession that "[Defendants] are not a general purpose fiduciary, they're not a trustee, they're not a fiduciary for all purposes." *See* November 6, 2003 Hearing Tr. (Docket 169) at 5.

4

Under the statute, a party is not an ERISA fiduciary regarding *assets*. It is an ERISA fiduciary regarding its *exercise of authority or control* respecting the management or disposition of those assets. As a result, courts have consistently held that a party can be an ERISA fiduciary towards particular plan assets for some purposes, but not others. *See Pegram v. Herdrich*, 530 U.S. 211, 225 (2000); *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987); *Pension Fund Mid-Jersey Trucking Industry - Local 701 v. Omni Funding Group*, 731 F. Supp. 161, 173-75 (D.N.J. 1990) (bank was a fiduciary regarding the short-term investment of plan funds, but was not a fiduciary regarding the long-term mortgage investment of those same funds); *Gray v. Briggs*, 45 F. Supp. 2d 316, 327-28 (S.D.N.Y. 1999) (broker was a fiduciary regarding the investment of plan assets held in a brokerage account, but was not a fiduciary regarding the improper release of plan assets from that account).

Plaintiffs' efforts to distinguish Defendants' authority on this issue, *see* Pls.' Resp. at 14-15, are without merit. For example, Plaintiffs describe *Pension Fund Mid-Jersey* as involving two types of *assets* (mortgage loans and short-term investments), when in fact the court was addressing two types of *conduct* (the investment of plan funds for the short term and the release of those same funds into mortgages). *See Pension Fund Mid-Jersey*, 731 F. Supp. at 173-75. Similarly, Plaintiffs dismiss *Friend v. Sanwa Bank California*, 35 F.3d 466 (9th Cir. 1994), as "a damages case," Pls.' Resp. at 14, when in fact the court focused on whether the bank was acting as a trustee or creditor when the alleged fiduciary breach occurred. *See Friend*, 35 F.3d at 470. Plaintiffs' effort to distinguish *Brandt v. Grounds*, 687 F.2d 895 (7th Cir. 1982), and *Gray v. Briggs* actually *supports* Defendants' theory because it acknowledges that an entity bears fiduciary obligations only when it exercises fiduciary functions. *See* Pls.' Resp. at 15 (stating that, in *Brandt* and *Gray*, "defendants who were fiduciaries for purposes of providing investment

advice could not be held liable as fiduciaries for activities not involving the provision of investment advice").

Moreover, Plaintiffs do not and cannot reconcile the actual holdings of these cases with their ERISA theory. Each of these cases would have been decided differently if the relevant court agreed with Plaintiffs that "once a party becomes a fiduciary as to particular plan assets[,] all of its conduct in connection with those plan assets must meet the fiduciary standards of ERISA." Pls.' Resp. at 13. In *Flanigan v. General Elec. Co.*, 242 F.3d 78 (2d Cir. 2001), for example, the defendant's decision to transfer plan assets in a manner designed to benefit itself, not the plan, would have been a breach of fiduciary duty. Likewise, *Gray, Pension Fund Mid-Jersey,* and *Brandt* all involve ERISA fiduciaries who were held to have *not* acted as fiduciaries when they took some actions relating to plan assets.

Plaintiffs also cite two additional cases. Neither supports their claims. The holding in *Midwest Community Health Service, Inc. v. American United Life Insurance Co.*, 255 F.3d 374 (7th Cir. 2001), is explicitly limited to a single ERISA issue -- relating to the application of a limited exemption for insurance companies -- that is not at issue here. *See id.* at 376, 379. Contrary to Plaintiffs' claim, the *Midwest* court does not hold that particular conduct violated ERISA, *see* Pls.' Resp. at 15, but merely remands the case. *See Midwest*, 255 F.3d at 379. Moreover, both of the ERISA cases on which the *Midwest* court relies involved the precise principle Plaintiffs abhor here -- that ERISA is violated only when the challenged action involves the improper exercise of authority or control over plan assets. *See id.* at 376-77.[6]  Similarly,

---

[6]    As the *Midwest* opinion explains, *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732 (7th Cir. 1986), involved a claim that defendants had the unilateral right "to change the rate of return and annual premiums" and had misused that authority "by retaining more than one half of the premiums paid by plaintiffs when the plaintiffs withdrew their accumulated

*Brink v. DaLesio*, 496 F. Supp. 1350 (D. Md. 1980), *aff'd in part and rev'd in part on other grounds*, 667 F.2d 420 (4th Cir. 1982), involved a long series of abuses by the defendant trustee, including his acceptance of free tax services and use of a vacation condominium, from two service providers (an accountant and a plan consultant) that he selected to serve the plan. Thus, neither *Midwest* nor *Brink* supports Plaintiffs' view that fiduciary duties extend *beyond* the exercise of authority or control.

**B.    Plaintiffs' Claim Does Not Arise Out Of Defendants' Exercise of Authority or Control Over Plan Assets.**

Because Defendants were ERISA fiduciaries only "to the extent" they exercised the requisite authority or control over the management or disposition of plan assets, any allegation that they violated an ERISA fiduciary duty must relate to the exercise of that authority or control.[2/]  In this case, Plaintiffs allege that Defendants became ERISA fiduciaries by exercising authority or control over the accumulation units. *See, e.g.*, Pls.' Resp. at 8.  Accordingly, Defendants challenged Plaintiffs to identify any *exercise of authority or control over the accumulation units* by Defendants that generated the challenged payments. *See* Defs.' Supp. Mem. at 12-13.

---

contributions." *Midwest*, 255 F.3d at 377.  In *Chicago Bd. Options Exch., Inc. v. Connecticut Gen. Life Ins. Co.*, 713 F.2d 254, 260 (7th Cir. 1983), the plaintiffs stated an ERISA claim by alleging that the defendant had abused its "ability to amend a group annuity contract" by attempting to "lock[] in the plaintiffs for the next ten years." *Id.*  There is no persuasive reason to believe that (if it had reached the issues) the *Midwest* court would have reached beyond these precedents to find an ERISA violation absent the misuse of authority or control over plan assets.

[2/]    *See, e.g.*, 29 C.F.R. § 2550.408b-2(e) ("[A] fiduciary may not use the authority, control, or responsibility *which makes such person a fiduciary* to cause a plan to pay an additional fee to such fiduciary [or] to enter into a transaction involving plan assets whereby such fiduciary (or a person in which such fiduciary has an interest which may affect the exercise of such fiduciary's best judgment as a fiduciary) will receive consideration from a third party in connection with such transaction.") (emphasis added).

7

Plaintiffs have failed to meet this challenge. To the contrary, Plaintiffs now ascribe the

challenged payments to a *quid pro quo* involving Defendants' "offering of the funds," Pls.' Resp.

at 1, rather than Defendants' cancellation or transfer of the units. In making this claim, Plaintiffs

have conceded that the conduct that creates the alleged fiduciary duty is not connected to the

conduct that creates the alleged ERISA violation. Plaintiffs are instead left to rely on their legal

argument that ERISA does not require such a connection. That argument is without merit. *See*

*supra* at 4-7; Defs.' Supp. Mem. at 8-15.

   Plaintiffs also contend that Defendants' position is at odds with ERISA § 406(b)(3),

which prohibits a fiduciary from receiving compensation under certain circumstances. *See* Pls.'

Resp. at 16-17. That is incorrect. Defendants have merely explained that ERISA does not

prohibit a fiduciary from taking actions outside the scope of its fiduciary obligations, even if

those actions result in compensation to it from a party that has some connection to a plan. The

Department of Labor has made the same point. *See, e.g.*, Advisory Opinion 97-16A (May 22,

1997) ("The Department has taken the position that if a fiduciary does not exercise any authority

or control to cause a plan to invest in a mutual fund, the mere receipt by the fiduciary of a fee or

other compensation from the mutual fund in connection with the plan's investment would not in

and of itself violate section ERISA 406(b)(3).").[8] Section 406(b)(3) remains fully effective to

police abuses of fiduciary power, such as those discussed in *Lowen v. Tower Asset Management,*

*Inc.*, 829 F.2d 1209 (2d Cir. 1987), where the fiduciary advisor invested plan funds in entities

that it owned or that paid it kickbacks. But there is no comparable allegation here, where (as

---

[8]    *See also* DOL Advisory Opinion 1999-3A (January 25, 1999) ("[I]t is the view of the
Department that a fiduciary does not engage in an act described in section 406(b)(3) of ERISA if
the fiduciary does not use any of its authority, control, or responsibility to cause a third party to
pay to the fiduciary any compensation in connection with a transaction involving the assets of
the plan.").

Plaintiffs concede) the plans and participants -- and not Defendants -- made the investment

decisions. *See* Pls.' Resp. at 3; Pls.' Rule 56(a)2 Statement (Docket 207) at ¶5; Defs.' Supp.

Mem. at 16, n.15.

## III.    Defendants Were Custodians, Not Fiduciaries, Regarding the Accumulation Units.

As is explained above, Defendants did not violate ERISA even if they had fiduciary

duties with regard to the accumulation units. However, Defendants had no such duties regarding

the units because they did not exercise authority or control respecting their management or

disposition. *See* Defs.' Supp. Mem. at 15-18. Plaintiffs' response focuses on the word "any" in

ERISA § 3(21)(A)(i) and asserts that it means that any action relating to plan assets creates a

fiduciary duty. *See* Pls.' Resp. at 6. In support of this startling conclusion, Plaintiffs note that

ERISA requires "discretionary authority or control" respecting "management of a plan" but mere

"authority or control" respecting "management or disposition of [plan] assets." *Id.* (citing

ERISA § 3(21)(A)(i)).[9]

Plaintiffs' selective focus on a few words in § 3(21)(A)(i) sidesteps the critical question:

whether Defendants' actions regarding plan assets here rise to the level of "authority or control

respecting management or disposition" of plan assets. Other courts have repeatedly and properly

held that this standard is not met by ministerial actions, even if those actions involve some sort of

physical custody or administrative choice. *See Beddall v. State Street Bank and Trust Co.*, 137

F.3d 12, 18 (1st Cir. 1998) ("[T]he mere exercise of physical control or the performance of

mechanical administrative tasks generally is insufficient to confer fiduciary status."); *IT Corp. v.*

---

[9]    Section 3(21)(A)(i) of ERISA reads "[A] person is a fiduciary with respect to a plan to
the extent (i) he exercises any discretionary authority or discretionary control respecting
management of such plan or exercises any authority or control respecting management or
disposition of its assets . . . ."

*Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1422 (9th Cir. 1997) ("Authority over a plan's money is not the same thing as being a depository of the money.").[10]

The cases cited by Plaintiffs did not involve such ministerial actions. They involved fiduciaries who had authority to write checks against plan funds without consulting or gaining approval of the plans. *See Gen. Am.*, 107 F.3d at 1421 ("The right to write checks on plan funds is 'authority or control respecting management or disposition of its assets.'"); *Bd. of Trustees of Bricklayers and Allied Craftsmen Local 6 v. Wettlin Assocs.*, 237 F.3d 270, 271 (3rd Cir. 2001) ("Wettlin determined the legitimate expenses of the fund, wrote checks, and disbursed assets from the fund's bank account in accordance with such determinations."). Thus, they do not show that Defendants -- who had no such power -- were ERISA fiduciaries.

In light of this distinction, Plaintiffs resort to unsupported assertions that Defendants had the authority to decide what actions to take regarding the units. *See, e.g.*, Pls.' Resp. at 11 (stating, without citation, that "Nationwide makes the specific decisions as to whether and how accumulation units should be canceled"). However, Plaintiffs admit that Defendants' conduct was governed by the variable annuity contracts, *see* Pls.' Resp. at 3, and never identify the provisions of the contracts that allegedly gave Defendants such authority or control. Instead,

---

[10]    Plaintiffs dismiss each of the cases cited by Defendants on this issue as wrongly decided. *See* Pls.' Resp. at 8-9. In fact, each of these cases properly found that a custodian of plan assets with only limited administrative power did not exercise authority or control respecting management or disposition of plan assets. *See Beddall*, 137 F.3d at 20 (bank with "mechanical administrative responsibilities (such as retaining the assets and keeping a record of their value)" was not a fiduciary); *Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 718 (9th Cir. 1997) (bank that was "depository and custodial agent" for plans' funds and could only pay out those funds with written authorization from the plan trustees was not a fiduciary); *Pension Fund Mid-Jersey*, 731 F. Supp. 161, 175 (D.N.J. 1990) (bank that followed "strict guidelines" regarding the payout of plan moneys and had "no authority" to decline to pay out funds if those guidelines were met was not a fiduciary); *Robbins v. First Am. Bank of Virginia*, 514 F. Supp. 1183, 1190-91 (N.D. Ill. 1981) (bank that was a "mere servicing agent" for a plan investment was not a fiduciary).

10

Plaintiffs' broad assertions about Defendants' supposed powers are supported only by citation to the entirety of the contracts, *see* Pls.' Resp. at 4 n.14 & n.15, or by nothing at all, *see id.* at 8, 11. Vague assertions of this sort are not adequate to defeat a properly supported motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *see also Tunnell v. United Techs. Corp.*, 54 F. Supp. 2d 136, 139 (D. Conn. 1999) ("mere assertions and conclusions of the party opposing summary judgment are not enough to defeat a well-pleaded motion").

Plaintiffs' assertions regarding the operation of the contracts are also wrong as a matter of undisputed fact. Defendants were not authorized to credit deposits or cancel or transfer the units except as specifically directed by the contract holders or as required by operation of particular contract provisions.[11] The contracts contain extraordinary detail on these issues, requiring credits or cancellations to be made within a specific period of time,[12] and to be calculated

---

[11]    *See., e.g.,* Flyte Contract (Exhibit 1(A) to the Declaration of Mark Bieter ("Bieter Decl.") in Support of Defs.' Mot. For Summary Judgment (Docket 187)) at N029 (stating that all deposits will be credited to units); *id.* at N033 (stating that "upon written notice from the Contractholder, the Company shall purchase Annuities or make cash payments in such manner and amounts specified by the Contractholder."); *id.* at N032 ("Exchanges shall be made by canceling a number of Units equal to [the amount to be exchanged by current unit value] and crediting the amount to the Companion contract or to a Fund, in accordance with Section 2.3 [which describes the units]."); *id.* at N035 (stating that, when demanding a loan, "the Contractholder must specify the amount payable by the Company" and that, on receiving such a demand, "[t]he Company shall cancel the number of units equal to [the requested amount divided by the unit value]); Anderson Contract (Ex. 2(1) to Bieter Decl.) at N081 ("The Owner elects to have the purchase payments allocated among the Fixed Accounts and the Sub-Account at the time of application."); *id.* at N087 ("All loans are made from a collateral Fixed Account . . . Unless instructed to the contrary by the Contract Owner, the Company will first transfer to the Fixed Account the Variable Account units from the Contract Owner's investment options in proportion to the assets in each option until the required balance is reached or all such variable account units are exhausted.").

[12]    *See, e.g.,* Flyte Contract at N025 ("Each Deposit, as described in Article III, will be credited to the applicable Fund or Funds no later than the third Business Day following its receipt."); *id.* N026 (exchanges will be made within three business days); *id.* (annuity purchases will be made within 15 business days).

according to specific contractual formulas.[13] In short, and contrary to Plaintiffs' assertion, Defendants did not decide "whether and how accumulation units should be canceled." Pls.' Resp. at 11.

Plaintiffs particularly rely on their claim that Defendants exercised authority or control respecting the management or disposition of units because Defendants allegedly cancelled them to pay fees or taxes "without any prompting whatsoever." Pls.' Resp. at 8. But these actions were covered by particular contract provisions that left Defendants no choices about whether or how to effectuate the cancellation of units upon the imposition of a tax or the accrual of a contractual fee.[14] No "prompting" was necessary because the contracts already established that fees and taxes would be paid at particular times and in a certain manner. Defendants did not exercise fiduciary authority or control by fulfilling these contractual obligations. Indeed, if they had, any bank or other holder of plan assets would become an ERISA fiduciary in the same way.

---

[13]    *See, e.g.*, Flyte Contract at N034 ("The Company will purchase an Annuity by canceling a number of units in the designated Fund or Funds equal to the quotient of the amount to be applied to purchase the Annuity divided by the applicable unit value on the date of cancellation."); Anderson Contract at N082 (providing formula to calculate "Variable Account Accumulation Unit Value").

[14]    *See, e.g.*, Flyte Contract at N 037 ("In the event that an Administration Charge is due, as set forth on the Contract Summary Page, the Company shall cancel Units in the Fund or Funds specified by the Contractholder equal in number to [the amount of the charge divided by the current unit value]"); *id.* at N038 ("The Company shall cancel Units in the Fund or Funds equal to the amount of any premium tax levied by a state or other government entity ...."); *id.* ("The Contractholder may notify the Company in writing that the Plan has incurred an expense and may direct that the amount be paid from a Fund or Funds. The Company shall cancel Units equal to the dollar value of the amount and shall pay the amount to the person or entity specified in the notice."); Anderson Plan, Best of America IV Prospectus at N102 ("In the event . . . charges or deductions are made against the Contract Value, an appropriate number of Accumulation Units from the Variable Account and an appropriate amount from the Fixed Account will be deducted in the same proportion that the Contract Owner's interest in the Variable Account and the Fixed Account bears to the total Contract Value.").

Because Defendants are not fiduciaries regarding the accumulation units, they are entitled to judgment as a matter of law.[15]

IV.    **Plaintiffs Have Failed to Establish that the Challenged Payments Were Plan Assets under ERISA.**

In the alternative, Plaintiffs argue that the challenged payments were ERISA plan assets under a "functional approach," and that Defendants therefore acquired ERISA fiduciary duties by receiving them and breached those duties by retaining them. *See* Pls.' Resp. at 17-23.[16] Plaintiffs claim that, under this approach, an asset becomes an ERISA plan asset merely by benefiting the fiduciary rather than the plan or its participants. *See id.* at 18. This argument relies on scattered dicta to attempt to expand ERISA far beyond its established boundaries.

As Defendants previously explained, the so-called functional approach must be understood to describe, rather than replace, the legal and contractual analysis on which a party can be found to exercise authority and control over plan assets. *See* Defs.' Reply at 11-17; Defs.' Supp. Mem. at 19-22; June 1, 2004, Tr. (Docket 231) at 77-78.[17] It therefore cannot provide a

---

[15]    At the end of this section of their brief (and elsewhere), Plaintiffs suggest that if they do not prevail on a legal issue, then the Court should find that it is actually a factual issue. *See* Pls.' Resp. at 11. Plaintiffs do not explain why the Court should do so, and Plaintiffs' legal arguments support Defendants' contention that there is no factual dispute here that would prevent summary judgment.

[16]    Plaintiffs assert without supporting citation that "Nationwide does not dispute that it exercised authority or control over the [challenged] payments by arranging for, accepting, and retaining them." Pls.' Resp. at 17. Defendants have never made this concession. Indeed, Defendants have never had to reach this point because there is no evidence that the challenged payments were plan assets, and that is sufficient to dispose of Plaintiffs' case as a matter of law.

[17]    Plaintiffs argue that the Court accepted the functional approach at oral argument, citing several passages where the Court questioned whether the challenged payments harmed the plans. *See* Pls.' Resp. at 17 n.27. Such probing does not indicate that the Court accepted Plaintiffs' argument.

13

basis on which the challenged payments -- which Plaintiffs concede are not plan assets when paid by the mutual funds, *see* Defs.' Reply at 19 -- are transformed into plan assets.

Plaintiffs respond only by citing two new cases, each of which involves markedly different facts and circumstances. *See* Pls.' Resp. at 18. In *Metzler v. Solidarity of Labor Orgs. Health & Welfare Fund*, No. 95 Civ. 7247 (KMW), 1998 WL 477964 (S.D.N.Y. Aug. 14, 1998), the assets at issue were employer contributions to an ERISA health plan. *See Metzler*, 1998 WL 477964, at *6-*7. Such contributions are plan assets as a matter of law under the relevant Department of Labor regulations and multiple judicial decisions. *See* Defs.' Reply at 15-17. Similarly, in *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995), the asset was the named fiduciary's right to collect surplus plan assets when the plan was terminated. *See Kayes*, 51 F.3d at 1466. Thus, *Kayes* involved a conceded fiduciary's use of "vested funds of the plan," *id.* at 1467 n.14, and does not support Plaintiffs' view that monies belonging to mutual funds become plan assets, and make Defendants fiduciaries, upon receipt.

Plaintiffs also rely on a long discussion of the common law of trusts to explain why the challenged payments are plan assets. *See* Pls.' Resp. at 19-23. This discussion ignores a critical distinction between ERISA and the common law. While ERISA does rely on the common law of trusts, those principles offer only a "starting point for analysis," and must give way when "inconsistent with the language of the statute, its structure, or its purposes." *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 250 (2000); *cf. D'Amore v. Stangle & Denigris, Inc.*, Civ. No. 3:94CV01087 (AVC), 1995 WL 704687, at *2 (D. Conn. May 19, 1995) (rejecting request for damages based on common law of trusts where ERISA and case precedent were to the contrary).

14

ERISA is inconsistent with the common law of trusts on the points at issue here. In *Pegram v. Herdrich*, 530 U.S. 211 (2000), the Supreme Court explained that analogies to traditional trust principles can be "problematic" when used to establish the scope of fiduciary obligations under ERISA. *See Pegram*, 530 U.S. at 225. For example, "the trustee at common law characteristically wears only his fiduciary hat when he takes action to affect a beneficiary, whereas the trustee under ERISA may wear different hats." *Id.* Thus, while Defendants are not ERISA fiduciaries, even such fiduciaries "may have financial interests adverse to beneficiaries," that may not have been permitted at common law. *Id.*[18] This dual role is permissible "for persons who provide services to an ERISA plan," as well as to employers and plan sponsors. *Id.* Accordingly, Plaintiffs' assertion that the common law of trusts "provide[s] the answer" here, Pls.' Resp. at 19, would be incorrect even if they had somehow established that Defendants were fiduciaries.

Furthermore, even if they did apply, the common law cases cited by Plaintiffs establish only that a trustee that has breached its duty may be liable even if the beneficiary suffers no harm. *See* Pls.' Resp. at 20-21. That proposition does nothing to establish that Defendants were fiduciaries in the first place. Indeed, all of Plaintiffs' trust law arguments add nothing to their explanation that the challenged payments come "at the expense" of the plans because the plans would have more money if the payments were handed over to them. *See* Defs.' Supp. Mem. at

---

[18]    *See also Lowen v. Tower Asset Mgmt.*, 829 F.2d 1209, 1214 (2d. Cir. 1987) ("The 'in connection with' requirement of Section 406(b)(3) moderates the strict common law rule that a trustee may not profit (other than from trust administration fees) from transactions involving trust assets.").

14-15. ERISA does not stretch that far, and Plaintiffs have not provided any other support for their claim that Defendants may not accept payments made from mutual fund assets.[19]

## V.    New Class Certification Briefing is Necessary.

Plaintiffs filed for class certification in September, 2003. Since that time, Plaintiffs have substantially altered their factual allegations and legal claims. Indeed, this Court has required them to file a new Complaint and to explain their position on the tracing of plan assets. *See* Order of June 4, 2004 (Docket 232); June 1, 2004 Hearing Tr. (Docket 231) at 90:1-12. Plaintiffs' latest Opposition to Summary Judgment further revises their allegations and claims. In light of these changes, any consideration of class certification would require new briefing by the parties.

In opposing this sensible approach, Plaintiffs pretend that Defendants did not already identify specific new theories not addressed in Plaintiffs' current class certification briefing. *Compare* Pls.' Resp. at 23 *with* Defs.' Supp. Mem. at 22-23. That is incorrect. For example, Defendants noted that Plaintiffs rely upon a "functional approach" to ERISA, *see* Defs.' Supp. Mem. at 23, that is not mentioned in their class certification papers. *Id.* Plaintiffs also cannot explain why the Court would order them to amend their Complaint if Plaintiffs had merely offered "refinement" and "changes in nomenclature" in their most recent briefing. *See* Pls.' Resp. at 23.

---

[19]    Plaintiffs claim that cash received by Defendants when a mutual fund closes or when fund shares are sold must be a plan asset because "in the absence of the cash constituting a plan asset, Nationwide has no explanation for why it cannot pocket that money." Pls.' Resp. at 22. In fact, state insurance law, *see* Ohio Rev. Code Ann. § 3907.15, and federal securities rules, *see* Rule 0-1(e)(2) under the Investment Company Act of 1940, require that the separate account maintain reserves at least equal to the contractholders' interest in the contracts, which would include the proceeds of any such liquidation. Thus, any cash proceeds that are not distributed out of the separate account at the contractholder's direction must remain in that account, allocated to alternative investment options (other accumulation units) selected by the contractholder.

16

Furthermore, Plaintiffs' Response itself demonstrates that the existing class certification briefing is inadequate. For example, Plaintiffs failed to respond adequately to the Court's request that they explain whether and how they plan to trace assets from the plans to Defendants. *See* June 1, 2004 Hearing Tr. (Docket 231) at 90:1-12. Instead, Plaintiffs merely rule out the tracing of "specific dollars." Pls.' Resp. at 23, n.35. That response begs the question of what manner of tracing Plaintiffs anticipate, if any. The Court cannot assess whether a class trial is appropriate without such information. *See* Defs.' Reply Mem. at 19-20; Defs.' Class Cert. Opp. (Docket 179) at 46.[20] Plaintiffs' Response also alleges that "the mutual fund families would not make the payments" absent certain actions by Defendants. Pls.' Resp. at 12. This claim is false and without support. *See supra* at 3-4. However, if Plaintiffs evade summary judgment on this basis of this assertion, they must explain how it could be proved as to every one of thousands of relevant mutual funds without individualized evidence as to the motive of each in entering into service contracts with Nationwide.

## CONCLUSION

After three years of litigation, five different Complaints, and more than two complete rounds of summary judgment briefing, it has become manifestly clear that Plaintiffs have no case on the facts and no case on the law. Plaintiffs have been given every reasonable opportunity (and then some) by this Court to find and articulate a viable theory of potential liability for

---

[20]    The tracing issue is further complicated by Plaintiffs' express reliance on "the common law of trusts" to seek to establish Nationwide's breach of fiduciary duty. *See* Pls.' Resp. at 23. Not only are "trust remedies . . . simply inapposite" under ERISA, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 219 (2002), but they would require that claimants be able to specifically trace the assets they seek to recover. *See Ellis Nat'l Bank of Jacksonville v. Irving Trust Co.*, 786 F.2d 466, 469 (2d Cir. 1986) (seeking recovery of stolen funds "traceable into the Plans" under state common law of trusts and other theories).

Defendants, and have been unable to do so. Based on the undisputed facts and the unambiguous law, Defendants are entitled to judgment as a matter of law, and Plaintiffs' Fourth Amended Complaint should be dismissed with prejudice.

Dated: August 27, 2004

Defendants Nationwide Financial Services Inc. and Nationwide Life Insurance Co.

By: _____
Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Jessica A. Ballou. Esq. (CT 22253)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Email: Dennis.Kerrigan@llgm.com
Telephone: (860) 293-3500
Facsimile: (860) 293-3555

Charles C. Platt, Esq. (CT 23036)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
New York, NY 10019-5389
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Eric Mogilnicki, Esq.
Samuel Broderick-Sokol, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
2445 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

18