UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Dye Company Inc. 401(k) Profit-Sharing Plan, et al.,<br>　　Plaintiffs,<br><br>v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., et al.,<br>　　Defendants. | Civil Action No.<br>3:01cv1552 (SRU) |

**MEMORANDUM OF DECISION**

Lou Haddock, Peter Wiberg, Alan Gouse, Edward Kaplan, and Dennis Ferdon are trustees of employer-sponsored, profit-sharing retirement plans (collectively "Trustees"). The Trustees have filed a fifth amended complaint against Nationwide Financial Services Inc. and Nationwide Life Insurance Co. (collectively "Nationwide") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 *et seq.*, seeking monetary damages and equitable relief. The plaintiffs claim that Nationwide is an ERISA fiduciary because it selected the investment options that would be made available for plan investments, and because Nationwide exercised a unilateral right to cease offering certain investment options and to substitute others in their place (collectively "fund selection claim"). Nationwide now moves to dismiss the Trustees' fifth amended complaint on three grounds. For reasons that follow, Nationwide's motion is denied.

**I.    Background**

The procedural history of this case is fairly extensive. Much of that history is set forth in *Haddock v. Nationwide Fin. Servs.*, 419 F. Supp. 2d 156, 158-59 (D. Conn. 2006) ("*Haddock I*"), a decision in which I denied Nationwide's previous motion for summary judgment. Two of the

three issues raised in the instant motion overlap the claims that Nationwide made in its previous summary judgment motion. Accordingly, I presume familiarity with *Haddock I* and I incorporate it herein by reference.

In addition to the background set forth in *Haddock I*, a few additional facts are relevant to Nationwide's motion to dismiss. The Trustees, in their first amended complaint, included the fund selection claim. Nationwide then requested discovery of information relating to the fund selection claim, but the Trustees did not respond to Nationwide's requests because they indicated that they planned to drop the claim. The Trustees did, in fact, drop the fund selection claim from their second, third and fourth amended complaints, but have realleged the claim in their fifth amended complaint.

Nationwide moves to dismiss the Trustees' fifth amended complaint on three grounds. First, Nationwide argues that, by intentionally removing their fund selection claim from their second, third and fourth amended complaints, the Trustees waived the claim. Second, Nationwide argues that, even if the Trustees did not waive their fund selection claim, Nationwide's ability to select and delete funds available for the plan to purchase does not render it an ERISA fiduciary. Finally, Nationwide argues that, even if it is an ERISA fiduciary, the payments that the mutual fund affiliates made to Nationwide do not constitute, or involve, "plan assets" under ERISA.

I disposed of the latter two arguments in *Haddock I*, and I will not readdress those issues in great detail. Briefly, with regard to Nationwide's second argument, I held in *Haddock I* that a reasonable jury could find Nationwide to have acted as an ERISA fiduciary because it exercised:

> authority or control respecting disposition of plan assets by controlling which

> mutual funds are available investment options for the Plans and participants. Although Nationwide does not invest the pension contributions in particular mutual funds, Nationwide does exercise some control over the selection of mutual funds that are available for the Plans' and participants' investments.

*Haddock I*, 419 F. Supp. 2d at 166 (citing Department of Labor ("DOL") Advisory Opinion 97-16A, 1997 WL 277979; DOL Advisory Opinion 97-15A, 1997 WL 277980). "The fact that Nationwide's control may be limited to deleting and substituting mutual funds from a list of funds approved by the Plans does not defeat the [the Trustees'] claims." *Id*. at 166 n.6.

With regard to Nationwide's third argument, I adopted a functional approach in *Haddock I* to determine whether payments received from the mutual fund affiliates constitute ERISA plan assets:

> "plan assets" include items a defendant holds or receives: (1) as a result of its status as a fiduciary or its exercise of fiduciary discretion or authority, and (2) at the expense of plan participants or beneficiaries. This two-pronged test conforms to the approach outlined by the Ninth Circuit in *Acosta v. Pacific Enterprises*, 950 F.2d 611, 620 (9th Cir. 1992), where the first prong (i.e., the relationship between the item held and the entity's fiduciary status) was implied, and the second prong was explicit.

*Id*. at 170. Supporting the functional approach, the record included evidence that Nationwide received payments "from mutual funds in exchange for offering the funds as an investment option to the Plans and participants, i.e., as a result of its fiduciary status or function," and that "the payments were made at the expense of the Plan participants or beneficiaries." *Id*. A reasonable jury could thus find that the mutual fund payments were ERISA plan assets. *Id*. I do not disturb my holdings in *Haddock I*, and Nationwide's motion to dismiss is accordingly denied with respect to its latter two arguments.[1] I address only Nationwide's first argument below.

---

[1] Both sides have asked in their briefing of the motion to dismiss that I reconsider different aspects of my ruling on Nationwide's earlier motion for summary judgment. I decline

**II**     **Standard of Review**

Nationwide moves to dismiss the Trustees' fifth amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. Spalding*, 467 U.S. 69, 73 (1984). The function of a motion to dismiss is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). The motion must therefore be decided solely on the facts alleged. *See Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985).

When deciding a motion to dismiss for failure to state a claim on which relief can be granted, the court must accept the material facts alleged in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996); *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir. 1995); *Skeete v. IVF America, Inc.*, 972 F. Supp. 206, 207 (S.D.N.Y. 1997). The court "must not dismiss the action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (internal quotations omitted).

**III.**     **Discussion**

To determine whether the Trustees can bring the fund selection claim in their fifth amended complaint, I must decide, as an initial matter, whether the Trustees would have been

---

to do so.

granted leave to amend their complaint to add the claim pursuant to Rule 15 of the Federal Rules of Civil Procedure. If the Trustees would have been granted leave to amend their complaint to add the claim, I must then decide whether a party waives a cause of action by alleging it in an initial complaint and omitting it from subsequent amended complaints.

    A.    <u>Leave to Add the Fund Selection Claim by Amendment</u>

Rule 15(a) provides that courts may permit a party to amend a pleading, and that leave to amend "shall be freely given when justice so requires." The Supreme Court has stated, "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment," courts should grant a party leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Delay alone unaccompanied by such a 'declared reason,'" however, "does not usually warrant denial of leave to amend." *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-235 (2d Cir. 1995) (quoting *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).

The Second Circuit has also noted that "the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Staggers v. Otto Gerdau Co.*, 359 F.2d 292, 297 (2d Cir. 1966) (citing *Foman*, 371 U.S. at 182). A party may still "amend a complaint after discovery has been completed and defendants have filed summary judgment motions, even when the basis for the amendment existed at the time of the original complaint."

*Miller v. Selsky*, 2000 U.S. App. LEXIS 29697 (2d Cir. 2000) (summary order) (citing *Hanlin v. Mitchelson*, 794 F.2d 834 (2d Cir. 1986)).  In *Miller*, the plaintiff was allowed to amend his complaint to add new facts because the facts were "merely variations on the original theme." *Id*. In *Rachman Bag Co.*, the Second Circuit similarly permitted a party to amend a pleading to add a fraudulent concealment defense four years after the defendant filed its original answer because the defendant's tardiness "may well have been due to its uncertainty as to what issue to focus on rather than bad faith." *Rachman Bag Co.*, 46 F.3d at 235.

    In this case, the Trustees have exhibited no bad faith or dilatory motive.  There is no evidence that the Trustees have intentionally delayed amending their complaint as a strategic matter.  Instead, as in many cases, the Trustees' legal theory of the case has simply evolved throughout the course of discovery, and the fund selection claim is merely a variation on the Trustees' pervious claims.  In fact, by bringing the claim in their original complaint, the Trustees gave Nationwide some early notice of their legal theory.

    Instead, Nationwide bases its argument almost exclusively upon the proposition that allowing the Trustees to assert the fund selection claim would cause it prejudice because the parties have conducted discovery on a portion of the case under the premise that the claim would not be included, and, consequently, Nationwide would need to conduct additional discovery to defend against the claim.  Although this case is fairly old and the parties have already conducted some discovery,[2] it is still at an early procedural stage – the pre-class-certification stage. Moreover, the Second Circuit has held that "[an] adverse party's burden of undertaking

---

[2] As set forth in *Haddock I*, the parties originally requested that the case be handled in two phases: (1) discovery and dispositive motions on class certification; and (2) discovery and dispositive motions on the merits.  419 F. Supp. 2d at 158.  The case is still in the first phase.

[additional] discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States on behalf of Maritime Admin. v. Continental Illinois Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989) (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 43 (2d Cir. 1979)). "Burden" is not necessarily synonymous with "prejudice." Nationwide admittedly may have to conduct additional discovery, but an order awarding costs, if warranted, or an order extending or reopening discovery are more appropriate than a dismissal with prejudice.

Because Nationwide would not be unduly prejudiced, the Trustees could have otherwise amended their complaint to add the fund selection claim pursuant to Rule 15. It is against that backdrop that Nationwide's waiver argument must be analyzed.

### B.    Implied Waiver of the Fund Selection Claim

Nationwide argues that the Trustees impliedly waived the fund selection claim by including it in their original complaint but omitting it from subsequent complaints.[3] Waiver is the "voluntary and intentional relinquishment of a known right." *Burt Rigid Box v. Travelers*

---

[3] Nationwide also implies that the Trustees expressly waived the right to assert the fund selection claim. To support its argument, Nationwide cites a letter from the Trustees that the Trustees wrote to Nationwide in response to Nationwide's requests for discovery. The letter indicated that "[t]he proposed Second Amended Complaint does not assert and plaintiffs agree that nothing in the proposed Second Amended Complaint shall be construed to assert any claim(s) of fiduciary status or breach of fiduciary duties based upon the defendants actual or alleged substitution or deletion of funds or based upon the defendants actual or alleged contractual right to substitute or delete funds." Defendant's Memorandum, Ex. M. Nothing in the Trustees' letter can be construed as an express waiver. For example, the letter does not include a passage that says, "and defendants, by not including the fund selection claim herein, hereby affirmatively and permanently waive their right to assert a fund selection claim." Instead, the letter, on its face, is merely a factual observation about what the Second Amended Complaint alleged and what the Second Amended Complaint did not allege. The clear purpose of the letter was to shape the contours of discovery, not to waive certain claims.

*Prop. Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002). The Second Circuit in *Austin v. Ford Models*, 149 F.3d 148 (2d Cir. 1998), quoted *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), for the proposition that "all causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *Id*. at 155. The *Austin* Court continued that "[u]ltimately, the question of abandonment is one of intent; ordinarily it makes perfect sense to hold that a party who seeks to file an amended pleading that omits a claim intends to abandon the claim, irrespective of whether the amended pleading is permitted by the court." *Id*. The Second Circuit's holding in *Austin*, however, does not bar the Trustees from adding the fund selection claim for at least two reasons.

First, despite the holding in *Austin*, it is substantially unclear whether the Second Circuit has adopted the Ninth Circuit's view of waiver wholesale.[4] Under the *King* rule, plaintiffs whose case was partially dismissed are required to replead the dismissed claims in subsequent complaints to preserve their claims on appeal, even though repleading a claim that a court expressly dismissed seems futile. If a party does not include a dismissed claim in an amended complaint, the Ninth Circuit deems that claim waived for purposes of appeal. In *Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160 (2d Cir. 2000), the Second Circuit was critical of *King*'s holding. The *Crysen/Montenay* Court rejected *King*, at least in part, by carving out a futility exception to the waiver principle "where a party fails to advance in a

---

[4] Other circuits have not adopted the Ninth Circuit's restrictive approach to waiver as set forth in *King*. *See*, *e.g.*, *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 516 (3d Cir. 2007) (noting that "the Tenth and Fifth Circuits take a more flexible approach" to the issue). Indeed, the holding in *King* represents the "minority rule." *Smith v. Short Term Loans, LLC*, 2001 U.S. Dist. LEXIS 1554, *24-*25 (N.D. Ill. 2001) (noting that the Second, Tenth, and Eleventh Circuits have criticized the *King* approach).

subsequent pleading a claim or defense that already has been rejected by the court." *Id*. at 162. Because the Second Circuit rejected at least part of *King*'s holding, the extent to which *King*, as cited by the Second Circuit in *Austin*, survived *Crysen/Montenay* is unclear; indeed, courts in other districts have cited *Crysen/Monenay* for the principle that the Second Circuit has criticized the *King* approach to waiver as "overly formalistic." *Smith v. Short Term Loans, LLC*, 2001 U.S. Dist. LEXIS 1554, *24-*25 (N.D. Ill. 2001).

Second, even if the Second Circuit adopted the Ninth Circuit's view of waiver as set forth in *King*, the rule would not apply in this case. Although the language the Ninth Circuit seems broad at first glance, the *King* Court was simply amplifying the well-established principle that "an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998). Thus, if a party voluntarily omits a certain claim from an amended complaint that the party raised in the original complaint, the party is bound by the amended complaint and cannot proceed on the omitted claims because they are no longer a part of the operative complaint. The party, however, by that omission has not permanently waived its right to assert the omitted claims from future amended complaints.

Courts in the Ninth Circuit have not interpreted *King* to bar a party from realleging a claim that it voluntarily withdrew from an earlier complaint. *Google, Inc. v. Affinity Engines, Inc.*, 2005 U.S. Dist. LEXIS 37369, *20 (N.D. Cal. 2005) (*King* "did not hold that claims in an original complaint that were not dismissed but rather voluntarily amended could never be resurrected. On the contrary, courts may allow a plaintiff to reallege a voluntarily withdrawn claim"). In practice, the rule in *King* generally applies only to situations in which a plaintiff

withdraws a cause of action from a subsequent complaint upon order of the court. *Google*, 2005 U.S. Dist. LEXIS 37369 at *20. For example, in *Southwest Forest Indus., Inc. v. Westinghouse Elec. Corp.*, 422 F.2d 1013, 1015 (9th Cir. 1970), the plaintiff had initially raised a claim based on a warranty theory in its original complaint, but "voluntarily abandoned" the theory after defendant moved for summary judgment on that issue. *Id*. at 1015. Then, on the eve of trial, Southwest sought to amend its complaint to reallege the warranty theory. *Id*. The court allowed the amendment and did not deem the claim waived. *Id*. Similarly, the plaintiff in *Google, Inc. v. Affinity Engines, Inc.* originally alleged, but later voluntarily omitted, a claim pursuant to the Lanham Act. The plaintiff sought to reallege the claim in a subsequent amended complaint. 2005 U.S. Dist. LEXIS 37369, *20. Despite the defendant's argument that *King* barred the plaintiff from realleging claim, the court allowed plaintiff to assert the claim. *Id*.

In this case, the Trustees voluntarily withdrew their fund selection claim, and so *King* does not apply. The Trustees' omission of the fund selection claim from preceding complaints had the effect of a dismissal without prejudice, not a binding waiver of the claim.

### IV. Conclusion

Nationwide's latter two arguments regarding its status as an ERISA fiduciary and regarding the mutual fund payments' status as ERISA plan assets are foreclosed by my decision in *Haddock I*. With regard to Nationwide's waiver argument, because the Trustees could have otherwise amended their complaint pursuant to Rule 15 to add the fund selection claim, and because the Trustees did not waive the claim by including it in their first complaint but omitting it from subsequent complaints, Nationwide's motion to dismiss the Trustees' fifth amended

complaint **(doc. # 277)** is DENIED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 25th day of September 2007.

        /s/ Stefan R. Underhill
        Stefan R. Underhill
        United States District Judge