# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing, ALAN GOUSE, as trustee of Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, EDWARD KAPLAN, as trustee of the Hartford Roofing 401(k) Profit Sharing Plan and the Hartford South, L.L.C. 401(k) Profit Sharing Plan, and DENNIS FERDON, as trustee of the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan,<br><br>          PLAINTIFFS,<br><br>                    v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,<br><br>          DEFENDANTS. | CIVIL ACTION NO.:<br><br>3:01CV1552 (SRU) |

# DEFENDANTS' ANSWER TO
## PLAINTIFFS' FIFTH AMENDED COMPLAINT
## AND AMENDED COUNTERCLAIMS

Defendants Nationwide Financial Services, Inc. and Nationwide Life Insurance Company (respectively, "NFS" and "Nationwide Life," or "Defendants" ), by their undersigned counsel, hereby answer Plaintiffs' Fifth Amended Class Action Complaint, dated March 21, 2006 (the "Complaint"), and assert affirmative defenses and amended counterclaims as follows:

I.    **ANSWER**

1.    Paragraph 1 purports to describe Plaintiffs' Complaint and therefore no response from Defendants is required.  To the extent that a response from Defendants is required, Defendants deny the allegations of paragraph 1.

2.    Defendants deny the allegations of paragraph 2.

3.    Paragraph 3 purports to describe Plaintiffs' Complaint, and therefore no response from Defendants is required.  To the extent that a response from Defendants is required, Defendants deny the allegations of paragraph 3.

4.    Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 4 and they are otherwise denied.

5.    Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 5 and they are otherwise denied.

6.    Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 6 and they are otherwise denied.

7.    Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 7 and they are otherwise denied.

8.    Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 8 and they are otherwise denied.

9.    Defendants admit the allegations of paragraph 9.

10.    Defendants admit the allegations in the first sentence of paragraph 10 and deny the remaining allegations of paragraph 10.

11.    The first sentence of paragraph 11 purports to describe Plaintiffs' Complaint, and therefore no response from Defendants is required.  To the extent that a response from

Defendants is required, Defendants deny the allegations of the first sentence of paragraph 11. With respect to the allegations of the second sentence of paragraph 11, Defendants deny any implication that they have acted as, act as, or are liable as, fiduciaries pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. as alleged in Plaintiffs' Complaint.  Defendants admit the remaining allegations of the second sentence of paragraph 11.

12.     Defendants admit the allegations of paragraph 12, except that Defendants deny that they committed any breaches, and Defendants further deny any implication that they have acted as, act as, or are liable as, a fiduciaries pursuant to ERISA, 29 U.S.C. § 1001 et seq.

13.     With respect to the allegations of the first two sentences of paragraph 13, Defendants lack knowledge and information sufficient to form an opinion as to their truth, and they are otherwise denied.  Defendants deny that there is any "Class Period."  Defendants deny the allegations in the third sentence of paragraph 13.

14.     With respect to the allegations of the first two sentences of paragraph 14, Defendants lack knowledge and information sufficient to form an opinion as to their truth, and they are otherwise denied.  Defendants deny that there is any "Class Period."  Defendants deny the allegations in the third sentence of paragraph 14.

15.     With respect to the allegations of the first two sentences of paragraph 15, Defendants lack knowledge and information sufficient to form an opinion as to their truth, and they are otherwise denied.  Defendants deny that there is any "Class Period."  Defendants deny the allegations in the third sentence of paragraph 15.

16.     With respect to the allegations of the first two sentences of paragraph 16, Defendants lack knowledge and information sufficient to form an opinion as to their truth, and

they are otherwise denied.  Defendants deny that there is any "Class Period."  Defendants deny the allegations in the third sentence of paragraph 16.

17.    With respect to the allegations of the first two sentences of paragraph 17, Defendants lack knowledge and information sufficient to form an opinion as to their truth, and they are otherwise denied.  Defendants deny that there is any "Class Period."  Defendants deny the allegations in the third sentence of paragraph 17.

18.    Defendants admit that approximately 24,230 qualified ERISA retirement plans and/or participants have purchased Nationwide Life contracts, admit that a majority of those plans continue to hold Nationwide Life contracts, and deny the remaining allegations of paragraph 18, some of which purport to interpret the written terms of the contracts, which speak for themselves.  Defendants deny that there is a "Class."

19.    The allegations in paragraph 19 pertain to alleged conduct of third parties and Defendants lack knowledge and information sufficient to form an opinion as to their truth, and they are otherwise denied.  Defendants deny that there is a "Class."

20.    Defendants deny the allegations of paragraph 20.

21.    The allegations of paragraph 21 purport to interpret the written terms of the contracts, which speak for themselves, and are otherwise denied.

22.    The allegations of paragraph 22 purport to interpret the written terms of the contracts, which speak for themselves, and are otherwise denied.

23.    The allegations of paragraph 23 purport to interpret the written terms of the contracts, which speak for themselves, and are otherwise denied.

24.    The allegations of paragraph 24 purport to interpret the written terms of the contracts, which speak for themselves, and are otherwise denied.

25.    The allegations of paragraph 25 purport to interpret the written terms of the contracts, which speak for themselves, and are otherwise denied.

26.    Defendants admit the allegations of the first sentence of paragraph 26, except the characterization "technically" to which Nationwide is not required to respond, admit the allegations of the fourth sentence, and deny the remaining allegations of paragraph 26.

27.    Defendants admit the allegations of the first sentence of paragraph 27 and deny the remaining sentences of paragraph 27.

28.    Defendants deny the allegations in paragraph 28.

29.    Defendants deny the first sentence of paragraph 29 on the grounds that it is a quotation to which Defendants need not respond.  Defendants admit the allegations in the second and third sentences of paragraph 29.

30.    Defendants admit that mutual funds charge fees to investors in part to cover costs and that, when funds account for their expenses, net asset value goes down.  Defendants deny the remaining allegations of paragraph 30.

31.    Defendants deny the allegations of the first and second sentences of paragraph 31. With respect to the allegations of the third sentence of paragraph 31, Defendants admit that several funds at varying times were managed by Defendants' affiliates, and deny the remaining allegations of the third sentence of paragraph 31.

32.    The allegations of the first sentence of paragraph 32 pertain to the alleged conduct of a third party, and Defendants lack sufficient knowledge and information to form an opinion as to their truth and they are otherwise denied.  Defendants deny the allegation that plan assets were taken by the mutual funds.  Defendants deny the allegations of the second sentence of paragraph 32.

33.     Defendants deny the allegations in paragraph 33.

34.     Defendants deny the allegations in paragraph 34.

35.     Defendants deny the allegations in paragraph 35.

36.     Defendants deny the allegations in paragraph 36, some of which purport to interpret the terms of written documents, which speak for themselves.

37.     Defendants deny the allegations in paragraph 37.

38.     Defendants admit obtaining written amendments permitting changes to group annuity contracts and that the amendments were accompanied by explanatory correspondence, and deny the remaining allegations of paragraph 38, some of which purport to interpret the terms of written documents, which speak for themselves.

39.     Defendants deny the allegations of paragraph 39.

40.     Defendants deny the allegations of paragraph 40.

41.     Defendants admit that Nationwide Life and other entities received payments pursuant to contracts with mutual funds and fund affiliates and deny the remaining allegations of paragraph 41, some of which purport to interpret the terms of written documents, which speak for themselves.

42.     Defendants deny the allegations of paragraph 42.

43.     Defendants deny the allegations of paragraph 43.

44.     Defendants deny the allegations of paragraph 44.

45.     Defendants deny the allegations of paragraph 45, except that Defendants admit that Nationwide Life is a wholly owned subsidiary of NFS.

46.    The allegations of paragraph 46 purport to describe Plaintiffs' Complaint, and therefore no response from Defendants is required.  To the extent that a response from Defendants is required, Defendants deny the allegations of paragraph 46.

47.    Defendants deny the allegations contained in paragraph 47.

48.    With respect to the allegations of the first sentence of paragraph 48, Defendants admit that approximately 24,230 qualified ERISA plans and/or participants have purchased Nationwide Life contracts, and Defendants deny the remaining allegations of the first sentence of paragraph 48.  Defendants deny the allegations of the second sentence of paragraph 48.

49.    Defendants deny the allegations of paragraph 49.

50.    Defendants deny the allegations of paragraph 50.

51.    Defendants deny the allegations of paragraph 51.

52.    Defendants deny the allegations of paragraph 52.

53.    Defendants deny the allegations of paragraph 53.

54.    Defendants deny the allegations of paragraph 54.

55.    Defendants deny the allegations of paragraph 55.

56.    Defendants deny the allegations of paragraph 56.

57.    Defendants deny the allegations of paragraph 57.

58.    Defendants deny the allegations of paragraph 58.

59.    Defendants deny the allegations of paragraph 59.

60.    The allegations of paragraph 60 purport to describe Plaintiffs' Complaint and therefore no response from Defendants is required.  To the extent that a response from Defendants is required, Defendants deny the allegations of paragraph 60.

61.    Defendants deny the allegations of paragraph 61.

62.     The allegations of paragraph 62 purport to state a request for action by the Court, and therefore no response from Defendants is required.  To the extent that a response from Defendants is required, Defendants deny the allegations of paragraph 62.

63.     Defendants deny the allegations of paragraph 63.

64.     Defendants deny the allegations of paragraph 64.

65.     The allegations of paragraph 65 purport to describe Plaintiffs' Complaint and therefore no response from Defendants is required.  To the extent that a response from Defendants is required, Defendants deny the allegations of paragraph 65.

## II.     AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint and each of the claims asserted therein fail to state a claim under the ERISA, 29 U.S.C. § 1001 et seq, upon which relief may be granted.

### Second Affirmative Defense

The Complaint fails to state a claim under the "federal common law" developed under ERISA upon which relief may be granted.

### Third Affirmative Defense

To the extent that Plaintiffs' action is premised on any alleged misrepresentation, Plaintiffs have failed to allege said misrepresentation with the requisite particularity.

### Fourth Affirmative Defense

Defendants deny that any misrepresentations were made to Plaintiffs.  However, to the extent that the Complaint is premised on misrepresentations made to Plaintiffs, said alleged misrepresentations were allegedly made by a third party or third parties for whom Defendants are not legally responsible.

**Fifth Affirmative Defense**

To the extent that Plaintiffs' action is premised on any alleged misrepresentation, the contract documents identified in the Complaint are fundamentally inconsistent with said alleged misrepresentations, and therefore Plaintiffs could not have relied on any such alleged misrepresentations.

**Sixth Affirmative Defense**

Defendants allege, upon information and belief, that the Plaintiffs' and the putative class members' alleged injuries and damages were proximately caused, in whole or in part, by their own conduct, and/or by the conduct of others over which Defendants had and have no control and for whose conduct Defendants bear no responsibility, and that Plaintiffs and the putative class are therefore barred from recovery against Nationwide.

**Seventh Affirmative Defense**

Plaintiffs and the putative class members voluntarily assumed the risk of injury that they allegedly sustained.

**Eighth Affirmative Defense**

Any injuries that Plaintiffs and the putative class members allegedly sustained occurred as a direct result of their failure to exercise reasonable prudence and care, and therefore their alleged injuries were caused, in whole or in part, or were contributed to, by their own conduct, and not by any alleged breach of fiduciary duty of Defendants.

**Ninth Affirmative Defense**

To the extent that the claims asserted in the Complaint were or are untimely brought, the claims are barred, in whole or in part, by the statute of limitations and laches.

### Tenth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of ratification.

### Eleventh Affirmative Defense

Plaintiffs' claims are barred by the doctrine of waiver.

### Twelfth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of estoppel.

### Thirteenth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of release.

### Fourteenth Affirmative Defense

Defendants allege upon information and belief that Plaintiffs and/or some or all of the putative class members have failed to mitigate, minimize or avoid any damages they allegedly sustained, and any recovery against Defendants must be reduced by that amount.

### Fifteenth Affirmative Defense

To the extent the Plaintiff plans have suffered any injuries or damages, they have failed to mitigate such injuries and damages.

### Sixteenth Affirmative Defense

To the extent that Plaintiffs have suffered any injuries or damages, Defendants did not proximately cause such injuries or damages.

### Seventeenth Affirmative Defense

Defendants allege, upon information and belief, that some or all of the claims of Plaintiffs and some or all of the putative class members are contractually barred.

**Eighteenth Affirmative Defense**

The Complaint and each of the claims therein purporting to state claims on behalf of a class should be dismissed as this action may not properly be maintained as a class action.

**Nineteenth Affirmative Defense**

Some or all of Plaintiffs lack standing to assert some or all of the claims asserted in the Complaint.

**Twentieth Affirmative Defense**

Plaintiffs fail to state a claim because Defendants' actions as alleged in the Complaint were authorized by the relevant government regulators and in accordance with applicable government regulations, and Plaintiffs' claims are barred by the doctrine of primary jurisdiction.

III.    **COUNTERCLAIMS**

1.    Defendants Nationwide Financial Services, Inc. and Nationwide Life Insurance Company ("NFS" and "Nationwide Life," respectively, or "Counterclaim Plaintiffs") counterclaim against the Plaintiffs in this lawsuit, who are Lou Haddock, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan; Peter Wiberg, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing Plan; Alan Gouse, as trustee of Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust; Edward Kaplan, as trustee of the Hartford Roofing 401(k) Profit Sharing Plan and the Hartford South, L.L.C. 401(k) Profit Sharing Plan; and Dennis Ferdon, as trustee of the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan, (the "Trustees" or "Counterclaim Defendants").

2.      In the Fifth Amended Complaint, the Trustees allege that Nationwide Life and NFS were ERISA fiduciaries of the foregoing Plans and are liable to the Plans under ERISA.  In their Answer, Nationwide Life and NFS deny that they were Plan fiduciaries, are liable in any way under ERISA to the Plans, and that the Plans or Plan participants suffered any harm or loss or were deprived of any monies to which they were entitled.  The Counterclaims herein are asserted solely in the event that Nationwide Life and NFS are adjudged to be liable under ERISA, and without prejudice to the positions taken by Nationwide Life and NFS in this lawsuit.

3.      In the Fifth Amended Complaint, the Trustees purport to bring this action on behalf of a class.  In their Answer and pleadings, Nationwide Life and NFS deny that this action may be maintained on a class basis.  However, solely in the event that this action is adjudged to include additional Plans with additional trustees, Nationwide Life and NFS reserve their right to include some or all of such trustees as Counterclaim Defendants.

### The Parties

4.      According to the Fifth Amended Complaint, Nationwide Life is a foreign corporation that sold variable annuity contracts to the employee retirement plans (the "Plans") for which the Counterclaim Defendants serve as trustees.

5.      According to the Fifth Amended Complaint, Counterclaim Plaintiff NFS is the corporate parent of Nationwide Life.

6.      According to the Fifth Amended Complaint, each of the Counterclaim Defendants was a trustee and fiduciary of a Plan.

**Jurisdiction and Venue**

7.    This Court has subject matter jurisdiction over these Counterclaims under

Sections 502(e)(1) and 502(f) of ERISA, 29 U.S.C. §§ 1132(e)(1) and 1132(f), and Rule 13(a) of

the Federal Rules of Civil Procedure.

8.    The Counterclaim Defendants have consented to personal jurisdiction by virtue of

commencing this action.

9.    Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2),

because the Counterclaim Defendants reside in and may be found in this District, the Plans are

administered in this District, and the acts or omissions alleged herein took place in this District.

**Facts**

10.    The Fifth Amended Complaint alleges that each of the Plans is a 401(k) plan

under ERISA.

11.    The Fifth Amended Complaint alleges that the Plans, acting through their

respective Trustees, purchased annuity contracts from Nationwide Life.

12.    Three of the five Plans purchased "group" variable annuity contracts in

connection with the Plans identified in the Fifth Amended Complaint as: the Flyte Tool & Die,

Incorporated Deferred Compensation Plan (the "Flyte Plan"), the Crown Tool & Die Deferred

Compensation Plan (the "Crown Plan"), and the Hartford Roofing, Inc. Deferred Compensation

Plan (the "Hartford Roofing Plan").  Two of the five Plans purchased "individual" variable

annuity contracts in connection with the Plans identified in the Fifth Amended Complaint as: the

Anderson & Ferdon Deferred Compensation Plan (the "Anderson Plan") and the Greater

Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan (the "Easter Seal Plan").

13.     Under the terms of these annuity contracts, Nationwide Life was obligated to provide certain benefits and services to, and entitled to receive certain fees and charges from, the Plans and/or the Plan participants.  Those fees, charges, benefits and services were fully and accurately disclosed in the annuity contracts and other documents received by or available to the Trustees.  The Trustees, Plans and/or the Plan participants received all the benefits and services provided for in the annuity contracts and other documents, and the Plans and/or Plan Participants paid no more than the fees and charges that were set forth in the annuity contracts and other documents.

14.     The benefits provided by the annuity contracts included certain investment options.  The Fifth Amended Complaint alleges that the group and variable annuity contracts offered certain investment options in variable accounts that corresponded to certain mutual funds ("funds"), and that were available for investment allocation by Plans and/or Plan participants.  Each Trustee, acting exclusively, approved the investment options available under the contracts; selected the investment options to be offered to a particular Plan and its participants through the annuity contracts; monitored the performance of the investment options; and approved of any changes made to the investment options.

15.     The Trustees had the authority and responsibility to make the ultimate decisions as to which investment options were appropriate and available to participants, exercised that authority, and never delegated that authority.

16.     Each of the investment options selected by the Trustees and offered through the annuity contracts included fees and charges assessed by the corresponding mutual funds in return for certain services.  Those fees, charges and services were fully and accurately described in the fund prospectuses received by or available to the Trustees.  The Trustees, Plans and Plan

participants received all the benefits and services provided for in the fund prospectuses, and the Plans and/or Plan participants paid no more than the fees and charges that were set forth in the fund prospectuses.

17.     Services related to these funds were provided by the funds or affiliated entities, or by third parties who contracted with the funds or affiliated entities.  The discretion of the funds and affiliated entities to contract with third parties for these services was fully and accurately described in the fund prospectuses received by or available to the Trustees.

18.     Some or all of the Trustees, acting exclusively, knew of, agreed to, approved of, ratified, were recklessly indifferent to, and/or failed to monitor and assure the reasonableness of: (a) the investment options available under the annuity contracts; (b) the benefits or services provided by Nationwide Life or affiliated entities under the annuity contracts purchased by the Plans; (c) the fees or charges for those benefits and services; (d) the description of such fees or charges as "standard" or "discounted;" (e) the relationship of those fees or charges to "fair market pricing;" and (f) the lack of any limitations on the right of Nationwide Life or affiliated entities to receive and retain other compensation, for services or otherwise, from the funds or affiliated entities.

19.     Some or all of the Trustees, acting exclusively, knew of, agreed to, approved of, ratified, were recklessly indifferent to, and/or failed to monitor and assure the reasonableness of: (a) the benefits or services provided by the funds or affiliated entities; (b) the fees or charges for those services, (c) whether those fees or charges were above "fair marketing pricing;" (d) whether those fees or charges were duplicative or for services that had traditionally been provided to other entities; and (e) the lack of any limitations on the right of the funds or affiliated entities to contract with and compensate other entities.

20.     Some or all of the Trustees, acting exclusively, knew of, agreed to, approved of, ratified, were recklessly indifferent to, and/or failed to monitor and assure the reasonableness of: (a) the contracts or other arrangements between the funds or affiliated entities and third parties, including the Counterclaim Plaintiffs or affiliated entities; (b) the payments made by the funds or affiliated entities to third parties under such contracts or other arrangements; (c) the type, level or value of the services that those third parties performed pursuant to those contracts or arrangements; (d) whether the payments to third parties were for no or limited services, or services that had been or would have been performed for little or no compensation;  (e) the payments that third parties were receiving pursuant to those contracts and arrangements; (f) the right of those third parties to retain such payments; and (g) the effect of such contracts, arrangements or payments on the Plans, Plan participants, or Plan assets.

## Counterclaim One
## Contribution

21.     The allegations of paragraphs 1 through 19, above, are realleged and incorporated herein by reference as paragraph 20.

22.     If Nationwide Life and NFS are found to have violated ERISA by arranging for, receiving, or retaining payments from funds or affiliated entities, as alleged in the Fifth Amended Complaint, then the Trustees are also at fault to the extent the Plans and/or the Plan participants suffered any harm or losses or were deprived of any assets to which they were entitled, because the Trustees had the ultimate responsibility for purchasing the variable annuity contracts, selecting and approving changes to investment options, managing the Plan, and investing Plan assets, and in exercising such responsibility Trustees knew of, agreed to, approved of, ratified, and/or were recklessly indifferent to that conduct.

23. The Trustees benefited from the services provided by Nationwide Life and affiliated entities for the funds and their affiliated entities. The Trustees also benefited from any payments received by Nationwide Life or its affiliates from the funds or their affiliated entities.

24. The Trustees should not be permitted to benefit by deflecting the ERISA liability for the Trustees' own conduct on to Nationwide Life and NFS.

25. If Nationwide Life and NFS are somehow found to have violated ERISA as set forth in the Fifth Amended Complaint, their conduct was not a cause or a substantial cause of any harm or loss to the Plans and/or their participants, nor a cause or substantial cause of the Plans and/or their participants being deprived of any assets to which they were entitled, nor a cause of any diminishment of Plan assets. The Plans and their participants paid no more than the amounts that the Trustees agreed to and that were fully and accurately disclosed, and received every service to which they were entitled.

26. If any conduct of Nationwide Life or affiliated entities in receiving and retaining payments from funds or their affiliated entities was somehow improper or injurious to the Plans and their participants, the resulting harm (if any) to the Plans and/or the Plan participants was the fault of the Trustees, each of whom breached his fiduciary responsibility to manage and control the assets of his respective Plan; read and understand the terms of contracts, prospectuses, and other documents relating to the Plan and its participants; assure that any fees, charges or other compensation being paid directly or indirectly was reasonable in relation to the services provided; and investigate alternatives in the marketplace.

27. Accordingly, Nationwide Life and NFS are entitled to contribution from the Trustees under ERISA common law.

**Counterclaim Two**
**<u>Indemnification</u>**

28.     The allegations of paragraphs 1 through 19, above, are realleged and incorporated

herein by reference as paragraph 27.

29.     If Nationwide Life and NFS are found to have violated ERISA by arranging for,

receiving or retaining payments from funds or their affiliated entities, as alleged in the Fifth

Amended Complaint, then the Trustees are substantially more at fault to the extent the Plans

and/or the Plan participants suffered any harm or diminishment or deprivation of Plan assets,

because the Trustees had the ultimate responsibility for purchasing the variable annuity

contracts, selecting and approving changes to investment options, managing the Plan, and

investing Plan assets, and in exercising such responsibility the Trustees knew of, agreed to,

approved of,  ratified, and/or were recklessly indifferent to the conduct of the funds or affiliated

entities or Nationwide Life or affiliated entities.

30.     The Trustees benefited from the services that Nationwide Life and/or its affiliated

entities performed in return for any payments, and from the payments received by Nationwide

Life and/or its affiliated entities.  Moreover, the Trustees should not be permitted to benefit by

deflecting the ERISA liability for the Trustees' own conduct on to Nationwide Life and NFS.

31.     Alternatively, even if Nationwide Life and NFS are found to have violated

ERISA, their conduct was not a cause or a substantial cause of any harm or diminishment or

deprivation of Plan assets to the Plans and/or their participants.  The Plans and their participants

paid no more than the amounts that the Trustees agreed to and that were fully and accurately

disclosed.

32.     If the Plans and their participants are alleging that the amounts they agreed to and

were fully disclosed were nevertheless unreasonable in relation to the services and benefits

provided, or were duplicative or above the "fair market," or were not lawfully retained by

Nationwide Life or affiliated entities, or that Nationwide Life or affiliated entities improperly

received or retained additional payments from funds or affiliated entities, the resulting harm (if

any) to the Plans and/or the Plan participants was the fault of the Trustees, each of whom

breached his fiduciary responsibility to manage and control the assets of his respective Plan; read

and understand the terms of contracts, prospectuses, and other documents relating to the Plan and

its participants; assure that any fees, charges or other compensation being paid directly or

indirectly was reasonable in relation to the services provided; and investigate alternatives in the

marketplace.

33.    Accordingly, Nationwide Life and NFS are entitled to indemnification from the

Trustees under ERISA common law.

### Counterclaim Three
### Breach of Fiduciary Duty

34.    The allegations of paragraphs 1 through 19, above, are realleged and incorporated

herein by reference as paragraph 33.

35.    In the Fifth Amended Complaint, the Trustees allege that Nationwide Life and

NFS were fiduciaries of the Plans during the relevant time within the meaning of ERISA.

Nationwide Life or NFS in their Answer deny they were or are fiduciaries.  In the event that

either Nationwide Life or NFS is held to be a fiduciary, which they are not, Counterclaim

Plaintiffs assert this claim for breach of fiduciary duty against the Trustees.

36.    While Nationwide Life and NFS are not Plan fiduciaries, to the extent Nationwide

Life or NFS is held to be a fiduciary to the Plans pursuant to ERISA, Nationwide Life or NFS

has standing to, and hereby does, bring a civil action on behalf of the Plans pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

37.     If the Trustees continue to claim that the conduct in the Fifth Amended Complaint violated ERISA, then some or all of the Trustees are liable because they knew of, agreed to, approved of, ratified, approved of, were recklessly indifferent to, and/or failed to monitor and assure the reasonableness of that conduct.

38.     In addition, if the Plans and their participants continue to claim that the amounts they agreed to and which were fully disclosed were nevertheless unreasonable in relation to the services and benefits provided, or were duplicative or above the "fair market", or were not lawfully retained by NFS or Nationwide Life, or that Nationwide Life or affiliated entities improperly received or retained additional payments from funds or affiliated entities, the resulting harm (if any) to the Plans and/or the Plan participants was the fault of the Trustees, each of whom breached his fiduciary responsibility to manage and control the assets of his respective Plan; read and understand the terms of contracts, prospectuses, and other documents relating to the Plan and its participants; assure that any fees, charges or other compensation being paid directly or indirectly was reasonable in relation to the services provided; and investigate alternatives in the marketplace.

39.     Accordingly, the Trustees are liable to the extent the Plans or their participants suffered any harm or losses or were deprived of any assets to which they were entitled.

Dated:  October 12, 2007

Defendants Nationwide Financial Services Inc.
and Nationwide Life Insurance Co.

By: _____

Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone: (860) 293-3500
Facsimile: (860) 293-3555

Charles C. Platt, Esq. (CT 23036)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY  10022
New York, NY 10019-5389
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Daniel H. Squire, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone:  (202) 663-6000
Facsimile: (202) 663-6363

## CERTIFICATION

I hereby certify that on this 12th day of October, 2007, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

> Richard A. Bieder, Esq.
> Antonio Ponvert III, Esq.
> Koskoff, Koskoff & Bieder
> 350 Fairfield Avenue
> Bridgeport, CT 06604
>
> Gregory G. Jones, Esq.
> Law Firm of Gregory G. Jones, P.C.
> 603 South Main Street, Suite 200
> Grapevine, TX 76051
>
> Marc R. Stanley, Esq.
> Roger L. Mandel, Esq.
> Stanley, Mandel & Iola
> 3100 Monticello Avenue
> Suite 750
> Dallas, TX 75205