UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die, Incorporated Deferred Compensation Plan, PETER WIBERG, as trustee of the Crown Tool & Die Deferred Compensation Plan, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan, EDWARD KAPLAN as trustee of the Hartford Roofing, Inc. Deferred Compensation Plan, DENNIS FERDON as trustee of the Anderson & Ferdon Deferred Compensation Plan,<br><br>    PLAINTIFFS,<br><br>v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,<br><br>    DEFENDANTS. | § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO:<br><br>3:01CV1552(SRU) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO DISMISS NATIONWIDE'S AMENDED COUNTERCLAIMS**

# I.

## PRELIMINARY STATEMENT

Plaintiffs[1] respectfully submit this Memorandum in support of their Motion to Dismiss Defendants' Amended Counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This action seeks equitable relief under ERISA, 29 U.S.C. § 1001, et seq. Plaintiffs are trustees of qualified ERISA retirement plans, to which plans (the "Plans") Nationwide Life Insurance Company provided variable annuity platforms of mutual funds during the Class Period. ¶¶13-18.[2] Defendants are Nationwide Life Insurance Company and Nationwide Financial Services Incorporated (collectively referred to as "Nationwide" or "Defendants"). ¶¶ 9-10.

For the benefit of their ERISA plans, and all others similarly situated, Plaintiffs (in their capacities as trustees of their Plans, not individually) seek restitution of revenue sharing payments (hereinafter referred to as "the revenue sharing payments") received and wrongfully kept by Nationwide. ¶¶35-45.

---

[1] Plaintiffs are Lou Haddock ("Haddock"), trustee of the Flyte Tool & Die Incorporated Deferred Compensation Plan (the "Flyte Plan"); Peter Wiberg ("Wiberg"), trustee of the Crown Tool & Die Deferred Compensation Plan (the "Crown Plan"); Alan Gouse ("Gouse"), trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan (the "Easter Seal Plan"); Edward Kaplan ("Kaplan"), trustee of the Hartford Roofing Company 401(k) Profit Sharing Plan and the Hartford South, L.L.C. 401(k) Profit Sharing Plan, collectively referred to as the Hartford Roofing, Inc. Deferred Compensation Plan (the "Hartford Roofing Plan"); and Dennis A. Ferdon ("Ferdon"), trustee of the Anderson & Ferdon, P.C. 401(k) Profit Sharing Plan (the "Anderson & Ferdon Plan").

[2] Unless otherwise noted, all references to paragraph numbers (¶_) are to Plaintiffs' Fifth Amended Class Action Complaint (the "Complaint") [Docket No. 270].

## II.

## STATEMENT OF FACTS

Plaintiffs' claims against Nationwide for violations of ERISA are simple, straightforward claims for restitution or disgorgement: for the benefit of the Plans, Plaintiffs seek recovery of the revenue sharing payments wrongfully received and kept by Nationwide. ¶¶1, 35-45. Nationwide has counterclaimed against Plaintiffs in their individual capacities,[3] asserting three separate causes of action: contribution (Nationwide's Counterclaims at ¶¶21-27), indemnification (Nationwide's Counterclaims at ¶¶28-33), and breach of fiduciary duty (Nationwide's Counterclaims at ¶¶34-39).

Nationwide's three counterclaims rest on the following allegations:

> If Nationwide Life and NFS are found to have violated ERISA by arranging for, receiving, or retaining payments from funds or affiliated entities, as alleged in the Fifth Amended Complaint, then the Trustees are also at fault to the extent the Plans and/or the Plan participants suffered any harm or losses or were deprived of any assets to which they were entitled, because the Trustees had the ultimate responsibility for purchasing the variable annuity contracts, selecting and approving changes to investment options, managing the Plan, and investing Plan assets, and in exercising such responsibility Trustees knew of, agreed to, approved of, ratified, and/or were recklessly indifferent to that [Nationwide's] conduct.

> If the Trustees continue to claim that the conduct in the Fifth Amended Complaint violated ERISA, then some or all of the Trustees are liable because they knew of, agreed to, approved of, ratified, were recklessly indifferent to, and/or failed to monitor and assure the reasonableness of that [Nationwide's] conduct.

Nationwide's Counterclaims at ¶¶22, 29 & 37.

Nationwide thus attempts to apportion responsibility to Plaintiffs in their individual capacities based solely on the allegation that Plaintiffs should have prevented it from breaching

---

[3] *See* Defendants' Answer to Plaintiffs' Fifth Amended Complaint and Amended Counterclaims at III ("Nationwide's Counterclaims"), dated October 12, 2007 [Docket No. 290].

3

its fiduciary duty owed to the Plans. Stated bluntly, Nationwide alleges that Plaintiffs negligently failed to prevent it from stealing from the Plans. For the reasons set forth below, Nationwide's allegations fail, as a matter of law, to state claims upon which relief can be granted. Accordingly, this Court should dismiss Nationwide's Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6).

### III.

### MOTION TO DISMISS STANDARD

The Supreme Court has recently clarified that "once a claim has been stated adequately, it may be supported by showing any facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ____, 127 S. Ct. 1955, 1969 (2007). In other words, in order to survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Id*. at 1974.

In this case, it is beyond doubt that Nationwide has not pled facts in support of its counterclaims that state a claim for relief that is plausible on its face. The Court should grant Plaintiffs' motion accordingly. *Id*.

### IV.

### NATIONWIDE'S COUNTERCLAIMS FAIL AS A MATTER OF LAW

A.  *BECAUSE THE UNITED STATES SUPREME COURT HAS OVERRULED CHEMUNG, NO CAUSE OF ACTION FOR CONTRIBUTION OR INDEMNITY EXISTS BETWEEN CO-FIDUCIARIES.*

In *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, the Second Circuit held that defendants in ERISA cases may assert rights to indemnity and contribution pursuant to the federal common law of ERISA. 939 F.2d 12, 16 (2d Cir. 1991). In so ruling, the Second Circuit held that it was following Congress' directive "to fashion, where congress has not spoken, a

4

federal common law for ERISA by incorporating what has long been embedded in traditional trust law and equity jurisprudence." *Id*. The court distinguished *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985), and held that the failure of Congress to specifically provide for contribution did not mean that the Congress had rejected it, but rather that Congress wanted the courts to fill in any gaps in the statute's remedies by looking to traditional trust law principles. *Id*. at 18.

Subsequent to *Chemung*, and explicitly relying upon it, the Second Circuit held that although no implied right of action exists under ERISA in favor of participants against a non-fiduciary who knowingly participates in an ERISA-fiduciary's breach of duty, the courts could find a need for "interstitial lawmaking" and imply such a cause of action under the federal common law. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 280-1 (2d Cir. 1992). *Diduck* and *Chemung*, accordingly, rest on the exact same underlying premise that gaps in the remedies provided by ERISA may be filled in by the courts pursuant to the federal common law of ERISA. *See Invest Almaz v. Temple-Inland Forest Products Corp.*, 243 F.3d 57, 83-4 (1st Cir. 2001) (discussing *Diduck* and *Chemung* as companion cases which are based upon the same fundamental principle).

Crucially, the Second Circuit recognized the abrogation of *Diduck* by the Supreme Court, holding that its underlying premise that gaps in the remedies provided by ERISA can be filled in by courts recognizing a federal common law right of action had not survived subsequent Supreme Court determinations. *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 322 (2d Cir. 2003), *citing Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993). Specifically, the Second Circuit wrote:

> In *Mertens*, the Court rejected the central holding of *Diduck*….Twice in its most recent term, the Court has repeated its belief that ERISA's express remedies, as the product of long and careful study and compromise, should remain exclusive. [citations omitted]. We see little room in this frame work for judicially-created, 'interstitial' remedies.

*Id.*

Because *Chemung* has its basis in the exact same premise as *Diduck*, the holding in *Chemung* cannot survive the overruling of *Diduck* as recognized by *Gerosa*. Simply put, the holding in *Chemung* that courts can fashion a federal common law remedy where Congress has not spoken, 939 F.2d at 16, cannot co-exist with the following holding of *Gerosa*:

> *Great-West* is quite explicit, however, that '[i]t is…not our job to find reasons for what Congress has plainly done.' [citation omitted]. That comment, taken in the context of other recent Court opinions applying a strong presumption that creation of an express remedy clearly forecloses others, [citation omitted], makes evident that we are no longer free to fill in unwritten gaps in ERISA's civil remedies…[T]he Supreme Court has instructed that it is not for us to decide the best ERISA remedial scheme.

*Gerosa*, 329 F.3d at 322.

Significantly, in holding that ERISA does not allow contribution and indemnity claims, the Eighth Circuit very recently recognized the abrogation of *Chemung* as a result of the Supreme Court's pronouncements in *Mertens* and *Great-West*:

> Since the Second Circuit's decision in *Chemung Canal*, moreover, the Supreme Court has reiterated more than once its admonition that notwithstanding the authority to fashion certain rules of federal common law under ERISA, the statute's 'carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'

*Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.,* 497 F.3d 862, 866 (8th Cir. 2007) (*quoting Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002); *citing Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993)).

The only possible conclusion is that the United States Supreme Court has overruled *Chemung* such that defendants in an ERISA action may no longer assert claims for contribution and indemnity. Accordingly, this Court should dismiss Nationwide's Counterclaims for failure to state a claim.

B.   *ALTERNATIVELY, BECAUSE NATIONWIDE IS THE RECIPIENT OF THE REVENUE SHARING PAYMENTS, AND BECAUSE IT IS "SUBSTANTIALLY MORE AT FAULT" THAN PLAINTIFFS, THE FIRST AND SECOND COUNTS OF ITS COUNTERCLAIMS AGAINST PLAINTIFFS FOR CONTRIBUTION OR INDEMNITY PURSUANT TO THE PURPORTED FEDERAL COMMON LAW OF ERISA SHOULD BE DISMISSED.*

Alternatively, if the Court determines that *Chemung* still constitutes good law binding upon it, it should nevertheless dismiss Nationwide's Counterclaims as a matter of law, because they fail to state a claim under the standards for ERISA contribution and indemnity established by the Second Circuit in *Chemung*. In creating ERISA contribution and indemnity rights in *Chemung*, the Second Circuit relied on the common law of trusts, as reflected in the RESTATEMENT (SECOND) OF TRUSTS § 258 (1959). *Chemung*, 939 F.2d at 16. *See also In re Masters Mates & Pilots Pension Plan and IRAP Litigation*, 957 F.2d 1020, 1032 (2d Cir. 1992).

The Restatement recites, in pertinent part:

> (1) …where two trustees are liable to the beneficiary for a breach of trust, each of them is entitled to contribution from the other, except that (a) if one of them is substantially more at fault than the other, he is not entitled to contribution from the other but the other is entitled to indemnity from him; or (b) if one of them receives a benefit from the breach of trust, the other is entitled to indemnity from him to the extent of the benefit….

RESTATEMENT (SECOND) OF TRUSTS § 258 (1959).

7

      1.      <u>Nationwide, not Plaintiffs, received a benefit from a breach of trust, requiring dismissal of its counterclaims for contribution and identity</u>.

Under a straightforward application of the second exception of § 258, it is clear that Nationwide is not entitled to assert rights to contribution or indemnity against Plaintiffs in this case as a matter of law. The breach of trust that Plaintiffs allege in this case is Nationwide's wrongful receipt of the revenue sharing payments. ¶¶ 1, 35-45; Nationwide's Counterclaims at ¶¶ 22, 29 & 37. That Nationwide kept the revenue sharing payments means that Nationwide – not Plaintiffs – received the benefit from this breach of trust. ¶¶ 1, 35-45; Nationwide's Counterclaims at ¶¶ 22, 29. Thus, pursuant to RESTATEMENT (SECOND) OF TRUSTS § 258(1)(b) (1959), Nationwide would not be entitled to indemnity or contribution to the extent it is required to disgorge the revenue sharing payments it appropriated.

      This principle is illustrated in the Restatement as follows:

> A and B are trustees for C. B improperly delegates the administration of the trust to A. A misappropriates $1,000 of the trust property. If A makes good the loss he is not entitled to recover anything from B. If B makes good the loss he is entitled to recover $1,000 from A.

RESTATEMENT (SECOND) OF TRUSTS § 258, comment f, illustration 5. In this case, pursuant to the allegations in the Complaint and in Nationwide's Counterclaims, Nationwide is analogous to A of the illustration because Plaintiffs allege that Nationwide misappropriated the revenue sharing payments, and Plaintiffs are analogous to B of the illustration because Nationwide alleges that Plaintiffs improperly made possible its breach of duty, while the Plans are analogous to C.

      Crucially, just as in the illustration, where A cannot recover anything from B if it makes good the loss, Nationwide cannot recover anything from Plaintiffs should it be forced to disgorge the revenue sharing payments and return them to the Plans, as Plaintiffs request the Court to order Nationwide to do in this case. And, just as in the illustration, where B is entitled to recover

8

indemnity from A if it makes good the loss, Plaintiffs would have the right to obtain complete indemnity against Nationwide in the event that Plaintiffs were held liable to the Plans. Thus, pursuant to the Restatement, Nationwide's counterclaims for contribution and indemnity fail as a matter of law and should be dismissed by the Court.

    2.    <u>Nationwide is "Substantially More at Fault" Than Plaintiffs, Requiring Dismissal of the Counterclaims for Contribution and Indemnity</u>.

This Court should also dismiss Nationwide's Counterclaims pursuant to the second exception of RESTATEMENT (SECOND) OF TRUSTS § 258(1)(a) (1959) -- the "substantially more at fault" doctrine.

    Comment d to this Restatement section further explains this doctrine:

> *Trustees not equally at fault*. Where a breach of trust is committed and one of two trustees is substantially more at fault than the other, although both are liable to beneficiary for the breach of trust, the loss should ultimately be borne by the trustee who is more at fault. If, therefore, that trustee makes good the amount of the loss resulting from the breach of trust, he is not entitled to contribution from the other trustee; and, conversely, if the other trustee makes good the loss, he is entitled not merely to contribution but to indemnity from the trustee who is more at fault.

*Id*, Comment d (emphasis in original). Thus, pursuant to the Restatement, if the Court determines that, as a matter of law, Nationwide is substantially more at fault than Plaintiffs, Nationwide will not be entitled to recover contribution or indemnity from Plaintiffs; indeed, Plaintiffs, rather than Nationwide, would have a right of indemnity against Nationwide. *Id*.

The Restatement further explains how a Court should determine which party is "substantially more at fault" than the other:

> In determining whether one trustee is so substantially more at fault that he should bear the whole of the loss resulting from a breach of trust, the following factors are to be considered: (1) whether he fraudulently induced the other to join in the breach of trust; *(2) whether he intentionally committed a breach of trust and the other*

...

> *was at most guilty of negligence; (3) whether because of his greater experience he controlled the conduct of the other, as in the case where he was an attorney and the other was a person without business experience who was accustomed to rely upon his judgment; (4) whether he alone committed the breach of trust and the other is liable only because of an improper delegation, or failure to exercise reasonable care to prevent him from committing a breach of trust, or neglected to take proper steps to compel him to redress the breach of trust.*

RESTATEMENT (SECOND) OF TRUSTS § 258 (1959), Comment d (emphasis added). In this case, the second and fourth factors are applicable.

The case of *O'Brien v. Gridley*, 458 N.W.2d 802, 806 (S.D. 1990), provides a straightforward illustration of the principles underlying both factors. In *Gridley*, a co-trustee who had previously been held liable for losses suffered by a trust made a claim for contribution and indemnity against her co-trustee, who did not know about her improper transfer of trust funds to her husband's commodity trading account until after the losses to the trust were sustained. 458 N.W.2d at 803.

In affirming the dismissal of the plaintiff co-trustee's contribution and indemnity claims, the South Dakota Supreme Court relied on Illustration 4 of Comment d of § 258 of the Restatement:

> A and B are trustees for C. B permits A to assume the sole management of the trust. A purchases securities which are not proper trust investments. B does not know of or consent to the purchase. The securities are sold at a loss of $1,000. If A makes good the loss he is not entitled to recover anything from B. If B makes good the loss he is entitled to recover $1,000 from A.

*Gridley*, 458 N.W.2d at 806 (citing RESTATEMENT (SECOND) OF TRUSTS § 258 (1959), Comment d, illustration 4).

Based merely upon the fact that the defendant co-trustee did not know about the improper transfers, the court held that the plaintiff co-trustee was "substantially more at fault," such that

she could not maintain her contribution and indemnity claims. *Id*. In other words, because the ignorant defendant co-trustee was guilty at most of negligence, in contrast to the plaintiff co-trustee, whose conduct was found by the trial court to be intentional, the plaintiff co-trustee who engaged in intentional conduct was not entitled to obtain contribution or indemnity from the merely negligent defendant co-trustee. *Id*. at 804.

Another good illustration of the principles underlying the second and fourth factors is found in *Insurance Co. of N. Am. v. Harriman*, 1989 WL 52683 (9th Cir. 1989). In *Harriman*, a bank and a lawyer were co-trustees of a trust. 1989 WL 52683 at *1. A bank employee embezzled millions of dollars from the trust. *Id*. at *2. In affirming a summary judgment in favor of the lawyer on the bank's subrogee's claims for contribution and indemnity, the Ninth Circuit applied the common law trust principles of the Restatement and, in pertinent part, stated:

> [Bank employee] committed the intentional act of embezzlement whereas [lawyer] is only alleged to have been negligent by allowing [bank employee] to be the sole signator on the line of credit…. [Lawyer's] actions, as alleged by [subrogee], are merely negligent while the bank's are intentional even if [lawyer's] actions were a cause of the loss, … under co-trustee liability theory, as a matter of law, [subrogee] may not claim indemnity or contribution from [lawyer].

*Harriman*, 1989 WL 52683 at *4-5.

Thus, the "substantially more at fault" doctrine, as illustrated in the cases cited above, requires dismissal of Nationwide's Counterclaims for contribution and indemnity. Like the liable co-trustees in *Gridley* and *Harriman*, Nationwide acted intentionally by receiving and keeping the revenue sharing payments. ¶¶ 1, 35-45. In contrast, according to the allegations in Nationwide's Counterclaims, Plaintiffs acted, at most, negligently in failing to prevent

Nationwide from receiving and keeping the revenue sharing payments.[4]  Nationwide's Counterclaims at ¶¶ 22-26, 29-32.  Accordingly, as a matter of law, Nationwide cannot maintain counterclaims against Plaintiffs for contribution or indemnity.  RESTATEMENT (SECOND) OF TRUSTS § 258(1)(a) (1959), comment d; *Gridley*, 458 N.W.2d at 806; *Harriman*, 1989 WL 2683 at *4-5.

The second and fourth factors of the "substantially more at fault" doctrine are further illustrated by *Sunderlin v. First Reliance Standard Life Ins. Co.*, 235 F. Supp. 2d 222, 237 (W.D.N.Y. 2002).  In *Sunderlin*, the plaintiff, an employee, sued defendant, an employer, under ERISA for failure to provide a summary plan description ("SPD") of a disability insurance plan which the employer had contracted with a co-defendant insurance company to provide to its employees.  *Sunderlin*, 235 F. Supp. 2d at 226-28.  The employer asserted cross-claims for contribution and indemnity against the insurance company, claiming that the insurance company "has a duty of contribution and indemnification for any and all sums paid by [employer] pursuant to a judgment in [this action] and for any and all costs and fees paid by [employer] in the defense of [this action.]"  *Id*. at 236.

Judge Siragusa of the Western District of New York dismissed the employer's cross-claims for contribution and indemnity pursuant to Fed. R. Civ. P. 12(b)(6).  *Id*. at 237.  First, citing to *Chemung*, Judge Siragusa acknowledged the then-existing general rule in the Second Circuit that, under ERISA, a breaching fiduciary is entitled to contribution and indemnity in accordance with principles of trust law.  *Sunderlin*, 235 F. Supp. 2d at 236-37 & n. 13.  Next, he

---

[4] Nationwide does in numerous paragraphs allege that Plaintiffs acted "recklessly," but that constitutes a mere conclusion which the Court may ignore if no factual predicate is pled.  *See Murray v. City of Milford*, 380 F.2d 468, 470 (2d Cir. 1967).  Nationwide nowhere has pled that Plaintiffs actually knew about its conduct and consciously ignored it, and the effect it would have on the Plans, as required to plead recklessness.  *See Bryant v. Maffucci*, 923 F.2d 979, 985 (2d Cir. 1991). Furthermore, the case law cited above supports that any time one defendant acts intentionally and the other did not (whether merely negligently or recklessly), the party which acted intentionally is "substantially more at fault."

cited the RESTATEMENT (SECOND) OF TRUSTS § 258 (1959) and applied the "substantially more at fault" doctrine to the facts of the case before him:

> Here, [employer's] only liability for damages to plaintiff comes as a result of [employer's] own failure to provide a SPD. Therefore, [employer] has not pled a claim for common law indemnification or contribution under ERISA, since it does not claim that [insurance company] is at fault for failing to provide plaintiff with a SPD. That is, [employer] does not claim that it was one of [insurance company's] fiduciary duties to provide the SPD.

*Sunderlin*, 235 F. Supp. 2d at 237.

Another analogous case in which a co-trustee's contribution and indemnity claims were dismissed is *Harris Trust & Savings Bank v. John Hancock Mut. Life Ins. Co.*, 122 F. Supp. 2d 444, 463-64 (S.D.N.Y. 2000), *rev'd in part on other grounds*, 302 F.3d 18 (2d Cir. 2002). In *John Hancock*, an insurance company was held liable under ERISA for violations of fiduciary duties in connection with its refusal to release certain plan assets (excess funds invested in annuity contracts) to a trust. *Id.* at 459-60.

The insurance company made claims for contribution and indemnity against plan trustees, but, pursuant to the Restatement, the court dismissed them:

> Hancock was substantially more at fault than its co-fiduciaries; it therefore is not entitled to contribution. See Restatement (Second) Trust, § 258 (1959). To the contrary, [a co-fiduciary] demanded the release of the Plan Assets, and Hancock has failed to prove that [any co-fiduciary] played any role in the actions that resulted in a breach of Hancock's fiduciary obligations.

*Id.* at 464.

The facts as pled by Nationwide in this case, like the facts in *Sunderlin* and *Hancock*, do not, as a matter of law, support a claim for common law contribution or indemnity against Plaintiffs. Nationwide pleads only that Plaintiffs "had the ultimate responsibility for purchasing the variable annuity contracts, selecting and approving changes to investment options, managing

13

the Plan, and investing Plan assets, and in exercising such responsibility [Plaintiffs] knew of, agreed to, approved of, ratified, and/or were recklessly indifferent to [Nationwide's] conduct," Nationwide's Counterclaims at ¶¶ 22, 29, and that Plaintiffs "breached [their] fiduciary responsibility to manage and control the assets of [their] respective Plan[s]; read and understand the terms of contracts, prospectuses, and other documents relating to the Plan[s] and [their] participants; assure that any fees, charges or other compensation being paid directly or indirectly was reasonable in relation to the services provided; and investigate alternatives in the marketplace." Nationwide's Counterclaims at ¶¶ 26, 32.

Crucially, Nationwide does not allege that Plaintiffs committed a breach of trust, or even that Plaintiffs participated in Nationwide's breach of trust. At best, Nationwide only alleges that Plaintiffs should have taken action to prevent it from stealing from Plaintiffs and negligently failed to do so. Thus, under a straightforward application of the doctrine as set forth in the Restatement, Nationwide's allegations establish that, as a matter of law, Nationwide is "substantially more at fault" than Plaintiffs, such that Nationwide cannot bring claims for contribution or indemnity against Plaintiffs. RESTATEMENT (SECOND) OF TRUSTS § 258 (1959), comment d; *Sunderlin*, 235 F. Supp. 2d at 237; *John Hancock*, 122 F. Supp. 2d at 464.

C. **NATIONWIDE LACKS STANDING UNDER ERISA TO BRING A SUIT FOR BREACH OF FIDUCIARY DUTY AGASINT PLAINTIFFS, AND THIS COURT SHOULD DISMISS THE THIRD COUNT OF NATIONWIDE'S COUNTERCLAIM ACCORDINGLY.**

The third count of Nationwide's counterclaims ostensibly seeks recovery against Plaintiffs individually for an alleged breach of the fiduciary duty owed by Plaintiffs to their Plans. Nationwide's Counterclaims at ¶¶ 34-39. This Court should summarily dismiss this count, because Nationwide, pursuant to ERISA, lacks standing to assert it.

It is axiomatic that, under ERISA, any relief granted for ERISA violations must go to a plan, and not to the individuals bringing suit for such violations. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985). The ERISA statute itself only permits participants, beneficiaries, or fiduciaries of a plan to bring suit to recover on behalf of a plan. 29 U.S.C. § 1132(a). Nationwide is neither a participant in nor a beneficiary of the Plans, and it is not a fiduciary for purposes of bringing a civil action under ERISA against the Plaintiffs. *Id*.; *Russell*, 473 U.S. at 140.

Moreover, pursuant to ERISA, it is incongruous for Nationwide to seek contribution and indemnity from Plaintiffs while simultaneously alleging an ostensible claim under ERISA for breach of fiduciary duty: "Standing to pursue claims on behalf of the plan and the right to seek contribution are mutually exclusive." *Duncan v. Santaniello*, 900 F. Supp. 547, 556 (D. Mass. 1995), *citing Chemung*, 939 F.2d at 15. Nationwide, through its counterclaims, does not seek to pursue the claim on behalf of the Plans, but rather pursues it solely on its own behalf. In contrast, ERISA only permits fiduciaries to bring suit to recover on behalf of a plan. 29 U.S.C. § 1132(a).

In summary, because Nationwide does not in Count III seek recovery from Plaintiffs on behalf of the Plans, it lacks standing under ERISA to assert a claim for breach of fiduciary duty against Plaintiffs. Thus, this Court should dismiss Count III for failure to state a claim. *Id*.; *Duncan*, 900 F. Supp. At 556.

**V.**

**<u>CONCLUSION</u>**

For all of the foregoing reasons, Nationwide has failed, as a matter of law, to allege sufficient facts to state a valid counterclaim against Plaintiffs under ERISA. Accordingly, Plaintiffs' Motion to Dismiss should be granted in its entirety.

          Respectfully submitted,

          */s/ Roger L. Mandel*
          _____
          Marc R. Stanley
          Federal Bar No. ct18179
          Roger L. Mandel
          Federal Bar No. ct18180
          Martin Woodward
          Federal Bar No. ct25263
          STANLEY, MANDEL & IOLA, L.L.P.
          3100 Monticello Avenue, Suite 750
          Dallas, Texas 75205
          214-443-4300
          214-443-0358 (Fax)


          Richard A. Bieder
          Federal Bar No. ct04208
          Antonio Ponvert, III
          Federal Bar No. ct17516
          KOSKOFF KOSKOFF & BIEDER, P.C.
          350 Fairfield Avenue
          Bridgeport, Connecticut 06604
          203-336-4421
          203-368-3244 (Fax)


          Gregory G. Jones
          Federal Bar No. ct23443
          LAW FIRM OF GREGORY G. JONES PC
          2400 Scott Avenue
          Fort Worth, Texas 76103-2200
          817-531-3000
          817-535-3046 (Fax)

          **PLAINTIFFS' COUNSEL**

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that on November 1, 2007, a copy of Plaintiffs' Notice of Motion and Motion to Dismiss Nationwide's Amended Counterclaims was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

Dennis F. Kerrigan, Jr.
LeBoeuf, Lamb, Greene & MacRae
Goodwin Square
225 Asylum Street
Hartford, CT  06103

Charles C. Platt
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
399 Park Avenue
New York, NY 10022

Mr. Daniel H. Squire
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006

                                                          Roger L. Mandel