# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing, ALAN GOUSE, as trustee of Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, EDWARD KAPLAN, as trustee of the Hartford Roofing 401(k) Profit Sharing Plan and the Hartford South, L.L.C. 401(k) Profit Sharing Plan, and DENNIS FERDON, as trustee of the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan,<br><br>    PLAINTIFFS,<br><br>    v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,<br><br>    DEFENDANTS. | CIVIL ACTION NO.:<br><br>3:01CV1552 (SRU) |

## NATIONWIDE'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS NATIONWIDE'S AMENDED COUNTERCLAIMS

# TABLE OF CONTENTS

I.   BACKGROUND ...................................................................................................................2

II.   STANDARD FOR MOTION TO DISMISS ......................................................................4

III.   NATIONWIDE MAY MAINTAIN ITS CONTINGENT COUNTERCLAIMS FOR CONTRIBUTION AND INDEMNITY ...............................................................................5

     A.   Under *Chemung*, A Cause Of Action For Contribution And Indemnity Exists Between Breaching Co-Fiduciaries.............................................................5

     B.   Whether One Party Is "Substantially More At Fault" Under The Allegations Of The Counterclaims Is A Question of Fact That Cannot Be Resolved On A Motion To Dismiss.........................................................................7

     C.   Whether And To What Extent Either Party Received The Benefit Of A Potential Breach Is A Fact Question That Cannot Be Resolved On A Motion To Dismiss ...........................................................................................11

IV.   NATIONWIDE HAS STANDING TO SUE THE TRUSTEES FOR BREACH OF FIDUCIARY DUTY ON BEHALF OF THE PLANS.....................................................12

V.   CONCLUSION..................................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**

*Agway, Inc. v. Magnuson*, 409 F. Supp. 2d 136 (N.D.N.Y. 2005) ..................................................6

*Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (2007) ..............................................5

*Bernheim v. Litt*, 79 F.3d 318 (2d Cir. 1996) .................................................................................4

*Briney v. Sears, Roebuck & Co.*, 782 F.2d 585 (6th Cir. 1986) ...................................................10

*Burns v. Benedict*, 827 F. Supp. 1545 (D. Kan. 1993) .................................................................10

*Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12 (2d Cir. 1991) ..........1, 5, 6, 13

*Connor v. McDonald's Rest.*, No. 3:02 CV 382 (SRU), 2003 WL 1343259
(D. Conn. Mar. 19, 2003) ...............................................................................................................4

*Duncan v. Santaniello*, 900 F. Supp. 547 (D. Mass. 1995) ..........................................................13

*Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317 (2d Cir. 2003) ......................................................5, 6

*Gillespie v. Seymour*, 250 Kan. 123 (1991) ...................................................................................9

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) .........................................6

*Gbur v. Cohen*, 155 Cal.Rptr. 507 (Cal. Ct. App. 1979) ..............................................................12

*Haddock v. Nationwide Financial Services Inc.*,
419 F. Supp. 2d 156 (D. Conn. 2006) ..............................................................................3, 4, 7, 11

*Haddock v. Nationwide Financial Services Inc.*, No. 3:01cv1552, 2007 WL 2780996
(D. Conn. Sept. 25, 2007) ..........................................................................................................3, 7

*Harris Trust and Savings Bank v. Salomon Bros., Inc.*,
832 F. Supp. 1169 (N.D. Ill. 1993) .................................................................................................9

*Harris Trust & Savings Bank v. John Hancock Mut. Life Ins. Co.*,
122 F. Supp. 2d 444 (S.D.N.Y. 2000) ......................................................................................10-11

*In re Mueller's Trust*, 28 Wis.2d 26 (1965) ...................................................................................9

*In re Worldcom, Inc., ERISA Litigation*, 339 F.Supp.2d 561 (S.D.N.Y. 2004) ............................6

*Ins. Co. of N. Am. v. Harriman*, No. 88-6312, 1989 WL 52683 (9th Cir. May 12, 1989) ...........10

*Jenkins v. McKeithen*, 395 U.S. 411 (1969) ...................................................................................4

*Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).................................................13

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) ..........................................................................5, 6

*Montauk Oil Trans. Corp. v. Tug El Zorro Grande*, No. 92 Civ. 5513, 1993 WL 213037 (S.D.N.Y. June 15, 1993), *rev'd on other grounds*, 54 F.3d 111 (2d Cir. 1995)..........................10

*New Jersey Steel Corp. v. Bank of New York*, No. 95 CIV. 3071 (KMW), 1997 WL 716911 (S.D.N.Y. Nov. 17, 1997)..........................................................................................................5

*O'Brien v. Gridley*, 458 N.W. 2d 802 (S.D. 1990) ................................................................................11

*Petrilli v. Gow*, 957 F. Supp. 366 (D. Conn. 1997) .............................................................................6

*Pressman-Gutman Co., Inc. v. First Union National Bank*, No. Civ.A. 02-8442, 2004 WL 1091048 (E.D. Pa. May 14, 2004)..............................................................................................9

*Rossio v. Mass. Mut. Life Ins. Co.*, 789 F. Supp. 1047 (E.D. Cal. 1992) ........................................14

*Rubin v. Valicenti Advisory Services, Inc.*, 326 F. Supp. 2d 427 (W.D.N.Y. 2004)........................6

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) .............................................6

*Sunderlin v. First Reliance Standard Life Ins. Co.*, 235 F. Supp. 2d 222 (W.D.N.Y. 2002) ............................................................................... 10-11

*Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.*, 497 F.3d 862 (8th Cir. 2007) ...................6

*Yale-New Haven Hosp., Inc. v. Thompson*, 162 F. Supp. 2d 54 (D. Conn. 2001)..........................5

## Statutes and Rules

Fed. R. Civ. P. 8(e)(2)..........................................................................................................14

29 U.S.C. § 1132(a) ................................................................................................... 12-13

## Other

Restatement (Second) of Trusts § 258................................................................................ 8, 9-12

Restatement (Second) of Trusts § 224.................................................................................9, 10

Uniform Trust Code § 1002..................................................................................................10

Defendants/Counterclaim Plaintiffs Nationwide Financial Services, Inc. and Nationwide Life Insurance Co. (hereinafter, "Nationwide") respectfully submit this memorandum in opposition ("Opposition") to the Trustees'[1] Motion to Dismiss Nationwide's Amended Counterclaims.

Nationwide's counterclaims allege essentially that the Trustees are the ERISA fiduciaries responsible for any loss they claim was suffered by their retirement plans. The Trustees had the legal duty under ERISA to control (and did in fact control) the choice of investment options offered under the annuity contracts at issue in this case, and to ensure that any fees associated with those investment options were competitively priced. If those investment options or the associated fees give rise to ERISA liability (which they should not), then the Trustees who chose the investment options (and not Nationwide, which issued the annuity contracts) are liable for any damages to the retirement plans resulting from their own dereliction of duty.

The Court should deny the Trustees' motion to dismiss these counterclaims for the following reasons.

***First***, *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12 (2d Cir. 1991), makes clear that Nationwide has a common law right to seek contribution and indemnification against the Trustees. Contrary to plaintiffs' argument that *Chemung* has been implicitly

---

[1] The "Trustees" and/or "plaintiffs" refers to Plaintiffs/Counterclaim Defendants Lou Haddock, purported trustee of the Flyte Tool & Die Incorporated Deferred Compensation Plan; Peter Wiberg, purported trustee of the Crown Tool & Die Deferred Compensation Plan; Alan Gouse, purported trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan; Edward Kaplan, purported trustee of the Hartford Roofing, Inc. Deferred Compensation Plan; and Dennis A. Ferdon, purported trustee of the Anderson & Ferdon, P.C. 401(k) Profit Sharing Plan.

"abrogated" by other Second Circuit precedent, the Second Circuit has reaffirmed (not abrogated) *Chemung* and the district courts in the Second Circuit continue to apply it.

***Second***, Nationwide has adequately alleged that, even if there were any breach of ERISA fiduciary duty of the sort claimed by plaintiffs, then Nationwide is not "substantially more at fault" than the Trustees. The Trustees were responsible for, and knew of and agreed to, the very conduct that plaintiffs claim was a breach. Such determinations of comparative fault are fact questions that cannot be decided on a motion to dismiss.

***Third***, Nationwide's counterclaims cannot be dismissed based on plaintiffs' factual assertion (which Nationwide disputes) that Nationwide received the exclusive benefit of any breach of ERISA fiduciary duty. Nationwide alleges that the Trustees and the Plans benefited from services and lower costs that resulted from any revenue sharing payments. Determining these relative benefits is a quintessential question of fact requiring further evidentiary development in discovery.

***Fourth***, Nationwide's breach of fiduciary duty counterclaim is valid because, if Nationwide is found to be a fiduciary to the Plans, it clearly has standing under ERISA to seek recovery on behalf of the Plans against the Trustees – as it seeks to do. Moreover, there is nothing improper about pursuing counterclaims for contribution and indemnity while at the same time suing for breach of fiduciary duty.

## I.    BACKGROUND

Plaintiffs in this case are trustees of retirement plans (the "Plans") that purchased annuity contracts from Nationwide Life Insurance Company. Those contracts offer investment options to plan participants that in turn invest in underlying mutual funds.

Plaintiffs allege in their Fifth Amended Complaint ("Complaint") that even though Nationwide simply offered and performed the terms of the annuity contracts, it became an

ERISA fiduciary when it selected, deleted, or substituted certain investment options offered through the contracts. *See* Complaint ¶¶ 25, 54; *Haddock v. Nationwide Financial Services Inc.*, No. 3:01cv1552, 2007 WL 2780996, at *1-*2 (D. Conn. Sept. 25, 2007) ("*Haddock II*"); *Haddock v. Nationwide Financial Services Inc.*, 419 F. Supp. 2d 156, 166 n.6 (D. Conn. 2006) ("*Haddock I*").[2]

Plaintiffs also allege that Nationwide breached that ERISA duty by allegedly offering only investment options that were associated with "revenue sharing" payments from the underlying mutual funds, which resulted in higher fees for the Plans and their participants. Plaintiffs then allege that any revenue-sharing payments could constitute "assets of the plan" under ERISA because, among other things, Nationwide received them "at the expense of plan participants or beneficiaries" – i.e., those payments resulted in an increase in fees to the Plans. *See* Complaint ¶¶ 32, 35, 55; *Haddock II*, 2007 WL 2780996, at *2; *Haddock I*, 419 F. Supp. 2d at 170.

At the same time that the Trustees are trying to hold Nationwide liable for a breach of ERISA fiduciary duty, they essentially disclaim any responsibility for choosing the investment options, ensuring the reasonableness of the fees associated with the investment options, or otherwise carrying out their legal duties as trustees. Counterclaim ¶ 38; *see also, e.g.*, O'Donnell Decl.,[3] Ex. A. [Wiberg Dep.], at 7, 9-10, 27, 37, 40, 42-43, 46-48 (Trustee admits that he made no effort whatsoever to know the specifics of the investment options, or to determine whether the fees associated with the investment options were fair and reasonable).

---

[2]    In *Haddock II*, this Court expressly incorporated its *Haddock I* decision by reference. *See Haddock II*, 2007 WL 2780996, at *1.

[3]    Citations to the "O'Donnell Decl." are to the Declaration of Brian O'Donnell In Support Of Nationwide's Memorandum of Law In Opposition To Plaintiffs' Motion To Dismiss Nationwide's Amended Counterclaims.

Nationwide's Answer includes Counterclaims for contribution, indemnity, and breach of fiduciary duty. In its counterclaims, Nationwide asserts that plaintiffs were the named fiduciaries for the Plans who had the legal responsibilities they now try to impose on Nationwide, and that plaintiffs had the ultimate control over the selection of the investment options in the annuity contracts. *E.g.*, Counterclaim ¶¶ 15-19, 22, 26, 29, 32, 37, 38.

Moreover, even if Nationwide were a fiduciary that violated a fiduciary duty (which is not the case), the Trustees "knew of, agreed to, approved of, ratified, were recklessly indifferent to, and/or failed to monitor and assure the reasonable of" all of the conduct they now allege was a breach. *E.g.*, Counterclaim ¶¶ 18-20, 22, 26, 29, 32, 37, 38. For example, the Trustees knew of and agreed to any selections, substitutions, or deletions of investment options, and the Trustees knew that Nationwide was receiving payments from the underlying mutual funds in connection with some of these options. *See, e.g.*, Counterclaim ¶¶ 14, 15, 18, 22, 29, 37; *Haddock I*, 419 F. Supp. 2d at 165-66. The Trustees also knew of and agreed to all fees the Plans paid to the mutual funds, those fees' relationship to "fair market pricing," and therefore any above-market fees the Plans might have paid. *E.g.*, Counterclaim ¶¶ 13, 16, 18, 19, 25, 26, 31, 32, 37, 38. And the Trustees knew of and agreed to all the benefits and services that were provided in return for any fees paid by the Plans. *E.g.*, Counterclaim ¶¶ 13, 14, 16-20, 23, 25, 26, 30, 32, 38.

## II.    STANDARD FOR MOTION TO DISMISS

"For purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). When deciding a motion to dismiss, the court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Connor v. McDonald's Rest.*, No. 3:02 CV 382 (SRU), 2003 WL 1343259, at *2 (D. Conn. Mar. 19, 2003) (citing *Bernheim v. Litt*, 79 F.3d 318,

321 (2d Cir. 1996)); *see also Yale-New Haven Hosp., Inc. v. Thompson*, 162 F. Supp. 2d 54, 68 (D. Conn. 2001) (noting that a 12(b)(6) motion "tests only the sufficiency of the complaint"); *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007) (to survive a 12(b)(6) motion, a complaint must offer factual allegations sufficient "to raise a right to relief above the speculative level"). These standards are the same whether the motion seeks to dismiss a complaint or a counterclaim. *See, e.g., New Jersey Steel Corp. v. Bank of New York*, No. 95 CIV. 3071 (KMW), 1997 WL 716911, at *1 (S.D.N.Y. Nov. 17, 1997).

### III. NATIONWIDE MAY MAINTAIN ITS CONTINGENT COUNTERCLAIMS FOR CONTRIBUTION AND INDEMNITY

#### A. Under *Chemung*, A Cause Of Action For Contribution And Indemnity Exists Between Breaching Co-Fiduciaries

Binding Second Circuit precedent makes clear that Nationwide may maintain its counterclaims for contribution and indemnity against alleged breaching co-fiduciaries – the Trustees. In *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12 (2d Cir. 1991), *cert. denied*, 505 U.S. 1212 (1992), the Second Circuit held in no uncertain terms that, in the context of ERISA, there exists a common law right of contribution and indemnity among breaching co-fiduciaries. *Id.* at 15-18.

The Trustees do not dispute that Nationwide's claims for contribution and indemnity are valid under *Chemung*, but argue instead that *Chemung* was implicitly overruled in *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317 (2d Cir. 2003), interpreting *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993). *See* Memorandum In Support Of Plaintiffs' Motion To Dismiss Nationwide's Amended Counterclaims ("Pls. Mem.") at 4-7. This argument fails for at least two reasons.

**First**, *Chemung* remains good law because neither *Gerosa* nor *Mertens* is on point. *Gerosa* – which does not even cite *Chemung*, much less purport to overrule it – does not deal with contribution and indemnity rights nor with claims against a fiduciary. Rather, *Gerosa* held

5

that a fiduciary's damages remedy against a *non*-fiduciary under ERISA could no longer be implied after the Supreme Court held in *Mertens* that "non-fiduciaries who knowingly participate in a fiduciary breach cannot be liable for ordinary money damages." *Gerosa*, 329 F.3d at 322 (describing *Mertens*). *Chemung*, in clear contrast, dealt with rights to contribution and indemnity among *co*-fiduciaries. *See, e.g., Petrilli v. Gow*, 957 F. Supp. 366, 374-75 (D. Conn. 1997) (reconciling *Mertens* and *Chemung*, and holding that while *Mertens* might bar claims for contribution and indemnity against non-fiduciaries, this was altogether different from *Chemung* where "contribution and indemnification were allowed as a matter of apportionment among fiduciaries").

**Second**, courts in the Second Circuit have continued to recognize *Chemung* as good law. Nearly a decade ***after*** *Mertens*, the Second Circuit re-affirmed that rights of contribution and indemnity exist among breaching co-fiduciaries. *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240-42 (2d Cir. 2002) (citing *Chemung* and holding that complaint stated valid claims under ERISA for contribution and indemnity); *see also Petrilli*, 957 F. Supp. at 374-75. And even after *Gerosa*, courts in the Second Circuit have uniformly recognized the continued validity of *Chemung*. *See, e.g., Agway, Inc. v. Magnuson*, 409 F. Supp. 2d 136, 143 n.6 (N.D.N.Y. 2005); *In re Worldcom, Inc., ERISA Litigation*, 339 F. Supp. 2d 561, 568 (S.D.N.Y. 2004); *Rubin v. Valicenti Advisory Services, Inc.*, 326 F. Supp. 2d 427, 428-29 (W.D.N.Y. 2004).[4] *Chemung* therefore remains binding precedent for courts in the Second Circuit.

---

[4] Contrary to the Trustees' suggestion, *Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.*, 497 F.3d 862, (8th Cir. 2007) – a case from the Eighth Circuit – does not render *Chemung* "abrogate[ed]" by *Mertens* or a more recent Supreme Court case, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). *See* Pls. Mem. at 6. First, that the Eighth Circuit endorsed the dissenting opinion in *Chemung*, *see Travelers*, 497 F.3d at 866, does not make *Chemung* any less binding on courts in the Second Circuit. But more importantly, even ***after*** the Supreme

6

### B. Whether One Party Is "Substantially More At Fault" Under The Allegations Of The Counterclaims Is A Question of Fact That Cannot Be Resolved On A Motion To Dismiss

Plaintiffs argue in the alternative that Nationwide's counterclaims must be dismissed as a matter of law because Nationwide is "substantially more at fault" than plaintiffs. Pls. Mem. at 9. This argument ignores the allegations of Nationwide's Counterclaims, and raises questions of fact that cannot be resolved on a motion to dismiss.

The Trustees' argument fails as an initial matter because it rests on the false premise that Nationwide owed and breached an ERISA fiduciary duty merely by retaining revenue-sharing payments. *See* Pls. Mem. at 11, 14. This Court rejected that premise when it held that Nationwide might be an ERISA fiduciary only if it exercised authority or control by selecting, deleting, or substituting the investment options offered through plaintiffs' annuities, and that Nationwide might have breached that duty only if it limited the Plans' choices to investment options that were associated with revenue-sharing payments and that resulted in increased fees. *See Haddock II*, 2007 WL 2780996, at *1-*2; *Haddock I*, 419 F. Supp. 2d at 165-66, 170. Therefore, any analysis of whether Nationwide was substantially more at fault must be limited to the claim recognized by this Court, not yet another new theory designed now by plaintiffs to rebut Nationwide's counterclaims. *See Haddock I*, 419 F. Supp. 2d at 165-66, 170 (Nationwide might be liable if its alleged conduct – selecting, substituting, and deleting funds to offer only funds that paid revenue sharing payments – resulted in above-market fees to the Plans).

Plaintiffs then assert that Nationwide was substantially more at fault because Nationwide "intentionally committed a breach of trust," while plaintiffs' behavior was supposedly merely

---

Court's decisions in *Mertens* (1993) and *Great-West* (Jan. 8, 2002), the Second Circuit re-affirmed *Chemung*, with its decision in *Local 819*, 291 F.3d at 240-42 (May 20, 2002).

ignorant, negligent, or reckless in failing to prevent Nationwide from breaching its duty. *See* Pls. Mem. at 9-14; Restatement (Second) of Trusts § 258, cmt. d. This argument, however, ignores the allegations in Nationwide's counterclaims. The Trustees were the named fiduciaries who had the ultimate authority and control over the selection of investment options for the annuities, and had the legal duty to ensure that the fees associated with those investment options were competitively priced. *E.g.*, Counterclaim ¶¶ 15-19, 22, 26, 29, 32, 37, 38. The Trustees also knew of and agreed to all the investment options that were offered through the Nationwide annuities, any substitutions or deletions of those investment options, and any fees or charges levied in connection with those investment options. *E.g.*, Counterclaim ¶¶ 18-20, 22, 26, 29, 32, 37, 38. Nationwide's acting in accordance with the express terms of its annuity contracts, and with the knowledge of and agreement by the Trustees, can hardly constitute an "intentional" breach of trust by Nationwide.

Rather than addressing their own authority, knowledge, and agreement, the Trustees argue that Nationwide was more at fault because it intentionally "stole" from the Plans. This argument is not based on any specific allegations in the Trustees' Complaint. *See, e.g.*, Pls. Mem. at 4, 10-14. Nowhere in the Complaint do the Trustees claim that the alleged revenue-sharing payments were never disclosed to them. And nowhere in their Complaint do the Trustees allege that Nationwide's power to select, substitute, and delete funds, or any actual substitutions or deletions, were not disclosed to them. *See, e.g.*, Complaint ¶¶ 54-59.

By contrast, Nationwide's counterclaims are based on numerous allegations of knowing and intentional ***conduct*** (rather than negligent or reckless failure to discover) on the part of the Trustees showing their substantial fault. Nationwide alleges, *inter alia*, that the Trustees had control over, and ***knew of and agreed to***, all the investment options available under the annuity

contracts, any limits in those investment options, and any fees in connection with those options greater than "fair market pricing." *E.g.*, Counterclaim ¶¶ 18-20, 22, 26, 29, 32, 37, 38.

Accepting these allegations as true and viewing them in a light most favorable to Nationwide, this Court cannot find Nationwide "substantially more at fault" than the Trustees. *See Pressman-Gutman Co., Inc. v. First Union National Bank*, No. Civ.A. 02-8442, 2004 WL 1091048, at *1 n.1 (E.D. Pa. May 14, 2004) ("To the extent that the Gutmans were aware of, approved, or authorized investment goals or objectives that were imprudent, they may be found to have breached fiduciary duties of the Employer under the plan. We believe that it would be premature for us to decide at this juncture whether one fiduciary is substantially more at fault than the other."); *Harris Trust and Savings Bank v. Salomon Bros., Inc.*, 832 F. Supp. 1169, 1178-79 (N.D. Ill. 1993) (allegations that counterclaim defendant "authorize[ed] and approv[ed]" the allegedly breaching fee arrangements sufficient to preclude counterclaim plaintiff from being held "substantially more at fault"); *Gillespie v. Seymour*, 250 Kan. 123, 147-48 (1991) (co-trustee found "equally at fault" due to "improperly passive role of deferment" to dominant trustee); *In re Mueller's Trust*, 28 Wis.2d 26 (1965) (one co-trustee not "substantially more at fault" – because other co-trustee "was bound to perform the duties required of her, and cannot escape liability merely because she relied entirely on the co-trustee to actually run the show," and because "[o]ne trustee is not more at fault so as not to be entitled to contribution merely because he was more negligent or active than the other"); *cf.* Restatement (Second) of Trusts § 224(2)(c) (trustee liable to beneficiary if he "approves or acquiesces in or conceals a breach of trust committed by his co-trustee").[5]

---

[5] The Trustees rely heavily on comment d(4) to § 258 (Contribution or Indemnity From Co-Trustee), which lists factors to consider in determining when one fiduciary is "substantially

9

It is, therefore, at the very least a question of fact as to whether Nationwide is "substantially more at fault" if the alleged fee arrangements are ever found to be unlawful. *See* Uniform Trust Code § 1002, comments (2001) (discussing this provision of Section 258 and stating that "[d]etermining degrees of comparative fault is a question of fact"); *Briney v. Sears, Roebuck & Co.*, 782 F.2d 585, 589 (6th Cir. 1986) ("[T]o determine which party is ***more at fault*** is a question of fact which we believe would involve careful scrutiny of the evidence."); *Burns v. Benedict*, 827 F. Supp. 1545, 1546, 1548 (D. Kan. 1993) (characterizing determination that "Defendant Benedict was substantially more at fault" as a "Finding[] of Fact"); *Montauk Oil Trans. Corp. v. Tug El Zorro Grande*, No. 92 Civ. 5513, 1993 WL 213037, at *2 (S.D.N.Y. June 15, 1993) ("[R]elative degrees of fault are a question of fact, the determination of which will dictate the amount of indemnity or contribution to be awarded."), *rev'd on other grounds*, 54 F.3d 111 (2d Cir. 1995).

The four cases cited by the Trustees are clearly inapposite. *See* Pls. Mem. at 10-14. Three of them contain materially different facts that were adduced after significant factual development; they provide no support for adjudging Nationwide "substantially more at fault," especially at the motion to dismiss stage.[6] And the fourth case, *Sunderlin v. First Reliance*

---

more at fault" and thus not entitled to contribution or indemnity from a co-fiduciary. The factors identified in comment d(4) ***do not*** include that the co-fiduciary is liable only because he "approves or acquiesces in" the conduct of the fiduciary seeking contribution. The drafters certainly considered this language: comment d(4) cites to § 224 (Liability For Breach Of Trust Of Co-Trustee) and incorporates all the bases for a co-fiduciary's liability under § 224 other than the "approves or acquiesces in" ground. By specifically omitting this one liability ground from comment d(4), the drafters of the Restatement clearly intended that, where a co-fiduciary "approves or acquiesces in" a breach, the other fiduciary is not "substantially more at fault" and thus is entitled to contribution or indemnity.

[6]     *Ins. Co. of N. Am. v. Harriman*, No. 88-6312, 1989 WL 52683 (9th Cir. May 12, 1989), was decided on summary judgment and found that the less culpable trustee had no knowledge of the other's wrongful conduct. *Harris Trust & Savings Bank v. John Hancock Mut. Life Ins. Co.*,

*Standard Life Ins. Co.*, 235 F. Supp. 2d 222 (W.D.N.Y. 2002), was dismissed because the third-party complainant failed to allege *any* fault on the part of the third-party defendant, thus eliminating any need for the court to find facts and weigh comparative fault. *Id.* at 237. In contrast, Nationwide has alleged that the Trustees are at fault for knowing of and agreeing to the very conduct they now claim constitutes a breach of fiduciary duty.

### C. Whether And To What Extent Either Party Received The Benefit Of A Potential Breach Is A Fact Question That Cannot Be Resolved On A Motion To Dismiss

Plaintiffs then argue that Nationwide is barred from obtaining contribution or indemnity because it received the exclusive benefit of any breach of fiduciary duty. *See* Pls. Mem. at 8-9. The Trustees once again mischaracterize the potential breach as the mere retention of revenue-sharing payments, *see* Pls. Mem. at 8, rather than the selection, substitution, or deletion of investment options in a way that resulted in increased fees, as recognized by the Court, *see Haddock I*, 419 F. Supp. 2d at 165-66, 170.

The Trustees also oversimplify the relevant legal authority. Restatement (Second) of Trusts § 258(1)(b), quoted in full, provides that "if one [breaching co-fiduciary] receives a benefit from the breach of trust, the other is entitled to indemnity from him to the extent of the benefit; and for any further liability, if neither of them is more at fault than the other, each is entitled to contribution." This provision, when applied to Nationwide's Counterclaims, raises myriad fact questions that cannot be resolved on a motion to dismiss.

---

122 F. Supp. 2d 444, 463-64 (S.D.N.Y. 2000), is a decision on the merits after a three-month trial involving numerous witnesses, hundreds of exhibits, extensive depositions, and expert reports – and involved a co-trustee who made significant efforts to retrieve the plan assets wrongfully held by the other co-trustee. Finally, *O'Brien v. Gridley*, 458 N.W. 2d 802 (S.D. 1990), was decided after a hearing and upon the entry of findings of fact and conclusions of law by the court – and found that the less blameworthy co-trustee had no knowledge of the other's improper investment.

First, whether Nationwide received a benefit from any breach of trust, and the extent of that benefit, are fact questions that cannot be resolved on a motion to dismiss. While the Trustees argue simplistically that Nationwide received the exclusive benefit because it kept the revenue-sharing payments, this claim ignores that any such payments resulted in lower costs and additional services provided to the Plans. *E.g.*, Counterclaim ¶¶ 13, 14, 16-20, 23, 25, 26, 30, 32, 38; *see, e.g., Gbur v. Cohen*, 155 Cal.Rptr. 507, 511 (Cal. Ct. App. 1979) (a salary paid for services rendered may not be considered a benefit under § 258). And under § 258(1)(b), Nationwide must only indemnify the Trustees "to the extent of [this] benefit" – not necessarily, as the Trustees claim, to the full extent of the revenue-sharing payments themselves. Rather, "for any further liability," Nationwide may be "entitled to contribution." § 258(1)(b).

Another related fact question is the extent to which the Trustees benefited from any breach of trust. Nationwide specifically alleges that the Trustees benefited from services that were provided in return for revenue-sharing payments. *E.g.*, Counterclaim ¶¶ 23, 30. Under § 258(1)(b), any such benefit to the Trustees would give rise to indemnity to Nationwide "to the extent of the benefit."

Finally, to the extent there remains liability beyond any benefit to Nationwide and the Trustees, there remains a fact question as to whether "neither [fiduciary] is more at fault than the other" so as to determine whether "each is entitled to contribution." *See* § 258(1)(b). As established in *supra* § III.B, determinations of comparative fault are quintessential questions of fact.

IV. **NATIONWIDE HAS STANDING TO SUE THE TRUSTEES FOR BREACH OF FIDUCIARY DUTY ON BEHALF OF THE PLANS**

If Nationwide is held to be a fiduciary to the Plans (which it should not be), then under ERISA it clearly has standing to sue the Trustees for breach of fiduciary duty under ERISA §

502(a)(2). *See* 29 U.S.C. § 1132(a) ("A civil action may be brought ... (2) by the Secretary, or by a participant, beneficiary ***or fiduciary*** for appropriate relief under section 1109 of this title" (emphasis added)). In its third counterclaim, Nationwide is bringing a claim for breach of fiduciary duty against the Trustees because the Trustees abdicated their ERISA responsibilities to manage and control the assets of the Plans; to read and understand the terms of the annuity contracts and other documents related to the Plans; to assure that any fees and charges were reasonable and competitively priced; and to investigate alternatives in the market. Counterclaim ¶ 38.

The Trustees' assertion that Nationwide lacks standing because it does not seek recovery on behalf of the Plans is patently wrong. *See* Pls. Mem. at 15. For its breach of fiduciary duty claim, Nationwide does in fact seek recovery on behalf of the Plans. *See, e.g.*, Counterclaim ¶ 36 (Nationwide ... "hereby does[] bring a civil action ***on behalf of the Plans*** pursuant to ... 29 U.S.C. § 1132(a)(2)" (emphasis added)). Nationwide's standing to pursue such a claim (in the event it is found to be a fiduciary) is therefore fully consistent with *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985), which simply emphasizes that "recovery for a violation of [29 U.S.C. § 1109] inures to the benefit of the plan as a whole." *Id.* at 140.

It is also not "incongruous" – as the Trustees claim – for Nationwide to pursue a claim for breach of fiduciary duty against the Trustees while simultaneously seeking contribution and indemnity from them. *See* Pls. Mem. at 15. The Trustees rely on *Duncan v. Santaniello*, 900 F. Supp. 547, 557 (D. Mass. 1995) – which cites *Chemung, supra* – to argue that Nationwide may not pursue its contribution/indemnity and breach of fiduciary duty claims simultaneously. Neither *Duncan* nor *Chemung*, however, even addressed that issue. They both held that a *former* fiduciary has no standing to bring a breach of fiduciary duty claim independent of a

contribution/indemnity claim. In obvious contrast here, Nationwide brings its breach of fiduciary duty claim based on the contingency that it is found liable as a *current* fiduciary.

In any event, even if Nationwide's counterclaims were somehow inconsistent, it is well-established that a party may simultaneously pursue inconsistent claims. *See* Fed. R. Civ. P. 8(e)(2) ("A party may also state as many separate claims or defenses as the party has regardless of consistency …"); *Rossio v. Mass. Mut. Life Ins. Co.*, 789 F. Supp. 1047, 1054 (E.D. Cal. 1992) (allowing defendant to plead that it was not a fiduciary, but plead in the alternative that it was a fiduciary).

## V. CONCLUSION

Accordingly, the Court should deny in its entirety the Trustees' motion to dismiss Nationwide's counterclaims for contribution, indemnification, and breach of fiduciary duty.

Respectfully submitted,

Defendants Nationwide Financial Services Inc.
and Nationwide Life Insurance Co.

By: _____
Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
Dewey and LeBoeuf, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone: (860) 293-3500
Facsimile: (860) 293-3555

Charles C. Platt, Esq. (CT 23036)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Daniel H. Squire, Esq.
Heath A. Brooks, Esq. (phv02293)
Mark L. Bieter, Esq. (phv02994)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

## **CERTIFICATION**

The undersigned hereby certifies that on November 21, 2007, a copy of the foregoing Memorandum of Law in Opposition to Plaintiffs' Motion to Dismiss Nationwide's Amended Counterclaims was filed electronically, served by mail on the following counsel of record, and should be sent by e-mail to the same counsel by operation of the Court's electronic filing system.

Richard A. Bieter, Esq.
Antonio Ponvert III, Esq.
Koskoff, Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

Gregory G. Jones, Esq.
Law Firm of Gregory G. Jones, P.C.
630 E. Southlake Boulevard
Suite 110
Southlake, TX 76092

Marc R. Stanley, Esq.
Roger L. Mandel, Esq.
Stanley, Mandel & Iola
3100 Monticello Avenue
Suite 750
Dallas, TX 75205

_____
Brian O'Donnell