UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, et al.,<br><br>PLAINTIFFS,<br><br>v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,<br><br>DEFENDANTS. | CIVIL ACTION NO.:<br><br>3:01CV1552 (SRU) |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS**

Defendants/Counterclaim Plaintiffs Nationwide Financial Services, Inc. and Nationwide Life Insurance Company (collectively, "Nationwide") respectfully submit this supplemental memorandum in opposition to the Trustees' Motion to Dismiss Nationwide's Amended Counterclaims, and to address the question presented by the Court in its February 12, 2008 Order (Docket 327).[1]

Now that Nationwide has properly stated counterclaims for contribution and indemnification as a matter of law with respect to Plaintiffs' ERISA *claims*, the motion to dismiss stage is not the proper time to limit the relief afforded by those counterclaims for any *remedy* in this case. The form of relief permitted for those counterclaims, and how that relief is

---

[1] The "Trustees" and/or "Plaintiffs" refer to Plaintiffs/Counterclaim Defendants Lou Haddock, purported trustee of the Flyte Tool & Die Incorporated Deferred Compensation Plan; Peter Wiberg, purported trustee of the Crown Tool & Die Deferred Compensation Plan; Alan Gouse, purported trustee of the Greater Hartford Easter Seal Rehabilitation Center Deferred Compensation Plan; Edward Kaplan, purported trustee of the Hartford Roofing, Inc. Deferred Compensation Plan; and Dennis A. Ferdon, purported trustee of the Anderson & Ferdon, P.C. 401(k) Profit Sharing Plan.

1

affected by the remedy or remedies (if at all) that Plaintiffs may or may not obtain, can only be determined after the facts have been revealed at trial. *See infra*, Point I, pp. 4-6.

Limitation of Nationwide's counterclaims is particularly inappropriate because Plaintiffs have no legitimate "disgorgement" remedy in this case. The Trustees have admitted that they cannot trace or identify specific assets that belonged to the plans that would be subject to disgorgement, as required by the law. Indeed, Plaintiffs' pending motion for class certification recognizes that they are in fact seeking "restitution," a different remedy, to avoid these individualized "tracing" issues. *See infra*, Point II, pp. 6-9.

Even if Plaintiffs did have a legitimate disgorgement remedy, contribution would still be appropriate because ERISA requires "allocat[ion of] liability for plan-related misdeeds in reasonable proportion to respective actors' power to control and prevent the misdeeds." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). If Nationwide must disgorge to the plans the mutual fund payments it received, then the Trustees are liable in contribution to Nationwide for a proportional amount reflecting the benefits that they received *and* their own wrongdoing that caused those payments to occur. The Trustees should not be permitted to reduce or eliminate their own proportional responsibility by choosing a particular remedy; that would create a clear conflict of interest for fiduciaries to the plans. *See infra*, Point III, pp. 9-12.

## BACKGROUND

Plaintiffs are three trustees of retirement plans that received annuity contracts from Nationwide Life Insurance Company, and that invested money in the investment options available through those annuity contracts. Plaintiffs have sued Nationwide Life and its affiliate, Nationwide Financial Services, for breach of fiduciary duty and prohibited transactions under the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. *See* Plaintiffs' Fifth Amended Class Action Complaint (Docket 270) ("Compl.") ¶¶ 1, 2.

The Trustees' two ERISA claims are based on the possibility that Nationwide owed and breached a fiduciary duty under ERISA by allegedly selecting and substituting investment options in return for some mutual funds or affiliates making payments to Nationwide. *Haddock v. Nationwide Fin. Servs. Inc.*, 419 F. Supp. 2d 156, 165-67 (D. Conn. 2006) ("*Haddock I*"). This selection or substitution of those investment options purportedly could affect indirectly the investment of plan assets by the plans or their participants in those investment options. *Id.*

The Trustees' complaint and pending motion for class certification seek a number of different remedies for their two claims in the form of "equitable relief or damages." The remedies include "disgorgement/restitution" of all mutual fund payments received by Nationwide. Compl. ¶¶ 3, 61. Plaintiffs have acknowledged that the mutual fund payments were made from the assets of the mutual funds or their affiliates, and that Plaintiffs cannot trace any mutual fund payments directly back to the plans' and plan participants' investments in the annuity products.[2]

Nationwide has denied that it is liable for Plaintiffs' two ERISA claims, but has asserted counterclaims against the Trustees for contribution, indemnity, and breach of fiduciary duty in the event it is held liable. Nationwide alleges that, if it is held liable, then the Trustees are equally or substantially more at fault because they had the ultimate control over the selection of

---

[2]    *See* Plaintiffs' Motion for Class Certification Based on Fifth Amended Complaint and Memorandum in Support (Docket 299) ("Pls. Mot. for Class Cert.") at 13 ("The Nationwide variable account accumulation units ... constitute [the ERISA] plan assets"); Revised Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Docket 186) at 6, n.6; Plaintiffs' First Amended Supplemental Responses and Objections to Defendants' Third Set of Interrogatories at 3 ("Plaintiffs' contentions do not depend upon it [sic] tracing specific dollars from the hands of the Plan into the hands of Nationwide.").

the investment options, and they ratified or recklessly disregarded any mutual fund payments in connection with those investment options. Defendants' Amended Counterclaims (Docket 290) ("Counterclaims") ¶¶ 21-39. Nationwide further alleges that the Trustees benefited from the services Nationwide provided to, and from the payments Nationwide received from, the mutual funds. *Id.* ¶¶ 23, 30.

After the February 8, 2008 oral argument on the Trustees' motion to dismiss the counterclaims, the Court denied Plaintiffs' motion to dismiss Nationwide's counterclaims, but presented the following question with respect to the scope of those counterclaims:

> Why a counterclaim for contribution against the Trustees states a claim with respect to any award requiring the [D]efendants to disgorge to the Plans the value of the "revenue sharing payments" when the [D]efendants do not allege that the Trustees received any monetary or other direct benefit from the revenue sharing payments, and why an offset to such disgorgement award would not be an adequate way to account for the value of any indirect benefit the Plans may have received as a result of the revenue sharing payments.

February 12, 2008 Order (Docket 327).

## ARGUMENT

**I.    It Is Premature for The Court to Eliminate Specific Forms of Relief.**

When considering a motion to dismiss, a court's sole objective is "to assess the legal feasibility of the complaint." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir. 2004). Once a court determines that the complaint properly states a *claim* for relief – as this Court has done – the inquiry ends, because it is too early to analyze the appropriate *form* of relief. *See Norwalk CORE v. Norwalk Redevelopment Agency*, 395 F.2d 920, 925-26 (2d Cir. 1968) ("a complaint should not be dismissed for legal insufficiency except where there is a failure to state a claim on which *some* relief, not limited by the request in the complaint, can be granted") (emphasis added); *see also Cassidy v. Millers Cas. Ins. Co. of Texas*, 1 F. Supp. 2d 1200, 1214 (D. Col. 1998) ("[T]he only issue on a motion [to]

dismiss is whether the claim as stated would give the plaintiff a right to any relief, rather than to the particular relief demanded.") (citations omitted); *United States Commodity Futures Trading Comm'n v. Bradley*, 408 F. Supp. 2d 1214, 1223 (N.D. Okla. 2005) (dismissal of request for relief "not warranted" since claims would entitle plaintiff to relief); *Sauer v. Xerox Corp.*, 17 F. Supp. 2d 193, 199 n.5 (W.D.N.Y. 1998).

While a complainant must demand some form of relief, the actual relief awarded can only be determined at final judgment, after full development of the facts at trial. *See* Fed. R. Civ. P. 54(c) (in non-default cases, "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"); *Schwartz v. Eaton*, 264 F.2d 195, 197 (2d Cir. 1959) (district court's dismissal of request for accounting while allowing other requested relief to go forward "a futile and meaningless gesture" since "at the close of the case [the court] will still be obligated to grant the parties the relief to which they prove themselves entitled"); *Nagler v. Admiral Corp.*, 248 F.2d 319, 328 (2d Cir. 1957) ("[I]t is clear law that it is the duty of the court to grant relief which the facts before it require; the legal theories which the parties may have suggested or relied on may be of help to the court, but do not control.").[3]

---

[3]  *See also Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299 (2d Cir. 1999) (district court did not abuse discretion by granting permanent injunction *sua sponte* since courts "have discretion to grant relief to a party even where that party has earlier abandoned the same requested relief"); *Robinson v. Lorillard Corp.*, 444 F.2d 791, 803 (4th Cir. 1971) (under Fed. R. Civ. P. 54(c), "it is the court's duty to grant whatever relief is appropriate in the case on the basis of the facts proved. The pleadings serve only as a rough guide to the nature of the case."); *Laird v. Integrated Res., Inc.*, 897 F.2d 826, 841 (5th Cir. 1990) (courts have "consistently interpreted [Rule 54(c)] to allow a plaintiff any relief that the pleaded claim supports; requesting an improper remedy is not fatal"); *Smoot v. State Farm Mut. Auto. Ins. Co.*, 299 F.2d 525, 530 (5th Cir. 1962) (relief rewarded "is not to be measured by the formal prayers for relief. The scope and nature of the relief depends on the facts established") (citations omitted).

These well-established principles are applicable here. Since Nationwide has properly stated counterclaims for contribution and indemnity as a matter of law with respect to Plaintiffs' ERISA claims, it is premature to determine whether Nationwide is entitled to a particular form of relief (e.g., how the amount of contribution is affected, if at all, in the event of disgorgement), in the same way that it would be premature for the Court to limit any of the remedies that Plaintiffs may seek at trial. As discussed further *infra*, the ultimate relief the Court grants will depend on the findings of fact – whether, for instance, the specific assets that the parties are found to have wrongfully taken can be traced, to what extent Plaintiffs benefited from the services Nationwide provided to the plans, and the extent of the Trustees' wrongdoing. Until those facts are revealed at trial, it is premature to dispose of any forms of relief that have been requested, including any contribution relief requested in the event that one of the remedies (or the only remedy) is for disgorgement.

## II. Despite the Label, Plaintiffs Are Not Seeking Disgorgement Because They Cannot Trace the Mutual Fund Payments to Plan Assets.

Restricting Nationwide's right to contribution based on the nature of Plaintiffs' proposed remedy is additionally inappropriate because, despite their assertions, the Trustees have no basis for seeking disgorgement in this case. Rather, their proposed "disgorgement" relief – award of the mutual fund payments to the plans – is a form of legal restitution consistent with contribution and indemnification.

Disgorgement is available *only* where plaintiffs are the "'true owner[s]' of the funds or property, and the 'money or property identified as belonging in good conscience to the plaintiff[s] can clearly be traced back to particular funds or property in the defendant's possession.'" *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)). But Plaintiffs'

proposed relief does not sound in disgorgement because they do not seek the return of money belonging to the plans. The payments to Nationwide were made with money from the mutual funds or their affiliates, not with money from the plans. And the payments were made not only to compensate Nationwide for services that benefited the plans, but also for services that benefited the mutual funds. *Haddock I* at 162, 167, 171.

Nor can the mutual fund payments be *traced* to any plan assets, a fact the Trustees have willingly admitted throughout this litigation. *See* First Am. Mem. in Supp. of Pls.' First Am. Mot. for Class Cert. (Docket 129) at 13 ("Plaintiffs' contentions do not depend upon tracing specific dollars from the hands of a Plan into the hands of Nationwide"); Pls.' Opp'n to Defs.' Disc. Mot. (Docket 155) at 24 ("Plaintiffs do not rely on tracing plan assets from the hands of the Plans into the hands of Defendants"). Plaintiffs have insisted that they do not have to "trace" because they say that Nationwide indirectly affected their plan assets by selecting and substituting investment options in return for mutual fund payments, *see Haddock I* at 165-67, and that Defendants merely failed to "pass[] on the benefit of the revenue sharing payments to the Plans," Compl. ¶ 40.

Because it is clear Plaintiffs are simply seeking an amount of money, not the return of any identifiable property traceable to the plan, their request is for legal restitution, not disgorgement. Restitution, although in some circumstances an equitable remedy, is a legal remedy "in cases in which the plaintiff 'could ***not*** assert title or right to possession of the particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant has received from him . . . .'" *Great-West*, 534 U.S. at 213 (emphasis in original) (quoting 1 D. Dobbs, Law of Remedies § 4.2(1), p. 571 (2d ed. 1993)); *see also Fed. Trade Comm'n v. Verity Int'l, Ltd.*, 443 F.3d 48, 66-67 (2d Cir.

7

2006) (same); *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 577 (7th Cir. 2004) (explaining that "if all that the plaintiff is seeking is a sum of money equal to the defendant's profit, an order of restitution will do fine, and the device of a constructive trust is a surplus; the device comes into its own only when the plaintiff is seeking title to specific property in the defendant's hands") (citing *Great-West*, 534 U.S. at 212-14); *Horvath v. Keystone Health Plan E., Inc*, 333 F.3d at 450, 457 n.3 (3d Cir. 2003)).[4]

Despite Plaintiffs' reference to their requested relief as "disgorgement/restitution," those remedies are not synonymous, as discussed above. Such attempts to cast one's requested remedy as something other than what it actually is have been explicitly rejected by the Second Circuit. *See Nechis*, 421 F.3d at 104 (rejecting plaintiff's designation of claim as a legal remedy in "equitable clothing"); *see also Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) ("[T]he gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available."); *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 321 (2d Cir. 2003) ("In determining the propriety of a remedy, we must look to the real nature of the relief sought, not its label.").

For purposes of their motion to dismiss Nationwide's counterclaims, Plaintiffs apparently believe that labeling their remedy "disgorgement" is most advantageous, while their motion for class certification insists that they are seeking "restitution," a different remedy, to avoid the

---

[4] Moreover, Plaintiffs have never even alleged that these mutual fund payments are "segregated, identifiable funds" held by Nationwide that might be subject to disgorgement. *Zarycki v. Mount Sinai/NYU Health*, 2005 WL 2977568, *10 (S.D.N.Y. Nov. 4, 2005); *see also Nechis*, 421 F. 3d at 103 (declining to impose constructive trust on monies that defendant "is under no obligation to segregate and which Nechis does not allege to be segregated in a separate account"). That is because these payments are not a "'particular asset … [such as] a fund of money like a bank account,'" *Scholastic Corp. v. Najah Kassem & Casper & De Toledo LLC*, 389 F. Supp. 2d 402, 407 (D. Conn. 2005) (quoting 1 Dobbs § 4.3(2), at 591), but rather alleged "'proceeds [that] have been dissipated so that no product remains.'" *Great-West Life & Annuity Ins. Co.*, 534 U.S. at 213 (internal quotations omitted).

individualized tracing issues that would arise if they were seeking disgorgement. *See, e.g.*, Pls. Mot. for Class Cert. at 28-31. If Plaintiffs are permitted to limit Nationwide's counterclaims by arguing that their primary (or only) remedy will be disgorgement, they must also be required to address the individualized issues that position will raise for purposes of class certification.

### III.    ERISA Requires Allocation of Liability For Any Wrongdoing.

ERISA requires "allocat[ion of] liability for plan-related misdeeds in reasonable proportion to respective actors' power to control and prevent the misdeeds." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). This policy of allocation was recognized by the Second Circuit in its *Chemung* decision permitting contribution, *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12 (2d Cir. 1991), and courts in this Circuit have consistently allowed contribution claims since then to go forward in ERISA cases without analyzing whether the co-fiduciaries received a "benefit," or otherwise limiting contribution based on the remedy sought by the plaintiff. *See, e.g.*, *Petrilli v. Gow*, 957 F. Supp. 366, 371, 375 (D. Conn. 1997) (contribution and indemnity claims "permissible under *Chemung*" since they offered a means of "apportionment among fiduciaries"); *In re Worldcom, Inc. ERISA Litig.*, 339 F. Supp. 2d 561, 568 (S.D.N.Y. 2004).

Thus, even if Plaintiffs did have a legitimate disgorgement remedy, contribution would still be appropriate. In the event that Nationwide is required to disgorge to the plans the mutual fund payments it received, then the Trustees must be liable to Nationwide for contribution in a proportional amount reflecting the benefits that they received *and* their own wrongdoing that caused those payments to occur.

Plaintiffs have tried to cloud this analysis by arguing that since they did not receive any part of the mutual fund payments, only Nationwide should have to turn over those payments to

the plans. This ignores a fundamental principle of contribution, which is that even if Nationwide is liable to the *plans* for these payments, the Trustees may be liable *to Nationwide* for a proportional amount reflecting the benefits they received and their own wrongdoing. In other words, the remedy that the plans receive does not affect the contribution liability of the Trustees – "the right of a defendant to contribution has little to do with the plaintiff's right of recovery." *Schorr v. GB Resources,* 1992 U.S. Dist. LEXIS 22724, *8 n. 1 (S.D.N.Y. Jul. 22, 1992) (citing *Chemung*, 939 F.2d 12).

If this were not the rule then the Trustees in this case would simply try to reduce or eliminate their own liability for contribution by choosing a particular remedy on behalf of the plans. It is already disturbing enough that the Trustees are seeking to recover from Nationwide for alleged harm to the plans caused by the Trustees' own conduct. The Trustees should not be permitted to pervert the process still further by limiting the remedies they pursue in order to insulate themselves from their proportional responsibility, which would be a gross breach of their fiduciary duties to the plans. *See in re Master's Mates & Pilots Pension Plan and IRAP Litig.,* 957 F.2d 1020, 1029 (2d Cir. 1992) ("ERISA's purpose of deterring pension plan abuse is frustrated when solvent breaching fiduciaries are allowed to escape the consequences of their actions"); 29 U.S.C. § 1105(a)(2) (ERISA fiduciary "shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan … [if] he has enabled such other fiduciary to commit a breach.").

Plaintiffs also argue that contribution for any disgorgement remedy should be barred as a matter of law under Section 258 of the Restatement (Second) of the Law of Trusts because they did not receive any "benefit" in connection with the mutual fund payments. Even if this section

were relevant,[5] it is outweighed by case law showing that multiple parties may be liable for contribution even where the remedy is one of disgorgement, especially where the particular financial benefits cannot be fairly traced among the parties and where the parties were liable for breach of statutory duties. *See, e.g., S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475-1476 (2d Cir. 1996) (finding a "controlling person" under § 20(a) of the Securities Exchange Act of 1934 to be jointly and severally liable for disgorgement); *S.E.C. v. Pittsfield Capital Income Partners, L.L.C.*, 2007 WL 2455124 (W.D.N.Y. Aug. 23, 2007) (joint and several liability for disgorgement appropriate where it is impossible to allocate benefit among tortfeasors); *S.E.C. v. Haligiannis*, 470 F. Supp. 2d 373, 385 (S.D.N.Y. 2007) (finding courts have discretion to find joint and several liability when two or more individuals collaborate in the illegal conduct and holding defendant jointly and severally liable for disgorgement).

Moreover, the Trustees did recognize a benefit. Nationwide has alleged that any payments from mutual funds and their affiliates were in return for services that Nationwide performed for the plans, services for which the Trustees had ultimate responsibility. Counterclaim ¶¶ 22, 29. The Trustees benefited from Nationwide's performance of those services, saving substantial time and effort by essentially outsourcing their administrative responsibilities to Nationwide. Meanwhile, Nationwide justifiably relied on the Trustees' acquiescence in this payment arrangement with the mutual funds and their affiliates, devoting years of effort for the Trustees, and not seeking alternative arrangements that would provide

---

[5] On its face, Section 258, comment f, applies to a co-trustee's right to indemnity, *not* contribution. Moreover, the Restatement of Trusts applies only to trusts and trustees, not mere ERISA fiduciaries. *See, e.g.,* Restatement (Third) of Trusts Introductory Note ("The term 'trust' is sometimes used to encompass all fiduciary relationships. This Restatement does not use the term in this broad sense, given that so many of the rules applicable to trustees are not applicable to other fiduciaries."). Further, Plaintiffs have not cited a single authority applying this portion of Restatement § 258.

adequate compensation. If Nationwide were required to disgorge all payments it received from mutual funds or their affiliates, and the Trustees had no liability to Nationwide for their proportional responsibility, the Trustees would be unjustly enriched by their dereliction of duty.

Even if Plaintiffs did not recognize a "benefit," contribution should still be required to ensure that there is "allocat[ion of] liability for plan-related misdeeds in reasonable proportion to respective actors' power to control and prevent the misdeeds." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). Otherwise, Plaintiffs will not be held accountable for their own wrongdoing that caused those payments to occur. As plan *trustees*, they had the responsibility to safeguard the plans, and they had the ultimate authority or control to prevent the misdeeds that allegedly occurred. *See Harris Trust & Sav. Bank v. Salomon Bros., Inc.*, 832 F. Supp. 1169, 1179 (N.D. Ill. 1993) (denying motion to dismiss counterclaim for contribution of any liability, including disgorgement).

Nationwide will certainly argue that the Trustees' own conduct precludes any ERISA liability in this case, and requires an "off-set" to any amount Nationwide may be required to disgorge to the plans in the event there is liability. But if Nationwide is held liable despite these arguments, and is required to turn over to the plans any of the payments from the mutual funds or their affiliates, Nationwide should still have a separate right to contribution from the Trustees. That is because, among other reasons, the finder of fact may conclude that any misconduct by the Trustees should not reduce the amount that the plans receive, and that any allocation of responsibility between the Trustees and Nationwide should be the subject of a separate contribution claim. *See Schorr,* 1992 U.S. Dist. LEXIS 22724, *8 n. 1 ("the right of a defendant to contribution has little to do with the plaintiff's right of recovery") (citing *Chemung*, 939 F.2d 12).

## CONCLUSION

Accordingly, this Court should refuse Plaintiffs' attempt to dismiss Nationwide's contribution and indemnification counterclaims to the extent of a disgorgement remedy – just as the Court has already denied the remainder of Plaintiffs' motion to dismiss.

Dated:  February 29, 2008              Defendants Nationwide Financial Services Inc.
                                       and Nationwide Life Insurance Co.


                              By: _____
                                       Dennis F. Kerrigan, Jr., Esq. (CT 09621)
                                       Brian O'Donnell, Esq. (CT 16041)
                                       Dewey & LeBoeuf, L.L.P.
                                       Goodwin Square, 225 Asylum Street
                                       Hartford, CT 06103
                                       Telephone:   (860) 293-3500
                                       Facsimile:  (860) 293-3555

                                       Charles C. Platt, Esq. (CT 23036)
                                       Wilmer Cutler Pickering Hale and Dorr LLP
                                       399 Park Avenue
                                       New York, NY  10022
                                       Telephone:   (212) 230-8800
                                       Facsimile:   (212) 230-8888

                                       Daniel H. Squire, Esq.
                                       Mark Bieter, Esq.
                                       Heath A. Brooks, Esq.
                                       Wilmer Cutler Pickering Hale and Dorr LLP
                                       1875 Pennsylvania Ave., N.W.
                                       Washington, D.C. 20006
                                       Telephone: (202) 663-6000
                                       Facsimile:  (202) 663-6363

## CERTIFICATION

I hereby certify that on this 29th day of February, 2008, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

>Richard A. Bieter, Esq.
>Antonio Ponvert III, Esq.
>Koskoff, Koskoff & Bieder
>350 Fairfield Avenue
>Bridgeport, CT 06604
>
>Gregory G. Jones, Esq.
>Law Firm of Gregory G. Jones, P.C.
>630 E. Southlake Blvd., Suite 110
>Southlake, TX 76092
>
>Marc R. Stanley, Esq.
>Roger L. Mandel, Esq.
>Stanley, Mandel & Iola
>3100 Monticello Avenue
>Suite 750
>Dallas, TX 75205

_/s/_