UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Lou Haddock, as trustee of the Flyte Tool & §
Die, Incorporated Deferred Compensation Plan, §
et. al., §
§
      PLAINTIFFS, §
§
V. §      Case No. 01-CV-1552 (SRU)
§
Nationwide Financial Services Incorporated, §
and Nationwide Life Insurance Company, §
§
      DEFENDANTS. §      March 24, 2008

**PLAINTIFFS' RESPONSE TO DEFENDANTS' FEBRUARY 29, 2008
SUPPLEMENTAL MEMORANDUM (RE: MOTION TO DISMISS COUNTERCLAIMS)**

INTRODUCTION

In its February 12 Order, the Court set forth the issues to be addressed in Defendants'

supplemental brief:

(1) why a counterclaim for contribution against the Trustees states a claim with respect to
any award requiring the Defendants to disgorge to the Plans the value of the 'revenue
sharing payments' when the Defendants do not allege that the Trustees received any
monetary or other direct benefit from the revenue sharing payments, and

(2) why an offset to such disgorgement award would not be an adequate way to account
for the value of any indirect benefit the Plans may have received as a result of the
revenue sharing payments?

February 12, 2008 Order on Supplemental Briefing.

The Court's Order seems to assume that the Plaintiffs seek monetary relief beyond

recovery of the revenue sharing payments. That is not correct. The only monetary relief sought

by Plaintiffs is recovery of the revenue sharing payments, as Plaintiffs' Fifth Amended Class

Action Complaint ("FAC") [Doc. 270] makes clear in paragraphs 3 and 61. The reference in

paragraph 65(b) to "disgorgement/restitution and/or damages as set forth above" is only to make

clear that Plaintiffs seek recovery of the revenue sharing payments regardless of whether that

recovery is properly characterized as disgorgement or restitution or damages. Accordingly, to the extent the Court continues to believe that Defendants' contribution and indemnity counterclaims should be dismissed as to Plaintiffs' claims for recovery of the revenue sharing payments, it should dismiss them in their entirety, because *recovery of the revenue sharing payments is the only monetary relief sought by Plaintiffs*.

And, crucially, the Court should reaffirm its holding, because Defendants have failed to meaningfully address either of the issues specified in the Court's Order. Instead, they have misused the supplemental briefing process to assert (and re-assert) legal and factual arguments beyond the scope of the Court's grant of permission. Rather than comply with the letter and obvious intent of the Court's Order (to prevent "confusion" and to provide "clarity"), and rather than actually answer the Court's questions, Defendants have chosen (1) to mischaracterize (again) the actual claims asserted by Plaintiffs in the Fifth Amended Complaint, (2) to dispute the premise of the Court's Order, by arguing that "Plaintiffs are not seeking disgorgement," and (3) to make new factual claims which they have not pled by arguing that "the Trustees did recognize a benefit."

Plaintiffs have tried to remain within the scope of the Court's February 12 Order while still addressing Defendants' substantive arguments. Plaintiffs did not address every mischaracterization of their claims in Defendants' brief and that should not be taken as a concession that such mischaracterizations have merit.

### BACKGROUND

It is important not to lose sight of the basic and uncomplicated principles that underlie the issues presently before the Court. The Fifth Amended Complaint, at its core, alleges that Defendants breached their fiduciary duty by taking money that rightly belonged to the Plans. In

response, Defendants have countersued the Trustees in their individual capacities saying that the Trustees should reimburse them for any money they must pay to the Plans because the Trustees did not stop them in the first instance from stealing that money from the Plans. While Defendants attempt to "dress up" their counterclaims, their argument can be accurately distilled in this disturbing way: "Assuming we stole the Plans' money, the individual Trustees should pay us because they didn't stop us from stealing the Plans' money."

Making Defendants' counterclaim strategy even more disturbing is that Defendants' plain purpose is not to actually recover money from the Trustees in their individual capacities. Rather, the obvious and transparent purpose of Defendants' counterclaims - the reason that they have brought suit against Mr. Haddock, Mr. Wiberg, Mr. Gouse and Mr. Ferdon *as individuals* – is (1) to attempt to defeat class certification by arguing that the Trustees' potential personal liability makes them improper class representatives, and (2) to attempt to force the Trustees to drop the suit because of the perceived personal risk of going forward.

In other words, Defendants' strategy and argument is: Even assuming we committed a massive ongoing breach of our fiduciary duty to the Plans, and even assuming we stole millions of dollars from the members of those Plans, as long as we can assert that the individual men and women Trustees failed to catch us in the act, we can never be held accountable and will never have to pay back a single dime of the misappropriated funds.

Not only is Defendants' strategy devoid of legal merit, but it would be against public policy and common sense for the Court to permit it, because it would reward the Defendants, and other corporate Defendants like them, for breaching their duties and taking other people's money in extremely clever and difficult-to-detect ways. The more clever and calculated the misappropriation, the less likely it is that the Trustees would notice it, and by the Defendants'

logic, the more the Trustees should be held accountable for allowing it to happen. To use Defendants' own words, their counterclaims and their arguments are "disturbing" and "perverse."

ARGUMENT

I.    PLAINTIFFS SEEK DISMISSAL OF DEFENDANTS' CONTRIBUTION AND INDEMNITY CLAIMS, NOT PREMATURE ELIMINATION OF SPECIFIC FORMS OF RELIEF.

The cases cited by Defendants in Part I of their Argument (Defs' Mem. at 4-5) are inapposite. They merely stand for the narrow proposition that a legally cognizable claim may not be dismissed simply because the claimant fails to specify a proper form of relief, as Defendants concede. *See* Defs' Mem. at 4 ("Once a court determines that the complaint properly states a *claim* for relief – as this Court has done – the inquiry ends. . . .") (emphasis in original). This argument fails in its premise.

At the February 8 hearing, the Court determined that Defendants' counterclaims against the Trustees for contribution and indemnity state claims for relief only *to the extent that Plaintiffs seek damages other than recovery of the revenue sharing payments*. The Court has *not* held that the counterclaims state a legally cognizable claim for relief against the individual Trustees "with respect to any damage award requiring the Defendants to disgorge to the Plans the value of the 'revenue sharing payments.'" February 12 Order. If the Court had so ruled, Defendants would not have sought, and the Court would not have granted, permission to file supplemental briefs.

Defendants' argument also confuses the relief sought by Defendants on their counterclaims with the relief sought by Plaintiffs. Unlike the defendants in the cases cited by Defendants (Defs' Mem. at 4-5), Plaintiffs do not seek dismissal of Defendants' contribution and

4

indemnity claims because of the relief Defendants seek based on those claims.    Rather,

Plaintiffs' argument, as recognized by the Court, is that Defendants cannot maintain contribution

and indemnity claims against plaintiffs to the extent they seek recovery of the revenue sharing

payments from Defendants on behalf of the Plans regardless of the form of relief sought by

Defendants in connection with those contribution and indemnity claims.

II.    DEFENDANTS' COUNTERCLAIMS FOR CONTRIBUTION AND INDEMNITY
MUST BE DISMISSED AS TO PLAINTIFFS' CLAIMS TO RECOVER THE REVENUE
SHARING PAYMENTS REGARDLESS OF HOW PLAINTIFFS' CLAIMS ARE
CHARACTERIZED.

In Part II of their Supplemental Memorandum, Defendants implicitly recognize that their

counterclaims must be dismissed when applied to a claim for disgorgement by Plaintiffs; that is

why they argue at such length that Plaintiffs have no such claim.  *See* Defs' Mem. At 6-9.  That

argument should be rejected by the Court for three reasons.

A.    Defendants' Argument Constitutes an Improper Motion for Summary Judgment.

In Part II, Defendants do not argue that they can maintain causes of action for

contribution and indemnity as to Plaintiffs' claim for disgorgement of the revenue sharing

payments.    Rather, they argue that Plaintiffs cannot prove the facts necessary to obtain

disgorgement.    So, in essence, Defendants defend their counterclaims by asking the Court to

grant summary judgment to them on Plaintiffs' disgorgement claim.    Defendants obviously

cannot move for summary judgment in this fashion, and the Court should reject the argument on

that basis.

B.    Defendants Cannot Maintain Their Contribution and Indemnity Claims Regardless of
Whether Plaintiffs Recover the Revenue Sharing Payments as Disgorgement or Restitution.

The Restatement (Second) of Trusts § 258 provides that if one liable trustee receives a "

benefit" from his breach of trust and is required to return it, he is not entitled to contribution or

indemnity for the amount of the benefit from another breaching trustee who did not also receive

the benefit.  RESTATEMENT (SECOND) OF TRUSTS § 258 (1959).  This principle is illustrated in

the Restatement as follows:

> A and B are trustees for C.  B improperly delegates the administration of the trust
> to A.  A misappropriates $1,000 of the trust property.  If A makes good the loss
> he is not entitled to recover anything from B.  If B makes good the loss he is
> entitled to recover $1,000 from A.

RESTATEMENT (SECOND) OF TRUSTS § 258, comment f, illustration 5 (1959).  Based on the

allegations in the FAC and Defendants' Counterclaims, Nationwide is analogous to A and

Plaintiffs are analogous to B.

Crucially, the Restatement merely says that a fiduciary cannot recover contribution or

indemnity to the extent it is liable to pay back a "benefit" it received from its breach of fiduciary

duty.  It does not distinguish this principle based on whether the fiduciary must pay back the

benefit based on a claim for restitution (a claim at law and what Defendants argue Plaintiffs must

actually pursue) or based on a claim for disgorgement (a claim in equity).  Either way, the

Restatement applies, making it completely irrelevant if Defendants turn out to be correct that

Plaintiffs will ultimately recover in restitution rather than for disgorgement.

This is necessarily true given the conceptual basis for Restatement § 258.  The concept

underlying it is that when a breaching fiduciary pays back a benefit it received as a result of its

breach, it cannot receive contribution or indemnity because that would allow it to retain part or

all of the benefit to which it was not entitled.  This fundamental principle holds true regardless of

whether a fiduciary must return the benefit based upon a claim at law for restitution or a claim in

equity for disgorgement.

C.      Plaintiffs Could Recover Disgorgement, If Necessary.

Without conceding they must do so in order for the Court to dismiss Defendants'

contribution and indemnity counterclaims, Plaintiffs could obtain disgorgement, if necessary. Under *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), restitution lies in equity (i.e., constitutes disgorgement) and thus can be asserted pursuant to ERISA § 502(a)(3) when it seeks to recover particular funds in the defendant's possession. *Id.* (citing to RESTATEMENT (FIRST) OF RESTITUTION § 160, comment a (1937)). Crucially, this condition is met where the defendant deposits the plaintiff's assets into a bank account containing the defendant's own assets, as the plaintiff is entitled to restitution out of the mingled fund. RESTATEMENT (FIRST) OF RESTITUTION § 209, comment a (1937).

Thus, in the Second Circuit, it has been consistently held that if assets which should be returned to the plaintiff can be identified as going into bank accounts of the defendant, the plaintiff is entitled to equitable restitution (disgorgement) out of those bank accounts. *In Re Martin Fein & Co., Inc.*, 43 B.R. 623, 627-8 (Bankr. S.D.N.Y. 1984) (citing *Salisbury Inv. Co. v. Irving Trust Co.*, 70 F.2d 313, 316 (2d Cir. 1934)) ("If a trustee mingles the trust funds with the mass of his other funds, as long as there remains on hand a sufficient sum to cover the amount of the trust fund, the cestui que trust may follow the trust fund and reclaim it."); *In Re Warner-Quinlan Co.*, 86 F.2d 103, 105 (2d Cir. 1936) (dictum); *In Re Anjopa Paper & Board Manuf. Co.*, 269 F. Supp. 241, 261 (S.D.N.Y. 1967); 5 *Scott on Trusts* § 515, at 3610-11 (3d ed. 1967)).

As Defendants received the revenue sharing payments, they deposited them into one particular bank account, as they conceded in a discovery response. *See* Defendants' Second Supplemental Responses and Objections to Plaintiffs' Notice and First Supplemental Notice To Take The Oral Videotaped Deposition Duces Tecum of Defendants Nationwide Financial Services, Inc. and Nationwide Life Insurance Company, Response to Request No. 8, attached hereto as Exhibit A. Under the Second Circuit authorities discussed above, a claim in equity for

restitution (disgorgement) against this bank account can be asserted, making it a claim for "*appropriate equitable relief*" under ERISA § 502(a)(3).

The Supreme Court itself confirmed this in *Knudson* by holding that the plaintiffs in *Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000), had asserted an equitable claim for restitution under § 502(a)(3). 534 U.S. at 215. The plaintiffs in *Harris Trust* sought to recover restitution from the defendant of the purchase price of several motel properties -- which money the defendant presumably had deposited into one or more accounts which could be identified. *Harris Trust*, 530 U.S. at 242-3. This case cannot be distinguished.

To the same effect is *Health Care Service Corp. v. Tap Pharmaceutical Products, Inc.*, 2003 WL 21801636, at *3 (E.D. Tex. 2003). The plaintiff alleged that the pharmaceutical company had induced it into overpaying for drugs, and the plaintiff sought restitution of the overpayments, which presumably the defendant had deposited in one or more bank accounts. *Id.* at *1. Citing to *Harris Trust*, the district court held that the action for restitution constituted appropriate equitable relief under § 502(a)(3).

III.
THE RESTATEMENT (SECOND) OF TRUSTS § 258 CONTROLS AND REQUIRES DISMISSAL OF DEFENDANTS' CONTRIBUTION INDEMNITY CLAIMS.

In Part III of its Supplemental Memorandum, Defendants make a convoluted and almost incomprehensible two-part argument. First, they argue that the Restatement (Second) of Trusts § 258 allegedly does not control the issue and that the equitable principles underlying the Second Circuit's adoption of contribution and indemnity in ERISA cases requires their application even if Plaintiffs seek only disgorgement of a benefit received by Defendants. Second, and presumably alternatively, Defendants argue that, if necessary, Plaintiffs as individuals have received some ill-defined indirect benefit which somehow would allow Defendants to maintain

their contribution and indemnity claims.

As to the first argument, Plaintiffs note that in creating ERISA contribution and indemnity rights, the Second Circuit explicitly relied on the common law of trusts as set forth in the Restatement (Second) of Trusts § 258 (1959). *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 16 (2d Cir. 1991). *See also In Re Masters Mates & Pilots Pension Plan and IRAP Litigation*, 957 F.2d 1020, 1032 (2d. Cir. 1992). There is absolutely no reason to believe that the Second Circuit would look to § 258 only for the general rule that contribution and indemnity claims can be maintained and not look to it also for the exceptions to that general rule.

Accordingly, Defendants' arguments in the Supplemental Memorandum at 9-10 that the equitable principles underlying the Second Circuit's adoption of contribution and indemnity claims somehow demand that a breaching fiduciary forced to pay over a benefit it received as a result of its breach be allowed to recover part or all of that benefit from another breaching fiduciary which did not share in the benefit rings completely hollow. In none of the cases cited by Defendants (Defs' Mem. at 9-10) did a court allow a breaching fiduciary forced to pay back a benefit it obtained as a result of its breach to recover part or all of that benefit from another breaching fiduciary who did not share in that benefit.

Indeed, Defendants' argument contradicts fundamental premises of trust and fiduciary law. A breaching fiduciary can never be allowed to benefit by its breach and for that reason must give back any benefit it receives from its breach. If that fiduciary recovers from a co-breaching fiduciary part or all of the benefit it gave back, it will have retained part of the benefit of its breach, a result at odds with trust and fiduciary law and one that would encourage future breaches.

As to Defendants' second argument that the individual trustees allegedly benefited in "time savings" from their alleged failure to keep Defendants from stealing from the Plans, it suffers from not being pled by Defendants, from being manifestly untrue and from being legally irrelevant.   Initially, as the Court's February 12 Order explicitly noted, Defendants failed to plead in their counterclaims that the individual Trustees benefited in any way from Defendants' breach or their own alleged breach.   All the benefit allegations in the counterclaims clearly refer to benefits flowing to the Plans, not the individual Trustees.   Defendants' Answer and Counterclaims [Doc. 290] ¶¶ 23 & 30.   The counterclaims simply do not contain any allegations that the individual Trustees benefited by saving substantial time and effort from outsourcing their administrative responsibilities to Defendants, such that those allegations cannot be considered by the Court.

Even if such an allegation had been made in the counterclaims, it would not be sufficient to save Defendants' contribution and indemnity claims.   The Restatement is couched in terms of "benefits" resulting from the breach of fiduciary duty.   The "benefits" the individual Trustees allegedly received from Defendants performing administrative duties that might otherwise have fallen on them obviously resulted from the Plans contracting for and paying for those services, not from the individual Trustees' alleged breach (failing to keep Defendants from stealing from the Plans) or even Defendants' breach (stealing from the Plans).   Furthermore, because the Plans would have paid the Trustee or someone else to perform those duties had they not paid Defendants to do so, those alleged benefits of "time savings" to the individual Trustees are simply non-existent or, at a minimum, too indirect and intangible to count.

Finally, even if such "time savings" could conceivably constitute a benefit to the individual Trustees resulting from a breach of fiduciary duty, it would not entitle Defendants to

contribution and indemnity as to their repayment of the revenue sharing payments. The idea underlying Restatement § 258 is that no fiduciary should benefit from its breach of its duty. That means that even if the individual Trustees allegedly received a separate "time savings" benefit from a breach of fiduciary duty, Defendants cannot retain any part of the revenue sharing payments by recovering contribution or indemnity from the individual Trustees. Otherwise, Defendants would still be justly enriched.

Likewise, if Defendants were to succeed in proving in connection with their breach of fiduciary duty counterclaim against the individual Trustees that the Trustees breached their fiduciary duty owed to the Plans and benefited thereby in "time savings," the individual Trustees would have to pay any value of that benefit over to the Plans and they could not seek contribution or indemnity for those payments from Defendants. Simply put, if breaching fiduciaries received separate benefits from their breaches, each must fully disgorge the value of those benefits to their beneficiary and neither can recover contribution or indemnity from the other.

## IV.
## EVEN IF THE PLANS MAY HAVE RECEIVED SOME INDIRECT BENEFIT AS A RESULT OF THE REVENUE SHARING PAYMENTS, AN OFFSET TO THE REVENUE SHARING PAYMENTS WOULD FULLY ACCOUNT FOR THE VALUE OF SUCH INDIRECT BENEFITS.

Turning now to any benefit that may have been conferred by the revenue sharing scheme on the *Plans*, as opposed to the individual Trustees, an offset to the revenue sharing payment would prevent any possible unfairness to the Defendants, as the Court's second issue presumes. Defendants do not argue otherwise. Indeed, not only do Defendants fail to argue that an offset would not be a perfectly adequate way to account for the value of any such benefits, they insist and promise that they will seek such an offset, stating that they "will certainly argue that the

Trustees' own conduct . . . requires a 'set-off' to any amount Nationwide may be required to disgorge to the plans in the event there is liability. . . ." Defs' Mem. at 12.

Notably, the Second Circuit held that contribution and indemnity in the ERISA context constitutes "...a procedural device for equitably distributing responsibility for plaintiff's losses . . . ." *Chemung*, 939 F.2d at 15. Inasmuch as an offset accomplishes this exact purpose, Defendants' counterclaims are not only utterly unnecessary, but they would undermine the goal of equitable allocation by allowing Defendants to profit from their violations of the law. The Court should not allow this to happen, and accordingly it should dismiss the indemnity and contribution counterclaims in their entirety.

## CONCLUSION

Defendants' counterclaims for contribution and indemnity against the individual Trustees are part of a calculated and improper strategy to defeat class certification. They are not legitimate claims for reimbursement given that the only monetary relief sought by Plaintiffs is recovery of the revenue sharing payments. Allowing Defendants to sue the individual Trustees would be improper both because they received no benefit from the Defendants' revenue sharing scheme and because such a separate cause of action would unjustly enrich the Defendants. The counterclaims should thus be dismissed.

Respectfully submitted,

    /RAB/
    Richard A. Bieder
Federal Bar No. ct04208
Antonio Ponvert, III
Federal Bar No. ct17516
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgeport, Connecticut 06604
203-336-4421
203-368-3244 (Fax)

Marc R. Stanley
Federal Bar No. ct18179
Roger L. Mandel
Federal Bar No. ct18180
Martin Woodward
Federal Bar No. ct25263
STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, Texas  75205
214-443-4300
214-443-0358 (Fax)

Gregory G. Jones
Federal Bar No. ct23443
LAW FIRM OF GREGORY G. JONES PC
603 S. Main Street, Suite 200
Grapevine, Texas 76051
817-424-9001
817-424-1665 (Fax)

**ATTORNEYS FOR PLAINTIFFS**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 24, 2008 a copy of Plaintiffs' Plaintiffs' Response To Defendants' February 29, 2008 Supplemental Memorandum (Re. Motion To Dismiss Counterclaims) was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

Dennis F. Kerrigan, Jr.
Dewey & LeBoeuf
Goodwin Square
225 Asylum Street
Hartford, CT  06103

Charles C. Platt
Wilmer Cutler Pickering Hale and Dorr
399 Park Avenue
New York, NY 10022

Samuel Broderick-Sokol
Wilmer Cutler Pickering Hale and Dorr
1875 Pennsylvania Ave., N.W.
Washington, D.C.  20006

_____/s/_____

Richard A. Bieder (ct04208)

 Plaintiffs have not specifically pled for imposition of an equitable lien against this bank account of Defendants.  If their general pleadings for equitable relief do not encompass such relief, Plaintiffs request leave of Court to amend to specifically plead for such relief.  As Defendants note, if a cause of action has been pled, it is of no moment that the proper relief has not been pled.