UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, et al., | CIVIL ACTION NO.: |
| | 3:01CV1552 (SRU) |
| PLAINTIFFS, | |
| v. | |
| NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO., | |
| DEFENDANTS. | |

**DEFENDANTS' SUPPLEMENTAL REPLY MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS**

At the February 8 hearing, the Court found that Nationwide had properly stated counterclaims for contribution and indemnification, but permitted supplemental briefing on whether contribution is available in the event Plaintiffs recover a "disgorgement" remedy at trial. Tr. of Feb. 8, 2008 Hearing (Docket 326) at 41, 48-49.

In their supplemental memorandum, Plaintiffs argue that contribution is unavailable based on their own version of the facts, not those alleged by Defendants. Plaintiffs' version is improper under Rule 12(b)(6) and inconsistent with the only theory of Plaintiffs' case upheld by this Court's March 2007 decision.

Plaintiffs also do not deny that any disgorgement remedy will be unavailable to them at trial because they cannot trace any mutual fund payments to their plans' assets. Nevertheless, they argue that contribution should be denied as a matter of law regardless of the remedy they

seek, based on a mischaracterization of this Court's February 8 order (Docket 327) and despite their statements at oral argument to the contrary. *Id.* at 34-35, 49.

Finally, Plaintiffs' argument that Section 258 of the Restatement (Second) of Trusts bars Defendants' contribution claim as a matter of law is not supported by the plain language of that Section. Although Plaintiffs argue that contribution would permit the Nationwide defendants to benefit from their breach of fiduciary duty, denial of any contribution would immunize Plaintiffs from any consequences for their own breach of fiduciary duty as trustees. Such a result would be inconsistent with ERISA's equitable allocation principles recognized by the United States Supreme Court, and would create a severe conflict of interest if Plaintiffs could select the remedies for the putative class in such a way to reduce their own personal exposure.

## ARGUMENT

### I.      Plaintiffs' Motion Fails To Accept As True Defendants' Factual Allegations.

Plaintiffs' Fifth Amended Complaint alleges the Nationwide defendants breached ERISA fiduciary duties and engaged in prohibited transactions by selecting and deleting certain annuity contract investment options in return for certain mutual fund payments. Nationwide's counterclaims allege that even if Plaintiffs could prove these allegations and recover relief on behalf of the plans, the Plaintiffs are proportionately responsible for any such relief because they selected the investment options that resulted in the payments, and they ratified or willfully disregarded their responsibilities with respect to those payments.

Rather than accept these allegations as true, Plaintiffs' entire supplemental memorandum seeks to defeat contribution based on their own version of the "facts." Plaintiffs imagine that Nationwide somehow "stole" the plans' money when Defendants received the mutual fund payments, and that Plaintiffs were simply innocent bystanders who failed to stop the theft from

occurring.  Pls.' Resp. at 3.  That version is not only unacceptable under Rule 12(b)(6), it is inconsistent with the "mutual fund selection and deletion" theory this Court upheld in its March 2007 decision, which has nothing to do with "stealing" the plans' money.

In any event, Plaintiffs' new version of the facts is factually unsupportable because Plaintiffs themselves have acknowledged that the mutual fund payments at issue came from the mutual funds and their affiliates, *not* from the Plans.  See Compl. ¶ 30 (alleging that a mutual funds pays fees "out of its general assets"); Class Cert. Mot. at 7 (same).  As a result, no money was ever "stolen" from the plans, and any relief that Plaintiffs may recover on behalf of the plans at trial will not include any disgorgement of plan money.

## II.   It is Premature to Eliminate Forms of Relief.

Plaintiffs repeatedly insisted at the February 8 hearing that they were entitled to a return of the mutual fund payments based on a theory of "disgorgement."  Tr. of Feb. 8, 2008 Hearing at 34:6-7 ("We want disgorgement of the revenue sharing payments."); *id*. at 35:2-3 ("that's what we're asking for in this case … disgorgement"); *id.* at 49:21-22 ("it's very clear that we've been seeking disgorgement all along").  In response, Defendants' supplemental memorandum described why it would be premature to eliminate a specific form of relief (e.g., contribution for disgorgement) before any facts are established.

Rather than addressing this point, Plaintiffs now insist they are in fact seeking recovery "of the revenue sharing payments regardless of whether that recovery is properly characterized as disgorgement or restitution or damages."  Pls.' Resp. at 1-2; Compl. ¶ 65; *see also id.* ¶ 49 (claiming the only individual issues "will be the exact amount of *damages* recovered by each Class member") (emphasis added).  Plaintiffs then blatantly mischaracterize this Court's allowance of Nationwide's counterclaims as a ruling that Nationwide can maintain its claims

3

"only to the extent that Plaintiffs seek damages other than recovery of the revenue sharing payments." Pls.' Resp. at 4 (emphasis omitted). To the contrary, the Court has focused on the specific remedy of disgorgement and its implications for Nationwide's counterclaims, and not on any theory of damages that Plaintiffs may argue requires a calculation of mutual fund payments to Nationwide. *See* Tr. at 36-37; Feb. 12, 2008 Order (stating question presented as whether contribution counterclaim "states a claim with respect to any award requiring the defendants *to disgorge* to the Plans the value of the 'revenue sharing payments'") (emphasis added).

Plaintiffs' abandonment of their original disgorgement argument underscores why it is premature for the Court to eliminate specific forms of relief available to Nationwide on its counterclaims, in the same way that it would be premature for the Court to limit the remedies that Plaintiffs may seek at trial. Until the Court makes findings of fact and conclusions of law, and grants a specific remedy to the plans based on those findings and conclusions, it is premature to dispose of any form of relief for one of those remedies. *See* Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion to Dismiss Amended Counterclaims ("Supp. Mem.") at 4-6. The motion to dismiss stage is not the appropriate time to allow or eliminate particular forms of relief requested. *See* Fed. R. Civ. P. 54(c); *Schwartz v. Eaton*, 264 F.2d 195, 197 (2d Cir. 1959) (district court erred by dismissing requested relief; proper time to award relief is "at the close of the case").

**III.    Plaintiffs' Claim Does Not Constitute Disgorgement or Equitable Restitution.**

Defendants' supplemental memorandum explained that Plaintiffs' motion to dismiss any counterclaim for a disgorgement remedy should be denied because Plaintiffs have acknowledged they have no basis for any such disgorgement remedy. Plaintiffs' answer to this is essentially: "It doesn't matter what our claim and theory of relief are; we just want the mutual fund payments that were made to Nationwide."

4

The reason Plaintiffs now want to expand their contribution argument to include restitution and damages is because they cannot seek a disgorgement remedy at trial, and will have to seek to obtain the value of the mutual fund payments through some other remedy. As Nationwide has explained, Plaintiffs have no disgorgement claim because the mutual fund payments to Nationwide are not assets that belong to or are traceable to the plans. The money used to make the payments belonged to the mutual funds or their affiliates. Supp. Mem. at 6-9. Thus, Plaintiffs are now positioning themselves to seek a remedy to "recover[] money to pay for some benefit the defendant has received from [them] . . . ." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (internal quotation omitted). That is not a disgorgement remedy. That is a legal remedy that is fully amenable to a claim of contribution that will account for Plaintiffs' fault.[1]

Plaintiffs argue that disgorgement is appropriate where the mutual fund payments have been deposited with other Nationwide assets. Pls.' Resp. at 7. The fact that Nationwide maintains a bank account to receive mutual fund payments is beside the point, because those payments cannot be traced back to any plan assets. Focusing improperly on Nationwide's bank accounts, Plaintiffs mischaracterize the case law that allows disgorgement only where funds can be traced to the plaintiff. Plaintiffs cite *Great-West Life & Annuity Ins. v. Knudson*, 534 U.S. 204 (2002), for their assertion that "restitution lies in equity (i.e., constitutes disgorgement) . . .

---

[1] Nationwide is *not* seeking summary judgment or arguing that "Plaintiffs cannot prove the facts necessary to obtain disgorgement." *See* Pls.' Resp. at 5. Nationwide is simply pointing out that, for purposes of Plaintiffs' motion to dismiss, Plaintiffs are bound by the facts that Defendants will prove: that Plaintiffs cannot show disgorgement because they have denied any intention to trace the mutual fund payments to plan assets. *See* First Am. Mem. in Supp. of Pls.' First Am. Mot. for Class Cert. (Docket 129) at 13 ("Plaintiffs' contentions do not depend upon tracing specific dollars from the hands of a Plan into the hands of Nationwide"); Pls.' Opp'n to Defs.' Disc. Mot. (Docket 155) at 24 ("Plaintiffs do not rely on tracing plan assets from the hands of the Plans into the hands of Defendants").

when it seeks to recover particular funds in the defendant's possession." Pls.' Resp. at 7. In fact, *Great-West* held that "a plaintiff could seek restitution in equity … where money or property *identified as belonging in good conscience to the plaintiff* could clearly be traced to particular funds or property in the defendant's possession." 534 U.S. at 213 (emphasis added). Plaintiffs' selective paraphrase of *Great-West* omits the critical requirement that the funds at issue have already been proven to "belong[] in good conscience to the plaintiff." *Id*.

The other cases cited by Plaintiffs similarly miss the mark. For example, Plaintiffs cite *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), for the proposition that a plaintiff may claim equitable restitution where a defendant has deposited the funds at issue into certain identifiable accounts. Pls.' Resp. at 8.[2] But *Harris Trust* says nothing about what constitutes plan assets or about how a plaintiff may establish that funds held by defendants constitute or can be traced to plan assets. Instead, *Harris Trust* holds only that "an action for restitution against a transferee of tainted *plan assets*" may be "'equitable' in nature." 530 U.S. at 253 (emphasis added). Likewise, the issue in *Health Care Service Corp. v. Tap Pharmaceutical Products, Inc.* was whether plaintiff could obtain equitable restitution of overpayments it had allegedly been forced to overpay defendant – indisputably from plaintiff's own funds – for certain pharmaceutical drugs. 274 F. Supp. 2d 807, 810 (E.D. Tex. 2003). How Plaintiffs' statement that the defendant in *Health Care Service Corp*. also "presumably . . . deposited [the funds] in one or more bank accounts" bears any relevance to the Plaintiffs' ability to trace the mutual fund payments to plan assets – or obtain disgorgement or equitable restitution as a remedy – is a mystery.

---

[2] *Harris Trust* does not even appear to stand for this proposition. Plaintiffs argue "the defendant presumably had deposited [the money at issue] into one or more accounts which could be identified." Pls.' Resp. at 8 (citing *Harris Trust*, 530 U.S. at 242-243). In fact, there is no discussion in *Harris Trust* of where the defendant may have deposited the disputed funds.

**IV.    Contribution Liability Should Be Apportioned According To Fault.**

Finally, Plaintiffs argue that contribution for disgorgement must be rejected as a matter of law at this early stage under Restatement (Second) of Trusts § 258(1)(b) because Plaintiffs did not receive a "benefit" from the mutual fund payments.  *See* Pls.' Resp. at 8.

Section 258(1)(b), however, expressly recognizes the right of contribution where two fiduciaries are equally at fault.  It does not provide that any contribution claim should be rejected as a matter of law under any circumstances.  Instead, it provides that "where *two trustees* are liable for breach of fiduciary duty, and one has recognized a benefit that the other did not, then the other may seek indemnity for the amount of that benefit."

That is *not* the situation here.  Nationwide is not a co-trustee; at most it may be a functional fiduciary whose duties are generally less stringent than those of trustees.  *See, e.g.*, Restatement (Third) of Trusts Introductory Note (trustee is not the same as fiduciary because "many of the rules applicable to trustees are not applicable to other fiduciaries").  More importantly, Plaintiffs are not seeking from Nationwide a right of "*indemnity* for the amount of [a] benefit" that Plaintiffs have already paid to the plans, as provided under Section 258.  Such an indemnity claim would impose on Plaintiffs the burden of proving their right to recover such a benefit from Nationwide.  Instead, Plaintiffs are asking this Court to deny the right of *contribution as a matter of law* even though contribution is expressly permitted in that Section without any qualification.  That request effectively flips the burden on Nationwide to prove, at the motion to dismiss stage, that Plaintiffs have no right to indemnity.

Moreover, Plaintiffs do not cite a single case that even discusses how a "benefit" permitting indemnity under Section 258 is defined, much less a case holding that a party who "benefits" cannot seek contribution from another party who is at fault.  Nor do *Chemung Canal*

*Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12 (2d Cir. 1991), and *In re Masters Mates & Pilots Pension Plan and IRAP Litigation*, 957 F.2d 1020 (2d Cir. 1992) – which cite to Section 258 only as background – set out such a restrictive rule.  In fact, numerous cases in the Second Circuit have allowed ERISA contribution without any mention of Section 258 or any "benefit" analysis.  *See, e.g.*, *Petrilli v. Gow*, 957 F. Supp. 366, 371, 375 (D. Conn. 1997); *In re Worldcom, Inc. ERISA Litig.*, 339 F. Supp. 2d 561, 568 (S.D.N.Y. 2004).  *See* Supp. Mem. at 9-10.

      Plaintiffs' argument that none of the cases cited by Nationwide involved contribution when there was merely a disgorged benefit misses the point entirely, *see* Pls.' Resp. at 9.  These ERISA cases do not focus on the "benefit" issue under Section 258 (as Plaintiffs argue they should), because they instead apply the traditional test for contribution (as Nationwide argues this Court should) requiring "allocat[ion of] liability for plan-related misdeeds in reasonable proportion to respective actors' power to control and prevent the misdeeds." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *see also Petrilli*, 957 F. Supp. at 371, 375 (contribution and indemnity claims "permissible under *Chemung*" since they offered a means of "apportionment among fiduciaries").

      Based on Nationwide's allegations, the Trustees are at fault because they approved and ratified the manner in which Nationwide received its compensation over a period of many years, *see, e.g.*, Counterclaim ¶¶ 17-19, 21, 28; and absent such approval and ratification, Nationwide would have developed an alternative mechanism for obtaining fair compensation (or would simply have refused to perform the services).  Of course, at the motion to dismiss stage, such "[f]actual allegations made in the complaint are assumed to be true, and all inferences are drawn in favor of the [complaining party]." *Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529, 534 (2d

8

Cir. 1999). As the Court has held, these allegations are sufficient to withstand Plaintiff's motion to dismiss.

Even if it were relevant whether Plaintiffs benefited from Nationwide's compensation arrangements, Plaintiffs are flatly mistaken that Nationwide has not so alleged. *See* Pls.' Resp. at 10. In fact, Nationwide has alleged exactly that. *See* Counterclaim ¶ 22 ("The Trustees benefited from the services provided by Nationwide Life …. The Trustees also benefited from any payments received by Nationwide Life …."); *see also id.* ¶¶ 23, 30. Plaintiffs are also mistaken in claiming that the benefit to the Trustees in not having to perform their administrative duties "obviously resulted from the Plans contracting for and paying for those services, not from the individual Trustees' alleged breach." *See* Pls.' Resp. at 10. Nationwide has alleged that it was the Trustees' duty to perform these services, and that Nationwide received no benefit from the mutual fund payments other than being compensated. These allegations, too, are assumed to be true and all inferences drawn in Nationwide's favor. *Press*, 166 F.3d at 534.

Plaintiffs' suggestion that it would be adequate to allow Nationwide an offset against any recovery by the plans in order to compensate for the value of the services is deficient. It is not the plans' responsibility to pay Nationwide for services that the Trustees were obligated to perform in the first place. In fact, that the Trustees are trying to foist their own potential liability on to the plans shows yet again their patent disregard for their fiduciary obligations and the conflicts of interest that permeate their representation of the plans. Likewise, Plaintiffs' suggestion that any recovery against them would go to the plans, rather than to Nationwide, also fails in the event Nationwide is required to disgorge mutual fund payments that were in fact compensation for services that the Trustees should have performed. In such a circumstance, the

9

Trustees' contribution liability would be to Nationwide – which would have lost the value of its services – rather than to the plans – who would then be unfairly enriched.

## CONCLUSION

For these reasons, this Court should deny Plaintiffs' motion to dismiss Nationwide's contribution and indemnification counterclaims.

Dated:  April 7, 2008                                         Defendants Nationwide Financial Services Inc.
                                                              and Nationwide Life Insurance Co.


By: /s/ Dennis F. Kerrigan, Jr.
Dennis F. Kerrigan, Jr., Esq. (CT 09621)
Brian O'Donnell, Esq. (CT 16041)
Dewey & LeBoeuf, L.L.P.
Goodwin Square, 225 Asylum Street
Hartford, CT 06103
Telephone:    (860) 293-3500
Facsimile:    (860) 293-3555

Charles C. Platt, Esq. (CT 23036)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
Telephone:    (212) 230-8800
Facsimile:    (212) 230-8888

Daniel H. Squire, Esq.
Mark Bieter, Esq.
Heath A. Brooks, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone:    (202) 663-6000
Facsimile:    (202) 663-6363

## CERTIFICATION

I hereby certify that on this 7th day of April, 2008, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

> Richard A. Bieter, Esq.
> Antonio Ponvert III, Esq.
> Koskoff, Koskoff & Bieder
> 350 Fairfield Avenue
> Bridgeport, CT 06604
>
> Gregory G. Jones, Esq.
> Law Firm of Gregory G. Jones, P.C.
> 630 E. Southlake Blvd., Suite 110
> Southlake, TX 76092
>
> Marc R. Stanley, Esq.
> Roger L. Mandel, Esq.
> Stanley, Mandel & Iola
> 3100 Monticello Avenue
> Suite 750
> Dallas, TX 75205

_/s/ Dennis Kerrigan_
Dennis Kerrigan