# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Dye Company Inc. 401(k) Profit-Sharing Plan, et al.,<br>    Plaintiffs,<br><br>    v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., et al.,<br>    Defendants. | CIVIL ACTION NO.<br>3:01cv1552 (SRU) |

## RULING ON PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

Plaintiffs Lou Haddock, Peter Wiberg, Alan Grouse, Edward Kaplan, and Dennis Ferdon, as trustees of employer-sponsored, profit-sharing retirement plans (collectively, the "Trustees"), move to dismiss all three of defendants Nationwide Financial Services, Inc. and Nationwide Life Insurance Co.'s ("Nationwide") amended counterclaims. In its Amended Answer to the plaintiffs' Fifth Amended Complaint (the "Answer), Nationwide counterclaimed for contribution, indemnification, and breach of fiduciary duty against the five plaintiffs, alleging that, as trustees of the plans, they share in any liability imposed on the defendants in this case. Following the February 8, 2008 motion hearing, I permitted the parties to submit supplemental briefing to answer the question:

> Why a counterclaim for contribution against the Trustees states a claim with respect to any award requiring the defendants to disgorge to the Plans the value of the "revenue sharing payments" when the defendants do not allege that the Trustees received any monetary or other direct benefit from the revenue sharing payments, and why an offset to such disgorgement award would not be an adequate way to account for the value of any indirect benefit the Plans may have received as a result of the revenue sharing payments?

February 12, 2008 Order on Supplemental Briefing (Doc. # 327).

At the outset I must note that this written ruling represents my decision on the Trustees'

motion to dismiss Nationwide's counterclaims in its entirety.  There is simply no support for

Nationwide's suggestion that, during oral argument of the motion to dismiss, I "found that

Nationwide had properly stated counterclaims for contribution and indemnification."

Defendants' Supplemental Reply Memorandum in Opposition to Plaintiffs' Motion to Dismiss

Amended Counterclaims, at 1.  At most, I engaged in a colloquy with counsel during the portion

of the transcript cited by Nationwide during which I remarked that "until [it is determined that

Nationwide is not a fiduciary], it seems to me they probably have a cause of action."  Tr. Feb. 8,

2008, at 48.  The record is crystal clear, when read in its entirety, that I was taking under

advisement *all* issues raised by the plaintiffs' motion.  I never said, as is my practice, that I was

ruling on the motion, gave no reasons for the "ruling," and never used the words "denied" or

"ruling" in my comments.  To contend that I decided any issue raised by the motion to dismiss is

a mischaracterization of what occurred at the hearing.  The minute entry for the hearing confirms

no disposition on those issues occurred; to the extent Nationwide contends otherwise, it is

mistaken.

## I.    Background

I have made two previous rulings in this case, which comprehensively set forth the case's

procedural history.  *Haddock v. Nationwide Fin. Servs.*, 419 F. Supp. 2d 156 (D. Conn. 2006)

("*Haddock I*"), and *Haddock v. Nationwide Fin. Servs.*, 514 F. Supp. 2d 267 (D. Conn. 2007)

("*Haddock II*").  Because I presume familiarity with *Haddock I* and *Haddock II*, I will only

briefly review the pertinent facts of the case.

The plaintiffs are trustees of five employer-sponsored, participant-directed 401(k)

retirement savings plans (the "Plans").  Nationwide was chosen by the Plans' administrative

service providers to be the Plans' investment provider.  In the most general terms, as investment

provider, Nationwide selected certain mutual funds to be available for investment by the Plans

and participants.  From Nationwide's selection, the Plans chose a sub-set of mutual funds to offer

to the participants.  The participants then decided which funds they wanted to invest in.

Nationwide retained the power to delete or substitute mutual funds from the list of available

investment options.  Once a participant chose a fund, Nationwide pooled money from other

participants for investment in that fund.  Each participant was assigned a corresponding number

of "accumulation units" that reflected the participant's individual level of investment and that

fluctuated in value depending on the mutual fund's performance.  Nationwide retained the power

to cancel those accumulation units to pay its fees and for taxes, use them as collateral for loans,

or cancel them to make annuity purchases or to make cash payments to the participants.

The issue central to the suit arises out of Nationwide's source of income from mutual

funds that it calls "service contract payments," also known as "revenue sharing payments."

Nationwide received those payments based on the percentage of assets the Plans and its

participants invested in the mutual funds through Nationwide.  Nationwide characterizes those

payments as payments for services it provided to the mutual funds.  The Trustees contend, and I

agreed in *Haddock I* that a reasonable jury could find, that no services were performed in

exchange for those payments, and that they were actually made in exchange for Nationwide's

offering those mutual funds as investment options to the Plans and participants.

In its Answer, Nationwide sets forth three counterclaims against the Trustees for

contribution, indemnification, and breach of fiduciary duty.  In those counterclaims Nationwide

asserts that, to the extent it is found to have violated ERISA, it is entitled to seek contribution or

indemnification from the Trustees and to seek damages, on behalf of the Plans, for any breach of fiduciary duty by the Trustees. Nationwide contends that it should be permitted to seek contribution or indemnification from the Trustees because the Trustees had the ultimate responsibility for purchasing annuity contracts and making changes to investment options, knew of the revenue sharing payments, and received cost-savings benefits from those revenue sharing payments. Nationwide also alleges that the Trustees breached their fiduciary duties to the plans by ratifying or being recklessly indifferent to those revenue sharing payments and therefore, if Nationwide is found to be a fiduciary of the Plans, it may seek damages from the Trustees, on behalf of the Plans.

## II.     Discussion

The Trustees move to dismiss all of Nationwide's counterclaims, arguing that: (1) co-fiduciaries cannot bring claims of contribution or indemnification against one another; (2) that even if they may bring such claims, Nationwide is precluded from seeking contribution from the Trustees as a matter of law because (a) Nationwide was the sole beneficiary of the breach of fiduciary duties or (b) it was at least substantially at fault for the breach; and (3) that Nationwide lacks standing to bring a breach of fiduciary duty claim. Nationwide defends its ability to bring the counterclaims against the Trustees, arguing that ERISA permits it to seek contribution and indemnification from its co-fiduciaries, that it is a disputed question of fact whether it was the sole beneficiary of the breach of trust and/or was substantially at fault for the breach, and that as a fiduciary of the Plans, it has standing to assert breach of fiduciary duty claim against other fiduciaries on behalf of the Plans.

-4-

A.    Standard of Review

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. Spalding*, 467 U.S. 69, 73 (1984). The function of a motion to dismiss is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the counterclaim as true, draw all reasonable inferences in favor of the counterclaim-plaintiffs, and decide whether it is plausible that the counterclaim-plaintiffs have a valid claim for relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) *cert. granted*, *Ashcroft v. Iqbal*, ___ S. Ct. ___, 2008 WL 336310 (2008); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

B.    Is There a Right to Seek Contribution and Indemnification From Co-Fiduciaries?

The Trustees first argue that the Second Circuit's holding in *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 18 (2d Cir. 1991), that ERISA co-fiduciaries can bring claims for contribution and indemnification against one another, did not survive the Supreme Court's ruling in *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993). Nationwide counters that *Mertens*' proscription against new judicially-created civil remedies under ERISA does not apply to claims for contribution or indemnification and that *Chemung* remains good law in the Second Circuit.

In *Chemung*, the Second Circuit squarely addressed the question whether ERISA permits claims for contribution or indemnity against co-fiduciaries. 939 F.2d at 15. The defendant, a former fiduciary to the subject ERISA plan, counterclaimed against the plaintiffs – the plan's current fiduciaries – seeking contribution or indemnity for their role in the breach of trust. *Id.* at 14. Although Congress did not expressly allow for claims of contribution or indemnity among co-fiduciaries, the Second Circuit held "that even a breaching fiduciary should be entitled to the protection of contribution that has been traditionally granted fiduciary defendants under the equitable provisions of trust law." *Id.* at 16. The court reasoned that it was proper to recognize claims for contribution or indemnification among co-fiduciaries, even in the absence of express Congressional authorization, because ERISA is completely devoid of provisions that govern how to allocate joint liabilities among co-fiduciaries. *Id.* at 18. Rejecting the notion that Congress's silence meant that such relief is barred, the court used its "power to fashion a federal common law under ERISA" to recognize claims for contribution or indemnity. *Id.* at 16, 18. The Second Circuit rejected the suggestion that it was creating a new right of action under ERISA, noting that a counterclaim for contribution or indemnification is best characterized as "a procedural device for equitably distributing responsibility for plaintiff's losses proportionally among those responsible for the losses." *Id.* at 15. So long as the plaintiff's recovery is unaffected by the defendant's right of contribution from other co-fiduciaries, it makes no difference from which jointly and severally liable defendant that recovery comes. *Id.* at 15-16.

In *Mertens* the Supreme Court considered whether ERISA authorized suits for money damages against a non-fiduciary that knowingly participated in the fiduciaries' breach of trust. 508 U.S. at 251. The Court concluded that Congress's authorization for the courts to "develop a

-6-

federal common law under ERISA" did not extend to the creation of new rights of action.  *Id.* at

259 (internal quotation omitted).  In *Gerosa v. Savasta & Co.*, 329 F.3d 317, 322-23 (2d Cir.

2003), the Second Circuit recognized that *Mertens* squarely overruled its earlier holding in

*Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 281 (2d Cir. 1992), which held that

ERISA permitted implied claims for money damages against a non-fiduciary third-party that had

participated in the fiduciary's breach of trust.  Examining the reasoning of *Mertens*, the *Gerosa*

court noted that "the Court emphasized ERISA's comprehensiveness, as well as the clear text of

the ERISA civil remedies provisions, which in combination it argued provided 'strong evidence

that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate

expressly.'"  329 F.3d at 322 (quoting *Mertens*, 508 U.S. at 254).  The *Gerosa* court concluded

that the plaintiff-trustees were limited to seeking restitution against the non-fiduciary, the only

recognized equitable cause of action against a non-fiduciary under ERISA.  *Id.* at 321 ("With

regard to non-fiduciary defendants, we have said that the only conceivable equitable claim [under

ERISA] for cash money lies under the antique equitable remedy of restitution.") (internal

quotation omitted).

        The Second Circuit concluded that it was "no longer free to fill in unwritten gaps in

ERISA's civil remedies" because "the Supreme Court has instructed that it is not for [the courts]

to decide the best ERISA remedial scheme."  *Id.* at 322-23.  Significantly, however, the court

limited its holding to ERISA's civil remedial provisions, noting that:

>        [i]n other respects we continue to carry out Congress's intent that we develop
>        a federal common law of ERISA based on principles developed in evolution
>        of the law of trusts.  Nor do we mean to say that common-law principles are
>        never relevant to questions involving remedies.  We hold only that the limited
>        text of ERISA's civil remedies is inconsistent with judicial discovery of new

liabilities.

*Id.* at 323 n.6 (internal citations and quotations omitted).

Since *Mertens*, the Second Circuit has continued to recognize the implied right of co-fiduciaries to seek claims of contribution and indemnity. *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240-41 (2d Cir. 2002). Although, as the Trustees point out, that decision was rendered prior to *Gerosa*'s explicit consideration of the effect of *Mertens* on a court's ability to fashion new civil remedies, neither *Gerosa* nor *Mertens* controls the issue presented here. First, there is the obvious distinction that *Mertens, Gerosa,* and *Diduck* all dealt with plaintiffs' remedies against third-party non-fiduciaries who participated in the underlying breach, not a fiduciary's rights against his fellow fiduciaries for a breach of trust. Indeed, several district courts within the Second Circuit that have addressed the latter issue, have continued to follow *Chemung*'s holding since both *Mertens* and *Gerosa*. *See, e.g., Agway, Inc. Employees' 401(k) Thrift Investment Plan v. Magnuson*, 409 F. Supp. 2d 136, 143 n.6 (N.D.N.Y. 2005) (noting co-fiduciaries have right to seek contribution and indemnification in an ERISA action); *In re Worldcom, Inc. ERISA Litigation*, 339 F. Supp. 2d 561, 568 (S.D.N.Y. 2004) (same); *Rubin v. Valicenti Advisory Servs., Inc.* 326 F. Supp. 2d 427, 428-29 (W.D.N.Y. 2004) (same).

Second, the right to seek contribution and indemnification is not an additional right of action; it is a procedural device, implicit in the common law of trusts, for fairly distributing costs among all culpable parties regardless of whom the plaintiff chooses to sue directly for the breach of trust. ERISA does not address the issue of how to divide the responsibility for costs among all liable parties. Therefore, recognizing a right to contribution or indemnity is not creating additional remedies where Congress has already spoken, which *Mertens* and subsequent Supreme

Court decisions have prohibited.  It is instead merely using the principles of the common law of trusts to develop a federal common law of ERISA, which the *Gerosa* court reiterated remained a legitimate option for courts interpreting claims pursuant to ERISA.  329 F.3d at 323 n.6.  To prohibit fiduciaries from seeking contribution or indemnification from jointly and severally liable co-fiduciaries would permit total liability to fall on whomever the plaintiff elected to sue.  It would also promote a "race to the courthouse" mentality among fiduciaries seeking to recover for fiduciary breaches on behalf of the Plans.  Ostensibly, under the Trustees' interpretation of the law, a more culpable fiduciary could bring suit against only minor fiduciaries, thus shielding itself from liability for its own breach of fiduciary duty.

Contribution or indemnification claims do not represent new judicially-created liabilities, but are instead equitable devices well-rooted in the common law of trusts as a way to fairly "distribut[e] responsibility for plaintiff's losses proportionally among those responsible for the losses, and without regard to which particular persons plaintiff chose to sue in the first instance." *Chemung*, 939 F.2d at 15-16.  Recognizing a new right to seek consequential damages against a third-party non-fiduciary is fundamentally different from allowing a joint tortfeasor to seek contribution from other co-fiduciaries that have also violated their fiduciary duties.  A plaintiff in the latter scenario is not increasing the total recovery, just shifting the source of that recovery according to well-established equitable principles of trust law.  Contribution and indemnification are merely allocation mechanisms and do not represent new causes of action for plaintiffs under ERISA's civil remedy provision.

The Trustees argue that this court should adopt the Eighth Circuit's reasoning in *Travelers Casualty & Surety Co. of America v. IADA Services, Inc.*, 497 F.3d 862, 865-66 (8th

Cir. 2007), which held that, in the absence of express Congressional consent, ERISA does not

provide a right to contribution from a co-fiduciary.  The *Travelers Casualty* court adopted the

reasoning of the dissent in *Chemung* and analogized the Supreme Court's holdings in *Northwest*

*Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77 (1981) (no right of contribution among

Equal Pay Act violators), and *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630

(1981) (no right of contribution among antitrust violators), to the ERISA context.  *Travelers*

*Casualty*, 497 F.3d at 864-66.  Noting that the Supreme Court rejected the right to contribution

among co-responsible parties under the federal statutes at issue in *Northwest Airlines* and *Texas*

*Industries*, the Eighth Circuit concluded that, given ERISA's comprehensive statutory structure,

Congress's failure to include certain remedies should not be considered oversight but rather an

affirmative rejection of those remedies under the statute.  *Id.* at 865-66.

        The majority in *Chemung* expressly rejected drawing an analogy between ERISA and the

Equal Pay Act, Title VII, and the antitrust statutes discussed in *Northwest Airlines* and *Texas*

*Industries*, noting that, unlike the legislative history of those statutes, "both the legislative history

and [ERISA] itself clearly contemplate the development of a federal common law."  939 F.2d at

17.  Therefore, the Supreme Court's prohibition on the right of contribution among Equal Pay

Act and antitrust violators does not apply similarly to the ERISA context.

        Not only am I bound to follow the law of the Second Circuit, which permits claims for

contribution and indemnification among co-fiduciaries, but I also find the Eighth Circuit's

reasoning in *Travelers Casualty* to be unpersuasive.  First, the court analogizes ERISA to other

federal statutes without considering Congress's explicit guidance that the courts may consider

common law principles of trust law when interpreting and applying ERISA.  Title VII and the

antitrust statutes do not have the same type of foundation in the common law that ERISA has; therefore, the Supreme Court understandably resisted carrying over broad common law remedies into discrete areas of Congressionally-created federal law.  Second, as discussed above, I do not agree that contribution or indemnification among co-fiduciaries can be fairly described as a new "right of action" under ERISA and I agree with the *Chemung* decision that described such claims as procedural devices for apportioning costs among responsible parties.  The right to contribution or indemnification among joint tortfeasors does not affect a plaintiff's ultimate right to, or amount of, recovery.  Accordingly, I conclude that Nationwide is not precluded as a matter of law from seeking contribution and indemnification from the Trustees, and deny the motion to dismiss to the extent the Trustees argue otherwise.

      C.    <u>Could Nationwide's Counterclaims for Contribution or Indemnification Apply to Disgorgement or Restitution Award?</u>

Having determined that Nationwide is not precluded as a matter of law from asserting contribution or indemnification claims against the Trustees, I next consider whether it can maintain those claims with respect to an award of disgorgement or restitution of the revenue sharing payments.  The Trustees argue that Nationwide cannot maintain contribution or indemnity claims against the Trustees for a damages award that recovers the revenue sharing payments from Nationwide on behalf of the Plans, whether that award is for "disgorgement" or "restitution," because Nationwide was the sole beneficiary of those payments and the common law of trusts prohibits a fiduciary who was the sole direct beneficiary of the breach from seeking contribution from co-fiduciaries.  Nationwide counters that it should be permitted to press its counterclaims even against a disgorgement or restitution award arising out of the revenue sharing

payments because the Trustees breached their fiduciary duties by failing to stop those payments

and because they received a variety of indirect benefits, including administrative cost savings.

The Trustees rely primarily on the Restatement (Second) of Trusts § 258 (1959) to argue

that Nationwide is precluded as a matter of law from seeking contribution because only

Nationwide received a benefit – the revenue sharing payments – from the breach of trust.

Section 258 states in relevant part:

> (1) Except as stated in Subsection 2, where two trustees are liable to the
> beneficiary for a breach of trust, each of them is entitled to contribution from
> the other, except that
>
>> (a) if one of them is substantially more at fault than the other, he is not
>> entitled to contribution from the other but the other is entitled to
>> indemnity from him; or
>>
>> (b) if one of them receives a benefit from the breach of trust, the other is
>> entitled to indemnity from him to the extent of the benefit; and for any
>> further liability, if neither is more at fault than the other, each is entitled
>> to contribution.

The Trustees contend that Nationwide is "substantially more at fault," having received the sole

benefit of the revenue sharing payments, and thus, is not entitled to seek contribution from them.

The Trustees rely further on section 258, comment f, illustration 5 to exemplify their point.

Illustration 5 states:

> A and B are trustees for C.  B improperly delegates the administration of the
> trust to A.  A misappropriates $1000 of the trust property.  If A makes good
> the loss he is not entitled to recover anything from B.  If B makes good the
> loss he is entitled to recover $1000 from A.[1]

---

[1] This principle derives from the common law of trusts, developed over many decades in
the English courts.  *See, e.g., Thompson v. Finch*, (1856) 52 Eng. Rep. 1130.  In *Thompson* there
were two trustees: one who misappropriated trust funds and one that negligently did not discover
or know about the breach.  *Id.* at 1133.  The court required the second trustee to make good the
loss on the basis of his fiduciary duties to the beneficiary, but permitted him to seek

-12-

In other words, regardless of the fact that both fiduciaries breached their fiduciary duties, only the one that actually misappropriated the funds is liable to the beneficiary for the loss of those funds. The Trustees contend that they are "B" in the above scenario and that Nationwide, as "A," is not permitted to recover any contribution for an award of damages arising out of the revenue sharing payments, which inured to the sole benefit of Nationwide. Nationwide does not dispute that it was the only entity to receive any portion of the revenue sharing payments from the mutual funds; it has not alleged the Trustees or the Plans received a portion of those payments.

Nationwide argues that Illustration 5 is inapposite because the revenue sharing payments were never part of the Plans' property, that the money for the revenue sharing payments came from the mutual funds, not from the Plans. Therefore, because the revenue sharing payments cannot be traced directly to any Plan assets, it contends that the Trustees are precluded from seeking a remedy of disgorgement, insisting that the remedy they are actually seeking is legal restitution. However, Nationwide has failed to explain how the difference in label – disgorgement versus restitution – makes a difference in the application of the above trusts principle. Its primary focus in the supplemental briefing has been to attack the merits of the Trustees' ultimate claim. Nationwide disputes that the Trustees have a legal or equitable basis on which to seek the value of the revenue sharing payments, for the benefit of the Plans, which Nationwide maintains were never Plan assets. At this juncture, I am not deciding whether the Trustees' legal theory of the case is meritorious, only whether Nationwide has a cognizable basis

---

indemnification for the full amount from the first trustee. *Id.* at 1134. Thus, though he was liable to the beneficiary, the second trustee was nevertheless entitled to full indemnification from the first trustee because he had derived no personal benefit from the breach. Presumably, by logical extension, had the first trustee made good the loss to the beneficiary, he would not have been permitted to seek contribution from the second trustee.

on which it could assert counterclaims against the Trustees for contribution or indemnification against a hypothetical damages award that required it to disgorge or pay restitution for the value of the revenue sharing payments.

Nationwide also contends that it should be permitted to seek contribution from the Trustees in the event damages are awarded. Nationwide has alleged the Trustees committed a breach of trust and that they also received the benefit of certain services and lowered costs as a result of Nationwide's receipt of the revenue sharing payments and, therefore, are liable for their role in the breach of fiduciary duties. Specifically, Nationwide alleges that "[t]he Trustees also benefited from any payments received by Nationwide Life or its affiliates from the funds or their affiliated entities." Answer ¶¶ 23, 30.[2] Nationwide's allegations do not plausibly state a claim that would suggest that the Trustees could have benefitted personally in any way from the revenue sharing payments. *Twombly*, 127 S. Ct. at 1969; *Iqbal,* 490 F.3d at 157-58. First, Nationwide has not alleged that the Trustees received any direct benefit – such as a percentage kickback – from the revenue sharing payments. Nor is there any allegation that the Trustees were personally responsible to pay for the services rendered by Nationwide. The Plans may have benefitted, if they received services, but the fact that the Trustees may have been responsible to arrange for provision of those services does not give rise to a plausible claim that they individually or personally saved any money as a result of Nationwide's services. At most, Nationwide argues that the Trustees were indirect beneficiaries of the revenue sharing payments

---

[2] Paragraph 30 is almost identical to paragraph 23 and states in full, "[t]he Trustees benefited from the services that Nationwide Life and/or its affiliated entities performed in return for any payments, and from the payments received by Nationwide Life and/or its affiliated entities."

-14-

– that they received time savings and administrative cost benefits because the revenue sharing payments covered the costs of administrative duties that otherwise would have been the Trustees' duty.

In the absence of any allegation that the Trustees directly benefitted in some way from the revenue sharing payments, even when taken in the light most favorable to Nationwide as the non-moving party, it is implausible that any entity other than Nationwide received direct monetary value from the mutual funds' revenue sharing payments. Therefore, under the principle illustrated in section 258, Nationwide would have no right, as a matter of law, to seek contribution or indemnification for a damages award arising out of those revenue sharing payments. To allow it to seek contribution for those damages would permit it to retain some of the benefit of its breach, which is contrary to the principles of the law of trusts. *See* Restatement (Second) of Trusts § 258 cmt. d ("[T]he loss should ultimately be borne by the trustee who is more at fault."); *see also Chemung*, 939 F.2d at 16 (citing section 258 as incorporating an "integral and universally recognized part of trust doctrine"). Nationwide has simply not demonstrated why the common law of trusts principle, outlined in section 258, is inapplicable to this case.

To the extent that Nationwide's counterclaims are based on a theory that it provided services and that it would be unfair to require Nationwide to pay back the full amount of the revenue sharing payments, they fail. First, the Trustees are only asking for the difference between the payments and the value of any services rendered in exchange for those payments. Fifth Amended Complaint, ¶ 61. Nationwide has failed to demonstrate how accounting for the fair market value of those administrative services would be an insufficient way to account for the

benefits the Trustees and Plans allegedly received as a result of the revenue sharing plans. Because the claim accounts for the fair market value of those alleged services, there is no excess against which Nationwide can seek contribution or indemnification and therefore those counterclaims must be dismissed.

It is worth noting that this is an unusual case. The alleged harm to the Plans is limited to payments received by Nationwide. Complete compensation can be achieved by requiring Nationwide to repay the revenue sharing payments, less any value provided. The cases cited by Nationwide about the importance of contribution/indemnification among fiduciaries have little application to this case. There is no dissipation of Plan assets to recoup, no market losses from bad investments, for example, that would have to be made up from the assets of the fiduciaries. Because complete relief can be afforded by requiring the fiduciary that received the payments to return them, principles of sharing the "loss" simply do not apply.

Because the Trustees are only seeking disgorgement or restitution in the amount of the revenue sharing payments, less the fair market value of the services, Nationwide is precluded from seeking contribution or indemnification from the Trustees for that award. Therefore, the Trustees' motion to dismiss counterclaims one and two is granted.

D.     Can Nationwide Bring a Breach of Fiduciary Counterclaim Against the Trustees On Behalf of the Plans?

Nationwide argues that, if it is deemed to be a Plan fiduciary, it therefore has the right to bring a claim for breach of fiduciary duty against the Trustees on behalf of the Plan. It alleges that the Trustees breached their fiduciary duties to the Plans because they "knew of, agreed to, approved of, ratified, approved of [sic], were recklessly indifferent to, and/or failed to monitor

-16-

and assure the reasonableness of" Nationwide's conduct.  Answer, ¶ 37.  The Trustees contend

that Nationwide has no standing to pursue a breach of fiduciary duty claim against them.  The

Trustees argue first, that Nationwide is not a fiduciary for purposes of bringing a civil action

under ERISA, and second, that it cannot simultaneously pursue claims on behalf of the Plans and

for contribution.

The Trustees first argue that Nationwide must seek relief on behalf of the Plans, which

they claim it has not done.  However, Nationwide explicitly states in counterclaim three that "to

the extent that [it] is held to be a fiduciary to the Plans pursuant to ERISA, [it] has standing to,

and hereby does, bring a civil action *on behalf of the Plans* pursuant to ERISA § 502(a)(2), 29

U.S.C. § 1132(a)(2)."  Answer, ¶ 36 (emphasis added).  As a fiduciary, it would presumably have

the right to bring a claim for a breach of fiduciary duty against other breaching fiduciaries under

section 1132(a)(2), which states that "[a] civil action may be brought . . . by a . . . fiduciary for

appropriate relief under [29 U.S.C. § 1109]," which covers liability for breach of fiduciary duty.

The Trustees next contend that Nationwide is not a "general-purpose Plan fiduciary," and

therefore cannot generally initiate lawsuits on behalf of the Plans.  The Trustees claim that

Nationwide only had fiduciary duties with respect to the accumulation units.  In addition, the

Trustees argue that it is "incongruous" for Nationwide to assert both claims for contribution *and*

breach of fiduciary duty, citing to a District of Massachusetts decision in *Duncan v. Santaniello*,

900 F. Supp. 547, 556 (D. Mass. 1995).  In *Duncan*, however, the court's statement that

"[s]tanding to pursue claims on behalf of the plan and the right to seek contribution are mutually

exclusive," was referring to the tests for standing to bring the two different claims.  In that case,

although a former fiduciary no longer had standing to bring a breach of fiduciary duty on behalf

of the Plan, he could seek contribution against other co-fiduciaries for the breach that occurred

during his tenure as fiduciary.  *Id.*  The court did not mean that a party is altogether precluded

from seeking to bring both breach of fiduciary duty and contribution claims, only that the test for

the standing to bring each claim is different.

 If found to be a fiduciary of the Plans, Nationwide would have standing to pursue a claim

for breach of fiduciary duty on behalf of the Plans against other fiduciaries, here specifically, the

Trustees.  Although the defendants would have standing to bring a breach of fiduciary duty

counterclaim to the extent that they sue on behalf of the Plans for harm arising out of the revenue

sharing payments, Nationwide's third counterclaim fails to state a claim for relief.  The third

counterclaim does not allege any losses or harm arising from the Trustees' alleged breach, an

essential element of the cause of action.  *See* 29 U.S.C. § 1109(a) ("Any person who is a

fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties

imposed upon fiduciaries by this title shall be personally liable to make good to such plan *any*

*losses to the plan resulting from each such breach* . . . .") (emphasis added); *Friend v. Sanwa*

*Bank Cal.*, 35 F.3d 466, 469 (9th Cir. 1994) ("ERISA holds a trustee liable for a breach of

fiduciary duty only to the extent that losses to the plan result from the breach."); *Proujansky v.*

*Blau*, 2000 U.S. Dist. LEXIS 786, at *27-28 (S.D.N.Y. 2000) (holding that to raise a claim for

breach of fiduciary duty pursuant to 29 U.S.C. § 1109(a) a plaintiff must demonstrate a loss to

the ERISA-governed plan).

Nationwide alleges that "the Trustees are liable to the extent the Plans or their

participants suffered any harm or losses or were deprived of any assets to which they were

entitled."  Answer, ¶ 39.  It is not sufficient, however, to state a claim by conjecturing that "to the

-18-

extent" there was harm to the Plans, the Trustees are liable.  Put simply, to survive a motion to dismiss, a plausible claim for breach of fiduciary duty must allege some type of actual harm or loss to the Plans.  *Iqbal*, 490 F.3d at 157-58.  Nationwide cannot plead a plausible claim for breach of fiduciary claim where, even taking the allegations of the counterclaim as true, no loss to the Plans may have occurred.  Therefore, Nationwide's third counterclaim is dismissed without prejudice to repleading that claim within thirty days; any renewed counterclaim must allege the losses or harm to the Plans alleged to have resulted from the Trustees' breach of fiduciary duties.

**III.  Conclusion**

For the foregoing reasons, the Trustees' motion to dismiss Nationwide's counterclaims (**doc. # 293**) is GRANTED with respect to counterclaims one and two and GRANTED without prejudice to Nationwide refiling an amended counterclaim within 30 days with respect to counterclaim three.

It is so ordered.

Dated at Bridgeport, Connecticut, this 11th day of August 2008.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge