## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing, ALAN GOUSE, as trustee of Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, EDWARD KAPLAN, as trustee of the Hartford Roofing 401(k) Profit Sharing Plan and the Hartford South, L.L.C. 401(k) Profit Sharing Plan, and DENNIS FERDON, as trustee of the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan, : : : : : : : : : : : : : : : : | CIVIL ACTION NO.:<br><br>3:01CV1552 (SRU) |
| PLAINTIFFS, : | |
| v. : | |
| NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO., : : : | |
| DEFENDANTS. | |

## DEFENDANTS' ANSWER TO
## PLAINTIFFS' FIFTH AMENDED COMPLAINT
## AND SECOND AMENDED COUNTERCLAIMS

Defendants Nationwide Financial Services, Inc. and Nationwide Life Insurance Company (respectively, "NFS" and "Nationwide Life," or "Defendants" ), by their undersigned counsel, hereby answer Plaintiffs' Fifth Amended Class Action Complaint, dated March 21, 2006 (the "Complaint"), and assert affirmative defenses and second amended counterclaims as follows:

## I.    ANSWER

1.    Paragraph 1 purports to describe Plaintiffs' Complaint and therefore no response from Defendants is required.  To the extent that a response from Defendants is required, Defendants deny the allegations of paragraph 1.

2.    Defendants deny the allegations of paragraph 2.

3.    Paragraph 3 purports to describe Plaintiffs' Complaint, and therefore no response from Defendants is required.  To the extent that a response from Defendants is required, Defendants deny the allegations of paragraph 3.

4.    Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 4 and they are otherwise denied.

5.    Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 5 and they are otherwise denied.

6.    Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 6 and they are otherwise denied.

7.    Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 7 and they are otherwise denied.

8.    Defendants lack knowledge and information sufficient to form an opinion as to the truth of the allegations in paragraph 8 and they are otherwise denied.

9.    Defendants admit the allegations of paragraph 9.

10.    Defendants admit the allegations in the first sentence of paragraph 10 and deny the remaining allegations of paragraph 10.

11.    The first sentence of paragraph 11 purports to describe Plaintiffs' Complaint, and therefore no response from Defendants is required.  To the extent that a response from

Defendants is required, Defendants deny the allegations of the first sentence of paragraph 11.

With respect to the allegations of the second sentence of paragraph 11, Defendants deny any

implication that they have acted as, act as, or are liable as, fiduciaries pursuant to the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 <u>et seq.</u> as alleged in

Plaintiffs' Complaint. Defendants admit the remaining allegations of the second sentence of

paragraph 11.

12.    Defendants admit the allegations of paragraph 12, except that Defendants deny

that they committed any breaches, and Defendants further deny any implication that they have

acted as, act as, or are liable as, a fiduciaries pursuant to ERISA, 29 U.S.C. § 1001 <u>et seq.</u>

13.    With respect to the allegations of the first two sentences of paragraph 13,

Defendants lack knowledge and information sufficient to form an opinion as to their truth, and

they are otherwise denied. Defendants deny that there is any "Class Period." Defendants deny

the allegations in the third sentence of paragraph 13.

14.    With respect to the allegations of the first two sentences of paragraph 14,

Defendants lack knowledge and information sufficient to form an opinion as to their truth, and

they are otherwise denied. Defendants deny that there is any "Class Period." Defendants deny

the allegations in the third sentence of paragraph 14.

15.    With respect to the allegations of the first two sentences of paragraph 15,

Defendants lack knowledge and information sufficient to form an opinion as to their truth, and

they are otherwise denied. Defendants deny that there is any "Class Period." Defendants deny

the allegations in the third sentence of paragraph 15.

16.    With respect to the allegations of the first two sentences of paragraph 16,

Defendants lack knowledge and information sufficient to form an opinion as to their truth, and

they are otherwise denied.  Defendants deny that there is any "Class Period."  Defendants deny the allegations in the third sentence of paragraph 16.

17.     With respect to the allegations of the first two sentences of paragraph 17, Defendants lack knowledge and information sufficient to form an opinion as to their truth, and they are otherwise denied.  Defendants deny that there is any "Class Period."  Defendants deny the allegations in the third sentence of paragraph 17.

18.     Defendants admit that approximately 24,230 qualified ERISA retirement plans and/or participants have purchased Nationwide Life contracts, admit that a majority of those plans continue to hold Nationwide Life contracts, and deny the remaining allegations of paragraph 18, some of which purport to interpret the written terms of the contracts, which speak for themselves.  Defendants deny that there is a "Class."

19.     The allegations in paragraph 19 pertain to alleged conduct of third parties and Defendants lack knowledge and information sufficient to form an opinion as to their truth, and they are otherwise denied.  Defendants deny that there is a "Class."

20.     Defendants deny the allegations of paragraph 20.

21.     The allegations of paragraph 21 purport to interpret the written terms of the contracts, which speak for themselves, and are otherwise denied.

22.     The allegations of paragraph 22 purport to interpret the written terms of the contracts, which speak for themselves, and are otherwise denied.

23.     The allegations of paragraph 23 purport to interpret the written terms of the contracts, which speak for themselves, and are otherwise denied.

24.     The allegations of paragraph 24 purport to interpret the written terms of the contracts, which speak for themselves, and are otherwise denied.

25.     The allegations of paragraph 25 purport to interpret the written terms of the contracts, which speak for themselves, and are otherwise denied.

26.     Defendants admit the allegations of the first sentence of paragraph 26, except the characterization "technically" to which Nationwide is not required to respond, admit the allegations of the fourth sentence, and deny the remaining allegations of paragraph 26.

27.     Defendants admit the allegations of the first sentence of paragraph 27 and deny the remaining sentences of paragraph 27.

28.     Defendants deny the allegations in paragraph 28.

29.     Defendants deny the first sentence of paragraph 29 on the grounds that it is a quotation to which Defendants need not respond.  Defendants admit the allegations in the second and third sentences of paragraph 29.

30.     Defendants admit that mutual funds charge fees to investors in part to cover costs and that, when funds account for their expenses, net asset value goes down.  Defendants deny the remaining allegations of paragraph 30.

31.     Defendants deny the allegations of the first and second sentences of paragraph 31. With respect to the allegations of the third sentence of paragraph 31, Defendants admit that several funds at varying times were managed by Defendants' affiliates, and deny the remaining allegations of the third sentence of paragraph 31.

32.     The allegations of the first sentence of paragraph 32 pertain to the alleged conduct of a third party, and Defendants lack sufficient knowledge and information to form an opinion as to their truth and they are otherwise denied.  Defendants deny the allegation that plan assets were taken by the mutual funds.  Defendants deny the allegations of the second sentence of paragraph 32.

33.     Defendants deny the allegations in paragraph 33.

34.     Defendants deny the allegations in paragraph 34.

35.     Defendants deny the allegations in paragraph 35.

36.     Defendants deny the allegations in paragraph 36, some of which purport to interpret the terms of written documents, which speak for themselves.

37.     Defendants deny the allegations in paragraph 37.

38.     Defendants admit obtaining written amendments permitting changes to group annuity contracts and that the amendments were accompanied by explanatory correspondence, and deny the remaining allegations of paragraph 38, some of which purport to interpret the terms of written documents, which speak for themselves.

39.     Defendants deny the allegations of paragraph 39.

40.     Defendants deny the allegations of paragraph 40.

41.     Defendants admit that Nationwide Life and other entities received payments pursuant to contracts with mutual funds and fund affiliates and deny the remaining allegations of paragraph 41, some of which purport to interpret the terms of written documents, which speak for themselves.

42.     Defendants deny the allegations of paragraph 42.

43.     Defendants deny the allegations of paragraph 43.

44.     Defendants deny the allegations of paragraph 44.

45.     Defendants deny the allegations of paragraph 45, except that Defendants admit that Nationwide Life is a wholly owned subsidiary of NFS.

46.     The allegations of paragraph 46 purport to describe Plaintiffs' Complaint, and therefore no response from Defendants is required.  To the extent that a response from Defendants is required, Defendants deny the allegations of paragraph 46.

47.     Defendants deny the allegations contained in paragraph 47.

48.     With respect to the allegations of the first sentence of paragraph 48, Defendants admit that approximately 24,230 qualified ERISA plans and/or participants have purchased Nationwide Life contracts, and Defendants deny the remaining allegations of the first sentence of paragraph 48.  Defendants deny the allegations of the second sentence of paragraph 48.

49.     Defendants deny the allegations of paragraph 49.

50.     Defendants deny the allegations of paragraph 50.

51.     Defendants deny the allegations of paragraph 51.

52.     Defendants deny the allegations of paragraph 52.

53.     Defendants deny the allegations of paragraph 53.

54.     Defendants deny the allegations of paragraph 54.

55.     Defendants deny the allegations of paragraph 55.

56.     Defendants deny the allegations of paragraph 56.

57.     Defendants deny the allegations of paragraph 57.

58.     Defendants deny the allegations of paragraph 58.

59.     Defendants deny the allegations of paragraph 59.

60.     The allegations of paragraph 60 purport to describe Plaintiffs' Complaint and therefore no response from Defendants is required.  To the extent that a response from Defendants is required, Defendants deny the allegations of paragraph 60.

61.     Defendants deny the allegations of paragraph 61.

62.     The allegations of paragraph 62 purport to state a request for action by the Court, and therefore no response from Defendants is required.  To the extent that a response from Defendants is required, Defendants deny the allegations of paragraph 62.

63.     Defendants deny the allegations of paragraph 63.

64.     Defendants deny the allegations of paragraph 64.

65.     The allegations of paragraph 65 purport to describe Plaintiffs' Complaint and therefore no response from Defendants is required.  To the extent that a response from Defendants is required, Defendants deny the allegations of paragraph 65.

## II.   AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint and each of the claims asserted therein fail to state a claim under the ERISA, 29 U.S.C. § 1001 et seq, upon which relief may be granted.

### Second Affirmative Defense

The Complaint fails to state a claim under the "federal common law" developed under ERISA upon which relief may be granted.

### Third Affirmative Defense

To the extent that Plaintiffs' action is premised on any alleged misrepresentation, Plaintiffs have failed to allege said misrepresentation with the requisite particularity.

### Fourth Affirmative Defense

Defendants deny that any misrepresentations were made to Plaintiffs.  However, to the extent that the Complaint is premised on misrepresentations made to Plaintiffs, said alleged misrepresentations were allegedly made by a third party or third parties for whom Defendants are not legally responsible.

### Fifth Affirmative Defense

To the extent that Plaintiffs' action is premised on any alleged misrepresentation, the contract documents identified in the Complaint are fundamentally inconsistent with said alleged misrepresentations, and therefore Plaintiffs could not have relied on any such alleged misrepresentations.

### Sixth Affirmative Defense

Defendants allege, upon information and belief, that the Plaintiffs' and the putative class members' alleged injuries and damages were proximately caused, in whole or in part, by their own conduct, and/or by the conduct of others over which Defendants had and have no control and for whose conduct Defendants bear no responsibility, and that Plaintiffs and the putative class are therefore barred from recovery against Nationwide.

### Seventh Affirmative Defense

Plaintiffs and the putative class members voluntarily assumed the risk of injury that they allegedly sustained.

### Eighth Affirmative Defense

Any injuries that Plaintiffs and the putative class members allegedly sustained occurred as a direct result of their failure to exercise reasonable prudence and care, and therefore their alleged injuries were caused, in whole or in part, or were contributed to, by their own conduct, and not by any alleged breach of fiduciary duty of Defendants.

### Ninth Affirmative Defense

To the extent that the claims asserted in the Complaint were or are untimely brought, the claims are barred, in whole or in part, by the statute of limitations and laches.

### Tenth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of ratification.

### Eleventh Affirmative Defense

Plaintiffs' claims are barred by the doctrine of waiver.

### Twelfth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of estoppel.

### Thirteenth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of release.

### Fourteenth Affirmative Defense

Defendants allege upon information and belief that Plaintiffs and/or some or all of the putative class members have failed to mitigate, minimize or avoid any damages they allegedly sustained, and any recovery against Defendants must be reduced by that amount.

### Fifteenth Affirmative Defense

To the extent the Plaintiff plans have suffered any injuries or damages, they have failed to mitigate such injuries and damages.

### Sixteenth Affirmative Defense

To the extent that Plaintiffs have suffered any injuries or damages, Defendants did not proximately cause such injuries or damages.

### Seventeenth Affirmative Defense

Defendants allege, upon information and belief, that some or all of the claims of Plaintiffs and some or all of the putative class members are contractually barred.

**Eighteenth Affirmative Defense**

The Complaint and each of the claims therein purporting to state claims on behalf of a class should be dismissed as this action may not properly be maintained as a class action.

**Nineteenth Affirmative Defense**

Some or all of Plaintiffs lack standing to assert some or all of the claims asserted in the Complaint.

**Twentieth Affirmative Defense**

Plaintiffs fail to state a claim because Defendants' actions as alleged in the Complaint were authorized by the relevant government regulators and in accordance with applicable government regulations, and Plaintiffs' claims are barred by the doctrine of primary jurisdiction.

III.    **COUNTERCLAIMS**

1.    Defendants Nationwide Financial Services, Inc. and Nationwide Life Insurance Company ("NFS" and "Nationwide Life," respectively, or "Counterclaim Plaintiffs") counterclaim against the named Plaintiffs in this lawsuit: Peter Wiberg, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing Plan; Alan Gouse, as trustee of Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust; and Christopher Anderson, as trustee of the Anderson Law Firm, P.C. 401(k) Profit Sharing Plan and Trust, (collectively, the "Trustees" or "Counterclaim Defendants").

2.    In the Fifth Amended Complaint, the Trustees allege that Nationwide Life and NFS were ERISA fiduciaries of the foregoing Plans and are liable to the Plans under ERISA. In their Answer, Nationwide Life and NFS deny that they were Plan fiduciaries, are liable in any

way under ERISA to the Plans, and that the Plans or Plan participants suffered any harm or loss or were deprived of any monies to which they were entitled. In the alternative, Counterclaims One and Two herein are asserted solely in the event that Nationwide Life and NFS are adjudged to be liable under ERISA[1]; and Counterclaim Three is asserted solely in the event that Nationwide Life and NFS are adjudged to be fiduciaries to the Plans under ERISA, and the Plans prove that they have suffered any harm. The Counterclaims are without prejudice to the positions taken by Nationwide Life and NFS in this lawsuit.

3.      In the Fifth Amended Complaint, the Trustees purport to bring this action on behalf of a class. In their Answer and pleadings, Nationwide Life and NFS deny that this action may be maintained on a class basis. However, in the alternative, and solely in the event that this action is adjudged to include additional Plans with additional trustees, Nationwide Life and NFS reserve their right to include some or all of such trustees as Counterclaim Defendants. Nationwide Life and NFS further reserve their right to include any intervening or substituted new parties, or other current or former trustees of Plans whose Trustees are named Plaintiffs, as Counterclaim Defendants.

## The Parties

4.      According to the Fifth Amended Complaint, Nationwide Life is a foreign corporation that sold variable annuity contracts to the employee retirement plans (the "Plans") for which the Counterclaim Defendants serve as trustees.

5.      According to the Fifth Amended Complaint, Counterclaim Plaintiff NFS is the corporate parent of Nationwide Life.

---

[1]      The Court dismissed Counterclaims One and Two in its August 11, 2008 Ruling on Plaintiffs' Motion to Dismiss Counterclaims (Docket # 353). Nationwide Life and NFS respectfully re-plead Counterclaims One and Two here to preserve issues for appeal.

6.      According to the Fifth Amended Complaint, each of the Counterclaim Defendants was a trustee and fiduciary of a Plan.

### Jurisdiction and Venue

7.      This Court has subject matter jurisdiction over these Counterclaims under Sections 502(e)(1) and 502(f) of ERISA, 29 U.S.C. §§ 1132(e)(1) and 1132(f), and Rule 13(a) of the Federal Rules of Civil Procedure.

8.      The Counterclaim Defendants have consented to personal jurisdiction by virtue of commencing this action.

9.      Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the Counterclaim Defendants reside in and may be found in this District, the Plans are administered in this District, and the acts or omissions alleged herein took place in this District.

### Facts

10.     The Fifth Amended Complaint alleges that each of the Plans is a 401(k) plan under ERISA.

11.     The Fifth Amended Complaint alleges that the Plans, acting through their respective Trustees, purchased annuity contracts from Nationwide Life.

12.     One of the three Plans whose Trustees remain as named Plaintiffs purchased a "group" variable annuity contract.  That Plan is identified in the Fifth Amended Complaint as the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing Plan (the "Crown Plan"), and the trustee for that Plan is identified as Peter Wiberg.  Two of the three remaining Plans arranged for the purchase of "individual" variable annuity contracts.  Those Plans are identified in the Fifth Amended Complaint as the Anderson Law Firm, P.C. 401(k) Profit Sharing Plan and Trust (the "Anderson Plan") and the Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered

Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Seal Rehabilitation Center, Inc., Trust (the "Easter Seal Plan"), and their respective trustees have been identified as Christopher Anderson and Alan Gouse.

13.     Under the terms of these annuity contracts, Nationwide Life was obligated to provide certain benefits and services to, and entitled to receive certain fees and charges from, the Plans and/or the Plan participants. Those fees, charges, benefits and services were fully and accurately disclosed in the annuity contracts and other documents received by or available to the Trustees. The Trustees, Plans and/or the Plan participants received all the benefits and services provided for in the annuity contracts and other documents, and the Plans and/or Plan participants paid no more than the fees and charges that were set forth in the annuity contracts and other documents. Services that Nationwide Life provided under the annuity contracts were different from services that Nationwide performed for mutual funds and their affiliates.

14.     The benefits provided by the annuity contracts included certain investment options. The Fifth Amended Complaint alleges that the group and variable annuity contracts offered certain investment options in variable accounts that corresponded to certain mutual funds, and that were available for investment allocation by Plans and/or Plan participants. Each Trustee, acting exclusively, selected and/or approved the investment options to be offered to a particular Plan and its participants through the annuity contracts; monitored the performance of the investment options; and approved of any changes made to the investment options.

15.     The Trustees had the authority and responsibility to make the ultimate decisions as to which investment options were appropriate and available to Plan participants, exercised that authority, and never delegated that authority.

16.    The investment options selected and/or approved by the Trustees from those made available through the annuity contracts all included fees and charges assessed by the corresponding mutual funds in return for certain services.  Those fees, charges and services were fully and accurately described in the fund prospectuses received by or available to the Trustees. The Trustees, Plans and Plan participants received all the benefits and services provided for in the fund prospectuses, and the Plans and/or Plan participants paid no more than the fees and charges that were set forth in the fund prospectuses.

17.    Services related to these mutual funds were provided by the funds or affiliated entities, or by third parties who contracted with the funds or affiliated entities.  The discretion of the mutual funds and affiliated entities to contract with third parties for these services was fully and accurately described in the fund prospectuses received by or available to the Trustees.

18.    The Trustees allege in Paragraph 32 of the Fifth Amended Complaint that the "revenue sharing payments" that the mutual funds and their affiliates made to Nationwide Life or NFS harmed the Plans and/or Plan participants by resulting in increased fees because "[t]he mutual funds set the percentages of the Plans' assets they took as fees . . . so as to cover not only the fees they would have normally charged, but also the amount of the revenue sharing payments."  The Trustees allege in Paragraphs 37 through 39 of the Fifth Amended Complaint that the charges in Nationwide's individual annuity contracts were not reduced, and that the charges in Nationwide's group annuity contracts were inadequately reduced, after Nationwide Life or NFS began receiving "revenue sharing" payments from mutual funds and their affiliates. The Trustees allege in Paragraph 61 and elsewhere in the Fifth Amended Complaint that the "revenue sharing payments" harmed the Plans and/or Plan participants because the Plans and/or participants, and not the Counterclaim Plaintiffs, were entitled to receive those payments.

19.     In light of the disclosures made in the documents available to the Trustees, and the obligations imposed on them under their respective Plan documents, it is clear that the Trustees failed to perform their duties under the terms of the documents that governed their respective Plans by, *inter alia*, failing to inform themselves of the benefits and fees associated with Nationwide's variable annuity contracts and investment options available for selection in those annuity contracts, and by selecting, deleting or substituting investment options corresponding to mutual funds that made "revenue sharing" payments. For example, the document that governed the Crown Plan required Trustee Wiberg "to invest, manage, and control the Plan assets"; "to maintain records of receipts and disbursements"; to value the assets of the Crown Plan on an annual basis; to ensure that any fees or charges to the Crown Plan were reasonable in relation to the services that were provided; to prepare tax forms and other reports; and to ensure that money was not transferred out of the Crown Plan improperly, among other obligations.

20.     Trustee Wiberg has admitted that he never reviewed the documents governing the Crown Plan and that he was not knowledgeable about his responsibilities as trustee of the Crown Plan. He has admitted that he did not believe it was his responsibility to understand the terms of the document governing the Crown Plan. Despite his obligations as trustee set forth in the plan documents, he did not believe it was his responsibility to maintain records of receipts and disbursements of the Crown Plan; to value the plan assets on an annual basis; to ensure that money was not transferred out of the Plan improperly; or to ensure that any fees or charges to administer the Crown Plan's variable annuity contract were reasonable in relation to services provided. He has admitted he did not have fundamental knowledge about variable annuities, nor did he believe it was his responsibility to understand the Crown Plan's annuity contract with

Nationwide.  He has admitted that he did not monitor the investment options he selected to make

available to participants in the Crown Plan; any changes to the investment options; the fees

associated with those investment options; or the benefits Nationwide provided pursuant to its

annuity contract with the Crown Plan.  He has admitted that he did not review the Plan's annual

reports.  He has admitted that he did not consider any alternatives when he selected Nationwide

as the Crown Plan's variable annuity provider.  Trustee Wiberg received correspondence from

Nationwide in 1996 informing him that the asset management fees in the Crown Plan's annuity

contract would be reduced as a result of Nationwide's receipt of service payments from mutual

funds (or their affiliated advisors or administrators) and he signed the endorsement to the Crown

Plan annuity contract that reduced those fees.  He has admitted that he did not believe

Nationwide had failed to disclose anything.

21.     The documents that governed the Easter Seal Plan required Trustee Gouse "to

hold, invest, and administer [the Easter Seal Plan participants'] retirement fund in accordance

with the trust agreement"; "to "keep detailed and accurate records and accounts of all

investments, receipts, disbursements, and other transactions made with respect to the" Easter

Seal Plan; and to prepare an annual written report of the Easter Seal Plan's investments, receipts,

and disbursements, among other obligations.

22.     Trustee Gouse has admitted that he was unfamiliar with the Easter Seal Plan's

individual variable annuity contract with Nationwide, or the fees associated with that contract.

He has admitted he did not know what a variable annuity is, nor did he believe it was his

obligation to find out.  He did not believe it was his responsibility as trustee to monitor the fees

under the Easter Seal's Plan with Nationwide.  He has admitted that he made no effort to monitor

the fees associated with the investment options available for investment under the Easter Seal

Plan's annuity contract with Nationwide. He has admitted that he made no effort to determine whether the investment options selected by participants in the Easter Seal Plan made service payments to third parties, including Nationwide, or whether those payments might have affected the Easter Seal Plan participants' fees. He received numerous prospectuses and annual reports associated with the Easter Seal Plan's individual annuity contracts with Nationwide that disclosed Nationwide's receipt of service payments from mutual funds (or their affiliated advisors or administrators).

23.    The documents that governed the Anderson Plan required for a period of time that Trustee Anderson (and his predecessor trustees Carl Anderson and Dennis Ferdon) to receive, hold, manage, and invest the Anderson Plan assets; to prepare an annual valuation statement for the Anderson Plan; to be responsible for the safe custody and disposition of the trust assets; and to maintain records of contributions, earnings, withdrawals, and other transactions by Anderson Plan participants. As the substituted named Plaintiff bringing suit on behalf of the Anderson Plan, Trustee Anderson is responsible for the actions and omissions of his predecessor trustees.

24.    Trustee Carl Anderson has admitted that he was not aware of his responsibilities as trustee of the Anderson Plan and did not know whether he had the duty to act solely in the interests of the Anderson Plan or to ensure that fees charged to the Anderson Plan were reasonable. He has admitted that he did not read any of the documents governing the Anderson Plan. He has admitted he was unaware of the fees charged under Nationwide's annuity contracts with Anderson Plan participants, or the charges associated with the investment options available for selection under those contracts, nor did he believe it was his responsibility to understand those fees. He has admitted he was not familiar with the terms of Nationwide's annuity contracts with Anderson Plan participants.

25.    Trustee Dennis Ferdon has admitted that he did not know whether Anderson Plan participants purchased annuity contracts with Nationwide.  He has admitted that he did not review prospectuses issued by Nationwide or by the mutual funds offered as investment options under Nationwide's annuity contracts.  He has admitted that he did not understand the features of the Anderson Plan's annuity contract with Nationwide, including benefits and fees.  He has admitted that he never reviewed the documents governing the Anderson Plan.

26.    The Trustees of the Anderson Plan received numerous prospectuses and annual reports associated with the Anderson Plan's individual annuity contracts with Nationwide that disclosed Nationwide's receipt of service payments from mutual funds (or their affiliated advisors or administrators).

27.    The Trustees, acting exclusively, knew of, agreed to, approved of, ratified, were recklessly indifferent to, and/or failed to monitor and assure the reasonableness of: (a) the investment options available under the annuity contracts; (b) the selection, deletion or substitution of those investment options; (c) the cancellation of accumulation units to pay fees and taxes, to use the units as collateral for loans, or to cancel the units to make annuity purchases or to make cash payments; (d) the benefits or services provided by Nationwide Life or affiliated entities under the annuity contracts purchased by the Plans; (e) the fees or charges for those benefits and services; (f) the description of such fees or charges as "standard" or "discounted"; (g) the relationship of those fees or charges to "fair market pricing"; and (h) the lack of any limitations on the right of Nationwide Life or affiliated entities to receive and retain other compensation, for services or otherwise, from the funds or affiliated entities.

28.    The Trustees, acting exclusively, knew of, agreed to, approved of, ratified, were recklessly indifferent to, and/or failed to monitor and assure the reasonableness of: (a) the

benefits or services provided by the funds or affiliated entities; (b) the fees or charges for those services; (c) whether those fees or charges were above "fair market pricing"; (d) whether those fees or charges were duplicative or for services that had traditionally been provided to other entities; and (e) the lack of any limitations on the right of the funds or affiliated entities to contract with and compensate other entities.

29.    The Trustees, acting exclusively, knew of, agreed to, approved of, ratified, were recklessly indifferent to, and/or failed to monitor and assure the reasonableness of: (a) the contracts or other arrangements between the funds or affiliated entities and third parties, including the Counterclaim Plaintiffs or affiliated entities; (b) the payments made by the funds or affiliated entities to third parties under such contracts or other arrangements; (c) the type, level or value of the services that those third parties performed pursuant to those contracts or arrangements; (d) whether the payments to third parties were for no or limited services, or services that had been or would have been performed for little or no compensation; (e) the payments that third parties were receiving pursuant to those contracts and arrangements; (f) the right of those third parties to retain such payments; and (g) the effect of such contracts, arrangements, or payments on the Plans, Plan participants, or Plan assets.

## Counterclaim One
### Contribution

30.    The allegations of paragraphs 1 through 29, above, are realleged and incorporated herein by reference as paragraph 30.

31.    If Nationwide Life and NFS are found to have violated ERISA by arranging for, receiving, or retaining payments from funds or affiliated entities, as alleged in the Fifth Amended Complaint, then the Trustees are also at fault to the extent the Plans and/or the Plan participants suffered any harm or losses or were deprived of any assets to which they were entitled, because

the Trustees had the ultimate responsibility for purchasing the variable annuity contracts,
selecting and approving changes to investment options, managing the Plan, and investing Plan
assets, and in exercising such responsibility Trustees knew of, agreed to, approved of, ratified,
and/or were recklessly indifferent to that conduct.

32.     The Trustees benefited from the services provided by Nationwide Life and
affiliated entities for the funds and their affiliated entities. The Trustees also benefited from any
payments received by Nationwide Life or its affiliates from the funds or their affiliated entities.

33.     The Trustees should not be permitted to benefit by deflecting ERISA liability for
the Trustees' own conduct on to Nationwide Life and NFS.

34.     If Nationwide Life and NFS are somehow found to have violated ERISA as set
forth in the Fifth Amended Complaint, their conduct was not a cause or a substantial cause of
any harm or loss to the Plans and/or their participants, nor a cause or substantial cause of the
Plans and/or their participants being deprived of any assets to which they were entitled, nor a
cause of any diminishment of Plan assets. The Plans and their participants paid no more than the
amounts that the Trustees agreed to and that were fully and accurately disclosed, and received
every service to which they were entitled.

35.     If any conduct of Nationwide Life or affiliated entities in receiving and retaining
payments from funds or their affiliated entities was somehow improper or injurious to the Plans
and their participants, the resulting harm (if any) to the Plans and/or the Plan participants was the
fault of the Trustees, each of whom breached his fiduciary responsibility to manage and control
the assets of his respective Plan; read and understand the terms of contracts, prospectuses, and
other documents relating to the Plan and its participants; assure that any fees, charges or other

compensation being paid directly or indirectly was reasonable in relation to the services provided; and investigate alternatives in the marketplace.

36.     Accordingly, Nationwide Life and NFS are entitled to contribution from the Trustees under ERISA common law.

## Counterclaim Two
## Indemnification

37.     The allegations of paragraphs 1 through 36, above, are realleged and incorporated herein by reference as paragraph 37.

38.     If Nationwide Life and NFS are found to have violated ERISA by arranging for, receiving or retaining payments from funds or their affiliated entities, as alleged in the Fifth Amended Complaint, then the Trustees are substantially more at fault to the extent the Plans and/or the Plan participants suffered any harm or diminishment or deprivation of Plan assets, because the Trustees had the ultimate responsibility for purchasing the variable annuity contracts, selecting and approving changes to investment options, managing the Plan, and investing Plan assets, and in exercising such responsibility the Trustees knew of, agreed to, approved of, ratified, and/or were recklessly indifferent to the conduct of the funds or affiliated entities or Nationwide Life or affiliated entities.

39.     The Trustees benefited from the services that Nationwide Life and/or its affiliated entities performed in return for any payments, and from the payments received by Nationwide Life and/or its affiliated entities.  Moreover, the Trustees should not be permitted to benefit by deflecting the ERISA liability for the Trustees' own conduct on to Nationwide Life and NFS.

40.     Alternatively, even if Nationwide Life and NFS are found to have violated ERISA, their conduct was not a cause or a substantial cause of any harm or diminishment or deprivation of Plan assets to the Plans and/or their participants.  The Plans and their participants

paid no more than the amounts that the Trustees agreed to and that were fully and accurately disclosed.

41.     If the Plans and their participants are alleging that the amounts they agreed to and were fully disclosed were nevertheless unreasonable in relation to the services and benefits provided, or were duplicative or above the "fair market," or were not lawfully retained by Nationwide Life or affiliated entities, or that Nationwide Life or affiliated entities improperly received or retained additional payments from funds or affiliated entities, the resulting harm (if any) to the Plans and/or the Plan participants was the fault of the Trustees, each of whom breached his fiduciary responsibility to manage and control the assets of his respective Plan; read and understand the terms of contracts, prospectuses, and other documents relating to the Plan and its participants; assure that any fees, charges or other compensation being paid directly or indirectly was reasonable in relation to the services provided; and investigate alternatives in the marketplace.

42.     Accordingly, Nationwide Life and NFS are entitled to indemnification from the Trustees under ERISA common law.

## Counterclaim Three
### Breach of Fiduciary Duty

43.     The allegations of paragraphs 1 through 42, above, are realleged and incorporated herein by reference as paragraph 43.

44.     In the Fifth Amended Complaint, the Trustees allege that Nationwide Life and NFS were fiduciaries of the Plans during the relevant time within the meaning of ERISA. Nationwide Life or NFS in their Answer deny they were or are fiduciaries.  In the event that either Nationwide Life or NFS is held to be a fiduciary, which they are not, and in the event that

the Plans prove that they have suffered any harm as the Trustees allege, then Nationwide Life and NFS assert, in the alternative, this claim for breach of fiduciary duty against the Trustees.

45.    If Nationwide Life and NRS are fiduciaries to the Plans pursuant to ERISA, Nationwide Life or NFS has standing to, and hereby does, bring a civil action on behalf of the Plans pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

46.    As trustees with respect to Plan property, the Trustees owe more comprehensive and intensive duties to the Plans and/or their participants than do Nationwide Life and NFS, who are, at most, limited-purpose fiduciaries with respect to the Plans.

47.    Regardless of whether there is any liability on the part of Nationwide Life and NFS, the Trustees are liable to the Plans and/or Plan participants because the Trustees knew of, agreed to, approved of, ratified, were recklessly indifferent to, and/or failed to monitor and assure the reasonableness of the conduct alleged in the Fifth Amended Complaint.  That misconduct by the Trustees was the exclusive cause of any harm to the Plans and/or Plan participants that is alleged in the Fifth Amended Complaint.  Harm to the Plans and/or Plan participants alleged in the Fifth Amended Complaint includes:  an increase in fees charged by mutual funds to the Plans and/or Plan participants resulting from the "revenue sharing payments" to Nationwide Life and NFS; no reduction in charges by Nationwide Life and NFS to the Plans and/or Plan participants for the individual annuity contracts, and an inadequate reduction in charges by Nationwide Life and NFS for the group annuity contracts, after Nationwide Life and NFS began to receive "revenue sharing payments"; and the receipt of "revenue sharing payments" by Nationwide Life and NFS, rather than the Plans and/or Plan participants, who were entitled to receive those payments.

48.     If some or all of the "revenue sharing payments" (or any other fees, charges, or other payments alleged in the Fifth Amended Complaint) caused an increase in the fees charged by mutual funds to the Plans, or were unreasonable in relation to the services and benefits provided, were duplicative or above the "fair market," or were not lawfully retained by NFS or Nationwide Life, or Nationwide Life or affiliated entities improperly received or retained additional payments from funds or affiliated entities at the alleged expense of the Plans and/or Plan participants, that alleged harm to the Plans and/or Plan participants arose exclusively from each Trustee's breach of his fiduciary responsibility to manage and control the assets of his respective Plan; to read and understand the terms of contracts, prospectuses, and other documents relating to the Plan and its participants; to assure that any fees, charges or other compensation being paid directly or indirectly was reasonable in relation to the services provided; and to investigate alternatives in the marketplace.  If the Plans and/or Plan participants were harmed because the charges for the group and individual annuity contracts were not reduced following "revenue sharing payments," that alleged harm arose exclusively from each Trustee's breach of his fiduciary responsibilities, including the duty to assure the reasonableness of fees and to investigate alternatives in the marketplace.

49.     The Trustees' liability is separate and independent from, and not conditioned upon, any liability on the part of Counterclaim Plaintiffs.

50.    Accordingly, the Trustees are liable to the Plans and/or Plan participants for any "revenue sharing payments" or other excessive fees, charges, or payments described in the Fifth Amended Complaint.

Dated:  September 10, 2008             Defendants Nationwide Financial Services Inc.
                                       and Nationwide Life Insurance Co.


                          By:    /s/ Thomas F. Clauss, Jr.
                                 Thomas F. Clauss, Jr. (CT 12392)
                                 Wiggin and Dana LLP
                                 400 Atlantic Avenue
                                 P.O. Box 110325
                                 Stamford, CT 06911-0325
                                 Telephone:  (203) 363-7610
                                 Facsimile:  (203) 363-7676

                                 Brian O'Donnell, Esq. (CT 16041)
                                 Dewey & LeBoeuf L.L.P.
                                 Goodwin Square, 225 Asylum Street
                                 Hartford, CT 06103
                                 Telephone: (860) 293-3500
                                 Facsimile: (860) 293-3555

                                 Charles C. Platt, Esq. (CT 23036)
                                 Wilmer Cutler Pickering Hale and Dorr LLP
                                 399 Park Avenue
                                 New York, NY  10022
                                 New York, NY 10019-5389
                                 Telephone: (212) 230-8800
                                 Facsimile: (212) 230-8888

                                 Daniel H. Squire, Esq.
                                 Mark Bieter, Esq.
                                 Wilmer Cutler Pickering Hale and Dorr LLP
                                 1875 Pennsylvania Avenue, N.W.
                                 Washington, D.C. 20006
                                 Telephone:  (202) 663-6000
                                 Facsimile: (202) 663-6363

# **CERTIFICATION**

I hereby certify that on this 10th day of September, 2008, I electronically filed the

foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification

of such filing to the following:

> Richard A. Bieder, Esq.
> Antonio Ponvert III, Esq.
> Koskoff, Koskoff & Bieder
> 350 Fairfield Avenue
> Bridgeport, CT 06604
>
> Gregory G. Jones, Esq.
> Law Firm of Gregory G. Jones, P.C.
> 603 South Main Street, Suite 200
> Grapevine, TX 76051
>
> Marc R. Stanley, Esq.
> Roger L. Mandel, Esq.
> Stanley, Mandel & Iola
> 3100 Monticello Avenue
> Suite 750
> Dallas, TX 75205

> /s/ Thomas F. Clauss, Jr.
> Thomas F. Clauss, Jr. (CT 12392)

1