UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing Plan, ALAN GOUSE, as trustee of Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, CHRISTOPHER ANDERSON, as trustee of the Anderson Law Firm, P.C. 401(k) Profit Sharing Plan and Trust, f/k/a the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan, and H. GRADY CHANDLER, as trustee of the Law Offices of H. Grady Chandler, P.C., 401(k) Profit Sharing Plan and Trust<br><br>PLAINTIFFS,<br><br>v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,<br><br>DEFENDANTS. | CIVIL ACTION NO.:<br><br>3:01CV1552 (SRU) |

**DEFENDANTS' MOTION FOR CLASS CERTIFICATION
OF THIRD AMENDED COUNTERCLAIM AND MEMORANDUM IN SUPPORT**

Defendants Nationwide Financial Services, Inc. and Nationwide Life Insurance Company (collectively, "Nationwide" or "Nationwide Defendants"), by their undersigned counsel, hereby move to certify their counterclaim as a class action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3). Nationwide files this motion in accordance with the schedule contained in the Court's December 28, 2009, Conference Memorandum (Doc. #430).

**I.     PRELIMINARY STATEMENT**

On November 6, 2009, the Court granted Plaintiffs' motion to certify a class of trustees of ERISA-qualified retirement plans which had variable annuity contracts with Nationwide, or

whose participants had contracts with Nationwide. (Ruling on Motion to Strike, Motion to Intervene, and Motion for Class Certification ("Class Ruling") (Doc. #416).) Plaintiffs then filed a Sixth Amended Complaint (Doc. #423) and Nationwide filed its Answer to Plaintiffs' Sixth Amended Complaint and Third Amended Counterclaim ("Answer" and "Counterclaim") (Doc. #425). In their Answer, the Nationwide Defendants deny that they were plan fiduciaries, that they are liable in any way under ERISA to the plans, and that plans or plan participants suffered any harm or loss or were deprived of any monies to which they were entitled.

In the alternative, in the event that the Nationwide Defendants are deemed to be plan fiduciaries, and without prejudice to the positions taken by Nationwide in this lawsuit, Nationwide asserts its Counterclaim against the trustees – who are undisputed fiduciaries of the plans. Nationwide asserts that, if the "revenue sharing" payments alleged in the Sixth Amended Complaint gave rise to an ERISA violation, then the trustees breached their fiduciary duty to the plans because the trustees had the ultimate authority and responsibility to know about and monitor those payments, and the trustees approved and accepted the advantages of those payments as terms of their plans' annuity contracts.

Nationwide asserts its Counterclaim against the four named Plaintiffs in this lawsuit, as trustees of their respective retirement plans. In addition, reflecting the Court's class certification order, and without prejudice to Nationwide's appeal of that order, Nationwide asserts its Counterclaim "against the trustees of other ERISA retirement plans who become members of the class certified in this lawsuit." (Counterclaim (Doc. #425) at ¶ 1.) Nationwide now seeks certification of a class of Counterclaim Defendants comprised of trustees who become members of Plaintiffs' class.

The crux of the trustees' claim is that Nationwide's receipt of "revenue sharing" violated

ERISA and caused harm to the plans and/or participants. If the trustees may litigate that claim on a class basis, then for the sake of efficiency and fairness, Nationwide should be allowed to litigate on a class basis its Counterclaim that it was the trustees' approval and acceptance of the advantages of the "revenue sharing" payments, not any conduct by Nationwide, that caused any alleged harm in this case or that require any remedies.

## II. STATEMENT OF FACTS

Plaintiffs concede that the trustees are fiduciaries of their respective plans. (Counterclaim (Doc. #425) at ¶ 5; Trustees' Answer to Defs.' Third Am. Counterclaim ("Trustees' Answer") (Doc. #433) at ¶ 5.) Pursuant to the documents that govern the retirement plans, the trustees are required to hold, manage, and invest the plan's assets, to maintain records relating to the plan's assets, and otherwise to monitor and oversee transactions relating to the disposition of the plan's assets. (Counterclaim (Doc. #425) at ¶¶ 18, 20, 22, 26, 29; Trustees' Answer (Doc. #433) at ¶ 18, 20, 22, 26, 29.)[1] The trustees had the authority to choose Nationwide or some other entity as their plans' annuity provider, and were responsible for negotiating and approving the terms of their plans' variable annuity contracts with Nationwide. (Counterclaim (Doc. #425) at ¶ 10; Trustees' Answer (Doc. #433) at ¶ 10.)

Under the terms of these variable annuity contracts, Nationwide was obligated to provide certain benefits and services to, and entitled to receive certain fees and charges from, the plans or

---

[1]  *See* Chandler 401(k) Profit Sharing Plan Document at HGC 000198, 207-212; The Money Accumulation Pension Plan for Employees of Hartford Easter Seal Rehabilitation Center, Inc. at NP 02391-92; Crown Tool and Die Co., Inc. Salary Reduction Profit Sharing Plan Document at NP 05542-46; Carl D. Anderson and Associates, P.C. Employee Benefit Trust Agreement at A&F 00020-29 (collectively, "Plan Documents", Exhibits 1A, 1B, 1C, and 1D to Declaration of Daniel H. Squire ("Squire Decl.")); *see also* Summary Plan Description of The Greater Hartford Easter Seal Rehabilitation Center, Inc. Tax Sheltered Annuity Plan at ES 00112 (Exhibit 1E to Squire Decl.).

plan participants. (Counterclaim (Doc. #425) at ¶ 12; Trustees' Answer (Doc. #433) at ¶ 12.)[2] The terms of the annuity contracts included the plans' and/or participants' discretion to contribute money to the contracts, and to allocate that money to certain investment options in those contracts. The trustees had the authority and responsibility to determine which investment options were appropriate and to be made available to plan participants through the annuity contracts with Nationwide. Each trustee selected and approved the investment options to be offered to its plan and participants through the annuity contract, and the charges associated with those options. The trustees also had the authority and responsibility to add or drop investment options available to plan participants over time, and many trustees exercised that authority by approving changes to the investment options and the charges associated with those options. The retirement plans, represented by the trustees, are the owners of the annuity contracts with Nationwide. (Counterclaim (Doc. #245) at ¶¶ 13-15; Trustees' Answer (Doc. #433) at ¶¶ 13-15; Annuity Contracts (*see supra* n. 2); Defendants' Opp. to Pls.' Mot. for Class Cert. Based on Fifth Am. Compl. ("Nationwide's Class Opp.") (Doc. #338) at 6-8.)

The payments that Nationwide entities began receiving from mutual fund families in the mid-1990s were disclosed to the trustees by Nationwide or the mutual funds. Nationwide sent letters to the trustees (or their authorized representatives) of plans that had purchased group contracts. The letters informed the trustees that Nationwide was implementing new tiered pricing that reflected the mutual fund payments, and requested the trustees' approval of a

---

[2] Crown Plan Group Variable Annuity Contract; Anderson Plan Individual Annuity Contract; Easter Seals Plan Individual Variable Annuity Contract; Chandler Plan Group Variable Annuity Contract (collectively, "Annuity Contracts", Exhibits 2A, 2B, 2C, and 2D to Squire Decl.).

contract amendment to implement the new pricing for their plan.[3] New group contracts with Nationwide also included tiered pricing that reflected the mutual fund payments. The trustees of the plans with group contracts approved the variable annuity product and contract terms, and accepted the advantages of broader investment option arrays, lower variable annuity contract charges, and other contract benefits that resulted from the mutual fund payments.[4]

Mutual fund payments were disclosed to trustees of plans that purchased individual contracts through Nationwide's prospectuses for the individual annuity products, annual reports of the variable account holding the participants' contributions, and prospectuses issued by the mutual funds.[5] The trustees of the plans with individual contracts also approved the variable annuity product and contract terms, and accepted the advantages of the broader investment option arrays, lower variable annuity contract charges, and other contract benefits that resulted from the mutual fund payments.[6]

---

[3] Crown Plan Contract Amendment; Chandler Plan Contract Amendment (Exhibits 3A and 3B to Squire Decl.).

[4] Declaration of Steven J. Rose in Support of Nationwide's Class Opp. (Doc. #338), ¶¶ 24-25 (tiered pricing for existing and new group contracts) (Exhibit 4 to Squire Decl.).

[5] *E.g.*, Statement of Additional Information of The Best of America IV Individual Deferred Variable Annuity Contracts Prospectus dated May 1, 1998 at N 014024; 1997 Annual Report of Nationwide Variable Account-II at 21; Best of America IV Annuity Prospectus dated May 1, 2007 at N 015750 (Exhibits 5A, 5B, and 5C to Squire Decl.); Nationwide's Class Opp. (Doc. #338) at 14-15. *See also* Fidelity Variable Insurance Products Fund Prospectus dated April 30, 2001 at N 003960; Dreyfus Stock Index Fund Prospectus dated May 1, 2001 at N 4707 (Exhibits 6A and 6B to Squire Decl.).

[6] *See* Declaration of Eric Henderson in Support of Nationwide's Class Cert Opp. ¶ 11 (investment option arrays for individual contracts increased substantially over time) (Exhibit 7 to Squire Decl.).

## III.  NATIONWIDE'S COUNTERCLAIM

If the Nationwide Defendants are found to be fiduciaries to the retirement plans pursuant to ERISA, then they have standing to bring this Counterclaim against the trustees on behalf of the plans pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). *See Haddock v. Nationwide Fin. Servs. Inc.*, 570 F. Supp. 2d 355, 365 (D. Conn. 2008) (Nationwide has standing to pursue its counterclaim). As pled, Nationwide's Counterclaim against the trustees states a claim. (Class Ruling (Doc. #416) at 2-3.)

Plaintiffs do not dispute that the trustees are fiduciaries of their respective plans. Under ERISA, "a fiduciary shall discharge his duties . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. §§ 1104(a)(1)(B).

Nationwide alleges in the Counterclaim that the trustees breached their fiduciary duties to the plans because the trustees approved and accepted the advantages of the allegedly unlawful "revenue sharing" payments. The trustees approved the payments by entering into group annuity contracts, or by signing the group contract amendments, that were based on those payments; or by approving individual annuity contracts, or agreeing to the addition of investment options for individual annuity contracts, that were based on those payments. The trustees took advantage of these payments, including the broader investment option arrays, lower costs and other contract benefits that resulted from the payments. To the extent that these payments are unlawful, the trustees' approval and acceptance of the advantages of these payments violated their duty to monitor and assure the reasonableness of the terms of the variable annuity contracts, and the investment options available for selection in those annuity contracts, as well as their duty not to

select investment options corresponding to mutual funds that made "revenue sharing" payments to Nationwide. (Counterclaim (Doc. #425) at ¶ 12-29, 37.)

## IV. ARGUMENT

### A. THE PROPOSED COUNTERCLAIM CLASS SATISFIES THE PREREQUISITES OF RULE 23(a).

The proposed class of Counterclaim Defendants that is comprised of trustees in Plaintiffs' class satisfies the Rule 23(a) prerequisites of numerosity, commonality, typicality and adequacy.

#### 1. Numerosity

The Court determined that the Plaintiffs' class satisfied the numerosity requirement of Rule 23(a)(1), because there are allegedly over 24,000 affected plans and trustees. (Class Ruling (Doc. #416) at 36 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995)).) For the same reason, the proposed class of Counterclaim Defendants that is comprised of the same trustees satisfies the numerosity requirement.

#### 2. Commonality

Under Rule 23(a)(2), "[t]he commonality requirement is met if plaintiffs' grievances share a common question of law or fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). *See* Class Ruling (Doc. #416) at 36-37.

Nationwide's Counterclaim arises out of the same facts and circumstances, and shares a common question of law with, the trustees' claims as to which the Court found the requisite commonality. Plaintiffs identified several questions of fact or law allegedly common to Plaintiffs' class, including whether Nationwide "constitutes a fiduciary" pursuant to Plaintiffs' two legal theories; whether Nationwide, in receiving the "revenue sharing payments," discharged its duties "with the care, skill, prudence, and diligence" of "a prudent man"; whether any part of the "revenue sharing" payments constitutes payments for services rendered by Nationwide to the

mutual fund families; whether Nationwide "passed on any part of the revenue sharing payments to the [p]lans"; and whether the class is entitled to disgorgement/restitution of the "revenue sharing payments." *Id.* at 37-38. The Court determined that Plaintiffs' allegations met the commonality requirement because "[a]t a minimum, the questions of law raised by the Trustees are applicable to each member of the putative Class" and the class members "would raise the same legal claim" if they brought suits individually. *Id.* at 38.

Likewise, Nationwide identifies the following questions of fact or law that are common to the Counterclaim class:

- Whether the trustees constitute a fiduciary to their plans (which Plaintiffs concede);

- Whether the trustees, in selecting, adding, or dropping investment options corresponding to mutual funds that made "revenue sharing" payments, and approving and accepting the advantages of "revenue sharing payments" by mutual funds to Nationwide, violated their fiduciary duty to discharge their duties with respect to the plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims (i.e., whether the trustees violated 29 U.S.C. §§ 1104(a)(1)(B));

- Whether any part of the "revenue sharing" payments constitutes payments by the mutual fund families to Nationwide for services;

- Whether Nationwide passed on any part of the "revenue sharing" payments to the plans; and

- Whether the plans suffered any harm as a result of the trustees' conduct that requires any remedies from the trustees pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), including payment of any disgorgement obligation that otherwise may be owed by Nationwide.

As the Court determined with respect to Plaintiffs' class, "the questions of law raised by [Nationwide] are applicable to each member of the putative Class" and the class members would be subject to "the same legal claim" if Nationwide were required to pursue each trustee in this lawsuit individually. (Class Ruling (Doc. #416) at 38.) Thus, the commonality requirement is met.

3.    Typicality

The typicality requirement of Rule 23(a)(3) "'is satisfied when each class member's claim [or defense] arises from the same course of events, and each class member makes similar legal arguments to prove [or disprove] the defendant's liability." *Marisol A.*, 126 F.3d at 376 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). *See* Class Ruling (Doc. #416) at 38.

The Court found that the named Plaintiffs' claims satisfied the typicality requirement because they "arise from the same practice or course of conduct that gives rise to the claims of proposed Class members – namely, that Nationwide accepted revenue sharing payments . . . in violation of its fiduciary duties to the Plans . . . ." *Id.* at 38-39.

As the Court determined with respect to the Plaintiffs' class, Nationwide's Counterclaim against the named Plaintiffs "arise[s] from the same practice or course of conduct" that gives rise to Nationwide's claims against the Counterclaim class – namely, that the trustees approved and accepted the advantages of the "revenue sharing" payments, and violated their fiduciary duties to the plans, to the extent those payments were unlawful. Accordingly, the typicality requirement is satisfied.

4.    Adequacy

Rule 23 (a)(4) requires that the "representative [parties will] fairly and adequately protect the interests of the class." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) (citation omitted). *See* Class Ruling (Doc. #416) at 39.

Nationwide opposed Plaintiffs' motion for class certification, in part on the ground that the resolution of the elements of Plaintiffs' claims and Nationwide's defenses would raise numerous individualized issues which rendered the named Plaintiffs' inadequate class representatives. (Nationwide's Class Opp. (Doc. #338) at 18-34.) The Court determined,

however, that these differences did not preclude class certification. On the same basis, if the named Plaintiffs are adequate representatives of Plaintiffs' claim, then so, too, should they be deemed adequate representatives of the Counterclaim class. Indeed, the Court has already held that "these counterclaims are not 'unique' to [the] named plaintiffs." (Class Ruling (Doc. #416) at 42.)

Further, Nationwide's Counterclaim against the trustees relies on the same type of proof that the Court found would be required for Plaintiffs' claims against Nationwide. As described above, the plan documents that govern the retirement plans and appoint the trustees as fiduciaries required the trustees to manage and invest the plan's assets and to ensure any contract terms and fees were reasonable in relation to the services provided. The trustees had the authority to choose Nationwide as their respective plans' annuity provider, and were responsible for negotiating and approving the terms of their plans' annuity contracts with Nationwide. The annuity contracts disclosed the applicable benefits, services, and fees. The trustees selected and approved the investment options to be offered to their plans and participants through the annuity contracts. The trustees also added and dropped investment options available to plan participants over time. The Court determined that any "technical differences" among the various annuity contracts did not preclude class certification. (Class Ruling (Doc. #416) at 39.) (Plaintiffs have also characterized Nationwide's annuity contracts as "standard form contracts," Mot. for Class Cert. Based on Fifth Am. Compl. ("Pls.' Class Mot.") (Doc. #299 ) at 3.)

The payments that Nationwide entities received from mutual fund families were disclosed to the trustees by Nationwide or the mutual funds. As the Plaintiffs concede, Nationwide sent letters to the trustees (or their authorized representatives) of the group plans, and the trustees signed contract amendments to implement the new pricing associated with the

"revenue sharing." *See* Pls.' Class Mot. (Doc. #299) at 10 ("The revenue sharing was described by Nationwide using standard language in the explanatory correspondence which accompanied the amendment forms.")  The Court determined that Nationwide's "ratification" defense did not preclude class certification, based on "evidence that suggests the trustees of such plans received standard correspondence relating to the contract changes and were each asked to sign off on identical changes to the group annuity contracts." (Class Ruling (Doc. #416) at 41.)  New group contracts with Nationwide also included tiered pricing that reflected the mutual fund payments. Likewise, mutual fund payments were disclosed to trustees of plans that purchased individual contracts through standard disclosures by Nationwide and the mutual fund families.  Moreover, Plaintiffs do not (and cannot) dispute that the trustees approved and accepted the advantages of the "revenue sharing" payments.

In short, since the named Plaintiffs are adequate representatives of their certified class, they are adequate representatives of a Counterclaim class as well, based on the same type of proof that the Court has already considered.

**B.    THE COURT SHOULD CERTIFY THE COUNTERCLAIM CLASS UNDER RULE 23(b)(2) AND (b)(3).**

Nationwide seeks certification of the Counterclaim class under Rule 23(b)(2) because it seeks to "uniformly stop [the trustees] from engaging in the disputed conduct"; that is, approving and accepting the advantages of the "revenue sharing" payments on the one hand, while claiming that those payments are unlawful on the other. (Class Ruling (Doc. #416) at 49.)  Nationwide also seeks to certify the Counterclaim class under Rule 23(b)(2) to ensure that any equitable remedies available to the plans are the responsibility of the trustees, and not Nationwide.

Nationwide seeks certification of the Counterclaim class under Rule 23(b)(3) because "the questions of law or fact common to class members predominate over any questions affecting

only individual members" and "a class action is superior" to other methods of adjudication. *Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007). The trustees' uniform approval of the allegedly unlawful "revenue sharing" payments and acceptance of the advantages of those payments, as described above, demonstrates that common issues predominate, and that the trustees should pay any disgorgement obligation that Nationwide may otherwise owe. Moreover, based on the substantial overlap of issues between Plaintiffs' claims and Nationwide's Counterclaim, and the Court's prior certification of Plaintiffs' class, certification of the Counterclaim class "would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchen Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997); *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006) (objective of Rule 23(b)(3) is "greater efficiency via collective adjudication and, relatedly, greater uniformity of decision as to similarly situated parties").

The four specific "matters pertinent" to the requisite "predominance" and "superiority" findings under Rule 23(b)(3) all support certification of the Counterclaim class. Those matters include: (A) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (B) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (C) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (D) "the likely difficulties in managing a class action." Fed. R. Civ. 23(b)(3). Here, the litigation has been pending in this Court for several years; the Court has already certified claims by a class of trustees against Nationwide; the trustees are already represented by class counsel; and the Court has already determined that the Counterclaim is not unique to the named Plaintiffs. Under these

circumstances, certification of the Counterclaim class would serve the Rule's dual goals of efficiency and fairness. *See Nassau*, 461 F.3d at 230 (class action was "the most fair and efficient litigation vehicle" because, *inter alia*, the action had "progressed substantially").

Further, although the Court certified the Plaintiffs' class under Rule 23(b)(2), the Court determined that class members should be given notice and opt-out rights similar to those required for Rule 23(b)(3) classes. (Class Ruling (Doc. #416) at 68.) Certification of a 23(b)(3) Counterclaim class, therefore, will not require additional notice to class members.

## CONCLUSION

For these reasons, the Court should certify a class of Counterclaim Defendants comprised of trustees who become members of Plaintiffs' class.

Dated:  January 29, 2010                    Respectfully submitted,

Defendants Nationwide Financial Services Inc.
and Nationwide Life Insurance Co.

By:   /s/ Thomas F. Clauss, Jr.
Thomas F. Clauss, Jr.
Wiggin and Dana LLP
400 Atlantic Avenue
P.O. Box 110325
Stamford, CT 06911-0325
Telephone:  (203) 363-7610
Facsimile:  (203) 363-7676

Charles C. Platt, Esq. (CT 23036)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY  10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Daniel H. Squire, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363