UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, CHRISTOPHER ANDERSON, as trustee of the Anderson Law Firm, P.C. 401(k) Profit Sharing Plan and Trust, f/k/a the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan, and H. GRADY CHANDLER, as trustee of the Law Offices of H. Grady Chandler, P.C., 401(k) Profit Sharing Plan and Trust<br><br>PLAINTIFFS,<br><br>v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,<br><br>DEFENDANTS. | § | CASE NO. 01-CV-1552 (SRU) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR CLASS CERTIFICATION OF THIRD AMENDED COUNTERCLAIM**

Plaintiffs, Peter Wiberg, Alan Gouse, Christopher Anderson and H. Grady Chandler, and the certified Class, hereby respond to Defendants' Motion for Class Certification of Third Amended Counterclaim and Memorandum in Support ("Motion") [Doc. 434]. Plaintiffs and the Class file this opposition in accordance with the schedule contained in the Court's December 28, 2009 Conference Memorandum [Doc. 430].

## I. PRELIMINARY STATEMENT

Plaintiffs believe Nationwide originally filed contribution, indemnity, and breach of fiduciary duty counterclaims against Plaintiffs as a litigation tactic. Nationwide hoped to persuade this Court that the existence of these counterclaims made Plaintiffs unfit class representatives or otherwise made Plaintiffs' claims unsuitable for class certification. After the Court dismissed its contribution and indemnity claims, Nationwide continued for the same reason to assert the breach of fiduciary duty claim, even though the claim would benefit only the Plans and not itself. Now, after the Court rejected its tactic, certified the Class and discussed the "weakness" of the counterclaim "(which barely survived the plaintiffs' motion to dismiss)",[1] Nationwide seeks to certify the counterclaim against all the absent members of the Class so the class notice will have to disclose the counterclaim, which disclosure would likely cause a significant number of Class members to opt out of the Class in order to avoid a claim of personal liability.

If the Court were to certify the counterclaim for class treatment, it would be condoning Nationwide's abusive litigation practices. Nationwide's sole motive in bringing the counterclaim is to avoid disgorgement of the revenue sharing payments to the Plans (and their participants) represented by the Class of trustees. It has no interest whatsoever in actually benefitting the Plans (and their participants) by making Class members additionally liable to them for those revenue sharing payments. Given Nationwide's complete lack of interest in actually serving the interests of the beneficiaries of its breach of fiduciary duty counterclaim, no good could possibly come from certifying the counterclaim against the Class.

---

[1] Ruling on Motion to Strike, Motion to Intervene, and Motion for Class Certification ("Ruling") [Doc. 416] at 42.

Indeed, because of the potential for abuse by defendants, and because the purposes of Fed. R. Civ. P. 13 would not be served by an opposite interpretation, the Second Circuit and many other courts have held that absent class members do not constitute "opposing parties" for the purposes of Rule 13 and are thus not subject to counterclaims. Based upon these authorities, the Court should hold that the counterclaim may not be asserted against absent Class members and, thus, may not be certified.

Even if the Court chooses to delve into requirements of Fed. R. Civ. P. 23, it will find that Nationwide has not come close to meeting the super rigorous standard of analysis applicable to defendant classes. The counterclaim cannot be certified under Rule 23(b)(2) because Nationwide does not and could not seek injunctive relief. And, the counterclaim could not be certified pursuant to Rule 23(b)(3) because common issues of law or fact manifestly do not predominate over issues affecting only individual Class members. Furthermore, as to 23(b)(3), a class action would not be a superior alternative to resolving any issues presented by the counterclaim in light of Nationwide's complete lack of interest in benefiting the Plans (and their participants) that it would be representing.

## II. THE COURT SHOULD NOT ALLOW THE COUNTERCLAIM TO BE ASSERTED AGAINST THE ABSENT CLASS MEMBERS AND, THEREFORE, IT SHOULD NOT CERTIFY IT TO PROCEED AS A CLASS ACTION

Absent class members are "parties" to the litigation for some purposes, but not others. *Van Gemmert v. Boeing Co.*, 590 F.2d 433, 440 n.15 (2d Cir. 1978), *aff'd,* 444 U.S. 472 (1980). Federal Rule of Civil Procedure 13(a) and (b) permit counterclaims to be filed only against an "opposing party." Fed. R. Civ. P. 13(a) & (b). "Whether a given procedural rule should be applied to those [class members] who are not named plaintiffs depends on the function of the rule." *Van Gemmert*, 590 F.2d at 440 n.15. Thus, absent class members should only be subject

to counterclaims under Rule 13 if the proper function of the rule requires it. *Id;* A. Conte & H. Newberg, 2 NEWBERG ON CLASS ACTIONS § 4:34 at 303-07 (4th ed. 2002) (hereinafter "NEWBERG"). It does not. *Id.*

Indeed, the Second Circuit has already resolved this issue as follows:

> Absentees are not considered parties against whom counterclaims under Fed. R. Civ. P. 13 may be asserted, because 'the right to counterclaim is readily subject to abuse as a tactical device to encourage plaintiffs to opt out.' *See, e.g., Donson Stores, Inc. v. American Bakeries Co.,* 58 F.R.D. 485, 489 (S.D.N.Y. 1973).

*Van Gemmert*, 590 F.2d at 440 n.15.

Many other courts have followed the Second Circuit's example and have held that counterclaims may not be asserted against absent class members. *See, e.g., Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260 n.14 (11th Cir. 2003) ("A court may properly conclude that absent class members are not opposing or litigating adversaries for purposes of Rule 13, and therefore Rule 13 is inapplicable in a class context.") (citation omitted); *Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indem. Ins. Co.*, 202 F.R.D. 484, 502 (S.D. Tex. 2001) ("Furthermore, because absent class members are not 'parties' they are not subject to compulsory counterclaims.") (citation omitted), *rev'd on other grounds*, 319 F.2d 205 (5th Cir. 2003); *In Re Sugar Indus. Antitrust Lit.*, 73 F.R.D. 322, 349 (E.D. Pa. 1976) (holding that absent class members are not parties for the purposes of Rule 13 and, accordingly, dismissing counterclaim against unnamed class members); *Donson Stores, Inc.,* 58 F.R.D. at 489 (*citing Korn v. Franchard,* 456 F.2d 1206, 1210 (2d Cir. 1972)) (interpreting an earlier Second Circuit decision as holding that "Rule 23 contemplates an adversary contest involving only the representative members of the class, with all other members of the class being permitted passively to await the outcome of the principal suit" and thus holding that absent class members are not parties for the purposes of Rule 13).

If Rule 13 counterclaims may not be asserted against absent class members, it follows that counterclaims against absent class members cannot be certified. Accordingly, the Court should deny certification of the counterclaim.

## III. TO THE EXTENT THE COUNTERCLAIM AGAINST THE ABSENT MEMBERS OF THE CLASS COULD THEORETICALLY BE CERTIFIED, THE COURT MUST APPLY A SUPER RIGOROUS CERTIFICATION STANDARD TO IT

As this Court noted in the Ruling, before certifying the class, a district court must undertake a "rigorous analysis" to determine whether each of the Rule 23 requirements has been met. Ruling at 34-5 (*citing In Re Initial Public Offering Securities Lit.*, 471 F.3d 24, 33, 41 (2d Cir. 2006)). That rigorous analysis must be applied to each claim. *Gunnells v. Health Plan Services, Inc.*, 348 F.3d 417, 438-43 (4th Cir. 2003).

Accordingly, a district court must conclude after "rigorous analysis" that a counterclaim against the plaintiff class meets all the prerequisites of Rule 23 before it certifies a class of counterclaim defendants. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); 2 NEWBERG § 4:34 at 302. Simply put, it is not *ipso facto* true that if the plaintiffs' claims against the defendant are properly certified to proceed as a class action that the defendant's counterclaim against the plaintiffs is properly certified to proceed as a class action.

In fact, because of the difference in the level of due process concern, defendant classes must be scrutinized even more carefully than plaintiff classes and be granted more sparingly:

> Fairness to absentees is the hallmark of due process protection in class actions. A judgment for or against a class will have different consequences depending on whether a plaintiff or defendant class is involved. … As a practical matter, a loss of a claim of a plaintiff class member extinguishes that claim but involves no out-of-pocket financial risk, while an exposure to liability of a defendant class member may carry a significant out-of-pocket financial risk. Thus, there is a significant difference in liability and monetary exposure between a plaintiff and a defendant class when an unfavorable class judgment is involved. … These circumstances also create a spillover need to examine carefully satisfaction of

> typicality, common questions and notice requirements. There is little doubt that a defendant class requires closer scrutiny of Rule 23 tests to ensure fairness to absent members based on long-standing due process protections for defendants in the absence of a defendant class. [citations omitted]. As a result, stricter due process considerations put greater limits on the use of defendant classes than plaintiff classes. [citations omitted].

2 NEWBERG § 4:48 at 344-5.

## IV. THE COUNTERCLAIM CANNOT BE MAINTAINED AS A CLASS ACTION PURSUANT TO RULE 23(b)(2)

### 1. Injunctive Relief Does Not Predominate Over Monetary Relief.

As this Court noted in the Ruling, if both injunctive or declaratory relief and monetary relief are sought, a claim can only be certified pursuant to Rule 23(b)(2) if the injunctive or declaratory relief predominates over the monetary relief. Ruling at 46-47. However, the predominance requirement is not conceivably met as to the counterclaim, because Nationwide seeks only monetary relief from the Class; it seeks no injunctive or declaratory relief whatsoever. *See* Defendants' Answer to Plaintiffs' Sixth Amended Complaint and Third Amended Counterclaim ("Third Counterclaim") [Doc. 425].[2] In the absence of a pleading for injunctive relief, the Court cannot certify the counterclaim pursuant to Rule 23(b)(2).

Even in the one solitary paragraph of the Motion addressing the requirements of Rule 23(b)(2), Nationwide fails to articulate any specific injunctive relief that this Court could legally impose against the Class; rather, it merely states that it seeks to stop Class members from

[2] The only paragraph in the Third Counterclaim addressing the relief sought by Nationwide on behalf of the Plans is Paragraph 40, and Nationwide only seeks in that paragraph to recover for the Plans and/or Plan participants "any 'revenue sharing payments' or other excessive fees, charges or payments described in the Sixth Amended Complaint." Third Counterclaim ¶ 40 at 23.

approving and accepting the advantages of revenue sharing payments on the one hand while claiming they are unlawful on the other.[3] Motion at 11. Such relief, even if viable, would confer no benefit upon the Plans and could not conceivably be considered to predominate over the damages sought by Nationwide from the Class members on behalf of their Plans—payment of the amount of the revenue sharing payments received by Nationwide. So, even based on the Motion, Nationwide has failed to satisfy the requirement of Rule 23(b)(2).

**2. Injunctive Relief Against the Class Would Not Be Appropriate.**

Rule 23(b)(2) requires that final injunctive relief be "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As noted above, even if Nationwide had pled for injunctive relief in the Third Counterclaim, it failed to articulate in the Motion any injunction that the Court could appropriately enter against the Class. What exactly could the Court order to prevent Class members from approving and accepting the advantages of revenue sharing payments on the one hand while claiming that those payments are unlawful on the other? Rather than constituting a possible injunction, that request sounds more like some sort of vague assertion of a waiver defense.

If Nationwide's claim is actually that Class members should have discovered Nationwide's revenue sharing practices and taken action in response, what exactly would it have the Court now order Class members to do? Indeed, what action could the Court order these Class member trustees to take in regard to their Plans that would be appropriate for each and every Plan in light of its differing circumstances? The answer is obvious. There is no

[3] By discussing here this sentence from the Motion, Plaintiffs and the Class in no way concede, and specifically deny, that Nationwide is entitled to seek injunctive relief after having failed to plead for it in the Third Counterclaim.

conceivable injunction that the Court could enter that would be beneficial and, therefore, appropriate for all of the Plans, making certification under Rule 23(b)(2) inappropriate.

## V. THE COUNTERCLAIM CANNOT BE MAINTAINED AS A CLASS ACTION PURSUANT TO RULE 23(b)(3)

### 1. Common Issues of Law or Fact Do Not Predominate Over Issues Affecting Only Individual Members of the Class.

As pled in the Third Counterclaim and elaborated upon in the "Statement of Facts" section of the Motion, Nationwide's purported counterclaim against the Class boils down to a claim that: (1) the trustees who compose the Class either knew or should have known about Nationwide's revenue sharing practices, and (2) they violated their fiduciary duties to their Plans by failing to take some unspecified actions to protect their Plans from those revenue sharing practices. Third Counterclaim ¶¶ 18, 29-32 & 38 at 15 & 20-23; Motion at 6-7. The mere statement of the essence of the counterclaim demonstrates that its proof must inherently be individual, such that common issues cannot predominate over issues affecting only individual Class members. Certainly, Nationwide has failed in its obligation to provide evidence that it can prove Class members' liability on a common basis.

For proof that those Class member trustees whose Plans had group annuity contracts knew about Nationwide's revenue sharing practices, Nationwide apparently intends to rely upon the standard correspondence that accompanied contract amendments sent to those Plans which had group annuity contracts at the inception of Nationwide's revenue sharing scheme in approximately 1996. Motion at 4-5 & 10-11. Not only does this manifestly not constitute common evidence that the entire Class knew about Nationwide's revenue sharing practices, it does not even constitute common evidence that all or a majority of the Class members whose Plans owned group annuity contracts had such knowledge.

Initially, of the many thousands of trustees in the Class whose plans had group annuity contracts, a great many, if not the majority, did not own those contracts at the time that Nationwide sent out this correspondence in 1996. Crucially, Nationwide offers no evidence to support that any Class member trustee whose Plan did not purchase its group annuity contract until after Nationwide sent out the correspondence in question in 1996 either knew or somehow should have known about Nationwide's revenue sharing practices. This timing issue alone demonstrates that whether each trustee in the Class whose Plan had a group annuity contract knew or should have known of Nationwide's revenue sharing practices constitutes an individual issue.

Furthermore, the identity of the trustees for a significant number of Plans which had group annuity contracts at the time the correspondence was sent likely changed over time. For example, as to the Anderson Plan, Carl Anderson was the trustee at that time. The current trustee and named plaintiff is Christopher Anderson. Thus, as to those Class members who became trustees of their Plans after the time in 1996 that Nationwide sent the correspondence, Nationwide can provide no evidence at all, much less common evidence, that they knew or should have known of Nationwide's revenue sharing practices. Thus, once again, it becomes an individual issue as to whether the Class members whose Plans had group annuity contracts knew or should have known of Nationwide's revenue sharing practices.

As to the trustees whose Plans had individual annuity contracts, Nationwide proposes to prove that they knew or should have known about its revenue sharing practices based upon the existence of documents issued by it and various mutual funds that allegedly made disclosures regarding revenue sharing. Motion at 5. In support, it cites a 1998 Statement of Additional Information for one particular type of individual annuity contract, a 1997 annual report of one of

its variable accounts, a 2007 prospectus associated with one particular type of individual annuity contract issued by it, a 2001 Fidelity prospectus and a 2001 Dreyfus prospectus. Motion at 5 n.5.

Nationwide offers no proof that in every year of the class period it issued documents in connection with each of its individual annuity products that disclosed its revenue sharing practices. It likewise offers no evidence that mutual fund prospectuses disclosing Nationwide's receipt of revenue sharing existed in every year of the class period in connection with each and every fund invested in by every Plan with individual annuity contracts. Finally, it offers no evidence that any documents disclosing revenue sharing (whether issued by it or mutual funds) were ever sent to the then-current trustees of the Plans, much less sent to Class members. In short, Nationwide's purported common evidence is so deficient that it actually demonstrates convincingly that it will have to prove individually for each member of the Class whose Plan held individual annuity contracts that such Class member knew or should have known about its revenue sharing practices.

Even if it could be proven on a common basis that Class members knew or should have known about Nationwide's revenue sharing practices, proof of their violations of their fiduciary duties would inherently have to be proven on an individualized basis. Presumably, if a trustee had discovered Nationwide's revenue sharing practices, he or she could have done either of two things: (1) try to find another investment provider that did not engage in revenue sharing at all or which offered an adequate selection of mutual funds that did not pay revenue sharing, or (2) allow investment only in the very few mutual funds offered by Nationwide that did not pay it revenue sharing. Crucially, whether Class members should have taken either action would vary from Plan to Plan and, thus, would have to be proven individually.

For example, could a particular trustee have found another investment provider that did not take revenue sharing payments (or offered a significant number of funds that did not pay revenue sharing) that would have offered a selection of funds as good or better for his Plan's participants as Nationwide's selection at a price as good or better as that charged by Nationwide? Or, could a particular trustee have put together for her Plan a selection of funds offered by Nationwide that did not pay revenue sharing and provided an adequate portfolio of investment choices? For some Plans, based on the needs of its particular participants, one or both of those questions might be answered affirmatively (which Nationwide would argue as indicating a breach of fiduciary duty) and for some they would both be answered negatively (which would seem to indicate no breach of fiduciary duty, even under Nationwide's theory). Accordingly, whether a Class member violated a fiduciary duty by knowing of Nationwide's revenue sharing practice and not taking any action in response would have to be decided individually for that Class member.

In summary, the Court should have no doubt that the claims for breach of fiduciary duty asserted by Nationwide, purportedly on behalf of the Plans, could only be proven on a Class member-by-Class member basis, such that common issues do not predominate over issues affecting only individual Class members.

**2. A Class Action is Not a Superior Method to Resolve Any Issues Presented by the Counterclaim.**

As the Court is certainly aware, and as Plaintiffs have shown above, Nationwide has no real interest in trying to pursue monetary recovery on behalf of the Plans from Class members. It initially asserted the counterclaim as a litigation tactic to try to persuade the Court not to certify the Class. When that failed, it continued to assert the counterclaim so that it would have to be disclosed in the class notice and hopefully cause a significant number of Class members to opt

out of the Class to avoid potential individual liability.[4] Accordingly, certifying a counter-defendant class of trustees with Nationwide representing the Plans (and their participants) would be tantamount to asking the fox to guard the hen house.

If the Class does not succeed in recovering the revenue sharing payments from Nationwide, the individual participants in a particular Plan with a personal stake in recovery can evaluate whether the trustee of their Plan acted improperly and should be sued. The participants in the Plans would be the ultimate beneficiaries of a certified counterclaim, and the Court certainly cannot believe that their interests will be well served by letting Nationwide prosecute the counterclaim on their behalf. For that reason, a class action is not conceivably a superior method to resolve any issues presented by the counterclaim.

The fourth superiority factor of Rule 23(b)(3) – the likely difficulties in managing a class action – also weighs heavily against class certification. Because any breaches of fiduciary duties by Class members in failing to discover and avoid Nationwide's revenue sharing practices are so highly individualized, the Court would have to decide thousands of individual claims. One court deciding thousands of individual claims is not superior to many courts deciding them.

And, no reason exists for the Court to even consider undertaking such a tremendous burden. Any recovery on the counterclaim will not go to Nationwide, but to the Plans for the benefit of their participants. Accordingly, Nationwide will not be prejudiced in any way by not being allowed to pursue the counterclaim. On the other hand, as previously noted, the ultimate beneficiaries of the counterclaim, the Plans' participants, will be better off making decisions

[4] It is in part because of this potential for abuse that courts, including the Second Court, have held that counterclaims may not even be asserted, much less certified, against absent class members. *See, e.g., Van Gemmert*, 590 F.2d at 440 n.15; *Donson Stores, Inc.,* 58 F.R.D. at 489.

regarding their specific Plans and bringing any necessary litigation rather than letting Nationwide deficiently handle it for them.

In short, allowing Nationwide to pursue the counterclaim on a classwide basis is the very worst possible alternative to resolving any issues it presents, making it clear that certification is not a superior alternative.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs and the certified Class respectfully request the Court to deny certification of the Counterclaim and grant them all such other and further relief, general or special, legal or equitable, to which they may be justly entitled.

Respectfully submitted,

/s/ Roger L. Mandel
Roger L. Mandel
Federal Bar No. ct18180
BECKHAM & MANDEL
3400 Carlisle, Suite 550
Dallas, Texas 75204
214-965-9300
214-965-9301 (Fax)

Marc R. Stanley
Federal Bar No. ct18179
Martin Woodward
Federal Bar No. ct25263
STANLEY.IOLA, LLP
3100 Monticello Avenue, Suite 750
Dallas, Texas 75205
214-443-4300
214-443-0358 (Fax)

William Bloss
Federal Bar No. ct01008
Antonio Ponvert III
Federal Bar No. ct17516
Richard A. Bieder
Federal Bar No. ct04208
KOSKOFF KOSKOFF & BIEDER, P.C.
350 Fairfield Avenue
Bridgeport, Connecticut 06604
203-336-4421
203-368-3244 (Fax)

Gregory G. Jones
Federal Bar No. ct23443
LAW FIRM OF GREGORY G. JONES PC
211 E. Southlake Blvd., Suite 180
Southlake, Texas 76092
817-424-9001
817-424-1665 (Fax)

**CLASS COUNSEL**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 26, 2010, the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Roger L. Mandel
ROGER L. MANDEL