# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing Plan, ALAN GOUSE, as trustee of Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, CHRISTOPHER ANDERSON, as trustee of the Anderson Law Firm, P.C. 401(k) Profit Sharing Plan and Trust, f/k/a the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan, and H. GRADY CHANDLER, as trustee of the Law Offices of H. Grady Chandler, P.C., 401(k) Profit Sharing Plan and Trust<br><br>PLAINTIFFS,<br><br>v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,<br><br>DEFENDANTS. | CIVIL ACTION NO.:<br><br>3:01CV1552 (SRU) |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION OF THIRD AMENDED COUNTERCLAIM

Defendants Nationwide Financial Services, Inc. and Nationwide Life Insurance Company (collectively, "Nationwide" or "Nationwide Defendants"), by their undersigned counsel, file this reply memorandum in support of their motion to certify their Counterclaim as a class action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3).

### I. PRELIMINARY STATEMENT

Nationwide seeks certification of a class of Counterclaim Defendants comprised of trustees who become members of Plaintiffs' class. In its opening memorandum, Nationwide established that a Counterclaim class was appropriate in the event that the mutual fund payments

are found to be unlawful under ERISA, as Plaintiffs allege.[1] The Counterclaim class should be certified because it is the Plaintiffs and other trustees who had express, statutorily imposed fiduciary duties that they uniformly breached by approving the mutual fund payments and accepting the advantages of those payments, by failing to negotiate and monitor proper contract terms and charges for their plans that included the payments, and by improperly selecting investment options that corresponded to the payments..

In support of its certification motion, Nationwide relied on the evidence submitted in connection with the Plaintiffs' class certification motion, the Court's decision on that motion, and Plaintiffs' own admissions during their depositions. Nationwide also argued that efficiency and fairness demand one trial, not separate and duplicative counterclaim trials on the very issues that will be litigated in connection with Plaintiffs' claims.

In response to Nationwide's motion, Plaintiffs do not deny that the prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy – have been satisfied. In addition, Plaintiffs do not submit *any* evidence to rebut the evidence submitted by Nationwide. Instead, Plaintiffs rely on essentially three legal arguments in opposition to a Counterclaim class:

*First*, Plaintiffs argue Nationwide's counterclaim is an "abusive litigation practice," and insist that a counterclaim class is not permitted under Rule 13 of the Federal Rules of Civil

---

[1] Nationwide asserts its Counterclaim in the alternative, because it denies that it is an ERISA fiduciary, that it breached any duties, or that it is liable to the trustees for any ERISA relief. Nationwide respectfully submits that it will prove at trial that it had a purely contractual relationship as a product and service provider with respect to the plans, and that it exercised no discretionary authority or control over any plan assets. Moreover, even if Nationwide could somehow be deemed to perform a fiduciary function, the receipt of mutual fund payments is not per se inappropriate, as recognized by numerous Department of Labor opinions and court decisions approving the practice. Nationwide will also demonstrate that the payments are in consideration for services provided by Nationwide and offer substantial benefits to Nationwide customers in the form of lower prices, more investment options, and other terms.

Procedure. Plaintiffs' accusations are misplaced. And none of the precedent they cite precludes the certification of a counterclaim class under Fed. R. Civ. P. 13 or otherwise.

*Second*, Plaintiffs insist that a "super rigorous" standard should apply to the Court's Rule 23 analysis that does not apply to their claim. There is no legal support for this argument, and the cases are, in fact, to the contrary.

*Third*, Plaintiffs argue that the elements of Rule 23(b)(2) and (b)(3) have not been satisfied, offering a variety of reasons that are unsupported by a single citation to any evidence in the record or to any legal authority. Despite Plaintiffs' unsupported conjecture, the elements of Rule 23(b)(2) and (b)(3) are met for Nationwide's Counterclaim if Plaintiffs' own claims were properly certified. Plaintiffs cannot argue on the one hand that the allegedly unlawful arrangements for mutual fund payments give rise to uniform claims by the trustees against Nationwide, but not against the trustees who approved those arrangements. Moreover, fairness and efficiency require that Nationwide's Counterclaim should be certified as a class action and tried simultaneously with Plaintiffs' claims to avoid potentially thousands of individual follow-up trials in the event that Plaintiffs were to prevail in this case.

## II. RULE 13 DOES NOT PRECLUDE CERTIFICATION OF THE COUNTERCLAIM AS A CLASS ACTION.

As a threshold issue, Plaintiffs argue (Pls.' Opp. at 3-4) that Fed. R. Civ. P. 13 precludes certification of a Counterclaim class against the trustees, and base their argument on the Second Circuit's footnote citation to the *Donson Stores* case – even though neither *Donson Stores* nor the referenced footnote says any such thing. *See Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n.15 (2d Cir. 1978) (citing *Donson Stores, Inc. v. American Bakeries Co.*, 58 F.R.D. 485, 489 (S.D.N.Y. 1973)).

In *Donson Stores*, the plaintiffs had alleged a price-fixing conspiracy on the part of the defendants, who in turn counterclaimed against "unspecified members of the [plaintiff] class" for price discrimination under the Robinson-Patman Act. *Donson Stores*, 58 F.R.D. at 487. The issue for the district court was whether the defendants' counterclaims could proceed against a subset of unspecified *individual* plaintiff class members. The district court held that they could not, because Rule 23 "contemplates an adversary contest involving only the representative members of the class" and the defendants' counterclaims "contain[ed] none of the allegations [e.g., commonality, typicality] required in order to sustain a class action." *Id.* at 489. In other words, contrary to Plaintiffs' contention, *Donson Stores* expressly contemplated that the defendants' counterclaims *could* proceed on a class basis if the requirements of Rule 23 had been satisfied. Accordingly, *Donson Stores* does not preclude certification of a counterclaim class – nor, for that matter, does any other case cited by Plaintiffs nor any other precedent of which we are aware.

Moreover, even in the context of individual counterclaims, *Donson Stores* did not reject such counterclaims altogether, but merely held that they "can be handled on a class member-by-class member basis" following "the outcome of the principal suit." *Id.* at 489-90. The court thus expressly held that "[t]he [class] notice should contain appropriate mention of the entire scope of the case," including the individual counterclaims. *Id.* at 490. As the same court explained three years later, *Donson Stores* and similar cases do not preclude the assertion of counterclaims in the context of a class action, but "merely demonstrate a technique for managing and organizing" complex cases, and make clear that, however individual counterclaims are managed, "notification to the class should include reference to the counterclaims." *National Super Spuds v. New York Mercantile Exch.*, 75 F.R.D. 40, 43-44 (S.D.N.Y. 1977) (denying dismissal of

counterclaims); *see also Rollins v. Sears, Roebuck & Co.*, 71 F.R.D. 540, 543 (E.D. La. 1976) (same). The other cases cited by Plaintiffs interpret *Donson Stores* the same way.

Without any legitimate legal precedent, Plaintiffs' argument is reduced to unsupported accusations that Nationwide is engaged in an abuse of process by seeking class certification "so the class notice will have to disclose the counterclaim" and thereby "likely cause a significant number of Class members to opt out of the Class" to avoid liability. (Pls.' Opp. at 2.) Plaintiffs submit no evidence for these charges, because there is none. Indeed, as explained above, even if the Court does not certify the class, the authorities on which Plaintiffs rely require that notice of the Counterclaim be provided to all potential class members.

Further, the evidence shows that Nationwide's Counterclaim is perfectly justified, and that Plaintiffs are now attempting to maneuver the proceedings so that any responsibility for their fiduciary misconduct falls on Nationwide, and not on themselves. Plaintiffs have openly admitted in their depositions that they failed to comply with, and even disregarded, their fiduciary duties with respect to the mutual fund payments. Among other things, they approved the allegedly improper payments, failed to negotiate and monitor proper contract terms and charges for their plans, and failed to select proper investment options.[2] Plaintiffs have also not disputed in their class certification papers that their conduct was typical of the other trustees who are absent class members. (*See* Class Cert. Mot. (Docket # 299) at 4, 10, 24; Class Cert. Reply Br. (Docket # 360) at 5-6, 22.) As a result, if Nationwide is found to be an ERISA fiduciary, and a breach of fiduciary duty is found to have occurred as a result of the mutual fund payments, then Plaintiffs and the trustees bear responsibility for that breach.

## III. THERE IS NO LEGAL BASIS FOR A SPECIAL CLASS CERTIFICATION STANDARD FOR THE COUNTERCLAIM CLASS.

Plaintiffs next argue that the Court must apply a "super" rigorous certification standard to Nationwide's motion to certify the Counterclaim class, different from the standard the Court applied to Plaintiffs' motion for class certification. (Pls.' Opp. at 5-6.) There is no support for such a heightened standard. To the contrary, the cases Plaintiffs cite demonstrate that courts apply the same standard under Rule 23, regardless of the type of class at issue. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (Rule 23(a) requirements "apply equally to plaintiff and defendant classes"); 2 Newberg on Class Actions § 4:34 (4th ed. 2002) (a counterclaim class has "to satisfy all Rule 23 criteria, *which makes no exception for different kinds of classes*") (emphasis added); *see also Monaco v. Stone*, 187 F.R.D. 50, 64 (E.D.N.Y. 1999) ("The requirements of Rule 23 govern the certification of defendant classes as well as plaintiff classes."); *Rios v. Marshall*, 100 F.R.D. 395, 412 (S.D.N.Y. 1983) (same).

Plaintiffs also quote from a treatise, but cite no cases, suggesting that a special "due process concern" attaches to defendant classes. (Pls.' Opp. at 5-6.) The Counterclaim class here, however, raises none of the unique due process issues that are sometimes associated with defendant classes. For instance, there is no risk that Plaintiffs are unwilling or adverse representatives of the class. *Cf. Thillens, Inc. v. Community Currency Exchan. Ass'n.*, 97 F.R.D. 668, 674 (N.D. Ill. 1983) ("Arguably, [] a finding that a defendant class is adequately represented should resolve the due process dilemma which attaches to certification of a defendant class."). Likewise, all Counterclaim class members will receive notice and an opportunity to defend

---

[2] *See* Gouse 2007 Dep. Tr. at 244, 247, 251 (Ex. Q. to Def. Class Opp. (Docket # 338)); Ferdon 2007 Dep. Tr. (attached as Ex. A) at 25-27, 31-32, 34-35; Wiberg 2007 Dep. Tr. (Ex. P to Def. Class Opp.) at 14, 32-33, 39-40, 52-53, 60, 76-79; Chandler Dep. Tr. (attached as Ex. B) at 23, 44-45, 47-51, 54-55, 68-69. 133, 137-38.

against the suit. *Cf. Folette v. Vitanza*, 658 F. Supp. 492, 507 (N.D.N.Y. 1987); *In re Gap Stores Sec. Litig.*, 79 F.R.D. 283, 291 (N.D. Cal. 1978).

## IV. THE COURT SHOULD CERTIFY THE COUNTERCLAIM CLASS UNDER RULE 23(b)(2) AND (b)(3).

Nationwide does not agree that it is an ERISA fiduciary, that the mutual fund payments amounted to a breach of fiduciary duty or prohibited transaction by Nationwide under ERISA, or that any such violation should result in any ERISA relief to the Plaintiffs. If Plaintiffs could prove otherwise, however, Nationwide will show that it was the uniform conduct of the trustees that gave rise to those payments, and that the trustees are uniformly responsible for any ERISA violation.

Plaintiffs do not dispute that the prerequisites of Rule 23(a) have been met for the proposed Counterclaim class. Plaintiffs argue instead that the Counterclaim should not be certified under Rule 23(b)(2) and (b)(3), without citing a single legal authority, or pointing to any evidence in the record. Because the Court rejected similar but much stronger arguments challenging Plaintiffs' class, it should reject Plaintiffs' arguments challenging the Counterclaim class as well.

### A. The Counterclaim Class Should Be Certified Under Rule 23(b)(2).

Nationwide seeks to certify a Counterclaim class under Rule 23(b)(2) on the ground that all the trustees in the putative class had a fiduciary duty to understand and consider the mutual fund payments, the advantages of those payments to the plans and to Nationwide, and their effect on the terms of the Nationwide variable annuity contracts. (Counterclaim (Docket # 425) ¶¶ 12-29, 37; Counterclaim Class Cert. Mot. (Docket # 434) at 2, 6.) The evidence shows that Plaintiffs failed to comply with, and utterly disregarded, this duty when they approved the mutual fund payments, failed to negotiate and monitor proper contract terms, and selected

investment options that corresponded to mutual fund payments that they now claim are improper. Plaintiffs have conceded that their conduct was typical of the other trustees who are absent class members, and they offer no evidence that any trustee acted differently than they did. (*See* Class Cert. Mot. (Docket # 299) at 4, 10, 24; Class Cert. Reply Br. (Docket # 360) at 5-6 , 22.)

As a result, the evidence in the record shows that Plaintiffs and the Counterclaim class have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

Plaintiffs do not challenge this evidence. Plaintiffs rather offer two legal arguments in opposition to a 23(b)(2) class.

### 1. **Plaintiffs Cannot Argue That Monetary Relief Predominates.**

Plaintiffs' first legal argument is that "injunctive relief does not predominate over monetary relief" in this case, and that injunctive relief "could not conceivably predominate over" the payment of the allegedly improper mutual fund payments received by Nationwide. (Pls.' Opp. at 6, 7.) But Plaintiffs' position here is at complete odds with their argument before this Court when they sought class certification. (*See, e.g.,* Pls.' Class Sur-Response Br. (Docket # 385) at 12 (Plaintiffs' "injunctive and declaratory relief predominates").) Nationwide agrees with Plaintiffs that injunctive relief does not predominate over monetary relief. But the Court has held otherwise, based on Plaintiffs' insistence, and Plaintiffs are now either judicially estopped from arguing to the contrary in opposition to Nationwide's motion, or the Rule 23(b)(2) class they have sought should be de-certified. *See Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) (judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase").

Plaintiffs then suggest that "Nationwide fails to articulate any specific injunctive relief that this Court could legally impose on the class." (Pls.' Opp. at 6.) But Nationwide has articulated that specific injunctive relief by using the words of this Court in its earlier class certification decision: The trustees should be "uniformly stop[ped] from engaging in the disputed conduct." *Haddock v. Nationwide*, 262 F.R.D. 97, 122 (D. Conn. 2009) ("Class Ruling"). The disputed conduct here is the trustees approving and accepting the advantages of the "revenue sharing" payments on the one hand, while claiming that those payments are unlawful on the other. Moreover, Nationwide has articulated that it seeks to certify the Counterclaim class under Rule 23(b)(2) to ensure that any other equitable remedies available to the plans, such as restitution, are the responsibility of the trustees[3]

Plaintiffs further complain that injunctive relief would "confer no benefit upon the Plans...." (Pls.' Opp. at 7.) That is incorrect. The plans have a strong interest in ensuring that the trustees of their plans negotiate, understand, and approve contract terms and charges that are based on lawful arrangements, and are enjoined from continuing their reckless disregard of their statutory duties to the plans into the future. The plans also have a strong interest in ensuring that Plaintiffs and other trustees are subject to any other equitable remedies (including restitution) for the recovery of any improper mutual fund payments. Plaintiffs and the other trustees undoubtedly hope that by taking action against Nationwide that disregards their own misconduct and seeks only relief against Nationwide, they can game the litigation process to avoid being subject to any liability themselves. But that is not in the plans' best interests, and underscores the serious conflict that Plaintiffs have in purporting to represent the plans' interests at this point.

---

[3] If the Court agrees with Plaintiffs that the Counterclaim does not provide adequate notice of Nationwide's request for injunctive and other equitable relief, Nationwide respectfully requests leave to amend its Counterclaim to do so.

## 2. Plaintiffs Cannot Argue That Injunctive Relief Is "Inappropriate".

Plaintiffs' second legal argument is that enjoining Nationwide from receiving the supposedly unlawful mutual fund payments would be appropriate for their case, but that an injunction prohibiting Plaintiffs and the other trustees from approving and taking advantage of those allegedly unlawful mutual fund payments would "not be appropriate." (Pls.' Opp. at 7.) Plaintiffs offer no legal authority to support this illogical argument. Instead, they offer only a question: "What exactly would the Court order to prevent Class members from approving and accepting the advantages of revenue sharing on the one hand while claiming those payments are unlawful on the other?" *Id.* The answer is very clear. Any Court order would direct Plaintiffs and trustees to stop breaching their fiduciary duties (by approving and/or recklessly disregarding the payments that they now insist are unlawful) and to stop accepting the advantages of those unlawful payments instead of performing their required fiduciary functions (e.g., negotiating, understanding, and approving contract terms and charges that are based on lawful arrangements).

This is a uniform issue for the plans. Although Plaintiffs complain that there is some question as to whether injunctive relief would be appropriate "for each and every Plan in light of its differing circumstances," Pls.' Opp. at 7, they do not articulate what those differing circumstances are. Nor can they, because each of the trustees approved the mutual fund payments to Nationwide under the terms of their annuity contracts or by contract amendment. In any event, the Court has previously rejected the argument that the circumstances relating to individual plans precludes class certification. Class Ruling, 262 F.R.D. at 117, 122, 125.

### B. The Counterclaim Class Should Be Certified Under Rule 23(b)(3).

In their opening memorandum, the Nationwide Defendants showed that "the questions of law or fact common to class members predominate over any questions affecting only individual

members" and that "a class action is superior" to other methods of adjudication. *Cordes & Co. Fin. Servs. Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007). Specifically, the common questions of law and fact that predominate are whether the trustees uniformly breached their fiduciary duties by approving the allegedly unlawful mutual fund payments, disregarded their duties to understand those payments and how they were obtained, and failed to negotiate lawful plan terms as they would now define them. A class action is superior based on the substantial overlap of issues between Plaintiffs' claims and Nationwide's Counterclaim, the Court's prior certification of Plaintiffs' class, and the inefficiency and unfairness of litigating separately the issues involving the mutual fund payments in individual follow-up trials.

Plaintiffs do not oppose Nationwide's position with any legal authority or evidence in the record. Instead, they raise several unsupported legal arguments that have no merit.

### 1. **Plaintiffs Cannot Argue That There Are Individualized Issues.**

Plaintiffs argue first that there are individualized issues surrounding the relationship between Nationwide and each plan – ironically, the same types of individualized issues that Nationwide proferred in opposing Plaintiffs' motion for class certification, and which the Court rejected based on Plaintiffs' insistence. (Pls.' Opp. at 8-10.) Based on the argument they are now making, Plaintiffs' class should either be de-certified or Plaintiffs should be judicially estopped from contradicting their earlier arguments.

Plaintiffs then argue that individualized issues will predominate by creating a "disclosure" issue that does not exist in the case. (*See* Pls.' Opp. at 8.) In particular, Plaintiffs argue that there will be individualized issues as to whether "the trustees who compose the Class knew or should have known about Nationwide's revenue sharing practices ...." (*Id.*)

But Nationwide's Counterclaim is not based on a disclosure theory. Nationwide's Counterclaim is based on the express, statutorily imposed fiduciary duties that the trustees in the proposed Counterclaim class owed to the plans, and on proof that the trustees uniformly breached those duties by approving the mutual fund payments they now claim to be improper, by failing to negotiate and monitor proper contract terms and charges for their plans, and by selecting investment options that corresponded to the mutual fund payments about which they now complain. If the proposed class members are arguing that they were unaware of the mutual fund payments, that is simply further evidence that they failed to exercise those fiduciary duties by asking questions and conducting a diligent inquiry.

In any event, Plaintiffs have not introduced a shred of evidence showing that trustees failed to receive information advising them of the mutual fund payments, and, indeed, have conceded that the payments were fully disclosed "to the Class as a whole." (*See, e.g.,* Pls.' Class Reply (Docket # 360) at 22-23 (highlighting Nationwide's disclosures in prospectuses and on web site).) Furthermore, Plaintiffs have admitted that disclosure of the mutual fund payments is not an issue in the case.[4]

And even if disclosure were an element of this case, Nationwide's motion more than adequately shows that the trustees uniformly received information regarding the mutual fund payments throughout the entire class period. Both the Rose and Henderson declarations submitted in opposition to the Plaintiffs' motion for class certification show that the trustees and their agents (the "PPAs" and the brokers) all received disclosure of the mutual fund payments. (Rose Dec. ¶ 36; Henderson Dec. ¶ 39.) Moreover, the documents that Nationwide has

---

[4] *See, e.g.,* Plaintiffs' First Amended Supplemental Responses and Objections to Defendants' Third Set of Interrogatories, Response No. 2 ("Plaintiffs specifically disavow seeking relief based upon any misrepresentations or omissions by Nationwide ....")

- 12 -

submitted in the record show that the trustees and their agents uniformly received disclosure regarding the mutual fund payments. (*See* Defs.' Counterclaim Class Mot. at 4-5.)

Plaintiffs also argue that the disclosures were different for different trustees. (Pls.' Opp. at 8-10.) For example, they argue that some trustees of group annuity plans would not have received the standard letters sent by Nationwide disclosing the mutual fund payments in the late 1990s, because those trustees did not enter into a variable annuity contract with Nationwide until after those standard letters were issued. But those trustees would have received new group contracts with tiered pricing that reflected the mutual fund payments, and thus they had the disclosure, albeit in a different form, and approved the contract with those terms.

Plaintiffs further argue that the trustees for plans "likely changed over time," citing only one example where the Anderson Plan now has a new trustee different from the one who negotiated the Nationwide variable annuity contract. (Pls.' Opp. at 9.) Plaintiffs do not cite any legal authority suggesting that a change in trustees would have some effect on Nationwide's claim, and there is none. The current trustee for the Anderson Plan has access to all the disclosures in the Anderson Plan files or that were made to the Plan, and cannot recklessly disregard the information that is available to him. Even if he could, ERISA holds him liable for failing to address his predecessors' breach of fiduciary duty. *See* 29 U.S.C.A. § 1105(a)(3) ("a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan" for failing to take remedial action upon discovery of the breach).

There is likewise no support for Plaintiffs' argument that, despite the common disclosures, "proof of [the trustee's] violations of their fiduciary duties would inherently have to be proven on an individualized basis." (Pls.' Opp. at 10-11.) Rather than offering any evidence

or legal authority to establish what that "individualized basis" might be, Plaintiffs proceed to speculate that "presumably, if a trustee had discovered Nationwide's revenue sharing practices, he or she could have" found another plan provider, or allowed investment only in investment options that were not associated with "revenue sharing." (*Id.*) Even if this speculation were worth anything, however, it is beside the point. The basis for Nationwide's Counterclaim is that Plaintiffs and the other trustees breached their fiduciary duty to understand the terms of the Nationwide variable annuity contracts they were negotiating, the charges and costs thereof, and the investment options made available under that contract. Presenting the issue as whether the trustees "presumably" "could have" done something differently ignores the fact that they uniformly *failed* to do something differently by approving the allegedly improper arrangements in violation of their fiduciary duties.

### 2. A Class Action Is Superior And Manageable.

Plaintiffs also raise a number of arguments with respect to whether a Counterclaim class is superior, once again failing to cite any evidence or legal authority to support their position.

Plaintiffs first argue that "Nationwide has no real interest in trying to pursue monetary recovery on behalf of the Plans from Class members," without any citation. (Pls.' Opp. at 11.) This is incorrect. If Nationwide were found to be a fiduciary, Nationwide would have a strong interest in ensuring that the trustees were held responsible to the plans for the trustees' uniform breach of their fiduciary duties, which has led to the trustees' accepting the advantages of revenue sharing for years instead of performing their fiduciary responsibilities.

Plaintiffs next argue that a class action is not superior because participants are best situated to "evaluate whether the trustee of their Plan acted improperly" and they are "better off making decisions regarding their specific Plans and bringing any necessary litigation." (Pls.'

Opp. at 12-13.) That is also incorrect. Nationwide's Counterclaim underscores that Plaintiffs in this case have maneuvered the process to try to shift their explicit responsibility for the mutual fund payments to Nationwide.

More fundamentally, Plaintiffs' argument that each plan is best suited to address the mutual fund payment issues is completely inconsistent with their own class certification theory. Nationwide argued in opposition to Plaintiffs' class certification motion that each trustee had a unique fiduciary duty to protect the interests of his own plan and had no business bringing a class action on behalf of trustees of unrelated plans and their participants. (*See* Defs.' Sur-Reply in Opp. to Pls.' Mot. for Class Cert. Based on Fifth Am. Compl. (Docket # 382) at 3-4.) Plaintiffs expressed no concerns then about usurping the authority of other trustees and their plan participants to "mak[e] decisions regarding their specific Plans." Accordingly, their newfound concerns about the rights of plan participants ring hollow.

Further, Plaintiffs do not even address two other elements of the superiority analysis that unequivocally support this class action: "the extent and nature of any litigation concerning the controversy already begun by or against class members"; and "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(B), (C). Because the litigation is pending in this Court and the Court has already certified Plaintiffs' class, certification of the Counterclaim class clearly would serve the Rule's dual goals of efficiency and fairness.

## CONCLUSION

For these reasons, the Court should certify a class of Counterclaim Defendants comprised of trustees who become members of Plaintiffs' class.

Dated: March 12, 2010

Respectfully submitted,

Defendants Nationwide Financial Services Inc.
and Nationwide Life Insurance Co.

By: /s/ Thomas F. Clauss, Jr.
Thomas F. Clauss, Jr.
Wiggin and Dana LLP
400 Atlantic Avenue
P.O. Box 110325
Stamford, CT 06911-0325
Telephone: (203) 363-7610
Facsimile: (203) 363-7676

Charles C. Platt, Esq. (CT 23036)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Daniel H. Squire, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

# CERTIFICATION

I hereby certify that on this 12th day of March, 2010, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

>Richard A. Bieder, Esq.
>Antonio Ponvert III, Esq.
>Koskoff, Koskoff & Bieder
>350 Fairfield Avenue
>Bridgeport, CT 06604
>
>Gregory G. Jones, Esq.
>Law Firm of Gregory G. Jones, P.C.
>603 South Main Street, Suite 200
>Grapevine, TX 76051
>
>Marc R. Stanley, Esq.
>Martin Woodward, Esq.
>Stanley, Mandel & Iola
>3100 Monticello Avenue
>Suite 750
>Dallas, TX 75205
>
>Roger L. Mandel, Esq.
>Beckham & Mandel
>3400 Carlisle, Suite 550
>Dallas, TX 75204


/s/ Thomas F. Clauss, Jr.