## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Dye Company Inc. 401(k) Profit-Sharing Plan, et al.,<br>        Plaintiffs, | |
| v. | No. 3:01cv1552 (SRU) |
| NATIONWIDE FINANCIAL SERVICES, INC. and NATIONWIDE LIFE INSURANCE COMPANY,<br>        Defendants. | |

## RULING ON MOTION FOR CERTIFICATION OF COUNTERCLAIM DEFENDANT CLASS AND ORDER

Defendants Nationwide Financial Services, Inc. and Nationwide Life Insurance Company (collectively, "Nationwide") move to certify a class of counterclaim defendants. The putative class includes all Trustees of ERISA-qualified retirement plans that had variable annuity contracts with Nationwide, or whose participants had contracts with Nationwide, at any time from January 1, 1996, or the first date Nationwide began receiving payments from mutual funds based on a percentage of the assets invested in the funds by Nationwide, whichever came first, to the date November 6, 2009. In short, Nationwide seeks to certify the existing plaintiff class as a class of counterclaim defendants. For the reasons that follow, that motion is denied.

## I.      Background

The history of this case is set forth in several previous rulings. *See Haddock v. Nationwide Fin. Servs. ("Haddock I")*, 419 F. Supp. 2d 156 (D. Conn. 2006); *Haddock v. Nationwide Fin. Servs. ("Haddock II")*, 514 F. Supp. 2d 267 (D. Conn. 2007); *Haddock v. Nationwide Fin. Servs. ("Haddock III")*, 570 F. Supp. 2d 355 (D. Conn. 2008); *Haddock v. Nationwide Fin. Servs. ("Haddock IV")*, 262 F.R.D. 97 (D. Conn. 2009). I therefore assume

familiarity with the facts of the case, although two of my earlier decisions, *Haddock III* and *IV*, warrant recapitulation for the purpose of deciding the defendants' motion.

In *Haddock III*, I ruled that, although the defendants were unable to sue the plaintiffs for contribution or indemnification, if Nationwide were found to be a fiduciary to the Plans then it would have standing to sue the Trustees for violating their ERISA fiduciary duties. 570 F. Supp. 2d at 364-65. I specified that Nationwide's potential standing was limited to "bring[ing] a breach of fiduciary duty counterclaim to the extent that they sue on behalf of the Plans for harm arising out of the revenue sharing payments." *Id.* at 365. That counterclaim had to be an independent action holding the Trustees personally liable for their alleged breaches of fiduciary duty, and not an attempt, akin to contribution or indemnification, to distribute monetary liability between Nationwide and the Trustees. I ultimately dismissed Nationwide's counterclaim, however, because it failed to state "an actual harm or loss to the Plans" for which the Trustees were responsible. *Id.* at 365-66.

In *Haddock IV*, I certified the class of Trustee plaintiffs pursuant to Federal Rule of Civil Procedure 23(b)(2).[1] In particular, I held that Nationwide's "ratification" defense – that Nationwide is not liable because the plaintiff Trustees consented to and ratified the revenue sharing payments – applied to all class members, as did Nationwide's breach of fiduciary duty counterclaim. "[T]hese counterclaims are not 'unique' to those named plaintiffs; *any* trustee who stepped forward to act as class representative (or, for that matter, any putative class member who

---

[1] In my order of class certification, issued the same day as the *Haddock IV* ruling, I mistakenly certified the Trustees as a class of counterclaim defendants. (Doc. # 417, ¶ 4.) The plaintiffs subsequently moved to decertify that counterclaim defendant class (doc. # 427), which I granted at an in person conference held December 17, 2009 (doc. # 430).

opts out and chooses to litigate his or her claims individually) would be subject to the same breach of fiduciary duty counterclaim." 262 F.R.D. at 118-19.  I also clarified that the Nationwide defendants were fiduciaries to the extent they exercised authority or control over the Plans' assets in the form of investment accumulation units, and that the existence of the revenue sharing payments could be sufficient to demonstrate that Nationwide exercised such authority and control.  *Id.* at 123-24.  I then held that the Trustees' claims for injunctive relief predominated over their claims for monetary relief because they are suing primarily to stop Nationwide from breaching its fiduciary duty in the future; furthermore, the Trustees are seeking disgorgement, an equitable form of monetary relief, on behalf of their plans pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1312(a)(2).  *Id.* at 59-60.  That is, the plaintiffs are seeking to obtain the net profits that Nationwide had received from its revenue sharing payments – earnings that allegedly should have been received by the Plans and not by Nationwide.

Nationwide filed a new answer and third amended counterclaim to the plaintiffs' sixth amended complaint in December 2009.  *See* Def. Answer and Third Amended Countercl. (Doc. # 429.)  In that answer, Nationwide re-alleged its defenses, which include, *inter alia*, that "[a]ny injuries that the Plaintiffs and the class members allegedly sustained occurred as a direct result of their failure to exercise reasonable prudence and care," and that the Trustees had ratified all of the revenue sharing payments of which they now complain.  Def. Answer at 9.  Nationwide also renewed its breach of fiduciary duty counterclaim brought pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), against the named plaintiffs and any Trustees who become members of the plaintiff class.  That counterclaim is contingent on Nationwide being found to be a Plan fiduciary and "the [P]lans prov[ing] that they have suffered any harm."  Def. Third Amended

Countercl. ¶ 2.  The counterclaim is put forward in strong, absolute terms:  Nationwide alleges that the Trustees are *exclusively* responsible for any lost profits suffered by the retirement plans on account of Nationwide's revenue sharing payments.  *Id.* ¶¶ 37-38.  The Trustees are singularly responsible, according to the defendants, regardless of whether Nationwide is found to have breached its fiduciary duties with respect to the revenue sharing payments.  *Id.* ¶ 37.  The damages that Nationwide seeks are "any 'revenue sharing payments' or other excessive fees, charges, or payments described in the Sixth Amended Complaint."  *Id.* ¶ 40.

Nationwide now moves to certify the plaintiff class as a class of counterclaim defendants pursuant to Rule 23(b)(2) and (b)(3).  Essentially, Nationwide argues that the requirements of Rule 23(a) are satisfied for the same reasons I identified in *Haddock IV* when I certified the class of plaintiff Trustees: the counterclaim defendants are sufficiently numerous, the counterclaim raises common questions of law and fact for all of the Trustees, the named counterclaim defendants are typical of the Trustees, and there is nothing unique about the counterclaims for particular Trustees that would render the named counterclaim defendants inadequate class representatives.  Nationwide then argues that it is entitled to class certification under Rule 23(b)(2) because it seeks to enjoin the Trustees from accepting the advantages of revenue sharing payments henceforth, and under Rule 23(b)(3) because the Trustees are personally liable and must pay the Plans for earnings that accrued to Nationwide in the form of net profits from the revenue sharing payments.

## II.    Standard of Review

To certify a class, the party seeking certification must prove by a preponderance of the evidence that its putative class meets the requirements of Rule 23(a) and (b).  *Teamsters Local*

*445 Freight Div. Pension, Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). Rule 23(a) sets the preconditions of numerosity, commonality, typicality, and adequacy for class certification. For the purpose of deciding Nationwide's motion, I assume that all four of those preconditions have been met. Instead, I turn to the requirements of Rule 23(b)(2) and (b)(3), which, as I explain below, Nationwide has not satisfied.

**III.    Discussion**

Before examining whether Nationwide has met either the Rule 23(b)(2) or (b)(3) standard for class certification, it is helpful to restate briefly the nature of Nationwide's counterclaim. Nationwide is counterclaiming against the Plans' Trustees pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1312(a)(2), which permits a fiduciary to obtain relief under 29 U.S.C. § 1109. Section 1109(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

Nationwide is suing in its capacity as a fiduciary, that is, to the extent it exercises authority over the Plans' accumulation units, the investment dollars that Nationwide has allegedly leveraged to extract revenue sharing payments from mutual funds; moreover, by suing in its fiduciary capacity, Nationwide is pursuing its counterclaim on behalf of the Plans. Def. Third Amended Countercl. ¶ 35; *Haddock III*, 570 F. Supp. 2d at 365. Nationwide concedes that in order to bring its counterclaim, it must first be found to be an ERISA fiduciary to the Plans. Nationwide also does not contest that its statutory authorization to sue on behalf of the Plans is

-5-

limited to matters within its scope as a fiduciary; thus, the section 502(a)(2) counterclaim is limited to the issue of the Trustees' personal liability for consenting to and ratifying Nationwide's receipt of revenue sharing payments from mutual funds.  Finally, Nationwide's counterclaim may be pursued if, and only if, it is "solely in the interest of the [Plans'] participants and beneficiaries" and "for the exclusive purpose of providing benefits to participants and beneficiaries."  29 U.S.C. § 1104; *cf. Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1261 (5th Cir. 1980) (holding that trustee's participation in decision whether trust should sue him for breach of fiduciary duty was, in itself, a breach of trustee's fiduciary duty).  In other words, Nationwide may not bring its counterclaim for the purpose of benefitting itself, but is limited to suing the Trustees in order to further the Plans' interests.

A.      Rule 23(b)(2) certification

Rule 23(b)(2) class certification is reserved for cases where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  In an action that seeks both injunctive and monetary relief, such as Nationwide's counterclaim for breach of fiduciary duty, Rule 23(b)(2) classification is appropriate when the requested injunctive relief predominates over monetary damages.  *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 18 (2d Cir. 2003).  Whether injunctive relief predominates is determined according to a two-part examination.

> The district court may allow (b)(2) certification if it finds in its informed, sound judicial discretion that (1) the positive weight or value to the plaintiffs of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed, . . . and (2) class treatment would be efficient and manageable, thereby achieving an

appreciable measure of judicial economy.

Although the assessment of whether injunctive or declaratory relief predominates will require an ad hoc balancing that will vary from case to case, before allowing (b)(2) certification a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.  Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.

*Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001) (internal quotations omitted).

Under that "ad hoc" approach, Nationwide's request for an injunction does not predominate its claim for monetary relief.  As a preliminary matter, although Nationwide seeks Rule 23(b)(2) classification in its motion, Nationwide's third amended counterclaim lacks any formal request for an injunction against the Trustees; Nationwide never contends that the Trustees must be enjoined from entering future agreements in which their annuity providers receive revenue sharing payments from mutual funds or other investment vehicles.  *See* Def. Third Amended Countercl. ¶ 40 (alleging only that the counterclaim defendants are liable for lost revenue sharing payments or other "excessive fees, charges, or payments described in the Sixth Amended Complaint").  I am willing to accept that Nationwide sincerely seeks an injunction in addition to monetary damages.  The absence of a requested injunction in its third amended counterclaim is quite telling, however, and suggests that any injunctive relief is "insignificant" in relation to monetary damages, even if it may not be a "sham."  *Robinson*, 267 F.3d at 164.

The defendants' third amended counterclaim also makes clear that "the positive weight or

value to the plaintiffs of the injunctive or declaratory relief," *id.*, is, at best, insubstantial. Nationwide is counterclaiming pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), which permits one fiduciary to hold another fiduciary personally liable for breaching her duties, and not section 502(a)(3), 29 U.S.C. § 1132(a)(3), the statute's catch-all provision for remedies not included in section 502(a)(2). *See Haddock IV*, 262 F.R.D. at 127 (distinguishing section 502(a)(2) from 502(a)(3)).  Under 29 U.S.C. § 1109, the provision cross-referenced by section 502(a)(2), a fiduciary may be required "to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary."  In *Haddock IV*, I held that section 502(a)(2)'s phrase "to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary" established an equitable form of relief – namely, disgorgement of unlawfully earned profits – and, because the Trustees were seeking that equitable form of monetary relief, Rule 23(b)(2) certification was appropriate for the plaintiff class.  262 F.R.D. at 127 & n.19.  The same is not true of Nationwide's counterclaim, however. Nationwide does not aim to recover unjust enrichment from the Trustees.  Nor could it: neither side alleges that the Trustees earned any profits from Nationwide's revenue sharing payment scheme.  *See Haddock III*, 570 F. Supp. 2d at 363.  Rather, Nationwide is suing the Trustees to hold them liable for any losses suffered by the Plans because of the Trustees' ratification of the revenue sharing payments.  Nationwide's counterclaim theory is the inverse of the Trustees' claim: the defendants contend that their alleged gains from the revenue sharing payments were not wrongful profits that Nationwide earned, but money that the Plans lost and for which the Trustees are completely responsible.  That is more consistent with a theory of liability that

-8-

sounds in law, rather than equity, and for which damages, and not disgorgement or a constructive

trust, is the appropriate remedy.  *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S.

204, 213 (2002) (distinguishing legal claims where the plaintiffs seeks "to obtain a judgment

imposing a merely personal liability upon the defendant to pay a sum of money," from equitable

claims "where money or property identified as belonging in good conscience to the plaintiff

could clearly be traced to particular funds or property in the defendant's possession" (internal

quotations omitted)).[2]  Nationwide's counterclaim, therefore, is legal in nature and seeks

monetary damages principally.  Injunctive relief does not predominate.

Finally, it is significant that the defendants' counterclaim is contingent on antecedent

findings that Nationwide is a fiduciary and that it caused harm to the plans by breaching its

fiduciary duties; as Nationwide puts it in the final paragraph of its counterclaim, it seeks

"recovery of any such relief from Counterclaim Defendants" only in the event that Nationwide is

"adjudged liable to Counterclaim Defendants and Counterclaim Defendants are awarded any

relief."  Def. Third Countercl. at 23-24.[3]  Although that statement does not mention monetary

relief specifically, its phrasing indicates that Nationwide chiefly aims to have the Trustees pay

---

[2]  I distinguished *Knudson* in *Haddock IV* when I discussed whether the Trustees'
injunctive relief predominated their motion for class certification.  *See* 262 F.R.D. at 126-27 &
n.19.  I cite it here, however, for the limited purpose of illustrating the difference between legal
and equitable claims.

[3]  Nationwide's counterclaim also states that "Counterclaim Defendants' liability is
separate and independent from, and not conditioned upon, any liability on the part of the
Counterclaim Plaintiffs."  Def. Third Amended Countercl. ¶ 39.  As I understand that paragraph,
Nationwide is alleging that the Trustees are exclusively liable to the Plans regardless of whether
there is a preceding finding that Nationwide is responsible for any Plan losses.  That paragraph
does not contradict Nationwide's position that it is pursuing its counterclaim only if it is held to
have breached its fiduciary duties and to owe disgorgement to the Plans.

whatever amount Nationwide is found liable to disgorge to the Plans.  Indeed, if the Trustees merely succeed in enjoining the defendants from continuing to collect revenue sharing payments, Nationwide would have no reason to seek an injunction against the Trustees.  First, it is unclear whether Nationwide could, in fact, continue its counterclaim if it is enjoined from accepting revenue sharing payments; should Nationwide be barred from collecting revenue sharing payments, it will likely lose the authority and control over Plan assets that gave rise to its fiduciary status.  *See Haddock IV*, 262 F.R.D. at 123 (holding that Nationwide's fiduciary status is tied to its authority and control over the Plans' accumulation units, which were allegedly used to extract the revenue sharing payments).  With the loss of that fiduciary status, Nationwide may lack the capacity to countersue the Trustees pursuant to section 502(a)(2).  *See Chemung Canal Trust Co. v. Sovran Bank/Md.*, 939 F.2d 12, 14 (2d Cir. 1991) (holding that former fiduciary lacked standing to bring an action pursuant to ERISA section 502(a)(2)).[4]

Even if the Trustees' injunction would not strip the defendants of their fiduciary status, however, Nationwide would still fail the first prong of the Second Circuit's predominance test. In the absence of a possible monetary recovery, a reasonable plaintiff in Nationwide's position would not bring a suit to obtain the requested injunctive or declaratory relief, *see Robinson*, 267 F.3d at 164, for the simple reason that a reasonable plaintiff would not waste resources litigating for a redundant remedy.  Should the Trustees win injunctive relief, their counterparty,

---

[4] I say that Nationwide "may" lack the capacity to sue because the issue has not been briefed or argued by the parties, and I need not decide it to deny the defendants' motion to certify a counterclaim defendant class under Rule 23(b)(2).  I note, however, that I distinguished *Chemung* in *Haddock IV* when I held that the trustee of a terminated plan had standing to sue under section 502(a)(2), albeit for reasons unique to the trustee that are likely inapplicable to Nationwide.  *See* 262 F.R.D. at 113.

Nationwide, would be barred from accepting future revenue sharing payments.  No reasonable plaintiff standing in the counterparty's shoes – and, certainly, no reasonable fiduciary acting in the Plans' interests – would expend more money to enjoin the Trustees from ratifying revenue sharing payments that, according to the Trustees' initial injunction, are already prohibited.

For those reasons, Nationwide's motion for Rule 23(b)(2) certification is denied. Monetary damages, and not injunctive relief, predominates the defendants' third amended counterclaim.  Thus, should a counterclaim defendant class be certified, it will have to be pursuant to Rule 23(b)(3).

B.    Rule 23(b)(3) certification

Rule 23(b)(3) certification is reserved for when "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  A thorough Rule 23(b)(3) analysis of the predominance of common questions and the superiority of a class action is unnecessary to decide Nationwide's motion, however, because the questions of law purportedly common to the class – namely, whether the Trustees breached their fiduciary duties and are therefore liable for losses suffered by their retirement plans – are questions that can be decided without class certification.  Rather, Nationwide's counterclaim fails to state a claim on which its requested relief can be granted.

To see why Nationwide's counterclaim must be dismissed, return again to the two preconditions that Nationwide asserts to be necessary for its counterclaim.  First, Nationwide must be found to be a fiduciary.  That precondition is sensible: without being found to be a

fiduciary, the defendants could not mount their counterclaim under ERISA section 502(a)(2), 29

U.S.C. § 1132(a)(2).  The second precondition is that Nationwide must be found to have violated

its fiduciary duty, thus causing harm to the Plans and warranting the disgorgement of

Nationwide's net profits, an amount equal to the value of the revenue sharing payments received

less the value of any services rendered for the Plans in exchange for them.  That second

precondition involves, really, two findings: (1) that Nationwide breached its fiduciary duty by

accepting the revenue sharing payments, and (2) that Nationwide's asserted affirmative defenses,

such as the defense that Nationwide cannot be liable because the Trustees ratified the revenue

sharing payments of which they now complain, are insufficient to save the defendants from

paying disgorgement.

      The second precondition eliminates the possibility that Nationwide could succeed on its

counterclaim, which seeks to hold the Trustees exclusively responsible for any losses stemming

from the revenue sharing payments.  If that precondition is met, then Nationwide will have

already presented, and failed to persuade the fact-finder with respect to, a defense that it is not

liable because the Trustees approved the revenue sharing payments.  In other words, Nationwide

is bringing its counterclaim only after it is determined to be liable and the Trustees are not at

fault, or are at least not so much at fault that Nationwide would be absolved of its breach.  That is

fatal to Nationwide's counterclaim.  No rational trier of fact could find the Trustees wholly

responsible for the Plans' losses after first finding that Nationwide is liable to the Plans for its

breach; the two propositions – that Nationwide is responsible and must disgorge its net profits,

and that the Trustees are *entirely* responsible and must compensate the Plans for their losses – are

mutually exclusive.  Nationwide's construction of its counterclaim to be contingent on a finding

of liability to the Plans undermines its theory that the Trustees are somehow exclusively responsible for losses stemming from the revenue sharing payments. Class certification under Rule 23(b)(3) is therefore unwarranted and the counterclaim should be dismissed.

Nationwide's theory of damages also makes little sense given its litigation posture as Plan fiduciaries. As I stated above, Nationwide is pursuing its counterclaim only in the event that it is found to have breached its fiduciary duty to the Plans; it is simply trying to pin its monetary liability on the Trustees. Nonetheless, Nationwide does not deny that it received the revenue sharing payments that the Trustees seek to disgorge, and does not contend that the Trustees received any personal benefits, other than perhaps better services and value for their Plans, from the purported revenue sharing scheme. Nationwide's position, therefore, is internally inconsistent. The defendants claim to represent the Plans' interests in their counterclaim against the Trustees; but, for Nationwide to reach its counterclaim, it must first be found to have breached its fiduciary duty and garnered the revenue sharing payment proceeds, the net profits of which would be deemed payable to the Plans. If the defendants were truly acting in the Plans' interests, it would seem that Nationwide, the possessor of the revenue sharing payments' net profits, should be the party that disgorges the monetary relief, and not the Trustees. *See Haddock III*, 570 F. Supp. 2d at 364 (holding that Nationwide may not bring an action for contribution or indemnification against the Trustees because "it is implausible that any entity other than Nationwide received direct monetary value from the mutual funds' revenue sharing payments").

At oral argument, Nationwide represented that it was pursuing its counterclaim in order to hold the Trustees personally responsible for their ratification of the revenue sharing payments. That motivation is perhaps understandable, but it is belied by Nationwide's conditioning of its

counterclaim on the Trustees' success in winning disgorgement from the defendants. The defendants' counterclaim is, in actuality, a thinly veiled claim for contribution and/or indemnification to distribute liability equitably between Nationwide and Trustees. That is precisely the claim I dismissed in *Haddock III*. *Id.* In that decision, I held that Nationwide could pursue an independent breach of fiduciary duty claim against the Trustees, provided that Nationwide pled damages directly caused by the Trustees' ERISA violations. *Id.* at 364. I did not specify the scope of that breach of fiduciary duty claim or the kind of damages that Nationwide could seek on behalf of the Plans, but I did explain that "[i]t is not sufficient . . . to state a claim by conjecturing that 'to the extent' there was harm to the Plans, the Trustees are liable." *Id.* at 365. Nationwide may not have used the phrase "to the extent there was harm to the Plans" in its renewed counterclaim, but it nevertheless falls short of the standard I set forth in *Haddock III* by suing for a breach of fiduciary duty in order to pass its liability for monetary relief to the Trustees. *See* Def. Third Amended Countercl. ¶ 40 ("Accordingly, the Counterclaim Defendants are liable to the Plans and/or Plan participants for any 'revenue sharing payments' or other excessive fees, charges, or payments described in the Sixth Amended Complaint.").

As I held in *Haddock III*, for Nationwide to plead a proper counterclaim, it must allege "losses or harm to the Plans alleged to have resulted from the Trustees' breach of fiduciary duties." 570 F. Supp. 2d at 366. Those must be losses or harm for which the Trustees are responsible and for which the disgorgement of the revenue sharing payments from Nationwide would not compensate the Plans. For example, there may be other losses to the Plans, separate from the net profits that Nationwide allegedly earned, that are tied to the revenue sharing payment scheme and for which the Trustees are liable. Whether the Plans suffered such

-14-

additional, independent losses is unknown; Nationwide has not hinted that such losses exist, much less met its burden of proof at the class certification stage.

For now, Nationwide cannot proceed on its amended counterclaim.  It fails to state a claim for relief, and merely reiterates the contribution and indemnification claims, albeit in the guise of an ERISA section 502(a)(2) counterclaim, that I denied previously in *Haddock III*. Nationwide is therefore not entitled to class certification under Rule 23(b), and its renewed counterclaim must be dismissed.

## IV.    Conclusion

Nationwide's putative class of counterclaim defendants cannot be certified.  The defendants have failed to meet the standard of Rule 23(b)(2) because monetary damages, and not injunctive relief, predominates.  And they have failed to meet the standard of Rule 23(b)(3) because the amended counterclaim fails to state a claim for relief, thus eliminating the common of question of law that would be resolved by a class-wide countersuit.  I acknowledge that my decision with respect to Rule 23(b)(3) certification exceeds the class certification issues that the parties briefed.  Should I have overlooked relevant facts or law, I invite Nationwide to move for reconsideration pursuant to Rule 59 of the Federal Rules of Civil Procedure.

Nationwide's motion to certify a class of counterclaim defendants (doc. # 434) is DENIED and its Third Amended Counterclaim (doc. # 429) is DISMISSED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 23d day of July 2010.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge