## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing Plan, ALAN GOUSE, as trustee of Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, CHRISTOPHER ANDERSON, as trustee of the Anderson Law Firm, P.C. 401(k) Profit Sharing Plan and Trust, f/k/a the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan, and H. GRADY CHANDLER, as trustee of the Law Offices of H. Grady Chandler, P.C., 401(k) Profit Sharing Plan and Trust | : : : : : : : : : : : : : | CIVIL ACTION NO.: <br><br> 3:01CV1552 (SRU) |
| PLAINTIFFS, | : : | |
| v. | : : | |
| NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO., | : : : : | |
| DEFENDANTS. | : : | |

## DEFENDANTS' MOTION FOR RECONSIDERATION OF RULING ON MOTION FOR CERTIFICATION OF COUNTERCLAIM DEFENDANT CLASS AND ORDER

Defendants Nationwide Financial Services, Inc. and Nationwide Life Insurance Company (collectively, "Nationwide" or "Nationwide Defendants"), by their undersigned counsel, file this motion for reconsideration of the Court's Ruling on Motion for Certification of Counterclaim Defendant Class and Order ("Ruling") (Doc. #442), pursuant to Rule 59 of the Federal Rules of Civil Procedure. Nationwide appreciates the Court's invitation to file this motion in recognition that the Court's Ruling was broader than the class certification issues that the parties briefed.

I.      **THE THIRD COUNTERCLAIM SHOULD NOT BE DISMISSED.**

Nationwide intends to demonstrate that there is nothing inherently improper under ERISA with its receipt of mutual fund payments.  The Department of Labor acknowledges that they are appropriate under ERISA.  *See* DOL Advisory Opinions 97-16A (May 22, 1997) and 97-15A (May 22, 1997).  Several courts have rejected claims that these arrangements are *per se* unreasonable or illegal under ERISA.  *See, e.g., Hecker v. Deere & Co.*, 556 F.3d 575, 585 (7th Cir. 2009) (rejecting "proposition that there is something wrong, for ERISA purposes, in [a revenue sharing] arrangement"); *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1074, 1113 (C.D. Cal. 2009) ("there is nothing inherently wrong with using revenue sharing from mutual funds in order to offset some of the administrative costs that might otherwise be borne by the plan sponsor").

However, to the extent that Nationwide is found to be an ERISA fiduciary, and the mutual fund payments are found to be improper under ERISA, Nationwide alleges in its third counterclaim that Plaintiffs – trustees who are named fiduciaries of the plans that contract with Nationwide – are liable for that ERISA violation.

There is nothing unique about this claim.  To the extent that ERISA plan participants on occasion have challenged these types of mutual fund payments, those participants have typically brought suit primarily against the plan trustees as the plans' named fiduciaries who allowed these arrangements.  *See, e.g., Hecker, supra; Tibble, supra.*  The participants have *not* sued only the independent service providers who arranged for those payments before the product was ever sold to an employer-sponsored plan.

Moreover, the ERISA plan participants in those cases challenging the mutual fund payments have not argued that the trustees personally benefited from the mutual fund payments or that they should disgorge any of those payments.  Rather, the basis for their claim has been

simply that the trustees were derelict in their fiduciary duty to monitor and oversee transactions relating to the disposition of the plans' assets. *See, e.g., Hecker*, 556 F.3d at 578 (alleging that plan sponsor violated ERISA "by providing investment options that required the payment of excessive fees"); *Braden v. Wal-Mart Stores*, 588 F.3d 585, 590 (8th Cir. 2009) (alleging that plan sponsor "failed adequately to evaluate the investment options included in the Plan").

Likewise here, Nationwide alleges that, if the mutual fund payments are somehow improper, then it is the plan trustees – because they are indisputably charged under the plan documents with holding, managing and investing the plans' assets, maintaining records relating to the plans' assets, and otherwise monitoring and overseeing transactions relating to the plans' assets – who were derelict in their fiduciary duty by allowing the payments and, indeed, even entering into the annuity contracts that were priced and otherwise structured based on these mutual fund payments. In this regard, the trustees have already admitted they completely abdicated their duty to monitor the investment options they made available to the plan participants, the fees associated with those investment options, or the benefits Nationwide provided to the plans pursuant to their annuity contracts. (Defendants' Answer to Plaintiffs' Sixth Amended Complaint and Third Amended Counterclaim, Doc. # 425, at ¶¶ 18-28.)

The claims reflected in the counterclaim here against the trustees as the named plan fiduciaries are, therefore, not unique. The unusual aspects of this case, rather, are that the trustees are suing the independent product provider (Nationwide) that they selected, they are complaining of a product that they knew or should have known was priced based on the allegedly improper mutual fund payments, and they are complaining that Nationwide profited from the payments, rather than holding themselves accountable for expressly or recklessly permitting those profits. In essence, the trustees have used their affirmative lawsuit, and their

limitation of any remedy to disgorgement, to shield themselves from any liability, without ever acknowledging that they have an irreconcilable conflict of interest that is itself a breach of their fiduciary duty.

Those unusual circumstances, Nationwide acknowledges, have in turn led to another unusual circumstance whereby Nationwide asserts this counterclaim on behalf of the plans and participants against their trustees, contingent on a finding by this Court that Nationwide became a fiduciary to the plans and breached its fiduciary duty by accepting the mutual fund payments. But this sequencing of the parties' respective claims – the trustees' unusual claims against Nationwide, followed by Nationwide's counterclaim against the trustees on behalf of the plans and participants – should not undermine the validity of that counterclaim against the trustees. The counterclaim has the same validity that it does in the other cases where the plan participants sued the trustees first.

Nationwide appreciates the Court's efforts to grapple analytically with the interlocking issues raised by these two sets of claims. Nationwide respectfully disagrees with the Court's suggestions, however, that the counterclaim "is limited to the issue of the Trustees' personal liability for consenting to and ratifying" the mutual fund payments, Ruling at 6; and that a finding of liability as to both Nationwide and the trustees would be "mutually exclusive," *id.* at 12. The Court could find both (1) that Nationwide acted as a functional fiduciary and breached its fiduciary duty by accepting mutual fund payments, and (2) that the trustees, as named and undisputed fiduciaries, were derelict in their duty to understand and prevent those payments. Although the Court has properly recognized that the trustees' ratification of or consent to these mutual fund payments would provide Nationwide with a defense to the plaintiffs' claims, that defense is not as broad as Nationwide's counterclaim that the trustees utterly failed to understand

or prevent the payments.  Indeed, the trustees have suggested in their depositions that they so completely abdicated their fiduciary duties that they were unaware of any of the terms of their plans or contracts.

Nationwide also respectfully disagrees with the Court's suggestion that Plaintiffs' requested remedy of disgorgement is dispositive of Nationwide's request that the trustees, not Nationwide, reimburse the plans and participants for any amounts the Court would otherwise order Nationwide to disgorge in the absence of more culpable parties.  The Court has properly recognized that Nationwide, if found liable, would be required only to disgorge "net profits," not the mutual fund payments themselves.[1]  But even if it turns out that some of the mutual fund payments remained with Nationwide as "net profits," that hardly means that Nationwide, rather than the trustees, should be responsible for reimbursement to the plans and participants.

In this regard, Nationwide's counterclaim theory is not the "inverse" of the trustees' claim.  Ruling at 8.  The counterclaim seeks not only "money that the Plans lost" as a result of the trustees' conduct, *id.*, but also the trustees' restitution of any wrongful "profits" they caused because they were so derelict in their duty that they caused the hypothetically improper mutual fund payments to occur.  *See* Restatement (Second) of Trusts § 205 (1959) (trustee that commits breach of trust may be liable for resulting loss to the estate, profit to the trustee, "or (c) any profit which would have accrued to the trust estate if there had been no breach of trust"); *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 251, 253 & n.3 (2008) (applying Section 205 of the Restatement to allow claim under ERISA section 502(a)(2) for profits lost by a plan

---

[1]       Those net profits should be reduced not only by the value of services rendered by Nationwide, as the Court notes, but also by the demonstrable price reductions to the plans (as pass-through savings on direct charges) and product improvements to the contracts that resulted from the mutual fund payments.

participant, notwithstanding that the defendant plan administrator "did not possess any disputed funds that rightly belonged" to the plan participant.).

Further, if the trustees had not breached their duties, then Nationwide would not just have been free of any potential liability; in addition, Nationwide's direct charges to the plans and participants would have been higher, or there would have been some other systemic pricing adjustment, and Nationwide would have received net profits that were not subject to ERISA claims. As in other suits filed against plan trustees, the trustees (as opposed to the plans and participants) may not have personally gained from the mutual fund payments. But neither did Nationwide – operating in a highly competitive market – enjoy higher profits than it would have earned in a world without mutual fund payments that are common in the industry and acknowledged by the Department of Labor to be appropriate.

Under these circumstances, the plans and participants should be allowed to proceed against the trustees, too – and, if the facts are as Nationwide alleges, any monetary remedy to the plan and participants should come from the trustees, not Nationwide. That the Court may find both Nationwide and the trustees liable to the plans and participants – and then, based on the equities, allocate payment responsibilities – does not render Nationwide's counterclaim on behalf of the plans and participants one for contribution or indemnification. Neither is Nationwide's position "internally inconsistent," Ruling at 13. Nationwide has no conflict defending against its own liability and, if it is wrong, pursuing the trustees on behalf of the plans and participants. To the contrary, it is the trustees who have a clear conflict of interest with the plans and participants whose claim against the trustees they seek to extinguish, for no benefit other than their own. The plans and participants, in contrast, have an interest in ensuring that the trustees who caused the alleged harm are responsible for restitution.

Accordingly, Nationwide respectfully submits that its counterclaim against the trustees should not be dismissed.

## II.   THE THIRD COUNTERCLAIM SHOULD BE CERTIFIED AS A CLASS ACTION.

For purposes of its Ruling, the Court presumed that the prerequisites of numerosity, commonality, typicality, and adequacy under Rule 23(a) have been satisfied.  Based on the earlier briefing, Nationwide submits that these criteria are easily satisfied.

For the reasons discussed above, Nationwide submits that its counterclaim should not be dismissed and, therefore, that there is no basis to deny class certification under Rule 23(b)(3).

Nationwide also submits that its counterclaim should be certified as an injunctive class under Rule 23(b)(2).  As a threshold matter, Nationwide respectfully requests leave to amend its counterclaim to add a formal request for injunctive relief and to add reference to ERISA subsection 502(a)(3), 42 U.S.C. § 1132(a)(3), which provides for injunctive relief and other appropriate equitable relief.  Nationwide is filing a separate motion for leave to amend the counterclaim for that purpose.

If the Court determines that injunctive relief is appropriate against Nationwide, then it will be appropriate against the trustees for the same reason – to prevent the parties' improper conduct from continuing into the future.  Nationwide respectfully disagrees that an injunction against the trustees would be redundant or serve no useful purpose.  The plans and participants have at least as much interest in preventing their named fiduciaries from continuing to engage in improper conduct as they do in altering Nationwide's conduct, particularly because the trustees are accused of completely abdicating their duties to monitor and protect their plans.  And if Plaintiffs' request for injunctive relief predominates over monetary damages, then so should

Nationwide's parallel request for injunctive relief.[2]

Further, that Plaintiffs seek Nationwide's disgorgement of Nationwide's alleged net profits, whereas Nationwide seeks the trustees' restitution of that same amount, should not affect the Rule 23(b)(2) analysis. However the respective monetary payments are characterized, the issue under Rule 23(b)(2) is whether injunctive relief or corresponding declaratory relief – not any type of equitable relief – predominates over monetary damages. Fed. R. Civ. P. 23(b)(2); *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001). Moreover, if the monetary relief sought by Plaintiffs is "ancillary to and derivative of a finding that Nationwide is a fiduciary and in breach of its fiduciary duties under ERISA," *Haddock v. Nationwide Fin. Servs.* ("*Haddock IV*"), 262 F.R.D. 97, 125-26 (D. Conn. 2009), then so, too, is the restitutionary relief sought in the counterclaim ancillary to and derivative of a finding that the trustees breached their fiduciary duties. Likewise, "[i]t is difficult to conceive how merely collecting monetary relief for past practices found to be in breach of [the trustees'] fiduciary obligations, without simultaneously providing injunctive relief to halt the illegal practice going forward, would make any sense from a judicial efficiency standpoint." *Id.* at 128. The efficiency point is even stronger here, now that the Court has already certified Plaintiffs' class under Rule 23(b)(2).

## CONCLUSION

For these reasons, the Nationwide Defendants respectfully request the Court to reinstate its counterclaim and to certify a class of counterclaim defendants.

---

[2]     The court raises the issue whether Nationwide would somehow lose its right to bring the counterclaim if it is found liable. Ruling at 10. The issue of Nationwide's fiduciary status, however, and thus its right to assert the counterclaim, is wholly distinct from any finding of liability. Moreover, any injunction against Nationwide would only follow a trial in which Nationwide had already pursued its counterclaim.

Respectfully submitted,

Dated:  August 6, 2010                    Defendants Nationwide Financial Services Inc.
                                          and Nationwide Life Insurance Co.


                        By:    s/ Thomas F. Clauss, Jr.
                               Thomas F. Clauss, Jr. (CT 12392)
                               Wiggin and Dana LLP
                               400 Atlantic Avenue
                               P.O. Box 110325
                               Stamford, CT 06911-0325
                               Telephone:  (203) 363-7610
                               Facsimile:  (203) 363-7676

                               Charles C. Platt, Esq. (CT 23036)
                               Wilmer Cutler Pickering Hale and Dorr LLP
                               399 Park Avenue
                               New York, NY  10022
                               New York, NY 10019-5389
                               Telephone:     (212) 230-8800
                               Facsimile:     (212) 230-8888

                               Daniel H. Squire, Esq.
                               Wilmer Cutler Pickering Hale and Dorr LLP
                               1875 Pennsylvania Avenue, N.W.
                               Washington, D.C. 20006
                               Telephone:  (202) 663-6000
                               Facsimile:     (202) 663-6363

## <u>CERTIFICATION</u>

I hereby certify that on this 6th day of August, 2010, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

Richard A. Bieder, Esq.
Antonio Ponvert III, Esq.
Koskoff, Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT 06604

Gregory G. Jones, Esq.
Law Firm of Gregory G. Jones, P.C.
603 South Main Street, Suite 200
Grapevine, TX 76051
Marc R. Stanley, Esq.

Marc R. Stanley, Esq.
Martin Woodward, Esq.
Stanley, Mandel & Iola
3100 Monticello Avenue
Suite 750
Dallas, TX 75205

Roger L. Mandel, Esq.
Beckham & Mandel
3400 Carlisle, Suite 550
Dallas, TX 75204

<u>/s/ Thomas F. Clauss, Jr.</u>