UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, CHRISTOPHER ANDERSON, as trustee of the Anderson Law Firm, P.C. 401(k) Profit Sharing Plan and Trust, f/k/a the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan, and H. GRADY CHANDLER, as trustee of the Law Offices of H. Grady Chandler, P.C., 401(k) Profit Sharing Plan and Trust<br><br>     PLAINTIFFS,<br><br>v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,<br><br>     DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 01-CV-1552 (SRU) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR RECONSIDERATION
OF RULING ON MOTION FOR CERTIFICATION OF
COUNTERCLAIM DEFENDANT CLASS AND ORDER**

Plaintiffs hereby respond to Defendants' Motion for Reconsideration of Ruling on

Motion for Certification of Counterclaim Defendant Class and Order [Doc. 443]

("Reconsideration Motion"), and for such would respectfully show the Court as follows:

I.      **SUMMARY OF ARGUMENT**

The Court gave a number of reasons for its denial of class certification of and dismissal of Nationwide's third amended counterclaim.  Collectively, the Court's reasons boil down to this:  Nationwide's request that the Court order the Trustees to reimburse the Plans for the revenue sharing payments received by Nationwide, rather than ordering Nationwide to disgorge them, cannot be maintained on a class or an individual basis because it constitutes "a thinly veiled claim for contribution and/or indemnification."   In the Reconsideration Motion, Nationwide never articulates any logical basis why the Trustees, who at most failed to prevent Nationwide from breaching its fiduciary duty and benefiting thereby, should solely reimburse the Plans, leaving Nationwide in possession of the fruits of its breach of fiduciary duty – the revenue sharing payments.   Rather, Nationwide makes a series of purely conclusory statements that merely contradict the Court's reasoning without even attempting to explain any alleged fallacy in that reasoning.   Nationwide's conclusory statements fall far short of satisfying the strict burden placed upon it in urging reconsideration of the Court's rulings.

II.     **BACKGROUND**

A.      *THE COURT'S DISMISSAL OF THE SECOND AMENDED COUNTERCLAIMS.*

On August 11, 2008, the Court granted Plaintiffs' motion to dismiss Nationwide's second amended counterclaims as set forth in its amended answer to Plaintiffs' Fifth Amended Class Action Complaint.  *Haddock v. Nationwide Fin. Servs.,* 570 F. Supp. 2d 355 (D. Conn. 2008) ("*Haddock III*").   Initially, the Court dismissed Nationwide's contribution and indemnity counterclaims with prejudice on the ground that those claims do not apply to disgorgement or restitution.  *Id.* at 364.

The Court also dismissed Nationwide's purported breach of fiduciary duty counterclaim against the Trustees on behalf of the Plans on the basis that it did not allege any loss or harm caused to the Plans by the Trustees' alleged breaches of fiduciary duty, an essential element of the cause of action.  *Id.* at 365-66.  The Court noted that Nationwide's allegation that "the Trustees are liable *to the extent* the Plans or the participant suffered any harm or losses or were deprived of any asset to which they were entitled" did not sufficiently allege actual harm or loss to the Plans.  *Id.* at 366.  The Court concluded its ruling by stating that:

> Therefore, Nationwide's third counterclaim is dismissed without prejudice to re-pleading that claim within 30 days; any renewed counterclaim must allege the losses or harm to the Plans alleged to have resulted from the Trustees' breach of fiduciary duties.

*Id.*

B.    *THE COURT'S RULING ON THE THIRD AMENDED COUNTERCLAIMS.*

Nationwide subsequently filed its answer to Plaintiffs' Sixth Amended Class Action Complaint in which it reasserted its contribution, indemnification and breach of fiduciary duty counterclaims (the third amended counterclaims).  Plaintiffs moved to strike the third amended counterclaims.  In its Ruling on Motion to Strike, Motion to Intervene, and Motion for Class Certification [Doc. 416] ("Strike Ruling"), the Court struck the contribution and indemnification counterclaims because it had previously dismissed them with prejudice and it was unnecessary for Nationwide to plead them again in order to preserve them for appeal.  Strike Ruling at 2.  In regard to the breach of fiduciary duty counterclaim, the Court wrote only that, "I conclude that Nationwide has sufficiently cured the defects in its original breach of fiduciary counterclaim," and it accordingly denied the motion to strike with respect to that counterclaim.  *Id.* at 2-3.  Presumably, at that time, the Court thought that Nationwide had sufficiently alleged harm or loss suffered by the Plans as a result of the Trustees' alleged breaches of fiduciary duty.

C.     *THE COURT'S RULING ON COUNTERCLAIM CERTIFICATION.*

In its July 23, 2010 Ruling on Motion for Certification of Counterclaim Defendant Class and Order [Doc. 442] ("Counterclaim Ruling"), the Court denied certification of the breach of fiduciary duty counterclaim pursuant to FED. R. CIV. PROC. 23(b)(2) and dismissed the counterclaim for failure to sufficiently plead any loss or harm to the Plans, thereby also denying Rule 23(b)(3) certification.   As a foundation for both of its rulings, the Court held that Nationwide's ERISA § 502(a)(2) counterclaim was "… limited to the issues of the Trustees' personal liability for consenting to and ratifying Nationwide's receipt of revenue sharing payments from mutual funds," and could be pursued if, and only if, it were brought "'solely in the interest of the [Plans'] participants and beneficiaries' and 'for the exclusive purpose of providing benefits'" to them.   Counterclaim Ruling at 6 [citation omitted].

1.     The Court's Dismissal of the Breach of Fiduciary Duty Counterclaim and Resulting Denial of Rule 23(b)(3) Certification.

In the Counterclaim Ruling, the Court essentially reconsidered its unexplained holding in the Strike Ruling that Nationwide's third amended breach of fiduciary duty counterclaim had complied with the Court's ruling in *Haddock III* by sufficiently pleading harm or loss to the Plans.   It did so because Nationwide's briefing and argument on counterclaim certification revealed that it did not seek to recover anything for the Plans beyond the revenue sharing payments that it had received and that it really sought only contribution or indemnity.

The Court began its analysis by noting that a precondition to Nationwide succeeding on its counterclaim is that it must have been found to have violated its fiduciary duty, warranting the disgorgement of its net profits (an amount equal to the value of the revenue sharing payments received less the value of any services rendered to the Plans in exchange for them).   *Id.* at 12. This, the Court noted, really involved two findings:  (1) that Nationwide breached its fiduciary

duty by accepting and retaining the revenue sharing payments, and (2) that Nationwide's asserted affirmative defenses, including ratification and consent, are insufficient to save it from paying disgorgement. *Id.*

Next, the Court held that this precondition eliminated the possibility that Nationwide could succeed on its counterclaim, which sought only to hold the Trustees exclusively responsible for paying over the value of the revenue sharing payments to the Plans. *Id.* If that precondition was met, Nationwide would have failed to convince the Court that the Trustees had ratified or consented to the revenue sharing payments. *Id.* Having already found that Nationwide failed to prove its affirmative defense of ratification or consent, no rational trier-of-fact could then find the Trustees wholly responsible for the Plans' losses on the basis that the Trustees had consented to or ratified Nationwide's receipt of the revenue sharing payments. *Id.* Consequently, Nationwide, which exclusively received the revenue sharing payments, found itself in the contradictory position of claiming it was bringing the counterclaim in the best interests of the Plans while also claiming that it should not have to disgorge the revenue sharing payments, but rather that the Trustees, who did not receive them, should pay their value to the Plans. *Id.*

The Court then held that because Nationwide conditioned its counterclaim on the Trustees' success in winning disgorgement from it, its counterclaim actually constituted a "thinly veiled claim for contribution and/or indemnification" which the Court had dismissed with prejudice in *Haddock III*. *Id.* at 14. To pursue a non-contribution and non-indemnity claim for breach of fiduciary duty on behalf of the Plans, the Court held that Nationwide had to unconditionally plead harm or loss to the Plans and that Nationwide's counterclaim fell short of that standard even though it did not use the phrase "to the extent there was harm to the Plans" in

its renewed counterclaim. *Id.* Because Nationwide did not plead any harm or loss suffered by the Plans or seek to recover anything for the Plans beyond the revenue sharing payments which it received, Nationwide had in fact not met the pleading standard set forth by the Court in *Haddock III,* warranting reconsideration of the Court's Strike Ruling and dismissal. *Id.*

> 2.     The Court's Denial of Rule 23(b)(2) Certification.

The Court denied Rule 23(b)(2) certification on the ground that Nationwide's request for an injunction did not predominate over its claim for monetary relief under the Second Circuit's "ad hoc" approach. *Id.* at 7. The Court gave four primary reasons in support of this ruling. First, Nationwide's failure in its third amended counterclaim to formally request an injunction against the Trustees was "quite telling" and suggested that the injunctive relief allegedly sought was "insignificant" in relation to monetary damages, even if it was not a "sham." *Id* at 7.

Second, because the Trustees did not receive any benefits as a result of any alleged breach of fiduciary duty that could be disgorged, Nationwide was suing the Trustees to hold them liable for any losses suffered by the Plans because of the Trustees' ratification of the revenue sharing plans. *Id.* at 8. That, the Court held, was more consistent with a theory of liability founded in law, rather than in equity, indicating this claim was legal in nature and sought principally monetary damages. *Id.* at 8-9.

Third, the Court found it highly significant that Nationwide sought to recover an injunction only if the Court found it liable to the Plans and awarded them some relief. *Id.* at 9. The Court found it likely that if the Trustees succeeded in enjoining Nationwide from continuing to collect the revenue sharing payments, Nationwide would no longer be exercising authority or control over the disposition of plan assets, thereby depriving it of fiduciary status and causing it to lose standing to, in turn, obtain an injunction against the Trustees. *Id.* at 10.

Fourth, and most significantly, the fact that Nationwide made its alleged counterclaim for injunctive relief contingent upon the Trustees achieving a recovery from it demonstrates convincingly that no reasonable plaintiff fiduciary would bring such a suit for injunctive relief absent the possibility of monetary recovery, as required for Rule 23(b)(2) certification under the "ad hoc" standard.  *Id.* at 10-11.  If the Trustees succeed in obtaining an injunction against Nationwide prohibiting it from continuing to receive revenue sharing, a prerequisite for Nationwide seeking an injunction against the Trustees, then there would be no point whatsoever to entering an injunction against the Trustees that purported to require them to cease from consenting to and/or ratifying Nationwide's receipt of the revenue sharing payments.  *Id.*  Simply put, a reasonable plaintiff would not expend the time and resources necessary to pursue a completely redundant injunction.

## III.   <u>STANDARDS FOR RECONSIDERATION</u>

The same standard applies to motions pursuant to FED. R. CIV. P. 59(e), FED. R. CIV. P. 60(b) and Local Rule 7(c) (motions for reconsideration).  *In Re Nattel, LLC*, 2010 WL 2977133, at *1 (D. Conn. July 22, 2010) (Underhill, J.); *Levy v. World Wrestling Entertainment, Inc.,* 2009 WL 2382022, at *1 (D. Conn. July 31, 2009) (Dorsey, J.).   This standard is strict and reconsideration must be denied unless the moving party can demonstrate:  (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice.  *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *In Re Nattel, LLC,* 2010 WL 2977133, at *1.

While this strict standard undoubtedly applies to the Court's denial of Rule 23(b)(2) certification, Nationwide may claim that it should not apply to the Court's dismissal of its counterclaim given that the Court's dismissal arose not from briefing on a motion to dismiss but

rather from briefing on a motion to certify the counterclaim for class treatment pursuant to Rule 23(b)(3).  The Court should reject this argument because Nationwide had ample opportunity in the briefing leading up to the Strike Ruling to justify why it had sufficiently pled harm or loss as required by the Court in *Haddock III*.  After the counterclaim certification briefing and argument by Nationwide made clear that Nationwide's third amended counterclaim continued to fail to allege harm or loss despite it no longer using the suspect "to the extent" language, the Court simply reconsidered its unexplained decision in its Strike Ruling not to dismiss the third amended breach of fiduciary duty counterclaim.  Since Nationwide had the opportunity to fully brief this issue prior to the Strike Ruling, the Court should apply the normal strict motion for reconsideration standard to Nationwide's request for the Court to reconsider its dismissal of the counterclaim.

## IV.   THE COURT SHOULD NOT RECONSIDER ITS DISMISSAL OF THE COUNTERCLAIM

Nowhere in the Reconsideration Motion does Nationwide argue that there has been an intervening change of controlling law or that new evidence is available to it or that reversal is necessary to prevent manifest injustice.  Accordingly, the Court can only reconsider its dismissal of the counterclaim if it finds it made a clear error.  Nationwide's conclusory arguments do not come close to demonstrating a clear error by the Court.

As to the Court's holding that a rational trier-of-fact could not conceivably hold against Nationwide on liability and on its ratification/consent defense and then find against the Trustees on Nationwide's counterclaim, Nationwide essentially makes two one-sentence arguments.  Reconsideration Motion at 4.  In the first sentence, it claims that the Court could find that both Nationwide and the Trustees breached their fiduciary duties.  *Id.*  This misses the point that the Court was making – that a rational trier-of-fact could not find against Nationwide on its

ratification/consent defense and still find in favor of Nationwide on its counterclaim which claims that the Trustees breached their duties by consenting to or ratifying the revenue sharing payments. Thus, Nationwide fails to demonstrate clear error.

Nationwide's second sentence addressing this point reads as follows: "[a]lthough the Court has properly recognized that the trustees' ratification of or consent to these mutual fund payments would provide Nationwide with a defense to the plaintiff's claims, that defense is not as broad as Nationwide's counterclaim that the trustees utterly failed to understand or prevent the payments." Reconsideration Motion at 4-5. This sentence states a pure conclusion without any explanation. How exactly is an affirmative defense that claims that Nationwide should not be liable to the Plans because the Trustees allegedly consented to or ratified the revenue sharing payments less broad than a counterclaim that alleges that the Trustees should be liable to the Plans because they consented to or ratified the revenue sharing payments, when both the affirmative defense and the counterclaim refer to the exact same conduct of the Trustees? Nationwide does not explain its conclusion, and to articulate it is to demonstrate its falsity. Again, Nationwide has failed to demonstrate clear error.

Nationwide also responds with a pure conclusion to the Court's observation that its attempt to "simply pin its monetary liability on the Trustees" is inconsistent with its obligation to bring the counterclaim as a fiduciary acting in the best interest of the Plans and their participants and beneficiaries:

> Neither is Nationwide's position 'internally inconsistent,' Ruling at 13. Nationwide has no conflict defending against its own liability and, if it is wrong, pursuing the Trustees on behalf of the Plans and participants.

*Id.* at 6. How is there no inconsistency or conflict? Nationwide does not bother to explain. That is understandable. A fiduciary acting in the best interests of plans and their participants would, if

found guilty of breach of fiduciary duty and ordered to disgorge improper profits, simply pay over those profits.  Such a fiduciary would not seek to shift its liability to other fiduciaries who are:  (1) guilty at most of not stopping its breaches, and (2) almost certainly unable financially to pay the value of those lost profits.  Nationwide has once again failed to demonstrate clear error.

In two different places in the Reconsideration Motion, Nationwide openly admits that it does not seek to hold the Trustees additionally liable to the Plans, but rather hold the Trustees solely liable in its place.  *Id.* at 5 ("… Nationwide's request [is] that the Trustees, not Nationwide, reimburse the Plans and participants …"); *Id.* at 6 ("… any monetary remedy to the Plan and participants should come from the Trustees, not Nationwide.").  This, of course, completely validates the Court's holding that the counterclaim should be dismissed because it "… is, in actuality, a thinly veiled claim for contribution and/or indemnification to distribute liability equitably between Nationwide and Trustees."  Counterclaim Ruling at 14.

Nationwide's response is, once again, another purely conclusory statement:  "That the Court may find both Nationwide and the trustees liable to the Plans and participants – and then, based on the equities, allocate payment responsibilities – does not render Nationwide's counterclaim on behalf of the plans and participants one for contribution or indemnification."  Reconsideration Motion at 6.  How exactly is a request to allocate payment responsibilities between two liable defendants not a request for contribution or indemnification?  Nationwide does not even attempt to explain this proposition, perhaps because it is both unexplainable and indefensible.  Consequently, Nationwide has failed to show clear error by the Court in dismissing its breach of fiduciary duty counterclaim as nothing more than a thinly veiled attempt to resurrect its contribution and indemnification claims previously dismissed by the Court with prejudice.

In response to the Court's holding that it failed to plead harm or loss to the Plans as required by the Court in *Haddock III*, Nationwide merely cites the Restatement (2d) of Trusts § 205 and one Supreme Court case for the proposition that the revenue sharing payments that it received could constitute lost profits and, thus, loss or harm to the Plans.  Reconsideration Motion at 5.  This entirely misses the Court's point that in order for its claim to be something more than a thinly veiled claim for contribution and/or indemnification, Nationwide must allege "… losses or harm for which the Trustees are responsible and for which the disgorgement of the revenue sharing payments from Nationwide would not compensate the Plans."  Counterclaim Ruling at 14.  Quite to the contrary, Nationwide admits that its disgorgement of revenue sharing would rectify the only "loss" or "harm" that it alleges the Plans suffered.  Reconsideration Motion at 5.

Furthermore, Nationwide ignores that in its third amended counterclaim it, once again, conditioned its allegations of harm or loss to the Plans as the Court held it could not do in *Haddock III*.  In paragraph 34, Nationwide pled that "… *in the event that the Plans prove they have suffered any harm as the Trustees allege*, then Nationwide Life and NFS assert, in the alternative, this claim for breach of fiduciary duty against the Counterclaim Defendants."  [Doc. 425 at 21-22] (emphasis added).  In paragraph 22, Nationwide alleged "[t]hat misconduct by the Counterclaim Defendants was the exclusive cause of *any* harm to the Plans and/or Plan participants that is alleged in the Sixth Amended Complaint," and then listed the alleged allegations of harm contained in the Sixth Amended Complaint.  [Doc. 425 at 22] (emphasis added).  In the very next paragraph (paragraph 38), Nationwide then proceeded to plead that "*if*" each of those alleged types of harms had occurred, it occurred exclusively as a result of the Trustees' actions.  [Doc. 425 at 23] (emphasis added).  Not once did Nationwide plead that harm

or loss had definitely occurred.  Rather, every reference to harm or loss was conditional.  So, despite the Court's specific statement in *Haddock* III that doing so would not be sufficient, Nationwide conditionally alleged harm or loss in the third amended counterclaim, justifying the Court's reconsideration of its Strike Ruling and its dismissal of the counterclaim in the Counterclaim Ruling.

Finally, the Restatement section and the Supreme Court case cited by Nationwide stand for the general proposition that a trustee can be liable for profits the trust would have received but for the trustee's alleged breach of fiduciary duty even if the trustee did not receive the profits. In this case, the Trustees' alleged breach was failing to prevent Nationwide from receiving the revenue sharing payments.[1]  Accordingly, had there been no breach by the Trustees, there would have been no revenue sharing payments made to Nationwide and no "profits" "lost" by the Plans. Thus, these citations in no way argue against the Court's holding that Nationwide needed to, but did not, unconditionally plead some loss or harm to the Plans other than the "loss" of the revenue sharing payments received by Nationwide.  Thus, Nationwide has failed to show clear error by the Court in holding that it failed to plead loss or harm to the Plans.

In summary, Nationwide has not come close to providing a sufficient basis for the Court to reconsider its dismissal of the counterclaim.[2]

---

[1] Of course, Nationwide fails to plead exactly how the Trustees could have prevented it from arranging for, receiving and retaining the revenue sharing payments.

[2] In the unlikely event the Court reconsiders and reverses the dismissal of the counterclaim, it should deny certification of the counterclaim pursuant to Rule 23(b)(3) for the reasons previously briefed and argued by Plaintiffs.

## V.    THE COURT SHOULD NOT RECONSIDER ITS DENIAL OF RULE 23(b)(2) CERTIFICATION

In the Counterclaim Ruling, the Court noted that the issue central to its determination of whether the injunctive relief allegedly sought by Nationwide predominated over the requested monetary relief is whether, even in the absence of a possible monetary recovery, reasonable plaintiffs would have brought the suit to obtain the injunctive relief sought.  Counterclaim Ruling at 7.  In this case, the question is whether a reasonable plaintiff would bring a claim against the Trustees seeking an injunction preventing them from continuing to acquiesce in Nationwide's receipt of the revenue sharing payments if, and only if, Nationwide was first enjoined from continuing to receive and retain the revenue sharing payments.  Counterclaim Ruling at 10-11.  To ask the question is to answer it.  No reasonable plaintiff would bear the effort and expense necessary to obtain completely redundant relief.  *Id.*

Nationwide's only response to this point is to argue that the Plans "… have at least as much interest in preventing their named fiduciaries from continuing to engage in improper conduct as they do in altering Nationwide's conduct.…"  Reconsideration Motion at 7.  This entirely misses the point.  The Plans' interest in enjoining the Trustees would be to force the Trustees (in some manner completely unexplained by Nationwide) to force Nationwide to stop receiving the revenue sharing payments or to turn them over to the Plans.  If Nationwide has already been prevented from taking the revenue sharing payments or required to turn them over to the Plans, which is a prerequisite to Nationwide's conditional request for injunctive relief, then there is absolutely no need to require the Trustees to attempt to accomplish that same result.  Simply put, once Nationwide has been stopped from breaching its fiduciary duty, there will be no allegedly ongoing breach of fiduciary duty by the Trustees to be enjoined.

As further support for the proposition that injunctive relief does not predominate over monetary relief, the Court noted Nationwide's failure in the third amended counterclaim to actually request injunctive relief. Counterclaim Ruling at 7. Nationwide's response is to ask the Court for leave to file a fourth amended counterclaim which belatedly makes such a request for relief. This does not dispel the Court's point. The fact that Nationwide did not bother to actually request injunctive relief until its failure was pointed out to it by the Court demonstrates convincingly that the requested injunctive relief is insubstantial.

Finally, Nationwide does not even respond to the Court's observation that Nationwide likely could not continue to pursue its counterclaim if it were enjoined from accepting the revenue sharing payments because it would lose its fiduciary status and its standing to countersue the Trustees. So, for all these reasons, Nationwide has failed to show clear error on the part of the Court in denying certification of the counterclaim pursuant to Rule 23(b)(2).[3]

## VI.   <u>CONCLUSION</u>

Wherefore, Plaintiffs respectfully request the Court to deny Nationwide's motion for reconsideration and to grant them all such other and further relief, general and special, legal or equitable, to which they may be justly entitled.

---

[3] The Court did not address a number of the arguments made by Plaintiffs against Rule 23(b)(2) certification in their briefing. In the unlikely event the Court decides to reconsider the reasons that it gave in the Counterclaim Ruling for denying such certification, it should deny certification based upon the additional arguments made by Plaintiffs against that certification that it has not yet addressed.

Respectfully submitted,


/s/ Roger L. Mandel
Roger L. Mandel
Federal Bar No. ct18180
BECKHAM & MANDEL
3400 Carlisle, Suite 550
Dallas, Texas  75204
214-965-9300
214-965-9301 (Fax)

Marc R. Stanley
Federal Bar No. ct18179
Martin Woodward
Federal Bar No. ct25263
STANLEY.IOLA, LLP
3100 Monticello Avenue, Suite 750
Dallas, Texas  75205
214-443-4300
214-443-0358 (Fax)

William Bloss
Federal Bar No. ct01008
Antonio Ponvert III
Federal Bar No. ct17516
Richard A. Bieder
Federal Bar No. ct04208
KOSKOFF KOSKOFF & BIEDER, P.C.
350 Fairfield Avenue
Bridgeport, Connecticut 06604
203-336-4421
203-368-3244 (Fax)

Gregory G. Jones
Federal Bar No. ct23443
LAW FIRM OF GREGORY G. JONES PC
211 E. Southlake Blvd., Suite 180
Southlake, Texas 76092
817-424-9001
817-424-1665 (Fax)

**CLASS COUNSEL**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 27, 2010, the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/s/ Roger L. Mandel
ROGER L. MANDEL