**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company Inc. 401(k) Profit-Sharing Plan, et al.,<br>    Plaintiffs,<br><br>v.<br><br>NATIONWIDE LIFE INSURANCE CO.,<br>    Defendant. | No. 3:01cv1552 (SRU) |

## RULING ON DEFENDANT'S MOTIONS FOR RECONSIDERATION AND FOR LEAVE TO AMEND THIRD AMENDED COUNTERCLAIM

Nationwide Life Insurance Company ("Nationwide") moves for reconsideration of my ruling and order denying certification of a counterclaim defendant class under Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure and dismissing Nationwide's third amended counterclaim.[1] (Doc. # 443). Nationwide also moves for leave to amend its answer and third amended counterclaim. (Doc. # 444.) For the reasons set forth below, both of Nationwide's motions are denied.

**I.     RULE 23(b)(2) CLASS CERTIFICATION**

The standard for granting motions for reconsideration is strict. Motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Motions for reconsideration will not be granted where the party merely

---

[1] On October 21, 2010, I approved the parties' stipulation to terminate Nationwide Financial Services, Inc., as a party to this lawsuit. (Doc. # 456) In addition, I stayed all proceedings in this case, except for Nationwide's motions addressed in this decision, until the Second Circuit rules on Nationwide's appeal of my order certifying a plaintiff class. (Doc. # 458.)

seeks to re-litigate an issue that has already been decided. *Id.* The three major grounds for granting a motion for reconsideration are: (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice. *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478).

Nationwide has not introduced any intervening law or new evidence, or otherwise indicated a manifest injustice, requiring reconsideration of my ruling denying its motion for Rule 23(b)(2) certification. Principally, Nationwide seeks to amend its counterclaim in order to include a formal request for injunctive relief. *See* Defs.' Mot. for Leave to Amend (doc. # 444). The absence of a formal request for injunctive relief, however, was only one basis for my determination that injunctive relief did not predominate over Nationwide's claim for monetary relief. *See* Ruling on Mot. for Certification of Countercl. Def. Class & Order 7 ("Ruling") (doc. # 442) (accepting that "Nationwide sincerely seeks an injunction" but noting that the absence of a formal request "suggests that any injunctive relief is insignificant" (quotation omitted)). Nationwide has not pointed to any other factors warranting reconsideration of the other reasons supporting my denial of Rule 23(b)(2) class certification.[2]

---

[2] In my ruling, I expressed doubts that Nationwide would have standing to seek an injunction against the Trustees. Ruling 10. Nationwide insists, however, that it would have standing to enjoin the Trustees from ratifying future revenue sharing payments. Defs.' Mot. for Reconsideration 8 & n.2 (doc. # 443). Although Nationwide's standing was not essential to my decision, Ruling 10, I note that Nationwide's standing would be limited to the extent that it is a fiduciary, i.e., to the extent it is able to extract revenue sharing payments from mutual funds. *See Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 122-23 (D. Conn. 2009) (describing functional analysis limiting fiduciary status "'to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan'" (quoting 29 U.S.C. § 1002(21)(A))). I did not make this point in my ruling because of its marginal importance to the Rule 23(b)(2) analysis, but I am nonetheless skeptical about Nationwide's assertion of standing

Nationwide's motion for reconsideration of my Rule 23(b)(2) decision is therefore denied.

## II.   RULE 23(b)(3) CLASS CERTIFICATION

I do not apply the motion for reconsideration standard with respect to Nationwide's request that I revisit my ruling denying Rule 23(b)(3) class certification because I dismissed Nationwide's counterclaim *sua sponte* and without the benefit of the parties' briefing. Instead, I apply the familiar Rule 12(b)(6) motion to dismiss standard, under which a motion to dismiss for failure to state a claim is granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The function of a motion to dismiss is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). When deciding a motion to dismiss, the court must accept the material facts alleged in the counterclaim as true, draw all reasonable inferences in favor of the counterclaim plaintiffs, and decide whether it is plausible that the counterclaim plaintiffs have a valid claim for relief. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009)).

Although I do not treat Nationwide's motion with respect to my Rule 23(b)(3) decision as

---

to seek injunctive relief on behalf of the Plans against the Trustees for anything other than their ratification of Nationwide's revenue sharing payments. For reasons set forth in my prior rulings in this case, I have serious doubts that Nationwide has standing under ERISA to enjoin the Trustees from ratifying revenue sharing payments other than those giving rise to Nationwide's limited fiduciary status. *See, e.g.*, *Haddock v. Nationwide Fin. Servs., Inc.*, 570 F. Supp. 2d 355, 365 (D. Conn. 2008) (recognizing only that Nationwide "would have standing to bring a breach of fiduciary duty counterclaim to the extent that [it] sue[s] on behalf of the Plans for harms arising out of the revenue sharing payments" that Nationwide received).

a motion for reconsideration, I nevertheless rely upon and incorporate the analysis in my previous ruling that a counterclaim class cannot be certified because Nationwide's third amended counterclaim fails to state a claim on which relief can be granted. *See* Ruling 11-15. Specifically, I incorporate the analysis that (1) Nationwide's theory that the Trustees are wholly and exclusively responsible for the Plans' losses is incompatible with conditioning its counterclaim upon the court's determination that Nationwide is a fiduciary to the Plans and breached its fiduciary duty, and (2) Nationwide's counterclaim is, in fact, a "thinly veiled claim for contribution and/or indemnification," which I previously denied in *Haddock v. Nationwide Fin. Servs.*, 570 F. Supp. 2d 355, 365 (D. Conn. 2008). *See id.*

Nationwide has confirmed that its counterclaim is "contingent on a finding by this Court that Nationwide became a fiduciary to the plans and breached its fiduciary duty by accepting the mutual fund payments." Defs.' Mot. for Reconsideration 4 (doc. # 443); *see also* Defs.' Proposed Fourth Am. Countercl. ¶ 34 (doc. # 444, attach. 1) ("In the event that [Nationwide] is held to be a fiduciary, which [it is] not, and in the event that the Plans prove that they have suffered any harm as the Trustees allege, then [Nationwide] assert[s], in the alternative, this claim for breach of fiduciary duty against the Counterclaim Defendants."). But Nationwide argues that its counterclaim against the Trustees is valid because it is no different than claims in other cases where plan trustees are sued in conjunction with plan investment administrators and/or advisers, such as Nationwide, for collectively breaching their fiduciary duties. *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) (suit by employees against 401(k) retirement plan sponsor and administrators); *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1074 (C.D. Cal. 2009) (same). Furthermore, Nationwide asserts that its affirmative defenses, such as the Trustees' ratification of the revenue sharing payments, are not coextensive with its counterclaim

against the Trustees.  In other words, it does not accept my conclusion that Nationwide cannot simultaneously fail in proving its defenses and succeed in proving the Trustees' exclusive liability.[3]  *See* Ruling 12-13.

Neither of those points is helpful.  The fact that multiple fiduciaries are often sued together does not relieve Nationwide of the core problem with respect to its counterclaim: that "[n]o rational trier of fact could find the Trustees wholly responsible for the Plans' losses after first finding that Nationwide is liable to the Plans for its breach." *Id.* at 12.  And Nationwide's bare, conclusory assertion that its defenses are "not as broad as Nationwide's counterclaim" is inadequate to avoid dismissal of its counterclaim as a matter of law.  Defs.' Mot. for Reconsideration 4.

Finally, although I understand Nationwide's belief that "the trustees have used their affirmative lawsuit, and their limitation of any remedy to disgorgement, to shield themselves from any liability," the defendant's position is mistaken.  If Nationwide succeeds in defending this lawsuit, by either proving it was not a fiduciary or by proving that it did not breach its fiduciary duties, the Trustees could in theory be liable to Plan participants for being (to use Nationwide's language) "derelict in their fiduciary duty by allowing the payments and, indeed, even entering into the annuity contracts that were priced and otherwise structured based on these mutual fund payments." *Id.* at 3.  The difference, however, is that Plan participants, and not Nationwide, would have to prosecute that lawsuit.  For, if it wins on its defenses against the Trustees' claims, Nationwide will either lack standing to sue on the Plans' behalf because it is

---

[3] As before, Nationwide still seeks to hold the Trustees exclusively liable on its counterclaim. *See* Defs.' Proposed Fourth Am. Countercl. ¶ 37 (doc. # 444, attach. 1) ("[The] misconduct by the Counterclaim Defendants was the exclusive cause of any harm to the Plans and/or Plan participants that is alleged in the Sixth Amended Complaint.").

not a fiduciary, or Nationwide will have no counterclaim because it proved that the revenue sharing payments did not constitute a breach of its fiduciary duty. It is only if Nationwide loses on its defenses, and is found to have breached its fiduciary duty, that its conditional counterclaim to hold the Trustees exclusively responsible for the breach arises — and at that point, the counterclaim is legally untenable.[4]

For the reasons set forth in my initial ruling and the additional reasons set forth in rejecting Nationwide's motion for reconsideration, Nationwide's third amended counterclaim against the Trustees is dismissed and class certification under Rule 23(b)(3) is denied.

## III. CONCLUSION

Nationwide is not entitled to reconsideration of my rulings denying class certification under Rule 23(b)(2) and dismissing the third amended counterclaim and denying class certification under Rule 23(b)(3). Nationwide's motion for reconsideration (doc. # 443) is DENIED. I also deny Nationwide's motion for leave to amend its third amended counterclaim (doc. # 444), which is unnecessary in light of my denial of its motion for reconsideration.

---

[4] Nationwide argues separately that it can sue the Trustees for the Plans' forgone profits — i.e., the difference between the values of the revenue sharing payments Nationwide received and the services, reduced prices, and product improvements Nationwide provided to the Plans, — under ERISA. *See* Defs.' Mot. for Reconsideration 5-6. Nationwide's argument appears to misunderstand my ruling denying class certification. I acknowledge that a plan participant or fiduciary may pursue legal damages against an ERISA fiduciary for forgone profits. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 522 U.S. 248, 251, 253 (2008) (recognizing legal claim for damages pursuant to section 502(a)(2) of ERISA for lost profits not in the defendant's possession). In my ruling, however, I only held that, because the lost profits were not in the Trustees' possession, Nationwide's counterclaim "sounds in law, rather than equity," which factored into my decision that Nationwide's sought injunctive relief did not predominate under Rule 23(b)(2). Ruling 8-9. I did not consider the equitable or legal nature of Nationwide's counterclaim when I dismissed it. Instead, I simply ruled that it was not possible for Nationwide to construct a counterclaim holding the Trustees solely responsible for the plans' losses *following* a court determination that Nationwide is liable for those same losses.

It is so ordered.

Dated at Bridgeport, Connecticut, this 8th day of November 2010.

                                                        /s/ Stefan R. Underhill
                                                       Stefan R. Underhill
                                                       United States District Judge