UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing Plan, ALAN GOUSE, as trustee of Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust, CHRISTOPHER ANDERSON, as trustee of the Anderson Law Firm, P.C. 401(k) Profit Sharing Plan and Trust, f/k/a the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan, and H. GRADY CHANDLER, as trustee of the Law Offices of H. Grady Chandler, P.C., 401(k) Profit Sharing Plan and Trust<br><br>    PLAINTIFFS,<br><br>                  v.<br><br>NATIONWIDE LIFE INSURANCE CO.,<br><br>    DEFENDANT. | CIVIL ACTION NO.:<br><br>3:01CV1552 (SRU) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

I.  NATIONWIDE'S REGISTERED ANNUITIES ARE SUBJECT TO EXTENSIVE
    REGULATION UNDER THE SECURITIES LAWS ....................................................... 2

    A.  Variable Annuities And The Securities Laws …………………………………….2

    B.  Securities Law Regulation Of Nationwide's Registered Variable Annuities …….4

II. NATIONWIDE'S REGISTERED VARIABLE ANNUITIES ARE NOT SUBJECT TO
    ERISA'S FIDUCIARY PROVISIONS ............................................................................. 7

    A.  ERISA Broadly Excludes Registered Variable Annuities And Registered Separate
        Accounts From Fiduciary Requirements ……………………………………………7

    B.  Nationwide's Registered Variable Annuities Are Not Subject To ERISA
        Fiduciary Requirements And Plaintiffs' Claims As To Those Annuities Fail As A
        Matter Of Law ……………………………………………………………………..9

CONCLUSION.............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Boeckman v. A.G. Edwards, Inc.*,
  CIV. 05-658-GPM, 2007 WL 4225740 (S.D. Ill. Aug. 31, 2007)..........................................10

*Haddock v. Nationwide Fin. Servs., Inc.*,
  293 F.R.D. 272 (D. Conn. 2013).................................................................................9, 10, 11

*Lander v. Hartford Life & Annuity Ins. Co.*,
  251 F.3d 101 (2d Cir. 2001).................................................................................................2, 3, 8

*Olmsted v. Pruco Life Ins. Co. of New Jersey*,
  283 F.3d 429 (2d Cir. 2002).......................................................................................................5

*Prudential Ins. Co. of Am. v. S.E.C.*,
  326 F.2d 383 (3d Cir. 1964).................................................................................................3, 10

*SEC v. Variable Annuity Life Ins. Co. of America*
  359 U.S. 65 (1959).....................................................................................................................3

**STATUTES**

15 U.S.C. § 77c(a)(2)..........................................................................................................................4

15 U.S.C. § 77c(a)(8)..........................................................................................................................3

15 U.S.C. § 80a-3(c)(3).......................................................................................................................3

15 U.S.C. § 80a-3(c)(11).....................................................................................................................4

15 U.S.C. § 80a-4...............................................................................................................................3

15 U.S.C. § 80a-26.............................................................................................................................5

15 U.S.C. § 80a-26(f).........................................................................................................................5

29 U.S.C. § 1002(21)(B)..................................................................................................................1, 7

29 U.S.C. § 1101(b)..........................................................................................................................12

29 U.S.C. § 1101(b)(1) ....................................................................................................................1, 8

**LEGISLATIVE HISTORY**

S. Rep. No. 184, 91st Cong., 1st Sess. 41 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4897 .............. 5

ERISA, H.R. Conf. Rep. 93-1280, 93d Cong., 2d Sess. ................................................................ 8

*Legislative History of The Employee Retirement Income Security Act of 1974,* Pub. L. No. 93-406, Hearing before the Subcomm. on Labor of the S. Comm. on Labor and Public Welfare, 94th Cong., 2d Sess. ................................................................................................ 9

**REGULATIONS**

U.S. Dept. of Labor, Final Regulation Relating to the Definition of Plan Assets, 51 Fed Reg. 41262 (1986) ................................................................................................................ 8

29 C.F.R. § 2510.3-101(a)(2) ................................................................................................. 1, 12

**AGENCY DECISIONS**

DOL Adv. Op. 97-16A (May 22, 1997) ................................................................................. 5, 6

DOL Adv. Op. 2009-04A (Dec. 4, 2009) ....................................................................... 9, 11, 12

Nationwide Life Insurance Company, et al., SEC Investment Company Act Release No. 29486, 2010 WL 4227905 (Oct. 25, 2010). ........................................................................... 7

**OTHER AUTHORITIES**

SEC, *Protecting Investors*: *A Half Century of Investment Company Regulations* (May 1992) .......................................................................................................................... 1, 2, 3, 9

William M. Tartikoff, *Treatment of Mutual Funds Under ERISA*, 577 DUKE L. J. 578 (1979) ....................................................................................................................................... 9

Nationwide Life Insurance Company ("Nationwide") respectfully submits this memorandum of law in support of its motion for partial summary judgment as to the SEC-registered individual variable annuity contracts that are the subject of Plaintiffs' ERISA claims.

## PRELIMINARY STATEMENT

ERISA expressly excludes Nationwide's SEC-registered annuities—the "individual" annuities in this case—from the scope of any fiduciary requirements through two separate provisions: Section 401(b) provides that the assets of the registered separate accounts that fund those annuities are *not* plan assets, 29 U.S.C. § 1101(b)(1); *see also* 29 C.F.R. 2510.3-101(a)(2) (Department of Labor rule excluding assets of registered investment companies from definition of "plan assets"); and Section 3(21)(B) provides that an ERISA plan's investment in registered annuities does *not* make the investment company or its principal underwriter a fiduciary, 29 U.S.C. § 1002(21)(B). This "special treatment of investment companies" represents Congress's conclusion that the *securities laws*, not ERISA's fiduciary requirements, regulate registered variable annuities and investment companies—even when ERISA plans invest in them. SEC, Division of Investment Management, *Protecting Investors: A Half Century of Investment Company Regulation* (May 1992) at 156 n.149.

Nationwide is entitled to partial summary judgment because ERISA's exclusions foreclose Plaintiffs' claims that Nationwide became a fiduciary to plans that purchased its registered annuities. Those exclusions apply regardless of Nationwide's alleged control over annuity product design and investment option selection and regardless of whether Nationwide profits from registered separate account assets. Plaintiffs' claims to the contrary would write ERISA's exclusions out of the statute. On their view, a mutual fund adviser could be subject to ERISA fiduciary requirements simply because the adviser (like all advisers) controls how fund

1

assets are invested or profits from fund assets. No case supports that proposition. Indeed, Plaintiffs' claims are unprecedented: neither Nationwide nor Plaintiffs have yet identified any other case in which a court entertained (or a plaintiff even attempted) a claim that a provider of registered annuities becomes an ERISA fiduciary to employee benefit plans that purchase those annuities.[1]

## I. NATIONWIDE'S REGISTERED ANNUITIES ARE SUBJECT TO EXTENSIVE REGULATION UNDER THE SECURITIES LAWS

### A. Variable Annuities And The Securities Laws

The reason for ERISA's carve-outs for registered variable annuities requires some background on variable annuities and their regulation. An annuity is a contract by which an insurer agrees to make a series of payments for a specified period. *See generally* SEC, *Protecting Investors*, at 378-379. Unlike a "fixed" annuity, which generally provides a guaranteed rate of return, the value of a "variable" annuity contract varies according to the investment performance of the underlying investment options selected by the contract holder. *See Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 104-105 (2d Cir. 2001). Variable annuities are sometimes viewed "as 'hybrid products,' possessing characteristics of both insurance products and investment securities." *Id*. at 105.

After variable annuities were developed, the Supreme Court held that they "must be registered with the SEC as securities under the Securities Act of 1933 ['"33 Act"],'" unless

---

[1] In connection with this motion, Nationwide incorporates in their entirety the materials submitted by Nationwide supporting its motion for summary judgment [Dkt. #532], including Nationwide's Memorandum of Law [Dkt. #532, Attachment 1], which includes a statement of facts and a statement of applicable legal standards, and Nationwide's Local Rule 56.1 Statement of Undisputed Facts [Dkt. #532, Attachment 3]. In addition, to assist the Court's consideration of these issues, Nationwide has attached certain materials relevant to the registered annuities at issue in this motion.

covered by another exemption. *Lander*, 251 F.3d at 105 (citing *SEC v. Variable Annuity Life Ins. Co. of Am. ("VALIC")*, 359 U.S. 65, 69-73 (1959)).[2] In addition, although insurance companies themselves are generally exempt from the Investment Company Act of 1940 ( "'40 Act"), *see* 15 U.S.C. § 80a-3(c)(3), the separate account associated with the variable annuity gives "rise to a separate investment company within the coverage of the ['40 Act]." *Prudential Ins. Co. of Am. v. S.E.C.*, 326 F.2d 383, 385-86 (3d Cir. 1964). As a result, variable annuity "separate accounts must be registered with the SEC as investment companies under the ['40 Act]," unless another exemption from registration applies. *Lander*, 251 F.3d at 105.

This case concerns two basic types of Nationwide variable annuities: "group" variable annuities and "individual" variable annuities. The individual annuities are sold to the public at large—mostly to individual investors but also to a relatively small number of ERISA plans.[3] They are therefore subject to registration under the '33 Act consistent with the Supreme Court's *VALIC* decision. In addition, their separate accounts are registered as "unit investment trusts," a form of investment company under the '40 Act. *See* 15 U.S.C. § 80a-4 (defining a "[u]nit investment trust" as "an investment company"); Supp'l Henderson Decl., filed 3/30/12 [Dkt.

---

[2]   Before variable annuities, "there was little controversy over whether insurance contracts were securities subject to regulation under the federal securities laws." SEC, *Protecting Investors*, at 380. They were not. Section 3(a)(8) of the '33 Act specifically excluded "insurance" and "annuity" contracts "subject to the supervision of the insurance commissioner . . . of any State." 15 U.S.C. § 77c(a)(8); *see VALIC*, 359 U.S. at 67. Section 3(c)(3) of the '40 Act also excepted insurance companies from the definition of an "investment company." 15 U.S.C. § 80a-3(c)(3). But the development of variable annuities presented a new wrinkle, because unlike traditional fixed annuities or insurance contracts, variable annuity premiums were often "invested … in common stocks and other equities" and "benefit payments vary with the success" of the contracts' underlying investments. *VALIC*, 359 U.S. at 69.

[3]   ERISA plans represent a very small percentage—ranging from 1% to 6% over time—of the total amount contributed by Nationwide's individual annuity customers. *See* Ex. A, Supp'l Henderson Decl. ¶ 4.

#534] ¶¶ 29-30 (attached as Exhibit A to the accompanying Clauss Decl.); *see also* Summ. J. Arg. Tr. (July 11, 2014) at 42 [Dkt. #568] (Plaintiffs' counsel acknowledging that "the individual annuities have to be registered by the SEC").

The group variable annuities, however, are generally exempt from registration under a separate provision of the '33 Act that applies to securities issued in connection with qualifying employee benefit plans. *See* 15 U.S.C. § 77c(a)(2) (exempting "any security arising out of a contract issued by an insurance company, which interest, participation, or security is issued in connection with" specified qualifying plans). The group annuity separate accounts are similarly exempt from registration under the '40 Act. *See* 15 U.S.C. § 80a-3(c)(11) (excluding from the definition of "investment company" "any separate account the assets of which are derived *solely* from" specified qualifying plans (emphasis added)).

### B.     Securities Law Regulation Of Nationwide's Registered Variable Annuities

A host of securities law requirements apply to registered variable annuities. For one, registered variable annuities are sold by means of a prospectus that is filed with and reviewed by the SEC, as required by the '33 Act. Each prospectus describes the contract terms, such as payout options and death benefits, and sets forth the underlying mutual fund investment options available in the annuity contract. For example, the SEC-filed prospectus for Nationwide's Best of America IV Annuity ("BOA IV") informs contract owners that Nationwide uses the assets of the variable account to buy shares of the underlying mutual funds according to contract owners' instructions. *See* Ex. 1, The Best of America IV Annuity Prospectus dated May 1, 2013, at N00050664. The prospectus also states that Nationwide or its affiliates receive certain payments from the underlying mutual funds' advisers or subadvisers (or their affiliates), and that

Nationwide considers such payments in identifying underlying mutual funds for the annuity product.  *Id.*; *see also* Ex. 2, Statement of Additional Information (Dec. 23, 1996), at N013938.

In addition to the prospectus requirements of the '33 Act, the '40 Act provides for extensive regulation of investment companies, including variable annuities and the mutual funds in which they invest.  The '40 Act addresses such matters as transactions with affiliates (§ 17), capital structure (§ 18), and the valuation of assets (§ 2(a)(41)).  In addition, § 26(f) of the '40 Act regulates contract "fees and charges deducted under the contract," requiring that, in the aggregate, they must be "reasonable in relation to the services rendered, the expenses expected to be incurred, and the risks assumed by the insurance company."  15 U.S.C. § 80a-26(f); *see also Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 432-33 (2d Cir. 2002).

The '40 Act also assigns regulatory authority to the SEC over a key issue in this litigation—the substitution of underlying investment options in a registered annuity—and sets forth standards for the required SEC approval of such substitutions.  Section 26(c) provides that "[t]he Commission shall issue an order approving such substitution if the evidence establishes that it is consistent with the protection of investors and the purposes fairly intended by the policy and provisions of [the '40 Act]."  15 U.S.C. § 80a-26.  The idea of this provision is that variable annuities are designed to allow contract owners to choose how to allocate their contributions to particular investment options when they enter into the annuity contract (or subsequently), and that those choices should not be disturbed without SEC approval.[4]  *See* 1970 U.S.C.C.A.N. 4897, 4936 (quoting S. Rep. No. 91-184, 91st Cong., 1st Sess. 41) (addition of § 26(c) intended to close a "gap in shareholder protection by providing for Commission approval of the

---

[4] In the ERISA group annuity context, plan participant contract owners are generally protected by the plan trustee's decision to accept or reject an investment option substitution.  *See* DOL Adv. Op. 97-16A (May 22, 1997).

substitution"). Consistent with this regulatory scheme, Nationwide's registered annuity prospectuses advise contract owners of the possibility of investment option substitutions and the requirement of SEC approval. *See* Ex. 1, The Best of America IV Annuity Prospectus dated May 1, 2013, at N00050664-65; Ex. 4, The Best of America IV Annuity Prospectus dated May 1, 1998, at N00049517.

The SEC protects the interests of contract owners by exercising its broad authority to review and approve proposed substitutions of underlying investment options. A review of Nationwide's substitution applications demonstrates the extent of SEC regulatory oversight of the substitution process. In 2010, for example, Nationwide filed an application seeking SEC approval to substitute various investment options in its registered separate accounts. *See* Ex. 3, *Nationwide Life Ins. Co., et al.*, Substitution Application, File No. 812-13648 (Oct. 21, 2010). In its amended application, Nationwide provided required information regarding the proposed substitutions and represented to the SEC that the new funds had "similar … investment objectives and strategies" to the funds that were being replaced and that the substitutions would serve to consolidate overlapping investment options and simplify the investment process. *Id.* at N00047616. Nationwide also made specific representations regarding fees, including that the replacement funds had "the same or lower net operating expenses" and that the net expenses of the replacement funds would not exceed the net expenses of the substituted funds for a period of two years. *Id.* at N00047546. Finally, Nationwide's application provided for specific notice procedures that would allow contract owners to accept the proposed substitutions or reallocate their contributions to other investment options chosen by the contract owner.[5] *Id.* at N00047612-

---

[5] Nationwide represented that it would provide contract owners with prospectus supplements at least thirty days before the substitution date, and that contract owners would be

N00047613.  The SEC posed questions and comments in response to the application, and Nationwide amended its application twice in light of the SEC's input.  The SEC ultimately approved the application, finding that the substitutions were "consistent with the protection of investors and the purposes fairly intended by the policy and provisions of the ['40 Act]."  Ex. 5, *Nationwide Life Insurance Company, et al.*, SEC Investment Company Act Release No. 29486, 2010 WL 4227905, at *9 (Oct. 25, 2010).

## II.   NATIONWIDE'S REGISTERED VARIABLE ANNUITIES ARE NOT SUBJECT TO ERISA'S FIDUCIARY PROVISIONS

### A.   ERISA Broadly Excludes Registered Variable Annuities And Registered Separate Accounts From Fiduciary Requirements

ERISA exempts registered annuities from its fiduciary requirements in view of this extensive regulatory framework under the securities laws, which was already in place at the time ERISA was enacted.  First, ERISA § 3(21)(B) provides that when an ERISA plan invests in securities issued by a registered investment company, "such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter to be deemed to be a fiduciary or a party in interest as those terms are defined in this subchapter."[6]  29 U.S.C. § 1002(21)(B).  Second, ERISA § 401(b) provides:  "In the case of a

---

free to transfer their allocations to other investment options, without penalties or limits, from the date of the prospectus supplement to at least thirty days after the substitution date. *See* Ex. 3, *Nationwide Life Ins. Co., et al.*, Substitution Application, File No. 812-13648 (Oct. 21, 2010). These provisions broadly parallel the notice and negative consent process for post-contractual substitutions in the ERISA context, as set forth in the Department of Labor's Aetna Letter. *See* DOL Adv. Op. 97-16A (provider does not act as a fiduciary with regard to investment option substitution provided "the appropriate plan fiduciary in fact makes the decision to accept or reject the change").

[6]   Section 3(21)(B) reads in full:  "If any money or other property of an employee benefit plan is invested in securities issued by an investment company registered under the Investment Company Act of 1940 [15 U.S.C. 80a–1 et seq.], such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter

plan which invests in any security issued by an investment company registered under the Investment Company Act of 1940, the assets of such plan shall be deemed to include such security but shall not, solely by reason of such investment, be deemed to include any assets of such investment company." 29 U.S.C. § 1101(b)(1).

By enacting these provisions, Congress broadly excluded registered investment companies such as variable annuity separate accounts and mutual funds from ERISA's fiduciary provisions. As the Department of Labor ("DOL") has stated, "this statutory exclusion was included in ERISA in view of the existence of regulation under the Investment Company Act and because interests in registered investment companies must be widely held." DOL, Final Regulation Relating to the Definition of Plan Assets, 51 Fed Reg. 41262 n.7 (1986). Congress explained its rationale in terms of mutual funds, but the provisions apply equally to registered variable annuities, which likewise are registered investment companies under the '40 Act. *See Lander*, 251 F.3d at 109-110 (variable annuity constitutes "security issued by an investment company that is registered … under the Investment Company Act of 1940"). The Conference Report explained that such investment companies "are regulated by the Investment Company Act of 1940" and thus "it is not considered necessary to apply the fiduciary rules to mutual funds merely because plans invest in their shares." H.R. Conf. Rep. 93-1280, at 5077. Likewise, a separate report noted that registered investment companies, along with their investment advisers and principal underwriters, "are currently subject to substantial restrictions on transactions with

---

to be deemed to be a fiduciary or a party in interest as those terms are defined in this subchapter, except insofar as such investment company or its investment adviser or principal underwriter acts in connection with an employee benefit plan covering employees of the investment company, the investment adviser, or its principal underwriter. Nothing contained in this subparagraph shall limit the duties imposed on such investment company, investment adviser, or principal underwriter by any other law."

8

affiliated persons under the Investment Company Act of 1940," and "that unintended results might occur" if they were not excluded from ERISA's fiduciary definitions. *Legislative History of The Employee Retirement Income Security Act of 1974,* Pub. L. No. 93-406, Hearing before the Subcomm. on Labor of the S. Comm. on Labor and Public Welfare, 94th Cong., 2d Sess., at 3306 (Comm. Print 1976); *see also* DOL Adv. Op. 2009-04A (Dec. 4, 2009) ("Congress concluded that it did not need to apply ERISA's fiduciary rules to the operation of mutual funds in addition to the Investment Company Act's regulatory scheme"); William M. Tartikoff, *Treatment of Mutual Funds Under ERISA*, 577 DUKE L. J. 578, 581 (1979) ("The legislative history of ERISA indicates that Congress enacted these provisions recognizing that mutual fund organizations are already subject to extensive fiduciary regulation under the federal securities laws.").

The upshot of ERISA § 3(21)(B) and § 401(b), as the SEC has explained, is that "when a plan invests in securities issued by an investment company, those securities—but not any assets of the investment company—become plan assets," and "neither the investment company nor its investment adviser or principal underwriter is treated as a fiduciary of such plan under ERISA." SEC, *Protecting Investors* at 156 n.149. "This special treatment of investment companies reflects Congress' perception that the Investment Company Act already subjects investment companies to extensive fiduciary regulation." *Id.*

    **B.**    **Nationwide's Registered Variable Annuities Are Not Subject To ERISA Fiduciary Requirements And Plaintiffs' Claims As To Those Annuities Fail As A Matter Of Law**

ERISA's exclusions foreclose, as a matter of law, Plaintiffs' claims that Nationwide became a fiduciary in connection with the plans' selection of the registered annuities and investment in the registered separate accounts. Under § 401(b), the funds in Nationwide's

9

registered separate accounts—the assets present and future that Nationwide purportedly "leverages" to extract revenue sharing and that the mutual funds supposedly pay to "access" (*Haddock v. Nationwide Fin. Servs., Inc.*, 293 F.R.D. 272, 277, 283 (D. Conn. 2013))—are not "plan assets" at all.  It does not matter that some of those assets were derived from ERISA plan contributions, as § 401(b) makes clear.  Moreover, under the plain terms of § 3(21)(B), the fact that ERISA plans have invested in registered annuities does not make Nationwide a fiduciary to those plans.  Section 3(21)(B) expressly protects both the registered separate account and its investment adviser or principal underwriter (Nationwide) from being deemed a fiduciary in those circumstances.  *See Prudential Ins.*, 326 F.2d at 385-86 n.3 (insurer offering registered variable annuity is the "investment adviser" or "principal underwriter" of an investment company).  Plaintiffs can no more sue Nationwide as an ERISA fiduciary based on their investment in registered annuities than they could sue the advisers of the underlying *mutual funds* as ERISA fiduciaries and claim breach based on the advisers' investment decisions or on the fact that the advisers profit from fund assets.  *See Boeckman v. A.G. Edwards, Inc.*, CIV. 05-658-GPM, 2007 WL 4225740 (S.D. Ill. Aug. 31, 2007) ("[W]hen a plan invests in a mutual fund, the plan assets include the fund shares, but do not include the underlying assets of the fund: the fund's portfolio transactions and day-to-day operations are insulated from the prohibited transaction rules.").  Indeed, Plaintiffs' claims involving the registered annuities are unprecedented:  neither Nationwide, nor Plaintiffs to this point, have identified any case in which a plaintiff contended that a provider of registered variable annuities becomes an ERISA fiduciary to employee benefit plans that purchase those annuities.  And no other ERISA revenue sharing case that the parties have identified even concerns registered variable annuities.

ERISA's exclusions apply regardless of Nationwide's alleged control over annuity product design and investment option selection. After all, every investment company has such control. Mutual fund advisers, for example, have considerable leeway to invest fund assets consistent with the prospectus, yet they are shielded by ERISA's exclusions. That is evident from the text, purpose, and legislative history of §§ 3(21)(B) and 401(b), *see supra* pp. 7-9, and a DOL advisory opinion confirms the point. *See* DOL Adv. Op. 2009-04A. The DOL opinion concerned "target-date" or "lifecycle" mutual funds, which generally invest in a selection of other affiliated mutual funds. A target-date fund sponsored by Fidelity, for example, might invest in a variety of other Fidelity mutual funds. If the target-date fund's adviser were deemed an ERISA fiduciary or if the fund were deemed to consist of ERISA plan assets, the selections of affiliated mutual funds (which would generate additional advisory fees for the affiliated adviser) might be deemed to be prohibited transactions. But DOL's advisory opinion had no trouble concluding that the exclusions in § 3(21)(B) and § 401(b) apply to target-date funds, like all other investment companies: "the fact that a target-date or lifecycle mutual fund's assets consist of shares of affiliated mutual funds does not, on that basis alone, make the assets of the target-date or lifecycle mutual fund 'plan assets' of investing employee benefit plans or the investment advisers to such mutual funds fiduciaries to the investing plans under ERISA." DOL Adv. Op. 2009-04A. The same conclusion applies here: regardless of Nationwide's control over product design, the registered separate accounts do not contain plan assets, and Nationwide, as the investment adviser or principal underwriter of the registered separate accounts, does not become an ERISA fiduciary when plans purchase those annuities.

Plaintiffs' argument that the registered separate account assets "ultimately trace back to plan assets" also has no bearing on the application of ERISA's exclusions. Pls.' Mem. in Opp. to

11

Def.'s Mot. for Summ. J. at 16 (Dkt. #545). That is *exactly* the issue ERISA's exclusions are designed to address: Section 401(b) makes clear that the registered separate account assets—the "pool of money" that Nationwide allegedly "leverage[s]" to obtain revenue sharing (*Haddock*, 293 F.R.D. at 277, 283)—does not consist of "plan assets," even if some of the assets are derived from ERISA plan contributions. And § 3(21)(B) makes clear that Nationwide does not become a fiduciary simply because ERISA plans have invested in the registered annuities. Plaintiffs' "traceability" argument would obliterate ERISA's exclusions for registered investment companies, because *whenever* an ERISA plan invests in securities of a registered investment company, the investment company's assets become "traceable" to the plan in some fashion. If that were enough to avoid ERISA's exclusions, a mutual fund adviser could be subject to ERISA fiduciary obligations in its investment decisions simply because an ERISA plan bought fund shares. But Congress expressly foreclosed that result when it enacted § 3(21)(B) and § 401(b). *See also* 29 C.F.R. § 2510.3-101(a)(2) (assets of registered investment companies excluded from definition of ERISA "plan assets").

Finally, § 401(b)'s proviso that "the assets of [a] plan shall be deemed to include [the] *security*" issued by a registered investment company, as opposed to the investment company's *assets*, provides no refuge for Plaintiffs' claims. 29 U.S.C. § 1101(b) (emphasis added). The evident purpose of that provision is to ensure that plan transactions involving the security itself—*i.e.*, purchases, sales, and transfers of that security *by a plan*—remain covered by ERISA. For example, a *plan trustee*'s "decision to invest plan assets" in a variable annuity or other security is subject to ERISA's fiduciary requirements. DOL Adv. Op. 2009-04A. If such transactions were not covered, a plan trustee's transfer of a plan's registered variable annuity contract, or mutual fund shares, to his own personal account would fall entirely outside of ERISA's fiduciary

12

protections. That is why Congress made clear that securities held by a plan remain plan assets, even while registered investment companies and their investment advisers and principal underwriters were broadly excluded from ERISA's fiduciary requirements.

## CONCLUSION

For the foregoing reasons, Nationwide respectfully requests that the Court grant its motion for partial summary judgment.

Dated: August 15, 2014

Respectfully submitted,

Defendant Nationwide Life Insurance Co.

By: <u>s/ Thomas F. Clauss, Jr.</u>
Thomas F. Clauss, Jr. (CT 12392)
Wiggin and Dana LLP
Two Stamford Plaza
281 Tresser Boulevard
Stamford, CT  06901
Telephone:  (203) 363-7610
Facsimile:  (203) 363-7676

Charles C. Platt (CT 23036)
Noah A. Levine (PHV 05067)
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
Telephone:  (212) 230-8800
Facsimile:  (212) 230-8888

David W. Bowker (PHV 05714)
Amy K. Wigmore (PHV 06735)
Daniel P. Kearney, Jr. (PHV 05813)
Elizabeth K. Canizares (PHV 02306)
Stephen V. Carey (PHV 06773)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

## **CERTIFICATION**

I hereby certify that on August 15, 2014, a copy of the foregoing Memorandum of Law in Support of Defendant's Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by electronic mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

                        By:    /s/ Thomas F. Clauss, Jr.
                                Thomas F. Clauss, Jr. (CT 12392)
                                Wiggin and Dana LLP
                                Two Stamford Plaza
                                281 Tresser Boulevard
                                Stamford, CT  06901
                                Telephone:  (203) 363-7610
                                Facsimile:  (203) 363-7676