UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, PETER WIBERG, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing Plan, ALAN GOUSE, as trustee of the Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Seal Rehabilitation Center, Inc., Trust, CHRISTOPHER ANDERSON, as trustee of the Anderson Law Firm, P.C. 401(k) Profit Sharing Plan and Trust, f/k/a the Anderson & Ferdon P.C. 401(k) Profit Sharing Plan, H. GRADY CHANDLER, as trustee of the Law Offices of H. Grady Chandler, P.C., 401(k) Profit Sharing Plan and Trust, and CHRISTOPHER M. McKEON, as trustee of the Bershtein, Volpe & McKeon Profit Sharing Plan, f/k/a the Bershtein, Lippman, Bachman & McKeon Profit Sharing Plan,<br><br>    PLAINTIFFS,<br><br>v.<br><br>NATIONWIDE FINANCIAL SERVICES INC., and NATIONWIDE LIFE INSURANCE CO.,<br><br>    DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 01-CV-1552 (SRU) |

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Peter Wiberg,

Alan Gouse, Christopher Anderson, H. Grady Chandler, and Christopher M. McKeon, in their

capacities as trustees of retirement plans that purchased Annuity Contracts and/or Trust

Platforms from Nationwide ("Plaintiffs"), on behalf of themselves and all others similarly

situated (the "Class"), respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Unopposed Motion").

Plaintiffs, with the consent of Defendants Nationwide Financial Services, Inc. and Nationwide Life Insurance Co. (collectively, "Defendants"), respectfully request the Court to enter the proposed Order presented herewith that preliminarily approves the Settlement Stipulation and Release ("Stipulation") attached as Exhibit A hereto.[1]   The Stipulation certifies the Class for settlement purposes, provides for Notice to the Class, and schedules the Fairness Hearing for final approval of the Settlement. Attached as exhibits to the Stipulation are the proposed Published Notice to the Class (Exhibit B), the proposed Notice to the Class (Exhibit C), the proposed Claim Form (Exhibit D), the proposed Plan of Allocation (Exhibit E), the proposed Order granting the Unopposed Motion for Preliminary Approval of the Class Action Settlement (Exhibit F), the proposed Final Order and Judgment (Exhibit G), and disclosures related to Defendants' Annuity Contracts and Trust Platforms (Exhibits H and I, respectively).

I.      **Introduction**

Plaintiffs and the Class are trustees of qualified retirement plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), which held Annuity Contracts and/or Trust Platforms from Defendants or their affiliates.[2] Plaintiffs sued Defendants under ERISA for breaching their fiduciary duties to the plans, asking the Court for declaratory and

---

[1] All defined terms herein have the same meaning as set forth in the Settlement Stipulation and Release, attached as Exhibit A hereto.

[2] As explained further *infra* in Part IV, and as set forth in Plaintiffs' Seventh Amended

[2] As explained further *infra* in Part IV, and as set forth in Plaintiffs' Seventh Amended Complaint filed contemporaneously herewith, the Class now consists of two subclasses, the certification of which is proposed for purposes of settlement:  the Variable Annuity Subclass, represented by Plaintiffs Wiberg, Gouse, Anderson and Chandler, and the Trust Platform Subclass, represented by Plaintiff McKeon.

injunctive relief, as well as disgorgement of the revenue sharing payments Defendants received from mutual funds.

After more than thirteen (13) years of vigorously contested litigation, and after hard-fought, arm's-length negotiation by highly experienced counsel, Plaintiffs and Defendants reached a Settlement resolving the claims of Plaintiffs and the members of the Class. This Settlement achieves an excellent result for the members of the Class: it secures a number of significant changes to Defendants' business practices that will result in different investment options and enhanced disclosures for the Class and for future purchasers of Defendants' annuity contracts and trust platform products. Defendants will also pay $140,000,000 (including Attorneys' Fees and Class administration expenses) to the Class.

In light of these considerable benefits to Class Members, Plaintiffs respectfully request the Court to enter an order:

> (1) preliminarily approving the Settlement and finding that the proposed settlement is sufficiently fair, reasonable and adequate to allow dissemination of notice of the settlement to the Class;

> (2) certifying the Class for settlement purposes, including the Annuity Contracts and Trust Platform Sub-Classes, appointing Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel;

> (3) approving the form of Class Notice and directing that Notice be mailed;

> (4) establishing a deadline for Class Members to exclude themselves or object to the proposed Settlement; and

> (5) establishing a date for the Fairness Hearing on final approval of the proposed Settlement.

**II.      Background**

**A.      The Litigation**

As the Court is aware, this case has been pending for more than thirteen (13) years, and it thus has an extensive procedural history, resulting in no less than six published opinions from the Court – all denying relief requested by Defendants or granting relief in Plaintiffs' favor.

1.      Defendants' First Motion for Summary Judgment

Plaintiffs originally filed this suit in August 2001, filed an amended complaint in September 2001, and filed a second amended complaint in February 2003.   In May 2003, Plaintiffs filed a third amended complaint to which Defendants filed an answer and asserted three counterclaims: contribution, indemnification, and breach of fiduciary duties.

In August 2003, Defendants filed a motion for summary judgment challenging the legal validity of Plaintiffs' theories of liability. In June 2004, the Court held oral argument on the motion for summary judgment, and it ordered Plaintiffs to file a fourth amended complaint, setting forth their then-current theories of liability. Later that month, Plaintiffs filed their fourth amended complaint, and the parties provided supplemental briefing to address that pleading. In July 2004, Defendants also filed an answer to the fourth amended complaint, again asserting three counterclaims: contribution, indemnification, and breach of fiduciary duties.

In March 2006, the Court issued its opinion and order denying Defendants' motion for summary judgment.  *Haddock v. Nationwide Financial Services, Inc.*, 419 F. Supp. 2d 156 (D. Conn. 2006) ("*Haddock I*"). The Court concluded that Plaintiffs "raised triable issues of fact with respect to Defendants' status as a fiduciary, their claim that the challenged payments constitute 'plan assets' under a functional approach, and the character of the so-called service contracts as prohibited transactions." *Haddock I*, 419 F. Supp. 2d at 164.

2.     Defendants' Motion to Dismiss

Following the denial of Defendants' motion for summary judgment, Plaintiffs filed their fifth amended complaint in March 2006, reinstating the claim from their first amended complaint (subsequently omitted from the second, third, and fourth amended complaints) that Defendants are ERISA fiduciaries because they both selected the investment options that would be made available for plan investments and enjoyed a unilateral right to cease offering certain investment options and to substitute others in their place.

Defendants moved to dismiss the entirety of the fifth amended complaint, challenging their status as an ERISA fiduciary, including arguing that Plaintiffs waived their fund selection and deletion theory by including it in the first amended complaint but omitting it from subsequent complaints.  In September 2007, the Court issued its opinion and order denying Defendants' motion to dismiss in its entirety. *Haddock v. Nationwide Financial Services, Inc.*, 514 F. Supp. 2d 267 (D. Conn. 2007) ("*Haddock II*"). The Court found that Defendants' substantive arguments were foreclosed by its decision in *Haddock I*, which it refused to disturb, and it rejected the waiver argument.  *Haddock II*, 514 F. Supp. 2d at 273-74.

3.     Plaintiffs' Motion to Dismiss Defendants' Counterclaims

Defendants filed their answer to the fifth amended complaint in October 2007, again asserting three counterclaims: contribution, indemnification, and breach of fiduciary duties. Plaintiffs moved to dismiss all three counterclaims.

In August 2008, the Court issued its opinion and order granting Plaintiffs' motion. *Haddock v. Nationwide Financial Services, Inc.*, 570 F. Supp. 2d 355 (D. Conn. 2008) ("*Haddock III*"). The Court found that Defendants were precluded as a matter of law from seeking contribution or indemnification from Plaintiffs in connection with their claims for disgorgement, but it granted Defendants leave to replead their counterclaim for breach of

fiduciary duties in order to plead alleged actual harm or loss to the Plans as a result of Plaintiffs' purported breach of fiduciary duties. *Haddock III*, 570 F. Supp. 2d at 364-66.

### 4.  Plaintiffs' Motion for Class Certification

In November 2009, the Court issued its opinion and order granting Plaintiffs' motion for class certification. *Haddock v. Nationwide Financial Services, Inc.*, 262 F.R.D. 97 (D. Conn. 2009) ("*Haddock IV*"). The Court determined that Defendants acted or refused to act on grounds that apply generally to the Class, and it certified the case under Fed. R. Civ. P. 23(b)(2). *Haddock IV*, 262 F.R.D. at 122-25.

Defendants moved to certify the Plaintiff Class as a class of counterclaim defendants.  In July 2010, the Court issued its opinion and order denying Defendants' motion, finding that the remaining breach of fiduciary duty counterclaim that Defendants sought to certify failed to state a claim on which relief could be granted and dismissing the counterclaim accordingly. *Haddock v. Nationwide Financial Services, Inc.*, 272 F.R.D. 61 (D. Conn. 2010) ("*Haddock V*"). Defendants moved for reconsideration and for leave to amend their counterclaim, and the Court denied both requests. *Haddock V*, 272 F.R.D. at 69-72.

### 5.  Defendants' Interlocutory Appeal and the Second Circuit's Remand

Pursuant to Fed. R. Civ. P. 23(f), Defendants appealed the Court's ruling on class certification to the Second Circuit, and the Court stayed proceedings pending the appeal.  In February 2012, the Second Circuit issued a summary order, finding that the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)—decided during the pendency of the appeal—effected a change in the law the Court relied on in certifying the Class under Rule 23(b)(2), and it remanded for reconsideration of Plaintiffs' class certification motion under Rule 23(b)(3). *Nationwide Life Ins. Co. v. Haddock*, 2012 WL 360633 (2d Cir. 2012) ("*Haddock VI*").

6.      The Court Re-Certifies The Class, And The Second Circuit Rejects
Defendants' Interlocutory Appeal

Following remand, Plaintiffs renewed their request for class certification under Rule 23(b)(3), relying on briefing directed to this issue that was previously filed with the Court. Defendants requested additional briefing, which addressed the Rule 23(b)(3) issue before the Court as well as the viability of Plaintiffs' claims for breaches of ERISA fiduciary duty. Plaintiffs filed a reply brief.

The Court recertified the Class in September 2013. *Haddock v. Nationwide Fin. Servs., Inc.*, 293 F.R.D. 272 (D. Conn. 2013) ("*Haddock VII*"). After the Court recertified the Class in *Haddock VII*, Defendants again petitioned the Second Circuit for leave to appeal the ruling pursuant to Fed. R. Civ. P. 23(f). In January 2014, the Second Circuit denied Defendants' petition.

7.      Defendants' Second Summary Judgment Motion

Following the Second Circuit's rejection of Defendants' second appeal, Defendants again moved for summary judgment, this time on the ground that the Seventh Circuit's opinion in *Leimkuehler v. American United Life Ins. Co.*, 713 F.3d 905 (7th Cir. 2013) changed the law governing the Court. After full briefing and a hearing, the Court denied Defendants' motion as to its group variable annuity products from the bench on July 11, 2014. The Court, however, permitted Defendants to file a partial motion for summary judgment with regard to the individual annuity contracts, based on the argument that Plaintiffs' claims related to the individual annuity products are precluded by ERISA's express exclusions for SEC-registered investment companies. Defendants filed that motion on August 15, 2014, and it is fully briefed. On October 8, 2014, Defendants filed a motion to amend the Court's July 11, 2014 Order to certify for the Order for interlocutory review under 28 U.S.C. § 1292(b). The Court has not yet ruled on either

of Defendants' pending motions, and the parties proceeded to prepare for trial, scheduled to begin in February 2015.

**B.     The Settlement**

Plaintiffs and Defendants tried twice—with the help of two of the top independent mediators in the country—to resolve the Litigation through mediation. On July 5, 2012, the Parties participated in a mediation before Judge Layn Phillips. This mediation did not succeed in resolving the Litigation.

On October 14 and 15, 2014 (and subsequently by phone), the Parties participated in a second mediation session before David Geronemus, Esq. of JAMS.  After extensive, arm's-length negotiations, during which the merits of each Party's positions were thoroughly discussed, evaluated and negotiated, a preliminary settlement was reached between the Plaintiffs and Defendants.

All of the Parties' settlement discussions were founded on a full understanding of the strengths and weaknesses of the case, based on the Parties' extensive familiarity with all material facts and issues in the case developed over the course of its thirteen-year pendency.

1.     Non-Cash Future Benefits to The Class

The basic terms of the business changes provisions of the Settlement are:

- Defendants will supplement the disclosures for its new group variable annuity customer proposals, its new group variable annuity contracts, and its plan sponsor website that relate to Mutual Fund-related fees and expenses in connection with group variable annuity products.  Defendants will also add language in new customer proposals or plan sponsor website(s) informing trustees of Plans holding group variable annuity contracts of the opportunity to be transferred to a product where Mutual Fund Payments are credited to the Plan in the form of reduced asset fees in an amount equivalent to the disclosed reimbursement rate received for each Mutual Fund investment option.

- Defendants will also supplement the disclosures for its new individual variable annuity customer proposals and its new product prospectuses that relate to Mutual Fund-related fees and expenses in connection with individual variable annuity

products with specific language in these disclosures that Nationwide shall provide, upon Plan Trustees' written request, its best estimate of plan-specific, aggregate data regarding the Mutual Fund Payments received in connection with the Plan's investments for the previous calendar year.

- Defendants will also supplement the disclosures for its trust customer proposals, new trust, custodial, services or program agreements, and plan sponsor website that relate to Mutual Fund-related fees and expenses in connection with trust products. Defendants will also add language to the new customer proposals; trust, custodial, service or program agreements; or plan sponsor website(s) informing trustees of Plans holding group variable annuity contracts of the opportunity to be transferred to a product where Mutual Fund Payments are credited to the Plan in the form of reduced asset fees in an amount equivalent to the disclosed reimbursement rate received for each Mutual Fund investment option.

- Defendants will enhance the procedures for certain future changes to the Product Menus in connection with Annuity Contracts and the Program Menus for the Trust Platforms as follows:

  o For group variable annuity products and Trust Platforms, Defendants will specifically identify to Plan Trustees, via mail, electronic delivery, or Defendants' plan sponsor website, any addition of a Mutual Fund investment option to a Product Menu or Program Menu at the time of the addition. Defendants will update the new customer proposals; trust, custodial, service or program agreements; or plan sponsor website(s), as applicable, to inform Plan trustees that such Product and Program Menu additions are identified on the plan sponsor websites.

  o For group variable annuity products and Trust Platforms, Defendants will provide to Plan trustees written notice of any removal or substitution of a Mutual Fund investment option from the Product and Program Menus that is initiated solely by Defendants, and will not remove or substitute that fund from the Product or Program Menu for a particular Plan until it has received affirmative consent from that Plan's trustee(s). Such notice shall be provided via mail, electronic delivery, or published on the plan sponsor websites at least thirty (30) days prior to the removal or substitution of a Mutual Fund investment option, and shall state the effective date of such removal or substitution. Defendants will update their new customer proposals; trust, custodial, service or program agreements; or plan sponsor website(s), as applicable, to inform Plan trustees that such removals or substitutions from the Product and Program Menus are identified on the plan sponsor websites.

  o For group variable annuity products and Trust Platforms, Defendants generally will not substitute one fund for another or otherwise unilaterally remove or substitute a fund from a Plan Menu. Defendants will confirm this change in their business practices by modifying their contracts and

Trust Platforms to eliminate any authority to unilaterally remove or substitute a fund from a Menu (the group variable annuity modifications will be subject to State insurance department approval).

o  For group variable annuity products, in those circumstances where a substitution or removal is necessitated by the actions of Mutual Funds (such as decisions by Mutual Funds or corresponding separate accounts to liquidate a fund, merge funds, change investment advisers or sub-advisers, or make other changes that prevent Nationwide Life from offering an investment option on the Plan Menu, or otherwise require Nationwide Life to change the Plan Menu), where administratively feasible, Nationwide Life will provide sixty (60) days written notice to the trustee of each Plan affected by the change via notice sent by first class mail, fax, or email. The notice will:  (1) explain the proposed modification to the Plan Menu; (2) fully disclose any resulting changes in the Mutual Fund Payment rate received by Nationwide; (3) identify the effective date of the change; (4) explain the Plan trustee's right to terminate the Annuity Contract; and (5) reiterate that, pursuant to the contract provisions agreed to by the Plan trustee, failure to object or otherwise respond shall be deemed to consent to the proposed change.  Nationwide Life will confirm this change in their business practice by modifying their existing and future Annuity Contracts to reflect this notice process (the Annuity Contract modifications will be subject to State insurance department approval).

o  For Trust Platforms, NFS has enhanced its notification procedures in those circumstances where a substitution or removal is necessitated by the actions of Mutual Funds (such as decisions by Mutual Funds or corresponding separate accounts to liquidate a fund, merge funds, change investment advisers or sub-advisers, make other changes that prevent NFS from offering an investment option on the Plan Menu, or otherwise require NFS to change the Plan Menu).   These notification enhancements are substantially the same as the proposed enhancements to the group variable annuity products' notification procedures.

o  For Individual Variable Annuities, Nationwide Life agrees to follow applicable U.S. Securities and Exchange Commission regulations, including notice requirements, with regard to the addition, substitution or removal of any investment option.

o  As part of the Settlement, current and future group variable annuity contract holders and those holding trust, custodial, services or program agreements, shall be offered the opportunity to be transferred to a product or Trust Platform where Mutual Fund Payments are credited to the Plan in the form of reduced asset fees in an amount equivalent to the disclosed reimbursement rate received for each Mutual Fund investment option. Defendants agree that they will continue to make available at least one Trust Platform offering for which Mutual Fund Payments are passed-

through in their entirety and/or the Mutual Fund Payment amounts are disclosed, subject to the restrictions on Defendants' ability to substitute one fund for another as set forth in the Stipulation.

- Defendants shall begin to implement these changes within six (6) months of the Settlement Effective Date, and will make diligent and good faith efforts to ensure that the implementation of these changes is concluded within twelve (12) months of the Settlement Effective Date, unless there is a change in applicable law or regulatory policy that renders any change or practice unlawful or impracticable or imposes different disclosure or other substantive requirements.

2.   Cash Benefits to The Class

Defendants agree to pay a Settlement Amount of $140,000,000.  $110,000,000 of the Settlement Amount is a non-reverting payment for the benefit of members of the Annuity Contracts Sub-class, and the remaining $30,000,000 is a non-reverting payment for the benefit of members of the Trust Platform Sub-Class.  The Settlement Amount will be used first to pay Administrative Expenses, Case Contribution Fees, Independent Fiduciary Fees, Taxes and Tax-Related Costs, Attorneys' Fees, and Attorneys' Expenses, which will be deducted *pro rata* from each of the Sub-Classes, or as otherwise applicable. The remaining amount, called the Net Settlement Fund, will be used to make Settlement Payments necessary to satisfy claims actually made by the Class Members under the Plan of Allocation.

Defendants will not object to Plaintiffs' Counsel's application for reasonable Attorneys' Fees, and for reimbursement of costs and other expenses (the "Fee and Expense Application"). Plaintiffs' Counsel will not request Attorneys' Fees of more than thirty-five percent (35%) of the Settlement Amount, or Attorneys' Expenses in excess of $2,000,000. Defendants will not object to payment of a Case Contribution Fee of $25,000 for each of the five Named Plaintiffs, to be deducted from the Settlement Amount.

3.      Release of Defendants

In exchange, Plaintiffs and the Class will be bound to have released Defendants from any and all Claims or Causes of Action (including Unknown Claims) that are based upon or related to, in whole or in part, the allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation, including, but not limited to, the solicitation, negotiation, arrangement, receipt, or retention of Mutual Fund Payments, or other Released Conduct.

C.      **The Timeline**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, a hearing on the final approval of the settlement should take place after Class Members have received notice and have had the opportunity to evaluate the settlement. The Parties propose the following schedule:

1.      Notice to be mailed no later than fifteen (15) days following the date on which the preliminary approval order is entered by the Court ("Notice Date").  The parties will also mail Class Action Fairness Act ("CAFA") notices no later than ten (10) days after this Motion is filed—that is, by December 22, 2014—even though the Parties do not believe that CAFA applies in this case.

2.      Plaintiffs' motion for final approval of the settlement to be filed no later than twenty-one (21) days prior to the date the Court sets for a hearing on final approval (the "Fairness Hearing");

3.      Any objections to or exclusions from the settlement must be filed with the Court no later than sixty (60) days following the Notice Date;

4.      Confirmatory discovery will be completed no later than sixty (60) days following the Notice Date;

5.      Class Counsel may respond to any objections no later than seventy (70) days after the Notice Date; and

6.      A Fairness Hearing on final approval of the settlement to be scheduled, subject to the Court's convenience, no earlier than eighty (80) days following the Notice Date.

III.    **The Court Should Grant Preliminary Approval**

A.    **Standard for Granting Preliminary Approval**

The Second Circuit has endorsed as an overriding public interest the settling of litigation, particularly class actions. *See Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001); *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'"). Importantly, courts generally favor settlements of class actions: "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for Court approval." H. Newberg & A. Conte, Newberg on Class Actions (4th ed. 2002), §11.41.

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class basis. Once a proposed settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval . . . [i]n other words, the court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006). Courts have wide discretion to determine what information to consider at the preliminary stage. *Manual for Complex Litigation*, Fourth § 21.162 (2004).

At the preliminary approval stage, the Court does not make a final determination of the merits of the proposed settlement. *In re Prudential Sec. Inc. Lt'd P'ship Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995). Full evaluation is made at the final approval stage, after notice of the settlement has been given to the members of the class and class members have had an opportunity to voice their views of the settlement. *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("NASDAQ").

In considering whether to grant preliminary approval to a class action settlement, courts make a preliminary evaluation of the fairness of the settlement. *Id.* Determining whether a settlement is fair, reasonable, and adequate requires consideration of the negotiating process leading up to the settlement, i.e., procedural fairness, as well as the settlement's substantive terms, i.e., substantive fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). With respect to procedural fairness, the reviewing court must "ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (citation and quotation marks omitted). Under such circumstances, the Second Circuit has recognized a presumption of correctness attached to a class settlement reached in arm's-length negotiations between experienced, capable counsel. *See id.* at 803; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re Sterling Foster & Co. Sec. Litig.*, 238 F. Supp. 2d 480, 484 (E.D.N.Y. 2002); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002); *In re Joint E. & S. Dists. Asbestos Litig.*, 878 F. Supp. 473, 567 (E.D.N.Y. 1995).

With respect to substantive fairness, the reviewing court may consider nine factors, namely: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible

recovery in light of all the attendant risks of litigation.[3] *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted). *See also McReynolds*, 588 F.3d at 804; *Wal-Mart Stores*, 396 F.3d at 117.

Ultimately, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *NASDAQ,* 176 F.R.D. at 102. *See also In re Medical X-Ray Film Antitrust Litig.*, No. 93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997) ("preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlement[]").

Here, the settlement falls well within the range warranting preliminary approval and there are no grounds to doubt the fairness of the proposed settlement.

**B.      The Proposed Settlement Results from Arm's-Length Negotiations Between Experienced, Capable Counsel**

Vigorous arm's-length negotiations between seasoned counsel protect against collusion and advance the fairness considerations of Rule 23(e), and settlements resulting from such negotiations are entitled to deference from the court. *See, e.g., In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 419, 430 (S.D.N.Y. 2001) (noting that "the opinion of experienced and informed counsel is entitled to considerable weight" in deciding whether to approve a settlement). Courts recognize that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight. *See Joint E. & S. Dists. Asbestos Litig.*, 878 F. Supp. at 567 (stating that "[a] substantial factor in determining the fairness of a settlement

---

[3] Because the Court is only being asked to preliminarily approve the settlement at this stage, some of these factors, such as reaction of the class to the settlement, do not yet fully come into play. *See Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006).

is the opinion of counsel involved in the settlement") (citation omitted); *In re Painewebber Ltd. P'ship Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("great weight" is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation); *In re Salomon Inc. Sec. Litig.*, 91 Civ. 5442, 1994 U.S. Dist. LEXIS 8038, at *42 (S.D.N.Y. June 15, 1994) (the judgment of experienced counsel "weighs strongly in favor [of] the proposed settlement"); *Chatelain v. Prudential-Bache Sec. Litig.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992); *Ross v. A.H. Robins Co.*, 700 F. Supp. 682, 683 (S.D.N.Y. 1988).

Here, the proposed settlement was reached after vigorous, arm's-length and hard-fought negotiations between highly experienced counsel. Plaintiffs were represented by counsel with extensive experience litigating complex class actions and thorough familiarity with the factual and legal issues of the case, and Defendants were represented by similarly experienced and knowledgeable counsel with extensive experience litigating class actions.

In preparation for such negotiations, Plaintiffs' Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation. Plaintiffs' Counsel conducted a comprehensive examination of the facts, reviewed voluminous documents produced by Defendants and third parties, completed more than twenty depositions, consulted with experts, briefed and argued in opposition to several dispositive motions, and defended two appeals—all of which assisted in identifying the material issues in this case and the strengths and weaknesses of the claims asserted.

The arm's-length nature of the negotiations and the participation of experienced counsel throughout the process strongly supports the conclusion that the proposed settlement is fair, reasonable and adequate. Nothing in the course of the negotiations or in the substance of the proposed settlement presents any reason to doubt its fairness.

### C.     The Proposed Settlement Is in The Range of Possible Approval as Fair, Reasonable and Adequate

"[I]n any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972). This settlement falls well "within the range of possible approval," warranting the issuance of notice to the Settlement Class. *See Prudential*, 163 F.R.D. at 210.

A recovery of $140 million from Defendants is an excellent result for the Class. Plaintiffs' analysis of the potential damages in this case, based on the data produced by Defendants, indicates that the settlement amount for the Annuity Contracts Sub-Class—$110 million of approximately $359 million, or more than 30%—is well in excess, as calculated as a percentage of total damages, of the percentage thresholds typically approved by courts in the Second Circuit.[4] *See, e.g, Menkes v. Stolt-Nielsen S.A.*, No. 03-409, 2010 U.S. Dist. LEXIS 94184, at *63-66 (D. Conn. Sept. 10, 2010) (preliminarily approving settlement that represents approximately eight percent of the maximum recoverable damages for all Class Members); *In re Initial Pub. Offering Sec. Litig,* 671 F. Supp. 2d 467, 483-85 (S.D.N.Y. 2009) (approving settlement that provided only two percent of defendants' maximum possible liability, observing that "the Second Circuit has held that a settlement amount of even a fraction of the potential recovery does not render a proposed settlement inadequate"); *Hall v. Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d 399, 402 n.30 (S.D.N.Y. 2009) (approving a settlement that

---

[4] Indeed, even if the settlement were a smaller percentage of total damages, "courts have determined that a settlement can be approved even if the benefits amount to a small percentage of the recovery sought . . . And, 'there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'" *Lazy Oil, Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (quoting *Grinnell*, 495 F.2d at 455 n.2).

amounted to 5-12 percent of provable damages); *In re Prudential Sec. Ltd. P'ships Litig.*, MDL No. 1005, 1995 U.S. Dist. LEXIS 22103 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6 percent and 5 percent of claimed damages); *In re Crazy Eddie Sec. Litig.,* 824 F. Supp. 320, 324 (E.D.N.Y. 1993) (approving settlement that awarded class members between six cents and ten cents for every $1.00 lost). The settlement amount for the Trust Platform Sub-Class—$30 million—is substantial and reasonable in light of the shorter class period and increased disclosure during this period.  As a condition of the Settlement, Plaintiffs will conduct confirmatory discovery of the damage amounts for both the Annuity Contracts Sub-Class and the Trust Platform Sub-Class to further ascertain the reasonableness of the settlement amounts.

Furthermore, the business changes provisions of the Settlement Agreement constitute additional fair and adequate consideration that provides substantial value to the Class. The Settlement requires Defendants to alter their policies by enhancing disclosures, curtailing mutual fund substitution, and offering alternative products where mutual fund payments are credited to Plans in the form of reduced asset fees in an amount equivalent to the disclosed reimbursement rate received for each Mutual Fund investment option.

A settlement providing at least a $140 million recovery and substantial, valuable business changes is fair, reasonable and adequate when balanced against the expense and risk that Plaintiffs and the Class would face in litigating this case through trial and appeal against Defendants.

### D. The Proposed Settlement Achieves an Excellent Result for the Class, Particularly Given The Expense, Duration, And Uncertainty of Continued Litigation

Continuing the Litigation would entail a lengthy and expensive legal battle, with an uncertain outcome. The Parties and the Court estimated that trial only of Defendants' liability would require several weeks of testimony, with a separate phase to follow in which the quantum

of damages would be addressed. In addition, the losing Party would be all but certain to appeal from an adverse judgment, which would potentially require years to resolve.

Notwithstanding the confidence of Class Counsel in the merits of Plaintiffs' Claims, Class Counsel are cognizant that no case is a sure winner at trial, and that Defendants had arguments and potential defenses available to them, including potential arguments and defenses to substantially limit any damages recovered by the Class even if Plaintiffs were successful in securing a judgment as to liability (which, of course, also constituted a significant risk despite Plaintiffs' belief that they were correct on the merits).

Against this background, the settlement represents an excellent result for the members of the Class. Defendants' $140 million payment provides for significant compensation to the Class that will be available much earlier than if litigation against Defendants continued through trial and appeal. In addition to a significant cash payment, the Settlement also provides important benefits to the Class by obtaining, within just six (6) months of the execution of the Settlement, modification of Defendants' policies that enhance disclosures, curtail mutual fund substitution, and require Defendants to offer alternative products where mutual fund payments are more expressly credited to the Plans.

Therefore, in light of the risks and duration of the litigation and the monetary and nonmonetary benefits achieved by the Settlement, the Settlement is well within the range of being fair, reasonable and adequate and should be preliminarily approved.

## IV.    Certification of The Proposed Settlement Class Is Warranted

As part of approving the settlement, the Court must also approve and certify the proposed settlement Class. Crucially, this Court has already made detailed findings on two separate occasions that a class essentially identical to the Annuity Contracts Sub-Class meets all the requirements of Rule 23, that Plaintiffs Wiberg, Gouse, Anderson and Chandler are adequate

representatives, and that Plaintiffs' Counsel should serve as class counsel. *See, e.g.*, *Haddock IV*, 262 F.R.D. at 122-25; *see also Haddock VII*, 293 F.R.D. at 284.

For the same reasons, the Court should certify the proposed settlement Class, consisting of the two sub-classes defined in Plaintiffs' Seventh Amended Complaint. The Annuity Contracts Sub-Class differs from the class certified by the Court in *Haddock VII* only in its extension of the class period through September 30, 2014, and the Trust Platform Sub-Class is essentially based on the same facts giving rise to the Plaintiffs' ERISA claim based on Defendants' variable annuities. Moreover, Plaintiff McKeon[5] will adequately represent the Trust Platform Sub-Class, as he has no interests antagonistic to its other members, and he is represented by the same counsel as the other Plaintiffs that the Court has previously found adequate. He therefore satisfies the adequacy requirement of Rule 23(a)(4). *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 34 (2d Cir. 2009).

In sum, the Court should again find that all requirements of Rule 23 are met, and it should certify the Class for settlement purposes, appoint Plaintiffs as its representatives and Plaintiffs' counsel as Class Counsel.

## V.     The Form of Notice Should Be Approved and Notice of The Proposed Settlement Should Be Given to Class Members

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23 (c)(2)(B); *see* 4 *Newberg* § 8.2 at 162-65. The notice "must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." *McReynolds*, 588 F.3d at 804.

---

[5] Plaintiff McKeon, like Plaintiff Anderson, is a duly licensed Connecticut attorney and a principal of his law firm, and as such has the ability to competently represent the Trust Platform Subclass.

Plaintiffs' Counsel proposes that notice of the Settlement with Defendants be provided to the Class Members by direct mail, and by publication. The form of the Notice to be mailed is attached to the proposed Order as Exhibit C, and the form of the Notice to be published is attached as Exhibit B.

The Notice provides details regarding the terms of the settlement and the rights of Class Members to share in the recovery. In addition, the Notice will provide the date and time of the fairness hearing to consider final approval of the proposed settlement and approval of an application for Attorneys' Fees and Expenses, as well as information about the right of Class Members to attend and object at the fairness hearing. The Notice also provides contact information for Plaintiffs' Counsel and a website and toll-free number where Class Members can obtain additional information.

The form and manner of notice proposed here fulfill all of the requirements of Rule 23 and due process, and Plaintiffs' Counsel request that the Court direct that such notice be given to Class Members.

**V.      Conclusion**

Based on the foregoing, Plaintiffs, with the consent of Defendants, respectfully request that the Court grant their Unopposed Motion for Preliminary Approval of Class Action Settlement and enter the proposed Order filed concurrently herewith.

DATED this 11th day of December, 2014.   Respectfully submitted,

_/s/ Marc R. Stanley_
Marc R. Stanley
Federal Bar No. ct18179
marcstanley@mac.com
Martin Woodward
Federal Bar No. ct25263
mwoodward@stanleyiola.com
STANLEY LAW GROUP
3100 Monticello Avenue, Suite 770
Dallas, TX  75205
214.443.4300
214.443.0358 (fax)

William Bloss
Federal Bar No. ct01008
bbloss@koskoff.com
Richard A. Bieder
Federal Bar No. ct04208
rbieder@koskoff.com
Antonio Ponvert, III
Federal Bar No. ct17516
aponvert@koskoff.com
KOSKOFF KOSKOFF & BIEDER, P.C.
350 Fairfield Avenue
Bridgeport, Connecticut  06604
203.336.4421
203.368.3244 (fax)

Roger L. Mandel
Federal Bar No. ct18180
rlm@lhlaw.net
LACKEY HERSHMAN, LLP
3102 Oaklawn Avenue, Suite 777
Dallas, Texas  75219
214.560.2201
214.624.7547 (fax)

_Counsel for Plaintiffs and the Class_

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 11, 2014, the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/s/ Marc R. Stanley

MARC R. STANLEY

# Exhibit A

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, *et al.*

      PLAINTIFFS,

           v.

NATIONWIDE LIFE INSURANCE CO. and NATIONWIDE FINANCIAL SERVICES, INC.,

      DEFENDANTS.

CIVIL ACTION NO.:

3:01CV1552 (SRU)

December 11, 2014

## <u>SETTLEMENT STIPULATION AND RELEASE</u>

## **TABLE OF CONTENTS**

**Page**

A.    DEFINITIONS ..................................................................................................................1

B.    THE LITIGATION ..........................................................................................................8

C.    PLAINTIFFS' CLAIMS AND ASSESSMENT OF THE LITIGATION ........................10

D.    DEFENDANTS' STATEMENT AND DENIAL OF WRONGDOING AND
      LIABILITY ....................................................................................................................10

E.    SETTLEMENT PAYMENTS ........................................................................................11

F.    CHANGES AND ENHANCEMENTS TO BUSINESS PRACTICES ............................17

G.    RELEASES ....................................................................................................................25

H.    JUDICIAL FINDINGS ..................................................................................................28

I.    PRELIMINARY APPROVAL ORDER, SETTLEMENT HEARING, AND FINAL
      JUDGMENT ..................................................................................................................29

J.    PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF
      EXPENSES ....................................................................................................................33

K.    EXCLUSION AND OBJECTIONS ...............................................................................34

L.    CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL,
      CANCELLATION OR TERMINATION ........................................................................35

M.    NO ADMISSION OF WRONGDOING ........................................................................37

N.    MISCELLANEOUS PROVISIONS ...............................................................................38

This Settlement Stipulation and Release ("Settlement Stipulation" or "Stipulation"), dated December 11, 2014, is made and entered into by and among: (i) Plaintiffs Peter Wiberg, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing Plan; Alan Gouse, as trustee of the Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Seal Rehabilitation Center, Inc., Trust; Christopher Anderson, as trustee of the Anderson Law Firm, P.C. 401(k) Profit Sharing Plan and Trust, f/k/a the Anderson and Ferdon P.C. 401(k) Profit Sharing Plan; H. Grady Chandler, as trustee of the Law Offices of H. Grady Chandler, P.C., 401(k) Profit Sharing Plan and Trust; and Christopher M. McKeon, as trustee of the Bershtein, Volpe & McKeon, Profit Sharing Plan f/k/a the Bershtein, Lippman, Bachman & McKeon Profit Sharing Plan, individually and on behalf of the Class (together, the "Plaintiffs"), by and through their counsel of record; and (ii) the Nationwide Life Insurance Company and Nationwide Financial Services, Inc. (together, the "Defendants"), by and through their counsel of record. This Stipulation is intended fully, finally, and forever to resolve, discharge, settle, and dismiss with prejudice the above-captioned class action and related issues, upon and subject to the terms and conditions hereof.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the parties as follows:

## A. DEFINITIONS

As used in this Stipulation the following terms have the meanings specified below:

1. "Administrative Expenses" means any and all fees, costs, and expenses associated with providing notice of the Settlement to the Class or otherwise administering or carrying out the terms of the Settlement, excluding Attorneys' Fees.

2. "Amended Complaint" means the Seventh Amended Class Action complaint, filed in the Litigation on December 11, 2014.

- 1 -

3.     "Annuity Contracts" means the group and individual variable annuity contracts issued by Nationwide Life to Class Members.

4.     "Annuity Contracts Sub-Class" means a sub-class comprised of the trustees of all retirement plans covered by ERISA which had group variable annuity contracts with Nationwide Life or whose participants or plans had individual variable annuity contracts with Nationwide Life at any time from January 1, 1996, or the first date Nationwide Life began receiving payments from mutual funds based on a percentage of the assets invested in the funds by Nationwide Life, whichever came first, to the date of September 30, 2014.

5.     "Attorneys' Fees" means any and all attorneys' fees awarded by the Court to Plaintiffs' Counsel pursuant to ERISA Section 502(g)(1), 29 U.S.C. § 1132(g)(1) and the common law on "common fund" class action settlements.

6.     "Attorneys' Expenses" means any and all expenses and costs (including expert costs) that were incurred by Plaintiffs' Counsel in representing Plaintiffs and the Class in connection with the Litigation and the resulting Settlement, and that are awarded by the Court to Plaintiffs' Counsel.  The Parties agree that Plaintiffs' Counsel will be reimbursed for their Attorneys' Expenses up to, but not in excess of, $2,000,000.

7.     "Case Contribution Fee" means the payment to each Named Plaintiff for performance of the duties required of Named Plaintiffs in supervising and participating in the Litigation.

8.     "Claims" or "Causes of Action" means any and all claims or causes of action of every kind and description (including any claims or causes of action in law or equity, direct claims, derivative claims, claims for successor liability, claims for contribution, claims for indemnity, complaints, suits, petitions, and regulatory investigations or examinations) and any allegations of wrongdoing (including any assertions of liability, debts, fiduciary or other legal duties, prohibited transactions, torts, unfair or deceptive practices, statutory violations, breaches of contracts or agreements or promises, wantonness, failure to perform obligations, promissory estoppel, detrimental reliance, unjust enrichment, or other misconduct) and any demands for legal, equitable, administrative, or other relief (including any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, compensatory damages, consequential damages, penalties, exemplary damages, punitive damages, attorneys' fees, costs, interest, expenses, or other relief) that have been, could be, may have been, or could have been asserted in any action or proceeding before any court, arbitrator(s), tribunal, agency, or administrative body of any country or jurisdiction (including any state or federal regulatory body), regardless of whether the claims or causes of action are based on federal, state, local, foreign, or other law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether they were alleged or could have been alleged, or are known or unknown, foreseen or unforeseen, suspected or unsuspected, past or future, or fixed or contingent, to

the extent those Claims or Causes of Action (including Unknown Claims) are based upon or related to, directly or indirectly, in whole or in part:  (a) the allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation, including, but not limited to, the solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund Payments; or (b) the Released Conduct.

9.  "Claim Form" means the form, identical in all material respects to the document attached hereto as Exhibit D, to be provided to and returned by the Class Members pursuant to Section E.

10.  "Claim Period" means the one hundred and twenty (120) days after the Notice Date during which Class Members have the right to submit a valid Claim Form. After expiration of this Period, the Settlement Administrator will make Settlement Payments pursuant to the terms of the Plan of Allocation to those Class Members who have submitted valid and timely Claim Forms.

11.  "Class" means all members of the Annuity Contracts Sub-Class and all members of the Trust Platform Sub-Class.

12.  "Class Mailing List" means the names of all Class Members along with their mailing addresses, to the extent known, provided by Defendants to the Settlement Administrator.  The Class List contains Class Member information for the Annuity Contracts Sub-Class and the Trust Platform Sub-Class.

13.  "Class Member" means any individual or entity that falls within the definition of the Class.

14.  "Class Notice" means the notice of this Settlement that will be mailed to the Class Members identical in all material respects to  the form, and with the terms, attached hereto as Exhibit C, and will be made available on the Settlement Website.

15.  "Court" means United States District Court for the District of Connecticut.

16.  "Defendants" means, individually and/or collectively, the parties named as defendants in this litigation: Nationwide Life Insurance Company and Nationwide Financial Services, Inc.

17.  "Defendants' Counsel" means Wilmer Cutler Pickering Hale and Dorr, LLP, and Wiggin & Dana, LLP.

18.  "DOL" means the United States Department of Labor.

19.  "Effective Date" or "Settlement Effective Date" means the date upon which the Final Order and Judgment, identical in all material respects to the form attached hereto as Exhibit G, is entered by the Court in this Litigation dismissing the case with prejudice and implementing this Settlement.

20.     "Escrow Account" means the account that will be established at a mutually-
        agreeable bank that will hold Settlement Amount, as provided under Section E,
        below.

21.     "Exclusion Request" means the written notice that may be provided by Class
        Members to exclude themselves (or "opt out") from the Settlement, consistent
        with Section K of this Stipulation.  Exclusion Requests must be personally signed
        and delivered to the Settlement Administrator by the Class Member, and must be
        received by the Settlement Administrator no later than sixty (60) days after the
        Notice Date.

22.     "Fairness Hearing" means the hearing to be held before the Court pursuant to
        Federal Rule of Civil Procedure 23(e) to determine (a) whether the Annuity
        Contracts Sub-Class and the Trust Platform Sub-Class should be certified for
        settlement purposes; (b) whether the terms of the proposed Settlement are fair,
        reasonable, adequate for purposes of Rule 23 of the Federal Rules of Civil
        Procedure; (c) whether the Fee and Expense Application, and the Case
        Contribution Fee, should be granted.  The Fairness Hearing will be held on a date
        that is at least eighty (80) days after the Notice Date.

23.     "Fee and Expense Application" means the petition, to be filed by Plaintiffs'
        Counsel, seeking approval of an award of attorneys' fees and attorneys' expenses.

24.     "Final" when referring to the Settlement, means that all the following actions and
        events are complete:  (a) the necessary final approval of the proposed Settlement
        in this Litigation is obtained from the Court; (b) the Final Order and Judgment,
        identical in all material respects to the form attached hereto as Exhibit G, is
        entered by the Court in this Litigation dismissing the case with prejudice and
        implementing this Settlement; and (c) all appeals, if any, from the Settlement and
        the Final Order and Judgment have been exhausted and denied or dismissed and
        all requests for rehearing or further review or other consideration (including but
        not limited to any petition for certiorari) have been exhausted and denied or
        dismissed (or the times to take such appeals or requests have expired without any
        appeals or requests).

25.     "Final Order and Judgment" or "Judgment" means the Final Order and Judgment
        to be entered by the Court after the Fairness Hearing, identical in all material
        respects to that attached hereto as Exhibit G, granting its approval of the
        Settlement, dismissing the Litigation with prejudice, and making the findings and
        declarations proposed by the Parties provided for in Section H.

26.     "Independent Fiduciary" means the qualified and experienced independent
        fiduciary that the Plaintiffs will engage to independently review the Settlement (as
        defined in Paragraph 51 of this Section) on behalf of the Class.  Unless the Parties
        agree otherwise in writing, the Independent Fiduciary shall be Nicholas L.
        Saakvitne.

- 4 -

27.   "Independent Fiduciary Fees" shall mean the reasonable fees and expenses of the Independent Fiduciary.  The Independent Fiduciary Fees shall be payable from the Settlement Fund after such funds are deposited with the Escrow Agent and upon receipt of an invoice from the Independent Fiduciary.

28.   "Lead Settlement Counsel" means Marc R. Stanley of the Stanley Law Group and William Bloss of Koskoff, Koskoff & Bieder, PC, who are responsible for allocating the Attorneys' Fees and Attorneys' Expenses among Plaintiffs' Counsel.

29.   "Litigation" means the above-captioned action currently pending in the United States District Court entitled *Haddock, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, et al. v. Nationwide Life Insurance Co., et al*, No. 01-CV-1552 (SRU), (D. Conn.).

30.   "Mutual Fund(s)" means investment companies registered with the U.S. Securities and Exchange Commission under the Investment Company Act of 1940, as amended, or other investment vehicles that are offered as investment options through Nationwide's Annuity Contracts or Trust Platforms.

31.   "Mutual Fund Payments" means any past, present, or future payment made to Nationwide by a Mutual Fund, or any of its affiliates, with respect to any of Nationwide's contracts, products, or platforms, including service fees under distribution and/or servicing plans adopted by Mutual Funds pursuant to Rule 12b-1 of the Investment Company Act of 1940, administrative fees, expense reimbursement, asset-based sales compensation, and/or other compensation.

32.   "Named Plaintiff(s)" or "Class Representatives" means Peter Wiberg, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing Plan; Alan Gouse, as trustee of the Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Rehabilitation Center, Inc., Trust; Christopher Anderson, as trustee of the Anderson Law Firm, P.C. 401(k) Profit Sharing Plan and Trust, f/k/a the Anderson and Ferdon P.C. 401(k) Profit Sharing Plan; H. Grady Chandler, as trustee of the Law Offices of H. Grady Chandler, P.C., 401(k) Profit Sharing Plan and Trust; and Christopher M. McKeon, as trustee of the Bershtein, Volpe & McKeon, Profit Sharing Plan f/k/a the Bershtein, Lippman, Bachman & McKeon Profit Sharing Plan.

33.   "Nationwide" means Nationwide Life and NFS.

34.   "Nationwide Life" means Nationwide Life Insurance Company, its parents, subsidiaries, and affiliates.

35.   "Net Settlement Fund" means the amount remaining in the Escrow Account after deducting payment of Administrative Expenses, Case Contribution Fees, Taxes and Tax-Related Costs, Independent Fiduciary Fees, Attorneys' Expenses, and Attorneys' Fees.

36.     "NFS" means Nationwide Financial Services, Inc., its parents, subsidiaries, and affiliates, including, but not limited to, Nationwide Bank, its predecessors, and its division, Nationwide Trust Company, FSB.

37.     "Notice Date" means the date on which the Settlement Administrator has completed the mailing to each Class Member of the Class Notice that has been approved by the Court.  The Notice date will be within fifteen (15) days after the entry of the Preliminary Approval Order.

38.     "Notice Period" means the period set forth in the Preliminary Approval Order during which any Class Member can object to or opt out of this proposed Settlement.  The Notice Period will last for at least sixty (60) days after the Notice Date.

39.     "Participants" or "Plan Participants" means the participants in each of the retirement plans covered by ERISA whose trustees comprise the Class.

40.     "Party" or "Parties" means Plaintiffs and Defendants (individually and/or collectively).

41.     "Plaintiffs" means the Named Plaintiffs and the Class Members.

42.     "Plan(s)" means the retirement plans covered by ERISA whose trustees comprise the Class.

43.     "Plan of Allocation" means the formula to allocate the Net Settlement Fund among the Class Members that was approved by Plaintiffs' Counsel and the Court.  Defendants shall have no responsibility or liability with respect to this Plan of Allocation.

44.     "Plan Menu" means the menu of investment options chosen by a Plan fiduciary and made available through a Plan to Plan Participants for investment.

45.     "Preliminary Approval Order" means the order from the Court providing for preliminary approval of the Settlement and Notice to the Class, material in all respects to the form, and with the terms, attached hereto as Exhibit F.

46.     "Product Menu" means a menu of investment options made available to a Plan through an Annuity Contract issued by Nationwide.

47.     "Program Menu" means a menu of investment options made available to a Plan through a Trust Platform issued by Nationwide.

48.     "Published Class Notice" means the short form notice, identical in all material respects to that attached hereto as Exhibit B.  The Published Class Notice shall be published by the Plan Administrator in the National Edition of the *New York Times*, in accordance with the instructions of Class Counsel, within seven (7) days after the Class Notice is mailed by First Class Mail.

49. "Released Conduct" means each and every act, omission, representation, or other statement or conduct by Nationwide or any other Released Party that relates in any way, directly or indirectly, to Mutual Fund Payments, revenue sharing or other compensation from third parties, or to any alleged discretion, authority, control, or responsibility respecting assets in the Annuity Contracts or Trust Platforms or the administration of an ERISA-covered plan, including, but not limited to, (a) the solicitation, negotiation, arrangement, or receipt of any Mutual Fund Payments by Nationwide in connection with any of its retirement products or platforms; (b) any fees (including alleged excessive fees), compensation, costs, expenses, or payments; (c) the alleged discretionary authority or discretionary responsibility under the Annuity Contracts or Trust Platforms, or in the administration of ERISA-covered plans; (d) disclosures or the sufficiency of information about Mutual Fund Payments or any asset management, mortality & expense, surrender, administrative, contract, or investment management fees; (e) the assembly, substitution, addition, or removal of investment options from a Product Menu, Program Menu, or Plan Menu; (f) the operation of any variable or separate accounts accompanying the Annuity Contracts or Trust Platforms that purchase and sell Mutual Fund shares for the investment options selected by the Plan or Plan Participants; (g) any alleged rights, obligations, discretion, or conduct by Nationwide to amend, modify, or change any terms of the Annuity Contracts or Trust Platforms; (h) any actions arising out of or related to the negotiation or drafting of the Settlement Stipulation; and (i) the Plan of Allocation and the allocation of any proceeds of the Net Settlement Fund.

50. "Released Party" or "Released Parties" means Nationwide Life and NFS, and each of their respective current or former or future parents, affiliates, subsidiaries, partners, employees, officers, directors, attorneys, legal representatives, insurers, predecessors, divisions, joint ventures, agents, consultants, lobbyists, principals, shareholders, and the representatives, successors, and assigns of any of the foregoing (individually and/or collectively), including, but not limited to, Nationwide Bank and its division, Nationwide Trust Company, FSB.

51. "Settlement" means the settlement of this Litigation according to the terms of this Stipulation.

52. "Settlement Administrator" means Kutzman Carson Consultants ("KCC"), the entity selected to administer the Settlement, which—subject to Court approval—shall be responsible for providing notice of the Settlement to the Class, processing and paying allowed claims by Class Members, and otherwise attending to tasks necessary to effect the Settlement.

53. "Settlement Amount" means the total and maximum amount that Defendants will pay in this Settlement. Defendants have agreed to pay $140,000,000.00 in this Settlement, which includes $110,000,000 for the benefit of the Annuity Contracts Sub-Class, and $30,000,000 for the benefit of the Trust Platform Sub-Class. The $140,000,000.00 maximum amount will first be used to pay all Case Contribution Fees, all Independent Fiduciary Fees, all Attorneys' Fees, all Attorneys'

Expenses, and all Taxes and Tax-Related Costs. The amount remaining (the "Net Settlement Fund") will then be used to pay all Settlement Payments to the Class Members.

54.     "Settlement Payments" means the payments that will be made from the Net Settlement Fund to the Class Members who actually submit valid and timely Claim Forms, and that will be made according to the Plan of Allocation, which includes an interest component.

55.     "Taxes and Tax-Related Costs" means (i) taxes on the income of the Escrow Account ("Taxes") and (ii) expenses and costs incurred in connection with the taxation of the Escrow Account (including, without limitation, expenses of tax attorneys and accountants) ("Tax-Related Costs").

56.     "Trust Platforms" means trust, custodial, services, or program agreements and/or arrangements entered into between NFS and ERISA-covered plans and/or members of the Trust Platform Sub-Class.

57.     "Trust Platform Sub-Class" means the sub-class proposed to be certified for purposes of this Settlement that is comprised of the trustees of all retirement plans covered by ERISA that had trust, custodial, services, or program agreements and/or arrangements with NFS at any time from January 1, 2009 to September 30, 2014.

58.     "Unknown Claims" means all Claims or Causes of Action of every nature and description that arise out of, are based upon, or relate in any way, directly or indirectly, to Mutual Fund Payments, revenue sharing, or other compensation from third parties, or to any alleged discretion, authority, control, or responsibility respecting assets in the Annuity Contracts or the administration of an ERISA-covered plan, that Plaintiffs, or any Class Member, their Plan or Plan Participants, do not know or suspect to exist, in his, her, or its favor at the time of the release of the Released Parties, which, if known by him, her, or it, might have affected his, her, or its settlement with and/or release of the Released Parties, or might have affected his, her or its decision not to object to this Stipulation.

**B.  THE LITIGATION**

1.     This Litigation was filed on August 15, 2001, by former named plaintiff Lou

Haddock, as trustee of Flyte Tool & Die, Inc. Deferred Compensation Plan, and is currently

pending before the United States District Court for the District of Connecticut. The Named

Plaintiffs were subsequently added over the course of the Litigation. The Named Plaintiffs

represent the Class Members who allegedly were injured by Defendants' alleged acts and/or omissions.

2.      The Amended Complaint asserts that Defendants are fiduciaries to the Plans under ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A); that Defendants violated their fiduciary duties under ERISA Sections 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), by, among other things, arranging for and retaining Mutual Fund Payments; and that Defendants engaged in prohibited transactions under ERISA Sections 406(b)(1) and (b)(3), 29 U.S.C. § 1106(b)(1) and (b)(3), by, among other things, arranging for and retaining Mutual Fund Payments.

3.      Plaintiffs and Defendants tried twice—with the help of two of the top independent mediators in the country—to resolve the Litigation through mediation.  Most recently, in person on October 14 and 15, 2014, and in subsequent telephone discussions on November 17, 2014, Plaintiffs and Defendants engaged in an intense mediation process before a skilled, experienced, and independent mediator.  In that process, the Parties had arms-length negotiations that were difficult and contentious, and which resulted in this Settlement.  The Parties have concluded that (i) this Settlement resolves all Claims or Causes of Action of any and all Class Members, including Plan Participants, that are based on or related to the Released Conduct or to the allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation; (ii) the Released Parties have fully resolved through this Settlement any liability they may have had that is based on or related to the Released Conduct or to the allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation; and (iii) any other claims that are based on or related to Nationwide's solicitation, negotiation, arrangement,

receipt, retention, or other conduct with regard to Mutual Fund Payments in connection with its retirement businesses should be finally and forever released, barred, and enjoined.

## C.  PLAINTIFFS' CLAIMS AND ASSESSMENT OF THE LITIGATION

1.      Prior to filing suit, Plaintiffs' Counsel conducted an extensive investigation into the facts and the law upon which they based their claims in the Litigation.  Plaintiffs' Counsel then devoted thirteen (13) years of time and resources to the development and prosecution of the Litigation, including, but not limited to, review of hundreds of thousands of pages of documents and emails produced by Defendants and multiple third parties, extensive other discovery (including depositions taken across the country), extensive research and briefing on a series of potentially dispositive motions, retention of multiple experts, prosecution of two motions for class certification (and defense of two interlocutory appeals related thereto), and participation in multiple mediations over several days.  The case has resulted in no less than six published opinions.

2.      Based upon extensive analysis of the facts and the law applicable to the Plaintiffs' claims in the Litigation, and taking into account the burdens and expense of such Litigation, including the risks and uncertainties associated with protracted trials and appeals, as well as the fair, cost-effective, and assured method of resolving the claims of the Class Members, the Plaintiffs and Plaintiffs' Counsel have concluded that this Settlement provides substantial benefits to the Plaintiffs, the Class Members, and is fair, reasonable, adequate, and in the best interests of the Plaintiffs and the Class Members.

## D.  DEFENDANTS' STATEMENT AND DENIAL OF WRONGDOING AND LIABILITY

1.      Defendants have expressly denied and continue to deny each and all of the allegations in the Litigation, and believe the Claims and Causes of Action asserted against them

in the Amended Complaint are without merit.  Defendants have further asserted and continue to

assert that at all relevant times, they acted in good faith and discharged any and all obligations

with respect to the Plans in a manner they reasonably believed to be consistent with the terms of

the relevant agreements, all applicable law, and any duties they may have owed to the Class

Members and/or their Plans and Plan Participants.  Finally, Defendants have denied that the

assets contributed to the individual annuity contracts were ERISA-covered plan assets, and have

asserted that those assets were not subject to ERISA.

2.       Nonetheless, Defendants have concluded that further conduct of the Litigation

would be protracted and expensive and that it is desirable that the Litigation be fully and finally

resolved in the manner and upon the terms and conditions set forth in this Stipulation.  Doing so

will limit further expense, inconvenience, and distractions; dispose of burdensome and protracted

litigation; and permit the operation of Nationwide's businesses without further expensive

litigation and the distraction and diversion of Nationwide's officers, directors, and other

personnel with respect to matters at issue in the Litigation.  Defendants also have taken into

account the uncertainty and risks inherent in any litigation, especially in complex cases like the

Litigation.  Defendants have, therefore, determined that it is desirable and beneficial to them that

the Litigation be resolved in the manner and upon the terms and conditions set forth in this

Stipulation.

### E.  SETTLEMENT PAYMENTS

1.       ***The Settlement Amount.***  In consideration for the resolution of the Litigation and

the full and final releases of the Plaintiffs' Claims and Causes of Action, Defendants agree to pay

a Settlement Amount of $140,000,000 in full and final Settlement of Plaintiffs' Claims.  That

Settlement Amount includes $110,000,000 to be paid for the benefit of the Annuity Contracts

Sub-Class, and $30,000,000 to be paid for the benefit of the Trust Platform Sub-Class.  This

$140,000,000 Settlement Amount is the maximum amount that Defendants have agreed to pay under this Settlement, and that Amount will be used to pay, and will fully satisfy, all Settlement Payments to the Class Members, Administrative Expenses, Case Contribution Fees, Independent Fiduciary Fees, Attorneys' Fees, Attorneys' Expenses, and Taxes and Tax-Related Costs.

2. Consistent with the terms of Section J, within fourteen (14) days after the Effective Date, Defendants will cause 50% of the Attorneys' Fees and Attorneys' Expenses awarded by the Court in the Final Order and Judgment to be deposited into the Escrow Account. The Settlement Administrator will then pay that amount out of the Escrow Account to Plaintiffs' Counsel, subject to the terms set forth below. The Settlement Administrator will not pay any other or additional amounts from the Escrow Account until the Settlement is Final.

3. Within fourteen (14) days after the Settlement is Final, Defendants will cause the remainder of the Settlement Amount ($140,000,000 minus the 50% of the Attorneys' Fees and Expenses already paid out) to be deposited into the Escrow Account. The Settlement Administrator will then first pay from the Escrow Account all the Administrative Expenses, Case Contribution Fees, Independent Fiduciary Fees, Taxes and Tax-Related Costs, and all remaining Attorneys' Fees and Attorneys' Expenses approved by the Court. After these payments are made, the remaining Net Settlement Fund will be used to make the Settlement Payments to the Annuity Contracts Sub-Class and the Trust Platform Sub-Class, according to the Plan of Allocation. The Net Settlement Fund reflects the value of alleged losses to the Plans and/or Plan Participants resulting from Mutual Fund Payments allegedly retained by Nationwide, together with interest accrued.

4. The Settlement Amount shall be used solely to pay the following amounts associated with the Settlement:

- 12 -

(a)     Settlement Payments to the Class Members (or any residual amount payable as

provided in Paragraphs 14 and 16 of this Section);

(b)     Case Contribution Fees;

(c)     Administrative Expenses;

(d)     Independent Fiduciary Fees;

(e)     Attorneys' Fees;

(f)     Attorneys' Expenses; and

(g)     Taxes and Tax-Related Costs.

There shall be no other amounts due under the Settlement.

5.     The Parties agree that the Settlement Amount and Settlement Payments shall not

be considered "plan assets," as that term is defined in ERISA and the regulations promulgated

pursuant to ERISA, until such time as the Settlement Payments are received and deposited by the

Class Members on behalf of their Plans and Plan Participants.  Plaintiffs further agree that

Nationwide is not exercising any discretion, authority, or control over the Settlement Amount or

any Settlement Payments as part of this settlement, and that the Class Members, as fiduciaries to

their Plans and Plan Participants, will make the final decision and shall be solely responsible for

all fiduciary decisions related to the distribution and/or use of any Settlement Payments or other

expenditures from the Escrow Account.  Nothing in this Settlement shall give rise to any

fiduciary duty on the part of Nationwide; under no circumstances shall Nationwide be deemed to

have accepted, agreed to, assumed, or performed any fiduciary duties under this Settlement.

6.     Subject to Court approval and oversight, the Escrow Account will be controlled

and administered by the Settlement Administrator.  The Parties shall incur no liability

whatsoever for the acts or omissions of the Settlement Administrator appointed by the Court.

The Settlement Administrator shall not disburse money in the Escrow Account or any portion

thereof except as provided in this Stipulation, by an Order of the Court, or with prior written agreement of Plaintiffs' Counsel and Defendants' Counsel.

7.      The Settlement Administrator is authorized to execute, and is responsible for executing, transactions on behalf of the Class Members that are consistent with the terms of this Stipulation and with Orders of the Court.  Defendants and Defendants' Counsel shall not have any liability or responsibility of any sort for administering the Settlement, or for paying any fees or expenses of the Settlement Administrator other than through the Escrow Account.

8.      All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until the funds are distributed in accordance with this Stipulation.

9.      The Settlement Administrator shall, to the extent practicable, invest the money held in the Escrow Account in discrete and identifiable instruments backed by the full faith and credit of the United States Government, or fully insured by the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  The Settlement Administrator shall maintain records identifying in detail each instrument in which the money in the Escrow Account or any portion thereof has been invested, and identifying the precise location (including safe deposit box number) of each such instrument.  Neither the money in the Escrow Account nor any other money in connection with this Settlement shall be commingled with any other monies in any instruments.  The Settlement Administrator and Class Members shall bear all risks related to investment of the money in the Escrow Account.  All income or gain earned—and any loss incurred—by the investment of the money in the Escrow Account shall be credited to—or debited from—the Escrow Account.

10.      The Escrow Account will be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.  The Settlement Administrator, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes owed with respect to the Settlement Account.  Defendants agree to provide the Settlement Administrator with the statement described in Treasury Regulation §1.468B-3(e).  Defendants and Defendants' Counsel shall not have any liability or responsibility of any sort for filing any tax returns or paying any taxes with respect to the Escrow Account.

11.      The Plaintiffs' Counsel will request, and if awarded by the Court the Settlement Administrator will pay, a Case Contribution Fee of $25,000 for each of the Named Plaintiffs.  This payment will be made after the Settlement is Final.  Defendants will have no responsibility for the payment of the Case Contribution Fee and will have no liability with respect thereto, but will not object to payment of this Case Contribution Fee.

12.      ***Distribution to Class Members.***  The Net Settlement Fund will be distributed to Class Members who submit a valid and timely Claim Form, in the form attached to this Stipulation as Exhibit D, pursuant to a Plan of Allocation that is attached to this Stipulation as Exhibit E.  This Plan of Allocation will be submitted by Plaintiffs' Counsel for approval by the Court.  The Plan of Allocation will be administered by the Settlement Administrator.  Defendants shall have no authority or control over, and no responsibility for, the Plan of Allocation or the actual allocation and distribution of the Net Settlement Fund by the Settlement Administrator, and shall not have any liability with respect thereto.

13.      Plaintiffs' Counsel shall be responsible for obtaining and furnishing to the Settlement Administrator the names, addresses, phone numbers, and other relevant contact

information for the Class Members, and any necessary information concerning the subscriptions made to and withdrawal from, if any, the Funds by each Class Member, in order to administer the Plan of Allocation.  Defendants agree to reasonably assist in providing any of this information that is in its sole possession.

14.     Settlement Payments will be made only after expiration of the Claim Period.  For every Class Member that fails to timely submit a properly completed Claim Form, in accordance with the Plan of Allocation, there shall be a proportional increase in the Net Settlement Fund allocated to that Class Member's Sub-Class, and therefore a proportional increase in the Settlement Payments made to members of the Sub-Class that timely submitted a properly completed Claim Form.  Class Members that fail to timely submit a properly completed Claim Form shall have no right to receive any payment from the Settlement Amount.  In the unlikely event that such proportional increase would result in Class Members receiving more than one hundred percent (100%) of the Mutual Fund Payments attributable to their Plans' assets, plus interest, as calculated under the Plan of Allocation, then any amount in excess of that 100% will be distributed in a *cy pres* award to the National Endowment for Financial Education.

15.     Each Settlement Payment made from the Net Settlement Fund will be made by check and will include express agreement, confirmation, and acknowledgement that, by submitting a Claim Form and accepting payment from the Net Settlement Fund (by depositing the check), such Class Member, on behalf of the Class Member, the Plan, and the Plan Participants, has agreed to discharge and release the Released Parties from any and all liability for the Claims and Causes of Action, as well as the Released Conduct.  Each Class Member shall have sixty (60) days from the date the check is sent to accept payment by depositing the check. Regardless of whether a Class Member submits a Claim Form or deposits the check, all Class

Members, including Plans and Plan Participants, shall be bound by the Releases, including the bar order and injunction, described in Section G, when the Settlement becomes Final.

16.     After expiration of the 60 day period for depositing the check, the Settlement Administrator will prepare a report for Plaintiffs' Counsel and Defendants' Counsel identifying those Class Members that have submitted a Claim Form, but have not accepted payment from the Net Settlement Fund.  Plaintiffs' Counsel, with the assistance of the Settlement Administrator, will thereafter make all reasonable efforts to contact any Class Member that has submitted a Claim Form but not accepted payment from the Net Settlement Fund.  To the extent that money remaining in the Net Settlement Fund after an additional 120 days exceeds 1% of the total Net Settlement Fund, that remaining money will be distributed to all Class Members who submitted a Claim Form and accepted payment from the Net Settlement Fund on a *pro rata* basis, up to the amount remaining in the Net Settlement Fund, subject to the limitations described in Paragraph 14 of this Section that class members are not entitled to receive more than one hundred percent (100%) of the Mutual Fund Payments attributable to their Plans' assets, plus interest.  To the extent that money remaining in the Net Settlement Fund after an additional 120 days is less than 1% of the total Net Settlement Fund, that remaining money will be distributed to the National Endowment for Financial Education.  Defendants have no authority or control over, or responsibility for, this allocation and distribution and incur no liability with respect thereto.

### F. CHANGES AND ENHANCEMENTS TO BUSINESS PRACTICES

1.     As part of the Settlement of this Litigation, Defendants agree to make or continue certain specified changes and enhancements to its business practices for a minimum of five (5) years after the Effective Date, unless there is a change in applicable law or regulation that renders any change or practice unlawful (in which case, Defendants shall be permitted to alter its practices to the extent, but only to the extent, required by law or by order of the Court).  It is

understood and agreed by the Parties that by making or continuing the changes described in Section F, Nationwide has made no admission or waiver (a) as to any and all theories regarding Defendants' liability in the Litigation, or (b) that any of its prior or existing business practices violate any federal or state laws, statutes, or regulations. Defendants have agreed to make or continue the changes and enhancements described in Section F for the express purpose of resolving this Litigation and providing clarity and safe harbor as to its continuing solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund Payments.

2. ***Group Variable Annuity Disclosures.*** Subject to the provisions of Paragraph 1, Nationwide Life will supplement the disclosures for its new group variable annuity customer proposals, its new group variable annuity contracts, and its plan sponsor website that relate to Mutual Fund-related fees and expenses in connection with group variable annuity products. These additions, however, will not apply to Rule 408b-2 disclosures or fund fact sheets. Specifically, Nationwide Life shall make the following supplemental disclosures for its group variable annuity products:

(a) Nationwide Life currently provides on its plan sponsor website a disclosure, in the form of Exhibit H, of fund fees and expenses, including Mutual Fund Payments made to Nationwide Life, if any, for each fund available within the Plan's Product Menu. Nationwide Life agrees to continue this disclosure for at least five (5) years, unless there is a change in applicable law or regulation that renders any change or practice unlawful (in which case, Nationwide Life shall be permitted to alter its practices to the extent, but only to the extent, required by law or by order of the Court). Nationwide Life also reserves the right to further enhance these disclosures.

(b)     Nationwide Life shall include language that it offers various Product Menus to group retirement plan customers depending on a variety of quantitative and qualitative factors relating to the Mutual Funds, as well as the amount of Mutual Fund Payments required by Nationwide to offer the Product.  Nationwide Life shall further state that these Product Menus have varying degrees of Mutual Fund Payments associated with them, and that Nationwide Life took into consideration the anticipated Mutual Fund Payments when determining the fees charged for the Product.

(c)     Nationwide Life shall add language in new customer proposals or plan sponsor website(s), that, consistent with Section F, Paragraph 5 of this Stipulation, trustees of Plans holding group variable annuity contracts have an opportunity to be transferred to a product where Mutual Fund Payments are credited to the Plan in the form of reduced asset fees in an amount equivalent to the disclosed reimbursement rate received for each Mutual Fund investment option.  In no instance will the amount of any applicable Mutual Fund Payment reduce the net Nationwide Life asset fee to less than 0.00%.

3.     ***Individual Variable Annuity Disclosures***.  Nationwide Life will supplement the disclosures for its new individual variable annuity customer proposals and its new product prospectuses that relate to Mutual Fund-related fees and expenses in connection with individual variable annuity products.  Specifically, Nationwide Life shall make the following supplemental disclosures for its individual variable annuity products:

(a)     Nationwide Life is not able to affirmatively provide the same fee and expense information, described in Section 2(a), for its individual variable annuity plans.  For individual variable annuity plans, Nationwide Life shall add language to its disclosures that it shall provide, upon Plan trustees' written request, its best estimate of plan-specific, aggregate

data regarding the Mutual Fund Payments received in connection with the Plan's investments for the previous calendar year.

4. ***Trust Platform Disclosures.***  NFS will supplement the disclosures for its trust customer proposals, new trust, custodial, services, or program agreements, and plan sponsor website that relate to Mutual Fund-related fees and expenses in connection with trust products. These additions, however, will not apply to Rule 408b-2 disclosures or fund fact sheets. Specifically, NFS shall make the following supplemental disclosures for Trust Platforms:

(a)  NFS provides on the plan sponsor website a disclosure for each of its Trust Platforms, substantially in the form of Exhibit I, which is a representative disclosure for the Resource Platform.  The disclosure includes disclosure of fund fees and expenses, including Mutual Fund Payments made, if any, for each fund available within the Plan's Program Menu. NFS agrees to continue this disclosure for the Trust Platforms for at least five (5) years, unless there is a change in applicable law or regulation that renders any change or practice unlawful (in which case, NFS shall be permitted to alter its practices to the extent, but only to the extent, required by law or by order of the Court).  NFS also reserves the right to further enhance these disclosures.

(b)  NFS shall include disclosure language stating that it offers various Program Menus to trust retirement plan customers depending on a variety of quantitative and qualitative factors relating to the Mutual Funds, as well as the amount of Mutual Fund Payments required for the program.  NFS shall further state that these Program Menus have varying degrees of Mutual Fund Payments associated with them, and that NFS took into consideration the anticipated Mutual Fund Payments when determining the fees charged for the program.

(c)      NFS shall add language to the new customer proposals; trust, custodial, service, or program agreements; or plan sponsor website(s) that, consistent with Section F, Paragraph 5 of this Stipulation, Plan trustees of Plans have an opportunity to be transferred to a Program where Mutual Fund Payments are credited to the Plan in the form of reduced asset fees in an amount equivalent to the disclosed reimbursement rate received for each Mutual Fund investment option.  In no instance will the amount of any applicable Mutual Fund Payment reduce the net asset fee for the Trust Platforms to less than 0.00% for that Mutual Fund investment option.

5.      ***Changes to Product and Program Menus.***  Subject to the provisions of Paragraph 1, Defendants will enhance its procedures for certain future changes to the Product and Plan Menus in connection with Annuity Contracts, and the Program Menus for the Trust Platforms, as follows:

(a)      *Additions.*  For group variable annuity products and Trust Platforms, Nationwide will specifically identify to Plan Trustees, via mail, electronic delivery, or Defendants' plan sponsor website, any addition of a Mutual Fund investment option to a Product Menu or Program Menu at the time of the addition.  Defendants will update the new customer proposals; trust, custodial, service, or program agreements; or plan sponsor website(s), as applicable, to inform Plan trustees that such Product and Program Menu additions are identified on the plan sponsor website(s).

(b)      For individual variable annuities, Nationwide Life agrees to follow applicable U.S. Securities and Exchange Commission regulations, including notice requirements, with regard to the addition of any investment option.

(c)    *Removals and Substitutions.*   For group variable annuity products and Trust Platforms, Nationwide will provide to Plan trustees written notice of any removal or substitution of a Mutual Fund investment option from the Product and Program Menus that is initiated solely by Nationwide Life or NFS, and will not remove or substitute that fund from the Product or Program Menu for a particular Plan until it has received affirmative consent from that Plan's trustee(s).   Such notice shall be provided via mail, electronic delivery, or published on the plan sponsor website(s) at least thirty (30) days prior to the removal or substitution of a Mutual Fund investment option, and shall state the effective date of such removal or substitution. Defendants will update new customer proposals; trust, custodial, service, or program agreements; or the plan sponsor website(s), as applicable, to inform Plan trustees that such removals or substitutions from the Product and Program Menu are identified on the plan sponsor website(s).

(d)    For group variable annuity products and Trust Platforms, Defendants will not, except in accordance with subsections (e) and (f), substitute one fund for another (*i.e.*, transfer any money currently invested in existing Fund A to Fund B), or otherwise unilaterally remove or substitute a fund from a Plan Menu.  Defendants will confirm this change in their business practices by modifying their contracts and Trust Platforms to eliminate any authority to unilaterally remove or substitute a fund from a Menu (the group variable annuity contract modifications will be subject to State insurance department approval).   This provision shall not limit the ability of Nationwide Life or NFS to continue their practice of substituting or removing a fund on Product or Program Menus for new customers or existing customers that have not included the fund on their Plan or Program Menu for the particular Plan.

(e)    For group variable annuity products, in those circumstances where a substitution or removal is necessitated by the actions of Mutual Funds (such as decisions by

Mutual Funds or corresponding separate accounts to liquidate a fund, merge funds, change investment advisers or sub-advisers, make other changes that prevent Nationwide Life from offering an investment option on the Plan Menu, or otherwise require Nationwide to change the Plan Menu), Nationwide Life will enhance its procedures by following the notice process described below.  Where administratively feasible, Nationwide Life will provide sixty (60) days written notice to the trustee of each Plan affected by the change via notice sent by first class mail, fax, or email.  The notice will:  (1) explain the proposed modification to the Plan Menu; (2) fully disclose any resulting changes in the Mutual Fund Payment rate received by Nationwide; (3) identify the effective date of the change; (4) explain the Plan trustee's right to terminate the Annuity Contract; and (5) reiterate that, pursuant to the contract provisions agreed to by the Plan trustee, failure to object or otherwise respond shall be deemed to be consent to the proposed change.  Nationwide Life will confirm this change in their business practice by modifying their existing and future Annuity Contracts to reflect this notice process (the Annuity Contract modifications will be subject to State insurance department approval).

(f)     For Trust Platforms, NFS has enhanced its notification procedures in those circumstances where a substitution or removal is necessitated by the actions of Mutual Funds (such as decisions by Mutual Funds or corresponding separate accounts to liquidate a fund, merge funds, change investment advisers or sub-advisers, make other changes that prevent NFS from offering an investment option on the Plan Menu, or otherwise require Nationwide to change the Plan Menu).  These notification enhancements are substantially the same as the changes described in subsection (e) above, and will remain in effect for a minimum of five (5) years after the Effective Date, unless there is a change in applicable law or regulation that renders any change or practice unlawful.

(g)    For individual variable annuities, Nationwide Life agrees to follow applicable U.S. Securities and Exchange Commission regulations, including notice requirements, with regard to the substitution or removal of any investment option.

6.    ***Other Provisions***.  As part of the Settlement, current and future group variable annuity contract holders, and those holding trust, custodial, services, or program agreements, shall be offered the opportunity to be transferred to a product or Trust Platform where Mutual Fund Payments are credited to the Plan in the form of reduced asset fees in an amount equivalent to the disclosed reimbursement rate received for each Mutual Fund investment option.  As provided in Paragraphs 2(c) and 4(c) of Section F, this will be disclosed in the new customer proposals; trust, custodial, service, or program agreements; or the plan sponsor website(s), as applicable.  In no instance will the amount of any applicable Mutual Fund Payment reduce the net asset fee to less than 0.00% for that Mutual Fund investment option.  Defendants agree that they will continue to make available at least one Trust Platform offering for which Mutual Fund Payments are passed-through in their entirety and/or the Mutual Fund Payment amounts are disclosed, subject to the restrictions on Defendants' ability to substitute one fund for another as set forth in Section F(5), above.

7.    Unless otherwise specified in this Section F, Defendants shall begin to implement the changes set forth in this Section F within six (6) months of the Settlement Effective Date. Defendants further agree that they will make diligent and good faith efforts to ensure that the implementation of the changes set forth in this Section F are concluded within twelve (12) months of the Settlement Effective Date, unless there is a change in applicable law or regulatory policy that renders any change or practice unlawful or impracticable or imposes different disclosure or other substantive requirements, whether through statute, regulation, or official

guidance.  In the event filings are necessary to be made to state insurance or other regulatory departments, approval of these filings may not necessarily occur within this time frame.

8.      Subject to the provisions of Paragraph 1, Defendants shall agree that the actions they undertake pursuant to this Section F shall remain in effect for five (5) years from the date of Final Approval of the Settlement.

## G. RELEASES

1.      In consideration for the Settlement Payments and the other terms of the Settlement described above, and when this Settlement becomes Final, Plaintiffs and each of the Class Members, and the Plans and Plan Participants they represent, will be bound to the fullest extent permissible under the law to have fully, finally, and forever released, relinquished, and discharged Nationwide and all other Released Parties from any and all Claims or Causes of Action (including Unknown Claims) that are based upon or related to, directly or indirectly, in whole or in part:  (a) the allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation, including, but not limited to, the solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund Payments; or (b) the Released Conduct.

2.      When this Settlement becomes Final, Plaintiffs and each of the Class Members, and the Plans and Participants they represent, shall have expressly waived any and all provisions, rights and benefits conferred by any law of the United States, or any state or territory of the United States, or principle of common law, which are similar, comparable, or equivalent to California Civil Code §1542.  In particular, California Civil Code§ 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO
> CLAIMS WHICH THE CREDITOR DOES NOT KNOW
> OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE, WHICH,
> IF KNOWN BY HIM OR HER, MUST HAVE

MATERIALLY AFFECTED HIS OR HER
SETTLEMENT WITH THE DEBTOR.

Plaintiffs and each of the Class Members, and the Plans and Participants they represent,

expressly waive the rights and benefits conferred by this Section.  They understand and

acknowledge that they may hereafter discover facts in addition to or different from those which

he, she, or it now knows or believes or has reason to believe to be true with respect to the subject

matter of the release described above.  Nevertheless, Plaintiffs and each of the Class Members,

and the Plans and Participants they represent, expressly, fully, finally, and forever settle,

discharge, and release any and all Claims or Causes of Action in this release, including Unknown

Claims, suspected or unsuspected, contingent or non-contingent, whether or not concealed or

hidden, which now exist, or heretofore have existed, upon any theory of law or equity now

existing or coming into existence in the future (including, but not limited to, conduct that is

negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without

regard to the subsequent discovery or existence of such different or additional facts) that are

based upon or related to, directly or indirectly, (a) the allegations, facts, subjects, or issues that

were or could have been set forth or raised in the Litigation, including, but not limited to, the

solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual

Fund Payments; or (b) the Released Conduct.  Plaintiffs and each of the Class Members, and the

Plans and Participants they represent, shall have acknowledged that the foregoing waiver was

separately bargained for and a key element of the Settlement of which this release is a part.

3.      When this Settlement becomes Final, Plaintiffs and each of the Class Members,

and the Plans and Plan Participants they represent, will be bound by this Stipulation and have

agreed and covenanted not to file, encourage, support, join in, continue, assist in, or pursue any

Claim or Cause of Action (including Unknown Claims) against Nationwide or any other

Released Party that is based upon or related to, directly or indirectly, in whole or in part:  (a) the allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation, including, but not limited to, the solicitation, negotiation, arrangement, receipt, or retention, or other conduct with regard to Mutual Fund Payments, or (b) the Released Conduct. Plaintiffs and each of the Class Members, and each of the Plans and Participants they represent, further have acknowledged and accepted presently and in the future Nationwide's solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund Payments currently in effect in connection with their retirement products, and agree not to bring a lawsuit in the future on the basis of any such solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund Payments currently in effect.

4.      When this Settlement becomes Final, Plaintiffs and each of the Class Members, and the Plans and Plan Participants they represent, shall be forever barred and enjoined from commencing, instituting, joining in, continuing, or prosecuting against Nationwide and all other Released Parties, any and all Claims or Causes of Action (including Unknown Claims and derivative claims) that are based upon or related to, directly or indirectly, in whole or in part:  (a) the allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation, including the solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund Payments; or (b) the Released Conduct.

5.      No Class Member, or the Plans and Participants they represent, shall have any Claims or Causes of Action against Nationwide, all other Released Parties, Nationwide's Counsel, or any other agent designated by any of the foregoing, based on the Plan of Allocation or distributions made in accordance with the Plan of Allocation.

- 27 -

6.      In consideration for the Settlement Payments and the other terms of the Settlement described above, and when this Settlement becomes Final, Nationwide will be bound to have, to the fullest extent permissible under the law, fully, finally, and forever released, relinquished, and discharged the Named Plaintiffs from any and all Claims or Causes of Action (including Unknown Claims) that are based upon or related to, directly or indirectly, in whole or in part, the allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation, including, but not limited to, the solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund Payments.

## H.  JUDICIAL FINDINGS

1.      As part of the Final Judgment and Order, the Parties shall jointly ask the Court to find and declare that, if Nationwide implements the changes described in Section F and this Settlement is fully implemented, Nationwide shall not be a fiduciary under the common law or ERISA, shall not be engaged in a breach of a fiduciary duty in violation of the common law or ERISA, including ERISA Sections 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), and shall not be engaged in a prohibited transaction in violation of the common law or ERISA, including ERISA Sections 406(b)(1) and (b)(3), 29 U.S.C. § 1106(b)(1) and (b)(3), as a result of the continuation of its business practices (as modified herein), including but not limited to the solicitation, negotiation, arrangement, receipt, or retention of Mutual Fund Payments, nor as a result of entering into, participating in, or implementing this Settlement.  The Parties will jointly ask the Court to enter the additional findings and declarations set forth in the Final Order and Judgment attached hereto as Exhibit G.

2.      Nationwide reserves the right to terminate the Settlement should the Court decline to make such judicial findings and declarations described in this Section and the Final Order and Judgment (Exhibit G).

## I. PRELIMINARY APPROVAL ORDER, SETTLEMENT HEARING, AND FINAL JUDGMENT

1.      *Preliminary Approval.*  After execution of this Stipulation, the Parties shall submit the proposed Settlement to the Court for preliminary approval as soon as practicable but in no event later than December 11, 2014.  The Parties will cooperate to obtain approval from the Court.  The Parties shall jointly apply for entry of the Preliminary Approval Order requesting among other things (a) certification of the Annuity Contract Sub-Class and the Trust Platform Sub-Class for settlement purposes only; (b) the preliminary approval of the Settlement set forth in this Stipulation; (c) the appointment of a Settlement Administrator; (d) approval of the Published Class Notice, the Class Notice, and the Claim Form identical in all material respects to the forms attached as Exhibits [B, C, and D, respectively]; and (e) the holding of a Fairness Hearing to determine whether the Court should approve the Settlement as fair, reasonable, and adequate and in the best interests of the Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2.      *Notice.*  If the Court enters the Preliminary Approval Order, then the Settlement Administrator shall complete the mailing of the Class Notice to the Class Members at the addresses set forth on the Class Mailing List within fifteen (15) days after the entry of the Preliminary Approval Order.  The Class Notice shall be identical in all material respects to the form attached as Exhibit C, and shall (among other things) describe the Class and the Settlement, set forth the date of the Fairness Hearing, inform Class Members of their right to file a Claim Form, object to the Settlement, and exclude themselves from the Settlement, and inform the Class of the time and procedures for such Claim Forms, objections, or exclusions.  The Settlement Administrator will also cause the Published Class Notice (in the form attached as

- 29 -

Exhibit B) to be published in the National Edition of the *New York Times* within seven (7) days after the mailing of the Class Notice.

3. ***Claim Form.*** The Claim Form, identical in all material respects to the form attached as Exhibit D, shall accompany the Class Notice. Class Members eligible for payment under the Settlement shall execute the Claim Form and submit the Claim Form to the Settlement Administrator according to the instructions in the Claim Form. Only those Class Members who submit a valid Claim Form within one hundred and twenty (120) days of the Notice Date will receive a Settlement Payment.

4. ***Notice to Regulators.*** The Parties do not believe that Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, applies to the Litigation, which was commenced in 2001. However, in an abundance of caution, the Parties are complying with CAFA's notice requirements and shall file a notice confirming compliance prior to the Fairness Hearing.

5. ***Actions of Independent Fiduciary***. The Settlement shall be contingent upon the Independent Fiduciary evaluating the Settlement, the Released Conduct, and Releases set forth in Section G, and concluding that the Settlement meets the requirements of the Department of Labor Prohibited Transaction Exemption 2003-39, as amended ("PTE 2003-09"). The fees and costs of the Independent Fiduciary, up to $25,000, shall be paid from the Settlement Amount. Plaintiffs, Plaintiffs' Counsel, and Nationwide will comply with reasonable requests for information made by the Independent Fiduciary for the purpose of reviewing this Stipulation and the Settlement. The Independent Fiduciary shall provide the Parties a written report with his evaluation of the Settlement and his conclusion whether the Settlement complies with the requirements of PTE 2003-09. If the Independent Fiduciary concludes that the Settlement meets the conditions of Sections II and III of PTE 2003-09, to the extent applicable, the Independent

Fiduciary shall provide his written report of the Settlement, the Released Conduct, and the Releases set forth in Section G, no later than twenty-one (21) days after the Notice Date.  In so doing, the Independent Fiduciary will make written determinations as the conditions of Sections II and III of PTE 2003-09, including determinations as to the reasonableness of the scope of the Released Conduct and Releases set forth in Section G, and the reasonableness of Plaintiffs' Counsel's Fee and Expense Application, and any other sum to be charged to the Settlement Amount.

6.      If the Independent Fiduciary does not approve the Settlement and the Released Conduct and Releases set forth in Section G by the date identified in the preceding paragraph, then either Party may terminate this Stipulation and the Settlement upon notice to the other Party.

7.      ***Confirmatory Discovery***.  Within sixty (60) days after the Notice Date, Defendants shall present for examination, at a mutually-agreed time and format, the person or persons most knowledgeable of (a) the data and methodology used by Defendants to determine the total amount of Mutual Fund Payments made with regard to Nationwide's Annuity Contracts, and (b) the Trust Platform's Mutual Fund Payments and practices, during the relevant Sub-Class Periods.  No later than seven (7) days before this deposition, Defendants shall furnish Plaintiffs' Counsel with all documents and data reasonably necessary for Plaintiffs to prepare for examination of Defendants' witness or witnesses on these subjects.  If, after such examination has occurred, Plaintiffs' Counsel in good faith believes that additional discovery is necessary to verify (a) the total amount of Mutual Fund Payments made with regard to Nationwide's Annuity Contracts, and (b) the Trust Platforms' Mutual Fund Payments and practices, the Parties shall meet and confer as to the nature of any additional discovery necessary to enable such verification.  If agreement cannot be reached, the Parties agree that the Court shall be consulted

to resolve any dispute.  If, after completion of all such discovery, Plaintiffs and Plaintiffs'

Counsel in good faith dispute Defendants' calculations of the total amount of Mutual Fund

Payments made with regard to Nationwide's Annuity Contracts, or dispute the facts regarding

the Trust Platforms' Mutual Fund Payments and practices, Plaintiffs reserve the right to

terminate the Settlement.

8.      ***Final Approval.***  The Parties to this Stipulation shall present the proposed

Settlement to the Court for final approval at the Fairness Hearing.  The Parties will cooperate to

obtain final approval.  All papers in support of the Settlement, including responses to any

objections thereto, shall be filed with the Court and served seventy (70) days after the Notice

Date.

9.      If the Court grants final approval of the Settlement and Stipulation, the Parties

will request this Court to enter the Final Order and Judgment in the form attached as Exhibit G

that shall, among other things, include the findings and declarations described above, and (a)

certify the Annuity Contracts Sub-Class and the Trust Platform Sub-Class for settlement

purposes; (b) dismiss the Litigation with prejudice, each Party to bear its own costs (except as

provided herein); (c) release and discharge Nationwide and all the other Released Parties from

any and all past, present, and future Claims or Causes of Action (including Unknown Claims)

that are based upon or related to, directly or indirectly, in whole or in part, (i) the allegations,

facts, subjects, or issues that were or could have been set forth or raised in the Litigation,

including but not limited to the solicitation, negotiation, arrangement, receipt, retention, or other

conduct with regard to Mutual Fund Payments or (ii) the Released Conduct; and (d) permanently

bar and enjoin all Claims or Causes of Action (including Unknown Claims) by Plaintiffs and the

Class Members, including Plan Participants, that are based upon or related to, directly or

indirectly, in whole or in part, (i) the allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation, including but not limited to the solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund Payments, or (ii) the Released Conduct.

### J. PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

1.      Defendants will not object to the Plaintiffs' Counsel's reasonable Fee and Expense Application, provided that (a) the fees requested are not more than thirty-five percent (35%) of the Settlement Amount, and (b) Attorneys' Expenses do not exceed $2,000,000. Plaintiffs' Counsel, in turn, agrees to seek no more than this amount.  Attorneys' Fees and Attorneys' Expenses will be deducted from the Settlement Amount prior to distribution of the Net Settlement Fund.

2.      In the event that this Settlement is (a) not approved by the Court, (b) is approved subject to terms or conditions not acceptable to one of the Parties, (c) is terminated pursuant to the terms of this Agreement, or (d) fails to become Final for any other reason, Plaintiffs' Counsel hereby undertakes to return to Defendants any and all Attorneys' Fees paid to that date, plus interest at a rate of four percent (4%).  In the event that Plaintiffs' Counsel is obligated to return any Attorneys' Fees under this provision, those Attorneys' Fees plus interest due will be transferred by wire to Defendants within ten (10) days of any Court order or other event pursuant to which the Settlement does not become Final.  Plaintiffs' Counsel agrees that they will not require any demand for the return of these Attorneys' Fees, and that they will confess to judgment for the return of those Attorneys' Fees plus interest due in the event that they do not return the money due within the time period required.  The Parties agree that Plaintiffs' Counsel's obligation to return any Attorneys' Fees, as described in this Paragraph, will be

included in the Proposed Final Order and Judgment and will be subject to enforcement by the Court.

3.     The Lead Settlement Counsel shall thereafter allocate the Attorneys' Fees between Plaintiffs' Counsel in a manner that Lead Settlement Counsel in good faith believes reflects the contributions of such counsel to the initiation, prosecution, and settlement of the Litigation.  The Lead Settlement Counsel shall also allocate the Case Contribution Fees according to any awards that the Court may make for the Class Representatives.  Any disputes regarding Attorneys' Fees or the Case Contribution Fee shall be resolved by the Court.

4.     The procedure for, and the allowance or disallowance by the Court of, any Fee and Expense Application by the Plaintiffs' Counsel is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation.  Any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Litigation set forth herein.

## K.  EXCLUSION AND OBJECTIONS

1.     Any Class Member may request exclusion—or "opt out"—from the Settlement by completing and personally signing and delivering a written Exclusion Request.  Consistent with the terms of the Class Notice, Exhibit C, Exclusion Requests must be received by the Settlement Administrator within sixty (60) days after the Notice Date.  If a Class Member submits an Exclusion Request, that Class Member, and the Plan and Participants he or she represents, shall not be entitled to any benefits in this Settlement, shall not gain any rights as a result of this Settlement, and shall not be entitled to object to this Settlement.

2.      Any Class Member who has not submitted an Exclusion Request may object to the Settlement.  Any Class Member that intends to object to this Stipulation must file with the Court a signed Notice of Intention to Appear and Object that includes:  (1) his/her/its name and address, and the personal signature or signature of that person or an authorized person; (2) all arguments, citations, and evidence supporting the objection; (3) a statement that he, she, or it is a Class Member; and (4) a statement whether the objector will appear at the Settlement Hearing, and, if represented by counsel, whether the objector will appear with or without counsel, and, if the objector will appear with counsel, the name and contact information of such counsel.  A copy of such Notice of Intention to Appear and Object must also be sent to Plaintiffs' Counsel and Defendants' Counsel.  Objections must be filed with the Court, and served on the parties in a letter post-marked, no later than sixty (60) days after the Notice Date.  Responses to any objections shall be filed with the Court within seventy (70) days after the Notice Date.  Any Class Member who fails to timely file a signed written objection and Notice of Intention to Appear and Object as detailed in the Class Notice, shall not be permitted to object to this Stipulation at the Fairness Hearing, shall be foreclosed from seeking any review of this Stipulation by appeal or other means, and shall be bound by this Stipulation and the Final Order and Judgment (including the Releases contained therein).

## L.  CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

1.      This Stipulation shall be conditioned on the occurrence of all of the following events:

(a)      The Court has certified the Annuity Contracts Sub-Class and the Trust Platform Sub-Class for settlement purposes only and entered the Preliminary Approval Order identical in all material respects to the form attached as Exhibit F;

- 35 -

(b)    The Class Notice in the form attached as Exhibit C has been mailed and the Published Class Notice (in the form attached as Exhibit B) has been published; The Court has held a Fairness Hearing; has determined that the Settlement is fair, reasonable, and adequate; and has entered the Final Order and Judgment in a form materially the same as that attached as Exhibit G;

(c)    The Final Order and Judgment becomes Final, meaning that it is not subject to further review on appeal or by certiorari or otherwise, *provided, however*, that any dispute or appeals relating solely to the amount, payment, or allocation of Attorneys' Fees and Attorneys' Expenses shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Final Order and Judgment, or the Settlement.

2.    The Settlement may be terminated by either Defendants on the one hand, or Plaintiffs on the other, in the event that any of the conditions specified above are not met. Defendants may terminate the Settlement in the event that Exclusion Requests are submitted by more than five percent (5%) of the number of Class Members of either the Annuity Contracts Sub-Class or the Trust Platform Sub-Class, or by Class Members with more than 5% of either the average annual variable assets in the Annuity Contracts Sub-Class or the Trust Platform Sub-Class.  In the event that this Stipulation or the Settlement (a) is not approved by the Court; (b) is approved subject to additional conditions and/or modifications not acceptable to all Parties; (c) is terminated pursuant to this Section L; or (d) fails to become Final in accordance with its terms, then the Parties shall be restored to their respective positions in the Litigation on the date immediately prior to the entry of the Stipulation.  In such event, the terms and provisions of this Stipulation shall have no further force and effect with respect to the Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order or class

certification entered by the Court in connection with this Stipulation or the proposed Settlement shall be treated as vacated, *nunc pro tunc;* provided however, that the obligations of Plaintiffs' Counsel in Section J above to return any and all attorneys' fees paid, plus interest, will continue to have full force and effect, will be fully enforceable by Defendants, and will *not* be vacated.

3.      No order of the Court, or modification or reversal on appeal of any order of the Court, concerning the Fee and Expense Application, or the amount of any Attorneys' Fees, Attorneys' Expenses, and interest awarded by the Court to the Class Counsel, shall constitute grounds for cancellation or termination of this Stipulation.

### M.  NO ADMISSION OF WRONGDOING

1.      Except to enforce the terms of this Stipulation, this Stipulation (whether or not consummated) and any negotiations, discussions, or proceedings in connection this Stipulation or Settlement shall not be used, referred to, or offered in evidence in any proceeding for any purpose, including but not limited to:

(a)      Offered, referred to, or received against Nationwide as evidence of, or construed as or deemed to be evidence of any presumption, concession, or admission by Nationwide of, the truth of any fact alleged by Plaintiffs, any Class Member, or any other persons, or the validity of any claim that has been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation, or of any liability, negligence, fault, or wrongdoing of Nationwide;

(b)      Offered, referred to, or received against Nationwide as evidence of, or as a presumption, concession, admission of, any liability, duty, breach of a duty, misrepresentation, or omission with respect to any statement or written document approved or made by Nationwide, or against Plaintiffs as evidence of any infirmity in the claims of Plaintiffs;

(c)     Offered, referred to, or received against Nationwide as evidence of, or as a presumption, concession, or admission of, any liability, duty, breach of a duty, misrepresentation, or omission, or in any way referred to for any reason, in any other civil, criminal or administrative action or proceeding; and

(d)     Construed against Nationwide or Plaintiffs as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial.

### N.  MISCELLANEOUS PROVISIONS

1.     The Parties (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation, each according to the obligations imposed upon him or it by the Stipulation.

2.     Neither Defendants nor their Counsel shall object, or cause or seek to cause any other person to object, to the fairness, reasonableness, or adequacy of the Settlement.

3.     When this Stipulation becomes Final, Plaintiffs and their Counsel will return to Defendants, or certify to the destruction of, all documents that were produced by Defendants in this Litigation.

4.     When this Settlement becomes Final, the Settlement Administrator will file a compliance report that includes all Class Members who have opted out of the Settlement. Additionally, the Settlement Administrator will provide Defendants with a certified list of all members of the Class, so that Defendants may enforce this Settlement in the event that future claims are filed with regard to Released Conduct.

5.      All of the exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

6.      This Stipulation and its exhibits may be amended or modified only by a written instrument signed by or on behalf of all Parties or their successors-in-interest.

7.      This Stipulation and the exhibits attached hereto constitute the entire agreement among the Parties.  No representations, warranties, or inducements have been made to any Party concerning this Stipulation or its exhibits, other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Party shall bear its own costs.

8.      Each counsel or other person executing this Stipulation, or any of its exhibits, on behalf of any Party hereto hereby warrants that such person has the full authority to do so.  The Plaintiffs represent and warrant that they have not assigned any right with respect to any matter encompassed within this Litigation or the Released Conduct, will hold all other parties harmless as a result of any assignment of such right, and enter into this Settlement without coercion of any kind.

9.      This Stipulation may be executed in one or more counterparts.  All executed counterparts, and each of them, shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

10.     This Stipulation shall be binding upon, and insure to the benefit of, the successors and assigns of the Parties hereto.

11.     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Stipulation.

12.     While these documents are matters of public record, the Parties agree not to publicize the Settlement or this Stipulation.  Any comment to the media will be limited to the statement that:  "The parties have entered into a settlement agreement to resolve the *Haddock* lawsuit, subject to Court approval."  Nationwide may respond to other questions by the media and regulators in the ordinary course of business.  Plaintiffs' Counsel may recite that a settlement was reached in the "*Haddock* Litigation against a Fortune 100 Company," on their websites and in a "block ad" in a Texas and a Connecticut legal publication; however, Plaintiffs' Counsel shall obtain Nationwide's approval of the text prior to publication, which will not be unreasonably refused.  Each Party further agrees not to disparage the other Party or otherwise characterize the other Party's claims or defenses.

13.     This Stipulation and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Connecticut, and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with the laws of the State of Connecticut, without giving effect to that State's choice of law principles.

*       *       *       *       *

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of December 11, 2014.

**Agreed to on behalf of Plaintiffs and the Class:**

Dated:  December 11, 2014            By:__/s/_____
                                                    Marc R. Stanley
                                                    The Stanley Law Group
                                                    3100 Monticello Avenue
                                                    Suite 770
                                                    Dallas, TX  75205
                                                    Telephone:  (214) 443-4301
                                                    Facsimile:  (214) 447-9469
                                                    marcstanley@mac.com

**Agreed to on behalf of Defendants Nationwide Life Insurance Company and Nationwide Financial Services, Inc.:**

Dated:  December 11, 2014            By:__/s/_____
                                                    Charles Platt
                                                    Wilmer Cutler Pickering Hale and Dorr LLP
                                                    7 World Trade Center
                                                    250 Greenwich Street
                                                    New York, NY  10007
                                                    Telephone:   (212) 230-8800
                                                    Facsimile:  (212) 230-8888
                                                    charles.platt@wilmerhale.com

# Exhibit B

**If you are a current or former trustee of a retirement plan covered by the Employee Retirement Income Security Act ("ERISA") that had (1) group or individual variable annuity contracts with Nationwide Life Insurance Company at any time between January 1, 1996 and September 30, 2014, or (2) trust, custodial, services, or program agreements and/or arrangements with Nationwide Financial Services, Inc., or its affiliates, at any time between January 1, 2009 and September 30, 2014, your plan may benefit from this class action settlement.**

*This is a summary.  See below for more information.*

### What is this about?

A Settlement has been reached in *Haddock v. Nationwide Life Insurance Co.*, a class action lawsuit against Nationwide Life Insurance Company ("Nationwide Life") and Nationwide Financial Services, Inc. ("NFS") (collectively, "Defendants").  The Settlement resolves claims made by trustees of retirement plans covered by the Employee Retirement Income Security Act ("ERISA").  The trustees claimed that Defendants violated ERISA when they arranged for, received or retained payments from mutual funds ("mutual fund payments" or "revenue sharing") offered as investment options on their Annuity Contracts and Trust Platforms.  Defendants deny that they engaged in any improper conduct and maintain that the mutual fund payments they received benefitted the Plaintiffs, and the retirement plans and participants they represent, because the payments were used to reduce administrative fees paid by the plans and participants, and to compensate Defendants lawfully and appropriately for its services.  Defendants have agreed to settle to avoid the expense and distraction of further continued litigation.  Both Parties agree that the Settlement provides meaningful and carefully-tailored relief to the Class that relates directly to the allegations in Plaintiffs' case.

### What does the settlement provide?

A Settlement Fund of $110,000,000 has been created for the benefit of trustees of plans that held Annuity Contracts with Nationwide Life between January 1, 1996 and September 30, 2014, and that are subject to ERISA.  A Settlement Fund of $30,000,000 has been created for the benefit of trustees of plans that held Trust Platforms with Nationwide between January 1, 2009 and September 30, 2014, and that are subject to ERISA.  Defendants have also agreed to enhance certain business practices that allegedly relate to the mutual fund payments it receives.

### Who represents me?

The Court has appointed three law firms to represent you and other Class Members: the Stanley Law Group, Lackey Hershman, LLP, and Koskoff Koskoff & Bieder, PC.  These lawyers are called Class

Counsel.  Marc R. Stanley of the Stanley Law Group and William Bloss of Koskoff Koskoff & Bieder, PC have been appointed as Lead Settlement Counsel.  You will not be charged for the work of these lawyers.  If you want to be represented by a different lawyer in this case, you may hire one at your own expense.

*What are my rights?*

- To receive a payment, your Plan must submit a completed Claim Form by **[Date]**.  If you do nothing, you will remain in the Class but receive no money.  You do not need to do anything to get the benefit of new business practices.
- You may exclude yourself from the Settlement by sending a letter to the address below postmarked no later than **[Date]**.  Your Plan cannot get any money from this Settlement if you do so.
- You may object to the Settlement by filing an objection with the Court by no later than **[Date]**.
- If the Settlement is approved by the Court, Class Members who do not exclude themselves from the Class will give up any claims covered by the Settlement and will be bound by the Court's orders and judgment in the case.

The Court will hold a hearing on _____, 2015 at _____m. to consider whether the Settlement is fair, reasonable, and adequate, and to consider the motion for attorneys' fees and expenses.

**To request a copy of the full Class Notice or a Claim Form, or for further information:**
**Call:   1-866-894-0420**
**Visit:   www.nwclassaction.com**
**Write: *Haddock v. Nationwide* Class Action Administrator**
**P.O. Box 43247**
**Providence, RI  02940-3247**

# Exhibit C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

**A Settlement has been reached in the *Haddock v. Nationwide Life Insurance Co.* class action.  Your Plan may be eligible for benefits.**

**If you are a current or former trustee of a retirement plan covered by the Employee Retirement Income Security Act ("ERISA") that had (1) group or individual variable annuity contracts with Nationwide Life Insurance Company at any time between January 1, 1996 and September 30, 2014, or (2) trust, custodial, services, or program agreements and/or arrangements with Nationwide Financial Services, Inc., or its affiliates, at any time between January 1, 2009 and September 30, 2014, your plan may benefit from this class action settlement.**

*A federal court authorized this notice.  This is not a solicitation from a lawyer.
Neither you nor your plan is being sued.*

- A Settlement has been reached in a class action lawsuit against Nationwide Life Insurance Company ("Nationwide Life") and Nationwide Financial Services, Inc. ("NFS") (collectively, "Defendants"). The Settlement resolves claims made by trustees of retirement plans covered by the Employee Retirement Income Security Act ("ERISA").  The trustees claimed that Defendants violated ERISA when they arranged for, received, or retained payments from mutual funds ("mutual fund payments" or "revenue sharing") offered as investment options on their Annuity Contracts and Trust Platforms. Defendants deny that they engaged in any improper conduct and maintain that the mutual fund payments they received benefitted the Plaintiffs, and the retirement plans and participants they represent, because the payments were used to reduce administrative fees paid by the plans and participants, and to compensate Defendants lawfully and appropriately for its services.  Defendants have agreed to settle to avoid the expense and distraction of further continued litigation.  Both Parties agree that the Settlement provides meaningful and carefully-tailored relief to the Class that relates directly to the allegations in the Litigation.

- You have been identified as a "Class Member" in this Settlement because you are (a) a current or former trustee of a retirement plan covered by ERISA that had group or individual variable annuity contracts with Nationwide Life between January 1, 1996 and September 30, 2014; or (b) a current or former trustee of a retirement plan covered by ERISA that had trust, custodial, services, or program agreements and/or arrangements with NFS, or its affiliates, between January 1, 2009 and September 30, 2014.

- Your legal rights, and the rights of your Plans, Plan Participants, and beneficiaries, may be affected regardless of whether you take any action. Read this entire Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way for your Plan to receive money from this Settlement is to submit the enclosed Claim Form so it is received by **[deadline]**. |
| **ASK TO BE EXCLUDED** | This is the only option that allows your Plan, Plan Participants, and beneficiaries to ever be part of another lawsuit against Nationwide about the legal claims resolved by this Settlement.  If you exclude your Plan, Plan Participants and beneficiaries from this Settlement, your Plan will not receive any money from this Settlement. |
| **OBJECT** | You can object to the Settlement by writing to the Court with the reasons why you do not think it should be approved. |
| **ATTEND THE HEARING** | You can ask to speak in the Court about the fairness of the Settlement. |
| **DO NOTHING** | If you do nothing, your Plan will not receive a payment from this Settlement, and you, your Plan, and its Participants and beneficiaries will give up their right to ever be part of another lawsuit against Nationwide about the legal claims resolved by this Settlement.  They will get the benefit of the new business practices that Defendants will implement. |

- These rights and options are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.  Payments of money will be issued to Class Members who submit the Claim Form if the Court approves the Settlement and after any appeals are resolved.  Please be patient.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION**................................................................................................................. PAGE 4

1.      Why did I get this notice?

2.      What is this lawsuit about?

3.      What is a class action and who is involved?

4.      Why is there a Settlement?

5.      Who is included in the Settlement?

**THE SETTLEMENT BENEFITS – WHAT YOU CAN GET IF YOU QUALIFY** ................................................. PAGE 5

6.      What does the Settlement provide?

7.      What can my Plan, Plan Participants and beneficiaries get from the Settlement?

8.      What rights and I giving up in exchange for the Settlement?

9.      What are the Released Claims?

**HOW TO GET BENEFITS – SUBMITTING A CLAIM FORM** ....................................................................... PAGE 6

10.     How can I get a payment from this Settlement?

11.     How and when will payments be made?

**THE LAWYERS REPRESENTING YOU**.................................................................................................... PAGE 7

12.     Do I have a lawyer in this case?

13.     How will the lawyers be paid?

**ASKING TO BE EXCLUDED FROM THE SETTLEMENT**............................................................................. PAGE 7

14.     How do I ask to be excluded?

15.     If I ask to be excluded, can I still get a payment from this Settlement?

16.     If I ask to be excluded, can I sue Nationwide for the same claims later?

**OBJECTING TO THE SETTLEMENT** ...................................................................................................... PAGE 8

17.     How do I object to the Settlement?

**THE COURT'S FAIRNESS HEARING** .................................................................................................... PAGE 9

18.     When and where will the Court decide whether to approve the Settlement?

19.     Do I have to attend the Fairness Hearing?

20.     May I speak at the Fairness Hearing?

**IF YOU DO NOTHING**....................................................................................................................... PAGE 9

21.     What happens if I do nothing at all?

**GETTING MORE INFORMATION**.......................................................................................................... PAGE 9

22.     How can I get more information?

BASIC INFORMATION

| 1. Why did I get this notice? |
| --- |

You are receiving this Notice because you have a right to know about the proposed Settlement of this class action lawsuit before the Court decides whether to approve the Settlement. This Notice summarizes the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

Judge Stefan R. Underhill of the United States District Court for the District of Connecticut is overseeing this class action. The lawsuit is known as *Lou Haddock, as Trustee of the Flyte Tool & Die Company Inc. 401(k) Profit-Sharing Plan, et al., v. Nationwide Life Insurance Company*, Case No. 3:01-cv-1552 (SRU). The people who sued are called the "Plaintiffs." The companies they sued, Nationwide Life Insurance Company and Nationwide Financial Services, Inc., are together called "Defendants." Unless separately defined in this Notice, capitalized terms have the same meaning as they do in the Settlement Stipulation and Release, which is available at the Settlement website: www.nwclassaction.com.

| 2. What is this lawsuit about? |
| --- |

The lawsuit claims that Defendants became fiduciaries (someone with the duty of utmost good faith and fair dealing) under the Employee Retirement Income Security Act ("ERISA"). It further claims that Defendants violated their duties to the Plans by arranging for, receiving , or retaining the payments made to them by the Mutual Funds they offered to the Plans as investment options instead of distributing the payments to the Plans. These allegations pertain to Defendants' receipt of mutual fund payments with regard to its Annuity Contracts and Trust Platforms, during the relevant sub-class periods.

| 3. What is a class action and who is involved? |
| --- |

In a class action lawsuit, one or more people called Class Representatives (in this case Peter Wiberg, Alan Gouse, Christopher Anderson, H. Grady Chandler, and Christopher M. McKeon) sue (as trustees of their plans) on behalf of all trustees of plans that have similar claims. Together these people are the Class, and individually are the Class Members. The individuals who sued—and all the Class Members like them—are the Plaintiffs. One court resolves the issues for all Class Members, except for those people who choose to exclude themselves from the Class.

| 4. Why is there a Settlement? |
| --- |

The Court did not decide whether the Plaintiffs or Defendants are right. Instead, both sides agreed to a Settlement to avoid the costs and risks of further litigation and to provide benefits to Class Members as part of a compromise. The Settlement does not mean that a Court found that Defendants broke any laws or did anything wrong. Defendants have agreed to settle to avoid the expense and distraction of further continued litigation. The Class Representatives and the lawyers representing them (called "Class Counsel") believe that the Settlement is in the best interests of all Class Members. Both parties agree that the Settlement provides meaningful and carefully-tailored relief to the Class that relates directly to the allegations in Plaintiffs' case.

Class Counsel have retained an independent fiduciary to evaluate the fairness of the Settlement. The Independent Fiduciary is Nicholas L. Saakvitne, Esquire.

**5.   Who is included in the Settlement?**

If you received this Notice in the mail you have been identified as a Class Member. The Settlement includes two sub-classes: the Annuity Contracts Sub-Class and the Trust Platform Sub-Class.

The Annuity Contracts Sub-Class is defined as all trustees of all retirement plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA") which had group variable annuity contracts with Nationwide Life or whose plans or participants had individual variable annuity contracts with Nationwide Life at any time from January 1, 1996, or the first date Nationwide Life began receiving payments from mutual funds based on a percentage of the assets invested in the funds by Nationwide Life, whichever came first, to the date of September 30, 2014.

The Trust Platform Sub-Class is defined as all trustees of all retirement plans covered by ERISA which had trust, custodial, services, or program agreements and/or arrangements with NFS at any time from January 1, 2009 to the date of September 30, 2014.

### THE SETTLEMENT BENEFITS – WHAT YOU CAN GET IF YOU QUALIFY

**6.   What does the Settlement Provide?**

Defendants have agreed to pay a Settlement Amount of $140,000,000 to settle Plaintiffs' Claims. This Amount includes a Settlement Amount of $110,000,000 for the benefit of the Annuity Contracts Sub-Class, and $30,000,000 for the benefit of the Trust Platform Sub-Class. The Settlement Amount will be used first to pay all Case Contribution Fees, all Administration Expenses, all Independent Fiduciary Fees, all Attorneys' Fees, all Attorneys' Expenses, and all Taxes and Tax-Related Costs. The amount remaining after making these payments, called the Net Settlement Fund, will be used to for the benefit of Class Members who submit a valid Claim Form. In addition, Defendants have agreed to enhance certain business practices that allegedly relate to the mutual fund payments it receives with regard to its Annuity Contracts and Trust Platforms.

**7.   What can my Plan, Plan Participants and beneficiaries get from the Settlement?**

If you submit a valid Claim Form, you will receive a portion of the Net Settlement Fund in the form of a check for the benefit of your Plan. The amount paid to benefit each Plan will be determined by a Plan of Allocation, which has been filed with the Court and is available for review at the Settlement website: www.nwclassaction.com. In addition, if your Plan currently has an Annuity Contract or Trust Platform with Nationwide (or if your Plan selects a Nationwide Annuity Contract or Trust Platform in the future), your Plan will benefit from the enhanced business practices that Defendants have agreed to provide. For example, Defendants have agreed to modify their Annuity Contracts and Trust Platforms to reflect the circumstances under which investment options are added, substituted, or removed from a Plan or Product Menu. They have also agreed to offer alternative products that do not include (or include a

reduced amount) of mutual fund payments, and to provide additional disclosures about the mutual fund payments it receives in connection with its Annuity Contracts and Trust Platforms.

| 8. What rights am I giving up in exchange for the Settlement? |
|---|

Unless you exclude yourself, you will be part of the Settlement.  If the Settlement is approved and becomes Final, all of the Court's orders and judgment will apply to you and legally bind you, your Plan, and its Participants and beneficiaries.  Generally, that means you, your Plan, and its Participants and beneficiaries will not be able to sue, continue to sue, or be part of any other lawsuit against Nationwide for the claims, issues, and conduct resolved by this Settlement.  The specific rights you are giving up are Claims and Causes of Action that are "released" in this Settlement (*see* Question 9).

| 9. What Claims and Causes of Action will be released? |
|---|

The Class Members, and the Plans, Participants, and beneficiaries they represent, will "release" or give up all Claims or Causes of Action (including Unknown Claims) against Nationwide and the Released Parties that are related in any way to the subject matter of the Litigation or to the Released Conduct.  The Released Conduct includes each and every act, omission, representation or other statement or conduct by Nationwide or any other Released Party that relates in any way, directly or indirectly, to revenue sharing or other compensation from third parties, or to any alleged discretion, authority, control or responsibility respecting assets in the Annuity Contracts or Trust Platforms or the administration of an ERISA-covered plan, including, but not limited to, (a) the solicitation, negotiation, arrangement, or receipt of any Mutual Fund Payments by Nationwide in connection with any of its retirement products or platforms; (b) any fees (including alleged excessive fees), compensation, costs, expenses, or payments; (c) the alleged discretionary authority or discretionary responsibility under the Annuity Contracts or Trust Platforms, or in the administration of ERISA-covered plans; (d) disclosures or the sufficiency of information about Mutual Fund Payments or any asset management, mortality & expense, surrender, administrative, contract, or investment management fees; (e) the assembly, substitution, addition, or removal of investment options from a Product Menu or Plan Menu; (f) the operation of any variable or separate accounts accompanying the Annuity Contracts or Trust Platforms that purchase and sell Mutual Fund shares for the investment options selected by the Plan or Plan Participants; (g) any alleged rights, obligations, discretion or conduct by Nationwide to amend, modify, or change any terms of the Annuity Contracts or Trust Platforms; (h) any actions arising out of or related to the negotiation or drafting of the Settlement Stipulation; and (i) the Plan of Allocation and the allocation of any proceeds of the Net Settlement Fund.]

Section G of the Settlement Stipulation and Release describes the claims being released in necessary legal terminology.  Please read it carefully.  A copy of the Settlement Stipulation and Release is available at www.nwclassaction.com.  You can talk to one of the lawyers listed below for free or you can, of course, talk to your own lawyer at your own expense if you have questions about the claims being released.

### HOW TO GET BENEFITS – SUBMITTING A CLAIM FORM

| 10. How can I get a payment from this Settlement? |
|---|

You must complete and submit a Claim Form so it is received by **[deadline]**.  A copy of the Claim Form is enclosed with this Notice.  Claim Forms are also available at www.nwclassaction.com or by calling 1-866-894-0420.

Even if you do not submit a Claim Form, you and the Plans, Participants and beneficiaries you represent, will be bound by the Settlement and all its terms and conditions unless you have excluded yourself from the Settlement.  If you do not submit a Claim Form, you, and the Plans, Participants and beneficiaries you represent, will not be able to participate further in the Litigation or to otherwise pursue any of the claims set forth against Nationwide.  However, you will receive the benefit of Nationwide's enhanced business practices.

| 11.  How and when will payments be made? |
| --- |

You will receive payment in the form of a check in accordance with the instructions you provide on the Claim Form.  Class Members, as fiduciaries to their plans, shall be solely responsible for all fiduciary decisions related to the use of any proceeds of the Net Settlement Fund, and release and hold harmless Nationwide and any other Released Parties from any related claims.  All checks must be cashed within sixty (60) days after they are issued.

## THE LAWYERS REPRESENTING YOU

| 12.  Do I have a lawyer in this case? |
| --- |

Yes.  The Court has appointed three law firms to represent you and other Class Members: the Stanley Law Group, Lackey Hershman, LLP, and Koskoff Koskoff & Bieder, PC.  These lawyers are called Class Counsel;  Marc Stanley of the Stanley Law Group and William Bloss of Koskoff Koskoff & Bieder, PC have been appointed as Lead Settlement Counsel.  You will not be charged for the work of these lawyers.  If you want to be represented by a different lawyer in this case, you may hire one at your own expense.

| 13.  How will the lawyers be paid? |
| --- |

Class Counsel will ask the Court for an award of reasonable Attorneys' Fees, *i.e.*, 35% of the total Settlement Amount ($49,000,000), plus Attorneys' Expenses of up to $2,000,000.  The Court will award Attorneys' Fees based upon the value of the Settlement, the time Class Counsel has devoted to this Litigation, and the costs and expenses they incurred.  They will also ask for a Case Contribution Fee of $25,000 to be paid to each of the five Class Representatives.  If approved, all of these fees, costs, and expenses will be deducted from the $140,000,000 Settlement Amount before making payments to Class Members who submit valid Claim Forms.

## ASKING TO BE EXCLUDED FROM THE SETTLEMENT

If you want to keep the right to sue or continue to sue Defendants about the legal claims resolved by this Settlement, and you do not want to a Settlement payment, you must take steps to exclude yourself.  This is sometimes called "opting out" of the Settlement.

| 14.      How do I ask to be excluded? |
| --- |

To exclude yourself, your Plan, Plan Participants and beneficiaries, please personally sign and send a letter in your capacity as Plan Trustee that says you wish to be excluded from the Class in the case of *Lou Haddock v. Nationwide Life Insurance Company*.  Please include your full name, address, the name

of your ERISA-covered plan and your signature.  Mail your exclusion request so it is postmarked by [**deadline**] to *Haddock v. Nationwide* Class Action Administrator, P.O. Box 43247, Providence, RI 02940-3247.

| 15.   If I ask to be excluded, can I still get a payment from this Settlement? |
|---|

No.  If you exclude yourself you are telling the Court that you and your Plan, Participants, and beneficiaries, do not want to be part of the Settlement.  You can only get a payment if you stay in the Settlement and submit a valid Claim Form.

| 16.   If I ask to be excluded, can I sue Nationwide for the same claims later? |
|---|

Yes.  You must exclude yourself from *this* Settlement to start or continue with your own lawsuit or be part of any other lawsuit.  Unless you exclude yourself, you, your Plan and its Plan Participants and beneficiaries are giving up the right to sue Nationwide and the other Released Parties for the claims that this Settlement resolves and releases (see Question 9).

OBJECTING TO THE SETTLEMENT

If you do not like the Settlement or some aspect of it, you can tell the Court by objecting to the Settlement.  The Court will consider your views before making a decision.  Members of both the Annuity Contract and Trust Platform Sub-Classes may object to the Settlement.

| 17. How do I object to the Settlement? |
|---|

You may object to the Settlement by personally signing and filing an objection in writing.  Your objection must be received by [**deadline**], and must include:  (1) your name; (2) your plan's name, address, and telephone number; (3) if applicable, the name, address, and telephone number of your attorney; and (4) any supporting papers or briefs you intend to submit in support of your objection.  Your objection must be mailed to the Court, Lead Counsel, and Defendants' Counsel at the addresses listed below so it is received by each by [**deadline**].

| Clerk of the Court | Lead Counsel | Defendants' Counsel |
|---|---|---|
| U.S. District Court for the District of Connecticut<br>Clerk of Court<br>Brien McMahon Federal Building,<br>915 Lafayette Boulevard<br>Bridgeport, CT 06604 | Marc Stanley<br>The Stanley Law Firm<br>3100 Monticello Avenue<br>Suite 770<br>Dallas, TX 75205<br><br>William Bloss<br>Koskoff Koskoff & Bieder, PC<br>350 Fairfield Avenue<br>Bridgeport, CT 06604 | Charles Platt<br>WilmerHale<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007 |

If you or your attorney would like to attend and speak at the Fairness Hearing about your objection, you must file a notice of intent to appear with your objection (see Question 20).  You cannot object, or attend and speak at the Fairness Hearing,  if you have asked to be excluded from the Settlement.

## THE COURT'S FAIRNESS HEARING

**18. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing on **[date]**, 2015, at **[time]** __.m., in Courtroom ___ of the United States District Court for the District of Connecticut, Brien McMahon Federal Building, 915 Lafayette Boulevard, Bridgeport, CT 06604.  At the hearing, the Court will determine whether the proposed Settlement is fair, reasonable, and adequate, and whether it should be approved.  The date and time of the hearing may be changed or continued by the Court without further notice.

**19. Do I have to attend the Fairness Hearing?**

No.  However, you are welcome to attend at your own expense.  If you file an objection to the Settlement, you do not have to go to Court to talk about it.  As long as your objection includes all of the information listed in Question 17, above, and is received by **[date]**, the Court will consider it.

**20. May I speak at the Fairness Hearing?**

You may ask the Court for permission to speak at the hearing.  To do so you must include a notice of intent to appear with your objection.  Your notice of intent to appear must include:  (1) the names and contact information for those individuals who plan to appear; (2) a statement of membership in the Class; (3) a description of the specific grounds for your objection; and (4) all papers you intend to present to the Court in opposition to the Settlement Stipulation and Release.

## IF YOU DO NOTHING

**21. What happens if I do nothing at all?**

If you do nothing and the Court approves the Settlement, you will not receive a Settlement payment and you will be bound by the Released Claims listed in Question 9.  Generally, you and your Plan, Participants, and beneficiaries will give up your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Nationwide and the Released Parties about the legal issues or claims resolved and released by this Settlement.

## GETTING MORE INFORMATION

**22. How can I get more information?**

Visit the website, www.nwclassaction.com where you will find the Settlement Stipulation and Release and several court filings and orders that provide significant additional information.  You may also call 1-866-894-0420 or write to *Haddock v. Nationwide* Class Action Administrator, P.O. Box 43247, Providence, RI 02940-3247.

DATED: **[Month/Day]**, 2015

**THIS NOTICE HAS BEEN SENT TO YOU BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

# Exhibit D

## <u>CLAIM FORM</u>

In order to receive a distribution from the Settlement, the Trustee(s) of the Plan ("Plan Trustee") must complete this form[1] and return it to the following address on or before **[Month, Day]**, 2015:

> **[Settlement Administrator Name]**
> Attn:  Nationwide ERISA Settlement
> **[Settlement Administrator Address]**

## I.      Information About the Plan

Name of the Plan: _____

Plan Tax ID Number: _____

Group Number:  _____

Name of Plan Trustee(s): _____

Mailing Address: _____

**City, State Zip:**_____

## II.     Questions About the Plan and Directions Regarding the Claim Proceeds

**Question 1:**  Is the Plan currently in existence?  (Circle One)

Yes            No

If your answer is "Yes," please continue to Question 2.

If your answer to this Question 1is "No," please skip to Question 3.

**Question 2:**  Did the Plan have a group variable annuity contract or individual variable annuity contract(s) with Nationwide Life Insurance Company ("Nationwide Life") between January 1, 1996 and September 30, 2014, or a trust, custodial, services, or program agreement and/or arrangement with Nationwide Financial Services, Inc. or its affiliates ("NFS"), between January 1, 2009 and September 30, 2014?  (If Yes, circle type below.  If No, circle "None")

A. Group          B. Individual          C. Trust          D. None

If you submit this Claim Form in connection with the Plan's group or individual variable annuity contract(s) with Nationwide Life, or its trust, custodial, services, or program agreement and/or arrangement with NFS, you hereby instruct, on behalf of the Plan and the Participants, that the

---

[1] If you have questions about how to fill out this form, please contact the Settlement Administrator at 1-866-894-0420.

Settlement Administrator distribute any Settlement proceeds by issuing a check payable to the Plan Trustee(s).

The check should be made payable to:

Plan Trustee(s) Name (s): _____

and mailed to the following address:

Street Address:_____

City, State Zip:_____.

By giving this instruction, you hereby represent that the proceeds will be used by the Plan and the Plan Trustee(s) to pay for or defray reasonable Plan expenses, or alternatively be used in full compliance with ERISA law and regulations and will only be used for a purpose that fully complies with ERISA law and regulations.  Please consult your legal advisor or Class Counsel if you have questions about how the proceeds may be used.

**Question 3:**  If the Plan is no longer in existence, did the former Plan have a group or individual variable annuity contract(s) with Nationwide Life Insurance Company ("Nationwide Life") between January 1, 1996 and September 30, 2014, or a trust, custodial, services, or program agreement and/or arrangement with Nationwide Financial Services, Inc. or its affiliates ("NFS") between January 1, 2009 and September 30, 2014?  (If Yes, circle type below.  If No, circle "None")

          A.  Group                 B.  Individual              C.  Trust                 D.  None

If you submit this Claim Form in connection with the former Plan's group or individual variable annuity contract(s) with Nationwide Life, or its trust, custodial, services, or program agreement and/or arrangement with NFS, you hereby instruct, on behalf of the Plan and the Participants, that the Settlement Administrator distribute any Settlement proceeds by issuing a check payable to the Plan Trustee(s).

The check should be made payable to:

Plan Trustee(s) Name (s): _____

and mailed to the following address:

Street Address:_____

City, State Zip:_____

By giving this instruction, you hereby represent that the proceeds will be used by the former Plan and its Plan Trustee(s) in full compliance with ERISA law and regulations, and will only be used for a purpose that fully complies with ERISA law and regulations.  Please consult your legal advisor or Class Counsel if you have questions about how the proceeds may be used.

## III.    Certification

By signing and submitting this Claim Form, you hereby certify and represent as follows, under penalty of perjury:

1.   I am/We are or were the Plan Trustee(s) of a retirement plan covered by ERISA that had a group variable annuity contract, or whose Participants had individual variable annuity contract(s), issued by Nationwide Life, at any time from January 1, 1996 to September 30, 2014; or that had a trust, custodial, services, or program agreement and/or arrangement issued by NFS at any time from January 1, 2009 to September 30, 2014.

2.   I/We have read and understood the questions raised above, and the answers provided in response to those questions are true to the best of my/our knowledge.

3.   I/We have consulted with all the legal, financial, and other advisors necessary to make a final decision with respect to this Settlement and its consequences, and acknowledge and agree that I am/we are making the final decision and not relying on any advice from Nationwide Life or NFS, or their representatives, or being influenced in any way by Nationwide Life, NFS, or their representatives.

4.   I/We have reviewed the Settlement and have determined that (a) the Settlement's terms, including the scope of the release of claims, the amount of cash and the value of any non-cash assets received by the Plan, and the amount of Attorneys' Fees and Attorneys' Expenses, and other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone; (b) the terms and conditions of the Settlement are no less favorable to the Plan than comparable arms-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances; and (c) the Settlement is not part of an agreement, arrangement, or understanding designed to benefit a party in interest.

5.   I/We have the authority to act on behalf of the current or former Plan and its Participants;

6.   I/We have fully informed the Participants of the current or former Plan of all the terms of the Settlement, and have obtained their knowing and voluntary approval to enter into this Settlement, to dismiss the Litigation with prejudice, and to provide the Release to Nationwide set forth in the Settlement Stipulation and Release on behalf of the Plan and Participants;

7.   Pursuant to my/our responsibility to act on behalf of the current or former Plans and its Participants, I/we will distribute the funds received under this Settlement in the best interests of the current or former Plan and the Plan Participants, in accordance with ERISA, as described in Section II above, and in compliance with the Settlement Stipulation and Release.  I/We will not bring any lawsuit, or otherwise hold Nationwide Life, NFS, and the Released Parties accountable, for any issues relating to the allocation or distribution of the settlement proceeds;

8.   I/We acknowledge and agree that any monies paid pursuant to this Claim Form do not constitute plan assets or retirement savings prior to the receipt and acceptance of the monies by the undersigned or a duly authorized designee;

9.   I/We acknowledge and agree to the Release of Nationwide Life, NFS, and the Released Parties that is set forth in the Settlement Stipulation and Release on behalf of the current or former Plan and its Participants.

-3-

10. I/We acknowledge and accept the solicitation, negotiation, arrangement, receipt, or retention of any Mutual Fund Payments by Nationwide Life, NFS, and the Released Parties presently and in the future, and agree not to bring a lawsuit on the basis of any such solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund Payments in the future.

Signature(s) of Authorized Plan Trustee(s):

_____

Print Name                              Signature                              Date

_____

Print Name                              Signature                              Date

_____

Print Name                              Signature                              Date

# Exhibit E

**Plan of Allocation**

The Net Settlement Fund will be allocated to all Class Members according to the following Plan of Allocation.  The Class Members will be divided into two sub-classes:  (A) the Annuity Contracts Sub-Class and (B) the Trust Platform Sub-Class.  Each Class Member who submits a completed, valid, and timely Claim Form will receive a distribution based on steps listed below.  The Plan of Allocation will be applied only after the Claim Period has expired, and the Net Settlement Fund will be divided among those Class Members that submit valid Claim Forms based on their share of the Fund under the Plan.  The Plan of Allocation is based on readily-available data from Defendants' computer systems.  Capitalized terms used below have the same meaning as they do in the Settlement Stipulation and Release.

**A.       Annuity Contracts Sub-Class**

Step 1:  Identify all members of the Annuity Contracts Sub-Class; that is, all trustees of all employee pension benefit plans covered by ERISA which had group variable annuity contracts with Nationwide Life or whose participants had individual variable annuity contracts with Nationwide Life at any time from January 1, 1996, or the first date Nationwide Life began receiving payments from mutual funds based on a percentage of the assets invested in the funds by Nationwide Life, whichever came first, to the date of September 30, 2014.

Step 2:  Identify the annual assets held in Annuity Contracts by each member of the Annuity Contracts Sub-Class.  The Settlement Administrator will confirm the Plan assets that were held in the Nationwide Life Annuity Contracts, and that were associated with the payments by Mutual Funds at issue in this Litigation.  The Settlement Administrator will confirm those applicable Plan assets for each year, as of year-end, for each Annuity Contracts Sub-Class Member's Plan and/or Plan Participants held in the Annuity Contracts with Nationwide Life from January 1, 1996 through September 30, 2014 (the "Yearly Applicable Assets").

Step 3:  The Yearly Applicable Assets of each of the Annuity Contracts Sub-Class Members will be adjusted on a year-by-year basis by applying the following factors:

- Contract Type:  A factor of twenty-nine (29) will be assigned each year that an Annuity Contracts Sub-Class Member's Plans and/or Plan Participants held individual annuity contracts.  A factor of two (2) will be assigned each year that an Annuity Contracts Sub-Class Member's Plans and/or Plan Participants held group annuity contracts.  These factors reflect the evidence that Plans and/or Plan Participants holding individual annuity contracts received no direct "pass through" of Mutual Fund Payments in the form of reduced administrative fees.

- Disclosures:  A factor of two (2) will be assigned each year that an Annuity Contracts Sub-Class Member's Plan and/or Plan Participants held Annuity Contracts in the years from 1996 through 2003.  A factor of one (1) will be assigned each year that an Annuity Contracts Sub-Class Member's Plan and/or Plan Participants held Annuity Contracts in the years from 2004 through September 30, 2014.  These factors reflect the evidence that Plans and/or Plan Participants holding Annuity Contracts in the years before 2004 received less formal disclosure regarding Mutual Fund Payments than Plans and/or Plan

1

Participants holding Annuity Contracts in the years after 2003, and thus had relatively stronger liability claims.

- Group Annuity Pass Through:  A factor of two (2) will be assigned for each year that an Annuity Contracts Sub-Class Member's Plan and/or Plan Participants held group annuity contracts with assets of less than $2 million at year end.  A factor of one (1) will be assigned for each year that an Annuity Contracts Sub-Class Member's Plan and/or Plan Participants held group annuity contracts with assets of more than $2 million at year end.  These factors reflect the evidence that Plans and/or Plan Participants holding group annuity contracts with assets of more than $2 million at year end received a pass through of most, if not all, of the mutual fund payments attributable to their Plans.  Plans holding group annuity contracts with assets of less than $2 million at year end received less (and in some cases no) pass through of Mutual Fund Payments attributable to their Plans, and thus the smaller group Plans will receive more of the alleged amount in dispute than the larger group Plans.

The assignment of factors based on this methodology is represented in the chart below.

|  | Through 2003 | Post 2003 |
|---|---|---|
| Individual | 31 | 30 |
| Small Group | 6 | 5 |
| Large Group | 5 | 4 |

Step 4:  Once the Settlement Administrator has identified the number of factors assigned to each Annuity Contracts Sub-Class Member's Plan, the Settlement Administrator will sum all factors assigned each year to determine the Total Factor Points ("Total Factor Points") for each Annuity Contracts Sub-Class Member's Plan for each year.

Step 5:  The Total Factor Points will then be multiplied by an interest rate factor to determine Interest Adjusted Total Factor Points ("Interest Adjusted Total Factor Points").  This interest rate factor will be based on a simple interest rate of nine percent (9%) and reflects the allegation that the total amount in dispute issue would include a sizeable amount of prejudgment interest.

Step 6:  The Yearly Applicable Assets for each Annuity Contracts Sub-Class Member's Plan will then be multiplied by that year's Interest Adjusted Total Factor Points resulting from Step 5 to derive the Yearly Payment Allocation Assets ("Yearly Payment Allocation Assets") for each Annuity Contracts Sub-Class Member's Plan.

Step 7:  Each of the Annuity Contracts Sub-Class Member Plan's Yearly Payment Allocation Assets will then be divided by the sum of the Yearly Payment Allocation Assets for all plans that submitted valid Claim Forms, for all years, to arrive at that Plan's Yearly Estimated Payment Percentage ("Yearly Estimated Payment Percentage").

Step 8:  Each Annuity Contracts Sub-Class Member Plan's Yearly Estimated Payment Percentage will then be multiplied by the amount of the Net Settlement Fund (*i.e.* $110,000,000 minus *pro rata* Attorneys' Fees, Attorneys' Expenses, Independent Fiduciary Fees, Case

Contribution Fees, and Taxes and Tax-Related Costs) to determine the Yearly Payment ("Yearly Payment") to each Plan.  Yearly Payments to each Class Member's Plan will be summed across all years to determine the Total Payment ("Total Payment") to be made to each Annuity Contracts Sub-Class Member's Plan.

**B.    Trust Platform Sub-Class**

Step 1:  Identify all members of the Trust Platform Sub-Class; that is, all trustees of all retirement plans covered by ERISA that had Trust Platforms with NFS at any time from January 1, 2009 to September 30, 2014.

Step 2:  Identify the annual assets held in Trust Platforms by each member of the Trust Platform Sub-Class.  The Settlement Administrator will confirm the Plan assets that were held in the Nationwide Trust Platforms, and that were associated with the payments by Mutual Funds at issue in this Litigation.  The Settlement Administrator will confirm those applicable Plan assets for each year, as of year-end, for each Sub-Class Member's Plan and/or Plan Participants held in the Trust Platforms with Nationwide from January 1, 2009 through September 30, 2014 (the "Yearly Applicable Assets").

Step 3:  The Yearly Applicable Assets of each of the Trust Platform Sub-Class members will be adjusted on a year-by-year basis by applying a factor for disclosure.  A factor of one (1) (the "Trust Factor Point") will be assigned for each year that a Trust Platform Sub-Class Member's Plan held a Trust Platform during the Trust Platform Sub-Class Period.  This factor reflects the evidence that Plans and/or Plan Participants holding Trust Platforms in 2009 and thereafter received more robust formal disclosure.

Step 4:  The Trust Factor Point will then be multiplied by an interest rate factor to determine Interest Adjusted Total Factor Points ("Interest Adjusted Total Factor Points").  This interest rate factor will be based on a simple interest rate of nine percent (9%) and reflects the allegation that the total amount in dispute issue would reflect a sizeable amount of prejudgment interest.

Step 5:  The Yearly Applicable Assets for each Class Member's Plan will then be multiplied by that year's Interest Adjusted Total Factor Points resulting from Step 4 to derive the Yearly Payment Allocation Assets ("Yearly Payment Allocation Assets") for each Trust Platform Sub-Class Member's Plan.

Step 6:  Each of the Trust Platform Sub-Class Member Plan's Yearly Payment Allocation Assets will then be divided by the sum of the Yearly Payment Allocation Assets for all plans that submitted valid Claim Forms, for all years, to arrive at that Plan's Yearly Estimated Payment Percentage ("Yearly Estimated Payment Percentage").

Step 7:  Each Class Member Plan's Yearly Estimated Payment Percentage will then be multiplied by the amount of the Net Settlement Fund (*i.e.* $30,000,000 minus *pro rata* Attorneys' Fees, Attorneys' Expenses, Independent Fiduciary Fees, Case Contribution Fees, and Taxes and Tax-Related Costs) to determine the Yearly Payment ("Yearly Payment") to each Plan.  Yearly Payments to each Class Member's Plan will be summed across all years to determine the Total Payment ("Total Payment") to be made to each Trust Platform Sub-Class Member's Plan.

# Exhibit F

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| LOU HADDOCK, as trustee of the Flyte Tool & Die Company, Inc. 401-K Profit Sharing Plan, *et al.*<br><br>PLAINTIFFS,<br><br>v.<br><br>NATIONWIDE LIFE INSURANCE CO. and NATIONWIDE FINANCIAL SERVICES, INC.,<br><br>DEFENDANTS. | CIVIL ACTION NO.:<br>3:01CV1552 (SRU) |

**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT
AND APPROVING FORM AND MANNER OF NOTICE**

WHEREAS, the above-titled certified class action (the "Litigation") is pending before the Court;

WHEREAS, Plaintiffs Peter Wiberg, as trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing Plan; Alan Gouse, as trustee of the Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Seal Rehabilitation Center, Inc., Trust; Christopher Anderson, as trustee of the Anderson Law Firm, P.C. 401(k) Profit Sharing Plan and Trust, f/k/a the Anderson and Ferdon P.C. 401(k) Profit Sharing Plan; H. Grady Chandler, as trustee of the Law Offices of H. Grady Chandler, P.C., 401(k) Profit Sharing Plan and Trust; and Christopher M. McKeon, as trustee of the Bershtein, Volpe & McKeon, Profit Sharing Plan f/k/a the Bershtein, Lippman, Bachman & McKeon Profit Sharing Plan, each on behalf of itself and on behalf of the Class (together, the "Plaintiffs"), and Nationwide Life Insurance Company and Nationwide Financial Services, Inc. (collectively, "Defendants"), have entered into a Settlement Stipulation

1

and Release dated December 11, 2014 (the "Stipulation"), which is subject to review and approval

under Rule 23 of the Federal Rules of Civil Procedure and which, together with the exhibits

thereto, sets forth the terms and conditions for the proposed settlement of the Litigation (the

"Settlement") and the dismissal of the Litigation with prejudice;

WHEREAS, the Court has read and considered the Stipulation and exhibits thereto, and the

accompanying documents;

WHEREAS, the Counsel for Plaintiffs have submitted, and the Court has reviewed, a

motion and accompanying memorandum of law supporting preliminary approval of the proposed

Settlement; and

WHEREAS, the Parties to the Stipulation have consented to the entry of this Order, the

Court:

NOW, THEREFORE, HEREBY ORDERS, ADJUDGES AND DECREES THAT:

1.      The Court adopts all defined terms as set forth in the Stipulation for purposes of this

Order.

2.      For purposes of implementing and enforcing the terms of the Stipulation, the Court

has jurisdiction over the subject matter of the Litigation, the Plaintiffs, the Class Members, and the

Defendants.

3.      Pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, the

Litigation is properly certified as a class action for settlement purposes.  The Class is comprised of

two Sub-Classes:

a.      The Annuity Contracts Sub-Class includes all trustees of all retirement

plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA") which had

group variable annuity contracts with Nationwide Life or whose participants or plans had

2

individual variable annuity contracts with Nationwide Life at any time from January 1, 1996, or the first date Nationwide Life began receiving payments from mutual funds based on a percentage of the assets invested in the funds by Nationwide Life, whichever came first, to the date of September 30, 2014.

   b. The Trust Platform Sub-Class includes all trustees of all retirement plans covered by ERISA that had trust, custodial, services, or program agreements and/or arrangements with NFS at any time from January 1, 2009 to the date of September 30, 2014.

   4. The Court hereby preliminarily appoints Plaintiffs Peter Wiberg, trustee of the Crown Tool & Die Co. Inc. Salary Deferral Profit Sharing Plan; Alan Gouse, trustee of the Greater Hartford Easter Seal Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension Plan for the Employees of Hartford Easter Seal Rehabilitation Center, Inc., Trust; Christopher Anderson, trustee of the Anderson Law Firm, P.C. 401(k) Profit Sharing Plan and Trust, f/k/a the Anderson and Ferdon P.C. 401(k) Profit Sharing Plan; and H. Grady Chandler, trustee of the Law Offices of H. Grady Chandler, P.C., 401(k) Profit Sharing Plan and Trust, as class representatives of the Annuity Contracts Sub-Class for Settlement purposes only.  The Court hereby preliminarily appoints Christopher M. McKeon, trustee of the Bershtein, Volpe & McKeon, Profit Sharing Plan f/k/a the Bershtein, Lippman, Bachman & McKeon Profit Sharing Plan, as class representative of the Trust Platform Sub-Class for Settlement purposes only.

   5. The Court hereby preliminarily appoints Plaintiffs' Counsel as Counsel for the Annuity Contract Sub-Class and the Trust Platform Sub-Class for Settlement purposes only.  Marc R. Stanley, of the Stanley Law Group, and William Bloss of Koskoff, Koskoff & Bieder, PC, are preliminarily appointed Lead Settlement Counsel.

6.      The preliminary decisions in this Order are not final, and are subject to further review at the Fairness Hearing described below.

7.      The Court preliminarily finds the prerequisites to a class action under Rule 23 have been satisfied for Settlement purposes only.  In particular, the Court preliminarily finds: (a) the members of the Sub-Classes are so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Sub-Classes, which predominate over any individual questions; (c) Named Plaintiffs Wiberg, Gouse, Anderson, and Chandler are adequate representatives of the Annuity Contracts Sub-Class, and Named Plaintiff McKeon is an adequate representative of the Trust Platform Sub-Class; (d) the claims of Named Plaintiffs Wiberg, Gouse, Anderson, and Chandler are typical of the claims of the other members of the Annuity Contracts Sub-Class, and the claims of Named Plaintiff McKeon are typical of the other members of the Trust Platform Sub-Class; (e) the questions of law and fact common to the members of the Sub-Classes predominate over any questions affecting only individual members the Sub-Classes; (f) Named Plaintiffs and their Counsel have fairly and adequately represented and protected the interests of the Class Members; and (g) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering (i) the interests of the Class Members in individually controlling the prosecution of the separate actions, (ii) the extent and nature of any litigation concerning the controversy already commenced by Class Members, (iii) the desirability or undesirability of continuing the litigation of these claims in this particular forum, and (iv) the difficulties likely to be encountered in the management of the class action.

8.      The terms of the Stipulation, and the Settlement of the Litigation as set forth therein, are preliminarily approved in all respects as fair, reasonable, and adequate.

9.     The Court approves, in form and content, the Published Class Notice and the Class Notice annexed as Exhibits B and C, respectively, to the Stipulation, and finds that the publication of the Published Class Notice, and the dissemination, mailing, and Internet-posting of the Class Notice, in the form set forth in Exhibits B and C to the Stipulation, and as set forth herein, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, the Constitution of the United States, and any other applicable law, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

10.     Kurtzman Carson Consultants LLC ("KCC") is hereby appointed Settlement Administrator to supervise and administer the Notice process, as well as to oversee the administration of the Settlement, as more fully set forth in the Stipulation.

11.     By the fifteenth (15th) day after the entry of this Order (the "Notice Date"), the Settlement Administrator shall have completed its mailing of the Class Notice and Claim Form to Class Members in accordance with Section (I)(2) of the Stipulation.  The Settlement Administrator shall also arrange for publication of the Published Class Notice in the National Edition of the *New York Times*, in accordance with the instructions of Class Counsel, within seven (7) days of the mailing of the Class Notice.

12.     Any Class Member may request exclusion from the Settlement by completing and personally signing and delivering a written Exclusion Request.  Exclusion Requests must be received by the Settlement Administrator by _____, 2015, which is sixty (60) days after the Notice Date.

13.     Any Class Member who has not submitted an Exclusion Request may object to the proposed Settlement, or any aspect of the Stipulation, or the amount of Attorneys' Fees and Expenses that Plaintiffs' Counsel have indicated they intend to seek.  Any Class member that

objects must file with the Court written notice of objection, together with any supporting written or documentary materials with the Clerk of the Court on or before _____, which is sixty (60) days after the Notice Date.  Any objection must be personally signed by the Class Member, and comply with the requirements set forth in the Class Notice and the Stipulation.

14.     All papers in support of the Settlement, including responses to any objections thereto, shall be filed with the Court and served on or before _____, which is seventy (70) days after the Notice Date.

15.     Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, a hearing (the "Fairness Hearing") shall be held before the Court on _____ at ___:___ __.m. in Courtroom ___ of the United States District Court for the District of Connecticut, Brien McMahon Federal Building, 915 Lafayette Boulevard, Bridgeport, CT 06604, at which the Court will:

a.     determine whether the Annuity Contracts Sub-Class and the Trust Platform Sub-Class should be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure for Settlement purposes;

b.     determine whether the terms of the Stipulation and the proposed Settlement provided for therein are fair, reasonable, adequate for purposes of Rule 23 of the Federal Rules of Civil Procedure, and in the best interests of the Class and should be approved by the Court;

c.     consider the applications for Attorneys' Fees and Expenses, and Case Contribution Fees; and

d.     hear and rule upon such other matters as the Court may deem appropriate.

16.     The Court reserves the right to approve the Settlement with such modification(s) as may be agreed to by the Parties and without further notice to the Class Members.  Upon agreement

of the Parties, the Parties shall be permitted to make any non-substantive corrections or changes to the Class Notice and other Settlement documents without seeking further approval of the Court.

17.     Pending the final determination of the fairness, reasonableness, and adequacy of the proposed Settlement, no Class Member may, either directly, representatively, or in any other capacity, prosecute, institute, commence, support, join in, encourage, continue, or assist in any Claim or Cause of Action (including Unknown Claims) against Nationwide or any other Released Party that is based upon or related to, directly or indirectly, in whole or in part:  (a) the allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation, including, but not limited to, the solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund Payments; or (b) the Released Conduct.

18.     This Order, the Stipulation of Settlement and Release, and any negotiations, discussions, or proceedings in connection with this Settlement shall not be offered or received against Nationwide as evidence of, or deemed to be any admission or confession by Nationwide, of the truth of any of the Claims or Causes of Action, allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation, including, but not limited to, the solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund Payments; or (b) the Released Conduct.


Dated: _____, 2014
          Bridgeport, Connecticut



                                        _____
                                        The Honorable Stefan R. Underhill
                                        United States District Judge

# Exhibit G

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LOU HADDOCK, as trustee of the Flyte Tool & Die
Company, Inc. 401-K Profit Sharing Plan, *et al.*

PLAINTIFFS,

v.

NATIONWIDE LIFE INSURANCE CO. and
NATIONWIDE FINANCIAL SERVICES, INC.,

DEFENDANTS.

CIVIL ACTION NO.:
3:01CV1552 (SRU)

## [PROPOSED] FINAL ORDER AND JUDGMENT

On this _____day of _____, 2015, a hearing having been held before this

Court to determine:  (a) whether the Annuity Contracts Sub-Class and the Trust Platform

Sub-Class should be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure for

Settlement purposes; (b) whether the Settlement Stipulation and Release, and the terms provided

therein, should be approved as fair, reasonable, and adequate for purposes of Rule 23 of the

Federal Rules of Civil Procedure, and in the best interests of the Class; and (c) whether the

application of Plaintiff's Counsel for an award of Attorneys' Fees and Expenses should be

approved.  The Court having considered all matters and materials submitted to it at the hearing and

otherwise,

NOW, THEREFORE, HEREBY ORDERS, ADJUDGES AND DECREES THAT:

1.      The Court adopts all defined terms as set forth in the Settlement Stipulation and

Release (the "Stipulation") for purposes of this Judgment.

2.      For purposes of implementing and enforcing the terms of the Stipulation, the Court

has jurisdiction over the subject matter of the Litigation, Plaintiffs, the Class Members, and

Defendants Nationwide Life Insurance Company and Nationwide Financial Services, Inc.

(collectively, "Defendants").

3.      Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the

Litigation is properly and finally certified as a class action for settlement purposes.  The

Sub-Classes for purposes of settlement are defined as follows:

>   Annuity Contracts Sub-Class:  All trustees of all retirement plans covered by
>   ERISA which had group variable annuity contracts with Nationwide Life or whose
>   participants or plans had individual variable annuity contracts with Nationwide
>   Life at any time from January 1, 1996, or the first date Nationwide Life began
>   receiving payments from mutual funds based on a percentage of the assets invested
>   in the funds by Nationwide Life, whichever came first, to the date of September 30,
>   2014.
>
>   Trust Platform Sub-Class:  All trustees of all retirement plans covered by ERISA
>   that had trust, custodial, services, or program agreements and/or arrangements with
>   NFS at any time from January 1, 2009 to September 30, 2014.

4.      The Court appoints Plaintiffs Peter Wiberg, trustee of the Crown Tool & Die Co.

Inc. Salary Deferral Profit Sharing Plan; Alan Gouse, trustee of the Greater Hartford Easter Seal

Rehabilitation Center, Inc., Tax Sheltered Annuity Plan and the Money Accumulation Pension

Plan for the Employees of Hartford Easter Seal Rehabilitation Center, Inc., Trust; Christopher

Anderson, trustee of the Anderson Law Firm, P.C. 401(k) Profit Sharing Plan and Trust, f/k/a the

Anderson and Ferdon P.C. 401(k) Profit Sharing Plan; and H. Grady Chandler, trustee of the Law

Offices of H. Grady Chandler, P.C., 401(k) Profit Sharing Plan and Trust, as class representatives

of the Annuity Contracts Sub-Class for Settlement purposes only.  The Court hereby appoints

Christopher M. McKeon, trustee of the Bershtein, Volpe & McKeon, Profit Sharing Plan f/k/a the

Bershtein, Lippman, Bachman & McKeon Profit Sharing Plan, as class representative of the Trust

Platform Sub-Class for Settlement purposes only.

5.      The Court appoints Plaintiffs' Counsel as Counsel for the Annuity Contract

Sub-Class and the Trust Platform Sub-Class for settlement purposes only.  Marc R. Stanley, of the

Stanley Law Group, and William Bloss of Koskoff, Koskoff & Bieder, PC, are appointed Lead Settlement Counsel.

6.      With respect to the Class, this Court finds and concludes that for purposes of Settlement:  (a) the members of the Sub-Classes are so numerous that joinder of all Class Members is impracticable; (b) there are questions of law and fact common to the Sub-Classes, which predominate over any individual questions; (c) Named Plaintiffs Wiberg, Gouse, Anderson, and Chandler are adequate representatives of the Annuity Sub-Class Class Members, and Named Plaintiff McKeon is an adequate representative of the Trust Platform Sub-Class Members; (d) the claims of Named Plaintiffs Wiberg, Gouse, Anderson, and Chandler are typical of the claims of the other members of the Annuity Contracts Sub-Class, and the claims of Named Plaintiff McKeon are typical of the claims of the other members of the Trust Platform Sub-Class; (e) the questions of law and fact common to the members of the Sub-Classes predominate over any questions affecting only individual members the Sub-Classes; (f) Named Plaintiffs and their Counsel have fairly and adequately represented and protected the interests of the Class Members; and (g) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering:  (i) the interests of the Class Members in individually controlling the prosecution of the separate actions, (ii) the extent and nature of any litigation concerning the controversy already commenced by Class Members, (iii) the desirability or undesirability of continuing the litigation of these claims in this particular forum, and (iv) the difficulties likely to be encountered in the management of the class action.

7.      The Court finds that distribution, mailing, and Internet-posting of the Class Notice and the Published Class Notice, as provided for in the Preliminary Approval Order, constituted the best notice practicable under the circumstances to all persons in the Class; that the Class Notice

provided full and accurate information concerning the proposed Settlement and the Litigation, and

further provided due and adequate notice of the proceedings regarding the Settlement; and that the

Class Notice and Published Class Notice otherwise fully met the requirements of Rule 23 of the

Federal Rules of Civil Procedure, due process, the Constitution of the United States, and any other

applicable law.

8.      Defendants' notice to Federal and State regulators complied with the notice

requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.

9.      The Settlement of the Litigation as set forth in the Stipulation is approved in all

respects as fair, reasonable, and adequate, and in the best interests of the Class.  The Court has

reviewed all written objections filed by Class Members, and has heard any objections from any

objector who appeared in Court, and finds that the objections filed fail to establish that the

Settlement is not fair, reasonable, and adequate or that the Settlement is not in the best interests of

the Class.  [Alternatively *The Court notes that no written objections were filed by Class Members*

*and that no objector appeared before the Court at the Settlement Hearing, and thus there is no*

*evidence establishing that the Settlement is not fair, reasonable, and adequate or that the*

*Settlement is not in the best interests of the Class*.]  Accordingly, the Parties are directed to

consummate and perform the Stipulation in accordance with all applicable terms and provisions.

10.      The Court finds that the Class Members are fiduciaries of the ERISA-covered plans

they represent, they bring this action on behalf of the Plans, their Participants and beneficiaries,

and that they have the authority to bind the Plans and their Participants and beneficiaries to all the

terms and conditions of the Stipulation and Settlement.  The Court finds that the Class Members

have a legal obligation under ERISA to act in the interest of the Plans, their Participants, and their

beneficiaries, that the interests of the members of the Class are therefore in privity with the

interests of the Plans, their Participants and their beneficiaries, and all private parties authorized to sue under ERISA sections 502(a)(2) and (3), that such private parties are adequately represented by the Class Members, and all parties authorized to sue under ERISA sections 502(a)(2) and (3) are hereby bound by the Stipulation, Settlement, and this Order.  The Court further finds that the members of the Class have a legal obligation under ERISA to act in the best interest of the plans, their Participants and beneficiaries in exercising any discretion in the settlement of this action and disposition of any Net Settlement Fund received by their Plans.  Finally, the Court finds that none of the Parties has engaged in any prohibited transaction or otherwise violated ERISA by entering into this Settlement, and by performing the terms of the Stipulation, or receiving and disposing of the Net Settlement Fund, if they do so in accordance with the terms of the Stipulation and/or the Plan of Allocation.

11.     The Amended Complaint and the Litigation, and all Claims and Causes of Action (including Unknown Claims) that are based upon or related to, directly or indirectly, in whole or in part, (a) the allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation, including, but not limited to, the solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund Payments; or (b) the Released Conduct, are hereby dismissed on the merits with prejudice as to Defendants in accordance with Rule 23(e) of the Federal Rules of Civil Procedure.

12.     As a result of Nationwide's agreement to implement the actions described in Section F of the Stipulation, and for so long as Nationwide continues to abide by the practices described in Section F of the Stipulation, the Court finds that Nationwide is not a fiduciary within the meaning of the common law and ERISA, including any subsection of Section (3)(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and that Nationwide's receipt of Mutual Fund Payments, and

the practice of revenue sharing, do not constitute a breach of any fiduciary duty or any prohibited

transaction under the common law and ERISA, including Section 404 or Section 406 of ERISA,

29 U.S.C. §§ 1104 and 1106, because:

(a)     Nationwide does not exercise authority or control respecting the

management or disposition of any assets of any Plan when Nationwide solicits, negotiates,

arranges for, receives, or retains Mutual Fund Payments;

(b)     Nationwide does not have discretionary authority or discretionary

responsibility in the administration of any Plan when Nationwide solicits, negotiates, arranges for,

receives, or retains any Mutual Fund Payments;

(c)     Nationwide does not exercise any discretionary authority or any

discretionary control respecting management of any Plan when Nationwide solicits, negotiates,

arranges for, receives, or retains Mutual Fund Payments; and

(d)     Nationwide does not render investment advice for a fee or other

compensation, directly or indirectly, nor does it have any authority or responsibility to do so, when

Nationwide solicits, negotiates, arranges for, receives, or retains Mutual Fund Payments.

13.     The Court further finds that Nationwide's compliance with the terms of the

Stipulation (including entering into this Settlement) shall not create any common law or ERISA

fiduciary duty, or constitute a breach of fiduciary duty or prohibited transaction in violation of the

common law or ERISA, including Sections 404 or 406 of ERISA, 29 U.S.C. §§ 1104, 1106.  In

entering these findings, the Court is not finding or implying that, in the absence of the changes

described in Section F of the Stipulation, Nationwide was a fiduciary with respect to soliciting,

negotiating, arranging for, receiving, or retaining Mutual Fund Payments, breached any fiduciary

duty, violated any prohibited transaction rule, or was otherwise in violation of the common law or ERISA in any respect.

14.     When this Settlement becomes Final, Plaintiffs and each of the Class Members, and the Plans and Plan Participants they represent, will be bound to the fullest extent permissible under the law to have fully, finally, and forever released, relinquished, and discharged Nationwide and all other Released Parties from any and all Claims or Causes of Action (including Unknown Claims) that are based upon or related to, directly or indirectly, in whole or in part:  (a) the allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation, including, but not limited to, the solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund Payments; or (b) the Released Conduct.

15.     When this Settlement becomes Final, Plaintiffs and each of the Class Members, and the Plans and Participants they represent, shall have expressly waived any and all provisions, rights and benefits conferred by any law of the United States, or any state or territory of the United States, or principle of common law, which are similar, comparable, or equivalent to California Civil Code §1542.  In particular, California Civil Code§ 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO
> CLAIMS WHICH THE CREDITOR DOES NOT KNOW
> OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE, WHICH, IF
> KNOWN BY HIM OR HER, MUST HAVE
> MATERIALLY AFFECTED HIS OR HER
> SETTLEMENT WITH THE DEBTOR.

Plaintiffs and each of the Class Members, and the Plans and Participants they represent, expressly waive the rights and benefits conferred by this Section.  They understand and acknowledge that they may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes or has reason to believe to be true with respect to the subject matter of the

Release described above.  Nevertheless, Plaintiffs and each of the Class Members, and the Plans and Participants they represent, expressly, fully, finally, and forever settle, discharge, and release any and all Claims or Causes of Action (including Unknown Claims) in this Release, including Unknown Claims, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future (including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts) that are based upon or related to, directly or indirectly, (a) the allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation, including, but not limited to, the solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund Payments; or (b) the Released Conduct.  Plaintiffs and each of the Class Members, and the Plans and Participants they represent, shall have acknowledged that the foregoing waiver was separately bargained for and a key element of the Settlement of which this Release is a part.

16.     When this Settlement becomes Final, Plaintiffs and each of the Class Members, and the Plans and Plan Participants they represent, will be bound by this Stipulation and have agreed and covenanted not to file, encourage, support, join in, continue, assist in, or pursue any Claim or Cause of Action (including Unknown Claims) against Nationwide Life Insurance Company, Nationwide Financial Services, Inc., or any other Released Party that is based upon or related to, directly or indirectly, in whole or in part:  (a) the allegations, facts, subjects, or issues that were or could have been set forth or raised in the Litigation, including, but not limited to, the solicitation, negotiation, arrangement, receipt, or retention of Mutual Fund Payments; or (b) the Released Conduct.  Plaintiffs, and each of the Class Members and the Plans and Plan Participants they

represent, further have acknowledged and accepted presently and in the future Nationwide's

solicitation, negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual

Fund Payments currently in effect in connection with their retirement products, and agree not to

bring a lawsuit in the future on the basis of any such solicitation, negotiation, arrangement, receipt,

retention, or other conduct with regard to Mutual Fund Payments currently in effect.

17.     When this Settlement becomes Final, Plaintiffs and each of the Class Members, and

the Plans and Plan Participants they represent, shall be forever barred and enjoined from

commencing, instituting, joining in, continuing, or prosecuting against Nationwide Life Insurance

Company, Nationwide Financial Services, Inc., and all other Released Parties, any and all past,

present, and future Claims or Causes of Action (including Unknown Claims) that are based upon

or related to, directly or indirectly, in whole or in part:  (a) the allegations, facts, subjects, or issues

that were or could have been set forth or raised in the Litigation, including the solicitation,

negotiation, arrangement, receipt, retention, or other conduct with regard to Mutual Fund

Payments; or (b) the Released Conduct.

18.     No Class Member, or the Plans and Participants they represent, shall have any

Claims or Causes of Action (including Unknown Claims) against Nationwide Life Insurance

Company, Nationwide Financial Services, Inc., any other Released Party, Nationwide's Counsel,

or any other agent designated by any of the foregoing, based on the Plan of Allocation or on

distributions made in accordance with the Plan of Allocation.

19.     Any order or appeal relating to Attorneys' Fees, Attorneys' Expenses, or to the

allocation or distribution of the Settlement Amount, shall not operate to terminate or cancel the

Settlement, the Settlement Stipulation and Release, or affect or delay the finality of this Judgment.

20.     The Parties are to bear their own costs, except as otherwise provided in the Settlement, the Settlement Stipulation and Release, or the terms of this Order.

21.     In the event that the Settlement fails to become Final in accordance with its terms, then this Judgment shall be rendered null and void, and shall be vacated and, in such event, all orders entered in connection with the Settlement shall be null and void.  In such event, the findings herein shall also be null and void, and the Parties shall be restored to their respective positions in the Litigation on the date immediately prior to the entry of the Stipulation.  In such event, the terms and provisions of the Stipulation shall have no further force and effect with respect to the Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and this Judgment, the Preliminary Approval Order, and the Settlement Stipulation and Release, and any other order or decision issued or filed in connection with this Settlement, shall be treated as vacated, *nunc pro tunc,* provided however, that the obligations of Plaintiffs' Counsel in Section J of the Stipulation to return any and all attorneys' fees and expenses paid by Defendants, plus interest, will continue to have full force and effect, will be fully enforceable by Defendants, and will *not* be vacated.

22.     In recognition of their work, the time and expenses incurred on behalf of the Class Members and the value of the results achieved on behalf of the Class Members, pursuant to the terms of the Settlement Stipulation and Release, the Class Representatives shall each be entitled to receive a Case Contribution Fee of $_____, and Class Counsel shall be entitled to receive reasonable Attorneys' Fees in the amount of $_____, plus Attorneys' Expenses not to exceed $_____.

23.     The Lead Settlement Counsel shall allocate the Attorneys' Fees between Plaintiffs' Counsel in a manner that the Lead Settlement Counsel in good faith believes reflects the

contributions of such counsel to the initiation, prosecution, and settlement of the Litigation.  The Lead Settlement Counsel shall also allocate the Case Contribution Fees to the Class Representatives as directed by the Court.  Any disputes regarding Attorneys' Fees or the Case Contribution Fee shall be resolved by the Court.

24.     The Stipulation and the Settlement, whether or not consummated, and any negotiations, discussions or proceedings in connection with the Stipulation or the Settlement shall not be used, offered, or admissible in any proceeding for any purpose, including but not limited to:

(a)     Offered, referred to, or received against Nationwide as evidence of, or construed as or deemed to be evidence of any presumption, concession, or admission by Nationwide of the truth of, any fact alleged by Plaintiffs, any Class Member, their Plans or Plan Participants, or any other persons, or to the validity of any Claims or Causes of Action (including Unknown Claims) that have been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation, or of any liability, negligence, fault, or wrongdoing of Nationwide;

(b)     Offered, referred to, or received against Nationwide as evidence of, or as a presumption, concession, or admission of the truth of, any liability, duty, breach of a duty, misrepresentation or omission to state by Nationwide, or against Plaintiffs as evidence of any infirmity in the claims of Plaintiffs;

(c)     Offered, referred to, or received against Nationwide as evidence of, or as a presumption, concession, or admission of the truth of, any action or failure to act; and

(d)     Construed against Nationwide or Plaintiffs as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial.

25.     Without affecting the finality of this Judgment in any way, the Court shall retain exclusive jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and Defendants, Plaintiffs, the Class Members, and the Plans and Plan Participants they represent, submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of the Stipulation.  All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until the funds are distributed in accordance with the Stipulation.

Dated: _____, 2015
            Bridgeport, Connecticut


_____
The Honorable Stefan R. Underhill
United States District Judge

# Exhibit H

# Fee Disclosure

Case: **ABC SAMPLE PLAN**                                    Number: XXX-XXXXX

As of: 11/14/2014

We offer full disclosure of all the fees associated with our retirement plans. Refer to the Fee Explanation Guide for details about these charges.

## Expense Ratio

View: Core Funds Only

| Fund | Fund Code | Current | | Previous |
| --- | --- | --- | --- | --- |
| | | Gross Percentage | Effective Date | Gross Percentage |
| **Mutual Funds** | | | | |
| Invsco MdCap Gr A | VGRD | 1.21% | 10/08/2014 | 1.28% |
| NW Mny Mkt Inst | GMZD | 0.49% | 04/21/2014 | 0.49% |
| Pionr Hi Yld A | PHFD | 1.14% | 04/07/2014 | 1.16% |
| Jns Glbl Rsrch T | JWFD | 1.03% | 03/07/2014 | 1.03% |
| Jns Twnty T | JTFD | 0.77% | 03/07/2014 | 0.81% |
| FidAdv Gr Oppr A | FGOD | 1.23% | 03/07/2014 | 1.30% |
| FidAdv Eq Inc A | FEID | 1.00% | 03/07/2014 | 1.02% |

# Fee Disclosure

Case: **ABC SAMPLE PLAN**                                    Number: XXX-**XXXXX**

As of: 11/14/2014

We offer full disclosure of all the fees associated with our retirement plans. Refer to the Fee Explanation Guide for details about these charges.

## Fund Payment

View: Core Funds Only

| Fund | Fund Code | Current | | Previous |
| --- | --- | --- | --- | --- |
| | | Percentage | Effective Date | Percentage |
| **Mutual Funds** | | | | |
| NW Mny Mkt Inst | GMZD | 0.38% | 02/10/2012 | 0.76% |
| Invsco MdCap Gr A | VGRD | 0.50% | 02/07/2012 | 0.00% |
| Pionr Hi Yld A | PHFD | 0.55% | 02/07/2012 | 0.00% |
| Jns Glbl Rsrch T | JWFD | 0.25% | 02/07/2012 | 0.00% |
| Jns Twnty T | JTFD | 0.25% | 02/07/2012 | 0.00% |
| FidAdv Gr Oppr A | FGOD | 0.45% | 02/07/2012 | 0.00% |
| FidAdv Eq Inc A | FEID | 0.45% | 02/07/2012 | 0.00% |

## Fee Disclosure

Case: **ABC SAMPLE PLAN**                                      Number: XXX-**XXXXX**

As of: 11/14/2014

We offer full disclosure of all the fees associated with our retirement plans. Refer to the Fee Explanation
Guide for details about these charges.

## Redemption Fees

View: Core Funds Only

| Fund | Fund Code | Current | | | Previous | |
| --- | --- | --- | --- | --- | --- | --- |
| | | Percentage | Duration | Effective Date | Percentage | Duration |
| **Mutual Funds** | | | | | | |
| Jns Glbl Rsrch T | JWFD | N/A | N/A | N/A | 2.00% | 90 days |

1

# Fee Disclosure

Case: ABC SAMPLE PLAN                    Number: XXX-**XXXXX**

As of: 11/14/2014

We offer full disclosure of all the fees associated with our retirement plans. Refer to the Fee Explanation Guide for details about these charges.

## Recordkeeping Fees

The following amounts are for recordkeeping and various transactional fees that may be charged to your authorized representative or directly to the plan in accordance with the explanation guide.

| Fee | Current Amount | Effective Date | Previous Amount |
|---|---|---|---|
| Per Participant | $4.00 | N/A | N/A |
| Printed Stmt. Charge | $0.75 | N/A | N/A |
| Single Sum | $300.00 | N/A | N/A |

# Fee Disclosure

Case: ABC SAMPLE PLAN                                        Number: XXX-**XXXXX**

As of: 11/14/2014

We offer full disclosure of all the fees associated with our retirement plans. Refer to the Fee Explanation Guide for details about these charges.

The following information outlines various fees, expenses and compensation items that may be applicable to your Plan. This information provides the identification of the payor, payee, and a description of the services provided for each payment and the method of each payment. The information also describes where additional information about each particular item may be found. Please note the footnotes for important information about classification of each item as Direct or Indirect Compensation. Except as indicated, Nationwide is not acting in a fiduciary capacity for the services described below.

If changes occur to the items described below, you will be notified of any such change by Nationwide. Such notification may be in the form of a communication directing you back to this web site to review changes which will be clearly indicated. The notification may also be in the form of an Amendment to your legal documents previously executed between the Plan and Nationwide.

If the covered service provider is Nationwide Trust Company, FSB a division of Nationwide Bank and payments are made to Nationwide Life Insurance Company, Nationwide Life Insurance Company is an affiliate of Nationwide Trust Company, FSB a division of Nationwide Bank. Please consult your contract(s) with Nationwide to determine the applicable covered service provider, and additional information about services and fees.

# Fee Explanation Guide

| Description of cost/compensation | Description of services rendered and method of payment | Amount and/or location of additional disclosure information |
| --- | --- | --- |
| Asset Management Charge[1] | The purpose of the Asset Management Charge is to recover Nationwide's expenses including compensation paid to Financial Advisors, administrative service fee payments to Authorized Representatives and any expense credits issued to the Plan. Additionally, this fee pays for services provided by Nationwide including access to a wide array of investment options, recordkeeping platform, customer service, etc. The Asset Management Charge is assessed daily or monthly from Plan assets as a percentage of assets invested in mutual funds. Payments are made to Nationwide Life Insurance Company. | The Asset Management Charge, including the method of calculation is disclosed in the Group Annuity Contract. |
| Contingent Deferred Sales Charge (CDSC)[1] | A fee charged on certain withdrawals to recoup certain fees incurred by Nationwide in establishing the Plan. The fee is typically deducted from the Plan but may be billed to the Sponsor if requested. Payments are made to Nationwide Life Insurance Company. | Additional information and the CDSC percentage, if applicable to your Plan, may be found in the Group Annuity Contract. |
| Exchange Fee[1] | A fee charged to the Authorized Representative for Exchanges not processed over the Voice Response Unit (VRU) or Internet. All hard copy Exchanges sent to Nationwide may incur this fee from each "from" Fund. The fee may be billed to the Authorized Representative or deducted from the Plan based on the direction from the Authorized Representative. Exchanges processed via the VRU or Internet will not incur an Exchange Fee. Payments are made to Nationwide Life Insurance Company. | The fee is $6.00 per "from fund." Exchanges processed via the VRU or Internet will not incur an Exchange Fee. |
| Per Participant Fee[2] | A fee charged to a subcontractor, the Authorized Representative, as identified in your contract(s) with Nationwide to cover participant recordkeeping expenses incurred by Nationwide. The fee may be billed or deducted from the Plan based on the direction from the Authorized Representative. Payments are made to Nationwide Life Insurance Company. | The fee is $4.00 per year per participant. This fee may vary quarterly based on the volume of your Authorized Representative's block of business with Nationwide. You will be notified of any such change and the current amount, previous amount and change date if applicable may always be found in the Recordkeeping Fees tab of this website. |
| Single Sum Fee[2] | A fee charged to a subcontractor, the Authorized Representative, as identified in your contract(s) with Nationwide to recover recordkeeping expenses incurred by Nationwide. The fee may be billed to the Authorized Representative or deducted from the Plan based on direction from the Authorized Representative. Payments are made to Nationwide Life Insurance Company. | The fee is $300.00 per year. |
| Statement Fee[2] | A fee charged to a subcontractor, the Authorized Representative, as identified in your contract(s) with Nationwide to cover the cost of printing statements. The fee may be billed or deducted from the Plan based on direction of the Authorized Representative. Payments are made to Nationwide Life Insurance Company. | The fee is $0.75 per printed statement. |
| Redemption Fee[3] | A fee charged by fund houses to a Participant who trades in and out of certain funds within a specified time frame. The fee is paid to the applicable fund house. This fee is charged so that short term trading is not utilized to the detriment of other shareholders. Payments are made to the applicable fund house. | Additional information may be found in the applicable fund prospectus and is also available under the Trading Policies link on this website. |

| Description of cost/compensation | Description of services rendered and method of payment | Amount and/or location of additional disclosure information |
|---|---|---|
| Gross Expense Ratio[3] | The percentage of fund assets paid for operating expenses and management fees, including 12-b-1 fees, administrative fees, and all other asset-based costs incurred by the fund, except brokerage costs. Fund expenses are reflected in the fund's net asset value (NAV). Payments are made to the applicable fund house. | Additional information may be found in the applicable fund prospectus and is also available in the Expense Ratio tab of this website. |
| Mutual Fund Payments[4] | Nationwide offers investment options, and purchases and sells shares of certain mutual funds in the aggregate each day so that the performance of the investment options corresponds to the performance of those mutual funds. When the Accounts aggregate these transactions, the mutual fund does not incur the expense of processing individual transactions that it would incur if it sold its shares to the public directly. This expense is instead incurred by the Nationwide companies. The Nationwide companies also incur the distribution costs associated with selling the retirement products, which benefits the mutual funds by providing Sponsors and participants with investment options that correspond to the underlying mutual funds. An investment adviser or subadviser of a mutual fund or its affiliates may provide the Nationwide companies with wholesaling services that assist in the distribution of the retirement products and may pay to participate in educational and/or marketing activities. These activities may provide the adviser or subadviser (or their affiliates) with increased exposure to persons involved in the distribution of the retirement products. In light of the above, certain mutual funds or their affiliates make payments to the Nationwide companies (the "payments"). The amount of these payments is typically based on an agreed upon percentage times the amount of assets that the Accounts invest in the mutual funds. These payments may be used for any corporate purpose, which includes reducing the price of the retirement products, paying expenses that the Nationwide companies incur in promoting, marketing, and administering the retirement products, and achieving a profit. Payments are made to Nationwide Investment Services Corp, an affiliate, and then in full to Nationwide Life Insurance Company. | Additional information can be found in the Summary of Contract Information and applicable mutual fund prospectus. |
| Override[5] | Payments are made to the Authorized Representative, as identified in your contract(s) with Nationwide, a subcontractor, for various administrative functions which may include but are not necessarily limited to; preparing proposals, assisting in the enrollment process, processing transactions including disbursements, assisting with issue resolution, and communicating with Sponsors and/or Participants. This payment is paid from either Nationwide Life Insurance Company or Nationwide Trust Company, FSB a division of Nationwide Bank as the covered service provider. | Refer to the Third Party Compensation tab on this website for additional information. |
| Recordkeeping Charges | Nationwide includes the cost of recordkeeping services in the fees explained in this document. However, the Regulations require that if Service Provider does not assess an explicit charge that covers the cost of recordkeeping then they must provide an estimate of what the charge would be if an explicit charge did apply. Recordkeeping services include, maintaining participant balances, executing trades between Funding Vehicles, and accepting deposits, processing distributions, regulatory reporting and customer service. If Nationwide were to assess an explicit charge for these services, a reasonable estimate would be a charge of $600 annually and $3 per participant. Additionally, a charge of $250 for the first year only that the Plan is at Nationwide would apply. These charges are determined using cost accounting methodology for the services provided defined as recordkeeping services. The charges also include a profit margin to Nationwide which typically ranges from 20-30%. It is important to understand that the fees discussed in this section are a representation of charges that would apply if Nationwide were to charge an explicit charge for all recordkeeping services. These fees represented in this paragraph are NOT paid by the Plan or Sponsor and not received by Nationwide. | |
| Corrective Processing | Nationwide may receive additional compensation or recognize losses due to various corrective processing. Such corrective processing may include but is not limited to mutual fund price corrections, rounding errors, and transaction processing corrections on the part of the Participant, Sponsor, Authorized Representative, Mutual Fund providers or Nationwide. Nationwide.s general policy is to make the corrections so that the resulting impact to the Plan would be as if the error had not occurred, which includes any gains/losses due to the Plan. However, if the corrections required are due to transaction processing errors by parties other than Nationwide, we may require such parties to pay for any losses caused by completing the corrective processing. After such corrective processing, there may be gains or losses that Nationwide Life Insurance Company or Nationwide Trust Company, FSB a division of Nationwide Bank, as applicable, may recognize as Nationwide effectuates the correction in the market. | |

Footnotes:

1 Items noted above are considered direct compensation to Nationwide and are paid directly from Plan assets.

2  Items noted above are considered indirect compensation to Nationwide and are paid from the Authorized Representative, a subcontractor. However, if Nationwide is directed to deduct these items, it would then be considered direct compensation to Nationwide.

3  Items noted above are considered direct compensation to a party other than Nationwide as indicated above and are paid directly from Plan assets.

4  Items noted above are considered indirect compensation to Nationwide and not paid from Plan assets. Items are paid by the applicable subcontractor as noted above.

5  Items noted above are considered indirect compensation to a party other than Nationwide and are paid from Nationwide and not directly from Plan assets.

# Fee Disclosure

Case: **ABC SAMPLE PLAN**                                    Number: XXX-**XXXXX**

The following disclosure is provided solely so that the Sponsor may fully understand the financial interest of the Firm and/or Financial Advisor(s) in the sale of Nationwide Life Insurance contracts and Nationwide Trust Company, FSB, a division of Nationwide Bank, programs and services.

## Third Party Compensation

| Advisor Variable: GAP-54-CR77 |
|---|

**PENSION FINANCIAL SERVICE**

PENSION FINANCIAL SERVICE

**Commission/Fees paid to PENSION FINANCIAL SERVICE 100.00%**

| Program Year | On All Transfers/Deposits | On Assets |
|---|---|---|
| 10 and later | 0.00% | 0.84% |

**Override/Administrative Service Fee Paid to: PENSION FINANCIAL SVCS., INC.**

| Program Year | On All Transfers/Deposits | On Assets |
|---|---|---|
| 10 and later | 0.00% | 0.21% |

1



# FEE DISCLOSURE 404(a)(5) STATEMENT

ABC SAMPLE PLAN

CASE NUMBER:  XXX-XXXXX

*On Your Side*®

Dear Plan Participant,

You are receiving this disclosure because you are a participant or beneficiary in your company's retirement plan or you are eligible for participation. Federal law requires that plan and investment-related information be given to you.

We have selected Nationwide® as the retirement plan provider. As part of their services, they have made the necessary information available in these documents.

Inside you'll find:

- General information about the operation of the plan
- Information about administrative charges and expenses
- Information about individual expenses you may be charged as a participant or beneficiary
- A Comparative Chart of Plan Investment Options

You should review these materials carefully. Although no action is required, this information is valuable when monitoring your plan account. To access your account information or to make any changes to your account, visit **www.nationwide.com/login.**

Sincerely,

ABC SAMPLE PLAN

# PLAN AND ANNUAL FEE DISCLOSURE

This document includes important information about the expenses you pay for participating in your company's retirement plan. It's important to review this information annually. It is divided into three sections:

- Part I provides general information about the operation of the Plan
- Part II provides information about the charges for administrative expenses the Plan may be charged
- Part III provides information about individual expenses you may be charged as a Plan Participant or Beneficiary

Later in this document, you'll find what's referred to as the "Comparative Chart of Plan Investment Options" ("Comparative Chart"), which will give you information about the Plan's investment options. You can get both of these documents, plus a glossary of investment terms, on Nationwide's web site:

- If you are currently participating in the plan and have an account balance, you should log in at nationwide.com/login
- If you are an employee who is eligible to participate in the plan but have not yet enrolled, you should log in at www.nationwide.com/decide-to-enroll-in-401k.jsp. In the "Understand plan fees" section, click on "look up fees for your plan" and enter your plan number. 065-00322

2

# PLAN AND ANNUAL FEE DISCLOSURE

## Part I - General Plan Information

1. **Giving Investment Instructions.**  If you're eligible but not yet enrolled, please contact your employer for an enrollment packet. After you are enrolled in the Plan, in order to manage your Plan investments, you can call the Nationwide participant call center at 1-800-772-2182 or make your election online at nationwide.com/login. You may direct your investments according to the provision of your Plan. For more information, please see your Summary Plan Description.

2. **Limitations on instructions.**  You may give investment instructions on any day the New York Stock Exchange is open for business.

3. **Voting and other rights.**  Your rights under the Plan, and any restrictions, are subject to the terms of the Plan. Please refer to your Summary Plan Description.

4. **Designated investment alternatives.**  The Plan provides designated investment alternatives into which you can direct the investment of your plan funds. The Comparative Chart lists the designated investment alternatives and provides information regarding the alternatives.

3

## PLAN AND ANNUAL FEE DISCLOSURE

## Part II - Administrative Expenses

The Plan pays outside service providers for Plan administrative services, such as legal, accounting and recordkeeping services, unless the plan sponsor elects, at its own discretion, to pay some or all of the Plan administrative expenses. The cost for these services fluctuates each year based on a variety of factors. To the extent these expenses are not charged against forfeitures or paid by the employer, or reimbursed by a third party, the Plan charges these expenses pro rata (i.e., based on the relative size of each account), at a flat rate per participant, or based on asset size against participants' accounts.

Please note that, if applicable, a contingent deferred sales charge (CDSC) may be assessed against the plan's assets in the event the investment contract is terminated or if certain withdrawals are taken. If a CDSC is assessed, this reduces the value of your individual account. For more information, please contact your Plan Sponsor.

Some of your plan's operating expenses are paid from the total annual operating expenses of one or more of the designated investment alternatives. For more information, please see the Comparative Chart of Investment Options.

Please note that administrative service fees are subject to change.

**Fees that may be charged by Nationwide, your retirement plan provider**

**Per Participant Recordkeeping Fee – taken as a flat rate per participant**

Per Participant Fee - NW                                $4.00 per year

**Printed Statement Fee – taken at a flat rate per participant per printed statement**

Statement Fee                                          $0.75 per statement

**Single Sum Recordkeeping Fee – taken pro-rata based on the relative asset size of each account**

Single Sum Charge - NW                                 $300.00 per year

**Fees that may be charged by PENSION FINANCIAL SVCS., INC.**

Please refer to your Third Party Administrator's Annual Disclosure for additional fees.

## PLAN AND ANNUAL FEE DISCLOSURE

## Part III - Individual Expenses

The Plan imposes certain charges against individual participants' accounts, rather than against the Plan as a whole, when individual participants incur the charges. These charges may arise based on your use of a feature available under the Plan (e.g., participant distributions), or based on the application of applicable law (e.g., processing a domestic relations order in case of a divorce). In addition, buying or selling some investments may result in charges to your individual account, such as commissions or redemption fees. The Comparative Chart provides information about these expenses. The Plan charges the following:

**Fees that may be charged by Nationwide, your retirement plan provider**

### Exchange Fees

| | |
|---|---|
| Hardcopy Exchange fee | $6.00 per transaction, per "from" fund |

**Fees that may be charged by PENSION FINANCIAL SVCS., INC.**

### Withdrawal Fees

| | |
|---|---|
| HARDSHIP DISTRIBUTION PROCESSING FEE | $100.00 per transaction |
| LOAN MAINTENANCE FEE | $7.50 per quarter |
| LOAN ORIGINATION PROCESSING FEE | $75.00 per transaction |
| QDRO DISTRIBUTION PROCESSING FEE | $125.00 per transaction |
| REQUIRED MINIMUM DISTRIBUTION PROCESSING FEE | $100.00 per transaction |
| TERMINATION DISTRIBUTION PROCESSING FEE | $75.00 per transaction |

## COMPARATIVE CHART OF PLAN INVESTMENT OPTIONS

This document includes important information to help you compare the investment options in your retirement plan. Additional information about your investment options can be found on the plan's web site:

- If you are currently participating in the plan and have an account balance, you should log in at nationwide.com/login
- If you are an employee who is eligible to participate in the plan but have not yet enrolled, you should log in at www.nationwide.com/decide-to-enroll-in-401k.jsp. In the "Understand plan fees" section, click on "look up fees for your plan" and enter your plan number. 065-00322

A paper copy of this information can be obtained at no cost by contacting Nationwide at 1-800-772-2182.

Comparative Chart of Plan Investment Options Summary

The Comparative Chart is divided into two sections:

- **Part I** consists of performance information for plan investment options
- **Part II** details the fees and expenses you'll pay for investing in a particular option

6

# COMPARATIVE CHART OF PLAN INVESTMENT OPTIONS

## Part I - Performance Information

Table 1 focuses on the performance of the variable return investment options. These options do not have a fixed or stated rate of return. The table shows how these options have performed over time and allows you to compare them with an appropriate benchmark for the same time periods. A benchmark is an unmanaged group of securities whose performance is used as a standard to measure investment performance. Some well-known benchmarks are the Dow Jones Industrial Average and the S&P 500 Index. Past performance does not guarantee how the investment option will perform in the future. Your investment in these options could lose money. Information about an option's principal risks is available on the web site(s).

| Table 1 - Variable Return Investment Performance | | | | | | |
|---|---|---|---|---|---|---|
| **Name/Type of Option** | **Average Annual Total Return** As of 09/30/2014 | | | | | |
| | **1yr** | **5yr** | **10yr** | **Since Inception** | **Inception Date** | **Gross Expense Ratio** |
| **Bonds** | | | | | | |
| Pionr Hi Yld A | 4.22% | 8.78% | 5.57% | 7.41% | 02/12/1998 | 1.14% |
| BENCHMARK INDEX: Lehman Bros Agg Bd | 3.96% | 4.12% | 4.62% | | | |
| **Cash** | | | | | | |
| NW Mny Mkt Inst | -1.25% | -1.25% | 0.20% | 3.54% | 03/03/1980 | 0.49% |
| BENCHMARK INDEX: 3 Mos. T-Bill | 0.04% | 0.08% | 1.51% | | | |
| **International Stocks** | | | | | | |
| Jns Glbl Rsrch T | 11.20% | N/A | N/A | N/A | 05/15/1991 | 1.03% |
| BENCHMARK INDEX: EAFE | 4.25% | 6.56% | 6.32% | | | |
| **Large-Cap Stocks** | | | | | | |
| FidAdv Eq Inc A | 12.65% | 11.92% | 5.14% | 8.77% | 04/25/1983 | 1.00% |
| FidAdv Gr Oppr A | 10.02% | 16.65% | 6.68% | 8.94% | 11/18/1987 | 1.23% |
| Jns Twnty T | 12.98% | 9.97% | 8.36% | 10.45% | 04/30/1985 | 0.77% |
| BENCHMARK INDEX: S&P 500 | 19.73% | 15.7% | 8.11% | | | |
| **Mid-Cap Stocks** | | | | | | |
| Invsco MdCap Gr A | 10.27% | 12.23% | 8.86% | 10.76% | 12/27/1995 | 1.21% |
| BENCHMARK INDEX: S&P 400 | 11.82% | 16.37% | 10.29% | | | |

7

# COMPARATIVE CHART OF PLAN INVESTMENT OPTIONS

Fund performance is updated daily. The performance may display "N/A" during our system update, but will show the performance later in the day.

Returns are based on the current charges being applied to all historical time periods and do not include any other fees or expenses including a contingent deferred sales charge, or any plan or participant fees, if applicable. Such fees and charges, if applicable and reflected, would have lowered the performance described above. Nationwide Trust Company, FSB is not making any recommendations regarding these funds. Although gathered from reliable sources, data accuracy and completeness cannot be guaranteed. Unusually high performance may be the result of current favorable market conditions including successful IPOs or strength of a particular market sector - this performance may not be replicated in the future.

# COMPARATIVE CHART OF PLAN INVESTMENT OPTIONS

**Understanding Risks**

Markets are volatile and can decline in response to adverse developments. Particular investments can react differently to these developments. For specific risks related to each investment, see the prospectus.

**Targeted Retirement Date Funds:** Designed to provide diversification and asset allocation across several types of investments and asset classes, primarily by investing in underlying funds. Therefore, in addition to the expenses of the portfolio, you are indirectly paying a proportionate share of the applicable fees and expenses of the underlying funds.

**Government funds:** While the funds invest primarily in the securities of the U.S. government and its agencies, the values are not guaranteed by these entities.

**High-yield funds:** Funds that invest in high-yield securities are subject to greater credit risk and price fluctuations than funds that invest in higher-quality securities.

**International/emerging markets funds:** Funds that invest internationally involve risks not associated with investing solely in the U. S., such as currency fluctuation, political risk, differences in accounting and the limited availability of information.

**Money market funds:** These funds are not insured or guaranteed by the Federal Deposit Insurance Corporation or any other federal government agency. Although they seek to preserve the value of your investment at $1.00 per share, it's possible to lose money by investing in money market funds.

**Small company funds:** Funds that are invested in stocks of small or emerging companies may have less liquidity than those investing in larger, established companies and may be subject to greater price volatility and risk than the overall stock market.

**Non-diversified funds:** Funds that are invested in a concentrated sector or focus on a relatively small number of securities may be subject to greater volatility than a more diversified investment.

**Real estate funds:** Funds that focus on real estate investing are sensitive to economic and business cycles, changing demographic patterns and government actions.

**Index funds:** For investors seeking minimum expenses, these funds invest in broad sectors of stocks and bonds for less volatility; individuals cannot invest directly in an index.

# COMPARATIVE CHART OF PLAN INVESTMENT OPTIONS

## Part II - Fee and Expense Information

Table 2 shows fee and expense information for the investment options listed above. This table includes the Total Annual Operating Expenses of the options above. Total Annual Operating Expenses are expenses that reduce the rate of return of the investment option. It also shows Shareholder-type Fees. These fees are in addition to Total Annual Operating Expenses.

| Table 2 - Investment Option Fees and Expenses | | | | | |
|---|---|---|---|---|---|
| **Name/Type of Option** | **Net Expense Ratio** | **AMC/ Net Asset Fee** | **Total Annual Operating Expenses** | | **Shareholder-Type Fees** |
| | | | As a % | Per $1000 | |
| **Bonds** | | | | | |
| Pionr Hi Yld A | 1.14% | 1.25% | 2.39 | 23.90 | The fund house enforces a trade restriction. If a participant exchanges out $5,000.00 or more, they are blocked from exchanging back into the fund for 90 days. |
| **Cash** | | | | | |
| NW Mny Mkt Inst | 0.49% | 1.25% | 1.74 | 17.40 | |
| **International Stocks** | | | | | |
| Jns Glbl Rsrch T | 0.93% | 1.45% | 2.38 | 23.80 | |
| **Large-Cap Stocks** | | | | | |
| FidAdv Eq Inc A | 1.00% | 1.25% | 2.25 | 22.50 | |
| FidAdv Gr Oppr A | 1.23% | 1.25% | 2.48 | 24.80 | |
| Jns Twnty T | 0.77% | 1.45% | 2.22 | 22.20 | |
| **Mid-Cap Stocks** | | | | | |
| Invsco MdCap Gr A | 1.15% | 1.25% | 2.40 | 24.00 | The fund house enforces a trade restriction. If a participant exchanges out $5,000.00 or more, they are blocked from exchanging $5,000.00 or more back into the fund for 30 days. Only one roundtrip exchange is allowed in 30 days. |

The cumulative effect of fees and expenses can substantially reduce the growth of your retirement savings. Visit the Department of Labor's Web site for an example showing the long-term effect of fees and expenses at http://www.dol.gov/ebsa/publications/401k_employee.html. Fees and expenses are just two of many factors to consider when you decide to put money in an investment option. You may also want to think about whether investing in a particular option, along with your other investments, will help you achieve your financial goals.

**Net Expense Ratio:** The net prospectus expense shown is after fund management expense waivers or reimbursements. For more information about management expense waivers or reimbursements, please see the fund profile.

## COMPARATIVE CHART OF PLAN INVESTMENT OPTIONS

**AMC/Net Asset Fee:** This is a fee charged by Nationwide to recover expenses that may include compensation paid to financial advisors, administrative service fee payments to Administration Firms/Authorized Representatives and any expense credits issued to the Plan. Additionally, this fee pays for services provided by Nationwide including access to a wide array of investment options, record keeping platform, customer service, etc. AMC/Net Asset Fee may include an administrative fee which is charged by the third party administrator.

**Total Annual Operating Expenses:** This is the sum of Net Expense Ratio and AMC/Net Asset Fee.



Nationwide Group Retirement Series includes unregistered group fixed and variable annuities and trust programs. The unregistered group fixed and variable annuities are issued by Nationwide Life Insurance Company. Trust programs and trust services are offered by Nationwide Trust Company, FSB, a division of Nationwide Bank. Nationwide Investment Services Corporation, member FINRA. In MI only: Nationwide Investment Svcs. Corporation. Nationwide Mutual Insurance Company and Affiliated Companies, Home Office: Columbus, OH 43215-2220.

Certain underlying investment options are not publicly traded mutual funds and are not available directly for purchase by the general public. They are only available through variable annuity/variable life insurance policies issued by life insurance companies or in some cases, through participation in certain qualified pension or retirement plans.

Nationwide, the Nationwide framemark and On Your Side are service marks of Nationwide Mutual Insurance Company.

© 2012 Nationwide Financial Services, Inc. All rights reserved.

PNM-2259AO.4 (02/14)

# Exhibit I

# Fee Disclosure

Case: **RESOURCE**                                        Number: **XXX-XXXXX**

As of: 12/09/2014

We offer full disclosure of all the fees associated with our retirement plans. Refer to the Fee Explanation Guide for details about these charges.

## Expense Ratio

View: Core Funds Only

| Fund | Fund Code | Current | | Previous |
|------|-----------|---------|---|----------|
| | | Gross Percentage | Effective Date | Gross Percentage |
| **Mutual Funds** | | | | |
| Opp Gold Spec Mnrls A | PGMA | 1.17% | 12/06/2014 | 1.13% |
| FnklnTmp Gr A | TGFA | 1.07% | 09/10/2014 | 1.11% |
| Fed Kaufman A | FKFA | 2.09% | 08/09/2014 | 2.22% |
| Invsco MdCap Cor Eq A | AMCA | 1.22% | 06/07/2014 | 1.20% |
| NW Mny Mkt Inst | GMZA | 0.49% | 04/21/2014 | 0.49% |
| Thrnbrg Val I | THVA | 1.01% | 04/07/2014 | 0.93% |
| Fnkln Bal Sht Invmt A | TBSA | 0.93% | 04/07/2014 | 0.99% |
| NW Inv Dest Mod Cnsrv Svc | DMCA | 0.90% | 04/07/2014 | 0.87% |
| NW Inv Dest Mod Aggr Svc | DMAA | 0.89% | 04/07/2014 | 0.86% |
| Opp Glbl Strat Inc A | PSIA | 1.02% | 03/07/2014 | 0.99% |
| Opp Glbl A | PGZA | 1.14% | 03/07/2014 | 1.22% |
| Okmrk Eq Inc II | KOEA | 1.10% | 03/07/2014 | 1.09% |
| AmFds Cap Wld Gr Inc R3 | ARWA | 1.09% | 03/07/2014 | 1.10% |
| Invsco Gr Inc A | VKWA | 0.83% | 02/08/2014 | 0.84% |
| Invsco Eq Inc A | VKEA | 0.80% | 02/08/2014 | 0.81% |
| Opp Cap App A | PCAA | 1.06% | 02/08/2014 | 1.05% |
| NeuBer Genesis Inv | NGBA | 1.02% | 02/08/2014 | 1.03% |
| MFS Val A | MMVA | 0.93% | 02/08/2014 | 0.96% |
| AmFds Cap Inc Bldr R3 | ARRA | 0.97% | 02/08/2014 | 0.98% |
| AmCent Sm Co A | ACQA | 1.13% | 12/09/2013 | 1.14% |
| AmFds Inc Fd Am R3 | ARDA | 0.94% | 11/08/2013 | 0.96% |
| VanEck Glbl Hrd Asst A | VGHA | 1.45% | 07/09/2013 | 1.37% |
| Fed US GovtSec 1 3 Yr Svc | CBBA | 0.97% | 06/08/2013 | 0.96% |
| Vngrd ST Trsry Inv | VFSA | 0.20% | 06/11/2012 | 0.22% |
| PIMCO Ttl Rtn A | PCTA | 0.85% | 06/08/2012 | 0.85% |

# Fee Disclosure

Case: **RESOURCE**                               Number: **XXX-XXXXX**

As of: 12/09/2014

We offer full disclosure of all the fees associated with our retirement plans. Refer to the Fee Explanation Guide for details about these charges.

## Fund Payment

View: Core Funds Only

| Fund | Fund Code | Current | | Previous |
| | | Percentage | Effective Date | Percentage |
|------|-----------|------------|----------------|------------|
| **Mutual Funds** | | | | |
| Fed US GovtSec 1 3 Yr Svc | CBBA | 0.35% | 10/25/2012 | 0.25% |
| Invsco Eq Inc A | VKEA | 0.50% | 02/07/2012 | 0.00% |
| Thrnbrg Val I | THVA | 0.40% | 02/07/2012 | 0.00% |
| FnklnTmp Gr A | TGFA | 0.40% | 02/07/2012 | 0.00% |
| Fnkln Bal Sht Invmt A | TBSA | 0.40% | 02/07/2012 | 0.00% |
| Opp Glbl Strat Inc A | PSIA | 0.45% | 02/07/2012 | 0.50% |
| Opp Glbl A | PGZA | 0.45% | 02/07/2012 | 0.00% |
| Opp Gold Spec Mnrls A | PGMA | 0.50% | 02/07/2012 | 0.55% |
| PIMCO Ttl Rtn A | PCTA | 0.40% | 02/07/2012 | 0.50% |
| Opp Cap App A | PCAA | 0.45% | 02/07/2012 | 0.00% |
| NeuBer Genesis Inv | NGBA | 0.40% | 02/07/2012 | 0.00% |
| MFS Val A | MMVA | 0.40% | 02/07/2012 | 0.00% |
| NW Mny Mkt Inst | GMZA | 0.38% | 02/07/2012 | 0.00% |
| Fed Kaufman A | FKFA | 0.40% | 02/07/2012 | 0.00% |
| NW Inv Dest Mod Cnsrv Svc | DMCA | 0.40% | 02/07/2012 | 0.00% |
| NW Inv Dest Mod Aggr Svc | DMAA | 0.40% | 02/07/2012 | 0.00% |
| AmFds Cap Wld Gr Inc R3 | ARWA | 0.60% | 02/07/2012 | 0.00% |
| AmFds Cap Inc Bldr R3 | ARRA | 0.60% | 02/07/2012 | 0.00% |
| AmFds Inc Fd Am R3 | ARDA | 0.60% | 02/07/2012 | 0.00% |
| Invsco MdCap Cor Eq A | AMCA | 0.50% | 02/07/2012 | 0.00% |
| AmCent Sm Co A | ACQA | 0.55% | 02/07/2012 | 0.00% |
| Okmrk Eq Inc II | KOEA | 0.55% | N/A | N/A |
| Vngrd ST Trsry Inv | VFSA | 0.00% | N/A | N/A |
| VanEck Glbl Hrd Asst A | VGHA | 0.50% | N/A | N/A |
| Invsco Gr Inc A | VKWA | 0.50% | N/A | N/A |

1

# Fee Disclosure

Case: **RESOURCE**                                         Number: **XXX-XXXXX**

As of: 12/09/2014

We offer full disclosure of all the fees associated with our retirement plans. Refer to the Fee Explanation
Guide for details about these charges.

## Redemption Fees

View: Core Funds Only

| Fund | Fund Code | Current | | | Previous | |
|------|-----------|---------|--------|----------------|------------|----------|
| | | Percentage | Duration | Effective Date | Percentage | Duration |
| **Mutual Funds** | | | | | | |
| Okmrk Eq Inc II | KOEA | N/A | N/A | N/A | 2.00% | 90 days |
| PIMCO Ttl Rtn A | PCTA | N/A | N/A | N/A | 2.00% | 7 days |
| Fnkln Bal Sht Invmt A | TBSA | N/A | N/A | N/A | 2.00% | 7 days |
| FnklnTmp Gr A | TGFA | N/A | N/A | N/A | 2.00% | 7 days |

# Fee Disclosure

Case: **RESOURCE**                                        Number: **XXX-XXXXX**

As of: 12/09/2014

We offer full disclosure of all the fees associated with our retirement plans. Refer to the Fee Explanation Guide for details about these charges.

## Recordkeeping Fees

The following amounts are for recordkeeping and various transactional fees that may be charged to your authorized representative or directly to the plan in accordance with the explanation guide.

| Fee | Current Amount | Effective Date | Previous Amount |
|-----|---------------:|:--------------:|----------------:|
| Per Participant | $4.00 | 07/17/2014 | $10.00 |
| Printed Stmt. Charge | $0.75 | 07/17/2014 | $0.75 |
| Single Sum | $300.00 | 07/17/2014 | $300.00 |

# Fee Disclosure

Case: **RESOURCE**                                                   Number: XXX-XXXXX

We offer full disclosure of all the fees associated with our retirement plans. Refer to the Fee Explanation Guide for details about these charges.

The following information outlines various fees, expenses and compensation items that may be applicable to your Plan. This information provides the identification of the payor, payee, and a description of the services provided for each payment and the method of each payment. The information also describes where additional information about each particular item may be found. Please note the footnotes for important information about classification of each item as Direct or Indirect Compensation. Except as indicated, Nationwide is not acting in a fiduciary capacity for the services described below.

If changes occur to the items described below, you will be notified of any such change by Nationwide. Such notification may be in the form of a communication directing you back to this web site to review changes which will be clearly indicated. The notification may also be in the form of an Amendment to your legal documents previously executed between the Plan and Nationwide.

If the covered service provider is Nationwide Trust Company, FSB a division of Nationwide Bank and payments are made to Nationwide Life Insurance Company, Nationwide Life Insurance Company is an affiliate of Nationwide Trust Company, FSB a division of Nationwide Bank. Please consult your contract(s) with Nationwide to determine the applicable covered service provider, and additional information about services and fees.

# Fee Explanation Guide

| Description of cost/compensation | Description of services rendered and method of payment | Amount and/or location of additional disclosure information |
|---|---|---|
| Asset Fee / Standard Asset Fee[1] | The purpose of the Asset Fee / Standard Asset Fee is to recover Nationwide's expenses including compensation paid to financial advisors, administrative service fee payments to Authorized Representatives and any expense credits issued to the Plan. Additionally, this fee pays for services provided by Nationwide including access to a wide array of investment options, recordkeeping platform, customer service, etc. The Asset Fee / Standard Asset Fee is assessed daily or monthly from Plan assets as a percentage of assets invested in applicable Funding Vehicle(s). Payments are made to Nationwide Trust Company, FSB a division of Nationwide Bank. | The Asset Fee / Standard Asset Fee, including the method of calculation are disclosed in the Program Agreement. |
| Adjustment to Index[1] | The purpose of the Adjustment to the Index is to recover Nationwide's expenses including compensation paid to Financial Advisors, Administrative Service Fee/Override payments to Authorized Representatives and any expense credits issued to the Plan. Additionally, this fee pays for services provided by Nationwide including access to a recordkeeping platform, customer service, etc. The Adjustment to the Index reduces the crediting rate of the applicable Index. Payments are made to Nationwide Life Insurance Company. | Additional information may be found in the Group Annuity Contract. |
| Indexed Fixed Fee[1] | Upon certain withdrawals, Nationwide may assess an Indexed Fixed Fee as approved and directed by the Sponsor. The purpose of this fee is to reimburse Nationwide for losses and/or expenses due to the sale of underlying investments in order to fund the withdrawal. Payments are made to Nationwide Life Insurance Company. | Additional information may be found in the Group Annuity Contract. |
| Contingent Deferred Sales Charge (CDSC)[1] | A fee charged on certain withdrawals to recoup certain fees incurred by Nationwide in establishing the Plan. The fee is typically deducted from the Plan but may be billed to the Sponsor if requested. Payments are made to Nationwide Life Insurance Company. | Additional information and the CDSC percentage, if applicable to your Plan, may be found in the Group Annuity Contract. |
| Termination Charge / Termination Fee[1] | A fee charged on certain withdrawals, as described in the Program or Trust/Custody Agreement as applicable, to recoup certain fees incurred by Nationwide in establishing the Plan. The fee is typically deducted from the Plan but may be billed to the Sponsor if requested. Payments are made to Nationwide Trust Company, FSB a division of Nationwide Bank. | Additional information and the Termination Charge / Termination Fee percentage, if applicable may be found in the Program Agreement. |
| Exchange Fee[1] | A fee charged to the Authorized Representative for Exchanges not processed over the Voice Response Unit (VRU) or Internet. All hard copy Exchanges sent to Nationwide may incur this fee from each "from" Fund. The fee may be billed to the Authorized Representative or deducted from the Plan based on the direction from the Authorized Representative. Exchanges processed via the VRU or Internet will not incur an Exchange Fee. Payments are made to Nationwide Life Insurance Company. | The fee is $6.00 per "from fund." Exchanges processed via the VRU or Internet will not incur an Exchange Fee. |
| Loan Maintenance Fee[1] | A monthly fee charged to the Authorized Representative for all loans that are set up and managed on Nationwide's Loan Management System. The fee may be billed to the Authorized Representative or deducted from the Plan based on the direction from the Authorized Representative. Payments are made to Nationwide Life Insurance Company. | The fee is $1.00 per month per active loan. |

| Description of cost/compensation | Description of services rendered and method of payment | Amount and/or location of additional disclosure information |
|---|---|---|
| Withdrawal Fee[1] | This fee applies to In-Kind Transfers of stock and other brokerage investments. The fee is charged to Participant accounts when an In-Kind Transfer is requested. Payments are made to Nationwide Trust Company, FSB a division of Nationwide Bank. | The fee is $100 per In-Kind Transfer. |
| Per Participant Fee[1] | A fee charged to the Authorized Representative to cover participant recordkeeping expenses incurred by Nationwide. The fee may be billed or deducted from the Plan based on the direction from the Authorized Representative. Payments are made to Nationwide Life Insurance Company. | The fee is $4.00 per year per participant. This fee may vary quarterly based on the volume of your Authorized Representative's block of business with Nationwide. You will be notified of any such change and the current amount, previous amount and change date if applicable may always be found in the Recordkeeping Fees tab of this website. |
| Single Sum Fee[1] | A fee charged to the Authorized Representative to recover recordkeeping expenses incurred by Nationwide. The fee may be billed to the Authorized Representative or deducted from the Plan based on direction from the Authorized Representative. Payments are made to Nationwide Life Insurance Company. | The fee is $300.00 per year. |
| Statement Fee[1] | A fee charged to the Authorized Representative to cover the cost of printing statements. The fee may be billed or deducted from the Plan based on direction of the Authorized Representative. Payments are made to Nationwide Life Insurance Company. | The fee is $0.75 per printed statement. |
| Annual Account Fee/Custodial Fee[2] | Nationwide Trust Company, FSB a division of Nationwide Bank provides custodial services. If elected, the Sponsor receives an annual certified report. The Annual Account Fee/Custodial Fee may be deducted from Plan assets or billed to the Sponsor as elected by the Sponsor in the applicable Agreement. Payments are made to Nationwide Trust Company, FSB a division of Nationwide Bank. Fiduciary status for employee pension benefit plans or pension plans within the meaning of Employee Retirement Income Security Act of 1974 (ERISA) section 3(2)(A) (and not described in ERISA section 4(b)): As a custodian Nationwide Trust Company, FSB a division of Nationwide Bank is subject to the proper directions of a named fiduciary which are made in accordance with the terms of the Plan and not contrary to ERISA. As a custodian Nationwide Trust Company, FSB a division of Nationwide Bank retains only residual fiduciary responsibility for determining whether a given direction is proper and whether following the direction would result in a violation of ERISA. | The amount and additional information about the Annual Account Fee/Custodial Fee that may apply to your Plan may be found in the Program Agreement, Trust or Custody Agreement as applicable. |
| Redemption Fee[3] | A fee charged by fund houses to a Participant who trades in and out of certain funds within a specified time frame. This fee is paid to the applicable fund house. This fee is charged so that short term trading is not utilized to the detriment of other shareholders. Payments are made to the applicable fund house. | Additional information may be found in the applicable fund prospectus and is also available under the Trading Policies link on this website. |
| Gross Expense Ratio[3] | The percentage of fund assets paid for operating expenses and management fees, including 12-b-1 fees, administrative fees, and all other asset-based costs incurred by the fund, except brokerage costs. Fund expenses are reflected in the fund's net asset value (NAV). Payments are made to the applicable fund house. | Additional information may be found in the applicable fund prospectus and is also available in the Expense Ratio tab of this website. |
| Cash Processing Fee[4] | The Cash Processing Fee pays for Nationwide's investing of cash received without proper investment direction or while otherwise in suspense while pending processing. This fee may be assessed daily on cash received that is invested in an interest-bearing account with a non-affiliated financial institution. The fee is a percentage deducted from the gross return of the investment vehicle prior to crediting of interest to the Plan. JP Morgan Chase, a subcontractor, makes payments, as applicable, to Nationwide Trust Company, FSB a division of Nationwide Bank. | Additional information regarding the Cash Processing Fee may be found in your Program Agreement or Trust/Custody Agreement as applicable. |
| Mutual Fund Payments[4] | Nationwide offers investment options, and purchases and sells shares of certain mutual funds in the aggregate each day so that the performance of the investment options corresponds to the performance of those mutual funds. When the Accounts aggregate these transactions, the mutual fund does not incur the expense of processing individual transactions that it would incur if it sold its shares to the public directly. This expense is instead incurred by the Nationwide companies. The Nationwide companies also incur the distribution costs associated with selling the retirement products, which benefits the mutual funds by providing Sponsors and participants with investment options that correspond to the underlying mutual funds. An investment adviser or subadviser of a mutual fund or its affiliates may provide the Nationwide companies with wholesaling services that assist in | Additional information can be found in the Program Agreement and applicable mutual fund prospectus. |

| Description of cost/compensation | Description of services rendered and method of payment | Amount and/or location of additional disclosure information |
|---|---|---|
| | the distribution of the retirement products and may pay to participate in educational and/or marketing activities. These activities may provide the adviser or subadviser (or their affiliates) with increased exposure to persons involved in the distribution of the retirement products. In light of the above, certain mutual funds or their affiliates make payments to the Nationwide companies (the "payments"). The amount of these payments is typically based on an agreed upon percentage times the amount of assets that the Accounts invest in the mutual funds. These payments may be used for any corporate purpose, which includes reducing the price of the retirement products, paying expenses that the Nationwide companies incur in promoting, marketing, and administering the retirement products, and achieving a profit. Payments are made to Nationwide Investment Services Corp, an affiliate, and then in full to Nationwide Trust Company, FSB a division of Nationwide Bank. | |
| Collective Investment Fund Administrative Services Fee[4] | Nationwide makes available Collective Investment Funds ("CIFs"), and purchases and sells shares of certain CIFs in the aggregate each day so that the performance of the investment options corresponds to the performance of those CIFs. When Nationwide aggregates these transactions, the CIFs do not incur the expense of processing individual transactions that it would incur if it sold its shares to the public directly. This expense is instead incurred by the Nationwide companies. The Nationwide companies also incur the distribution costs associated with selling the retirement products, which benefits the CIFs by providing Sponsor and participants with investment options that correspond to the underlying CIFs. An investment adviser or subadviser of a CIF or its affiliates may provide the Nationwide companies with wholesaling services that assist in the distribution of the retirement products and may pay to participate in educational and/or marketing activities. These activities may provide the adviser or subadviser (or their affiliates) with increased exposure to persons involved in the distribution of the retirement products. In light of the above, certain CIF Providers or their affiliates make payments to the Nationwide companies (the "payments"). The amount of these payments is typically based on an agreed upon percentage times the amount of assets that the Accounts invest in the CIFs. These payments may be used for any corporate purpose, which includes reducing the price of the retirement products, paying expenses that the Nationwide companies incur in promoting, marketing, and administering the retirement products, and achieving a profit. Payments are made to Nationwide Trust Company, FSB a division of Nationwide Bank. | Additional information can be found in the Program Agreement and applicable Declaration of Trust. |
| TD Ameritrade SDB Revenue Payments[4] | TD Ameritrade, a subcontractor, provides payments to Nationwide Trust Company, FSB a division of Nationwide Bank for assisting Plans and/or Participants in connection with establishing TD Ameritrade self-directed brokerage accounts. Additionally for providing TD Ameritrade Plan or Participant data and transmitting data and instructions requested by Plans or Participants. Additional services may be provided by Nationwide as agreed to by TD Ameritrade and Nationwide with respect to the operation and maintenance of TD Ameritrade accounts for the benefit of Plan/Participants. Payments are made to Nationwide Trust Company, FSB a division of Nationwide Bank. | TD Ameritrade shall pay Nationwide 0.015% of the value of Plan assets in a TD Ameritrade self-directed brokerage account based on the average Plan assets as of the last day of the month of each quarter. |
| Override[5] | Payments are made to the Authorized Representative, as identified in your contract(s) with Nationwide, a subcontractor, for various administrative functions which may include but are not necessarily limited to; preparing proposals, assisting in the enrollment process, processing transactions including disbursements, assisting with issue resolution, and communicating with Sponsors and/or Participants. This payment is paid from either Nationwide Life Insurance Company or Nationwide Trust Company, FSB a division of Nationwide Bank as the covered service provider. | Refer to the Third Party Compensation tab on this website for additional information. |
| Recordkeeping Charges | Nationwide includes the cost of recordkeeping services in the fees explained in this document. However, the Regulations require that if Service Provider does not assess an explicit charge that covers the cost of recordkeeping then they must provide an estimate of what the charge would be if an explicit charge did apply. Recordkeeping services include, maintaining participant balances, executing trades between Funding Vehicles, and accepting deposits, processing distributions, regulatory reporting and customer service. If Nationwide were to assess an explicit charge for these services, a reasonable estimate would be a charge of $600 annually and $3 per participant. Additionally, a charge of $250 for the first year only that the Plan is at Nationwide would apply. These charges are determined using cost accounting methodology for the services provided defined as recordkeeping services. The charges also include a profit margin to Nationwide which typically ranges from 20-30%. It is important to understand that the fees discussed in this section are a representation of charges that | |

3

| Description of cost/compensation | Description of services rendered and method of payment | Amount and/or location of additional disclosure information |
|---|---|---|
| | would apply if Nationwide were to charge an explicit charge for all recordkeeping services. These fees represented in this paragraph are NOT paid by the Plan or Sponsor and not received by Nationwide. | |
| Corrective Processing | Nationwide may receive additional compensation or recognize losses due to various corrective processing. Such corrective processing may include but is not limited to mutual fund price corrections, rounding errors, and transaction processing corrections on the part of the Participant, Sponsor, Authorized Representative, Mutual Fund providers or Nationwide. Nationwide.s general policy is to make the corrections so that the resulting impact to the Plan would be as if the error had not occurred, which includes any gains/losses due to the Plan. However, if the corrections required are due to transaction processing errors by parties other than Nationwide, we may require such parties to pay for any losses caused by completing the corrective processing. After such corrective processing, there may be gains or losses that Nationwide Life Insurance Company or Nationwide Trust Company, FSB a division of Nationwide Bank, as applicable, may recognize as Nationwide effectuates the correction in the market. | |

Footnotes:

1 Items noted above are considered direct compensation to Nationwide and are paid directly from Plan assets.

2 Items noted above are considered direct compensation to Nationwide and are paid directly from Plan assets if directed to deduct by the Sponsor. If items are billed and paid by the Sponsor they would not be considered direct nor indirect compensation.

3 Items noted above are considered direct compensation to a party other than Nationwide as indicated above and are paid directly from Plan assets.

4 Items noted above are considered indirect compensation to Nationwide and not paid from Plan assets. Items are paid by the applicable subcontractor as noted above.

5 Items noted above are considered indirect compensation to a party other than Nationwide and are paid from Nationwide and not directly from Plan assets.

# Fee Disclosure

Case: **RESOURCE**                                   Number: **XXX-XXXXX**

The following disclosure is provided solely so that the Sponsor may fully understand the financial interest of the Firm and/or Financial Advisor(s) in the sale of Nationwide Life Insurance contracts and Nationwide Trust Company, FSB, a division of Nationwide Bank, programs and services.

## Third Party Compensation

**Resource: GAP-C4-JC18**

**CROWN CAPITAL SECURITIES L.P.**

WILLIAM BERNARD RING

**Commission/Fees paid to CROWN CAPITAL SECURITIES L.P. 100.00%**

| Program Year | On All Transfers/Deposits | On Assets |
|---|---|---|
| 10 and later | 0.00% | 0.60% |

**Override/Administrative Service Fee Paid to: BENEFIT EQUITY, INC.**

| Program Year | On All Transfers/Deposits | On Assets |
|---|---|---|
| 10 and later | 0.00% | 0.15% |

**Self Directed Brokerage: GAP-C5-CB5N**

**CROWN CAPITAL SECURITIES L.P.**

WILLIAM BERNARD RING

**Commission/Fees paid to CROWN CAPITAL SECURITIES L.P. 100.00%**

| Program Year | On All Transfers/Deposits | On Assets |
|---|---|---|
| 10 and later | 0.00% | 0.60% |

**Override/Administrative Service Fee Paid to: BENEFIT EQUITY, INC.**

| Program Year | On All Transfers/Deposits | On Assets |
|---|---|---|
| 10 and later | 0.00% | 0.15% |

**Advisor 3 Year Indexed Fixed: GAP-B0-JC17**

**CROWN CAPITAL SECURITIES L.P.**

WILLIAM BERNARD RING

**Commission/Fees paid to CROWN CAPITAL INS AGENCY LLC 100.00%**

| Program Year | On All Transfers/Deposits | On Assets |
|---|---|---|
| 10 and later | 0.00% | 0.60% |

**Override/Administrative Service Fee Paid to: BENEFIT EQUITY, INC.**

| Program Year | On All Transfers/Deposits | On Assets |
|---|---|---|
| 10 and later | 0.00% | 0.15% |